**GLANCY PRONGAY & MURRAY LLP**
ROBERT V. PRONGAY (SBN 270796)
rprongay@glancylaw.com
CHARLES H. LINEHAN (SBN 307439)
clinehan@glancylaw.com
1925 Century Park East, Suite 2100
Los Angeles, CA 90067
Telephone: (310) 201-9150
Facsimile: (310) 432-1495

*Liaison Counsel for Lead Plaintiff*
*Arkansas Teacher Retirement*
*System and the Proposed Class*

**LABATON SUCHAROW LLP**
CAROL C. VILLEGAS (*pro hac vice*)
cvillegas@labaton.com
IRINA VASILCHENKO (*pro hac vice*)
ivasilchenko@labaton.com
LISA M. STREJLAU (*pro hac vice*)
lstrejlau@labaton.com
DANIELLE IZZO (*pro hac vice*)
dizzo@labaton.com
140 Broadway
New York, NY 10005
Telephone: (212) 907-0700
Facsimile: (212) 818-0477

*Counsel for Lead Plaintiff*
*Arkansas Teacher Retirement System*
*and Lead Counsel for the Proposed Class*

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| LESLIE LILIEN, Individually and on Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br> v. <br><br> OLAPLEX HOLDINGS, INC., JUE WONG, ERIC TIZIANI, TIFFANY WALDEN, CHRISTINE DAGOUSSET, TRICIA GLYNN, DEIRDRE FINDLAY, JANET GURWITCH, MARTHA MORFITT, DAVID MUSSAFER, EMILY | No. 2:22-cv-08395-SVW(SKx) <br><br> <u>CLASS ACTION</u> <br><br> **LEAD PLAINTIFF'S OPPOSITION TO THE ADVENT FUND DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S REVISED CONSOLIDATED CLASS ACTION COMPLAINT** <br><br> <u>**DEMAND FOR JURY TRIAL**</u> |

WHITE, MICHAEL WHITE, PAULA ZUSI, ADVENT INTERNATIONAL GPE IX LIMITED PARTNERSHIP, ADVENT INTERNATIONAL GPE IX-B LIMITED PARTNERSHIP, ADVENT INTERNATIONAL GPE IX-C LIMITED PARTNERSHIP, ADVENT INTERNATIONAL GPE IX-F LIMITED PARTNERSHIP, ADVENT INTERNATIONAL GPE IX-G LIMITED PARTNERSHIP, ADVENT INTERNATIONAL GPE IX-H LIMITED PARTNERSHIP ADVENT INTERNATIONAL GPE IX-I LIMITED PARTNERSHIP ADVENT INTERNATIONAL GPE IX-A SCSP, ADVENT INTERNATIONAL GPE IX-D SCSP, ADVENT INTERNATIONAL GPE IX-E SCSP, ADVENT INTERNATIONAL GPE IX STRATEGIC INVESTORS SCSP, ADVENT PARTNERS GPE IX LIMITED PARTNERSHIP, ADVENT PARTNERS GPE IX-A LIMITED PARTNERSHIP, ADVENT PARTNERS GPE IX CAYMAN LIMITED PARTNERSHIP, ADVENT PARTNERS GPE IX-A CAYMAN LIMITED PARTNERSHIP, ADVENT PARTNERS GPE IX-B CAYMAN LIMITED PARTNERSHIP, MOUSSERENA, L.P., GOLDMAN SACHS & CO. LLC, J.P. MORGAN SECURITIES LLC, MORGAN STANLEY & CO. LLC, BARCLAYS CAPITAL INC., BOFA SECURITIES, INC., EVERCORE GROUP L.L.C., JEFFERIES LLC, RAYMOND JAMES & ASSOCIATES, INC., COWEN AND COMPANY, LLC, PIPER SANDLER & CO., TRUIST SECURITIES, INC., TELSEY ADVISORY GROUP LLC, DREXEL HAMILTON, LLC, and LOOP CAPITAL MARKETS LLC,

  Defendants.

Hearing Date: September 11, 2023
Hearing Time: 1:30 p.m.
Courtroom:  10A
Judge: Hon. Stephen V. Wilson

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ............................................................................................... ii

I.      PRELIMINARY STATEMENT ................................................................................ 1

II.     FACTUAL BACKGROUND ...................................................................................... 3

III.    APPLICABLE LEGAL STANDARDS ........................................................................ 5

IV.     ARGUMENT........................................................................................................... 6

      A.     Plaintiff's Section 11 and 12 Claims Are Not Time-Barred ................... 6

      B.     The AC Adequately Alleges That the Advent Funds Are Liable as Statutory Sellers Under Section 12(a)(2).................................................. 7

      C.     The AC Adequately Alleges That the Advent Funds Are Liable as Control Persons Under Section 15 .......................................................11

V.      CONCLUSION .....................................................................................................14

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*In re Alphabet, Inc. Sec. Litig.,*
  1 F.4th 687 (9th Cir. 2021)..................................................................................12

*Ashcroft v. Iqbal,*
  556 U.S. 662 (2009).............................................................................................5

*Bell Atl. Corp. v. Twombly,*
  550 U.S. 544 (2007).............................................................................................5

*In re BofI Holding, Inc. Sec. Litig.,*
  2017 WL 2257980 (S.D. Cal. May 23, 2017)................................................11, 12

*In re Charles Schwab Corp. Sec. Litig.,*
  257 F.R.D. 534 (N.D. Cal. 2009) ...............................................................6, 7, 9

*City of Dearborn Heights Act 345 Police & Fire Ret. Sys. v. Align Tech., Inc.,*
  856 F.3d 605 (9th Cir. 2017)...............................................................................6

*Durham v. Kelly,*
  810 F.2d 1500 (9th Cir. 1987).............................................................................11

*Erickson v. Corinthian Colls., Inc.,*
  2015 WL 12732435 (C.D. Cal. April 22, 2015) ................................................12

*In re Glob. Crossing, Ltd. Sec. Litig.,*
  2005 WL 2990646 (S.D.N.Y Nov. 7, 2005).......................................................13

*Herman & MacLean v. Huddleston,*
  459 U.S. 375 (1983).............................................................................................5

*Hildes v. Arthur Andersen LLP,*
  734 F.3d 854 (9th Cir. 2013)...............................................................................5

*Hollinger v. Titan Cap. Corp.,*
  914 F.2d 1564 (9th Cir. 1990).............................................................................11

*Howard v. Everex Sys., Inc.,*
  228 F.3d 1057 (9th Cir. 2000)......................................................................11, 12

*In re Infonet Servs. Corp. Sec. Litig.*,
310 F. Supp. 2d 1080 (C.D. Cal. 2003) ............................................................10

*Johnson v. Riverside Healthcare Sys., LP*,
534 F.3d 1116 (9th Cir. 2008) ..........................................................................6

*Knollenberg v. Harmonic, Inc.*,
152 F. App'x 674 (9th Cir. 2005) ......................................................................6

*Mallen v. Alphatec Holdings, Inc.*,
861 F. Supp. 2d 1111 (S.D. Cal. 2012), *aff'd sub nom.*
*Fresno Cnty. Emps.' Ret. Ass'n v. Alphatec Holdings, Inc.*,
607 F. App'x 694 (9th Cir. 2015) ....................................................................10

*Mirmehdi v. United States*,
689 F.3d 975 (9th Cir. 2012) ...........................................................................14

*In re Musicmaker.com Sec. Litig.*,
2001 WL 34062431 (C.D. Cal. June 4, 2001) ..................................................12

*In re Nat'l Golf Props., Inc.*,
2003 WL 23018761 (C.D. Cal. Mar. 19, 2003) ..................................................7

*No. 84 Emp.-Teamster Joint Council Pension Tr. Fund v. Am. W.*
*Holding Corp.*,
320 F.3d 920 (9th Cir. 2003) ...........................................................................13

*Pinter v. Dahl*,
486 U.S. 622 (1988) .......................................................................................7, 8

*Pino v. Cardone Cap., LLC*,
55 F.4th 1253 (9th Cir. 2022) .................................................................7, 8, 9-10

*Pirani v. Slack Techs., Inc.*,
13 F.4th 940 (9th Cir. 2021), *vacated on other grounds and*
*remanded*, 598 U.S. 759 (2023) ........................................................................6

*Pirani v. Slack Techs., Inc.*,
445 F. Supp. 3d 367 (N.D. Cal. 2020) ................................................. 6, 9, 12, 13

*In re Portal Software, Inc., Sec. Litig.*,
2006 WL 2385250 (N.D. Cal. Aug. 17, 2006) ..............................................9, 10

*Primo v. Pac. Biosciences of Cal., Inc.*,
    940 F. Supp. 2d 1105 (N.D. Cal. 2013)............................................................7, 9

*Rabkin v. Lion Biotechnologies, Inc.*,
    2018 WL 905862 (N.D. Cal. 2018)...................................................................10

*Rubke v. Capitol Bancorp Ltd.*,
    551 F.3d 1156 (9th Cir. 2009)............................................................................5

*Tellabs, Inc. v. Makor Issues & Rts.*,
    551 U.S. 308 (2007)............................................................................................5

*In re UTStarcom, Inc. Sec. Litig.*,
    617 F. Supp. 2d 964 (N.D. Cal. 2009)..............................................................13

*Welgus v. TriNet Grp., Inc.*,
    2017 WL 167708 (N.D. Cal. Jan. 17, 2017)......................................................10

*Wool v. Tandem Computs. Inc.*,
    818 F.2d 1433 (9th Cir. 1987)..........................................................................12

**Statutes & Rules**

1933 Securities Act of 1933 Section 11, 15 U.S.C. § 77k .............................*passim*

1933 Securities Act of 1933 Section 12, 15 U.S.C. § 77l .............................*passim*

1933 Securities Act of 1933 Section 15, 15 U.S.C. § 77o .............................*passim*

Fed. R. Civ. P. Rule 8 ...................................................................................*passim*

Fed. R. Civ. P. Rule 9(b)..........................................................................................6

Fed. R. Civ. P. Rule 12(b)(6) ...................................................................................5

Lead Plaintiff Arkansas Teacher Retirement System ("Plaintiff") respectfully submits this memorandum in opposition to the Motion to Dismiss the Revised Consolidated Class Action Complaint and supporting Memorandum of Points and Authorities (ECF No. 129, 129-1, the "Advent MTD") filed by Defendants Advent International GPE IX Limited Partnership, Advent International GPE IX-B Limited Partnership, Advent International GPE IX-C Limited Partnership, Advent International GPE IX-F Limited Partnership, Advent International GPE IX-G Limited Partnership, Advent International GPE IX-H Limited Partnership, Advent International GPE IX-I Limited Partnership, Advent International GPE IX-A SCSp, Advent International GPE IX-D SCSp, Advent International GPE IX-E SCSp, Advent International GPE IX Strategic Investors SCSp, Advent Partners GPE IX Limited Partnership, Advent Partners GPE IX-A Limited Partnership, Advent Partners GPE IX Cayman Limited Partnership, Advent Partners GPE IX-A Cayman Limited Partnership, and Advent Partners GPE IX-B Cayman Limited Partnership (collectively, the "Advent Funds" or the "Advent Fund Defendants").[1]

## I.    PRELIMINARY STATEMENT

This strict liability securities class action, brought solely under Sections 11, 12(a)(2), and 15 of the Securities Act of 1933, arises from the September 2021 Initial Public Offering ("IPO") by Olaplex, a luxury hair care brand. As more fully discussed in Plaintiff's concurrently filed opposition briefs to the other Defendants' motions to dismiss, Olaplex's IPO Registration Statement and Prospectus (the "Offering Documents") contained many statements, including hypothetical risk warnings, that

---

[1] Citations to paragraphs ("¶") are to paragraphs in the Revised Consolidated Class Action Complaint for Violations of the Federal Securities Laws filed on June 22, 2023 (ECF No. 123, the "AC"). Unless otherwise noted, emphasis is added, and internal citations and quotation marks are omitted throughout. This memorandum is also submitted in opposition to the Motions to Dismiss filed by (i) Olaplex Holdings, Inc. ("Olaplex" or the "Company") and the Individual Defendants (together, the "Olaplex Defendants") (ECF Nos. 130 and 130-1, the "Olaplex MTD"), (ii) Mousserena, L.P. ("Mousse") (ECF Nos. 127 and 127-1, the "Mousse MTD"), and (iii) the Underwriter Defendants (ECF Nos. 132 and 132-1, the "Underwriters MTD"), to the extent those motions and briefs incorporate by reference certain portions of the Advent MTD.

were materially false and misleading because they failed to disclose that Olaplex's best-selling No. 3 product contained lilial—an ingredient that the E.U. banned in late 2020, effective on March 1, 2022, as unsafe due to its infertility and reproductive system risks—and related material facts and risks.

The Advent Fund Defendants argue that the AC should be dismissed for three primary reasons. First, they claim that Plaintiff's claims against them are time-barred because the original Amended Complaint (ECF No. 72, the "Original AC"), which added them as Defendants for the first time, was filed on April 28, 2023—supposedly more than a year after the applicable one-year statute of limitations period began to run. Advent MTD 2-4. Second, the Advent Funds contend that they are not adequately pled to be "statutory sellers" under Section 12(a)(2).[2] Advent MTD 5-6. Lastly, the Advent Funds also argue that the AC does not adequately plead their "control" for purposes of Section 15 liability. Advent MTD 6-7.

Each of these challenges is meritless. First, for the reasons set forth in Section IV.A. of Plaintiff's Opposition to the Underwriter Defendants' motion to dismiss ("LP Underwriters Opposition"), filed concurrently herewith, Plaintiff's claims against the Advent Funds are timely.

Second, the AC adequately pleads that the Advent Fund Defendants, which were identified as "*selling* stockholders" in the Offering Documents, are liable as statutory sellers under Section 12(a)(2). Section 12(a)(2) imposes liability not only on direct sellers of shares who pass title to the purchaser or acquirer, but also on those who engage in solicitation of the sale of shares in the IPO for their own financial gain, as here. Importantly, the Advent Fund Defendants' argument that the AC does not sufficiently allege such solicitation overlooks recent Ninth Circuit precedent, which

---

[2] The Advent Fund Defendants also assert a fourth purported basis for dismissal—that the AC fails to adequately plead any material misstatements or omissions in the Offering Documents, as required under both Section 11 and Section 12(a)(2) claims. But they do not make any substantive arguments of their own and instead incorporate by reference the related sections of the Olaplex MTD. This argument fails for the reasons discussed in Plaintiff's opposition to the latter brief.

makes clear that the AC need not allege "active" and "direct" communications with the plaintiff to plead solicitation, as the Advent Fund Defendants insist. Advent MTD 5-6. Further, the Advent Fund Defendants ignore—and thus concede—a key factor in the solicitation analysis, which demonstrates they were motivated by their own financial interests: they received approximately ***$1.57 billion*** in proceeds as a result of Olaplex's IPO. *See* Dugan Decl. Ex. A at 2, 155 of 239. Likewise, the AC includes numerous other factual allegations of the Advent Fund Defendants' active solicitation of sales in the IPO—including that their representatives were on the Olaplex Board of Directors and signed the Offering Documents—which are sufficient to satisfy Rule 8's lenient pleading standard on this fact-intensive issue at the pleading stage.

Third, the AC sufficiently pleads the Advent Fund Defendants' control under Section 15, which is another fact-intensive issue that is rarely appropriate for dismissal at this stage. Notably, the Advent Fund Defendants are wrong that allegations of substantial involvement in day-to-day operations are necessary for a finding of control. Advent MTD 6-7. Instead, the Ninth Circuit has upheld similar allegations of control as pled here—primarily, the undisputed fact that the Advent Funds were Olaplex's largest stockholders by far, owning almost ***90%*** of Olaplex's outstanding stock at the time of the IPO and thus wielding significant power over the Company's corporate actions, in addition to having several representatives on the Olaplex Board of Directors. These allegations are more than sufficient at this early stage. Thus, the Advent Fund Defendants' efforts to evade liability under Sections 11, 12, and 15 on these grounds fail.

## II.   FACTUAL BACKGROUND

To avoid duplicate briefing, Plaintiff incorporates by reference the factual background set forth in Section II of Plaintiff's Opposition to the Olaplex Defendants' Motion to Dismiss ("LP Olaplex Opposition"), filed concurrently herewith.[3] In

---

[3] All terms referenced herein have the same meaning as the terms defined in the LP Olaplex Opposition.

addition, the following facts are relevant to the specific arguments raised by the Advent Funds in their motion.

On or about September 29, 2021, Olaplex, controlled by the Selling Stockholder Defendants,[4] which collectively owned **over 96%** of the Company's common stock (**89.3%** of which was owned by the Advent Fund Defendants alone), registered for sale and sold 84,755,000 shares of their common stock for $21.00 per share, including an underwriter overallotment of 11,055,000 shares (*i.e.*, the IPO). ¶154; Dugan Decl. Ex. A at 155 of 239. These entities were identified collectively in the Prospectus as the "***selling* stockholders.**" ¶154. Indeed, the Offering Documents explained that it was the Selling Stockholder Defendants that were "offering" the stock sold in the IPO. ¶59; *see also* ¶¶313-14. Upon the sale of these 84,755,000 shares in the IPO, the proceeds—which totaled approximately **$1,686,412,612.50**—went to the Selling Stockholder Defendants, not the Company. *Id*. The Advent Fund Defendants received the vast majority of these proceeds—**$1,572,254,367.39** (and the remainder went to Mousse). *See* Dugan Decl. Ex. A at 2, 155 of 239. The IPO reduced the Selling Stockholder Defendants' collective stake in Olaplex common stock from 96.1% to 83% (¶154), and allowed the Advent Funds and Mousse to offload 13.6% and 13% of their outstanding stakes in Olaplex, respectively. *See* Dugan Decl. Ex. A at 155 of 239.

The Selling Stockholder Defendants had significant influence over all matters requiring stockholder approval through their ownership of 96.1% of the Company's common stock at the time of the IPO. ¶57. Further, the Advent Funds had three representatives on the Olaplex Board of Directors—Defendant Glynn (Lead Director of Olaplex's Board and a Managing Director at Advent International Corporation ("AIC")), Defendant Mussafer (a Director on Olaplex's Board and Chairman and Managing Partner of AIC), and Defendant M. White (a Director on Olaplex's Board

---

[4] The "Selling Stockholder Defendants" refers collectively to the Advent Funds and Defendant Mousse.  These entities were identified collectively in the Prospectus as the "Selling Stockholders."  ¶154.

and a Principal at AIC). ¶¶29, 33, 35. The Advent Funds also had two affiliates on Olaplex's Board of Directors—Defendant Gurwitch (a Director on Olaplex's Board and an Operating Partner at AIC) and Defendant Zusi (a Director on Olaplex's Board, whose consulting firm, Global Retail Advisors, LLC, provides consulting services to AIC). ¶¶29, 31, 33, 35-36.

## III.    APPLICABLE LEGAL STANDARDS

In assessing a Rule 12(b)(6) motion, the Court must consider the complaint in its entirety, "accept all factual allegations . . . as true[,]" and construe them in the light most favorable to the plaintiff. *Tellabs, Inc. v. Makor Issues & Rts.*, 551 U.S. 308, 322 (2007). A complaint "does not need detailed factual allegations," *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 545 (2007), but rather must simply "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Asking for plausible grounds . . . does not impose a probability requirement at the pleading stage; it simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of" the claims alleged. *Twombly*, 550 U.S. at 556.

Section 11 imposes a "stringent standard of liability on the parties who play a direct role in a registered offering[,]" *Herman & MacLean v. Huddleston*, 459 U.S. 375, 381-82 (1983), *e.g.*, the issuer, the underwriters, and any person signing the registration statement, where the registration statement contains a material misstatement or omission. *Rubke v. Capitol Bancorp Ltd.*, 551 F.3d 1156, 1161 (9th Cir. 2009); *see also* 15 U.S.C. § 77k(a). Thus, a Section 11 claim "need only [allege] a material misstatement or omission" in the registration statement—not scienter, loss causation, or reliance. *Hildes v. Arthur Andersen LLP*, 734 F.3d 854, 856, 859-61 (9th Cir. 2013).

Similarly, Section 12(a)(2) of the Securities Act imposes civil liability on "[a]ny person who . . . offers or sells a security . . . by the use of any means or instruments . . . in interstate commerce . . . by means of a prospectus or oral communication, which

includes" a material misstatement or omission. 15 U.S.C. § 77l(a)(2); *Pirani v. Slack Techs., Inc.*, 445 F. Supp. 3d 367, 383 (N.D. Cal. 2020). In other words, "Section 12 liability (resulting from a false prospectus) is consistent with Section 11 liability (resulting from a false registration statement)." *Pirani v. Slack Techs., Inc.*, 13 F.4th 940, 949 (9th Cir. 2021), *vacated on other grounds and remanded*, 598 U.S. 759 (2023). Under Section 12(a)(2), liable statutory sellers include "not only traditional sellers"—*i.e.*, individuals or entities "who pass title to another—but also certain individuals [or entities] who engage in the solicitation of sales[.]" *In re Charles Schwab Corp. Sec. Litig.*, 257 F.R.D. 534, 548 (N.D. Cal. 2009).

Securities Act claims under both Section 11 and Section 12 are subject to the permissive notice pleading standards of Rule 8(a). *City of Dearborn Heights Act 345 Police & Fire Ret. Sys. v. Align Tech., Inc.*, 856 F.3d 605, 624 (9th Cir. 2017); *see also Knollenberg v. Harmonic, Inc.*, 152 F. App'x 674, 683 (9th Cir. 2005) ("Claims brought under Sections 11 and 12 of the 1933 Act are ***not*** subject to the heightened pleading requirements of the PSLRA.") (emphasis in original); *Charles Schwab*, 257 F.R.D. at 548 ("Section 12 claims, like the Section 11 claims, do not sound in fraud and Rule 8 rather than Rule 9(b) applies."). Rule 8(a) does not impose "an onerous burden" as "[s]pecific facts are not necessary; the statement need only give the defendant[s] fair notice of what . . . the claim is and the grounds upon which it rests." *Johnson v. Riverside Healthcare Sys., LP*, 534 F.3d 1116, 1122 (9th Cir. 2008).

## IV.    ARGUMENT

### A.    Plaintiff's Section 11 and 12 Claims Are Not Time-Barred

Plaintiff's claims against the Advent Fund Defendants, which were added as Defendants for the first time in the Original AC, are timely for the reasons set forth in the LP Underwriters Opposition. Because the Advent Fund Defendants make virtually identical statute of limitations arguments as the Underwriters, to avoid needless duplication, Plaintiff incorporates herein Section IV.A. of the LP Underwriters Opposition in response.

**B.    The AC Adequately Alleges That the Advent Funds Are Liable as Statutory Sellers Under Section 12(a)(2)**

The AC adequately pleads that the Advent Fund Defendants are liable as statutory sellers under Section 12(a)(2). Under the Supreme Court's standard in *Pinter v. Dahl*, Section 12(a)(2) creates liability for "statutory seller[s]" who either (1) "passed title, or other interest in the security, to the buyer for value" *or* (2) "successfully solicit[ed] the purchase" of the securities at issue, motivated "at least in part by a desire to serve his own financial interests or those of the securities owner." 486 U.S. 622, 642, 647 (1988). As the Ninth Circuit recently recognized in *Pino v. Cardone Capital, LLC*, "imposing liability beyond those who merely pass title to securities, *i.e.*, to brokers and others who solicit offers to purchase securities, 'furthers the purposes of the Securities Act—to promote full and fair disclosure of information to the public in the sales of securities.'" 55 F.4th 1253, 1259 (9th Cir. 2022) (citing *Pinter*, 486 U.S. at 646); *see also Primo v. Pac. Biosciences of Cal., Inc.*, 940 F. Supp. 2d 1105, 1125 (N.D. Cal. 2013) ("[L]iability under § 12 is not limited only to those who pass title to a purchaser.")

Plaintiffs adequately plead solicitation under the second prong of *Pinter* if they "allege[] more than mere participation. As many courts have found, the registration statement is itself a solicitation document." *Charles Schwab*, 257 F.R.D. at 549-50. Thus, "the act of signing a registration statement . . . is at least suggestive of solicitation activity." *Id.*; *see also In re Nat'l Golf Props., Inc.*, 2003 WL 23018761, at *3 (C.D. Cal. Mar. 19, 2003) ("allegations that an issuer signed a registration statement *is sufficient* to allege active solicitation"). Further, under *Pinter*, "the plaintiff must show that the defendants solicited purchase of the securities for their own financial gain." *Charles Schwab*, 257 F.R.D. at 548. Moreover, "[w]hether or not defendants actually solicited plaintiffs' sales is a factual question which should generally be left to the jury; *at this stage plaintiffs[] need only satisfy Rule 8(a)'s lenient pleading standards*." *Id.* at 550.

In Olaplex's IPO, *over 84 million* shares were sold to the investing public for proceeds of *over $1.6 billion.* ¶154. Someone must be the seller. In their collective briefing (ECF Nos. 127, 129-130, 132), all Defendants deny being statutory sellers. They cannot all be right, but they can each be wrong. Here, Plaintiff has adequately pled, under Rule 8's permissive standard, that the Advent Fund Defendants—which are identified as "*selling* stockholders" (together with Defendant Mousse) in the Offering Documents—are statutory sellers within the meaning of Section 12(a)(2).

At the very least, the Advent Fund Defendants are statutory sellers under *Pinter*'s second prong—*i.e.*, that they engaged in solicitation of shares in the IPO, "motivated at least in part by a desire to serve [their] own financial interests." *Pino*, 55 F.4th at 1259 (citing *Pinter*, 486 U.S. at 647). Notably, the Advent Fund Defendants do not address, and thus concede, the AC's allegations that their sales in the IPO were motivated at least in part by their own financial gain. *See* Advent MTD 5-6. For example, the AC alleges that the Advent Fund Defendants, as Selling Stockholders, sold shares of Olaplex common stock *owned by them* and that the "purpose of the IPO was for the Selling Stockholder Defendants to substantially reduce their investment in Olaplex by selling their Olaplex shares to the investing public." ¶57. Further, the Advent Fund Defendants collected their pro rata share of *over $1.6 billion in proceeds* from the IPO—*i.e.*, *$1,572,254,367.39*. ¶154; Dugan Decl. Ex. A at 2, 155 of 239. Notably, Defendants entirely disregard this allegation in their analysis. Thus, the Advent Fund Defendants were unequivocally motivated by a desire to serve their own financial interests.

Further, contrary to the Advent Funds Defendants' argument that Plaintiff's allegations of solicitation are "bare" and "conclusory" (Advent MTD 5), the AC alleges specific facts regarding their solicitation of the sale of Olaplex shares in the IPO. For example, the AC sets forth how many shares each Advent Fund Defendant owned before the IPO (¶¶39-54); that the Advent Fund Defendants received their pro rata share of *over $1.6 billion in proceeds* from the IPO (¶154); that the purpose of the IPO was

for the Selling Stockholder Defendants to substantially reduce their investment in Olaplex by selling their Olaplex shares to the investing public (¶57); that they controlled, and had significant influence over, the outcome of votes on all matters requiring approval of stockholders, including entering into significant corporate transactions (*id.*); that they exerted additional control and significant influence over the Company through their representatives on Olaplex's Board of Directors (Defendant Glynn (Lead Director), Defendant Mussafer, and Defendant M. White (*see* ¶¶29, 33, 35)), and the Advent Funds' two affiliates on Olaplex's Board (Defendant Gurwitch and Defendant Zusi)—***all five of whom signed the Offering Documents*** (¶¶29, 31, 33, 35-36, 57); and that they meaningfully participated in the preparation of the false and misleading Prospectus, including through roadshows and the marketing of Olaplex's common stock to investors, such as Plaintiff and the Class. ¶304. These allegations— particularly that ***five*** of the Olaplex Board members who signed the Offering Documents are representatives and/or affiliates of the Advent Funds—are sufficient under Rule 8's "lenient" standard at this stage. *See Charles Schwab*, 257 F.R.D. at 549-50 ("***the act of signing a registration statement . . . is at least suggestive of solicitation activity***"); *Pirani*, 445 F. Supp. 3d at 384-85 (allegations that the defendants signed the offering materials, solicited sales at an "Investor Day," along with financial motivation, were "enough facts to support an active solicitation theory"); *In re Portal Software, Inc., Sec. Litig.*, 2006 WL 2385250, at *4 (N.D. Cal. Aug. 17, 2006) ("defendants' solicitation activity [which] included participating in, and signing, the preparation of the false and misleading [p]rospectus" sufficient to establish "seller status for purposes of [a] motion [to dismiss]"); *Primo*, 940 F. Supp. 2d at 1125-26 (same).

Importantly, the Advent Fund Defendants' assertion that Plaintiff "does not allege that it had any ***direct contact or communication*** with any of the Advent Funds" (Advent MTD 5) ignores recent controlling precedent from the Ninth Circuit that such allegations are not required to plead solicitation. *Pino* specifically considered and rejected this argument: "Nor has the Supreme Court imposed a requirement that

solicitation under § 12 requires that a seller '***actively and directly' solicit*** a plaintiff's investment, as [d]efendants contend." 55 F.4th at 1259. Thus, after careful analysis of the legislative history and other considerations, the Ninth Circuit held that "***§ 12 contains no requirement that a solicitation be directed or targeted to a particular plaintiff***." *Id.* at 1260.

The Advent Funds' authorities, which all predate *Pino* and are thus overruled to the extent they required allegations of such active and direct communications with a plaintiff, do not compel a different result. *See In re Infonet Servs. Corp. Sec. Litig.*, 310 F. Supp. 2d 1080, 1102 (C.D. Cal. 2003) (finding no Section 12(a)(2) liability where "plaintiffs do not allege that [d]efendants [] ***personally or directly solicited any of the named [p]laintiffs***") (cited by Advent MTD 5-6 for this point); *Welgus v. TriNet Grp., Inc.*, 2017 WL 167708, at *22 (N.D. Cal. Jan. 17, 2017) (requiring a defendant to have had "some '***direct' role in the solicitation of the plaintiff***" to constitute active solicitation for purposes of Section 12(a)(2)) (cited by Advent MTD 6 for this point); *Mallen v. Alphatec Holdings, Inc.*, 861 F. Supp. 2d 1111, 1132 (S.D. Cal. 2012), *aff'd sub nom. Fresno Cnty. Emps.' Ret. Ass'n v. Alphatec Holdings, Inc.*, 607 F. App'x 694 (9th Cir. 2015) ("Nor are there sufficient allegations that [defendant] either prepared the [] [p]rospectus or how it used the [p]rospectus to ***actually*** solicit the purchase of the securities.") (cited by Advent MTD 6 for this point).

Finally, it is "well-settled that '[w]hether or not defendants actually solicited plaintiffs' sales is a factual question which should generally be left to the jury.'" *Rabkin v. Lion Biotechnologies, Inc.*, 2018 WL 905862, at *20 (N.D. Cal. 2018) (citing *Charles Schwab*, 257 F.R.D. at 550); *Portal Software*, 2006 WL 2385250, at *4 ("[W]hether an individual is a seller under section 12 is a question of fact, not properly decided on a motion to dismiss."). Therefore, the AC adequately pleads facts that, taken as true at this stage, are sufficient to allege that the Advent Fund Defendants are liable as statutory sellers under Section 12(a)(2) of the Securities Act.

## C.   The AC Adequately Alleges That the Advent Funds Are Liable as Control Persons Under Section 15

Section 15 of the 1933 Securities Act imposes secondary liability, or joint and several liability upon every person who controls any person liable under Section 11 or Section 12 of the Securities Act. 15 U.S.C. § 77o. While Section 15 of the 1933 Act and Section 20(a) of the 1934 Act are not identical, the controlling person analysis is the same and the statutes are considered parallel in nature. *Hollinger v. Titan Cap. Corp.*, 914 F.2d 1564, 1578 (9th Cir. 1990); *see also Durham v. Kelly*, 810 F.2d 1500, 1503 (9th Cir. 1987) ("'Controlling person' under both of the [] federal acts is given the same interpretation because section 20(a) [of the Exchange Act] is an analogue of section 15 of the Securities Act.").

To allege control person liability, "it is not necessary to show actual participation or the exercise of actual power" or that "defendant was a culpable participant in the violation." *Howard v. Everex Sys., Inc.*, 228 F.3d 1057, 1065-66 (9th Cir. 2000). "Control" means "'possession, direct or indirect, of the power to direct or cause the direction of the management and policies of a person, whether through ownership of voting securities, by contract, or otherwise.'" *Id.* at 1065 n.9 (quoting 17 C.F.R. § 230.405). The "'concept of control . . . should be construed liberally and flexibly.'" *In re BofI Holding, Inc. Sec. Litig.*, 2017 WL 2257980, at \*21, \*28 (S.D. Cal. May 23, 2017) (quoting *Wool v. Tandem Computs. Inc.*, 818 F.2d 1433, 1441 (9th Cir. 1987)) ("[T]he concept of control, in the context of the securities law, is an elusive notion for which no clear-cut rule or standard can be devised.").

Accordingly, it is ***not*** necessary to allege "involvement in the day-to-day activities of the company" to plead control, as the Advent Fund Defendants insist (Advent MTD 6-7). *BofI Holding*, 2017 WL 2257980, at \*28 (noting that the Ninth Circuit has found control pled and "did not analyze the defendants' day-to-day control or scrutinize the nexus between the defendant's ability to control the primary violator

and the actionable misrepresentations") (citing *No. 84 Emp.-Teamster Joint Council Pension Tr. Fund v. Am. W. Holding Corp.*, 320 F.3d 920, 945 (9th Cir. 2003)).

Importantly, whether a defendant is a control person is a complex and "***intensely factual question***." *Howard*, 228 F.3d at 1065; *see also Wool*, 818 F.2d at 1441 ("the issue of control is a complex question of fact requiring a close examination of the particular situation and organization"). Generally, the issue of control is so fact-intensive that it should not be resolved on a motion to dismiss. *See BofI Holding*, 2017 WL 2257980, at *21. Regardless, Plaintiff's well-pled allegations are more than sufficient to plead control person liability "under the lenient standard of 8(a)." *Pirani*, 445 F. Supp. 3d at 392.

First, because Plaintiff has adequately alleged primary violations of Sections 11 and 12(a)(2) of the Securities Act—for the reasons set forth in the LP Olaplex Opposition and the LP Underwriters Opposition, which are concurrently filed herewith and expressly incorporated herein—Plaintiff's Section 15 claims against the Advent Funds should also be sustained. *Erickson v. Corinthian Colls., Inc.*, 2015 WL 12732435, at *18 (C.D. Cal. April 22, 2015).

Second, Plaintiff has plausibly alleged that the Advent Funds are control persons under Section 15 given their majority stock ownership in Olaplex. The SEC defines such "control" to mean "the possession, direct or indirect, of the power to direct or cause the direction of the management and policies of a person, whether ***through the ownership of voting securities***, by contract, or otherwise." 17 C.F.R. § 230.405; *see also In re Alphabet, Inc. Sec. Litig.*, 1 F.4th 687, 702 (9th Cir. 2021) (quoting the same SEC regulation for Section 20(a) purposes); *In re Musicmaker.com Sec. Litig.*, 2001 WL 34062431, at *17 (C.D. Cal. June 4, 2001) (under 17 C.F.R. § 230.405, the definition of "control" includes "the phrase 'through ownership of voting securities,'" which "contemplate[s] that a ***majority or otherwise controlling shareholder*** is prima facie a controlling person of the corporation in which it owns a majority or controlling stake"). The AC details exactly such control here given the Advent Funds' majority

stock ownership in Olaplex and control of the Company's Board of Directors. ¶314; *see also In re Glob. Crossing, Ltd. Sec. Litig.*, 2005 WL 2990646, at *7-8 (S.D.N.Y Nov. 7, 2005) (holding that complaint adequately pled "control" by stockholder defendant by virtue of, *inter alia*, allegation that it employed board designee pled to be a primary violator). Notably, before the IPO, the Advent Funds owned **89.3%** of Olaplex stock—making them the majority stock owners by far. *See* Dugan Decl. Ex. A at 155 of 239. Even after the IPO, they still owned 77.1% of the Company's stock. *Id.* Based on stock ownership alone, the Advent Fund Defendants' control is evident. *See Am. W.*, 320 F.3d at 945-46 (control adequately pled based primarily on allegations that the defendants "were ***the largest stockholders*** of [the company], controlling approximately **57.4%** of the total voting power").

Moreover, the Advent Funds exerted additional control and significant influence over the Company, including whether it should enter into significant corporate transactions, through their representatives on the Olaplex Board of Directors— Defendants Glynn, Mussafer, and M. White—and affiliates Defendants Gurwitch and Zusi. ¶57. *See Am. W.*, 320 F.3d at 946 (that defendants "had some of their own officers seated on [the company's] Board of Directors" also helped plead control). Indeed, because the shares offered in the IPO were owned by the Advent Funds, if they did not want the offering to occur, such offering would not have occurred. ¶58. *See Pirani*, 445 F. Supp. 3d at 393 (allegation that defendant caused issuer to effectuate a transaction "in order to cash out their shares" constituted indicia of control).

These allegations are more than sufficient to allege control at this stage. *See Am. W.*, 320 F.3d at 945-46 (preexisting shareholder relationship, position as largest shareholder, and power to elect board members satisfies the traditional indicia of control); *In re UTStarcom, Inc. Sec. Litig.*, 617 F. Supp. 2d 964, 979-80 (N.D. Cal. 2009) (largest shareholder plus power to appoint board designee sufficient to plead control over company). Because the AC plausibly alleges control by the Advent Fund Defendants, their motion to dismiss Plaintiff's Section 15 claim should be denied.

## V.    CONCLUSION

For the foregoing reasons, the Advent Fund Defendants' motion to dismiss should be denied in its entirety. If the Court grants any part of this motion, Plaintiff respectfully requests leave to amend. *Mirmehdi v. United States*, 689 F.3d 975, 985 (9th Cir. 2012) ("requests for leave [to amend] should be granted with 'extreme liberality[]' . . . .").

Dated: August 14, 2023            Respectfully Submitted,


                                  By: */s/ Irina Vasilchenko*
                                       IRINA VASILCHENKO

                                  **LABATON SUCHAROW LLP**
                                  CAROL C. VILLEGAS (*pro hac vice*)
                                  cvillegas@labaton.com
                                  IRINA VASILCHENKO (*pro hac vice*)
                                  ivasilchenko@labaton.com
                                  LISA M. STREJLAU (*pro hac vice*)
                                  lstrejlau@labaton.com
                                  DANIELLE IZZO (*pro hac vice*)
                                  dizzo@labaton.com
                                  140 Broadway
                                  New York, NY 10005
                                  Telephone: (212) 907-0700
                                  Facsimile: (212) 818-0477

                                  *Counsel for Lead Plaintiff*
                                  *Arkansas Teacher Retirement System*
                                  *and Lead Counsel for the Proposed Class*


                                  **GLANCY PRONGAY & MURRAY LLP**
                                  ROBERT V. PRONGAY (SBN 270796)
                                  rprongay@glancylaw.com
                                  CHARLES H. LINEHAN (SBN 307439)
                                  clinehan@glancylaw.com
                                  1925 Century Park East, Suite 2100
                                  Los Angeles, CA 90067

Telephone: (310) 201-9150
Facsimile: (310) 432-1495

*Liaison Counsel for Lead Plaintiff*
*Arkansas Teacher Retirement System and the*
*Proposed Class*