**GLANCY PRONGAY & MURRAY LLP**
ROBERT V. PRONGAY (SBN 270796)
rprongay@glancylaw.com
CHARLES H. LINEHAN (SBN 307439)
clinehan@glancylaw.com
1925 Century Park East, Suite 2100
Los Angeles, CA 90067
Telephone: (310) 201-9150
Facsimile: (310) 432-1495

*Liaison Counsel for Lead Plaintiff*
*Arkansas Teacher Retirement*
*System and the Proposed Class*

**LABATON SUCHAROW LLP**
CAROL C. VILLEGAS (*pro hac vice*)
cvillegas@labaton.com
IRINA VASILCHENKO (*pro hac vice*)
ivasilchenko@labaton.com
LISA M. STREJLAU (*pro hac vice*)
lstrejlau@labaton.com
DANIELLE IZZO (*pro hac vice*)
dizzo@labaton.com
140 Broadway
New York, NY 10005
Telephone: (212) 907-0700
Facsimile: (212) 818-0477

*Counsel for Lead Plaintiff*
*Arkansas Teacher Retirement System*
*and Lead Counsel for the Proposed Class*

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| LESLIE LILIEN, Individually and on Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br> v. <br><br> OLAPLEX HOLDINGS, INC., JUE WONG, ERIC TIZIANI, TIFFANY WALDEN, CHRISTINE DAGOUSSET, TRICIA GLYNN, DEIRDRE FINDLAY, JANET GURWITCH, MARTHA MORFITT, DAVID MUSSAFER, EMILY | No. 2:22-cv-08395-SVW(SKx) <br><br> <u>CLASS ACTION</u> <br><br> **LEAD PLAINTIFF'S OPPOSITION TO DEFENDANT MOUSSERENA, L.P.'S MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(B)(6)** <br><br> <u>**DEMAND FOR JURY TRIAL**</u> |

LEAD PLAINTIFF'S OPPOSITION TO DEFENDANT MOUSSERENA, L.P.'S MOTION TO DISMISS
NO. 2:22-CV-08395-SVW(SKx)

WHITE, MICHAEL WHITE, PAULA ZUSI, ADVENT INTERNATIONAL GPE IX LIMITED PARTNERSHIP, ADVENT INTERNATIONAL GPE IX-B LIMITED PARTNERSHIP, ADVENT INTERNATIONAL GPE IX-C LIMITED PARTNERSHIP, ADVENT INTERNATIONAL GPE IX-F LIMITED PARTNERSHIP, ADVENT INTERNATIONAL GPE IX-G LIMITED PARTNERSHIP, ADVENT INTERNATIONAL GPE IX-H LIMITED PARTNERSHIP ADVENT INTERNATIONAL GPE IX-I LIMITED PARTNERSHIP ADVENT INTERNATIONAL GPE IX-A SCSP, ADVENT INTERNATIONAL GPE IX-D SCSP, ADVENT INTERNATIONAL GPE IX-E SCSP, ADVENT INTERNATIONAL GPE IX STRATEGIC INVESTORS SCSP, ADVENT PARTNERS GPE IX LIMITED PARTNERSHIP, ADVENT PARTNERS GPE IX-A LIMITED PARTNERSHIP, ADVENT PARTNERS GPE IX CAYMAN LIMITED PARTNERSHIP, ADVENT PARTNERS GPE IX-A CAYMAN LIMITED PARTNERSHIP, ADVENT PARTNERS GPE IX-B CAYMAN LIMITED PARTNERSHIP, MOUSSERENA, L.P., GOLDMAN SACHS & CO. LLC, J.P. MORGAN SECURITIES LLC, MORGAN STANLEY & CO. LLC, BARCLAYS CAPITAL INC., BOFA SECURITIES, INC., EVERCORE GROUP L.L.C., JEFFERIES LLC, RAYMOND JAMES & ASSOCIATES, INC., COWEN AND COMPANY, LLC, PIPER SANDLER & CO., TRUIST SECURITIES, INC., TELSEY ADVISORY GROUP LLC, DREXEL HAMILTON, LLC, and LOOP CAPITAL MARKETS LLC,

    Defendants.

Hearing Date: September 11, 2023
Hearing Time: 1:30 p.m.
Courtroom:  10A
Judge: Hon. Stephen V. Wilson

LEAD PLAINTIFF'S OPPOSITION TO DEFENDANT MOUSSERENA, L.P.'S MOTION TO DISMISS
No. 2:22-CV-08395-SVW(SKX)

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................. ii

I.      PRELIMINARY STATEMENT ................................................................. 1

II.     FACTUAL BACKGROUND ..................................................................... 3

III.    APPLICABLE LEGAL STANDARDS ..................................................... 4

IV.     ARGUMENT............................................................................................... 6

      A.      The AC Plausibly Alleges Material Misstatements and Omissions ........ 6

      B.      Plaintiff's Section 11 and Section 12 Claims Are Not Time-Barred....... 8

      C.      The AC Adequately Alleges That Mousse Is Liable as a Statutory Seller Under Section 12(a)(2) ................................................................. 8

      D.      The AC Adequately Alleges That Mousse Is Liable as a Control Person Under Section 15...............................................................12

V.      CONCLUSION ........................................................................................16

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Alphabet Sec. Litig.*,
    1 F.4th 687 (9th Cir. 2021)..................................................................................14

*United States ex rel. Anita Silingo v. WellPoint, Inc.*,
    904 F.3d 667 (9th Cir. 2018)...............................................................................12

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)..............................................................................................4

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007)..............................................................................................4

*In re BofI Holding, Inc. Sec. Litig.*,
    2017 WL 2257980 (S.D. Cal. May 23, 2017).................................................13, 14

*In re Cannavest Corp. Sec. Litig.*,
    307 F. Supp. 3d 222 (S.D.N.Y. 2018) .................................................................14

*In re Charles Schwab Corp. Sec. Litig.*,
    257 F.R.D. 534 (N.D. Cal. 2009) ...............................................................5, 9, 10

*City of Dearborn Heights Act 345 Police & Fire Ret. Sys. v. Align Tech., Inc.*,
    856 F.3d 605 (9th Cir. 2017).................................................................................5

*In re Convergent Techs. Sec. Litig.*,
    108 F.R.D. 328 (N.D. Cal. 1985) ............................................................ 14, 15, 16

*Davis v. Adler*,
    2020 WL 376153 (S.D. Cal. Jan. 23, 2020).........................................................12

*Durham v. Kelly*,
    810 F.2d 1500 (9th Cir. 1987)..............................................................................13

*Erickson v. Corinthian Colls., Inc.*,
    2015 WL 12732435 (C.D. Cal. April 22, 2015) ..................................................14

*Flynn v. Sientra, Inc.*,
    2016 WL 3360676 (C.D. Cal. June 9, 2016) .......................................................10

*Herman & MacLean v. Huddleston*,
    459 U.S. 375 (1983)................................................................................................5

*Hildes v. Arthur Andersen LLP*,
    734 F.3d 854 (9th Cir. 2013)..................................................................................5

*Hollinger v. Titan Cap. Corp.*,
    914 F.2d 1564 (9th Cir. 1990)..............................................................................13

*Howard v. Everex Sys., Inc.*,
    228 F.3d 1057 (9th Cir. 2000)........................................................................13, 14

*Johnson v. Riverside Healthcare Sys., LP*,
    534 F.3d 1116 (9th Cir. 2008).......................................................................... 5-6

*In re Keegan Mgmt. Co. Sec. Litig.*,
    1991 WL 253003 (N.D. Cal. Sept. 10, 1991) ......................................................10

*Knollenberg v. Harmonic, Inc.*,
    152 F. App'x 674 (9th Cir. 2005)............................................................................5

*In re Lyft Inc. Sec. Litig.*,
    484 F. Supp. 3d 758 (N.D. Cal. 2020)....................................................................6

*Mirmehdi v. United States*,
    689 F.3d 975 (9th Cir. 2012).................................................................................16

*In re MusicMaker.com Sec. Litig.*,
    2001 WL 34062431 (C.D. Cal. June 4, 2001) ......................................................11

*No. 84 Emp.-Teamster Joint Council Pension Tr. Fund v. Am. W.*
    *Holding Corp.*,
    320 F.3d 920 (9th Cir. 2003)...........................................................................13, 16

*Pino v. Cardone Cap., LLC*,
    55 F.4th 1253 (9th Cir. 2022) ...........................................................................9, 11

*Pinter v. Dahl*,
    486 U.S. 622 (1988)...........................................................................................8, 9

*Pirani v. Slack Techs., Inc.*,
    13 F.4th 940 (9th Cir. 2021), *vacated on other grounds and*
    *remanded*, 598 U.S. 759 (2023) .............................................................................5

*Pirani v. Slack Techs., Inc.*,
  445 F. Supp. 3d 367 (N.D. Cal. 2020)......................................................5, 14

*In re Portal Software, Inc. Sec. Litig.*,
  2006 WL 2385250 (N.D. Cal. Aug. 17, 2006) ...............................................12

*Primo v. Pac. Biosciences of Cal., Inc.*,
  940 F. Supp. 2d 1105 (N.D. Cal. 2013)............................................................9

*In re Quality Sys., Inc. Sec. Litig.*,
  865 F.3d 1130 (9th Cir. 2017)................................................................... 6-7

*Rabkin v. Lion Biotechnologies, Inc.*,
  2018 WL 905862 (N.D. Cal. Feb. 15, 2018) .................................................12

*In re Refco, Inc. Sec. Litig.*,
  503 F. Supp. 2d 611 (S.D.N.Y. 2007) ...................................................... 14-15

*Richman v. Goldman Sachs Grp., Inc.*,
  868 F. Supp. 2d 261 (S.D.N.Y. 2012) ..............................................................6

*Rubke v. Capitol Bancorp Ltd.*,
  551 F.3d 1156 (9th Cir. 2009).........................................................................5

*SEC v. Qi*,
  2018 WL 5263187 (C.D. Cal. Mar. 21, 2018)................................................11

*Tellabs, Inc. v. Makor Issues & Rts.*,
  551 U.S. 308 (2007)........................................................................................4

*United States v. United Healthcare Ins. Co.*,
  848 F.3d 1161 (9th Cir. 2016)........................................................................11

*Welgus v. TriNet Grp., Inc.*,
  2017 WL 167708 (N.D. Cal. Jan. 17, 2017)............................................. 10-11

*In re Wet Seal, Inc. Sec. Litig.*,
  518 F. Supp. 2d 1148 (C.D. Cal. 2007) ...........................................................6

*Wool v. Tandem Computs. Inc.*,
  818 F.2d 1433 (9th Cir. 1987) .......................................................................13

**Statutes & Rules**

17 C.F.R. § 230.405.................................................................................13, 14

1933 Securities Act of 1933 Section 11, 15 U.S.C. § 77k ..............................*passim*

1933 Securities Act of 1933 Section 12, 15 U.S.C. § 77l ...............................*passim*

1933 Securities Act of 1933 Section 15, 15 U.S.C. § 77o ..............................*passim*

Fed. R. Civ. P. Rule 8 ...................................................................................*passim*

Fed. R. Civ. P. Rule 9(b)................................................................................. 5-6

Fed. R. Civ. P. Rule 12(b)(6) .............................................................................4

Lead Plaintiff Arkansas Teacher Retirement System ("Plaintiff") respectfully submits this memorandum in opposition to the Motion to Dismiss For Failure to State a Claim Pursuant to Federal Rule of Civil Procedure 12(b)(6) and Memorandum In Support of Its Motion to Dismiss (ECF Nos. 127, 127-1, the "Mousse MTD") filed by Defendant Mousserena L.P. ("Mousse").[1]

## I.    PRELIMINARY STATEMENT

This strict liability securities class action, brought solely under Sections 11, 12(a)(2), and 15 of the Securities Act of 1933, arises from the September 2021 Initial Public Offering ("IPO") by Olaplex, a luxury hair care brand. As more fully discussed in Plaintiff's concurrently filed opposition briefs to the other Defendants' motions to dismiss, Olaplex's IPO registration statement and prospectus (the "Offering Documents") contained many statements, including hypothetical risk warnings, that were materially false and misleading because they failed to disclose that Olaplex's best-selling No. 3 product contained lilial—an ingredient that the E.U. banned in late 2020, effective on March 1, 2022, as unsafe due to its infertility and reproductive system risks—and related material facts and risks.

Defendant Mousse asserts four primary bases for dismissing the AC. First, Mousse contends that the AC fails to adequately plead any material misstatements or omissions in the Offering Documents, as required under both Section 11 and Section 12(a)(2) claims. Mousse's falsity and materiality arguments essentially parrot those proffered by its fellow Defendants (*i.e.*, the Olaplex MTD), which Mousse also expressly incorporates by reference. Accordingly, Mousse's virtually identical

---

[1] Citations to paragraphs ("¶") are to paragraphs in the Revised Consolidated Class Action Complaint for Violations of the Federal Securities Laws filed on June 22, 2023 (ECF No. 123, the "AC"). Unless otherwise noted, emphasis is added, and internal citations and quotation marks are omitted throughout. This memorandum is also submitted in opposition to the Motions to Dismiss filed by (i) Olaplex Holdings, Inc. ("Olaplex" or the "Company") and the Individual Defendants (together, the "Olaplex Defendants") (ECF Nos. 130 and 130-1, the "Olaplex MTD"), (ii) the Advent Funds (ECF Nos. 129 and 129-1, the "Advent MTD"), and (iii) the Underwriter Defendants (ECF Nos. 132 and 132-1, the "Underwriters MTD"), to the extent those motions incorporate by reference certain portions of the Mousse MTD.

arguments on these issues fail for the reasons discussed in Plaintiff's concurrently filed opposition to the Olaplex MTD (the "LP Olaplex Opposition"), which are expressly incorporated herein to avoid needless duplication. *See* LP Olaplex Opposition, Section IV.A.

Second, Defendant Mousse asserts that Plaintiff's claims are time-barred because the April 28, 2023 original Amended Complaint (ECF No. 72, the "Original AC"), which added Mousse as a Defendant for the first time, was filed more than a year after the applicable one-year statute of limitations period began to run in March 2022. Mousse MTD 12-13. This argument is virtually identical to the one made by the other newly added Defendants, *i.e.*, the Underwriters and the Advent Funds. Thus, Plaintiff's claims against Mousse are not time-barred for the same reasons as set forth in its Opposition to the Underwriter Defendants' MTD ("LP Underwriters Opposition"), which fully addresses this issue and is expressly incorporated herein to avoid needless duplication. *See* LP Underwriters Opposition, Section IV.A.

Third, like all the other Defendants, Mousse contends that it is not adequately pled to be a "statutory seller" under Section 12(a)(2). *Id.* at 13-16. Not so. Here, the AC adequately alleges that Defendant Mousse, identified as a "***selling*** stockholder" together with the Advent Funds in the Offering Documents, is a statutory seller within the meaning of Section 12(a)(2). Section 12(a)(2) imposes liability not only on direct sellers of shares who pass title to the purchaser or acquirer, but also on those who engage in solicitation of the sale of shares in the IPO for their own financial gain, as here. Notably, Defendant Mousse's focus on the lack of allegations about any "active" and "direct" solicitation by Mousse of Plaintiff's sales (Mousse MTD 14) is misplaced. Under recent Ninth Circuit precedent, which Mousse ignores, such allegations are not required to plead solicitation. Also absent from Defendant Mousse's motion (and thus conceded) is the ***$114 million*** in proceeds that it received from the IPO, a key factor in the statutory seller analysis. The AC's other allegations regarding Mousse's solicitation of sales in the IPO, including its involvement in preparation of the Offering Documents

and IPO roadshow marketing, which must be taken as true at this stage, are sufficient to satisfy Rule 8's lenient pleading standard on this fact-intensive issue at this stage.

Finally, Defendant Mousse argues that the AC does not adequately plead it was a "control person" for purposes of Section 15 liability. *Id.* at 16-19. This argument improperly invites this Court to resolve yet another fact-intensive issue at the pleading stage. Importantly, substantial involvement in day-to-day operations is not required for a finding of control (*id.* at 17). Nor is Defendant Mousse's minority stock ownership dispositive at this stage, as it insists. *Id.* at 17-18. The AC has sufficiently alleged that, by virtue of Mousse's stock ownership at the time of the IPO, particularly when viewed collectively as part of a powerful "control group" with the Advent Funds, that Mousse had control over the Company under the lenient pleading standard of Rule 8. Specifically, because Mousse and the Advent Funds were referred to collectively as the "selling stockholders" in the Offering Documents and together owned ***96%*** of Olaplex stock before the IPO, it is at least plausible that Defendant Mousse acted in concert with the Advent Funds to wield significant power over the Company's corporate actions, including whether to conduct signficant corporate transactions like the IPO. Because the AC's allegations are amply sufficient, Defendant Mousse is liable under Sections 11, 12, and 15.

## II.    FACTUAL BACKGROUND

To avoid duplicate briefing, Plaintiff incorporates by reference the factual background set forth in Section II of the LP Olaplex Opposition. In addition, the following facts are relevant to the specific arguments raised by Defendant Mousse in its motion.

On or about September 29, 2021, Olaplex, controlled by the Selling Stockholder Defendants,[2] who collectively owned ***over 96%*** of Olaplex's common stock (6.8% of which was owned by Defendant Mousse), registered for sale and sold 84,755,000

---

[2] The "Selling Stockholder Defendants" refers collectively to Defendant Mousse and the Advent Fund Defendants (as defined in the AC).

shares of their common stock for $21.00 per share, including an underwriter overallotment of 11,055,000 shares (*i.e.*, the IPO). ¶154; Dugan Decl. Ex. A at 155 of 239. These entities were identified collectively in the Prospectus as the "***selling*** stockholders." *Id.* Indeed, the Offering Documents explained that it was the Selling Stockholder Defendants that were "offering" the stock sold in the IPO. ¶59; *see also* ¶¶313-14. Upon the sale of these 84,755,000 shares in the IPO, the proceeds—which totaled approximately ***$1,686,412,612.50***—went to the Selling Stockholder Defendants, not the Company. *Id*. The Advent Fund Defendants and Defendant Mousse received their pro rata shares of these proceeds—Mousse received approximately ***$114,158,245.11***. *Id.*; Dugan Decl. Ex. A at 2, 155 of 239. The IPO reduced the Selling Stockholder Defendants' collective stake in Olaplex common stock from 96.1% to 83% (¶154), and allowed the Advent Funds and Mousse to offload approximately 13.6% and 13% of their outstanding stakes in Olaplex, respectively. Dugan Decl. Ex. A at 155 of 239. Further, Defendant Mousse participated in the preparation of the false and misleading Prospectus, roadshows, and marketing of Olaplex's common stock to investors, such as Plaintiff and other members of the Class. ¶304.

## III.   APPLICABLE LEGAL STANDARDS

In assessing a Rule 12(b)(6) motion, the Court must consider the complaint in its entirety, "accept all factual allegations . . . as true[,]" and construe them in the light most favorable to the plaintiff. *Tellabs, Inc. v. Makor Issues & Rts.*, 551 U.S. 308, 322 (2007). A complaint "does not need detailed factual allegations," *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 545 (2007), but rather must simply "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Asking for plausible grounds . . . does not impose a probability requirement at the pleading stage; it simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of" the claims alleged. *Twombly*, 550 U.S. at 556.

Section 11 imposes a "stringent standard of liability on the parties who play a direct role in a registered offering[,]" *Herman & MacLean v. Huddleston*, 459 U.S. 375, 381-82 (1983), where the registration statement contains a material misstatement or omission. *Rubke v. Capitol Bancorp Ltd.*, 551 F.3d 1156, 1161 (9th Cir. 2009); *see also* 15 U.S.C. § 77k(a). Thus, a Section 11 claim "need only [allege] a material misstatement or omission" in the registration statement—not scienter, loss causation, or reliance. *Hildes v. Arthur Andersen LLP*, 734 F.3d 854, 856, 859-61 (9th Cir. 2013).

Similarly, Section 12(a)(2) of the Securities Act imposes civil liability on "[a]ny person who . . . offers or sells a security . . . by the use of any means or instruments . . . in interstate commerce . . . by means of a prospectus or oral communication, which includes" a material misstatement or omission. 15 U.S.C. § 77l(a)(2); *Pirani v. Slack Techs., Inc.*, 445 F. Supp. 3d 367, 383 (N.D. Cal. 2020). In other words, "Section 12 liability (resulting from a false prospectus) is consistent with Section 11 liability (resulting from a false registration statement)." *Pirani v. Slack Techs., Inc.*, 13 F.4th 940, 949 (9th Cir. 2021), *vacated on other grounds and remanded*, 598 U.S. 759 (2023). Under Section 12(a)(2), liable statutory sellers include "not only traditional sellers"—*i.e.*, individuals or entities "who pass title to another—but also certain individuals [or entities] who engage in the solicitation of sales[.]" *In re Charles Schwab Corp. Sec. Litig.*, 257 F.R.D. 534, 548 (N.D. Cal. 2009).

Securities Act claims under both Section 11 and Section 12 are subject to the permissive notice pleading standards of Rule 8(a). *City of Dearborn Heights Act 345 Police & Fire Ret. Sys. v. Align Tech., Inc.*, 856 F.3d 605, 624 (9th Cir. 2017); *see also Knollenberg v. Harmonic, Inc.*, 152 F. App'x 674, 683 (9th Cir. 2005) ("Claims brought under Sections 11 and 12 of the 1933 Act are ***not*** subject to the heightened pleading requirements of the PSLRA.") (emphasis in original); *Charles Schwab*, 257 F.R.D. at 548 ("Section 12 claims, like the Section 11 claims, do not sound in fraud and Rule 8 rather than Rule 9(b) applies"). Rule 8(a) does not impose "an onerous burden" as "[s]pecific facts are not necessary; the statement need only give the

defendant[s] fair notice of what . . . the claim is and the grounds upon which it rests." *Johnson v. Riverside Healthcare Sys., LP*, 534 F.3d 1116, 1122 (9th Cir. 2008).

## IV.   ARGUMENT

### A.   The AC Plausibly Alleges Material Misstatements and Omissions

As stated in further detail in the LP Olaplex Opposition, the AC pleads material misstatements and omissions in Olaplex's Offering Documents. Because Defendant Mousse makes virtually identical arguments as the Olaplex Defendants, to avoid needless duplication, Plaintiff expressly incorporates herein Section IV of the LP Olaplex Opposition.

Further, and to the extent that Defendant Mousse relies on additional authorities to support its identical arguments, those authorities are similarly inapposite. For example, in *In re Wet Seal, Inc. Sec. Litig.*, on which Defendant Mousse relies in support of its puffery argument, the statements at issue included classic puffing phrases like, "[w]e are ***pleased*** with the continuation of . . . improvement in our sales," and "I am personally ***very excited*** about the fashion." 518 F. Supp. 2d 1148, 1167 (C.D. Cal. 2007) (*see* Mousse MTD 7). These statements are considerably different from those alleged here, which affirmatively and specifically touted Olaplex's "strong reputation" and "strong and loyal following" on social media as providing a "unique competitive advantage and foundation for growth." ¶¶171, 178, 180; *see also* ¶¶187, 189. *See In re Lyft Inc. Sec. Litig.*, 484 F. Supp. 3d 758, 767, 769 (N.D. Cal. 2020) (statements touting brand reputation, including "[w]e believe that building a strong reputation and brand as a safe, reliable and affordable platform . . . [is] critical," are actionable and misleading); *Richman v. Goldman Sachs Grp., Inc.*, 868 F. Supp. 2d 261, 277, 279 (S.D.N.Y. 2012) (statements ***touting company's "reputation," e.g., "[o]ur reputation is one of our most important assets***," were "plausibly allege[d]" as "materially misleading" based on failure to disclose alleged misconduct and conflicts in certain transactions). This is especially so in light of Defendant Mousse's selective quotations of the alleged misstatements, taking purportedly puffing statements out of context. *See*

*In re Quality Sys., Inc. Sec. Litig.*, 865 F.3d 1130, 1143 (9th Cir. 2017) ("[E]ven general statements of optimism, when taken in context," are actionable if they "address specific aspects of a company's operation that the speaker knows to be performing poorly.").

Mousse's other materiality and falsity arguments fail for the reasons discussed in the LP Olaplex Opposition, Sections IV.A.1-5. In particular, Mousse's characterization of the lilial issue as mere "***details*** concerning a ***minor*** product reformulation" (Mousse MTD 9) entirely ignores numerous allegations in the AC— including, for example, that the affected No. 3 product was admittedly Olaplex's "***hero***" and "***best-selling***" product that was critical to the Company's brand reputation and financial success. Likewise, it ignores that Olaplex reformulated the No. 3 product to remove an ingredient that was banned by the E.U. because that chemical was deemed ***unsafe*** for consumer use due to its infertility and reproductive system risks. *E.g.*, ¶¶122-31. It further ignores that, despite the June 2021 reformulation, Olaplex continued selling old stock of its No. 3 product, which still contained lilial, at the time of the IPO and for months afterwards (that it only later admitted). Indeed, the consumer backlash against Olaplex after the lilial issue was revealed in early 2022 and its severe, adverse impact on the Company's sales in 2022 belie that this information constituted mere "minor" "details" that Defendants had no duty to disclose in the Offering Documents, at the same time as they touted their purportedly "clean" products and "strong" brand reputation. *E.g.*, ¶¶98-100, 187-92. Indeed, it cannot be said that reasonable investors would find the omitted information regarding Olaplex's lilial issue "so obviously unimportant" in their decision to buy shares in the IPO. *See* LP Olaplex Opposition at Section IV.A.5.c.

Likewise fanciful are Mousse's assertions that the Offering Documents "***fully*** and ***transparently***" disclosed the "***precise***" risks that "eventually materialized" due to the lilial issue and that ***none*** of the undisclosed facts existed at the time of the IPO. Mousse MTD 9-11. In fact, nowhere did the Offering Documents ***even mention*** the ***already***-enacted E.U. ban, that the ban ***already*** applied to Olaplex's flagship No. 3

product, that the Company thus had *already* reformulated that product due to the ban, or that it was *still* selling old stock of No. 3 product with lilial *at the time of the IPO*. If Defendants had simply disclosed those facts, then-existing and known to them at the time of the IPO, then investors could have evaluated the associated specific risks for themselves, and Defendants would be off the hook. *See* LP Olaplex Opposition at Section IV.A.1. They did not, instead only generally warning of *purely hypothetical* risks, such as that some laws "may" require Olaplex to reformulate a product to remove an ingredient deemed "unsafe" by regulators, creating the misleading impression that nothing like that had yet occurred. Ninth Circuit law—including in recent decisions reaffirming this principle that all Defendants entirely ignore—is clear that such *hypothetical* risk warnings are actionable when *some* of those risks have *already* occurred, as here. *See id.* Thus, Mousse's (and all Defendants') recurrent complaint that the AC unfairly faults them for failing "to predict" the future (Mousse MTD 10) ignores that reality. For these reasons and those articulated in the LP Olaplex Opposition, the Section 11 and Section 12(a)(2) claims against Mousse necessarily survive.

**B.      Plaintiff's Section 11 and Section 12 Claims Are Not Time-Barred**

Plaintiff's claims against Defendant Mousse, who was added as a defendant for the first time in the April 28, 2023 Original AC, are timely for the same reasons as set forth in the LP Underwriters Opposition. Because Defendant Mousse makes virtually identical statute of limitations arguments as the Underwriter Defendants (and the Advent Fund Defendants), to avoid needless duplication, Plaintiff expressly incorporates herein Section IV.A. of the LP Underwriters Opposition in response.

**C.      The AC Adequately Alleges That Mousse Is Liable as a Statutory Seller Under Section 12(a)(2)**

The AC adequately pleads that Mousse is liable as a statutory seller under Section 12(a)(2). Under the Supreme Court's standard in *Pinter v. Dahl*, Section 12(a)(2) creates liability for "statutory seller[s]" who either (1) "passed title, or other

interest in the security, to the buyer for value" *or* (2) "successfully solicit[ed] the purchase" of the securities at issue, motivated "at least in part by a desire to serve his own financial interests or those of the securities owner." 486 U.S. 622, 642, 647 (1988). As the Ninth Circuit recently recognized in *Pino v. Cardone Capital, LLC*, "imposing liability beyond those who merely pass title to securities, *i.e.*, to brokers and others who solicit offers to purchase securities, 'furthers the purposes of the Securities Act—to promote full and fair disclosure of information to the public in the sales of securities.'" 55 F.4th 1253, 1259 (9th Cir. 2022) (citing *Pinter*, 486 U.S. at 646); *see also Primo v. Pac. Biosciences of Cal., Inc.*, 940 F. Supp. 2d 1105, 1125 (N.D. Cal. 2013) ("[L]iability under § 12 is not limited only to those who pass title to a purchaser.").

A plaintiff adequately pleads solicitation under the second prong of *Pinter* if she "allege[s] more than mere participation." *Charles Schwab*, 257 F.R.D. at 549. Further, under *Pinter*, "the plaintiff must show that the defendants solicited purchase of the securities for their own financial gain." *Id.* at 548. Moreover, "[w]hether or not defendants actually solicited plaintiffs' sales is a factual question which should generally be left to the jury; *at this stage plaintiffs[] need only satisfy Rule 8(a)'s lenient pleading standards*." *Id.* at 550.

Here, Plaintiff has adequately pled, under Rule 8's permissive standard, that Defendant Mousse, which was expressly identified as a "*selling* stockholder[]" for the IPO in the Prospectus (¶154), is a statutory seller based on at least the second prong of *Pinter*. In other words, the AC sufficiently alleges that Defendant Mousse engaged in solicitation of sales for the IPO, "motivated *at least in part* by a desire to serve [their] own financial interests." *Pino*, 55 F.4th at 1259 (citing *Pinter*, 486 U.S. at 646). Notably, Defendant Mousse conflates the relevant considerations under *Pinter*, completely ignoring, and thus conceding, the AC's allegations that Mousse's sales in the IPO were motivated at least in part by its own financial gain. *See* Mousse MTD 14. For example, the AC alleges that Defendant Mousse, as a Selling Stockholder, sold shares of Olaplex common stock *that it owned* and that the "purpose of the IPO was

for the Selling Stockholder Defendants to substantially reduce their investment in Olaplex by selling their Olaplex shares to the investing public." ¶57. Indeed, Defendant Mousse collected its pro rata share of over $1.6 billion in proceeds from the IPO—*i.e.*, ***$114 million***. ¶154; Dugan Decl. Ex. A at 2, 155 of 239. Notably, Defendant Mousse's motion entirely disregards this allegation. For all these reasons, Defendant Mousse was unequivocally motivated by a desire to serve its own financial interests. *Id.*; *see also In re Keegan Mgmt. Co. Sec. Litig.*, 1991 WL 253003, at *8-9 (N.D. Cal. Sept. 10, 1991) ("[p]laintiffs have specifically alleged that each defendant was a 'solicitor or seller' of securities" and "[b]y alleging that defendants were motivated by a desire to serve their financial interests, . . . plaintiffs have properly alleged defendants' 'seller' status").

The AC also alleges other facts regarding Defendant Mousse's solicitation of the sale of Olaplex shares in the IPO. For example, the AC sets forth how many shares Defendant Mousse owned before the IPO (¶56); that the purpose of the IPO was for the Selling Stockholder Defendants to substantially reduce their investment in Olaplex by selling their Olaplex shares to the investing public (¶57); that they controlled, and had significant influence over, the outcome of votes on all matters requiring approval of stockholders, including entering into significant corporate transactions (*id.*); and that they participated in the preparation of the false and misleading Prospectus, roadshows, and marketing of Olaplex's common stock to investors, such as Plaintiff and the Class. ¶304. These allegations are sufficient under Rule 8's "lenient" standard at this stage. *See Charles Schwab*, 257 F.R.D. at 549-50 (similar solicitation allegations, including "that certain defendants [who did not sign registration statement] were involved in the marketing" of the IPO, held sufficient to plead Section 12(a)(2) claim); *Flynn v. Sientra, Inc.*, 2016 WL 3360676, at *18 (C.D. Cal. June 9, 2016) (allegation that "[d]efendants offered, promoted, and sold [company's] common stock in the SPO" sufficient to state a §12 claim under Rule 8).

Importantly, Defendant Mousse contends that Plaintiff "must plead 'active solicitation' of the immediate sale—in other words, 'the defendant [must] be alleged

to have had *some direct role* in the solicitation of the *plaintiff*." Mousse MTD 14 (citing *Welgus v. TriNet Grp., Inc.*, 2017 WL 167708, at *22 (N.D. Cal. Jan. 17, 2017)). But this contention ignores recent controlling precedent from the Ninth Circuit that such allegations are *not required* to plead solicitation. *Pino* specifically considered and rejected this argument: "Nor has the Supreme Court imposed a requirement that solicitation under § 12 requires that a seller '*actively and directly' solicit* a plaintiff's investment, as [d]efendants contend." 55 F.4th at 1259. Thus, after careful analysis of the legislative history and other considerations, the Ninth Circuit held that "*§ 12 contains no requirement that a solicitation be directed or targeted to a particular plaintiff*." *Id.* at 1260. Defendant Mousse relies exclusively on authorities that predate *Pino*—namely, *TriNet* and *In re MusicMaker.com Securities Litigation*, 2001 WL 34062431, at *14 (C.D. Cal. June 4, 2001) (*see* Mousse MTD 15)—which are thus overruled to the extent they required such active and direct solicitation communications with a plaintiff.

Moreover, Defendant Mousse's argument that the AC improperly groups the Selling Stockholder Defendants together is without merit. Mousse MTD 15. First, the AC alleged them collectively as "selling stockholders" because that is how they were identified (grouped together) in the Offering Documents. ¶154. Second, the AC alleges each specific entity included in the definition of Selling Stockholder Defendants, including the specific number of shares that each entity owned at the time of the IPO. ¶¶39-56. Further, the sufficiency of the AC's allegations does not falter for having alleged claims against the Selling Stockholders collectively. *See, e.g.*, ¶¶57-59, 154-56, 301-17. The Ninth Circuit has confirmed that "[t]here is no flaw in a pleading . . . where collective allegations are used to describe the actions of multiple defendants who are alleged to have engaged in precisely the same conduct." *United States v. United Healthcare Ins. Co.*, 848 F.3d 1161, 1184 (9th Cir. 2016); *SEC v. Qi,* 2018 WL 5263187, at *4 (C.D. Cal. Mar. 21, 2018) (same). This is especially true here because the Offering Documents, which purported to give investors the necessary information

before deciding whether or not to invest in Olaplex's IPO, identified Mousse together with the Advent Funds as the "selling stockholders," and referred to them collectively throughout the Offering Documents. *See* ¶¶57-59, 154, 156.

In fact, when defendants are "largely 'alleged to have engaged in precisely the same conduct,' there was no reason (and no way) for [plaintiffs] to differentiate among those allegations that are common to the group." *See United States ex rel. Anita Silingo v. WellPoint, Inc.*, 904 F.3d 667, 678 (9th Cir. 2018). It cannot be reasonably said, as Defendant Mousse contends (Mousse MTD 18-19), that the AC does not "put the opposing party on notice of the wrong they allegedly committed so that they can adequately defend themselves," by referring to the Selling Stockholder Defendants collectively but alleging specific facts as to those Defendants. *Compare* ¶¶57-59, 154-56, 301-17 *with Davis v. Adler*, 2020 WL 376153, at *4 (S.D. Cal. Jan. 23, 2020) (complaint grouped ***all*** defendants together without distinguishing between their alleged conduct) (Mousse MTD 15).

In sum, Mousse's statutory seller argument inappropriately asks this Court to weigh facts and competing inferences at this early stage. *See In re Portal Software*, *Inc. Sec. Litig.,* 2006 WL 2385250, at *4 (N.D. Cal. Aug. 17, 2006) ("[W]hether an individual is a seller under section 12 is a question of fact, not properly decided on a motion to dismiss."); *Rabkin v. Lion Biotechnologies, Inc.*, 2018 WL 905862, at *20 (N.D. Cal. Feb. 15, 2018) ("It is "well-settled that '[w]hether or not defendants actually solicited plaintiffs' sales is a factual question which should generally be left to the jury.'"). Accordingly, the AC adequately pleads facts that, taken as true at this stage, are sufficient to allege that Defendant Mousse is liable as a statutory seller under Section 12(a)(2).

### D.    The AC Adequately Alleges That Mousse Is Liable as a Control Person Under Section 15

Section 15 of the 1933 Securities Act imposes secondary liability, or joint and several liability upon every person who controls any person liable under Section 11 or

Section 12 of the Securities Act. 15 U.S.C. § 77o. While Section 15 of the Securities Act and Section 20(a) of the Exchange Act are not identical, the controlling person analysis is the same and the statutes are considered parallel in nature. *Hollinger v. Titan Cap. Corp.*, 914 F.2d 1564, 1578 (9th Cir. 1990); *see also Durham v. Kelly*, 810 F.2d 1500, 1503 (9th Cir. 1987) ("controlling person" under both of the . . . federal acts is given the same interpretation because 'section 20(a) [of the Exchange Act] is an analogue of section 15 of the Securities Act.'").

To allege control person liability, "it is not necessary to show actual participation or the exercise of actual power" or that "defendant was a culpable participant in the violation." *Howard v. Everex Sys., Inc.*, 228 F.3d 1057, 1065 (9th Cir. 2000). "Control" means "'possession, direct or indirect, of the power to direct or cause the direction of the management and policies of a person, whether through ownership of voting securities, by contract, or otherwise.'" *Id.* at 1065 n.9 (quoting 17 C.F.R. § 230.405). The "'concept of control . . . should be construed liberally and flexibly.'" *In re BofI Holding, Inc. Sec. Litig.*, 2017 WL 2257980, at *21, *28 (S.D. Cal. May 23, 2017) (quoting *Wool v. Tandem Computs. Inc.*, 818 F.2d 1433, 1441 (9th Cir. 1987)). Accordingly, it is not necessary to allege involvement in "Olaplex's management or day-to-day operations" to plead control, as Mousse insists (Mousse MTD 17). *BofI Holding*, 2017 WL 2257980, at *28 (noting that the Ninth Circuit has found control pled and "***did not analyze the defendants' day-to-day control*** or scrutinize the nexus between the defendant's ability to control the primary violator and the actionable misrepresentations") (citing *No. 84 Emp.-Teamster Joint Council Pension Tr. Fund v. Am. W. Holding Corp.*, 320 F.3d 920, 945 (9th Cir. 2003)).

Importantly, whether a defendant is a control person is a complex and "***intensely factual question***." *Howard*, 228 F.3d at 1065; *see also Wool*, 818 F.2d at 1441 ("the issue of control is a complex question of fact requiring a close examination of the particular situation and organization"). Generally, because the issue of control is so fact-intensive, it should not be resolved on a motion to dismiss. *See BofI Holding*, 2017

WL 2257980, at *21. Regardless, Plaintiff's well-pled allegations are more than sufficient to plead control person liability "under the lenient standard of 8(a)." *Pirani*, 445 F. Supp. 3d at 392.

First, because Plaintiff has adequately alleged primary violations of Sections 11 and 12(a)(2) of the Securities Act—as discussed above, and for the reasons set forth in the LP Olaplex Opposition and the LP Underwriters Opposition, which are concurrently filed herewith and expressly incorporated herein—Plaintiff's Section 15 claims against Defendant Mousse should also be sustained. *Erickson v. Corinthian Colls., Inc.*, 2015 WL 12732435, at *18 (C.D. Cal. April 22, 2015).

Second, Plaintiff has plausibly alleged that Defendant Mousse is a control person under Section 15 given Mousse's stock ownership in Olaplex. The SEC defines such "control" to mean "the possession, direct or indirect, of the power to direct or cause the direction of the management and policies of a person, whether ***through the ownership of voting securities***, by contract, or otherwise." 17 C.F.R. § 230.405; *see also In re Alphabet Sec. Litig.*, 1 F.4th 687, 702 (9th Cir. 2021) (quoting the same SEC regulation for Section 20(a) purposes). Indeed, "[o]wnership of a ***significant*** percentage of the voting stock of a corporation is ***not*** a prerequisite to a finding of control. Analysis turns on whether the defendant, acting alone or ***as a member of an identifiable group***, had the power or influence to direct significant aspects of the management of the corporation." *In re Convergent Techs. Sec. Litig.*, 108 F.R.D. 328, 342 (N.D. Cal. 1985).

Defendant Mousse places misguided weight on its minority (7%) stake in Olaplex stock as dispositive. Mousse MTD 17-18; *see e.g., In re Cannavest Corp. Sec. Litig.*, 307 F. Supp. 3d 222, 253-54 (S.D.N.Y. 2018) (finding defendant who financed large corporate transaction and owned ***7.1%*** stake in company sufficient to show control); *In re Refco, Inc. Sec. Litig.,* 503 F. Supp. 2d 611, 638 (S.D.N.Y. 2007) (observing that allegations of minority ownership have been held "sufficient to survive

a motion to dismiss, because it was not implausible that plaintiffs could develop a record that could support a finding of control").

Mousse's cited authorities are distinguishable because the complaint in those cases, unlike here, failed to allege any facts beyond minority stake ownership. Mousse MTD 17-18 (citing *Fouad v. Isilon Sys., Inc.*, 2008 WL 5412397, at *13 (W.D. Wash. Dec. 29, 2008) (no additional allegations that venture capital firms acted together to control company); *O'Sullivan v. Trident Microsystems, Inc.*, 1994 WL 124453, at *18-19 (N.D. Cal. Jan 31, 1994) (no facts that outside directors exerted control over the company); *Golub v. Gigamon, Inc.*, 372 F. Supp. 3d 1033, 1053 (N.D. Cal. 2019) (no allegations of power to control proxy statement)). Certainly, the power to effectuate a $1.6 billion public offering to sell stock owned by the defendant alleged to be a control person, as is the case here, constitutes significant allegations of control. *See, e.g.*, ¶314; ¶57 (Defendant Mousse controlled, and had significant influence over, the outcome of votes on all matters requiring approval of stockholders, including entering into significant corporate transactions); ¶58 (alleging Defendant Mousse exerted substantial influence over Olaplex by causing the Offering to occur); ¶304 (alleging Defendant Mousse participated in the preparation of the false and misleading Prospectus, roadshows, and marketing of Olaplex's common stock to investors, such as Plaintiff and other members of the Class). *See Convergent Techs.*, 108 F.R.D. at 343–44 ("[T]he question [of control] is one of fact, taking into account a virtually unlimited number of considerations.")

In particular, "the trier of fact's inquiry [regarding control] will focus on whether the defendant in question is ***sufficiently connected, by any means, with a number of others who are in a relevant sense 'cemented' together and who in fact 'run the show*.'" *Id.* Here, the AC alleges that Mousse was "cemented together" (*id.*) with the Advent Fund Defendants given the Offering Documents referred to them collectively as the "selling stockholders," and they collectively owned ***over 96%*** of Olaplex's stock before the IPO. ¶57. Thus, it is at least plausible, that Mousse, together with the Advent

Funds, were the ones who in fact "run the show" at Olaplex for major corporate decisions like the IPO. Thus, as explained further above, that the AC refers to Defendant Mousse as part of a "controlling group"—*i.e.*, the "**selling stockholders**," as they are collectively referred to in the Offering Documents—is no basis for dismissal at this stage. Mousse MTD 18-19; *see Convergent Techs.*, 108 F.R.D. at 343 (recognizing liability for "persons who, by themselves, are not sufficiently powerful to dictate" major corporate decisions "***but who share in the exercise of that power within a coherent group***"). Indeed, such allegations are further indicative of their control. *See id.; Am. W. Holding*, 320 F.3d at 945-46 (analyzing **collective** outstanding stock ownership of similarly situated lenders in leveraged buyout as part of "indicia of control" analysis). Because the AC plausibly alleges control by Defendant Mousse, its motion to dismiss Plaintiff's Section 15 claim should be denied.

## V.   CONCLUSION

For the foregoing reasons, Defendant Mousse's motion to dismiss should be denied in its entirety. If the Court grants any part of this motion, Plaintiff respectfully requests leave to amend. *Mirmehdi v. United States*, 689 F.3d 975, 985 (9th Cir. 2012) ("requests for leave [to amend] should be granted with 'extreme liberality[]' . . . .").

Dated: August 14, 2023                    Respectfully Submitted,


                                      By: */s/ Irina Vasilchenko*
                                          IRINA VASILCHENKO

                                          **LABATON SUCHAROW LLP**
                                          CAROL C. VILLEGAS (*pro hac vice*)
                                          cvillegas@labaton.com
                                          IRINA VASILCHENKO (*pro hac vice*)
                                          ivasilchenko@labaton.com
                                          LISA M. STREJLAU (*pro hac vice*)
                                          lstrejlau@labaton.com
                                          DANIELLE IZZO (*pro hac vice*)
                                          dizzo@labaton.com

140 Broadway
New York, NY 10005
Telephone: (212) 907-0700
Facsimile: (212) 818-0477

*Counsel for Lead Plaintiff*
*Arkansas Teacher Retirement System*
*and Lead Counsel for the Proposed Class*


**GLANCY PRONGAY & MURRAY LLP**
ROBERT V. PRONGAY (SBN 270796)
rprongay@glancylaw.com
CHARLES H. LINEHAN (SBN 307439)
clinehan@glancylaw.com
1925 Century Park East, Suite 2100
Los Angeles, CA 90067
Telephone: (310) 201-9150
Facsimile: (310) 432-1495

*Liaison Counsel for Lead Plaintiff*
*Arkansas Teacher Retirement System and the*
*Proposed Class*