Anne Johnson Palmer (CSB # 302235)
*anne.johnsonpalmer@ropesgray.com*
ROPES & GRAY LLP
Three Embarcadero Center
San Francisco, California 94111-4006
Tel.: (415) 315-6300
Fax: (415) 315-6350

Peter Welsh (admitted *pro hac vice*)
*peter.welsh@ropesgray.com*
Daniel A. Yanofsky (admitted *pro hac vice*)
*daniel.yanofsky@ropesgray.com*
ROPES & GRAY LLP
Prudential Tower
800 Boylston Street
Boston, MA 02199-3600
Tel.: (617) 951-7000
Fax: (617) 951-7050

*Attorneys for the Olaplex Defendants*
*(listed on signature page)*

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| LESLIE LILIEN, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>OLAPLEX HOLDINGS, INC., *et al.*,<br><br>Defendants. | Case No. 2:22-cv-08395-SVW-SKx<br><br>**OLAPLEX DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS**<br><br>Hearing Date:  September 11, 2023<br>Hearing Time:  1:30 p.m.<br>Courtroom:      10A<br>Judge:             Hon. Stephen V. Wilson |

## TABLE OF CONTENTS

I.     INTRODUCTION ............................................................................................ 1

II.    ARGUMENT ................................................................................................. 2

       A.    The Opposition Confirms That Plaintiff Fails To Allege Any
             False or Misleading Statement ..................................................... 2

             1.    Plaintiff Fails To Allege that, at the Time of the IPO, Any
                   Lilial-Related Risk Existed or Was Significantly Likely
                   To Threaten Olaplex's Business ............................................. 2

             2.    The Statements Plaintiff Challenges Were Neither
                   Literally False nor Misleading ............................................. 4

             3.    Plaintiff's Challenges to Forward-Looking Statements
                   and Opinions Fail .................................................................. 9

             4.    Items 303 and 105 Do Not Save Plaintiff's Deficient
                   Claims .................................................................................... 10

       B.    The Olaplex Defendants Are Not Statutory Sellers under Section
             12(a)(2) ......................................................................................... 11

       C.    Plaintiff's Control Person Claims Fail ......................................... 12

III.   CONCLUSION ............................................................................................. 12

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Countrywide Fin. Corp. Mortgage-Backed Sec. Litig.*,
  932 F. Supp. 2d 1095 (C.D. Cal. 2013)................................................................11

*In re Eventbrite, Inc. Sec. Litig.*,
  No. 18-02019-EJD, 2020 WL 2042078 (N.D. Cal. Apr. 28, 2020).....................9

*In re Facebook, Inc. Sec. Litig.*,
  405 F. Supp. 3d 809 (N.D. Cal. 2019)..................................................................4

*Glazer Capital Mgmt. v. Forescout Techs., Inc.*,
  63 F.4th 747 (9th Cir. 2023)............................................................................6, 8

*Habelt v. Irhythm Techs.*,
  No. 21-00776-EMC, 2022 WL 971580 (N.D. Cal. Mar. 31, 2022).....................9

*Homyk v. ChemoCentryx, Inc.*,
  No. 21-03343-JST, 2023 WL 3579440 (N.D. Cal. Feb. 23, 2023) .....................5

*In re Honest Co. Sec. Litig.*,
  615 F. Supp. 3d 1149 (C.D. Cal. 2022)............................................................8, 9

*Khoja v. Orexigen Therapeutics, Inc.*,
  899 F.3d 988 (9th Cir. 2018) (Opp. ) ..................................................................7

*Lako v. Loandepot, Inc.*,
  No. 21-01449-JLS-JDE, 2023 WL 444151 (C.D. Cal. Jan. 24,
  2023).....................................................................................................................11

*In re Lyft Inc. Sec. Litig.*,
  484 F. Supp. 3d 758 (N.D. Cal. 2020) (Opp. )..................................................6, 7

*Mingbo Cai v. Switch, Inc.*,
  No. 18-01471-JCM-VCF, 2019 WL 3065591 (D. Nev. July 12,
  2019)......................................................................................................................10

*Nat. Credit Union Admin. Bd. v. RBS Sec., Inc.*,
  No. No. 11-5887-GW, 2013 WL 12320069 (C.D. Cal. Dec. 19, 2013) .................................................................................................. 11

*Perrin v. SouthWest Water Co.*,
  No. 08-7844-JHN-AGRx, 2011 WL 10756419 (C.D. Cal. June 30, 2011) .................................................................................................. 12

*Pino v. Cardone Capital, LLC*,
  55 F.4th 1253 (9th Cir. 2022) ................................................................... 11

*In re Progenity, Inc. Sec. Litig.*,
  20-cv-1683-CAB-AHG, 2023 WL 219345 (S.D. Cal. Jan. 1, 2023) ........... 3, 4, 7

*In re Progenity, Inc. Sec. Litig.*,
  No. 20-01683-RBM-AHG, 2023 WL 4498502 (S.D. Cal. July 12, 2023) .................................................................................................. 12

*In re Quality Sys., Inc. Sec. Litig.*,
  865 F.3d 1130 (9th Cir. 2017) ..................................................................... 9

*Richman v. Goldman Sachs Grp., Inc.*,
  868 F. Supp. 2d 261 (S.D.N.Y. 2012) (Opp. ) .......................................... 6, 7

*Rubke v. Capitol Bancorp Ltd.*,
  551 F.3d 1156 (9th Cir. 2009) ................................................................. 4, 8

*In re Snap Inc. Sec. Litig.*,
  No. 17-03679, 2018 WL 2972528 (C.D. Cal. June 7, 2018) (Opp. ) ............ 6

*In re Stac Elecs. Sec. Litig.*,
  89 F.3d 1399 (9th Cir. 1996) ....................................................................... 8

*Vancouver Alumni Asset Holdings Inc. v. Daimler AG*,
  No. 16-02942, 2017 WL 2378369 (C.D. Cal. May 31, 2017) ...................... 8

*In re Violin Memory Sec. Litig.*,
  No. 13-5486, 2014 WL 5525946 (N.D. Cal. Oct. 31, 2014) ...................... 10

## I.   INTRODUCTION

Plaintiff's Opposition ("Opp.," Dkt. No. 133) makes no meaningful effort to explain how Olaplex[1] could have predicted and disclosed in the Offering Documents for its IPO that two inaccurate social media posts would go viral months later and create a controversy concerning the Company's prior use of an ingredient in one of its products.  That ingredient, known as lilial, is commonly used for fragrance in many personal care and household products.  As the Amended Complaint recounts, an E.U. regulatory body had issued a report in May 2019 concluding that lilial can be considered safe on an individual product basis, but that it could not conclude "aggregate exposure" to multiple products containing lilial was safe for consumers.  As a result, in August 2020, the E.U. announced that it would ban all use of lilial across all consumer products, effective 19 months later in March 2022.  Olaplex fully complied with this ban and ceased selling any old stock of the product in the E.U. or U.K. as of January 2022, before the ban went into effect.  Plaintiff does not allege that Olaplex faced any criticism concerning lilial during the over two years between the release of the E.U. report in May 2019 and the Company's IPO in September 2021.

Rather than contend with any of these facts, all of which are alleged in the Amended Complaint and the documents it incorporates by reference, Plaintiff instead asks the Court to simply ignore them.  Plaintiff repeatedly insists that the risk of a lilial controversy was somehow foreseeable—if not inevitable—months before it occurred.  But the Opposition elsewhere acknowledges that there is no duty to disclose a risk unless, at the time of the challenged statement, the risk already exists

---

[1] Capitalized terms not defined herein shall have the meaning ascribed to them in Olaplex's opening brief in support of its motion. ("Opening Brief" or "OB," Dkt. No. 130-1).  Unless otherwise noted, all emphasis herein has been added, and all subsequent history, internal citations, and internal quotation marks have been omitted.

or has a significant likelihood of materializing. Because the Amended Complaint fails to allege any facts showing that, at the time of the IPO, any lilial-related risk had materialized, or was significantly likely to do so, there was no obligation for Olaplex to speculate about lilial in the Offering Documents. The alleged omission of the supposed "lilial issue" forms the basis of every challenge that Plaintiff makes to the Offering Documents. Accordingly, and for the other reasons set forth below and in the Opening Brief, the Amended Complaint should be dismissed in its entirety and with prejudice.

## II.    ARGUMENT

### A.    The Opposition Confirms That Plaintiff Fails To Allege Any False or Misleading Statement

#### 1.    Plaintiff Fails To Allege that, at the Time of the IPO, Any Lilial-Related Risk Existed or Was Significantly Likely To Threaten Olaplex's Business

The Opposition attempts to cast the "lilial issue" as a risk that required disclosure, seemingly because the prior inclusion of the ingredient in the No. 3 Product, the E.U.'s ban, and Olaplex's reformulation to comply with the law were so problematic that those circumstances necessarily threatened Olaplex's business. But Plaintiff's repetition of the conclusion that the "lilial issue" had some obvious potential to harm the Company does not make it so. This is particularly true when one takes stock of what the Amended Complaint actually alleges.

The Amended Complaint demonstrates that lilial was a common ingredient in cosmetic and other products; that it was a non-functional ingredient in the No. 3 Product used only for fragrance; and that the ingredient was present in only trace amounts. AC ¶¶ 125-26. The SCCS Report, which the Amended Complaint incorporates by reference, states that lilial could pose potential health risks based on exposure to large quantities of this ingredient—nearly ten times the amount in the No. 3 Product—and, even then, such risks were only present due to "aggregate exposure" from using multiple different products. SCCS Report (Ex. 3) at 3, 11-12.

These are not factual disputes; they are statements clear from the face of the SCCS Report on which Plaintiff premises the Amended Complaint.[2]

Particularly against this backdrop, Plaintiff fails to allege that, at the time of the IPO, there was some significant likelihood of risk to Olaplex resulting from its prior use of lilial. The E.U.'s 19-month phaseout of lilial was announced over a year before the IPO, and the SCCS Report was issued two years earlier. OB at 9. Olaplex faced no backlash prior to the IPO despite the fact that its use of lilial was listed on the label of the No. 3 Product and on the Company's website, and the E.U. had already publicly characterized the ingredient as having potential reproductive toxicity in extremely high doses.[3] AC ¶¶ 4-5. Olaplex reformulated the No. 3 Product to fully comply with the law. The Opposition repeatedly emphasizes that the Company continued to sell pre-existing inventory into January 2022 (Opp. at 4, 12), but that occurred during the 19-month phaseout period before the E.U. ban went into effect.

The Opposition does not meaningfully contend with any of these facts pled in Plaintiff's own complaint. Importantly, the Opposition does not address the fact that the later social media firestorm was not based on the mere presence of lilial in the product or the simple fact that the E.U. had banned the ingredient. Instead, the controversy arose from false assertions that Olaplex's product specifically was being

---

[2] Plaintiff asserts that the Court should not consider the content of the SCCS Report at this stage. *See* Dkt. No. 137 (Opp. to RJN). Plaintiff is wrong. *See* Reply in support of Olaplex Defendants' Request for Judicial Notice at 2-7.

[3] Plaintiff erroneously claims that this constitutes a "truth-on-the-market" defense. Opp. at 21-22. But the fact that the lilial phaseout was public knowledge, that lilial's inclusion in the No. 3 Product was apparent from its label and the Company's website, and that the Company faced no backlash prior to the IPO are relevant because they demonstrate that the controversy following the release of the TikTok videos was not foreseeable to Defendants at the time of the IPO. *See In re Progenity, Inc. Sec. Litig.*, 20-cv-1683-CAB-AHG, 2023 WL 219345, at *7 (S.D. Cal. Jan. 1, 2023) (dismissing claims where plaintiffs "presented no basis for inferring that [d]efendants knew or reasonably could have known" about a particular risk when the registration statement was issued).

banned because of some supposed finding it was actually reprotoxic. *See* AC ¶¶ 15, 214, 217, 240-41, 279 (quoting analyst reports discussing concerns over "misinformation" and "misconceptions" about lilial). Plaintiff fails to explain how Olaplex could have predicted, at the time of its IPO, that months later it would be falsely accused of having a product banned as unsafe.

Simply repeating the conclusion that what Plaintiff loosely terms the "lilial issue" jeopardized the Company is no substitute for well-pled facts. Plaintiff's allegations fall far short of the requirement that it plead contemporaneous facts at the time of the IPO showing there was some risk to the Company that either already existed or was significantly likely to materialize. The Amended Complaint should be dismissed for this fundamental reason. *See Rubke v. Capitol Bancorp Ltd.*, 551 F.3d 1156, 1164 (9th Cir. 2009) (omission-based claims "must demonstrate that the omitted information existed at the time the registration statement became effective"); *Progenity*, 2023 WL 219345, at *7 (insufficient to plead "conclusory assertions" that risk "had materialized by the time the [challenged statements] took effect").[4]

### 2. The Statements Plaintiff Challenges Were Neither Literally False nor Misleading

Acknowledging that it has not pled facts undermining the actual truth of the statements it challenges, Plaintiff pivots to asserting that the challenged statements were rendered misleading because the Company did not specifically disclose the so-called "lilial issue." Plaintiff's challenges to each category of statements fail.

---

[4] Plaintiff claims that the Olaplex Defendants' arguments address "materiality," which the Court should not resolve at this stage. Opp. at 7, 12, 23. Not so. Courts routinely dispose of claims on motions to dismiss where the undisclosed risks had not materialized at the time of the challenged statements. *See Progenity*, 2023 WL 219345, at *7, 13-14 (no allegations that risk "had materialized by the time the Registration Statement took effect"); *In re Facebook, Inc. Sec. Litig.*, 405 F. Supp. 3d 809, 841 (N.D. Cal. 2019) (plaintiffs "offered no proof that" undisclosed risks had "actually affected Facebook's reputation" where "the risks of negative media attention or regulatory action had not yet materialized").

**Laws and Regulations Impacting Olaplex's Business:** Plaintiff does not, and cannot, allege that the Company failed to comply with the E.U. ban.[5] Olaplex had already reformulated the No. 3 Product before the IPO, eliminating any going-forward risk that it would need to further reformulate the No. 3 Product as a result of the change in E.U. regulations. AC ¶¶ 5, 138. The Opposition's two other challenges to the Company's warnings about the potential impact of regulations both fail.

*First*, Plaintiff's assertion that the Company was required to disclose that the No. 3 Product was reformulated to remove lilial is unavailing. Issuers are not required to disclose every action taken in order to comply with changing regulatory requirements. *See* OB at 10-11. Nor is there any merit to Plaintiff's claim that the Company's discussion of laws and regulations in the Offering Documents obligated Olaplex to disclose the reformulation (or the various other actions the Company routinely takes to comply with changing laws and regulations). In contrast to the case Plaintiff invokes, nothing in the Offering Documents affirmatively suggested that Olaplex had never reformulated one of its products for regulatory reasons. *See* Opp. at 10 (citing *Homyk v. ChemoCentryx, Inc.*, No. 21-03343-JST, 2023 WL 3579440, at *11 (N.D. Cal. Feb. 23, 2023) (defendants should have disclosed that the FDA "had highlighted specific concerns" about its product due to statements suggesting that the FDA "had not highlighted particular concerns")).

*Second*, Plaintiff's theory that the Company was required to disclose the risk of reputational harm stemming from the reformulation of the No. 3 Product fares no better. Plaintiff acknowledges that issuers do not have to disclose a risk unless they are "aware of a ***significant likelihood*** that the risk ***would materialize***." Opp. at 11

---

[5] Plaintiff implies at various points in its Opposition that Olaplex sold products containing lilial while that ingredient was banned. *See, e.g.*, Opp. at 11 ("Olaplex was using an ingredient, banned due to infertility risks, in one of its best-selling products . . . ."). The Amended Complaint contains no such allegations and for good reason—the Company stopped selling old stock of the No. 3 Product in the E.U. before the phaseout period expired. AC ¶ 139.

(quoting *Glazer Capital Mgmt. v. Forescout Techs., Inc.*, 63 F.4th 747, 781 (9th Cir. 2023)) (emphasis in original).[6]  As addressed above, Plaintiff fails to allege that the Company had encountered any lilial-related controversy at the time of the IPO, or that there was any basis to predict a "significant likelihood" that such a controversy would arise in the future.  *See* Section II.A.1, *supra*.  The Offering Documents, moreover, specifically warned investors of the risk that negative social media commentary could pose to the Company, even if the information being circulated was inaccurate.  *See* OB 12-13.  Plaintiff's authorities only serve to highlight the sort of facts that are absent from the Amended Complaint, as those cases involved allegations of already-existing problems that posed ongoing risks to the issuer.  *See In re Lyft Inc. Sec. Litig.*, 484 F. Supp. 3d 758, 769-70 (N.D. Cal. 2020) (Opp. at 9-10) (failure to disclose an ongoing trend of sexual assaults by drivers against riders and related litigation); *Richman v. Goldman Sachs Grp., Inc.*, 868 F. Supp. 2d 261, 277, 279 (S.D.N.Y. 2012) (Opp. at 13) (defendants touted their commitment to complying with legal and ethical principles despite allegedly engaging in and concealing a conflicted transaction that was already the subject of an SEC investigation); *In re Snap Inc. Sec. Litig.*, No. 17-03679, 2018 WL 2972528 at *6-7 (C.D. Cal. June 7, 2018) (Opp. at 10) (defendants failed to disclose then-existing facts about a competitor's product presently impacting user growth and the company's existing use of "growth-hacking" techniques).[7]

---

[6] Plaintiff claims that the Olaplex Defendants "suggest[]" that a risk must be an "absolute certainty" before disclosure is required.  Opp. at 10.  That argument is found nowhere in the Olaplex Defendants' Opening Brief.

[7] Plaintiff attempts to suggest that the social media controversy was foreseeable by quoting a statement from Olaplex's CEO that social media is "a double-edged sword."  Opp. at 11 (quoting AC ¶ 110).  That Ms. Wong acknowledged the nature of the challenges associated with promoting a brand using social media—risks that were fully disclosed in the Offering Documents—says nothing about whether the specific risk of social-media controversy stemming from lilial was somehow foreseeable or had materialized at the time of the IPO.  *See* OB at 12-13.

**Brand Reputation and Social Media Engagement:**  Plaintiff's challenges to statements about the Company's reputation and social media engagement fail for the same reasons just addressed:  Plaintiff fails to allege any facts that would show that, at the time of the IPO, it was "foreseeable" that the Company faced a significant undisclosed risk of harm to its reputation stemming from a future social media controversy resulting from Olaplex's use of lilial.  *See* Section II.A.1, *supra*.  That much is clear from Plaintiff's own authorities, which without exception involved ongoing risk from prior conduct that had already materialized at the time of the challenged statements.  *See Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1012-13 (9th Cir. 2018) (Opp. at 13) (defendants failed to disclose past violation of FDA rules that risked the integrity of drug study); *see also supra* at 6 (addressing *Lyft* and *Richman*).  Here, in contrast, Olaplex never sold products in violation of the E.U. ban.  Nor does Plaintiff provide any factual allegations addressing any circumstance that existed at the time of the IPO—including any outcry about Olaplex using lilial—demonstrating that it was "significantly likely," (Opp. at 12), that the Company would later encounter lilial-related misinformation on social media that would threaten its brand reputation.

The Opposition does not meaningfully contend with the Olaplex Defendants' authorities.  Plaintiff, for instance, attempts to distinguish *Progenity* on the basis that the company there had "clearly warned" investors that sales volumes had declined due to the COVID-19 pandemic.  Opp. at 14.  But the Opposition ignores the portion of *Progenity* that the Olaplex Defendants actually cited, which involved a different risk that the company allegedly had ***not*** disclosed—that it had overbilled government payors and might have to issue refunds.  *Id.*; OB at 10.  The court rejected that claim because the plaintiffs had alleged nothing "beyond conclusory assertions" to show that this risk "had materialized by the time the Registration Statement took effect."  *Progenity*, 2023 WL 219345, at *7.  The Amended Complaint is no different here.  And Plaintiff says nothing about several other cases confirming that issuers are not

required to disclose unforeseeable risks before they materialize.  *See, e.g., Rubke*, 551 F.3d at 1164 (defendant "could not know" about events that occurred after the challenged statements and thus "could not include a disclaimer" about them); *In re Stac Elecs. Sec. Litig.,* 89 F.3d 1399, 1406 (9th Cir. 1996) (no duty to "forecast future events").

**Statements About Competition:**  Plaintiff's challenges to statements relating to competition fail for the same reason: no lilial-related risk to Olaplex's competitive position existed at the time of the IPO, nor was any risk "significantly likely" to materialize.  Plaintiff's reliance on *Forescout* here and throughout its Opposition is misplaced.  There, the Ninth Circuit found that plaintiffs had pled falsity with respect to certain claims regarding the strength of the company's sales pipeline based on allegations that the pipeline was "actually deteriorating" at the time of the challenged statements and certain existing deal prospects were mischaracterized.  63 F.4th at 757, 768-69.  Here, there is no allegation that, as of the time of the IPO, Olaplex's competitive position was in any way compromised by the future risk of a social media controversy regarding lilial.

**"Clean" Products:** Plaintiff's challenges to the statements about the "clean" nature of Olaplex's products likewise fail.  The Opposition provides no authority supporting its attempt to create a standard for how a "reasonable" investor would interpret statements about "clean" products, and Plaintiff's cases again illustrate the sort of factual allegations absent here.[8]  Opp. at 16, 20.  In any event, the statements were not misleading even under Plaintiff's supposed standard—whether any Olaplex

---

[8] *See, e.g., Vancouver Alumni Asset Holdings Inc. v. Daimler AG*, No. 16-02942, 2017 WL 2378369, at *12-13 (C.D. Cal. May 31, 2017) (car manufacturer's statements that its vehicles met "the strictest emissions standards" were actionable where complaint sufficiently alleged vehicle emissions violated environmental regulations); *In re Honest Co. Sec. Litig.*, 615 F. Supp. 3d 1149, 1154-1155 (C.D. Cal. 2022) (defendants allegedly knew of numerous existing customer complaints concerning product's safety and efficacy at the time of the challenged statements).

products contained an ingredient "that ha[s] already been banned." *Id.* at 17. The Amended Complaint alleges that Olaplex did not sell any old stock of the No. 3 Product in the E.U. or the U.K. after the E.U. ban went into effect.[9] *See supra* n.5.

### 3. Plaintiff's Challenges to Forward-Looking Statements and Opinions Fail

**Forward-looking Statements**: Of the three forward-looking statements Olaplex identifies (AC ¶¶ 171, 173, 182), Plaintiff contends that only one of these was not forward-looking: that the "quality" of the Company's products and its "community-driven approach" had "created a strong and loyal following for OLAPLEX that we believe provides a unique competitive advantage and foundation for growth." AC ¶ 171. This statement is not "mixed," as Plaintiff suggests (Opp. at 17), but is instead plainly a forwarding-looking statement concerning Olaplex's growth prospects. The "reference [to] a past action" is "solely as an assumption" for Olaplex's comments with respect to its "foundation for growth." *See Habelt v. Irhythm Techs.*, No. 21-00776-EMC, 2022 WL 971580, at *11 (N.D. Cal. Mar. 31, 2022). Plaintiff's authorities, which included misstatements of then-existing facts, provide no support for its claim that this statement is "mixed." Opp. at 17-18.[10]

Further, the three forward-looking statements Plaintiff challenges were accompanied by extensive, meaningful cautionary language. OB at 13, 17.

---

[9] Plaintiff clarifies that it is not making a claim with respect to statements in the Offering Documents about the "Clean at Sephora" designation. Opp. at 16. But the statements that Plaintiff does challenge must be read in context, and the Sephora designation provides the only metric by which the challenged statements could be measured. *In re Eventbrite, Inc. Sec. Litig.*, No. 18-02019-EJD, 2020 WL 2042078, at *7 (N.D. Cal. Apr. 28, 2020) (statements "must be analyzed in context").

[10] *See, e.g., In re Quality Sys., Inc. Sec. Litig.*, 865 F.3d 1130, 1147 (9th Cir. 2017) (statements about sales pipeline were mixed to the extent they failed to disclose that the pipeline ***had already deteriorated***); *Honest Co.*, 615 F. Supp. 3d at 1155-56 (claim was based on "***past*** loss of customers" from "dissatisfaction with" issuer's product).

Plaintiff's argument to the contrary is that the lilial-related risk already existed but was instead disclosed as merely hypothetical.  As explained above in Section I.A.1, there is no duty to predict and disclose a hypothetical risk that had not materialized, and Plaintiff's authorities are inapposite.  *See supra* at 5-7 & nn.3-4.

**Opinion Statements**: Of the five challenged opinions that the Olaplex Defendants identify (OB at 13, 16-19 (citing AC ¶¶ 171, 178, 180, 182, 189)), Plaintiff argues that two such statements are not opinions because they "were not couched with any prefatory opinion language."  Opp. at 18-19 (citing AC ¶¶ 171, 189).  Plaintiff does so by omitting from its brief the prefatory language ("we believe") actually included in these statements.  *See* OB at 16-17.

Plaintiff next argues that it need not allege subjective falsity because it challenges these statements under an omissions theory.  Opp. at 19.  That is not the case—the Amended Complaint plainly challenges the relevant statements on the ground that that they were "materially misstated," rather than due to any omission, and while Plaintiff generally disclaims that it does ***not*** assert scienter, it expressly carves out from this disavowal any opinion statements.  AC ¶¶ 290, 303, 311.  Regardless, to the extent that Plaintiff now seeks to challenge these opinion statements under an omissions theory, those claims would fail for the reasons already addressed.  *See* Section II.A.1, *supra*.

### 4.   Items 303 and 105 Do Not Save Plaintiff's Deficient Claims

The Opposition provides no basis for the Court to reach a different result under Items 303 and 105.  Absent from the Amended Complaint are any facts suggesting that there was a known trend or uncertainty that had already materialized at the time of the IPO, as was the case in Plaintiff's authorities.[11]  Contrary to Plaintiff's claim

---

[11] *See Mingbo Cai v. Switch, Inc.*, No. 18-01471-JCM-VCF, 2019 WL 3065591, at *5-6 (D. Nev. July 12, 2019) (company failed to disclose it had already adapted a new sales strategy which carried risks of diminishing revenue); *In re Violin Memory Sec. Litig.*, No. 13-5486, 2014 WL 5525946, at *15 (N.D. Cal. Oct. 31, 2014) (defendants failed to disclose that a certain sales revenue stream had been declining

(Opp. at 23), this is not a "materiality" argument, and Item 303 and 105 claims are entirely proper to resolve at this stage. *See* OB at 19-20. Olaplex was not required to specifically predict reputational risks related to misinformation circulated months after the IPO. *See id.* at 13.

### B.     The Olaplex Defendants Are Not Statutory Sellers under Section 12(a)(2)

The Olaplex Defendants are not statutory sellers under either prong of Section 12(a)(2). The Olaplex Defendants did not pass title to Plaintiff or any other investors.[12] Nor does Plaintiff allege sufficient facts to show that the Olaplex Defendants engaged in solicitation for purposes of the second prong. Merely signing offering documents or being involved in preparing those materials does not constitute solicitation, and Plaintiff's conclusory assertions that Defendants collectively engaged in solicitation by unspecified "road shows" and other "marketing of Olaplex's common stock to investors" similarly fail. *See* OB at 21. And for the reasons addressed by the Advent Funds (Advent Reply at 10), Plaintiff misses the mark in claiming that *Pino v. Cardone Capital, LLC*, 55 F.4th 1253 (9th Cir. 2022) somehow dictates a different outcome.

---

for months and instead touted that company was working to increase sales in that same area); *Lako v. Loandepot, Inc.*, No. 21-01449-JLS-JDE, 2023 WL 444151, at *11-12 (C.D. Cal. Jan. 24, 2023) (company failed to disclose the creation of two initiatives that encouraged the closing of loans without proper documentation in violation of agency guidelines).

[12] Plaintiff asserts that issuers always qualify as statutory sellers under the first prong even if they did not pass title to buyers. Opp. at 24 (citing 17 C.F.R. § 230.159A). As a court in this district has found, however, the SEC exceeded its authority in adopting this rule, which directly contradicts the Supreme Court's holding in *Pinter*. *In re Countrywide Fin. Corp. Mortgage-Backed Sec. Litig.,* 932 F. Supp. 2d 1095, 1118 (C.D. Cal. 2013); *but see Nat. Credit Union Admin. Bd. v. RBS Sec., Inc.*, No. No. 11-5887-GW, 2013 WL 12320069, at *5 (C.D. Cal. Dec. 19, 2013).

### C.      Plaintiff's Control Person Claims Fail

Plaintiff's control person claims fail because there is no primary violation alleged as to any Defendant. *See In re Progenity, Inc. Sec. Litig.*, No. 20-01683-RBM-AHG, 2023 WL 4498502, at *16 (S.D. Cal. July 12, 2023).

## III.      CONCLUSION

Plaintiff has had ample opportunity to state a claim. Because Plaintiff has failed to plead any facts that would support its claims, the Amended Complaint should be dismissed in its entirety with prejudice. *See Perrin v. SouthWest Water Co.*, No. 08-7844-JHN-AGRx, 2011 WL 10756419, at *5, 7 (C.D. Cal. June 30, 2011).

Dated:       August 28, 2023       Anne Johnson Palmer

ROPES & GRAY LLP

By:  */s/ Anne Johnson Palmer*

Anne Johnson Palmer (CSB # 302235)
*anne.johnsonpalmer@ropesgray.com*
ROPES & GRAY LLP
Three Embarcadero Center
San Francisco, California 94111-4006
Tel.: (415) 315-6300
Fax: (415) 315-6350

Peter Welsh (admitted *pro hac vice*)
*peter.welsh@ropesgray.com*
Daniel Yanofsky (admitted *pro hac vice*)
*daniel.yanofsky@ropesgray.com*
ROPES & GRAY LLP
Prudential Tower
800 Boylston Street
Boston, MA 02199-3600
Tel.: (617) 951-7000
Fax: (617) 951-7050

*Attorneys for Defendants*
*Olaplex Holdings, Inc., JuE Wong, Eric*
*Tiziani, Tiffany Walden, Christine*
*Dagousset, Tricia Glynn, Deirdre*
*Findlay, Janet Gurwitch, Martha Morfitt,*
*David Mussafer, Emily White, Michael*
*White, and Paula Zusi*