Anne Johnson Palmer (CSB # 302235)
*anne.johnsonpalmer@ropesgray.com*
ROPES & GRAY LLP
Three Embarcadero Center
San Francisco, California 94111-4006
Tel.: (415) 315-6300
Fax: (415) 315-6350

Peter Welsh (admitted *pro hac vice*)
*peter.welsh@ropesgray.com*
Daniel A. Yanofsky (admitted *pro hac vice*)
*daniel.yanofsky@ropesgray.com*
ROPES & GRAY LLP
Prudential Tower
800 Boylston Street
Boston, MA 02199-3600
Tel.: (617) 951-7000
Fax: (617) 951-7050

*Attorneys for the Advent Fund Defendants*
*(listed on signature page)*

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| LESLIE LILIEN, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>OLAPLEX HOLDINGS, INC., *et al.*,<br><br>Defendants. | Case No. 2:22-cv-08395-SVW-SKx<br><br>**ADVENT FUND DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS**<br><br>Hearing Date:  September 11, 2023<br>Hearing Time:  1:30 p.m.<br>Courtroom:      10A<br>Judge:          Hon. Stephen V. Wilson |

## TABLE OF CONTENTS

I.    INTRODUCTION ........................................................................................... 1

II.   ARGUMENT ................................................................................................. 2

      A.    All Claims Against the Advent Funds Are Time-Barred ...................... 2

      B.    The Amended Complaint Fails to Allege the Advent Funds Are
            Statutory Sellers Under Section 12(a)(2) .............................................. 8

      C.    Plaintiff's Control Person Claims Should Be Dismissed .................... 10

III.  CONCLUSION ......................................................................................... 122

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re 2U, Inc. Sec. Class Action*,
No. TDC-19-3455, 2021 WL 3418841 (D. Md. Aug. 5, 2021)........................4, 7

*In re Alphabet, Inc. Sec. Litig.*,
1 F.4th 687 (9th Cir. 2021) .................................................................4, 7

*Barnes v. Edison Int'l*,
No. 21-55589, 2022 WL 822191 (9th Cir. Mar. 18, 2022)..................................7

*Bell Atlantic Corp. v. Twombly*,
550 U.S. 544 (2007) ........................................................................11

*In re BofI Holding, Inc. Sec. Litig.*,
No. 3:15-CV-02324-GPC-KSC, 2017 WL 2257980 (S.D. Cal. May
23, 2017).....................................................................................11

*In re Dropbox Sec. Litig.*,
No. 19-06348-BLF, 2020 WL 6161502 (N.D. Cal. Oct. 21, 2020).....................8

*In re Dynegy, Inc. Sec. Litig.*,
339 F. Supp. 2d 804 (S.D. Tex. 2004)............................................3, 5, 7

*In re eSpeed, Inc. Sec. Litig.*,
457 F. Supp. 2d 266 (S.D.N.Y. 2006)...............................................3

*In re Glob. Crossing, Ltd. Sec. Litig.*,
No. 02 Civ. 910(GEL), 2005 WL 2990646 (S.D.N.Y Nov. 7, 2005)................11

*In re Harmonic, Inc., Sec. Litig.*,
No. 00-2287 PJH, 2006 WL 3591148 (N.D. Cal. Dec. 11, 2006) ......................9

*Hollifiel v. Resolute Capital Partners Ltd., LLC*,
No. 2:22-cv-07885-SB-RAO, 2023 WL 4291524 (C.D. Cal. May
12, 2023).....................................................................................10

*Howard v. Everex Sys., Inc.*,
228 F.3d 1057 (9th Cir. 2000)...........................................................11

*Kuhns v. Ledger*,
  202 F. Supp. 3d 433 (S.D.N.Y. 2016) ..................................................................... 11

*Mallen v. Alphatec Holdings, Inc.*,
  861 F. Supp. 2d 1111 (S.D. Cal. 2012) ..................................................................... 9

*In re Mun. Mortg. & Equity, LLC, Sec. and Deriv. Litig.*,
  876 F. Supp. 2d 616 (D. Md. 2012) ......................................................................... 4

*In re Musicmaker.com Sec. Litig.*,
  No. 00-2018 CAS(MANX), 2001 WL 34062431 (C.D. Cal. June 4,
  2001) ...................................................................................................................... 11

*In re Network Commerce Inc. Secs. Litig.*,
  No. 01-0675L, 2006 WL 1375049 (W.D. Wash. May 16, 2006) .......................... 3

*No. 84 Emp.-Teamster Joint Council Pension Tr. Fund v. Am. W.*
  *Holding Corp.*, 320 F.3d 920 (9th Cir. 2003) ........................................................ 11

*Pino v. Cardone Capital, LLC*,
  55 F.4th 1253 (9th Cir. 2022) ........................................................................... 8, 10

*Pinter v. Dahl*,
  486 U.S. 622 (1988) ................................................................................................. 8

*Pirani v. Slack Technologies, Inc.*,
  445 F. Supp. 3d 367 (N.D. Cal. 2020) .................................................................. 11

*Rieckborn v. Jefferies LLC*,
  81 F. Supp. 3d 902 (N.D. Cal. 2015).................................................................... 3

*In re Stac Elecs. Sec. Litig.*,
  89 F.3d 1399 (9th Cir. 1996) .............................................................................. 12

*Stichting Pensioenfonds ABP v. Countrywide Financial Corp.*,
  802 F. Supp. 2d 1125 (C.D. Cal. 2011).................................................................. 7

*In re UTStarcom, Inc. Sec. Litig.*,
  617 F. Supp. 2d 964 (N.D. Cal. 2009) ............................................................ 11-12

*Welgus v. TriNet Grp., Inc.*,
  No. 15-03625-BLF, 2017 WL 167708 (N.D. Cal. Jan. 17, 2017) ..............*passim*

*In re YogaWorks, Inc. Sec. Litig.*,
    No. 18-10696-CJC, 2020 WL 2549290 (C.D. Cal. Apr. 23, 2020) ...................... 8

*York Cnty. on Behalf of Cnty. of York Retirement Fund v. HP, Inc.*,
    65 F.4th 459 (9th Cir. 2023) ............................................................................ 2, 3

**Statutes**

15 U.S.C. § 77m ................................................................................................. 2, 3

28 U.S.C. § 1658(b) ............................................................................................... 3

## I.      INTRODUCTION

Plaintiff's responses to Defendants' motions to dismiss[1] fail to address the key deficiencies in the Amended Complaint.  For the reasons addressed in the opening and reply briefs filed by the Olaplex Defendants, the Underwriter Defendants, and Mousserena, which the Advent Funds join and incorporate by reference, Plaintiff fails to state a claim against any of the Defendants.  Among other reasons, Plaintiff does not allege any misleading statements made by the Company in connection with its IPO.[2]  Plaintiff also fails to contend with the arguments set forth in the Advent Funds' Opening Brief, as addressed below.

First, the facts alleged on the face of the Amended Complaint make clear that all of Plaintiff's claims against the Advent Funds are time-barred.  Plaintiff alleges that the Offering Documents were misleading because they did not disclose that Olaplex previously used an ingredient known as lilial in one of its products, and that it reformulated that product to remove lilial in response to an E.U. regulation banning that ingredient.  Those facts were disclosed no later than March 8, 2022, more than a month before Plaintiff's April 28, 2022 "critical date," and none of Plaintiff's efforts to revive its time-barred claims have merit.

Plaintiff also fails to demonstrate how the Advent Funds are statutory sellers under Section 12(a)(2), or why they qualify as control persons under Section 15.  Plaintiff instead relies upon boilerplate language and conclusory assertions that

---

[1] Plaintiff responds to the statute-of-limitations arguments raised by the Advent Funds, the Underwriter Defendants, and Mousserena in its opposition to the Underwriter Defendants' motion to dismiss.  *See* Dkt. No. 134 ("UW Opp.") at 6-20.

[2] Capitalized terms not defined herein shall have the meaning ascribed to them in the Advent Funds' opening brief in support of its motion to dismiss.  ("Opening Brief" or "OB," Dkt. No. 129-1).  Unless otherwise noted, all emphasis herein has been added, and all subsequent history, internal citations, and internal quotation marks have been omitted.

courts have repeatedly found insufficient to state such claims, providing independent grounds for dismissal.

## II.     ARGUMENT

### A.     All Claims Against the Advent Funds Are Time-Barred

Plaintiff faults the Underwriter Defendants at the outset for supposedly applying an "inquiry notice" standard. UW Opp. at 2. But the actual standard that the Underwriter Defendants (and the Advent Funds) addressed is the same standard Plaintiff argues, which is whether a "reasonably diligent plaintiff" would have discovered the facts necessary to plead its claims within the one-year limitations period afforded by 15 U.S.C. § 77m. UW Opp. at 7; OB at 3; Dkt. No. 132-1 (UW Br.) at 4. Against this standard, Plaintiff argues that it could not have pleaded an adequate complaint based on facts discovered prior to the "critical date" of April 28, 2022, and the Amended Complaint supposedly includes facts necessary to plead an adequate complaint that were only discovered following that date. UW Opp. at 7 (citing *York Cnty. on Behalf of Cnty. of York Retirement Fund v. HP, Inc.*, 65 F.4th 459, 465 (9th Cir. 2023)).

Neither assertion can be reconciled with Plaintiff's own allegations. Instead, it is evident from the Amended Complaint that a reasonably diligent plaintiff could have brought suit before April 28, 2022, particularly given Plaintiff's emphasis on the "immediate public outcry" and drops in Olaplex's stock price that occurred after the revelation of the "lilial issue" in March 2022. AC ¶ 199. Plaintiff's main argument in attempting to evade the limitations period is that investors supposedly did not understand the scope of the alleged adverse impact—and thus the materiality of the alleged misstatements—until at least May 11, 2022, when the Company reported declining growth in sales. This materiality argument fails for several reasons.

***First***, Plaintiff ignores the relevant standard, which is whether the disclosures before the critical date provided the information that Plaintiff claims should have

been disclosed in the Offering Documents. *See Welgus v. TriNet Grp., Inc.*, No. 15-03625-BLF, 2017 WL 167708, at \*21-22 (N.D. Cal. Jan. 17, 2017) (claims were time-barred when disclosures prior to the critical date "provided precisely the information that plaintiffs claim should have been disclosed earlier"); *Rieckborn v. Jefferies LLC*, 81 F. Supp. 3d 902, 916 (N.D. Cal. 2015) (same); *see also HP*, 65 F.4th at 465-66 (assessing whether complaint pled claims "based only on **conduct** discovered" before the critical date). Plaintiff cites no authority for its theory that the limitations period does not start until the point when investors can verify the extent to which the statements are allegedly material, and for good reason. The Securities Act provides that the statute of limitations commences upon "discovery of the untrue statement or the omission." 15 U.S.C. § 77m; *see In re Network Commerce Inc. Sec. Litig.*, No. 01-0675L, 2006 WL 1375049, at \*3 (W.D. Wash. May 16, 2006) (dismissing Section 11 claim because facts were disclosed more than one year before claims were asserted even though "plaintiffs suffered no damages" when the truth was revealed). The authorities Plaintiff invokes (UW Opp. at 9-11, 13-16) involved **historical facts** disclosed after the critical date that the plaintiffs argued should have been disclosed earlier, not later events that supposedly demonstrated the materiality of the allegedly omitted information. *See HP*, 65 F.4th at 467 (information disclosed after the critical date revealed defendants' fraudulent historical accounting practices);[3] *In re Dynegy, Inc. Sec. Litig.*, 339 F. Supp. 2d 804, 836 (S.D. Tex. 2004) (after critical date, plaintiffs discovered that cash flows would be 30-40% lower than prior estimates).[4]

---

[3] *HP* is inapposite for the additional reason that it addressed whether the plaintiff had sufficient information to allege **scienter** in support of its Section 10(b) claims. A plaintiff asserting claims under the Exchange Act must plead scienter and loss causation (*see* 28 U.S.C. § 1658(b)), which are not elements of the Securities Act claims that Plaintiff asserts here. *See* UW Opp. at 5.

[4] *See also In re eSpeed, Inc. Sec. Litig.*, 457 F. Supp. 2d 266, 283-85 (S.D.N.Y. 2006) (disclosures after the critical date informed investors that challenged statements were

Here, by contrast, the relevant facts relating to Olaplex's prior use of lilial had been disclosed well before April 28, 2022. Plaintiff premises this action on a suggestion that the Offering Documents should have disclosed that Olaplex's No. 3 Product had been reformulated to remove a chemical known as lilial in light of an impending E.U. ban. AC ¶¶ 4-5. The information necessary to plead claims based on this supposed omission came to light by March 8, 2022 at the latest, which is evident from Plaintiff's own allegations. Plaintiff asserts that the Offering Documents were revealed to be misleading after a social media influencer posted two lilial-related videos on TikTok regarding Olaplex on February 27, 2022 stating that Olaplex's products were going to be banned in the E.U. and the U.K. because they contained lilial. *See* AC ¶¶ 10, 197-203, 225. Plaintiff further alleges that, on March 1 and March 8, 2022, the Company disclosed that it had previously used lilial in the No. 3 Product, that it had removed lilial from that product in response to the E.U. ban, and that it stopped selling any old stock of the product in the E.U. and U.K. as of January 2022. *See id.* ¶¶ 202, 210-12. The Amended Complaint confirms that all of this information was publicly available to investors no later than March 8, 2022.

***Second***, Plaintiff's argument that it could not have pled materiality before April 28, 2022 is belied by its repeated assertions—which it simultaneously advances in opposing Olaplex's motion to dismiss—that the materiality of the "lilial issue" was quickly apparent once the TikTok videos went viral in March 2022. Specifically, the Amended Complaint alleges that, between February 27 and March 8, 2022, (1)

---

knowingly false when made); *In re 2U, Inc. Sec. Class Action*, No. TDC-19-3455, 2021 WL 3418841, at *25 (D. Md. Aug. 5, 2021) (disclosure after critical date revealed that online education company's prior statements regarding enrollment figures contradicted contemporaneous internal projections); *In re Mun. Mortg. & Equity, LLC, Sec. and Deriv. Litig.*, 876 F. Supp. 2d 616, 654 (D. Md. 2012) (claims not time-barred where plaintiff was not aware of certain historical facts relating to defendants' erroneous accounting practices and the likely costs of correcting those errors until after the critical date).

the lilial news "*came as a shock*" to consumers and "sparked immediate public outcry and backlash against Olaplex" (*id.* ¶ 199, 203) (emphasis in original); (2) "numerous news articles and social media posts continued to report on Olaplex's lilial issue" (*id.* ¶ 202); (3) the market was "[f]ocuse[d] on the [l]ilial [i]ssue," as securities analysts were "concerned by this lilial issue and its impact on the Company's business" (*id.* ¶¶ 209-10); (4) a lilial-related class action lawsuit was filed against the Company (*id.* ¶ 205); and (5) Olaplex's stock price dropped on March 3, March 7, and March 8 (*id.* ¶¶ 207, 215). In opposing Olaplex's motion to dismiss, Plaintiff argues that these same allegations—including the "public outcry," "analyst coverage," and "related stock price drops"—evidence the materiality of the allegedly omitted information. Dkt. No. 133 ("Olaplex Opp.") at 11. Plaintiff's own briefing indicates that it did not need to wait for Olaplex to disclose an allegedly adverse impact as the Company reported its financial results on May 11, October 18, or November 9, 2022 to plead materiality. *Id.* This is because those disclosures do not trigger or restart the limitations period, but instead are additional developments that only expand upon Plaintiff's materiality allegations. *See TriNet*, 2017 WL 167708, at *22 ("The one-year time period does not reset simply because additional information is revealed that could make for a stronger claim.").

In fact, the Amended Complaint asserts that the "lilial issue" was material much earlier, even before the TikTok videos were released. Plaintiff repeatedly contends that Defendants should have known that the prior inclusion of lilial in the No. 3 Product was material *at the time of the IPO*, and that the Offering Documents should have included lilial-related disclosures because the risk to the Company supposedly was plainly "foreseeable" to management then. *See, e.g.*, AC ¶¶ 162-69; Olaplex Opp. at 11. Plaintiff cannot have it both ways, selectively embracing its Amended Complaint to oppose the Company's motion to dismiss while at the same time casting aside its own allegations to avoid a time bar on its claims against the Advent Funds.

***Third***, Olaplex's supposedly "reassuring statements" to investors during its March 8 earnings call did not, as Plaintiff contends, somehow delay triggering the limitations period. UW Opp. at 9-15. The Amended Complaint alleges that Olaplex had already disclosed the relevant facts concerning its prior use of lilial one week before this earnings call. *See* AC ¶ 202 (quoting March 1 article with statement from Olaplex that the Company had removed lilial from the No. 3 Product in response to the E.U. ban and stopped selling old stock as of January 2022). Plaintiff thus relies on the Company's March 8 statements to claim that they had some impact on investors' reaction to the week-old lilial news.

Here too, Plaintiff ignores its own allegations in claiming that Olaplex supposedly led investors to believe that the lilial controversy would be "***insignificant*** to the Company's financial performance." UW Opp. at 10 (emphasis in original). On the March 8, 2022 earnings call, Olapex's CEO, JuE Wong, responded as follows to a question about the impact of the lilial controversy:

> I think what I want to point you back is to the fact that we are addressing it on all fronts. ***It did only happen***, as in my sort of early-on statement, ***in the last 10 days***. So we are monitoring and looking at everything from all angles. ***But the primary concern now is to really address all of this misinformation because you can appreciate how some of the anxiety that it has created for women when they read about infertility***, and we are very happy to be able to cite experts not affiliated with OLAPLEX, not paid by us, citing that there is no impact to fertility.

AC ¶ 212. Analysts did not respond to Ms. Wong's acknowledgement that consumers reacted with "anxiety" to the lilial controversy as some guarantee that there would be no effect on sales. AC ¶ 214 (quoting analyst report: "[w]hen pressed in Q&A whether the headline effects have burdened short-term sales, management didn't directly say 'no' which left the possibility open.").[5] None of Plaintiff's

---

[5] Plaintiff faults Defendants for not pointing out that there was also a stock price drop after the March 8, 2022 earnings call. Opp. at 15. The Amended Complaint itself alleges that the Company's stock dropped 4.6% after this call. *See* AC ¶ 215. This

authorities (UW Opp. at 9-11, 13-15) support the argument that these statements could have delayed the start of the limitations period, particularly where the historical facts relating to the Company's prior use of lilial had already been disclosed. *See, e.g., Dynegy*, 339 F. Supp. 2d at 850 ("reliable words of comfort from management" prevented investors from being put on notice of claims where only "some of the truth" regarding issuer's prior misstatements had been revealed); *2U, Inc.*, 2021 WL 3418841, at *25 (CEO's statement "specifically reassured investors that there would be no impact on growth or prospects after" current fiscal year).

**Fourth**, aside from Olaplex's financial results, the only other disclosure that Plaintiff identifies after the April 28, 2022 critical date relates to the timing of the Company's reformulation of the No. 3 Product. Specifically, Plaintiff points to a portion of the Company's May 11, 2022 Form 10-Q indicating that it had reformulated the No. 3 Product in June 2021, which Plaintiff claims revealed for the first time that the Company "knew of the lilial issue **before the IPO**." UW Opp. at 17 (emphasis in original). Plaintiff cannot credibly assert that it needed this disclosure to understand that the Company would have known about the lilial ban before the IPO. The E.U. ban had been publicly announced over a year before the IPO. AC ¶ 130. Plaintiff can hardly suggest that the Company's May 11, 2022 disclosure represented any "fundamentally new" revelation to investors. *See Stichting Pensioenfonds ABP v. Countrywide Financial Corp.*, 802 F. Supp. 2d 1125, 1139 (C.D. Cal. 2011).

In sum, Plaintiff had all of the facts it needed to plead its claims by March 8, 2022. Courts routinely grant motions to dismiss where, as here, the complaint alleges that the alleged omissions were disclosed more than a year before asserting Securities Act claims. *See Barnes v. Edison Int'l*, No. 21-55589, 2022 WL 822191, at *1 (9th

---

decline is directly at odds with Plaintiff's suggestion that investors somehow took comfort from management's comments.

Cir. Mar. 18, 2022) (affirming dismissal of Securities Act claims); *In re Dropbox Sec. Litig.*, No. 19-06348-BLF, 2020 WL 6161502, at *11 (N.D. Cal. Oct. 21, 2020) (dismissal where public filings disclosed the allegedly omitted facts more than one year before claim was filed); *In re YogaWorks, Inc. Sec. Litig.*, No. 18-10696-CJC (SKx), 2020 WL 2549290, at *3 (C.D. Cal. Apr. 23, 2020) (same). All of Plaintiff's claims against the Advent Funds are time-barred and should be dismissed.

**B.      The Amended Complaint Fails to Allege the Advent Funds Are Statutory Sellers Under Section 12(a)(2)**

Plaintiff's Section 12(a)(2) claim against the Advent Funds must be dismissed because Plaintiff fails to allege that the funds were statutory sellers.

The Opposition does not argue that the Advent Funds are statutory sellers under Section 12(a)(2)'s first prong. Nor could it. *See Pino v. Cardone Capital, LLC*, 55 F.4th 1253, 1258 (9th Cir. 2022) ("The [complaint] does not allege that [defendants] passed title to the securities in question, and accordingly, neither qualify as a 'seller' under the first prong of [*Pinter v. Dahl*, 486 U.S. 622, 644 n.21 (1988)].").

As to the second prong, Plaintiff fails to allege sufficient facts to show solicitation. Plaintiff argues at length that the Advent Funds were financially motivated in the IPO. Opp. at 8. That misses the point—what Plaintiff must allege is that the Advent Funds' **solicitation** was motivated by financial gain. *See TriNet*, 2017 WL 167708, at *19 (dismissing claim where plaintiff "adequately alleged that [defendant] benefited from the sale of securities" but failed to allege solicitation). The Amended Complaint contains no factual content indicating that the Advent Funds actually engaged in solicitation.

*First*, Plaintiff focuses on the Advent Funds' alleged control over Olaplex due to their ownership stake and their representatives and affiliates on Olaplex's board. Opp. at 9. Mere majority ownership or representation on an issuer's board does not constitute "solicitation" for purposes of Section 12(a)(2). *See TriNet*, 2017 WL

167708, at *2, 13, 19 (dismissing claims against selling stockholder that owned 72% of issuer pre-offering where plaintiff failed to allege that defendant "did anything more than execute the Prospectus Supplement in connection with the [offering] and have representatives on [the issuer's] board"); *Mallen v. Alphatec Holdings, Inc.*, 861 F. Supp. 2d 1111, 1132 (S.D. Cal. 2012) (selling stockholder that had majority interest in issuer before the offering, and whose affiliates comprised the majority of the issuer's board, was not a seller where complaint lacked "sufficient allegations that [defendant] either prepared the [challenged Prospectus] or how it used the Prospectus to actually solicit the purchase of the securities").

***Second***, Plaintiff emphasizes the fact that the Advent Funds' three representatives and two affiliates on Olaplex's board signed the Registration Statement, as well as its boilerplate allegation that all Defendants supposedly "meaningfully" participated "in the preparation of" the Prospectus (with the term "meaningfully" added in the Opposition but absent from the Amended Complaint). Opp. at 9; AC ¶ 304. These allegations fail as well because Plaintiff provides no factual allegations regarding what involvement the Advent Funds (or their board representatives or affiliates) had in preparing the Prospectus. *See Mallen*, 861 F. Supp. 2d at 1132. Multiple courts have concluded that merely signing a registration statement is insufficient to plead solicitation. *See TriNet*, 2017 WL 167708, at *19 (citing *In re Harmonic, Inc., Sec. Litig.*, No. 00-2287 PJH, 2006 WL 3591148, at *13-14 (N.D. Cal. Dec. 11, 2006)).

***Third***, Plaintiff invokes its remaining allegations that Defendants collectively "participat[ed] in" roadshows and other unspecified "marketing of Olaplex's common stock to investors." AC ¶ 304. These vague and conclusory assertions say nothing about which Defendant participated in what activities, or about any allegedly misleading statements made at these events. Courts consistently reject this paint-by-numbers approach to pleading solicitation. *See Mallen*, 861 F. Supp. 2d at 1132.

Plaintiff's only effort to address the Advent Funds' authorities is to argue that they all were somehow overruled by recent Ninth Circuit precedent. Specifically, Plaintiff directs the Court to *Pino* for the proposition that Section 12(a)(2) does not require a plaintiff to plead that a defendant's solicitation be "directed or targeted to a particular plaintiff." Opp. at 10 (quoting 55 F.4th at 1260). But *Pino* leaves undisturbed prior precedent that solicitation must be active and ultimately reach the plaintiff (even if not specifically targeted at the plaintiff). *See* 55 F.4th at 1256, 1258-60. *Pino* also involved factual allegations that are absent here, including that the defendants made specific statements touting issuer's prospects in videos and posts disseminated on social media that advertised shares to investors, and that the plaintiff attended a conference hosted by a defendant days before investing in the company. *Id.* at 1258, 1260. Boilerplate assertions that a defendant merely participated in drafting and signing the registration statement remain insufficient under *Pino*. *See Hollifiel v. Resolute Capital Partners Ltd., LLC*, No. 2:22-cv-07885-SB-RAO, 2023 WL 4291524, at *6 (C.D. Cal. May 12, 2023) (applying *Pino* and concluding that plaintiff's allegations that defendants "engaged in general solicitation" by "hosting investor seminars, dinners, and radio shows" were insufficient).

## C.    Plaintiff's Control Person Claims Should Be Dismissed

A plaintiff attempting to plead control must allege either "specific facts concerning a defendant's responsibilities within the company that demonstrate his involvement in the day-to-day affairs of the company," or "specific control over the preparation and release of the allegedly false and misleading statements." *TriNet*, 2017 WL 167708, at *12. Plaintiff makes no such allegations here, relying instead on the Advent Funds' majority ownership and its representatives and affiliates on Olaplex's board. Those allegations fail to allege control for purposes of Plaintiff's Section 15 claim. *See id.* at *13 (allegation that majority selling stockholder had controlled the company was "speculation" in the absence of facts showing that the

stockholder "actually had the power to and did control [the company's] activities or direct how [its board representatives] controlled those activities").

Plaintiff responds that allegations about control over the challenged statements or day-to-day involvement are unnecessary (Opp. at 11), but relies entirely on cases involving officers and directors, whose involvement in these matters can more readily be inferred. *See In re BofI Holding, Inc. Sec. Litig.*, No. 3:15-CV-02324-GPC-KSC, 2017 WL 2257980, at *21, *28 (S.D. Cal. May 23, 2017) (audit committee members were control persons given their responsibility for drafting challenged statements); *Howard v. Everex Sys., Inc.*, 228 F.3d 1057, 1065 (9th Cir. 2000) (issuer's CEO was control person). Plaintiff's allegations regarding the Advent Funds' role are directly analogous to the allegations against the private equity sponsors in *TriNet* that the court found deficient, and bear no resemblance to the officers and directors in *BofI* and *Everex*.

The selling stockholder cases Plaintiff cites are similarly inapposite. Plaintiff relies primarily on case law predating the Supreme Court's decision in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007) in arguing that substantial ownership is sufficient to demonstrate control on a motion to dismiss. *See, e.g.*, Opp. at 13 (citing *In re Glob. Crossing, Ltd. Sec. Litig.*, No. 02 Civ. 910(GEL), 2005 WL 2990646, at *7-8 (S.D.N.Y Nov. 7, 2005)).[6] Courts have recognized that such allegations no longer suffice in light of *Twombly*. *See Kuhns v. Ledger*, 202 F. Supp. 3d 433, 441 (S.D.N.Y. 2016) (declining to follow *Glob. Crossing*).[7]

---

[6] *See also* Opp. at 12-13 (citing *No. 84 Emp.-Teamster Joint Council Pension Tr. Fund v. Am. W. Holding Corp.* 320 F.3d 920, 945-46 (9th Cir. 2003) and *In re Musicmaker.com Sec. Litig.*, No. 00-2018 CAS(MANX), 2001 WL 34062431, at *17 (C.D. Cal. June 4, 2001)).

[7] Plaintiff also cites *Pirani v. Slack Technologies, Inc.*, but that case, while decided post-*Twombly*, relied on *Global Crossing*'s application of the pre-*Twombly* pleading standard to conclude that "dismissal [was] improper as long as it is at least plausible that plaintiff could develop some set of facts that would pass muster." *See* 445 F. Supp. 3d 367, 383 (N.D. Cal. 2020). Plaintiff's reliance on *In re UTStarcom, Inc.*

## III.    CONCLUSION

The Court should dismiss the claims against the Advent Funds in their entirety and with prejudice. *See In re Stac Elecs. Sec. Litig.*, 89 F.3d 1399, 1411 (9th Cir. 1996) (holding that dismissal with prejudice was appropriate where claims against later-added defendants were time-barred).

---

*Securities Litigation* is similarly misplaced. *See* 617 F. Supp. 2d 964, 979-80 (N.D. Cal. 2009) (shareholder-bank was control person where its CEO, chairman, and largest shareholder was also a co-founder and chairman of the issuer, and where shareholder was also issuer's third largest customer). And the Ninth Circuit's decision in *In re Alphabet, Inc. Securities Litigation* did not address the plaintiff's control person claims, instead finding that the district court erred in finding that the plaintiff failed to allege falsity. *See* 1 F.4th 687, 702 (9th Cir. 2021).

Dated:      August 28, 2023       Anne Johnson Palmer

ROPES & GRAY LLP


By:  */s/ Anne Johnson Palmer*

Anne Johnson Palmer (CSB # 302235)
*anne.johnsonpalmer@ropesgray.com*
ROPES & GRAY LLP
Three Embarcadero Center
San Francisco, California 94111-4006
Tel.: (415) 315-6300
Fax: (415) 315-6350

Peter Welsh (admitted *pro hac vice*)
*peter.welsh@ropesgray.com*
Daniel Yanofsky (admitted *pro hac vice*)
*daniel.yanofsky@ropesgray.com*
ROPES & GRAY LLP
Prudential Tower
800 Boylston Street
Boston, MA 02199-3600
Tel.: (617) 951-7000
Fax: (617) 951-7050

*Attorneys for Defendants*
*Advent International GPE IX Limited*
*Partnership, Advent International GPE*
*IX-B Limited Partnership, Advent*
*International GPE IX-C Limited*
*Partnership, Advent International GPE*
*IX-F Limited Partnership, Advent*
*International GPE IX-G Limited*
*Partnership, Advent International GPE*
*IX-H Limited Partnership, Advent*
*International GPE IX-I Limited*
*Partnership, Advent International GPE*
*IX-A SCSp, Advent International GPE*
*IX-D SCSp, Advent International GPE*
*IX-E SCSp, Advent International GPE IX*
*Strategic Investors SCSp, Advent*
*Partners GPE IX Limited Partnership,*

*Advent Partners GPE IX-A Limited Partnership, Advent Partners GPE IX Cayman Limited Partnership, Advent Partners GPE IX-A Cayman Limited Partnership, and Advent Partners GPE IX-B Cayman Limited Partnership*