**WILLKIE FARR & GALLAGHER LLP**
Matthew M. Gurvitz (SBN 272895)
  MGurvitz@willkie.com
Naomi R. Strauss (SBN 323785)
  NStrauss@willkie.com
2029 Century Park East, Suite 3400
Los Angeles, CA 90067-2905
Telephone:(310) 855-3000
Facsimile:(310) 855-3099

James C. Dugan (*Admitted Pro Hac Vice*)
  JDugan@willkie.com
John L. Brennan (*Admitted Pro Hac Vice*)
  JBrennan@willkie.com
Kathryn C. Garrett (*Admitted Pro Hac Vice*)
  KGarrett@willkie.com
787 Seventh Avenue
New York, NY 10019-6099
Telephone:(212) 728-8000
Facsimile:(212) 728-9654

Attorneys for Defendant
MOUSSERENA, L.P.

**WILLKIE FARR & GALLAGHER LLP**
2029 CENTURY PARK EAST, SUITE 3400
LOS ANGELES, CA 90067
310.855.3000

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

## WESTERN DIVISION

| | |
|---|---|
| LESLIE LILIEN, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>OLAPLEX HOLDINGS, INC., JUE WONG, ERIC TIZIANI, TIFFANY WALDEN, CHRISTINE DAGOUSSET, TRICIA GLYNN, DEIRDRE FINDLAY, JANET GURWITCH, MARTHA MORFITT, DAVID MUSSAFER, EMILY WHITE, MICHAEL WHITE, and PAULA ZUSI, ADVENT INTERNATIONAL GPE IX LIMITED PARTNERSHIP, ADVENT INTERNATIONAL GPE IX-B LIMITED PARTNERSHIP, ADVENT INTERNATIONAL GPE IX-C LIMITED PARTNERSHIP, ADVENT INTERNATIONAL GPE IX-F LIMITED PARTNERSHIP, ADVENT INTERNATIONAL GPE IX-G | Case No. 2:22-cv-08395-SVW (SKx)<br><br><u>CLASS ACTION</u><br><br>Hon. Stephen V. Wilson<br>Courtroom 10A – First Street<br><br>**DEFENDANT MOUSSERENA, L.P.'S REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF ITS MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(B)(6)**<br><br>Date:        September 11, 2023<br>Time:        1:30 p.m.<br>Crtrm.:      10A<br><br>Action Filed: November 17, 2022<br>Trial Date:    None set |

LIMITED PARTNERSHIP, ADVENT INTERNATIONAL GPE IX-H LIMITED PARTNERSHIP ADVENT INTERNATIONAL GPE IX-I LIMITED PARTNERSHIP, ADVENT INTERNATIONAL GPE IX-A SCSP, ADVENT INTERNATIONAL GPE IX-D SCSP, ADVENT INTERNATIONAL GPE IX-E SCSP, ADVENT INTERNATIONAL GPE IX STRATEGIC INVESTORS SCSP, ADVENT PARTNERS GPE IX LIMITED PARTNERSHIP, ADVENT PARTNERS GPE IX-A LIMITED PARTNERSHIP, ADVENT PARTNERS GPE IX CAYMAN LIMITED PARTNERSHIP, ADVENT PARTNERS GPE IX-A CAYMAN LIMITED PARTNERSHIP, ADVENT PARTNERS GPE IX-B CAYMAN LIMITED PARTNERSHIP, MOUSSERENA, L.P., GOLDMAN SACHS & CO. LLC, J.P. MORGAN SECURITIES LLC, MORGAN STANLEY & CO. LLC, BARCLAYS CAPITAL INC., BOFA SECURITIES, INC., EVERCORE GROUP L.L.C., JEFFERIES LLC, RAYMOND JAMES & ASSOCIATES, INC., COWEN AND COMPANY LLC, PIPER SANDLER & CO., TRUIST SECURITIES, INC., TELSEY ADVISORY GROUP LLC, DREXEL HAMILTON, LLC, LOOP CAPITAL MARKETS LLC,

Defendants.

WILLKIE FARR & GALLAGHER LLP
2029 CENTURY PARK EAST, SUITE 3400
LOS ANGELES, CA 90067
310.855.3000

- 2 -

## **TABLE OF CONTENTS**

**Page**

I.    INTRODUCTION ................................................................................................... 1

II.   ARGUMENT ........................................................................................................ 1

     A.     The Complaint Fails To State A Claim Under Section 11 Or Section 12 ........................................................................................................................... 1

     B.     All Claims Against Mousse Are Time-Barred ................................... 1

     C.     The Section 12(a)(2) Claim Fails.......................................................... 5

     D.     The Section 15 Claim Fails.................................................................... 8

III.   CONCLUSION ................................................................................................... 12

**WILLKIE FARR & GALLAGHER LLP**
2029 CENTURY PARK EAST, SUITE 3400
LOS ANGELES, CA 90067
310.855.3000

DEFENDANT MOUSSERENA, L.P.'S REPLY MEMORANDUM OF LAW

# TABLE OF AUTHORITIES

**Cases**                                                                                                    **Page(s)**

*In re 2U, Inc. Sec. Class Action*,
2021 WL 3418841 (D. Md. Aug. 5, 2021)........................................................... 5

*In re Alphabet Securities. Litigation*,
1 F.4th 687 (9th Cir. 2021).................................................................................. 9

*Baker v. Seaworld Ent., Inc.*,
2016 WL 2993481 (S.D. Cal. Mar. 31, 2023)..................................................... 5

*In re Bear Stearns Mortgage Pass-Through Certificates Litigation*,
851 F. Supp. 2d 746 (S.D.N.Y. 2012).................................................................. 3

*In re BofI Holding, Inc. Securities Litigation*,
2017 WL 2257980 (S.D. Cal. May 23, 2017).................................................... 10

*In re Cannavest Corp. Sec. Litig.*,
307 F. Supp. 3d 222 (S.D.N.Y. 2018)................................................................ 10

*In re Charles Schwab Corp. Sec. Litig.*,
257 F.R.D. 534 (N.D. Cal. 2009) ........................................................................ 8

*In re Convergent Techs. Sec. Litig.*,
108 F.R.D. 328 (N.D. Cal. 1985) ...................................................................... 10

*In re Countrywide Fin. Corp. Sec. Litig.*,
588 F. Supp. 2d 1132 (C.D. Cal. 2008)............................................................... 5

*In re Dynegy, Inc. Sec. Litig.*,
339 F. Supp. 2d 804 (S.D. Tex. 2004)................................................................. 4

*Erickson v. Corinthian Colleges, Inc.*,
2015 WL 12732435 (C.D. Cal. Apr. 22, 2015).................................................... 9

*In re eSpeed, Inc. Sec. Litig.*,
457 F. Supp. 2d 266 (S.D.N.Y. 2006).................................................................. 3

*Flynn v. Sientra, Inc.*,
2016 WL 3360676 (C.D. Cal. June 9, 2016)........................................................ 8

*Howard v. Everex Sys., Inc.*,
228 F.3d 1057 (9th Cir. 2000)........................................................................... 12

WILLKIE FARR & GALLAGHER LLP
2029 CENTURY PARK EAST, SUITE 3400
LOS ANGELES, CA 90067
310.855.3000

ii

WILLKIE FARR & GALLAGHER LLP
2029 CENTURY PARK EAST, SUITE 3400
LOS ANGELES, CA 90067
310.855.3000

*In re Int'l Rectifier Corp. Sec. Litig.*,
2008 WL 4555794 (C.D. Cal. May 23, 2008) ..................................................... 8

*Lapin v. Goldman Sachs Grp, Inc.*,
506 F. Supp. 2d 221 (S.D.N.Y. 2006) ............................................................... 5

*LLDVF, L.P. v. Dinicola*,
2010 WL 3210613 (D.N.J. Aug. 12, 2010) ...................................................... 11

*Merck & Co. v. Reynolds*,
559 U.S. 633 (2010) ........................................................................................ 2

*In re Mun. Mortg. & Equity, LLC, Sec. & Deriv. Litig.*,
876 F. Supp. 2d 616 (D. Md. 2012) ................................................................. 3

*No. 84 Employer-Teamster Joint Council Pension Trust Fund v. America West Holding Corp.*,
320 F.3d 920 (9th Cir. 2003) .................................................................... 11, 12

*Paracor Fin., Inc. v. Gen. Elec. Cap. Corp.*,
96 F.3d 1151 (9th Cir. 1996) ........................................................................... 9

*Pino v. Cardone Capital, LLC*,
55 F.4th 1253 (9th Cir. 2022) (Opp. ) ............................................................. 6

*Pirani v. Slack Techs., Inc.*,
445 F. Supp. 3d 367 (N.D. Cal. 2020) ............................................................ 12

*In re Portal Software, Inc. Securities Litigation*,
2006 WL 2385250 (N.D. Cal. Aug. 17, 2006) ................................................... 8

*Rabkin v. Lion Biotechnologies, Inc.*,
2018 WL 905862 (N.D. Cal. Feb. 15, 2018) ...................................................... 8

*Rafton v. Rydex Series Funds*,
2011 WL 31114 (N.D. Cal. Jan. 5, 2011) .......................................................... 3

*In re Refco, Inc. Sec. Litig.*,
503 F. Supp. 2d 611 (S.D.N.Y. 2007) .............................................................. 10

*SEC v. Qi*,
2018 WL 5263187 (C.D. Cal. Mar. 21, 2018) ................................................... 7

*United States ex rel. Silingo v. WellPoint, Inc.*,
904 F.3d 667 (9th Cir. 2008) ........................................................................... 7

iii

*United States v. United Healthcare Insurance Co.*,
   848 F.3d 1161 (9th Cir. 2016)................................................................................. 7

*Welgus v. TriNet Grp., Inc.*,
   2017 WL 167708 (N.D. Cal. Jan. 17, 2017) .......................................................... 5

*Wool v. Tandem Computers Inc.*,
   818 F.2d 1433 (9th Cir. 1987).............................................................................. 12

*York County. ex rel. County of York Retirement Fund v. HP, Inc.*,
   65 F.4th 459 (9th Cir. 2023)............................................................................ 1,2,3

**Statutes**

15 U.S.C. § 77m.......................................................................................................... 2

15 U.S.C. § 78j............................................................................................................ 2

WILLKIE FARR & GALLAGHER LLP
2029 CENTURY PARK EAST, SUITE 3400
LOS ANGELES, CA 90067
310.855.3000

DEFENDANT MOUSSERENA, L.P.'S REPLY MEMORANDUM OF LAW

## I.    INTRODUCTION

Mousse[1] respectfully submits this reply memorandum of law in further support of its Motion to Dismiss.

## II.    ARGUMENT

### A.    The Complaint Fails To State A Claim Under Section 11 Or Section 12

To avoid duplication, Mousse incorporates by reference the arguments in Olaplex's concurrently filed reply memorandum of law.

### B.    All Claims Against Mousse Are Time-Barred

Plaintiff does not contest that its claims against Mousse, which it asserted for the first time on April 28, 2023, are subject to a one-year statute of limitations and therefore are time-barred if Plaintiff could have asserted these claims on or before April 27, 2022.  (Dkt. No. 134 ("UW Opp.") at 9.)  Nor does Plaintiff contend that its claims against Mousse relate back to the initial complaint.  (*Id.* at 20.)  Plaintiff is thus left to argue that its claims against Mousse are not time-barred because, Plaintiff argues, the information supporting its claims "did not publicly emerge until ***after*** April 28, 2022."  (*Id.* at 10 (emphasis in original).)  This narrative, which Plaintiff appears to have contrived to justify its failure to timely assert these claims, is belied by the Complaint's allegations.

Plaintiff first attempts to evade the standard governing the accrual of its claims by citing language from *York County. ex rel. County of York Retirement Fund v. HP, Inc.*, 65 F.4th 459, 465 (9th Cir. 2023).  Plaintiff relies on *HP* to argue that, even if the alleged misstatements underlying its claims came to light before April 28, 2022, the statute of limitations nevertheless did not begin to run until later, when Plaintiff supposedly obtained additional "facts constituting the violation."  (UW Opp. at 7-9 (quotations omitted).)  But as Plaintiff only briefly acknowledges in a footnote, the *HP* decision construed the statute of limitations

---

[1] Capitalized terms not defined herein shall have the meaning ascribed to them in Mousse's opening brief in support of its motion.  ("Opening Brief" or "O.B.").

WILLKIE FARR & GALLAGHER LLP
2029 CENTURY PARK EAST, SUITE 3400
LOS ANGELES, CA 90067
310.855.3000

1

for claims under Section 10(b) of the Exchange Act, not Sections 11 and 12 of the Securities Act.  (*Id.* at 7 fn.4.)  Plaintiff attempts to brush this distinction aside, ignoring that Section 10(b) claims, unlike Section 11 and 12 claims, require a plaintiff to plead facts establishing scienter.  *See* 15 U.S.C. § 78j.  In *Merck & Co. v. Reynolds*, which Plaintiff cites, the Supreme Court held that "facts showing scienter are among those that 'constitut[e] the violation'" and therefore must be discovered before the statute of limitations period begins to run for a Section 10(b) claim.  559 U.S. 633, 649 (2010).  The importance of this holding was underscored in *HP*, where the plaintiffs successfully argued that their Section 10(b) claim was not discovered ***until evidence came forth establishing scienter***.  *HP*, 65 F.4th at 464.  Unlike in *HP* and other Section 10(b) cases, Plaintiff here need not discover facts establishing scienter to assert its claims under Sections 11 and 12.  Instead, the statute of limitations for Plaintiff's claim commenced upon the "discovery of the untrue statement or the omission" underlying its claims.  15 U.S.C. § 77m.

Plaintiff contends that these alleged untrue statements and omissions "did not publicly emerge until ***after*** April 28, 2022."  (UW Opp. at 10 (emphasis in original).)  The Complaint tells a different story.  According to Plaintiff's own allegations, the information that was allegedly omitted from the Offering Documents regarding the "lilial issue" came to light publicly in February 2022, when a social media influencer posted a video that "immediately went viral" and prompted a public response from Olaplex.  (Compl. ¶¶ 197-201; *see also* Dkt. No. 133 ("Olaplex Opp.")) (investors "learned of this lilial issue . . . in late February 2022").)  Plaintiff also alleges that in March 2022 the issue was the subject of widespread news coverage and a product liability suit.  (Compl. ¶¶ 202-206.)

Knowing it cannot avoid its own allegations that the "lilial issue" came to light in February 2022, Plaintiff argues that the ***extent*** of the materiality of this issue was not discovered until later.  Plaintiff states:

> [T]he adverse ***impact*** of the lilial issue on Olaplex's business—*i.e.*, the

WILLKIE FARR & GALLAGHER LLP
2029 CENTURY PARK EAST, SUITE 3400
LOS ANGELES, CA 90067
310.855.3000

2

**WILLKIE FARR & GALLAGHER LLP**
2029 CENTURY PARK EAST, SUITE 3400
LOS ANGELES, CA 90067
310.855.3000

facts supporting the ***materiality*** of the alleged misrepresentations and omissions, a key element necessary to establish violations under Section 11 and Section 12—did not become publicly apparent until later in 2022 when Olaplex disclosed a significant sales slowdown due to the reputational fallout resulting from the lilial controversy.

(UW Opp. at 6 (emphasis in original).)  This statement is completely at odds with Plaintiff's insistence, in arguing it adequately pled Section 11 and 12 claims, that Olaplex failed to disclose material risks that existed ***at the time of the IPO***. (Olaplex Opp. at 7-17.)   Plaintiff cannot argue in one brief that the alleged omission of these facts from the Offering Documents was material, while arguing in another brief that their alleged omission did not actually become material until the occurrence of additional events "revealed" the full extent of their alleged financial impact—many months after their alleged disclosure.

Plaintiff offers no authority to support its position that a Section 11 or 12 claim does not accrue until the full "impact" of an alleged misstatement is revealed.  Instead, the cases Plaintiff cites involve facts that occurred prior to the challenged statements and that were disclosed after the critical date.  *See, e.g.*, *HP*, 65 F.4th at 467 (disclosures after critical date revealed defendants' fraudulent accounting practices); *In re eSpeed, Inc. Sec. Litig.*, 457 F. Supp. 2d 266 (S.D.N.Y. 2006) (disclosures after critical date informed investors that statements were knowingly false when made); *In re Mun. Mortg. & Equity, LLC, Sec. & Deriv. Litig.*, 876 F. Supp. 2d 616, 654 (D. Md. 2012) (plaintiff was unaware of certain facts relating to defendants' erroneous accounting practices and costs of correcting those errors until after critical date).[2]

In any event, Plaintiff's argument that the "impact" of the lilial issue was

---

[2] Plaintiff also cites *Rafton v. Rydex Series Funds*, 2011 WL 31114, at *9 (N.D. Cal. Jan. 5, 2011), and *In re Bear Stearns Mortgage Pass-Through Certificates Litigation*, 851 F. Supp. 2d 746, 763 (S.D.N.Y. 2012), for the proposition that defendants face a high bar in arguing that claims are time-barred (UW Opp. at 8-9). But while the defendants in those cases relied on disclosures about the industry generally, the disclosures at issue here were specific to Olaplex.

3

DEFENDANT MOUSSERENA, L.P.'S REPLY MEMORANDUM OF LAW

not felt until May 2022 "at the earliest" is, again, inconsistent with the Complaint, which places specific emphasis on the immediate market reaction to this issue in March 2022. Plaintiff alleges, for example, that Olaplex's stock price dropped on March 3, 2022, March 7, 2022, and March 8, 2022; that securities analysts were "concerned by this lilial issue" in early March 2022; that analysts became even more focused on the issue following a March 8, 2022 earnings call; and that multiple analyst reports released in March 2022 detailed concerns about the financial impact of the issue. (Compl. ¶¶ 207-217.)

In light of the Complaint's lengthy discussion of the market's reaction to the "lilial issue" in March 2022, it ill behooves Plaintiff to now argue that "investors were not provided sufficient public facts regarding the severe impact from the lilial issue on Olaplex sales until Fall 2022." (UW Opp. at 18.) Plaintiff asks this Court to overlook the Complaint's allegations concerning multiple analyst reports from March 2022 and focus instead on subsequent reports from September 2022, which Plaintiff claims, without support, represent the ***first time*** analysts "began to connect the dots" regarding any financial impact of the "lilial issue." (*Id.*) And in any event, Plaintiff does not attempt to explain why its initial complaint, which was filed in November 2022 and discussed the allegedly "severe" financial results from fall of 2022, did not name Mousse as a defendant.

The Complaint's allegations regarding the market's reaction in March 2022 contradict not only the notion that the materiality of the "lilial issue" was not revealed until months later, but also Plaintiff's contention that Olaplex made "reassuring statements" that delayed the accrual of Plaintiff's claims. The cases Plaintiff cites in support (*id.* at 9-11, 13-15) involved the alleged concealment of facts that constituted misstatements and omissions underlying the plaintiffs' claims. *See, e.g., In re Dynegy, Inc. Sec. Litig.*, 339 F. Supp. 2d 804, 850 (S.D. Tex. 2004) ("words of comfort" prevented investors from being put on notice of claims where only "some of the truth" regarding issuer's prior misstatements had

WILLKIE FARR & GALLAGHER LLP
2029 CENTURY PARK EAST, SUITE 3400
LOS ANGELES, CA 90067
310.855.3000

4

been revealed).[3]   Here, in contrast, Plaintiff does not allege any "reassuring statements" that concealed the *fact* of the "lilial issue."

Plaintiff's own allegations show that the alleged misstatements and omissions underlying Plaintiff's claims against Mousse were easily discoverable as early as March 2022, and Plaintiff does not identify any facts that came to light after April 28, 2022 and were required for Plaintiff to assert these claims.

## C.     The Section 12(a)(2) Claim Fails

To plead its Section 12(a)(2) claim against Mousse, Plaintiff must allege that Mousse is a "statutory seller," by alleging either that Mousse was an "immediate seller" or that Mousse "successfully solicit[ed]" the purchase of securities for its own financial gain. *In re Countrywide Fin. Corp. Sec. Litig.*, 588 F. Supp. 2d 1132, 1183 (C.D. Cal. 2008) (citations omitted).  Plaintiff does not argue that Mousse was an immediate seller (Opp. at 8-9) and in fact cannot allege facts that would satisfy this prong "because the securities at issue were sold through a firm commitment underwriting." *Baker v. Seaworld Ent., Inc.*, 2016 WL 2993481, at *17 (S.D. Cal. Mar. 31, 2023).  And Plaintiff fails to identify any factual allegations that meet the standard for solicitation under the second prong.

To adequately plead that a defendant is a statutory seller under the "solicitation" prong, a plaintiff must allege "*active solicitation*," and "*mere participation in a solicitation or sale does not suffice*." *Welgus v. TriNet Grp., Inc.*, 2017 WL 167708, at *19, *22 (N.D. Cal. Jan. 17, 2017) (emphasis added). Plaintiff acknowledges that it must allege "more than mere participation" (Opp. at 9 (quotations omitted)), but attempts to explain away its failure to do so—and

---

[3] *See also In re 2U, Inc. Sec. Class Action*, 2021 WL 3418841, at *25 (D. Md. Aug. 5, 2021) (CEO's statement "specifically reassured investors that there would be no impact on growth or prospects after" current fiscal year); *Lapin v. Goldman Sachs Grp, Inc.*, 506 F. Supp. 2d 221, 235-36 (S.D.N.Y. 2006) (bank prevented investors from being put on inquiry notice of conflicts of interest by making statements creating the impression that the bank was different from its peers).

**WILLKIE FARR & GALLAGHER LLP**
2029 CENTURY PARK EAST, SUITE 3400
LOS ANGELES, CA 90067
310.855.3000

DEFENDANT MOUSSERENA, L.P.'S REPLY MEMORANDUM OF LAW

WILLKIE FARR & GALLAGHER LLP
2029 CENTURY PARK EAST, SUITE 3400
LOS ANGELES, CA 90067
310.855.3000

discount the authorities cited by Mousse—by relying misguidedly on the Ninth Circuit's decision in *Pino v. Cardone Capital, LLC*, 55 F.4th 1253 (9th Cir. 2022) (Opp. at 9-11).  There, the Ninth Circuit held that broadly disseminated statements, including on social media, could qualify as solicitation, even though they were not "directed or targeted to a particular plaintiff."  55 F.4th at 1260.  The court did not, as Plaintiff suggests, hold that a plaintiff need not allege that a defendant engaged in active solicitation.  To the contrary, in holding that the plaintiff in *Pino* sufficiently pled that the defendants were statutory sellers, the Ninth Circuit cited the complaint's allegations of the defendants' "***extensive solicitation efforts***, including through . . . a conference hosted by [one of the defendants], and Defendants' extensive social media posts."  *Id.* (emphasis added).  Mousse does not contend merely that Plaintiff fails to allege that Mousse engaged in solicitation "directed or targeted to a particular plaintiff," but that Plaintiff here, unlike the plaintiff in *Pino*, fails to allege any facts that, if true, could establish that Mousse engaged in any active solicitation at all.  (*See* O.B. at 14-16.)

To salvage its claim, Plaintiff points principally to Mousse's passive status as a selling shareholder and Plaintiff's allegation that Mousse obtained proceeds from the IPO, which Plaintiff argues shows that Mousse was "motivated by a desire to serve its own financial interests."  (Opp. at 10.)  This is not enough.  Plaintiff must allege not only that Mousse was motivated by financial gain, but also that Mousse engaged in solicitation activities amounting to "more than mere participation."  (*Id.* at 9 (quotations omitted).)

Aside from the allegation that Mousse benefited financially from the IPO, the only allegations on which Plaintiff relies to argue that Mousse is a statutory seller are its allegation as to "how many shares" Mousse owned and its conclusory, collective allegations that the "Selling Stockholder Defendants"—*i.e.*, the Advent Funds and Mousse—generally "participated in the preparation of the false and misleading Prospectus, roadshows, and marketing of Olaplex's common stock to

6

investors." (Opp. at 10.) Plaintiff does not attempt to explain how the number of shares Mousse owned has anything to do with Mousse's purported solicitation, much less cite case law that would suggest that such an allegation is sufficient to support its claim. The other allegations Plaintiff cites all constitute impermissible group pleading in violation of Rule 8 and, even putting that aside, cannot withstand a motion to dismiss because they are wholly conclusory. (*See* O.B. at 6, 14-15.)

Plaintiff defends its practice of group pleading, insisting that "the sufficiency of the [Complaint's] allegations does not falter for having alleged claims against the Selling Stockholders collectively." (Opp. at 11.) But the cases Plaintiff cites to support this contention are inapposite. *United States v. United Healthcare Insurance Co.*, and *United States ex rel. Silingo v. WellPoint, Inc.*, are both False Claims Act cases in which the Ninth Circuit held that it was permissible for plaintiffs to assert the same allegations against insurance companies "who are alleged to have engaged in precisely the same conduct." 848 F.3d 1161, 1184 (9th Cir. 2016); 904 F.3d 667, 678 (9th Cir. 2008).[4] In *SEC v. Qi*, the court held it was acceptable for the plaintiff to make collective allegations about a lawyer and his law firm through whom he made allegedly false statements. 2018 WL 5263187, at *4 (C.D. Cal. Mar. 21, 2018). Here, in contrast, the Complaint fails to allege any affiliation between Mousse and the Advent Funds or that they "engaged in precisely the same conduct." To the contrary, Plaintiff makes allegations about the Advent Funds that it does not make about Mousse, including that the Advent Funds' representatives on Olaplex's board of directors signed the Offering Documents. (*See* Dkt. No. 135 ("Advent Opp.") at 8-9.)[5]

In tacit acknowledgement of its failure to allege facts supporting the statutory seller requirement, Plaintiff suggests it need not allege any facts in

---

[4] In fact, in *WellPoint* the initial complaint had been dismissed without prejudice as to several defendants due to the plaintiffs' group pleading. 904 F.3d at 676.

[5] For the reasons stated in the Advent Funds' briefs, these allegations are, in any event, not sufficient to support Section 12 claims against the Advent Funds.

WILLKIE FARR & GALLAGHER LLP
2029 CENTURY PARK EAST, SUITE 3400
LOS ANGELES, CA 90067
310.855.3000

DEFENDANT MOUSSERENA, L.P.'S REPLY MEMORANDUM OF LAW

WILLKIE FARR & GALLAGHER LLP
2029 CENTURY PARK EAST, SUITE 3400
LOS ANGELES, CA 90067
310.855.3000

support of this element, which Plaintiff contends is a factual question not appropriate for a motion to dismiss.  (Opp. at 9-12.)  But Plaintiff cannot sidestep Rule 12's requirement that Plaintiff plead non-conclusory facts that could support a plausible claim, and Plaintiff does not cite a single case sustaining conclusory allegations that a defendant was a statutory seller.  In fact, in *In re Portal Software, Inc. Securities Litigation*, on which Plaintiff relies, the court stated:  "A mere assertion that defendants are solicitors or sellers is a legal conclusion and therefore insufficient to withstand a motion to dismiss."  2006 WL 2385250, at *4 (N.D. Cal. Aug. 17, 2006) (citations omitted) (plaintiffs adequately pled solicitation by alleging, among other things, that "defendants issued 'materially false and misleading written statements to the investing public'" and prepared and signed the offering documents)*; see also In re Charles Schwab Corp. Sec. Litig.*, 257 F.R.D. 534, 549-50 (N.D. Cal. 2009) (plaintiffs adequately pled solicitation by alleging, among other things, that defendants signed the registration statement).[6]

The Complaint does not allege that Mousse engaged in any sort of active solicitation that could render Mousse a statutory seller.  Plaintiff's Section 12(a)(2) claim against Mousse should be dismissed.

## D.   The Section 15 Claim Fails

To adequately plead its Section 15 claim against Mousse, Plaintiff "must provide some factual support that [Mousse was] in a position to control a primary violator."  *In re Int'l Rectifier Corp. Sec. Litig.*, 2008 WL 4555794, at *22 (C.D.

---

[6] Moreover, *Portal Software* applied the pre-*Twombly* pleading standard, and *Charles Schwaub* relied entirely on pre-*Twombly* precedent in concluding that the plaintiff "satisf[ied] Rule 8(a)'s lenient pleading standards."  *See* 257 F.R.D.at 550.  The two other cases Plaintiff cites to support this argument are inapposite. In *Rabkin v. Lion Biotechnologies, Inc.*, the plaintiff's Section 12 claim was dismissed.  2018 WL 905862, at *20 (N.D. Cal. Feb. 15, 2018)  And the language quoted from *Flynn v. Sientra, Inc.* involved claims against underwriter defendants who passed title directly to investors.  2016 WL 3360676, at *18 (C.D. Cal. June 9, 2016).  Here, such allegations are lacking as to Mousse.

DEFENDANT MOUSSERENA, L.P.'S REPLY MEMORANDUM OF LAW

WILLKIE FARR & GALLAGHER LLP
2029 CENTURY PARK EAST, SUITE 3400
LOS ANGELES, CA 90067
310.855.3000

Cal. May 23, 2008). Plaintiff has not done this. (O.B. at 16-19.)

Plaintiff first contends in the Opposition that its Section 15 claim should be sustained "because Plaintiff has adequately alleged primary violations of Sections 11 and 12(a)(2) of the Security Act." (Opp. at 14.) But the standard for this claim requires a plaintiff to allege **both** a primary violation and that the defendant "controlled the violator." *Paracor Fin., Inc. v. Gen. Elec. Cap. Corp.*, 96 F.3d 1151, 1161 (9th Cir. 1996) (quotations omitted). To support its false suggestion that it need only plead one of two elements, Plaintiff cites *Erickson v. Corinthian Colleges, Inc.*, where the defendants, "who all held high ranking positions" at the primary violator, "d[id] not challenge Plaintiff's Section 20(a) claim on 'control' grounds, and instead focus[ed] on Plaintiff's purported failure to plead a primary violation." 2015 WL 12732435, at *18 (C.D. Cal. Apr. 22, 2015). Here, in contrast, Mousse has raised Plaintiff's failure to allege control as an independent basis for dismissal. (O.B. at 16-19.)

Plaintiff argues second that it adequately pled that Mousse is a control person "given Mousse's stock ownership in Olaplex." (Opp. at 14.) Plaintiff cites no authority providing that minority stock ownership, by itself, can establish control. Instead, Plaintiff cites an SEC regulation defining control as the "'power to direct or cause the direction of the management and policies of a person,'" which can be obtained through stock ownership or other means. (*Id.* (quoting 17 C.F.R. § 230.405).) But Plaintiff has alleged no facts establishing that Mousse ever possessed such power. Plaintiff also cites *In re Alphabet Securities. Litigation*, where the court did not consider whether a plaintiff had adequately pled control and instead reinstated a Section 20 claim that had been dismissed "solely on the ground that [the plaintiff] failed to state a claim for a primary violation." 1 F.4th 687, 702 (9th Cir. 2021). Plaintiff's suggestion that minority stock ownership alone constitutes control would, if accepted, practically impose liability on any person or entity that owns any amount of stock in a primary violator.

DEFENDANT MOUSSERENA, L.P.'S REPLY MEMORANDUM OF LAW

Plaintiff next resorts to rebutting a straw person argument, namely, that Mousse's status as a minority shareholder is "dispositive" that it cannot also be a control person. In doing so, Plaintiff cites cases standing for the proposition that it is "conceivable" that a minority owner could be a control person. *In re Convergent Techs. Sec. Litig.*, 108 F.R.D. 328, 342 (N.D. Cal. 1985). However, the cases Plaintiff cites, unlike this case, involved allegations of actual control beyond mere minority stock ownership. *See In re Cannavest Corp. Sec. Litig.*, 307 F. Supp. 3d 222, 253-254 (S.D.N.Y. 2018) (plaintiff adequately pled control as to minority shareholder who "played multiple, key roles," including as consultant and advisor to primary violator, by financing the challenged transaction, and as CEO of company whose assets were acquired in the transaction); *In re Refco, Inc. Sec. Litig.*, 503 F. Supp. 2d 611, 638 (S.D.N.Y. 2007) (plaintiff adequately pled Section 15 claims against two entities controlled by the company's president, CEO, and board chair, who was alleged to have orchestrated a fraudulent scheme through those entities).

As Mousse explained in the Opening Brief, Plaintiff's Section 15 claim fails not because Mousse's minority stock ownership is "dispositive" but because Plaintiff does not allege any facts suggesting that Mousse was able to exercise control over Olaplex. (O.B. at 17-19.) *In re BofI Holding, Inc. Securities Litigation*, which Plaintiff cites, reinforces what Plaintiff was required to (but did not) allege. 2017 WL 2257980, at *28 (S.D. Cal. May 23, 2017). The court there found that control person liability had been alleged against members of an audit committee who "[b]y virtue of their positions as Directors and their duties as Audit Committee Members, including oversight of the Company's financial reporting and internal controls," and because they "had the power to correct and . . . the responsibility to manage" the actionable misstatements, could be deemed to have the ability to control the company's financial disclosures. *Id.* at *30. But Plaintiff fails in the Opposition to identify any factual allegations that, like those in *BofI*

WILLKIE FARR & GALLAGHER LLP
2029 CENTURY PARK EAST, SUITE 3400
LOS ANGELES, CA 90067
310.855.3000

DEFENDANT MOUSSERENA, L.P.'S REPLY MEMORANDUM OF LAW

*Holding*, could establish Mousse's actual or potential control over Olaplex.

Plaintiff next argues that Mousse had "the power to effectuate a $1.6 billion public offering," which Plaintiff seems to infer merely from the fact that the offering occurred. (Opp. at 15.) But Plaintiff does not cite to any authority providing that a shareholder whose investment is reduced through an offering necessarily had "the power to effectuate" the offering and is a control person; and the Complaint's allegations do not support such an inference.

Plaintiff misleadingly cites to a few paragraphs of the Complaint purportedly alleging that Mousse exercised control. As explained in the Opening Brief, however, these conclusory allegations refer to the "Selling Stockholder Defendants" collectively and do not allege any way in which Mousse, specifically, had control or potential control over Olaplex. (O.B. at 17-19.) Plaintiff defends its group pleading by arguing that the Complaint "alleges that Mousse was 'cemented together' [quoting case law, not the Complaint] with the Advent Fund Defendants" because they both sold stock in the IPO and collectively "owned *over 96%* of Olaplex's stock before the IPO." (Opp. at 15 (emphasis in original).) But the mere fact that Mousse's 6.8% ownership interest, when added together with the Advent Funds' 89.3% interest, equals 96% does not mean that Mousse and the Advent Funds were "cemented together." Otherwise, "any shareholder, no matter how small, could be grouped with others to form a majority control group, even absent allegations or facts supporting that shareholder's actual control." *LLDVF, L.P. v. Dinicola*, 2010 WL 3210613, at *12 (D.N.J. Aug. 12, 2010).

*No. 84 Employer-Teamster Joint Council Pension Trust Fund v. America West Holding Corp.*, on which Plaintiff relies to contend that its group pleading allegations "are further indicative of [Mousse's] control" (Opp. at 16), is instructive. 320 F.3d 920, 945-46 (9th Cir. 2003). There, the plaintiff did not merely group together two shareholders with no explanation, but instead made extensive allegations about each shareholder's indicia of control (for example, that

11

each appointed multiple directors to the board and entered into a favorable stockholder agreement with the company), and alleged that the shareholders "joined forces to exert undue influence" on the company's management. *Id.* at 925-27. The Complaint here is devoid of any allegations that Mousse and the Advent Funds "acted together" or "joined forces" in influencing any particular corporate action. In fact, Plaintiff conspicuously points to allegations about the Advent Funds' purported control that do not apply to Mousse, namely, the Advent Funds' majority stock ownership and representation on Olaplex's board of directors. (Advent Opp. at 12-13.)

In recognition of its deficient allegations, Plaintiff suggests that the question of control cannot be resolved at the motion to dismiss stage. Again, Plaintiff cannot sidestep the requirements of Rule 12 and the statutory claims it purports to assert, and the cases it cites do not relieve Plaintiff of the requirement that it plead facts in support of its claim. In *Wool v. Tandem Computers Inc.*, for example, the Ninth Circuit held that the plaintiff sufficiently alleged facts supporting a 20(a) claim against a company's CEO, COO, and controller, who "had direct involvement not only in the day-to-day affairs of [the company] in general but also in [the company's] financial statements in particular." 818 F.2d 1433, 1442 (9th Cir. 1987).[7] Plaintiff cherry-picks language from these and other cases but, as to Mousse, Plaintiff has not pointed to any particularized factual allegations.

Plaintiff's Section 15 claim against Mousse should be dismissed.

### III.  CONCLUSION

Mousse respectfully requests that the Court grant its Motion.

---

[7] *See also Howard v. Everex Sys., Inc.*, 228 F.3d 1057, 1065 (9th Cir. 2000) (discussing control person liability for CEO and board chair who "participat[ed] in [company's] day-to-day management"); *Pirani v. Slack Techs., Inc.*, 445 F. Supp. 3d 367, 391-93 (N.D. Cal. 2020) (relying on allegations of several traditional "indicia of control," including the defendants' board representation and review and signing of the offering documents, among other allegations).

DEFENDANT MOUSSERENA, L.P.'S REPLY MEMORANDUM OF LAW

**WILLKIE FARR & GALLAGHER LLP**
2029 CENTURY PARK EAST, SUITE 3400
LOS ANGELES, CA 90067
310.855.3000

Date: August 28, 2023

WILLKIE FARR & GALLAGHER LLP

By:   */s/ James C. Dugan*
      James C. Dugan (*Admitted PHV*)
      Matthew M. Gurvitz
      John L. Brennan (*Admitted PHV*)
      Kathryn C. Garrett (*Admitted PHV*)
      Naomi R. Strauss

Attorneys for Defendant
MOUSSERENA, L.P.

**WILLKIE FARR & GALLAGHER LLP**
2029 CENTURY PARK EAST, SUITE 3400
LOS ANGELES, CA 90067
310.855.3000

13