MORGAN, LEWIS & BOCKIUS LLP
Charlene S. Shimada, Bar No. 91407
charlene.shimada@morganlewis.com
Kevin M. Papay, Bar No. 274161
kevin.papay@morganlewis.com
One Market, Spear Street Tower
San Francisco, CA  94105-1596
Tel:    +1.415.442.1000
Fax:   +1.415.442.1001

J. Warren Rissier, Bar No. 197939
warren.rissier@morganlewis.com
300 South Grand Avenue
Twenty-Second Floor
Los Angeles, CA  90071-3132
Tel:    +1.213.612.2500
Fax:   +1.213.612.2501

Attorneys for Defendants

*Goldman Sachs & Co. LLC; J.P. Morgan Securities LLC; Morgan Stanley & Co. LLC; Barclays Capital Inc.; BofA Securities, Inc.; Evercore Group L.L.C.; Jefferies LLC; Raymond James & Associates, Inc.; Cowen and Company, LLC; Piper Sandler & Co.; Truist Securities, Inc.; Telsey Advisory Group LLC; Drexel Hamilton, LLC; Loop Capital Markets LLC*

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| LESLIE LILIEN, Individually and on Behalf of All Others Similarly Situated, Plaintiff, v. OLAPLEX HOLDINGS, INC., JUE WONG, ERIC TIZIANI, TIFFANY WALDEN, CHRISTINE DAGOUSSET, TRICIA GLYNN, DEIRDRE FINDLAY, JANET GURWITCH, MARTHA MORFITT, DAVID MUSSAFER, EMILY WHITE, MICHAEL WHITE, PAULA ZUSI, ADVENT INTERNATIONAL GPE IX LIMITED PARTNERSHIP, ADVENT INTERNATIONAL GPE IX-B LIMITED PARTNERSHIP, ADVENT | Case No. 2:22-cv-08395-SVW(SKx) <br><br> CLASS ACTION <br><br> **REPLY IN SUPPORT OF UNDERWRITER DEFENDANTS' MOTION TO DISMISS REVISED CONSOLIDATED CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS** <br><br> Date:        September 11, 2023 <br> Time:        1:30 p.m. <br> Courtroom:  10A <br> Judge:      Hon. Stephen V. Wilson |
|---|---|

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

CASE NO. 2:22-CV-08395-SVW-SKX

UNDERWRITER DEFENDANTS' REPLY
IN SUPPORT OF MOTION TO DISMISS

INTERNATIONAL GPE IX-C LIMITED PARTNERSHIP, ADVENT INTERNATIONAL GPE IX-F LIMITED PARTNERSHIP, ADVENT INTERNATIONAL GPE IX-G LIMITED PARTNERSHIP, ADVENT INTERNATIONAL GPE IX-H LIMITED PARTNERSHIP ADVENT INTERNATIONAL GPE IX-I LIMITED PARTNERSHIP ADVENT INTERNATIONAL GPE IX-A SCSP, ADVENT INTERNATIONAL GPE IX-D SCSP, ADVENT INTERNATIONAL GPE IX-E SCSP, ADVENT INTERNATIONAL GPE IX STRATEGIC INVESTORS SCSP, ADVENT PARTNERS GPE IX LIMITED PARTNERSHIP, ADVENT PARTNERS GPE IX-A LIMITED PARTNERSHIP, ADVENT PARTNERS GPE IX CAYMAN LIMITED PARTNERSHIP, ADVENT PARTNERS GPE IX-A CAYMAN LIMITED PARTNERSHIP, ADVENT PARTNERS GPE IX-B CAYMAN LIMITED PARTNERSHIP, MOUSSERENA, L.P., GOLDMAN SACHS & CO. LLC, J.P. MORGAN SECURITIES LLC, MORGAN STANLEY & CO. LLC, BARCLAYS CAPITAL INC., BOFA SECURITIES, INC., EVERCORE GROUP L.L.C., JEFFERIES LLC, RAYMOND JAMES & ASSOCIATES, INC., COWEN AND COMPANY, LLC, PIPER SANDLER & CO., TRUIST SECURITIES, INC., TELSEY ADVISORY GROUP LLC, DREXEL HAMILTON, LLC, and LOOP CAPITAL MARKETS LLC

Defendants.

MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

CASE NO. 2:22-CV-08395-SVW-SKx

UNDERWRITER DEFENDANTS' REPLY
IN SUPPORT OF MOTION TO DISMISS

## TABLE OF CONTENTS

                                                                                    **Page**

I.      INTRODUCTION ...................................................................................................... 1

II.     PLAINTIFF'S CLAIMS SHOULD BE DISMISSED ................................... 1

        A.     Plaintiff's Claims Against the Underwriters Are Time-Barred ............ 1

               1.     The Underwriters Applied the Correct Legal Standard .............. 1

               2.     The Complaint's Allegations Make Fact Discovery Unnecessary to Decide When the Statute of Limitations Commenced .......................................................................................... 3

               3.     Plaintiff Concedes that the Omitted Facts Were Disclosed More than One Year Before the Complaint ............................... 4

               4.     Allegations About Later Events Cannot Revive Plaintiff's Stale Claims ........................................................................................ 9

        B.     Plaintiff's Section 12(a)(2) Claim Against Thirteen Underwriters Is Defective ....................................................................... 10

III.    CONCLUSION .......................................................................................................... 12

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

CASE NO. 2:22-CV-08395-SVW-SKx                    i                    UNDERWRITER DEFENDANTS' REPLY
                                                                       IN SUPPORT OF MOTION TO DISMISS

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re 2U, Inc. Sec. Class Action,*
2021 WL 3418841 (D. Md. Aug. 5, 2021)........................................................ 10, 11

*In re AGS, Inc. Sec. Litig.,*
2022 WL 17406100 (D. Nev. Dec. 2, 2022) ..............................................................11

*Amorosa v. AOL Time Warner Inc.,*
409 F. App'x 412 (2d Cir. 2011).................................................................................8

*Baker v. Seaworld Ent., Inc.,*
2016 WL 2993481 (S.D. Cal. Mar. 31, 2016)..........................................................11

*Barnes v. Edison Int'l,*
2021 WL 2325060 (C.D. Cal. Apr. 27, 2021), *aff'd,* 2022 WL
822191 (9th Cir. Mar. 18, 2022) ...........................................................3, 6, 7, 8

*York Cnty. ex rel. Cnty. of York Ret. Fund v. HP, Inc.,*
65 F.4th 459 (9th Cir. 2023)....................................................................1, 2, 3, 9

*In re Dropbox Sec. Litig.,*
2020 WL 6161502 (N.D. Cal. Oct. 21, 2020).............................................................3

*In re Dynegy, Inc. Sec. Litig.,*
339 F. Supp. 2d 804 (S.D. Tex. 2004).......................................................................7

*In re eSpeed, Inc. Sec. Litig.,*
457 F. Supp. 2d 266 (S.D.N.Y. 2006)........................................................................7

*Freidus v. Barclays Bank PLC,*
734 F.3d 132 (2d Cir. 2013) ......................................................................................5

*Hertzberg v. Dignity Partners,*
191 F.3d 1076 (9th Cir.1999).................................................................................10

*Hollifiel v. Resolute Cap. Partners Ltd., LLC,*
2023 WL 4291524 (C.D. Cal. 2023) .......................................................................12

*In re Infonet Servs. Corp. Sec. Litig.,*
310 F. Supp. 2d 1106 (C.D. Cal. 2003).....................................................................2

CASE NO. 2:22-CV-08395-SVW-SKx       ii       UNDERWRITER DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS

*Katz v. China Century Dragon Media, Inc.*,
2011 WL 6047093 (C.D. Cal. Nov. 30, 2011) ...................................................... 11

*Kreek v. Wells Fargo & Co.*,
2011 WL 13244760 (N.D. Cal. Jan. 14, 2011) ...................................................... 2

*Maloney v. Scottsdale Ins. Co.*,
256 F. App'x 29 (9th Cir. 2007) ......................................................................... 3

*Mehedi v. View, Inc.*,
2023 WL 3592098 (N.D. Cal. May 22, 2023) ............................................. 11, 12

*Merck & Co. v. Reynolds*,
559 U.S. 633 (2010) ................................................................................... 1, 2, 3

*In re Network Commerce Inc. Secs. Litig.*,
2006 WL 1375049 (W.D. Wash. May 16, 2006) ................................................. 9

*Pino v. Cardone Cap., LLC*,
55 F.4th 1253 (9th Cir. 2022) ........................................................................... 12

*Pinter v. Dahl*,
486 U.S. 622 (1988) ............................................................................... 10, 11, 12

*Primo v. Pac. Biosciences of Cal, Inc.*,
940 F. Supp. 2d 1105 (N.D. Cal. 2013) ............................................................ 10

*Rieckborn v. Jefferies LLC*,
81 F. Supp. 3d 902 (N.D. Cal. 2015) .................................................................. 3

*Stichting Pensioenfonds ABP v. Countrywide Fin. Corp.*,
802 F. Supp. 2d 1125 (C.D. Cal. 2011) ............................................................ 10

*Thomas v. Magnachip Semiconductor Corp.*,
167 F. Supp. 3d 1029 (N.D. Cal. 2016) ........................................................... 8, 9

*In re Vocera Commc'ns, Inc. Sec. Litig.*,
2015 WL 603208 (N.D. Cal. Feb. 11, 2015) .................................................... 11

*Welgus v. TriNet Grp., Inc.*,
2017 WL 167708 (N.D. Cal. Jan. 17, 2017) ....................................................... 9

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

CASE NO. 2:22-CV-08395-SVW-SKx

iii

UNDERWRITER DEFENDANTS' REPLY
IN SUPPORT OF MOTION TO DISMISS

*Welgus v. TriNet Grp., Inc.*,
   2017 WL 6466264 (N.D. Cal. Dec. 18, 2017), *aff'd*, 765 F. App'x
   239 (9th Cir. 2019) ...........................................................................................5, 11

*In re YogaWorks, Inc. Sec. Litig.*,
   2020 WL 2549290 (C.D. Cal. Apr. 23, 2020)..................................................4, 8


**Statutes**

Securities Act of 1933

    Section 11, 15 U.S.C. § 77k ...................................................................2, 3, 9, 10

    Section 12, 15 U.S.C. § 77l ...................................................................9, 10, 11, 12

    Section 13, 15 U.S.C. § 77m ................................................................................3, 9

28 U.S.C. § 1658............................................................................................................2

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

CASE NO. 2:22-CV-08395-SVW-SKx

iv

UNDERWRITER DEFENDANTS' REPLY
IN SUPPORT OF MOTION TO DISMISS

## I. INTRODUCTION

The Underwriter Defendants submit this Reply in further Support of their Motion to Dismiss (the "Motion or "Mot.").[1]  They also join in the Reply filed by the Olaplex Defendants and Section II.A of the Reply filed by the Advent Funds.

Plaintiff's Opposition confirms that its claims against the Underwriter Defendants should be dismissed.  Those claims are time-barred because the allegedly omitted facts at issue were—according to Plaintiff's own admissions and concession in the Complaint—revealed to the public more than one year before Plaintiff asserted claims against the Underwriter Defendants.  The Opposition is little more than an unpersuasive effort to avoid applicable law and re-characterize the Complaint's allegations about the alleged omissions and the public statements that, in February and March 2022, revealed the allegedly omitted facts.  But the applicable law and allegations unambiguously support the Complaint's dismissal.

Plaintiff also fails to demonstrate that thirteen of the Underwriter Defendants were statutory sellers or, as to all Defendants, that there were any actionable misstatements or omissions.  For all these reasons, the Motion should be granted.

## II. PLAINTIFF'S CLAIMS SHOULD BE DISMISSED

### A. Plaintiff's Claims Against the Underwriters Are Time-Barred

#### 1. The Underwriters Applied the Correct Legal Standard

Plaintiff tacitly agrees that the limitations period commences once a reasonably diligent plaintiff would have discovered the alleged omissions (Mot. at 4), but wrongly asserts that the Underwriter Defendants failed to cite a critical Ninth Circuit precedent.  Opp. at 7 (discussing *York Cnty. ex rel. Cnty. of York Ret. Fund v. HP, Inc.*, 65 F.4th 459, 465 (9th Cir. 2023) ("*HP*")).  *HP* applies the legal standard set forth by the Supreme Court in *Merck & Co. v. Reynolds*, 559 U.S. 633, 653 (2010), cited by the Underwriter Defendants.  *See* Mot. at 4.  *HP* did not and

---

[1] Capitalized terms used herein have the same meaning as in the Motion.

could not change this Supreme Court authority.[2]  Nor did *HP* effect any change to other legal principles concerning motions to dismiss.  Opp. at 7-8.  *HP* applied the "bedrock" pleading principle that an affirmative defense may be raised through a motion to dismiss when the facts establishing that defense are pled in the complaint.  *HP*, 65 F.4th at 466.  Plaintiff's arguments about *HP* are a diversion.

Plaintiff also criticizes the Underwriter Defendants for referring to "inquiry notice."  Opp. at 2.  Plaintiff's criticism is based on a misreading of the cases. *Merck* defined the "discovery rule" as allowing a claim "to accrue when the litigant first knows or with due diligence should know facts that will form the basis for an action."  559 U.S. at 646.  *See id.*  The Underwriter Defendants' cases give "inquiry notice" the same meaning: "'inquiry notice'—when discovery should have been made by the exercise of reasonable diligence."  *In re Infonet Servs. Corp. Sec. Litig.*, 310 F. Supp. 2d 1106, 1113 (C.D. Cal. 2003) (cited in Mot. at 4, 5, 7).[3]  Plaintiff is wrong that the Underwriter Defendants used "inquiry notice" to mean the point at which a plaintiff knows enough to investigate, regardless of whether the facts could be discovered at the time.  *See* Opp. at 2, 7-8.

In sum, there is no dispute that the claims at issue are barred "unless brought

---

[2] *HP* is also inapposite because it concerned Section 10(b) claims and the disputed issue was when facts indicating scienter became publicly known.  That has no bearing here given the differences between Securities Act and Exchange Act limitations periods.  Plaintiff tries to brush aside the differences, (Opp. at 7, n.4), but the claims accrue in fundamentally different circumstances.  The Exchange Act limitations period commences upon "discovery of the facts constituting the violation"—that is, a violation of Section 10(b).  28 U.S.C. § 1658(b).  The elements of a violation include scienter and loss causation, whereas "a Section 11 claim need only allege a material misstatement or omission in the registration statement—not scienter, loss causation, or reliance."  Opp. at 5 (citation omitted).

[3] Plaintiff makes the same mistake as in *Kreek v. Wells Fargo & Co.*, 2011 WL 13244760, at *1 (N.D. Cal. Jan. 14, 2011), where plaintiffs moved for reconsideration of dismissal under the "inquiry notice" standard arguing *Merck* changed the law.  The court rejected this, holding that "[n]othing in *Merck*, … suggests any disapproval of the substantive analysis of those courts that previously utilized the term [inquiry notice] while requiring not only facts that would have reasonably prompted an inquiry, but also a showing that any such inquiry would have revealed the existence of the claim."  2011 WL 13244760, at *2 (N.D. Cal. Jan. 14, 2011).  In other words, the facts must have been discoverable at the time if the plaintiff had investigated.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

CASE NO. 2:22-CV-08395-SVW-SKx

2

UNDERWRITER DEFENDANTS' REPLY
IN SUPPORT OF MOTION TO DISMISS

within one year after the discovery of the untrue statement or the omission, or after such discovery should have been made by the exercise of reasonable diligence," (15 U.S.C. § 77m), and that claims can be dismissed at the pleadings stage based on Plaintiff's own allegations (*HP*, 65 F.4th at 466).

**2.    The Complaint's Allegations Make Fact Discovery Unnecessary to Decide When the Statute of Limitations Commenced**

Plaintiff zeroes in on the statement in *HP* that to prevail, a defendant must "conclusively show" that the claims are time-barred, and argues further that this is a fact-intensive determination usually not appropriate at the pleadings stage.  Opp. at 8-9.  However, *HP* merely restated and applied prevailing pleading standards. Plaintiff does not dispute that motions to dismiss raising the statute of limitations defense are routinely granted when the complaint's allegations—which are binding judicial admissions, not disputed evidence—establish that the claims are time-barred.  *Cf. Maloney v. Scottsdale Ins. Co.*, 256 F. App'x 29, 31-32 (9th Cir. 2007) (granting motion to dismiss and applying law that "factual assertions in the pleadings constitute judicial admissions, binding on both the trial court and on appeal").  As even Plaintiff's cases recognize, when a complaint alleges that the allegedly omitted facts were publicly disclosed more than one year before, "fact discovery and development of the factual record are not necessary to determine when 'discovery' occurred for the purpose of Section 11's limitations period." *Rieckborn v. Jefferies LLC*, 81 F. Supp. 3d 902, 914 (N.D. Cal. 2015) (Opp. at 8).

Regardless of what words Plaintiff prefers to use to describe this standard, the Complaint's own allegations are sufficient to meet it.  Courts routinely grant motions to dismiss when the complaint alleges that the alleged omissions were publicly revealed more than one year before its filing.  Recent examples include *Barnes v. Edison Int'l*, 2022 WL 822191, at *1 (9th Cir. Mar. 18, 2022) (applying *Merck* and affirming dismissal of Section 11 claim); *In re Dropbox Sec. Litig.*, 2020 WL 6161502, at *11 (N.D. Cal. Oct. 21, 2020) (granting motion to dismiss because

public filings disclosed the allegedly omitted facts more than one year before claim was filed); and *In re YogaWorks, Inc. Sec. Litig.*, 2020 WL 2549290, at *3 (C.D. Cal. Apr. 23, 2020) (same).

### 3. Plaintiff Concedes that the Omitted Facts Were Disclosed More than One Year Before the Complaint

Plaintiff's Opposition concedes—as it must—that disclosures of the allegedly omitted facts concerning the "lilial issue" were made to the investing public more than one year before claims were asserted against the Underwriter Defendants. Opp. at 9-10. The Opposition's characterization of the disclosures as merely "initial" is inconsistent with the plain terms of the Complaint. The very facts Plaintiff alleges were not disclosed were disclosed in February and March 2022, as the Complaint admits.

The Complaint alleges more than a dozen times that various statements in the Registration Statement were misleading because Olaplex "failed to disclose":

- "The E.U.'s ban on lilial, which occurred . . . due to the chemical's significant safety risks, particularly infertility links, . . . would apply to Olaplex's 'hero,' best-selling No. 3 product that contained this ingredient until shortly before the IPO";

- "As a result of the E.U. ban, Olaplex reformulated its No. 3 product in June 2021 to remove lilial world-wide, shortly before the Company's IPO";

- "The significant risk that Olaplex's brand reputation, consumer sentiment towards and demand for its products, and its competitive position would be adversely impacted by the implementation of the E.U.'s ban on lilial, particularly given the Company's heavy reliance on social media for sales and marketing efforts as its highly active digital community would amplify the resulting negative publicity and reputational damage to the Olaplex brand."

¶ 165; *see also id.* ¶¶ 167, 169, 172, 174, 176, 179, 181, 183, 185, 188, 190, 192.

Yet, the Complaint's allegations are unmistakably clear that on March 8, 2022, Olaplex disclosed the precise information allegedly omitted, when it stated on a call with analysts:

"In September of 2020, the EU regulatory authority announced their

intent to phase out the use of butylphenyl methylpropional, which is lilial, by March of 2022, out of concern that lilial when used at certain quantities could have negative impact on women's fertility and reproductive system if ingested.  In response to the EU's phaseout of lilial, we no longer produce products with lilial.

Prior to the EU's phaseout, our No. 3 Hair Perfector product contained very small amounts of lilial to enhance the product's fragrance."

¶ 211 (quoting Olaplex's CEO); Opp. at 12.  An analyst then asked, "But even if there's not a substance behind the concerns, perception matters.  Have you seen any negative impact in retail sales related to this?"  In response, Olaplex's CEO said: "I think what I want to point you back is to the fact that we are addressing it on all fronts.  It did only happen, as in my sort of early-on statement, in the last 10 days.  So we are monitoring and looking at everything from all angles."  ¶ 212.  The ensuing analyst reports "specifically noted that the lilial issue's impact on Olaplex's brand reputation and sales was a 'key' area of concern[.]"  ¶ 213; Mot. at 8-9.  Moreover, Plaintiff alleges a viral TikTok video discussing Olaplex's use of lilial was "widely reported" in the traditional news media by March 2022, which "***came as a shock***" to consumers and "sparked immediate public outcry and backlash against Olaplex."  ¶¶ 197, 199, 203.

The Opposition resists comparing the March 2022 disclosures and the alleged omissions because such an analysis is fatal to Plaintiff's position.  Federal courts in the Ninth Circuit and around the country regularly dismiss time-barred claims where, as here, disclosures more than one year before "provided precisely the information that plaintiff claims should have been disclosed earlier."  *Welgus v. TriNet Grp., Inc.*, 2017 WL 6466264, at *30 (N.D. Cal. Dec. 18, 2017), *aff'd*, 765 F. App'x 239 (9th Cir. 2019); *see also, e.g.*, *Freidus v. Barclays Bank PLC*, 734 F.3d 132, 138 (2d Cir. 2013) (same).  Given its allegations, Plaintiff cannot convincingly distinguish these authorities.

In a futile effort to revive their stale claims, Plaintiff argues that management downplayed the "severity" when making these announcements, rendering them

immaterial.  Opp. at 13, 16.  But the Complaint's own allegations show that Olaplex's CEO disclosed the facts, stated that the Company was actively monitoring the situation, and did not deny that that there could be an impact on its retail sales.  ¶¶ 212-13.  Contrary to downplaying the risk, Plaintiff's Complaint admits that Olaplex's CEO was "not denying any adverse sales impact."  ¶ 213.  Indeed, the Complaint alleges that analyst reports reacting to her statement reported that the E.U. ban on lilial and consumer reaction presented a "key risk" for the Company.  ¶ 214.  Further, according to the Complaint, the lilial news was a "shock" and "sparked immediate public outcry and backlash."  ¶¶ 197, 199, 203.

In the Opposition, Plaintiff tries to recharacterize the analyst reports as "at most express[ing] uncertainty."  Opp. at 13, n.7.  Regardless of what new gloss Plaintiff now seeks to ascribe to them, the facts and risks that Plaintiff alleges were omitted could readily have been discovered.  *Compare* ¶ 214, *with* ¶¶ 165(d), 167(d), 169(d), 172(d), 174(d), 176(d), 179(d), 181(d), 183(d), 185(d), 188(d), 190(d), 192(d).[4]  That some analysts had differing opinions regarding the potential future impact to Olaplex from the lilial controversy confirms that the limitations period commenced because it demonstrates that the lilial-related risks allegedly omitted from the Offering Documents were the primary focus of analyst reports in March 2022.  *See* Opp. at 12, 15 (discussing allegations in ¶ 216).

*Barnes v. Edison Int'l* is instructive.  *Barnes* concerned Securities Act claims against a public utility after a wildfire.  2021 WL 2325060, at *7 (C.D. Cal. Apr. 27, 2021) *aff'd*, 2022 WL 822191 (9th Cir. Mar. 18, 2022).  Plaintiffs alleged that the offering documents concealed risks related to the company's safety record and wildfire mitigation.  *Id.*  After the fire, company executives told investors and analysts they did not know "the Company's liability or the extent thereof."  *Id.*  The

---

[4] Plaintiff points to the CEO's statements that the Company's product contained "very small amounts of lilial" and was "never an active or functional ingredient," but Plaintiff does not and cannot allege that those statements are untrue.  Opp. at 12.

District Court, later affirmed by the Ninth Circuit, held that the statute of limitations commenced despite these statements because the "purportedly concealed risks of Edison's safety practices materialized" once the market allegedly understood the utility had caused the fire.  2022 WL 822191, at *1.  Similarly here, Olaplex could not confirm in March 2022 the extent of the impact on brand or sales resulting from the lilial controversy—just like management in *Barnes*.  ¶ 211-212.  Nonetheless, investors still learned of the purportedly concealed risks related to the use of lilial in the No. 3 product—also just like the investors in *Barnes*.  ¶ 209; *see also* ¶ 213 ("several analysts specifically noted that the lilial issue's impact on Olaplex's brand reputation and sales was a 'key' area of concern for investors that they would continue to monitor, particularly given Defendant Wong's statements on the call not denying any adverse sales impact").

Plaintiff relies on several fraud cases where management's "words of comfort" led the courts to deny motions to dismiss.  Opp. at 10-11 (discussing *In re eSpeed, Inc. Sec. Litig.*, 457 F. Supp. 2d 266, 284 (S.D.N.Y. 2006) and *In re Dynegy, Inc. Sec. Litig.*, 339 F. Supp. 2d 804, 851 (S.D. Tex. 2004)).  Those cases are inapposite.  First, those cases' so-called "words of comfort" are not even remotely similar to Olaplex's statements on March 8, 2022.[5]  Second, both *eSpeed* and *Dynegy* involved fraud claims, and the disclosures purportedly commencing the statute were made alongside fraudulent statements.  It is not surprising that a court would find on a motion to dismiss that the statute of limitations did not commence when facts were alleged about defendants actively deceiving investors.  Here,

---

[5] In *Dynegy*, sham transactions, one called Project Alpha, allegedly made loans appear like cash flow.  The company later restated its financials and several executives were criminally convicted.  The disclosures purportedly commencing the statute of limitations came while "Dynegy's managers continued to defend Project Alpha in both the press and conference calls with analysts as a 'solid deal' intended to ensure a stable supply of natural gas."  339 F. Supp. 2d 804, 849–50; *see also id.* at 904 & n.157.  Likewise, *eSpeed* involved fraud claims where the statute of limitations purportedly commenced while defendants were still making fraudulent statements.  457 F. Supp. 2d 266, 284.

Plaintiff asserts no fraud claims and alleges no misstatements on March 8, 2022.

Further undermining Plaintiff's position that the omitted risks were not disclosed by March 2022, the Complaint alleges that there were significant declines of more than 11% in Olaplex's stock price in connection with these March 2022 announcements. *See* Opp. at 14-15. In the Opposition (and Complaint), Plaintiff includes this March 2022 stock drop when arguing that Olaplex's stock price "ultimately dropp[ed] nearly 73% from the IPO price to the date this action was filed[] when the truth about the adverse impact of the lilial issue on Olaplex's sale finally emerged." Opp. at 15 (citing ¶¶ 250, 258).[6]

By alleging and arguing that the March 2022 stock drops are included in the harm that ultimately resulted "when the truth . . . finally emerged," Plaintiff effectively concedes that the statute of limitations commenced in March 2022. Opp. at 15. Courts in this district and from around the country agree that the statute of limitations for Securities Act claims commences once the Company makes a corrective disclosure: "[t]he corrective disclosure date is the same as the constructive notice date for purposes of limitations." *Amorosa v. AOL Time Warner Inc.*, 409 F. App'x 412, 416 (2d Cir. 2011); *see also Barnes*, 2021 WL 2325060, at *7; *YogaWorks*, 2020 WL 2549290, at *2–5 (granting motion to dismiss and holding that claims were barred by statute of limitations because quarterly financial results revealed alleged false and misleading information).

For the claim to be time-barred, Plaintiff need only allege facts showing that by April 28, 2023, it "had enough information about false or misleading statements in the Offering Materials to sufficiently plead a complaint." *YogaWorks*, 2020 WL 2549290, at *2. The information at that time need not "touch on every specific allegation that a plaintiff chooses to put in his complaint." *Thomas v. Magnachip*

---

[6] Plaintiff contends that no Defendants argued that Olaplex's stock price dropped after the March 8, 2022 statements by Olaplex's management. Opp. at 15. That is wrong. Olaplex began its investor conference call before the market opened on March 8, 2022, and Olaplex's stock closed down nearly 5% that day as investors reacted to Olaplex's announcements. Compl ¶ 215; RJN Ex. 4.

MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

*Semiconductor Corp.*, 167 F. Supp. 3d 1029, 1054 (N.D. Cal. 2016). According to the allegations in the Complaint, Plaintiff could have readily filed its claims at any point in February or March 2022 because the omitted facts were publicly known and Olaplex's stock price was below the $21 offering price such that Plaintiff could have sought Section 11 statutory damages or a Section 12(a)(2) rescission. 15 U.S.C. § 77k(e); 15 U.S.C. § 77l(a)(2); RJN Ex. 4. *HP* confirms that it is the elements of a cause of action that must have been discoverable, not all damages or all facts. *HP*, 65 F.4th at 466-67 (if plaintiff "knew or reasonably could have known of the elements of its claim before this critical date, its claim is untimely").

### 4.    Allegations About Later Events Cannot Revive Plaintiff's Stale Claims

Plaintiff also argues that claims did not accrue until later in 2022 when the Company announced financial results for quarters after the "lilial issue" became known. Opp. at 16-19. This argument is defeated by the plain language of the statute, which states that the one-year statute of limitations commences upon the "discovery of the untrue statement or the omission." 15 U.S.C. § 77m. The case law confirms that the statute is not tolled until a company reports a decline in sales. *See In re Network Commerce Inc. Secs. Litig.*, 2006 WL 1375049, at *3 (W.D. Wash. May 16, 2006) (dismissing Section 11 claim because facts were disclosed more than one year before claims were asserted even though "plaintiffs suffered no damages" when the truth was revealed). Plaintiff itself acknowledges that "loss causation" is not an element of a claim under Section 11. Opp. at 5.

In any event, "[t]he one-year time period does not reset simply because additional information is revealed that could make for a stronger claim." *Welgus v. TriNet Grp., Inc.*, 2017 WL 167708, at *22 (N.D. Cal. Jan. 17, 2017). Federal courts in the Ninth Circuit have held repeatedly that "we have never permitted the statute of limitations to be tolled until a company's disclosures touch on every specific allegation that a plaintiff chooses to put in his complaint." *Thomas*, 167 F.

Supp. 3d 1029, 1054.  The reason for this rule is simple and it applies strongly here: "A statute which does not begin to run until every possible phrasing or permutation of the defendants' wrongdoing has been publicly reported would never run.  Each new news report or interview with company executives would reset the clock." *Stichting Pensioenfonds ABP v. Countrywide Fin. Corp.*, 802 F. Supp. 2d 1125, 1137 (C.D. Cal. 2011).[7]

Lastly, Plaintiff concedes that the relation back doctrine cannot save their stale claims.  Opp. at 20.

### B.   Plaintiff's Section 12(a)(2) Claim Against Thirteen Underwriters Is Defective

Plaintiff acknowledges that *Pinter v. Dahl* provides the appropriate test to determine whether the Underwriter Defendants are "statutory sellers," but ignores the Supreme Court' caveat that the statutory language in Section 12 "imposes liability on only the buyer's immediate seller; ***remote purchasers are precluded from bringing actions against remote sellers***.  Thus, a buyer cannot recover against his seller's seller."[8]  486 U.S. 622, 644 n.21 (emphasis added); *Hertzberg v. Dignity Partners*, 191 F.3d 1076, 1081 (9th Cir. 1999) ("Section 12 . . .  permits suit against a seller of a security by prospectus only by 'the person purchasing such security from him'").

Plaintiff's arguments with respect to the two prongs of the Section 12(a)(2) statutory seller test—(1) pass title or (2) solicitation—falter for the same essential reason:  Plaintiff can only assert a Section 12(a)(2) claim against the specific

---

[7] Plaintiff's out-of-circuit authorities are inapposite and do not overcome these on-point Ninth Circuit decisions.  *See* Opp. at 14 (citing *In re 2U, Inc. Sec. Class Action*, 2021 WL 3418841, at *24 (D. Md. Aug. 5, 2021) and *In re Mun. Mortg. & Equity, LLC, Sec. & Derivative Litig.*, 876 F. Supp. 2d 616, 654 (D. Md. 2012)).

[8] As a result of the statutory language, general secondary market purchasers cannot bring Section 12(a)(2) claims, as Plaintiff's own cases confirm.  *See, e.g.*, *Primo v. Pac. Biosciences of Cal, Inc.*, 940 F. Supp. 2d 1105, 1124-25 (N.D. Cal. 2013) (holding that aftermarket purchasers cannot assert a Section 12(a)(2) claim).  In this sense, Section 12(a)(2) differs markedly from Section 11.

defendant who passed title or solicited its purchase, as courts applying *Pinter* have recognized for decades (and including very recently). *See, e.g.*, *Mehedi v. View, Inc.*, 2023 WL 3592098, at *12 (N.D. Cal. May 22, 2023) (dismissing 12(a)(2) claim where "Plaintiff has not alleged that each [defendant] played a direct role in the solicitation of the Plaintiff"); *In re AGS, Inc. Sec. Litig.*, 2022 WL 17406100, at *4 (D. Nev. Dec. 2, 2022) (same).

**Passed Title**:  Plaintiff cannot pursue a Section 12(a)(2) claim against the thirteen moving Underwriter Defendants merely because Olaplex's IPO was a "firm commitment" stock offering and this is a putative class action.  Opp. at 21-23. These are routine aspects of IPOs and securities litigation and not grounds to allow a plaintiff to avoid Section 12(a)(2)'s statutory requirements.  Courts have granted motions to dismiss putative class action claims by underwriters on these allegations because, "even in a firm commitment underwriting, it is possible that the underwriters sold to a broker who may have actually passed the title to Plaintiffs." *Baker v. Seaworld Ent., Inc.*, 2016 WL 2993481, at *18 (S.D. Cal. Mar. 31, 2016).

Plaintiff's arguments here were rejected again recently in *In re AGS*, 2022 WL 17406100, at *4.  There, plaintiff alleged he purchased from one specific underwriter out of several.  *Id.*  The Court granted the underwriters' motion to dismiss, holding that the "vague and conclusory" allegations fell short of establishing the underwriter defendants as statutory sellers.  *Id.*  This decision is not an outlier, as Plaintiff suggests, but instead joins the long line of District Court decisions in the Ninth Circuit granting underwriters' motions to dismiss in similar circumstances.  *See Mehedi*, 2023 WL 3592098, at *11; *Welgus*, 2017 WL 6466264, at *31; *Baker*, 2016 WL 2993481, at *18; *In re Vocera Commc'ns, Inc. Sec. Litig.*, 2015 WL 603208, at *2 (N.D. Cal. Feb. 11, 2015); *Katz v. China Century Dragon Media, Inc.*, 2011 WL 6047093, at *5 (C.D. Cal. Nov. 30, 2011).[9]

---

[9] Plaintiff's authorities agree.  *See In re 2U, Inc.*, 2021 WL 3418841, at *27(cited in Opp. at 14-15, and holding "[w]hile it is certainly possible that the Underwriter Defendants at the Offering sold shares directly to [plaintiff] or solicited its

The Court should follow these cases and reject the argument that Plaintiff can bring Section 12(a)(2) claims against the thirteen moving Underwriter Defendants. Since Plaintiff did not have actually receive title from them, there is no basis for these claims. The cases Plaintiff cites are unpersuasive older and out-of-circuit authorities that contravene the essential holding of *Pinter*, *i.e.*, that Section 12(a)(2) claims cannot be asserted against "remote sellers."

**<u>Solicitation</u>**: Plaintiff's argument concerning "solicitation" is based on a misreading of *Pino v. Cardone Cap., LLC*, 55 F.4th 1253 (9th Cir. 2022). Opp. at 24. *Pino* did not concern an underwritten public offering, but instead unregistered securities that were privately sold to the plaintiff two days after attending the defendant's "Breakthrough Wealth Summit" and watching several of his YouTube and Instagram videos touting the securities. *Pino,* 55 F.4th 1253, at 1256. *Pino* held that these allegations were sufficient to allege solicitation. *Id.* at 1260. Contrary to what Plaintiff argues, *Pino* did not silently upend Section 12(a)(2) law by holding that the typical activities underwriters perform in a public offering to effectuate the offering—all that is alleged here—constitute "solicitation" of each and every public market purchaser. Opp. at 24-25; ¶¶ 75-80. This would be a dramatic expansion of Section 12(a)(2), and the decisions since have not accepted Plaintiff's extreme interpretation. *See Mehedi*, 2023 WL 3592098, at *12 (dismissing Section 12(a)(2) claim for failing to allege solicitation); *Hollifiel v. Resolute Cap. Partners Ltd., LLC*, 2023 WL 4291524, at *6 (C.D. Cal. 2023) (dismissing Section 12 claims based on "general solicitation" allegations).

### III.   CONCLUSION

The Underwriter Defendants' Motion should be granted, with prejudice.[10]

---

purchase, [plaintiff's] vague allegation is insufficient to state a plausible claim against the Underwriter Defendants.").

[10] As set forth in the Motion, Plaintiff's claims against all of the Underwriter Defendants should also be dismissed for failure to plead actionable statements or omissions. Plaintiff does not dispute that the Company's arguments in this regard apply equally to the Underwriter Defendants. *See* Opp. at 20.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

CASE NO. 2:22-CV-08395-SVW-SKx

12

UNDERWRITER DEFENDANTS' REPLY
IN SUPPORT OF MOTION TO DISMISS

Dated:  August 28, 2023

MORGAN, LEWIS & BOCKIUS LLP


By:  */s/ Charlene S. Shimada*
Charlene S. Shimada

Attorneys for Defendants
*Goldman Sachs & Co. LLC; J.P. Morgan Securities LLC; Morgan Stanley & Co. LLC; Barclays Capital Inc.; BofA Securities, Inc.; Evercore Group L.L.C.; Jefferies LLC; Raymond James & Associates, Inc.; Cowen and Company, LLC; Piper Sandler & Co.; Truist Securities, Inc.; Telsey Advisory Group LLC; Drexel Hamilton, LLC; Loop Capital Markets LLC*