Anne Johnson Palmer (CSB # 302235)
*anne.johnsonpalmer@ropesgray.com*
ROPES & GRAY LLP
Three Embarcadero Center
San Francisco, California 94111-4006
Tel.: (415) 315-6300
Fax: (415) 315-6350

Peter Welsh (admitted *pro hac vice*)
*peter.welsh@ropesgray.com*
Daniel A. Yanofsky (admitted *pro hac vice*)
*daniel.yanofsky@ropesgray.com*
ROPES & GRAY LLP
800 Boylston Street
Boston, MA 02199-3600
Tel.: (617) 951-7000
Fax: (617) 951-7050

*Attorneys for the Olaplex Defendants
(listed on signature page)*

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| LESLIE LILIEN, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>OLAPLEX HOLDINGS, INC., *et al.*,<br><br>Defendants. | Case No. 2:22-cv-08395-SVW-SKx<br><br>**OLAPLEX DEFENDANTS' RESPONSE TO NOTICE OF SUPPLEMENTAL AUTHORITY**<br><br>Hearing Date: October 16, 2023<br>Hearing Time: 1:30 p.m.<br>Courtroom: 10A<br>Judge: Hon. Stephen V. Wilson |

**1**

The Olaplex Defendants[1] respectfully submit this response to Plaintiff's October 30, 2023 Notice of Supplemental Authority ("Notice," ECF No. 152), which cites the Ninth Circuit's recent decision in *In re Facebook, Inc. Securities Litigation*, No. 22-15077, 2023 WL 6857600 (9th Cir. Oct. 18, 2023) ("*Facebook*"). The *Facebook* decision does not support Plaintiff's arguments. Instead, for the reasons discussed below, the decision highlights the types of facts that are absent from the Amended Complaint and that plaintiffs must plead to support a claim that an issuer failed to disclose a risk that had already materialized.

The plaintiffs in *Facebook* alleged that the defendant-issuer, a social media platform, had allowed a third party to improperly harvest and use the personal data of over 30 million Facebook users, contrary to Facebook's prior statements regarding third-party access to user data, and in violation of both Facebook's internal policies as well as a consent decree that it had previously entered with the Federal Trade Commission ("FTC"). *Facebook*, 2023 WL 6857600, at *4-6. As a result of Facebook's improper information-sharing practices, the FTC imposed a "record-breaking" $5 billion penalty on Facebook, which was "almost 20 times greater than the largest privacy or data security penalty ever imposed worldwide" and was "one of the largest penalties ever assessed by the U.S. government for any violation." *Id.* at *3 & n.4; *see also In re Facebook, Inc. Sec. Litig.*, No. 5:18-cv-01725-EJD, ECF No. 142, ¶ 457 (N.D. Cal.).

The *Facebook* plaintiffs challenged, among other things, a risk disclosure that "presented the prospect of a breach [of user data] as purely hypothetical when it had already occurred." *Facebook*, 2023 WL 6857600, at *9. The Ninth Circuit emphasized that the federal securities laws do not "create an affirmative duty to

---

[1] The "Olaplex Defendants" are Olaplex Holdings, Inc., JuE Wong, Eric Tiziani, Tiffany Walden, Christine Dagousset, Tricia Glynn, Deirdre Findlay, Janet Gurwitch, Martha Morfitt, David Mussafer, Emily White, Michael White, and Paula Zusi.

disclose any and all material information" that may be of interest to investors, *id.* at *8, but held that the *Facebook* plaintiffs adequately pled that this disclosure was misleading because (i) the statement "directly contradicted what the company knew" about the alleged "misconduct" when it made the challenged statement, and (ii) the statement "could be misleading even if the magnitude of the ensuing harm was still unknown." *Id.*

Here, by contrast, Plaintiff does not allege that any of the challenged statements "directly contradicted" what the Company knew at the time of the IPO. *See* ECF No. 133 at 2, 7, 13, 15-17 (not disputing that any of the challenged statements were "literally true"). Nor does Plaintiff accuse Olaplex of any "misconduct"—by violating any law or otherwise—in connection with its prior use of lilial in one of its products. Plaintiff instead acknowledges that Olaplex complied with the law by ceasing any sales of product containing lilial in the E.U. and U.K. before the relevant ban went into effect. *See* Amended Complaint ("AC," ECF No. 123) ¶ 139.

Moreover, while the Ninth Circuit in *Facebook* observed that disclosure of a risk may be required even where "the ***magnitude*** of the ensuing harm" was unknown, *see* 2023 WL 6857600, at *9 (emphasis added), Plaintiff fails to allege facts indicating the ***existence*** of ***any*** foreseeable harm that could have resulted from Olaplex's prior use of lilial. As is clear from the Amended Complaint and a document it incorporates by reference (the "SCCS Report," ECF No. 130-5), lilial was a common ingredient in cosmetic and other products. AC ¶ 211; SCCS Report at 12. The E.U.'s 19-month phaseout of lilial was announced over a year before the IPO, and the SCCS Report was issued two years earlier. AC ¶¶ 4-5, 154. Yet Olaplex faced no backlash during those two years prior to the IPO. *Id.* ¶¶ 134-36.[2] Critically,

---

[2] Plaintiff again seeks to mischaracterize this as a "truth-on-the-market" defense. Notice at 2. Not so. The fact that Olaplex faced no backlash during an extended period of time after the E.U. phaseout was announced, when the Company had listed

3

moreover, Plaintiff's claims are not based on the mere fact that the E.U. had decided to ban lilial prior to Olaplex's IPO. Plaintiff's counsel confirmed as much during the argument on Defendants' motions to dismiss, arguing that the materiality of the information allegedly omitted from the Offering Documents was not apparent until well after the IPO, when the TikTok videos referenced in the Amended Complaint went viral and affected the market for Olaplex's stock. *See* 10/16/23 Hr'g Tr. 29:16-32:5. Plaintiff does not allege any facts that would explain how Olaplex could have foreseen at the time of the IPO that the lilial ban would have this supposed impact on the Company, driven by these social media influencer TikTok videos.

And, in fact, the harm that ultimately occurred decidedly was ***not*** due to the mere fact of Olaplex's prior use of this ingredient. The social media controversy instead arose from the influencer's false assertions in the TikTok videos that Olaplex's product specifically was being banned because of some supposed finding it was actually reprotoxic. *See* AC ¶¶ 15, 214, 217, 240-41, 279. Thus, unlike in *Facebook*, where the eventual public disclosure of "one of the largest data leaks in the social network's history" presumably would have some foreseeable impact on the issuer when the matter fully came to light (*see* 2023 WL 6857600, at *5), there was no basis for Olaplex to predict at the time of its IPO that its prior use of a common ingredient would cause any harm to the Company. As the Olaplex Defendants argued in their briefing, for this reason Plaintiff's Amended Complaint is far more analogous to pleadings that courts have dismissed for failure to allege that any risk had materialized at the time of the IPO, or was substantially likely to do so in the future. *See* ECF No. 130-1 at 11-12; ECF No. 138 at 3-4 & n.3; *see also Rubke v. Capitol Bancorp Ltd.*, 551 F.3d 1156, 1164 (9th Cir. 2009) (affirming dismissal of Section 11 claim because defendants "could not know" about events that occurred after the

---

the ingredient on its website and on the product's label, demonstrates that the controversy following the release of the TikTok videos was not foreseeable at the time of the IPO. *See* Olaplex Defendants' Reply (ECF No. 138) at 3 n.3.

challenged statements and thus "could not include a disclaimer" about them); *In re Progenity, Inc. Sec. Litig.*, No. 3:20-cv-01683-RBM-AHG, 2023 WL 219345, at *7 (S.D. Cal. Jan. 13, 2023) (dismissing Section 11 claim where plaintiffs "fail[ed] to plead anything beyond conclusory assertions to establish that the risk" at issue in that case "had materialized by the time the Registration Statement took effect" or that defendants "knew or reasonably could have known" of the risk at that time).

Accordingly, *Facebook* provides no support for Plaintiff's claims.

| | | |
|---|---|---|
| Dated: | November 6, 2023 | Anne Johnson Palmer<br>ROPES & GRAY LLP<br><br>By: /s/ *Anne Johnson Palmer*<br>    Anne Johnson Palmer (CSB # 302235)<br>    *anne.johnsonpalmer@ropesgray.com*<br>    ROPES & GRAY LLP<br>    Three Embarcadero Center<br>    San Francisco, California 94111-4006<br>    Tel.: (415) 315-6300<br>    Fax: (415) 315-6350<br><br>    Peter Welsh (admitted *pro hac vice*)<br>    *peter.welsh@ropesgray.com*<br>    Daniel Yanofsky (admitted *pro hac vice*)<br>    *daniel.yanofsky@ropesgray.com*<br>    ROPES & GRAY LLP<br>    Prudential Tower<br>    800 Boylston Street<br>    Boston, MA 02199-3600<br>    Tel.: (617) 951-7000<br>    Fax: (617) 951-7050<br><br>    *Attorneys for Defendants*<br>    *Olaplex Holdings, Inc., JuE Wong, Eric Tiziani, Tiffany Walden, Christine Dagousset, Tricia Glynn, Deirdre Findlay, Janet Gurwitch, Martha Morfitt, David Mussafer, Emily White, Michael White, and Paula Zusi* |