Anne Johnson Palmer (CSB # 302235)
*anne.johnsonpalmer@ropesgray.com*
ROPES & GRAY LLP
Three Embarcadero Center
San Francisco, California 94111-4006
Tel.: (415) 315-6300
Fax: (415) 315-6350

Peter Welsh (admitted *pro hac vice*)
*peter.welsh@ropesgray.com*
Daniel A. Yanofsky (admitted *pro hac vice*)
*daniel.yanofsky@ropesgray.com*
ROPES & GRAY LLP
800 Boylston Street
Boston, MA 02199-3600
Tel.: (617) 951-7000
Fax: (617) 951-7050

*Attorneys for the Olaplex Defendants*
*(listed on signature page)*

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| LESLIE LILIEN, Individually and on Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br> v. <br><br> OLAPLEX HOLDINGS, INC., *et al.*, <br><br> Defendants. | Case No. 2:22-cv-08395-SVW-SKx <br><br> **OLAPLEX DEFENDANTS' RESPONSE TO NOTICE OF SUPPLEMENTAL AUTHORITY** <br><br> Hearing Date: July 1, 2024 <br> Hearing Time: 1:30 p.m. <br> Courtroom: 10A <br> Judge: Hon. Stephen V. Wilson |

The Olaplex Defendants[1] respectfully submit this response to Plaintiff's July 12, 2024 Notice of Supplemental Authority ("Notice," ECF No. 164), which cites three recent decisions:  (i) the United States Supreme Court's decision in *Macquarie Infrastructure Co. v. Moab Partners, L.P.*, 601 U.S. 257 (2024); (ii) an amended opinion from the Ninth Circuit in *In re Facebook, Inc. Sec. Litig.*, 87 F.4th 934, 942 (9th Cir. 2023), *cert. granted in part sub nom. Facebook, Inc. v. Amalgamated Bank*, No. 23-980, 2024 WL 2883752 (June 10, 2024); and (iii) a decision from the U.S. District Court for the Southern District of California in *Salzman v. ImmunityBio, Inc., et al.*, No. 23-CV-01216-GPC-VET, 2024 WL 3100274 (S.D. Cal. June 20, 2024). None of these decisions provides any support for Plaintiff's arguments.

First, Plaintiff points to the Supreme Court's recent decision in *Macquarie*, where the Court observed that "'Congress imposed liability for **pure omissions** in § 11(a) of the Securities Act of 1933,' when the omitted information was required by Items 303 and 105 of Regulation S-K."  Notice at 1-2 (quoting *Macquarie*, 601 U.S. at 264) (emphasis added by Plaintiff).  Plaintiff suggests that this decision somehow constitutes a development in case law relevant to this action.  But none of the parties here disputes that pure omissions can be actionable under Section 11 where disclosure of the omitted facts was required under SEC regulations such as Item 303 or 105.[2]  Instead, as the Olaplex Defendants addressed in their motion to dismiss,[3] Plaintiff fails to allege any facts supporting its assertions that Olaplex omitted any

[1] The "Olaplex Defendants" are Olaplex Holdings, Inc., JuE Wong, Eric Tiziani, Tiffany Walden, Christine Dagousset, Tricia Glynn, Deirdre Findlay, Janet Gurwitch, Martha Morfitt, David Mussafer, Emily White, Michael White, and Paula Zusi.

[2] *See* Notice at 2 (stating that "this Court and the Olaplex Defendants' counsel recognized" at the October 16, 2023 motion to dismiss hearing that omission of facts required to be disclosed under Item 303 or 105 is actionable under Section 11).

[3] *See* ECF No. 130-1 at 19-20; ECF No. 138 at 10-11; *see also* Tr. of 7/1/2024 Hearing at 39:6-44:2.

facts required to be disclosed under these regulations, either in the form of a known trend or uncertainty that was reasonably likely to impact the Company's business (Item 303), or a material factor that made an investment in Olaplex speculative or risky (Item 105).  Importantly, with respect to the risk that later materialized—when an influencer posted videos on TikTok falsely claiming that the E.U. was banning the Company's product due to lilial—the Offering Documents specifically cautioned investors about the risks associated with Olaplex's use of social media.  Olaplex's Offering Documents included express warnings that the "dissemination of information via social media could harm our brand or our business, regardless of the information's accuracy."  Amended Complaint ("AC," ECF No. 123) ¶ 172.

Second, Plaintiff notes that the Ninth Circuit issued an amended opinion in *Facebook*, which does not alter the substance of the original opinion that Plaintiff submitted to the court late last year.  *See* Notice at 1 & n.1.  But Plaintiff buries the lede concerning a more significant development—that the Supreme Court recently granted certiorari to review the Ninth Circuit's decision in *Facebook*, and will address the following question:

> Are risk disclosures false or misleading when they do not disclose that a risk has materialized in the past, even if that past event presents no known risk of ongoing or future business harm? [4]

Despite heavily relying on the Ninth Circuit's decision in *Facebook* at the July 1, 2024 hearing (*see, e.g.,* Tr. of 7/1/2024 Hearing at 32:24-33:8), and submitting the Ninth Circuit's amended opinion, Plaintiff only makes reference to the Supreme Court's decision to review this case when citing the subsequent history of the Ninth Circuit's amended opinion.  *See* Notice at 1.  Moreover, for the reasons explained in the Olaplex Defendants' November 6, 2023 response to Plaintiff's first notice of

---

[4] *See* Facebook's Petition at i (attached as Exhibit 1); *Facebook, Inc. v. Amalgamated Bank*, 2024 WL 2883752 (June 10, 2024) (order granting petition for writ of certiorari).

supplemental authority (ECF No. 153), and as also addressed at the July 1, 2024 hearing, the Ninth Circuit's decision in *Facebook* does not support Plaintiff's arguments here.[5]

Third, Plaintiff presents a decision issued last month from the U.S. District Court for the Southern District of California in *ImmunityBio*, where the court cited the Ninth Circuit's *Facebook* decision in denying in part a motion to dismiss Section 10(b) claims. *See* Notice at 2-4. The plaintiff in *ImmunityBio* challenged risk disclosures that warned of hypothetical risks that, according to the plaintiff, had already come to fruition. *See ImmunityBio*, 2024 WL 3100274, at *4. Plaintiff's attempt to leverage this decision falls flat for the same reasons why *Facebook* is inapposite.

In *ImmunityBio*, the issuer, a pharmaceutical company, failed to obtain FDA approval for its flagship product due to serious and persistent problems with manufacturing practices, many of which amounted to violations of federal law. *Id.* at *2. According to the complaint, FDA inspectors had observed and documented these violations on three instances over a two year period—identifying a total of 24 significant deficiencies—before the FDA ultimately rejected the company's application to bring its drug to market. *Id.* at *2-3 (noting that FDA's observations included that manufacturing site had "failed in critical sanitation and contamination-management practices"). The company's management had allegedly been aware of these manufacturing problems for more than two years before the FDA issued its decision, including because these issues "resulted in frequent supply delays for the company's flagship product that lasted for months," and the company's CEO allegedly held monthly meetings to discuss these delays and deficiencies. *Id.* at *2. The defendants allegedly failed to disclose any of these issues until the FDA issued its decision rejecting the company's application. Instead, the defendants "presented

---

[5] *See, e.g.*, Tr. of 7/1/2024 Hearing at 21:4-25:21.

the prospect of 'production difficulties' and [compliance] deficiencies as purely hypothetical when they had already occurred." *Id.* at \*10.

In stark contrast to the allegations in *ImmunityBio* (and in *Facebook*), here Plaintiff does not allege that Olaplex's prior use of lilial violated any law or subjected Olaplex to any scrutiny from regulators. Plaintiff instead acknowledges that Olaplex complied with the law by ceasing any sales of product containing lilial in the E.U. and U.K. before the relevant ban—which was announced over a year prior to the IPO—went into effect. *See* AC ¶ 139. Moreover, Plaintiff does not allege that the reformulation of Olaplex's No. 3 Product created any manufacturing issues, such as the months-long supply delays in *ImmunityBio*.[6] In short, the Amended Complaint does not allege any facts suggesting that, at the time of the IPO, Olaplex had any reason to expect it would experience any lilial-related controversy in the future.

Ignoring these dispositive differences, Plaintiff insists that Defendants in this case "proffer the exact argument rejected in *ImmunityBio* and *Facebook*," that "the ***consequences*** of the [purported] concealed risks" had not yet materialized at the time of the IPO. *See* Notice at 3 (emphasis in original). That, of course, is not what Defendants suggest here. What Defendants have instead argued is that Plaintiff fails to allege any facts indicating that ***any risk had come to fruition at the time of the IPO, or was reasonably likely to do so***, based on Olaplex's prior use of lilial. *See* ECF No. 130-1 at 11-12; ECF No. 138 at 3-4 & n.3. That is distinct from the circumstances in *ImmunityBio*, where the risk of harm—the likelihood of an adverse FDA decision based on the agency's observation of severe and persistent manufacturing deficiencies—plainly existed at the time of the challenged statements,

---

[6] Plaintiff's own confidential witness allegations indicate that the reformulation was a non-event—the "only real cost" of removing lilial was "scrapping and reprinting the labels," and "reformulating the product was easy, since the Company could simply remove lilial." AC ¶ 142; *see* Tr. of 7/1/2024 Hearing at 7:13-7:25; 13:8-13:17; 31:24-32:8; 36:4-36:24.

even if the consequences (the FDA's ultimate decision) had not yet occurred.  2024 WL 3100274, at *10.  Similarly in *Facebook*, a third party had improperly harvested and used the personal data of over 30 million users, contrary to Facebook's prior statements regarding third-party access to user data and in violation of Facebook's internal policies as well as a consent decree with the Federal Trade Commission. *Facebook*, 87 F.4th at 942.  The *Facebook* court reasoned that the risk of harm in fact already materialized, even if the "magnitude of the ensuing harm" was not yet known. *Id.* at 948-950.

Here, by contrast, Plaintiff does not allege any such risk to Olaplex stemming from lilial that already materialized at the time of the Company's IPO.  In this respect, the facts alleged here are far more analogous to those presented in *In re Progenity, Inc. Sec. Litig.*, No. 3:20-cv-01683-RBM-AHG, 2023 WL 219345, at *6-7 (S.D. Cal. Jan. 13, 2023).  In *Progenity*, a medical testing manufacturer had previously settled with government agencies claims that it had overbilled government payors for one of its tests.  At the time of the company's IPO, the plaintiffs alleged that the company was aware of a new billing code that might affect another one of the company's testing products and similarly result in refund liability to governmental payors.  *Id.* On this basis, the plaintiffs challenged the company's disclosure that "payors may seek refunds of amounts they claim were inappropriately billed to a specified CPT code" as describing a risk as merely hypothetical when the risk had actually materialized.  *Id.* at *7.  The court dismissed the Section 11 claim, reasoning that the plaintiffs "fail[ed] to plead anything beyond conclusory assertions" that the risk of additional refunds had materialized at the time of the offering, or that defendants "knew or reasonably could have known" of such a risk at that time.  *Id.*  Plaintiff's allegations here fail for the same reason: Olaplex's prior reformulation of its product in compliance with the E.U. regulations did not, without more, suggest the Company faced any risk to its business that had come to fruition at the time of the IPO.  *See id.* at *7-8; *see also Rubke v. Capitol Bancorp Ltd.*, 551 F.3d 1156, 1164 (9th Cir. 2009)

(affirming dismissal of Section 11 claim because defendants "could not know" about events that occurred after the challenged statements and thus "could not include a disclaimer" about them).

None of Plaintiffs' new authorities supports its claims.[7]

---

[7] Plaintiff also seeks to reargue several points concerning alleged affirmative misstatements despite acknowledging that these allegations "are entirely separate from the risk disclosure misstatements at issue in *Facebook* and related cases" that Plaintiff has submitted to the Court as supplemental authority. Notice at 2 n.2. These arguments—which by Plaintiff's own admission are not relevant to any new authority presented to the Court—are not proper to raise and lack merit for the reasons addressed in the Olaplex Defendants' briefing. *See, e.g.*, ECF No. 130-1 at 14-16, 18-19; ECF No. 138 at 5-6, 8-9.

Dated: July 16, 2024

Anne Johnson Palmer
ROPES & GRAY LLP

By: /s/ *Anne Johnson Palmer*

Anne Johnson Palmer (CSB # 302235)
*anne.johnsonpalmer@ropesgray.com*
ROPES & GRAY LLP
Three Embarcadero Center
San Francisco, California 94111-4006
Tel.: (415) 315-6300
Fax: (415) 315-6350

Peter Welsh (admitted *pro hac vice*)
*peter.welsh@ropesgray.com*
Daniel Yanofsky (admitted *pro hac vice*)
*daniel.yanofsky@ropesgray.com*
ROPES & GRAY LLP
Prudential Tower
800 Boylston Street
Boston, MA 02199-3600
Tel.: (617) 951-7000
Fax: (617) 951-7050

*Attorneys for Defendants*
*Olaplex Holdings, Inc., JuE Wong, Eric*
*Tiziani, Tiffany Walden, Christine*
*Dagousset, Tricia Glynn, Deirdre*
*Findlay, Janet Gurwitch, Martha Morfitt,*
*David Mussafer, Emily White, Michael*
*White, and Paula Zusi*