### UNITED STATES DISTRICT COURT
### CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 2:22-cv-08395-SVW-SK | Date | February 7, 2025 |
| Title | *Leslie Lilien v. Olaplex Holdings, Inc. et al* | | |

---

**Present: The Honorable    STEPHEN V. WILSON, U.S. DISTRICT JUDGE**

| | |
|---|---|
| Paul M. Cruz | N/A |
| Deputy Clerk | Court Reporter / Recorder |
| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
| N/A | N/A |

**Proceedings:** ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTIONS TO DISMISS [127][129][130][132]

## I.    Introduction

Before the Court are motions to dismiss brought by Mousserena, L.P. ("Mousserena"); the Advent Fund defendants[1]; Olaplex Holdings, Inc. ("Olaplex") and the Individual Defendants[2]; and the Underwriter Defendants[3]. ECF No. 127, 129, 130, 132. For the following reasons, Defendants' motions are GRANTED IN PART and DENIED IN PART.

---

[1] The Advent Fund defendants are various branches of Advent International and Advent Partners. They are listed in full in paragraph 55 of Plaintiff's revised consolidated complaint. ECF No. 123.

[2] The Individual Defendants are: Jue Wong, Eric Tiziani, Tiffany Walden, Christine Dagousset, Tricia Glynn, Deirdre Findlay, Janet Gurwitch, Martha Morfitt, David Mussafer, Emily White, Michael White, and Paula Zusi.

[3] The underwriter defendants are: Goldman Sachs & Co. LLC, J.P. Morgan Securities LLC, Morgan Stanley & Co. LLC, Barclays Capital Inc., BofA Securities, Inc., Evercore Group L.L.C., Jeferies LLC, Raymond James & Associates, Inc.,

:  _____

Initials of Preparer

PMC

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:22-cv-08395-SVW-SK | Date | February 7, 2025 |
|---|---|---|---|
| Title | *Leslie Lilien v. Olaplex Holdings, Inc. et al* | | |

## II.    Factual and Procedural Background

The relevant facts, as alleged in Plaintiff's revised consolidated complaint, are as follows.

### A.    Background on Olaplex

Olaplex is a luxury haircare products manufacturer. ECF No. 123 ("Complaint" or "Compl."), ¶ 2. Olaplex has described itself as "proud to be non-toxic, cruelty-free, and free of all beauty industry toxins." *Id.* ¶ 90. Olaplex has also touted its social media presence, describing its status as a brand with a passionate and loyal consumer following as key to its sales and marketing efforts. *Id.* ¶ 91. In fact, Olaplex has stated that its "exceptional social media engagement" on social media platforms such as TikTok contributes to its "strong track record of successful product launches." *Id.* ¶¶ 98–99.

### B.    A Key Olaplex Product Contains Lilial

One of Olaplex's key products, the No. 3 Hair Perfector, contained small amounts of a chemical known as lilial. *Id.* ¶ 5. On May 10, 2019, the European Union Commission for the Scientific Committee of Consumer Safety issued an opinion on the safety of lilial (the "lilial study"), finding that "aggregate exposure" to lilial by consumers "cannot be considered as safe," and that lilial posed a risk of "reproductive toxicity" to humans. *Id.* ¶¶ 124–28. Because of these infertility concerns, in August 2020, the E.U. banned lilial from cosmetic products—with the ban set to take effect on March 1, 2022. *Id.* ¶ 130.

In June 2021, Olaplex removed lilial from—and reformulated—the No. 3 Hair Perfector. *Id.* ¶ 138. The only cost of reformulating was the cost of reprinting labels, as reformulation only required removing lilial (a fragrance additive rather than a main ingredient), and because Olaplex could use up its existing supply (which still contained lilial) before the ban went into effect. *Id.* ¶ 142. Thus, Olaplex continued to sell old stock containing lilial until at least January 2022. *Id.* ¶¶ 139, 202.

---

Cowen and Company, LLC, Piper Sandler & Co., Truist Securities, Inc., Telsey Advisory Group LLC, Drexel Hamilton, LLC, Loop Capital Markets LLC.

_____ : _____
Initials of Preparer
PMC

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:22-cv-08395-SVW-SK | Date | February 7, 2025 |
|---|---|---|---|
| Title | *Leslie Lilien v. Olaplex Holdings, Inc. et al* | | |

### C.   Olaplex's IPO and Offering Documents

Olaplex conducted its initial public offering ("IPO") on September 29, 2021, with investors purchasing 84,755,000 shares of Olaplex common stock, at a price of $21 per share. *Id.* ¶ 154. In connection with the IPO, Olaplex filed with the SEC, and disseminated to the public, both a Registration Statement and a Prospectus (together, the "Offering Documents"). *Id.* ¶ 155.

The Offering Documents warned of certain potential future risks. For example, the Offering Documents stated that laws and regulations could prohibit certain ingredients, which could result in product reformulations, interrupt sales, and damage brand reputation. *Id.* ¶ 164. The Offering Documents also warned that Olaplex could face product liability claims (if products were found to be unsafe) or complaints about its products (meritorious or not) that could harm Olaplex's reputation and financial results. *Id.* ¶ 166.

Next, the Offering Documents touted Olaplex's loyal and engaged social media community, stating that it provided a unique competitive advantage. *Id.* ¶ 171. The Offering Documents warned, however, that because Olaplex depends on its "ability to maintain a strong community of engaged customers, consumers and ambassadors, including by social media," its brand could suffer if it faced negative publicity. *Id.* ¶ 173. In particular, the Offering Documents stated that while social media "acts as a means to enhance brand awareness," it "has increased the risk" that Olaplex's reputation could be negatively impacted due to "the speed and accessibility of information dissemination" which has "given users the ability to organize collective actions such as boycotts and other brand-damaging behaviors more effectively . . . regardless of the information's accuracy." *Id.* The Offering Documents further explained that "customer complaints or negative publicity related to our . . . products . . . especially on blogs and social media websites, could diminish customer loyalty and community engagement." *Id.*

The Offering Documents also touted Olaplex's focus on producing "clean" products. For example, they stated that "[Olaplex] strive[s] to produce clean products that exclude certain harmful ingredients." *Id.* ¶ 187. In another instance, the Offering Documents stated that "we have focused on developing clean, technology-based beauty products." *Id.* ¶ 191.

: 

Initials of Preparer

PMC

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:22-cv-08395-SVW-SK | Date | February 7, 2025 |
|---|---|---|---|
| Title | *Leslie Lilien v. Olaplex Holdings, Inc. et al* | | |

Plaintiff alleges that the Offering Documents never addressed the lilial issue—namely, the fact that the E.U. banned the ingredient and that Olaplex's No. 3 Hair Perfector previously included the ingredient before being reformulated. *Id.* ¶¶ 163, 168.

**D.      Social Media Post Sparks Negative Publicity and Drops in Olaplex's Stock Price**

On February 27, 2022, a user on TikTok with, at the time, over 227,000 followers posted a video that expressed apparent dismay at her belief that Olaplex would be banned in the E.U. the following month. *Id.* ¶ 197. The user then posted a second video explaining that there were reports Olaplex would be banned in the E.U. because the ingredient lilial, used in the No. 3 Hair Perfector, had been linked to infertility. *Id.* ¶ 198. The user noted, however, that some sources stated that the product had already been reformulated to remove the ingredient, and that if not, Olaplex would be likely to reformulate before the ban came into effect. *Id.* The user's videos went viral and immediately sparked public outcry against Olaplex for its use of a potentially toxic ingredient. *Id.* ¶ 199.

News articles over the next few days continued to report on Olaplex's use of lilial and the E.U. ban. *Id.* ¶¶ 202–04, 206. For example, an article on March 1, 2022, was titled "Olaplex removes lilial from No.3 Hair Perfector following EU ban," and a March 4, 2022, article was titled "Olaplex Removes Lilial After the Fragrance Was Linked to Infertility." *Id.* ¶¶ 202, 206. On March 3, 2022, a group of Olaplex consumers filed a class action lawsuit in Canada alleging that Olaplex failed to inform its customers of the health risks associated with the lilial ingredient. *Id.* ¶ 205. On March 3, 2022, Olaplex's stock price fell $0.90 per share, or 5.41%, and after an intervening weekend, fell an additional $1.86 per share, or 11.68%, on March 7, 2022. *Id.* ¶ 207. On March 7, 2022, a J.P. Morgan analyst report stated that Olaplex shares had been under pressure in part due to unfavorable headlines regarding product formulations. *Id.* ¶ 208. Following the March 8, 2022, earnings call (which reported financial results for the fourth quarter of 2021, a quarter which ended before the lilial news came out), multiple analysts noted that the lilial issue's impact on Olaplex's reputation and future sales was a key area of concern. *Id.* ¶¶ 213–15.

:

_____      _____
Initials of Preparer

PMC

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:22-cv-08395-SVW-SK | Date | February 7, 2025 |
|---|---|---|---|
| Title | *Leslie Lilien v. Olaplex Holdings, Inc. et al* | | |

**E.       Earnings Reports Reveal Decreased Sales and Olaplex's Stock Price Falls Further**

On May 11, 2022, Olaplex reported its financial results for the first quarter of 2022—a financial quarter that ended on March 31, 2022, a few weeks after the lilial news came out. *Id.* ¶¶ 218–19. Net sales declined from 79% year-over-year[4] the previous quarter to 58%, which signaled to investors that the lilial issue was beginning to impact sales. *Id.* ¶ 219. Plaintiff notes that on the previous day, May 10, 2022, Olaplex's stock price fell by $0.78 per share, or 6.03%. *Id.* ¶ 221.

Media attention regarding Olaplex's lilial controversy continued into the summer of 2022. *Id.* ¶¶ 225, 229. On August 9, 2022, Olaplex reported its financial results for the second quarter of 2022, showing that net sales declined from 58% year-over-year the previous quarter to 38.6%. *Id.* ¶ 230. That same day, Olaplex's stock price fell $1.63 per share, or 9.99%. *Id.* ¶ 233.

On September 29, 2022, Piper Sandler published an analyst report downgrading Olaplex shares after determining "that competition and misinformation pose growing risks to the company." *Id.* ¶ 240. Piper Sandler repeatedly highlighted that Olaplex was losing sales because customers were listening to "buzz-worthy" "misinformation" on social media or negative reviews that were a result of error or misinformation. *Id.* Because of the troubles that Olaplex faced, Piper Sandler downgraded Olaplex shares and lowered its forward estimates. *Id.* That same day, Olaplex's stock price fell $1.33 per share, or 12.15%. *Id.* ¶ 242.

On October 18, 2022, Olaplex issued a press release announcing its preliminary financial results for the third quarter of 2022, which ended on September 30, 2022. *Id.* ¶ 243. Olaplex announced that its sales slowdown had worsened—decreasing its sales estimate by roughly $100 million. *Id.* On this news, Olaplex's stock price fell $5.55, or 56.69%. *Id.* ¶ 250.

On November 9, 2022, Olaplex reported its full financial results for the third quarter of 2022, confirming that sales had greatly deteriorated. *Id.* ¶ 251. Analysts subsequently downgraded Olaplex due

---

[4] Year-over-year means compared to the same financial quarter one year before.

:
_____
Initials of Preparer
PMC

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:22-cv-08395-SVW-SK | Date | February 7, 2025 |
|---|---|---|---|
| Title | *Leslie Lilien v. Olaplex Holdings, Inc. et al* | | |

to its poor sales performance. *Id.* ¶ 257. On November 17, 2022, the date this action was filed, the stock closed at $5.75 per share, nearly a 73% decrease from its IPO price of $21 per share. *Id.* ¶ 258.

### F.    Other Defendants

Before getting into Plaintiff's claims, the Court will provide an overview of the defendants in this case beyond Olaplex itself. Beyond Olaplex, there are four categories of defendants: the Individual Defendants, the Advent Fund Defendants, Mousserena, and the Underwriter Defendants. The Individual Defendants are various corporate officers of Olaplex who signed its Registration Statement, contributed to the Offering Documents, and solicited the purchase of Olaplex shares in the IPO to serve their financial interests. *Id.* ¶¶ 25–38.

The Advent Fund defendants consist of various limited partnerships that held Olaplex stock (approximately 89.3% of outstanding shares) prior to the IPO and subsequently reduced their investment by selling shares in the IPO. *Id.* ¶¶ 39–55, 57. Mousserena was also a selling stockholder in the IPO, holding approximately 6.8% of outstanding shares prior to the IPO. *Id.* ¶¶ 56–57. Together, the Advent Fund Defendants and Mousserena owned 96.1% of Olaplex shares prior to the IPO, and after the IPO, owned 83% of Olaplex shares. *Id.* ¶ 57.

The Underwriter Defendants consist of various investment banks that served as underwriters for the IPO, assisted in the preparation and dissemination of the Offering Documents, and solicited investors to purchase Olaplex stock in the IPO. *Id.* ¶¶ 60–75.

### G.    Plaintiff's Allegations: Misrepresentations in Offering Documents

On November 17, 2022, Plaintiff brought claims against Defendants, alleging violations of Sections 11, 12(a)(2), and 15 of the Securities Act of 1933. ECF No. 1. Plaintiff eventually revised and consolidated her complaint in a Revised Consolidated Complaint, which Plaintiff filed on June 22, 2023. ECF No. 23.

_____ : _____

Initials of Preparer

PMC

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 2:22-cv-08395-SVW-SK | Date | February 7, 2025 |
| Title | *Leslie Lilien v. Olaplex Holdings, Inc. et al* | | |

In her complaint, Plaintiff alleged that Defendants violated security laws because the Offering Documents (1) contained untrue statements of material fact; (2) omitted material facts (namely, the EU ban) that made other statements misleading; and (3) violated various rules and regulations governing the preparation of Offering Documents, which, according to Plaintiff, required disclosure of the EU ban.[5] *Id.* ¶¶ 157–58. Plaintiff alleges a plethora of misleading statements and omissions, but in short, Plaintiff alleges that Olaplex's Offering Documents were misleading mainly because they only warned of *potential* risks to Olaplex's products, reputation, and financial health, when in fact, those risks had already manifested and existed, or, at the very least, were significantly likely to occur. Compl. ¶¶ 163-170, 172-77, 179-185, 188, 190, 192. Plaintiff also took issue with Olaplex's representation that it held a strong competitive position and that it strives to make "clean" products without disclosing that Olaplex was forced to remove lilial from its products. *Id.* ¶¶ 186-87, 189, 191.

Accordingly, Plaintiff brings claims under Section 11 of the Securities Act against Olaplex, the Individual Defendants, and the Underwriter Defendants (collectively, the "Section 11 defendants"); under Section 12(a)(2) against all defendants; and under Section 15 against Mousserena, the Advent Fund defendants, and the Individual Defendants. *Id.* ¶¶ 289, 302, 310.

On July 19, 2023, Defendants moved to dismiss. ECF Nos. 127, 129, 130, 132. The Court held a hearing on Defendants' motion on July 1, 2024. ECF No. 160. After that hearing, the Court stayed the case in anticipation of the Supreme Court's decision in *Facebook v. Amalgamated Bank*, 87 F.4th 934, 951 (9th Cir. 2023), *cert. granted in part sub nom. Facebook, Inc. v. Amalgamated Bank*, 144 S.Ct. 2629 (2024), *and cert. dismissed as improvidently granted*, No. 23-980, 2024 WL 4861195 (U.S. Nov. 22, 2024). The Supreme Court, however, dismissed the *Facebook* case as improvidently granted shortly after hearing oral argument.

---

[5] Regarding the affirmative legal disclosures in (3), Plaintiff alleges that Defendants were required to comply with three SEC regulations: Rule 408 of Regulation C (17 C.F.R. § 230.408), Item 303 of Regulation S-K (17 C.F.R. § 229.303), and Item 105 of Regulation S-K (17 C.F.R. § 229.105). Compl. ¶¶ 159–61.

_____ : _____

Initials of Preparer

PMC

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:22-cv-08395-SVW-SK | Date | February 7, 2025 |
|---|---|---|---|
| Title | *Leslie Lilien v. Olaplex Holdings, Inc. et al* | | |

With *Facebook* no longer under consideration by the Supreme Court, the Court will turn to Defendants' motions to dismiss.

## III.    Legal Standard

A motion to dismiss under Rule 12(b)(6) challenges the legal sufficiency of the claims stated in the complaint. *See* Fed. R. Civ. P. 12(b)(6). To survive a motion to dismiss, the plaintiff's complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. A complaint that offers mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Id.*; *see also Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009) (citing *Iqbal*, 556 U.S. at 678).

Plausibility "is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). On one hand, "[g]enerally, when a plaintiff alleges facts consistent with both the plaintiff's and the defendant's explanation, and both explanations are plausible, the plaintiff survives a motion to dismiss under Rule 12(b)(6)." *In re Dynamic Random Memory (DRAM) Indirect Purchaser Antitrust Litig.*, 28 F.4th 42, 47 (9th Cir. 2022) (citing *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011)). But, on the other, "[w]here a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Eclectic Props. E.*, 751 F.3d at 996 (quoting *Iqbal*, 556 U.S. at 678). Ultimately, a claim is facially plausible where "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *See Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556).

In reviewing a Rule 12(b)(6) motion, a court "must accept as true all factual allegations in the complaint and draw all reasonable inferences in favor of the nonmoving party." *Retail Prop. Trust v. United Bhd. of Carpenters & Joiners of Am.*, 768 F.3d 938, 945 (9th Cir. 2014). Thus, "[w]hile legal

_____                    :
Initials of Preparer    _____
                        PMC

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:22-cv-08395-SVW-SK | Date | February 7, 2025 |
|---|---|---|---|
| Title | *Leslie Lilien v. Olaplex Holdings, Inc. et al* | | |

conclusions can provide the complaint's framework, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679.

**IV.    Discussion**

"Generally speaking, the [Securities Act of 1933] requires a company to register the securities it intends to offer to the public with the Securities and Exchange Commission (SEC). As part of that process, a company must prepare a registration statement that includes detailed information about the firm's business and financial health so prospective buyers may fairly assess whether to invest." *Slack Techs., LLC v. Pirani*, 598 U.S. 759, 762 (2023) (citing 15 U.S.C. §§ 77b(a)(8), 77d, 77e, 77f, 77g, 77aa). The Securities Act also requires that a prospectus containing the same information as the registration statement be delivered prior to, or at the time of confirmation of, a sale of a registered security. 15 U.S.C. §§ 77b(a)(10), 77e(b)(2), 77j.

"Sections 11, 12(a)(2), and 15 of the Securities Act impose liability on certain participants in a registered securities offering when the publicly filed documents used during the offering contain material misstatements or omissions. Section 11 applies to registration statements, and section 12(a)(2) applies to prospectuses and oral communications." *In re Morgan Stanley Info. Fund Sec. Litig.*, 592 F.3d 347, 358 (2d Cir. 2010) (citing 15 U.S.C. §§ 77k(a), 77l (a)(2)). Section 15, in turn, imposes joint and several liability upon every person who "controls any person liable under sections [11] or [12]." 15 U.S.C. § 77o(a); *In re Daou Sys., Inc.*, 411 F.3d 1006, 1029 (9th Cir. 2005).

Here, Plaintiff brings claims under Sections 11, 12(a)(2), and 15 of the Securities Act. The Court will address each in turn.

**A.    Section 11**

Plaintiff brings Section 11 claims against Olaplex, the Individual Defendants, and the Underwriter Defendants (the "Section 11 Defendants"). To state a claim under Section 11, Plaintiff must plead that

_____ : _____

Initials of Preparer

PMC

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:22-cv-08395-SVW-SK | Date | February 7, 2025 |
|---|---|---|---|
| Title | *Leslie Lilien v. Olaplex Holdings, Inc. et al* | | |

Olaplex's registration statement either (1) contained an untrue statement of a material fact, (2) omitted to state a material fact necessary to make the statements therein not misleading, or (3) omitted to state a material fact required to be stated therein. 15 U.S.C. § 77k(a). "No scienter is required under § 11; defendants will be liable for innocent or negligent material misstatements or omissions." *In re Stac Elecs. Sec. Litig.*, 89 F.3d 1399, 1404 (9th Cir. 1996).

Here, Plaintiff alleges all three theories of Section 11 liability: (1) that Section 11 Defendants made untrue statements of material fact; (2) that they omitted material facts that were necessary to make the statements not misleading; and (3) that they omitted material facts that were required by federal regulations, namely Rule 408 of Regulation C, Item 303 of Regulation S-K, and Item 105 of Regulation S-K. The Court will begin by addressing the first two types of actionable misrepresentations under Section 11 (false or misleading statements) and then turn to the third basis of liability under Section 11 (omissions of required disclosures).

### 1.    Untrue or Misleading Statements

The Ninth Circuit typically analyses the first two prongs of Section 11 together—i.e., whether a registration statement contains untrue or misleading statements. In so doing, the Ninth Circuit has held that "[t]o prevail in [a Section 11 claim], a plaintiff must prove (1) that the registration statement contained an omission or misrepresentation; and (2) that the omission or misrepresentation was material, that is, it would have misled a reasonable investor about the nature of his or her investment." *Rubke v. Capital Bancorp Ltd*, 551 F.3d 1156, 1161 (9th Cir. 2009). This rule presents, in essence, a single question: did the registration statement contain an omission or misrepresentation that would have misled a reasonable investor?

"A statement or omission is misleading . . . if it would give a reasonable investor the impression of a state of affairs that differs in a material way from the one that actually exists." *Reese v. BP Expl.*

_____ : _____

Initials of Preparer

PMC

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:22-cv-08395-SVW-SK | Date | February 7, 2025 |
|---|---|---|---|
| Title | *Leslie Lilien v. Olaplex Holdings, Inc. et al* | | |

*(Alaska) Inc.*, 643 F.3d 681, 691 (9th Cir. 2011).[6] "Generally, whether a public statement is misleading, or whether adverse facts were adequately disclosed is a mixed question to be decided by the trier of fact." *SEC v. Todd*, 642 F.3d 1207, 1220 (9th Cir. 2011). "Accordingly, resolving an issue as a matter of law is only appropriate when the adequacy of the disclosure is 'so obvious that reasonable minds [could] not differ.'" *Id.* (citations omitted). In other words, at the pleading stage, plaintiffs hold "a relatively minimal burden," as they "need only show a material misstatement or omission to establish [a] prima facie case." *Hildes v. Arthur Andersen LLP*, 734 F.3d 854, 859 (9th Cir. 2013) (quotations omitted).

While Plaintiff's 129-page complaint is lengthy and packed with repetitive allegations, it can be distilled into several categories of allegedly misleading statements related to the following topics:

(1) Statements regarding the potential impact of laws and regulations on Olaplex's business. Compl. ¶¶ 163-69.

(2) Statements regarding the risks that an Olaplex products may be found unsafe. *Id.* ¶ 167.

(3) Statements regarding the risk of reputational damage, product liability lawsuits, loss of competitive position, and declining sales. *Id.* ¶¶ 166, 173, 180.

(4) Statements regarding the strength of Olaplex's brand reputation and social media engagement. *Id.* ¶¶ 170-76, 178.

(5) Statements touting the "clean" nature of Olaplex products. *Id.* ¶ 187-91.

The Court will analyze each set of statements in turn.

---

[6] Although *Retail Wholesale* dealt with a section 10(b) claim and its operative regulation, Rule 10b–5, the standard for analyzing whether a statement is materially misleading is the same for both section 10(b) and section 11 claims. *See City of Dearborn Heights Act 345 Police & Fire Ret. Sys. v. Align Tech., Inc.*, 856 F.3d 605, 616 (9th Cir. 2017) (citing *Tongue v. Sanofi*, 816 F.3d 199, 209–10 (2d Cir. 2016)).

:  _____

_____

Initials of Preparer

PMC

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:22-cv-08395-SVW-SK | Date | February 7, 2025 |
|---|---|---|---|
| Title | *Leslie Lilien v. Olaplex Holdings, Inc. et al* | | |

 

a.  **Statements regarding the potential impact of laws and regulations on Olaplex's business.**

Plaintiff alleges that Defendants misled investors regarding the risk that a new law or regulation could impact Olaplex's business.[7] *Id.* ¶¶ 163–69. In short, the Registration Statement stated that the Company was subject to numerous laws and regulations worldwide that could require it to remove ingredients and reformulate its products, which in turn could result in reputational damage and lost sales. *Id.* ¶¶ 163–64. Notably, the Offering Documents did not disclose the E.U. ban on lilial in Olaplex's No. 3 Hair Perfector.

The full challenged statements are below, with the allegedly misleading statements in bold and italics:

*Our business is subject to numerous laws, regulations and policies around the world*. Many of these laws and regulations have a high level of subjectivity, are subject to interpretation, and vary significantly from market to market. *These laws and regulations can have several impacts on our business, including*:

- delays in *or prohibitions of selling a product or ingredient in one or more markets*;

- limitations on our ability to import products into a market;

- delays and expenses associated with compliance, such as record keeping, documentation of the properties of certain products, labeling, and scientific substantiation;

- limitations on the labeling and marketing claims we can make regarding our products; and

---

[7] Plaintiff indicates that these are her strongest allegations of risks that had already "materialized" by the time of the IPO. ECF No. 133 ("Opp.") at 8 n.2. The Court agrees.

 

                   : _____

Initials of Preparer

           PMC

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:22-cv-08395-SVW-SK | Date | February 7, 2025 |
|---|---|---|---|
| Title | *Leslie Lilien v. Olaplex Holdings, Inc. et al* | | |

- *limitations on the substances that can be included in our product, resulting in product reformulations*, or the recall and discontinuation of certain products that cannot be reformulated to comply with <u>new regulations</u>.

  *These events could interrupt the marketing and sale of our products, cause us to be subject to product liability claims, severely damage our brand reputation and image in the marketplace, increase the cost of our products, cause us to fail to meet customer expectations* or cause us to be unable to deliver products in sufficient quantities or sufficient quality, *which could result in lost sales*.

Compl. ¶ 164 (bold and italics in original, underline added).

Plaintiff contends these statements were false and misleading because the E.U. ban on lilial had already affected the No. 3 Hair Perfector and was "significantly likely" to result in negative social media buzz and media publicity, consumer complaints and lawsuits, reputational damage, and lost sales. *Id.* ¶¶ 163, 166, 168. In other words, Plaintiff alleges that these statements were misleading because they only warned of *potential* risks from new laws and regulations, when in fact, that risk had already materialized at the time of the IPO.

The Court agrees. "Risk disclosures that 'speak[] entirely of as-yet-unrealized risks and contingencies' and do not 'alert[] the reader that some of these risks may already have come to fruition' can mislead reasonable investors." *In re Alphabet, Inc. Sec. Litig.*, 1 F.4th 687, 703 (9th Cir. 2021).[8]

---

[8] The Court notes that *In re Alphabet* concerns Section 10(b) of the Securities Act, while this case involves Section 11. The section of *In re Alphabet* that the Court relies on, however, is nonetheless applicable. To state a claim under Section 10(b), plaintiffs must plead "a material misrepresentation or omission." *In re Alphabet*, 1 F.4th at 699. While the other elements of Section 10(b) differ from the elements of Section 11 (namely, Section 10(b)'s scienter requirement), Section 11 is the same as Section 10(b) in that it also requires that plaintiffs show a "material" "omission or misrepresentation." *Rubke*, 551 F.3d at 1161. The Court thus finds it appropriate to rely on *In re Alphabet's* analysis of the "material misrepresentation or omission" requirement when considering the Section 11 claim in this case.

|  | : |
|---|---|
| Initials of Preparer | |
| | PMC |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | 2:22-cv-08395-SVW-SK | Date | February 7, 2025 |
|----------|----------------------|------|------------------|
| Title | *Leslie Lilien v. Olaplex Holdings, Inc. et al* | | |

For example, in *Alphabet*, the court held that statements warning of the potential risks from data breaches were misleading because Alphabet failed to disclose that a significant data breach had in fact occurred. *Id.* at 704. In early 2018, Alphabet "discovered a software glitch" that had exposed the private data of hundreds of thousands of Google[9] users from as far back as 2015. *Id.* at 695-97. But despite this discovery, Alphabet "made no disclosure" about the privacy breach in its April 2018 10-Q statement, instead describing the risk of a data breach as purely hypothetical. *Id.* at 694, 696. Indeed, Alphabet's 10-Q filing in 2018 simply warned that "[i]f our security measures are breached resulting in the improper use and disclosure of user data" then Alphabet's "products and services may be perceived as not being secure, users and customers may curtail or stop using our products and services, and we may incur significant legal and financial exposure." *Id.* at 694-95.

Six months after Alphabet's 10-Q filing, news broke regarding the data breach, which was shortly followed by a drop in Alphabet's share price. *Id.* at 697. The plaintiffs accordingly brought Securities Act claims against Alphabet, alleging that failure to disclose the privacy breach rendered statements in Alphabet's 2018 10-Q misleading.

The Ninth Circuit held that Alphabet's description of the risk of a data breach as hypothetical while failing to disclose that a data breach had in fact occurred was misleading. *See id.* at 704. Or, as the court put it, "the complaint plausibly allege[d] that Alphabet's warning . . . of risks that 'could' or 'may' occur is misleading to a reasonable investor when Alphabet knew that those risks had materialized." *Id.* at 704. In so holding, the court rejected Alphabet's argument that the warnings were not misleading because "Google had already remediated the software glitch [that caused the data breach] before it made the [statements]." *Id.* The court explained that the existence of the data breach itself "indicated that there were significant problems with Google's security controls" regardless of whether Alphabet remedied the glitch that caused that breach. *Id.*

---

[9] Alphabet is the parent company of Google.

: _____

Initials of Preparer

PMC

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:22-cv-08395-SVW-SK | Date | February 7, 2025 |
|---|---|---|---|
| Title | *Leslie Lilien v. Olaplex Holdings, Inc. et al* | | |

Similarly, in *In re Facebook, Inc. Sec. Litig.*, 87 F.4th 934, 949 (9th Cir. 2023), the Ninth Circuit held that statements in a 10-K filing were misleading because they "represented the risk of improper access to or disclosure of Facebook user data as purely hypothetical when that exact risk had already transpired." In 2015, Facebook learned that Cambridge Analytica had "created a database of information about American voters by harvesting their Facebook data." *Id.* at 943. Facebook determined that this use of user data "violated Facebook's policies and terms by using data that [was] 'improperly derived' from Facebook." *Id.* The *Guardian* reported on Cambridge Analytica's use of Facebook data in 2015, to which Facebook publicly responded by stating that it was "carefully investigating" the situation. *Id.* Cambridge Analytica ultimately agreed to delete certain data that had been harvested from Facebook. *Id.* at 943. But, in June 2016, Facebook found out that Cambridge Analytica was still in possession of another form of the improperly derived data. *Id.*

Despite Cambridge Analytica's improper use of Facebook's data, "Facebook represented in its [October] 2016 Form 10-K . . . that third-party misuse of Facebook users' personal data was a purely hypothetical risk that could harm the company if it materialized." *Id.* at 944. Specifically, the 10-K stated that "any failure to prevent or mitigate . . . improper access to or disclosure of our data or user data . . . could result in the loss or misuse of such data, which could harm [Facebook's] business and reputation and diminish our competitive position." *Id.* Facebook further warned that if "third parties or developers fail to adopt or adhere to adequate data securities practices . . . our data or our users' data may be improperly accessed, used, or disclosed." *Id.* at 948.

In 2018, *The New York Times* and *The Guardian* published articles reporting on the extent of Cambridge Analytica's use of Facebook data, with *The New York Times* describing Cambridge Analytica's use as "one of the largest data leaks in the social network's history." *Id.* at 945. Shortly after this press coverage, "Facebook's stock declined significantly." *Id.* As a result, plaintiffs brought Securities Act claims against Facebook, alleging that Facebook's 2016 10-K form regarding the risk of improper third-party access to Facebook data was misleading. *Id.* at 946.

The Ninth Circuit held, as it did in *Alphabet*, that the descriptions of risk were misleading, reasoning that "Facebook represented the risk of improper access to or disclosure of Facebook user data

| | : |
|---|---|
| Initials of Preparer | |
| | PMC |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:22-cv-08395-SVW-SK | Date | February 7, 2025 |
|---|---|---|---|
| Title | *Leslie Lilien v. Olaplex Holdings, Inc. et al* | | |

as purely hypothetical when that exact risk had already transpired." *Id.* at 949. "A reasonable investor reading the 10-K would have [therefore] understood the risk of a third party accessing and utilizing Facebook user data improperly to be merely conjectural." *Id.*

Importantly, in making this holding, the court rebutted Facebook's argument that the plaintiffs "have not adequately pleaded falsity because they have not sufficiently alleged that Facebook knew that its reputation and business were *already* harmed at the time of the filing of the 10-K." *Id.* The court explained that "[o]ur case law does not require harm to have materialized for a statement to be materially misleading." *Id.* Accordingly, "[b]ecause Facebook presented the prospect of a breach as purely hypothetical when it had already occurred, such a statement could be misleading even if the magnitude of the ensuing harm was still unknown." *Id.* at 950. Indeed, "it [was] the face of the breach itself, rather than the anticipation of reputational or financial harm, that caused anticipatory statements to be materially misleading." *Id.* at 950.

Returning to the case at hand, this case presents the same situation as *Alphabet* and *Facebook*, and thus Olaplex's statements are misleading for the same reasons. In *Alphabet*, Alphabet experienced a data breach and then later described the risk of a data breach that could result in financial harm as purely hypothetical. 1 F.4th at 703-04. Likewise, in *Facebook*, a third-party misused Facebook user data and then Facebook described the risk of a third-party misusing Facebook user data and potentially causing financial and reputational harm as purely hypothetical. 87 F.4th at 949. This case presents the same situation: a new regulation prohibited the use of certain ingredients (lilial) in Olaplex's product, and then Olaplex described the risk of a new regulation prohibiting the use of certain ingredients in Olaplex's products and potentially causing reputational and financial harm as purely hypothetical. Compl. ¶¶ 163-64.

This is misleading for the same reason that the statements in *Alphabet* and *Facebook* were misleading: the statement "speak[s] entirely of as-yet-unrealized risks when the risks have already come to fruition." *See Facebook*, 87 F.4th at 949. Indeed, at the time of the IPO, the risk that new regulations would ban a product ingredient and potentially cause Olaplex to suffer reputational and financial harm was not hypothetical—it had already happened: the EU had banned lilial from Olaplex's product, and that ban had the potential to cause Olaplex financial or reputational harm. By characterizing the risk of new

_____ : _____

Initials of Preparer

PMC

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:22-cv-08395-SVW-SK | Date | February 7, 2025 |
|---|---|---|---|
| Title | *Leslie Lilien v. Olaplex Holdings, Inc. et al* | | |

regulations banning Olaplex ingredients as hypothetical, Olaplex implies that no such regulations exist. In other words, Olaplex's statements "give a reasonable investor the impression of a state of affairs that differs in a material way from the one that actually exists." *Reese*, 643 F.3d at 691. Plaintiff has therefore sufficiently alleged that these statements were misleading.

Moreover, these statements are misleading even though the EU ban on lilial had not resulted in any financial or reputational harm at the time of Olaplex's IPO. Ninth Circuit "case law does not require harm to have materialized for a statement to be materially misleading." *Id.* For example, in *Facebook*, the warning that third-party misuse of Facebook data could impact Facebook's reputation and financials was misleading, even though Facebook had not suffered reputational and financial harm at the time of the statement, because Facebook "presented the prospect of a breach as purely hypothetical when it had already occurred." *Id.* at 950. Here, just as in *Facebook*, Olaplex "presented the prospect of [a new regulation banning ingredients in Olaplex's products] as purely hypothetical when it had already occurred," and thus, just as the statement in *Facebook* was misleading even though Facebook did not suffer reputational and financial harm until after the statement was made, Olaplex's statement is similarly misleading even though Olaplex did not suffer reputational and financial harm until after the IPO. *See id.*

To the extent that Defendants contend that failure to disclose the EU ban is not misleading because the EU ban was common knowledge at the time of the IPO, this is functionally a truth-on-the-market affirmative defense that is "inappropriate" for resolution at the pleading stage. *See In re Amgen Inc. Sec. Litig.*, 544 F. Supp. 2d 1009, 1025 (C.D. Cal. 2008) (characterizing the defendants' argument that the omission at issue was not misleading because it was public knowledge as a "truth-on-the-market affirmative defense" even though it was "not labeled as such"). "Under this theory, a defendant's failure to disclose material information may be excused where information was made credibly available to the market by other sources." *Id.* (citing *In re Convergent Tech. Sec. Litig.*, 948 F.2d 507, 513 (9th Cir. 1991)). Establishing this defense requires proving that "the information that was withheld or misrepresented was transmitted to the public with a degree of intensity and credibility sufficient to effectively counterbalance any misleading impression created by the [statement at issue]." *Provenz v. Miller*, 102 F.3d 1478, 1492-93 (9th Cir. 1996).

_____ : _____

Initials of Preparer

PMC

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:22-cv-08395-SVW-SK | Date | February 7, 2025 |
|---|---|---|---|
| Title | *Leslie Lilien v. Olaplex Holdings, Inc. et al* | | |

This defense, however, "is intensely fact-specific, so courts rarely dismiss a complaint on this basis." *Id.* The Court will not do so here. Resolving the question of whether the EU ban was public knowledge to Olaplex's market (which is primarily based in the U.S.) is a factual question that the Court will not resolve at the pleading stage.

Defendants' argument that the statements are not misleading because they "already reformulated [the] No. 3 Product to remove lilial to comply with the E.U's ban prior to the IPO" is similarly unpersuasive. Olaplex Defendants' Mot. to Dismiss at 15. Whether Olaplex's No. 3 product complied with the EU ban is irrelevant to whether Olaplex's warnings regarding potential new regulations were misleading. The warnings were misleading because they suggested to investors that the prospect of new regulations like the EU ban was purely hypothetical, when in reality such regulations had already impacted Olaplex's products. This was a misleading impression regardless of whether Olaplex later complied with the EU ban or not. *See Alphabet*, 1 F.4th at 703 (holding that Alphabet characterizing the risk of a data breach as hypothetical when really a data breach had already occurred was misleading even though "Google had already remediated the software glitch [that caused the data breach] before it made the [statements]").

In sum, Plaintiff has sufficiently alleged that Olaplex's registration statement contained an omission—i.e., failure to disclose the EU ban on lilial in Olaplex's No. 3 product. Next, the Court finds that this omission was material, as, for the foregoing reasons, it renders Olaplex's hypothetical warnings misleading to a reasonable investor. Because Plaintiff has sufficiently alleged a material omission, she has stated a claim under Section 11. *See Hildes*, 734 F.3d at 859 (explaining that one "need only show a material misstatement or omission to establish [a] prima facie case" under Section 11).

        b.      **Statements regarding the risks that an Olaplex product could be found "unsafe."**

Next, Plaintiff alleges that Defendants misled investors regarding the risk that an Olaplex product could be found unsafe. Defendants make the following representations in its registration statements regarding the risks that one of their products could be found unsafe:

_____ :_____

Initials of Preparer

PMC

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:22-cv-08395-SVW-SK | Date | February 7, 2025 |
|----------|----------------------|------|------------------|
| Title | *Leslie Lilien v. Olaplex Holdings, Inc. et al* | | |

If our products are found to be defective or unsafe we may be subject to various product liability claims, which could harm our reputation and business.

Our success depends, in part, on the quality and safety of our products. If our products are found to be defective, unsafe, or otherwise fail to meet our consumers' expectations or if our product claims are found to be unfair or deceptive, our relationships with customers or consumers could suffer, and the appeal of one or more of our products could be diminished and we could lose sales, any of which could result in an adverse effect on our business.

Compl. ¶ 167.

Breaking this down, Defendants represented that "[i]f our products are found to be . . . unsafe . . . our relationships with customers or consumers could suffer, and the appeal of one or more of our products could be diminished, and we could lose sales." *Id.* At the same time, the Registration Statement did not disclose that the EU had already banned an ingredient in Olaplex's No. 3 product, lilial, due to the risk that consumers' "aggregate exposure" to the substance from multiple different products could lead to reproductive toxicity. *Id.* ¶¶ 122-130.

The question for the Court is whether it is misleading for Olaplex to characterize the risk that its products could be found unsafe as purely hypothetical while failing to disclose the EU's ban on lilial. To start, the Court finds that it is certainly misleading for Olaplex to warn of the hypothetical risks that its products could be found unsafe while not disclosing that one of its products was in fact found to be unsafe. After all, as the Court explained in detail above, "[r]isk disclosures that 'speak[] entirely of as-yet-unrealized risks and contingencies' and do not 'alert[] the reader that some of these risks may already have come to fruition' can mislead reasonable investors." *See In re Alphabet, Inc. Sec. Litig.*, 1 F.4th 687, 703 (9th Cir. 2021).

The issue, however, is that the EU did not specifically find that Olaplex's No. 3 product was "unsafe." Rather, the lilial study that prompted the EU ban concluded that "aggregate exposure [to lilial],

| | : |
|---|---|
| Initials of Preparer | PMC |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:22-cv-08395-SVW-SK | Date | February 7, 2025 |
|---|---|---|---|
| Title | *Leslie Lilien v. Olaplex Holdings, Inc. et al* | | |

arising from the use of different product types together," at the "proposed [maximum] concentration," was unsafe. ECF No. 130-5 at 3.[10] In fact, the study concluded that "[o]n [an] individual product basis," lilial use (up to the proposed maximum concentration of .1%) in "cosmetic leave-on and rinse-off type products" can "be considered safe."[11] *Id.*

The question thus becomes whether this study's conclusion, combined with the EU deciding to ban *any* use of lilial in cosmetic products, constitutes one of Olaplex's products being "found . . . to be unsafe" such that it was misleading for Olaplex to characterize that risk as hypothetical without disclosing the EU ban. This is not a straightforward question. On one hand, the study underlying the EU's conclusion explicitly found that the percentage of lilial in Olaplex's No. 3 product, in isolation, was safe. But on the other hand, the EU, in recognition of the risks of aggregate exposure to lilial, banned *all* use of lilial in cosmetic products. There is a strong intuitive argument that the EU banning all lilial use in cosmetic products is akin to the EU finding that any use of lilial in cosmetic products is unsafe. After all, governing bodies do not ban ingredients for no reason—they do so because they find that the ingredients pose unacceptable safety risks. Moreover, the EU had the chance to allow products to contain low concentrations of lilial in their products (such as Olaplex No. 3's 0.0119% concentration of lilial) but chose not to, implying that the EU did not find any concentration of lilial to be safe, including the relatively low concentration contained in Olaplex's No. 3 product.

---

[10] "On a motion to dismiss, [a court] may consider materials incorporated into the complaint." *Coto Settlement v. Eisenberg*, 593 F.3d 1031, 1038 (9th Cir. 2010). The Ninth Circuit has "extended the doctrine of incorporation by reference to consider documents in situations where the complaint necessarily relies upon a document or the contents of the document are alleged in a complaint, the document's authenticity is not in question and there are no disputed issues as to the document's relevance." *Id.* Here, the Complaint references this study and necessarily relies on it to plead that Olaplex's product was unsafe. Compl. ¶ 124 n.18.

[11] In full, the study concluded that: "On [an] individual product basis, Butylphenyl methylpropional (p-BMHCA) (CAS 80 54-6) with alpha-tocopherol at 200 ppm, can be considered safe when used as [a] fragrance ingredient in different cosmetic leave-on and rinse-off type products. However, considering the first-tier deterministic aggregate exposure, arising from the use of different product types together, Butylphenyl methylpropional at the proposed concentrations cannot be considered as safe." ECF No. 1305-5 at 3.

:  _____

_____
Initials of Preparer

PMC

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:22-cv-08395-SVW-SK | Date | February 7, 2025 |
|---|---|---|---|
| Title | *Leslie Lilien v. Olaplex Holdings, Inc. et al* | | |

Ultimately, whether investors would consider the EU's ban of lilial the same as Olaplex No. 3 being found unsafe such that it was misleading for Olaplex to characterize that risk as purely hypothetical is a question of fact not suited for resolution at the pleadings stage. *See Berson v. Applied Signal Tech., Inc.*, 527 F.3d 982, 987 (9th Cir. 2008) (denying a motion to dismiss because whether "investors would have understood" certain "terms of art" in the defendant's offering documents in such a way as to render them not misleading was a question of fact). Accordingly, at this early stage, the Court finds the pleadings on this issue sufficient.

> **c.** **Statements regarding the risk of reputational damage, product liability lawsuits, and declining sales**

Olaplex's registration statement includes various statements warning of the risk of reputational damage, product liability lawsuits, loss of competitive position, and declining sales. The following statements are illustrative examples:

- "The dissemination of information via social media could harm our brand or business, regardless of the information's accuracy. This could include negative publicity related to our products . . . In addition, customer complaints or negative publicity related to our . . . products . . . especially on blogs and social media websites, could diminish customer loyalty and community engagement." *Id.* ¶ 173.
- "Other risks associated with the use of social media and internet-based communication include . . . negative comments about our brand or products . . . Damage to the brand image and our reputation could have an adverse effect on our business, results of operations and financial condition." *Id.*
- "Our inability to continue to compete effectively in key countries around the world could have an adverse effect on our business, financial condition and result of operations." *Id.* ¶ 180.

Notably, while similar in some respects, these risk statements are different than those that the Court

—————————                    : —————————
Initials of Preparer
                                  PMC

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:22-cv-08395-SVW-SK | Date | February 7, 2025 |
|---|---|---|---|
| Title | *Leslie Lilien v. Olaplex Holdings, Inc. et al* | | |

addressed in subsection (a) regarding the EU ban. There, the Court considered warnings that new regulations could ban certain ingredients in Olaplex products, and that those laws in turn could lead to financial or reputational loss. The Court held this was misleading, as it described this risk as hypothetical even though the EU ban had already happened and had already created the risk of financial or reputational loss. These risk statements are different. They warn, independent of any new regulation, that Olaplex may suffer generally from reputational damage, product liability suits, and declining sales. In other words, these risk disclosures warn of the risk of reputational and financial harm writ large, whether or not that risk stems from new regulations on Olaplex ingredients.

Plaintiff contends that these statements are misleading because they describe the risk of negative publicity, product liability claims, loss of competitive position, and declining sales as purely hypothetical, when in fact all three were "significantly likely" to occur given the EU ban on lilal.

As discussed above, it is well established that "[r]isk disclosures that 'speak[] entirely of as-yet-unrealized risks and contingencies' and do not 'alert[] the reader that some of these risks may ***already have come to fruition***' can mislead reasonable investors." *See In re Alphabet, Inc. Sec. Litig.*, 1 F.4th 687, 703 (9th Cir. 2021) (emphasis added). But that is not the case here. Olaplex's warnings relate to risks that had ***not*** yet come to fruition—indeed, at the time of the IPO, Olaplex had not suffered reputational harm, product liability lawsuits, loss of competitive position, or declining sales. What had happened at the time of the IPO was the EU ban, which, taking Plaintiff's argument as true for the moment, rendered the prospect of reputational harm, product liability lawsuits, loss of competitive position, and declining sales "significantly likely."

The question for the Court is therefore whether it is misleading to characterize risks that have not come to fruition as hypothetical while failing to disclose that certain events had made those risks "significantly likely." Plaintiff fails to identify any case law that supports this proposition, nor has the Court found any in its own research.

Rather, Plaintiff incorrectly relies on *Glazer Cap. Mgmt., L.P. v. Forescout Techs., Inc.*, 63 F.4th 747 (9th Cir. 2023). There, the court held that it was misleading for the defendant to state that it "look[ed]

_____ : _____

Initials of Preparer

PMC

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:22-cv-08395-SVW-SK | Date | February 7, 2025 |
|---|---|---|---|
| Title | *Leslie Lilien v. Olaplex Holdings, Inc. et al* | | |

forward to completing our pending transaction with Advent," who was a potential merger partner, but did not disclose that three days earlier, Advent had told the defendant that it was considering not going through with the transaction. *Id.* at 763, 779. The court reasoned that the defendant's statement was misleading because it "did not fairly align with the information in the issuer's possession at the time—i.e., that Advent was reconsidering the deal." *Id.*

There is no similar misalignment in this case. In *Forescout*, there was a disconnect between the statement at issue ("we look forward to completing our pending transaction with Advent") and the omitted information (that Advent was considering not going through with the deal) because the statement implied that the deal was going through, and the omitted statement suggested that it was not. Here, by contrast, there is no similar disconnect. The statements at issue (that Olaplex faces the risk of reputational harm, product liability suits, loss of competitive position, and lost sales) imply that Olaplex faces certain hypothetical risks, and the omitted information (that the EU banned lilial) implies that those risks may occur in the near future. In other words, Olaplex's characterization of these risks as hypothetical was entirely accurate—at the time of the IPO, the risk of reputational harm, product liability suits, loss of competitive position, and declining sales were indeed hypothetical, even if made more likely by the EU ban.

Plaintiff grasps onto language from *Forescout* where the court explains that "[the defendant] was aware of a significant likelihood that the risk would materialize and did not sufficiently apprise its investors of this development." *Id.* at 781. Plaintiff contends that this language supports their argument that Olaplex had an obligation to "apprise" its own investors that, due to the EU ban, there was a "significant likelihood" that the risks discussed in this section would occur. *See id.*

But Plaintiff cites this language from *Forescout* out of context. This quote stems from the court's analysis of whether the "safe harbor for forward-looking statements" applied to the defendant's representation that the merger was going to go forward, as the defendant had disclosed (very generally) "the risk . . . that the transaction is not consummated." *See id.* Whether that safe harbor applies, however, had nothing to do with the *Forescout* court's analysis of whether the statements at issue were misleading. The court ultimately held that the safe harbor did not apply, reasoning that the defendant's risk disclosures

_____ : _____
Initials of Preparer

PMC

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:22-cv-08395-SVW-SK | Date | February 7, 2025 |
|---|---|---|---|
| Title | *Leslie Lilien v. Olaplex Holdings, Inc. et al* | | |

discussed the potential of the merger not happening as "a mere possibility," when really the defendant "was aware of a significant likelihood that a risk would materialize." *See id.* But critically, the *Forescout* court never held that those risk statements were misleading; it merely held that the risk statements were insufficient to bar liability on the actual statements at issue: that the defendant looked forward to completing its pending transaction. *See id.*

The Ninth Circuit has not directly tackled the question of whether a risk disclosure is misleading if it fails to disclose an event that makes the risk more likely, even when the risk itself has not materialized. But the Tenth Circuit has. In *Indiana Pub. Ret. Sys. v. Pluralsight, Inc.*, 45 F.4th 1236, 1255 (10th Cir. 2022), the court held that "[w]here risk factors have been found materially misleading, the risk had materialized or was virtually certain to occur." The court considered a risk disclosure that explained that being unable to hire talented sales reps could harm the defendant's business growth but did not disclose that the company was falling behind its sales rep hiring targets. *Id.* at 1254. The court held that this omission was not misleading, because the defendant falling behind on its sales rep hiring targets "was [not] virtually certain to cause harm to the business." *Id.* at 1256-57. In so doing, the court distinguished *Alphabet*, explaining that characterizing the risk in *Alphabet* as hypothetical was misleading because the risk had materialized, but characterizing the risk in this case as hypothetical was not, as the risk had not materialized. *See id.* at 1256.

The Tenth Circuit's decision in *Indiana Pub. Ret. Sys.*, together with the Ninth Circuit's decisions in *Alphabet* and *Facebook*, and the lack of case law to the contrary, make clear that risk disclosures are not misleading if the described risks have not "come to fruition" and are not "virtually certain to occur." *See id.*; *Alphabet*, 1 F.4th at 703. Here, the risk of product liability suits, reputational harm, loss of competitive position, and decreased sales had not come to fruition at the time of the IPO (nor were they virtually certain to occur), and therefore Olaplex's warnings regarding those risks were not misleading even though it did not disclose the EU ban.[12] This, of course, makes intuitive sense. It is not misleading

---

[12] This is not to say that failure to disclose the EU ban is not misleading in and of itself. As the Court will address later, such an omission is plausibly a violation of Item 303 of Regulation S-K, which itself is a violation of Section 11. After all, taking

_____ : _____
Initials of Preparer
PMC

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:22-cv-08395-SVW-SK | Date | February 7, 2025 |
|---|---|---|---|
| Title | *Leslie Lilien v. Olaplex Holdings, Inc. et al* | | |

to characterize these risks as hypothetical if, at the time of the characterization, they are indeed hypothetical. *Cf. Alphabet*, 1 F.4th at 703 (finding a risk disclosure misleading because it characterized a risk as hypothetical when the risk had in fact already occurred).

     **d.**    **Statements regarding Olaplex's strong reputation and competitive position.**

Plaintiff next argues that Olaplex misled investors regarding the strength of Olaplex's reputation and its competitive position. At issue are Olaplex's representations in its Registration Statement that "[t]he quality of our products, combined with our community-driven approach to engaging with both professional hairstylists and our consumers, have created a strong and loyal following for OLAPLEX that we believe provides a unique competitive advantage and foundation for growth." Compl. ¶ 171. Similarly at issue are Olaplex's statements that "[w]e believe we have a well-recognized and strong reputation in our core markets and that the quality and performance of our products . . . position us to compete effectively." Compl. ¶ 178. Plaintiff argues that these statements were misleading because they represented that Olaplex's reputation and competitive position were strong while failing to mention the EU ban, which, according to Plaintiff, was "significantly likely" to damage Olaplex's reputation and competitive position. *See* Opp. to Def. Mot. to Dismiss at 12, ECF No. 133.

To be sure, it could be misleading to represent that something is true—for example, that Olaplex's competitive position is strong—while omitting events that render it significantly likely that that thing will not be true in the future. This principle is illustrated by *Glazer Cap. Mgmt., L.P. v. Forescout Techs., Inc.*, 63 F.4th 747 (9th Cir. 2023). There, the court held that it was misleading for the defendant to state that it "look[ed] forward to completing our pending transaction with Advent," but not disclose that three days

---

(for the sake of argument) Plaintiff's argument that the EU ban made the risk of product liability suits, reputational damage, and lost sales "significantly likely" as true, failure to disclose the EU ban would certainly fall within the scope of 303, as the EU ban and its effects would be a "known . . . uncertainty that . . . are reasonably likely to have a material . . . unfavorable impact on net sales." *See* 17 C.F.R. §§ 229.303(a), (b)(2)(ii). But whether this lack of disclosure violates Rule 11 writ large is not the question the Court is considering in this section. The Court is considering whether the specific characterization of the risk of product liability suits, reputational damage, and lost sales as hypothetical is misleading.

                                                       :

Initials of Preparer

                    PMC

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:22-cv-08395-SVW-SK | Date | February 7, 2025 |
|---|---|---|---|
| Title | *Leslie Lilien v. Olaplex Holdings, Inc. et al* | | |

earlier, Advent had told the defendant that it was considering not going through with the transaction. *Id.* at 763, 779. The *Forescout* court reasoned that the defendant's statement was misleading because it "did not fairly align with the information in the issuer's possession at the time—i.e., that Advent was reconsidering the deal." *Id.* That is essentially Plaintiff's theory here—that Olaplex's statements regarding its strong reputation and competitive position "did not fairly align with the information in [Olaplex's] possession at the time—i.e., that" the EU had banned an ingredient in Olaplex's No. 3 Product. *See id.*

The problem for Plaintiff, however, is that not every misleading statement is actionable under Rule 11. Indeed, "[i]n the Ninth Circuit, vague, generalized assertions of corporate optimism or statements of mere puffing are not actionable material misrepresentations under federal securities laws because no reasonable investor would rely on such statements." *In re Restoration Robotics, Inc. Sec. Litig.*, 417 F. Supp. 3d 1242, 1255 (N.D. Cal. 2019) (cleaned up). As the Ninth Circuit itself has stated, "[w]hen valuing corporations, investors do not rely on vague statements of optimism like 'good,' 'well-regarded,' or other feel good monikers." *Oregon Pub. Emps. Ret. Fund v. Apollo Grp. Inc.*, 774 F.3d 598, 606 (9th Cir. 2014) (quoting *In re Cutera Sec. Litig.*, 610 F.3d 1103, 1111 (9th Cir. 2010)) (cleaned up).

Here, Olaplex's representations that it has created a "strong and loyal following" that provides a "unique competitive advantage and foundation for growth" are exactly the type of "vague, generalized assertion[] of corporate optimism" that is not actionable under Section 11. *See Restoration Robotics*, 417 F. Supp. at 1255; Compl. ¶ 171. Likewise, Olaplex's representation that it has a "well-recognized and strong reputation," and that the "quality and performance of [its] products . . . position [Olaplex] to compete effectively" are similarly not actionable. *See Oregon Pub. Emps. Ret. Fund*, 774 F.3d at 606; Compl. ¶ 178. Indeed, these statements are not "capable of objective verification" and are instead "mildly optimistic, subjective assessment[s] [that] hardly amount[] to a securities violation." *See Oregon Pub. Emps. Ret. Fund*, 774 F.3d at 606.

Accordingly, the Court holds that these statements cannot form the basis of Plaintiff's Section 11 claim.

:                     _____
                     Initials of Preparer
                                    PMC

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:22-cv-08395-SVW-SK | Date | February 7, 2025 |
|---|---|---|---|
| Title | *Leslie Lilien v. Olaplex Holdings, Inc. et al* | | |

e.      **Statements touting the "clean" nature of Olaplex products**

Plaintiff next takes issue with the statements in Olaplex's registration statement that tout the "clean" nature of Olaplex products and highlight Olaplex's focus on creating "clean" products. For example, Olaplex made the following statements related to clean products: "we strive to produce clean products that exclude certain harmful ingredients;" "our offerings . . . position us well to meet this rising consumer demand [for clean beauty products];" "we have focused on developing clean . . . beauty products . . . which has driven strong organic growth." Compl. ¶¶ 187, 189, 191.

These statements, like Olaplex's representations regarding its reputation, are not actionable misrepresentations. Rather, they are aspirational, subjective, or do not provide concrete facts. **First**, stating that "we strive" or "we have focused on" indicates merely a desire to achieve certain goals, not that those goals would be achieved to perfection. It is not misleading to make such aspirational statements without disclosing any and every event that might undermine that aspirational goal. For example, in *Retail Wholesale & Dep't Store Union Loc. 338 Ret. Fund v. Hewlett-Packard Co.*, 845 F.3d 1268, 1272-73 (9th Cir. 2017), the Court held that the defendant's statement that it would "commit together . . . to . . . conduct[] business consistent with the high ethical standards embodied within our [business code]" while omitting business code violations by the CEO was not misleading. It explained that the statements were "transparently aspirational" and "did not reasonably suggest that there would be no violations of the [business code] by the CEO or anyone else." *Id.* at 1278. Here, as in *Retail Wholesale*, Olaplex's statements that it "strive[s]" for clean products is aspirational and were not rendered misleading even though Olaplex failed to disclose the EU ban on lilial. *See id.*

**Second**, the word "clean" is subjective, and thus Olaplex's representation that it would make "clean" products is nothing more than a "vague statement[] of optimism" that is "[not] capable of objective verification." *See Oregon Pub. Emps. Ret. Fund*, 774 F.3d at 606. Such statements are not actionable under Section 11, and thus the Court holds that Olaplex's statements regarding the "clean" nature of Olaplex products cannot form the basis of Plaintiff's Section 11 claim.

_____ : _____

Initials of Preparer

PMC

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:22-cv-08395-SVW-SK | Date | February 7, 2025 |
|---|---|---|---|
| Title | *Leslie Lilien v. Olaplex Holdings, Inc. et al* | | |

In sum, of the five allegedly misleading categories of statements identified by Plaintiff, only two of them can serve the basis of her Section 11 claim: (1) statements regarding the potential impact of laws and regulations on Olaplex's business; and (2) statements regarding the risks that an Olaplex products may be found unsafe.

2.      **Omitted Material Facts Required to be Stated in Olaplex's Registration Statements**

The above analysis only considered whether Olaplex violated the first two prongs of Section 11: whether Olaplex's registration statement contained (1) an untrue statement of material fact or (2) omitted to state a material fact necessary to make the statements therein not misleading. 15 U.S. C. § 77(k)(a). There is, of course, a third prong of Section 11, under which Olaplex is liable if it "omitted to state a material fact required to be stated therein"—i.e., required to be stated by any applicable regulations. *Id.*

Plaintiff alleges that Olaplex violated this third prong of Section 11 by failing to disclose the EU ban, as she contends such disclosure was required by Rule 408 of Regulation C, Item 303 of Regulation S-K, and Item 105 of Regulation S-K.[13] The Court will address each regulation in turn.

a.      **Rule 408**

Rule 408 of SEC Regulation C states that "[i]n addition to the information expressly required to be included in a registration statement, there shall be added such further material information, if any, as may be necessary to make the required statements, in light of the circumstances under which they are made, not misleading." 17 C.F.R. § 230.408(a).

The language of Rule 408 closely mirrors Section 11 itself, and indeed the Second Circuit has described Rule 408 as imposing a "similar requirement" to Section 11's requirement that registration statements include information that, if omitted, would make the statements in those documents misleading. *See In re Morgan Stanley Info. Fund Sec. Litig.*, 592 F.3d at 365. On these facts, the Court finds that Rule

---

[13] These regulations are 17 C.F.R. § 230.408, 17 C.F.R. § 229.303, and 17 C.F.R. § 229.105 respectively.

_____ : _____

Initials of Preparer

PMC

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:22-cv-08395-SVW-SK | Date | February 7, 2025 |
|----------|----------------------|------|------------------|
| Title | *Leslie Lilien v. Olaplex Holdings, Inc. et al* | | |

408 can serve as the basis of Plaintiff's Section 11 claim, for the same reasons as already articulated in this Court's analysis of the earlier prongs of Section 11. *See* discussion, Section IV(A)(1)(a-b), *supra.*

        **b.    Item 303**

        Item 303 of Regulation S-K requires disclosure of "known trends or uncertainties that have had or that are reasonably likely to have a material favorable or unfavorable impact on net sales or revenues or income from continuing operations." 17 C.F.R. 229.303(b)(2)(ii). Notably, Item 303 contains a knowledge requirement: it "requires the registrant to disclose only those trends, events, or uncertainties that it *actually knows* of when it files the relevant report with the SEC. It is not enough that it *should have known* of the existing trend, event, or uncertainty." *Indiana Pub. Ret. Sys. v. SAIC, Inc.*, 818 F.3d 85, 95 (2d Cir. 2016) (emphasis added). And "[w]hile [Item 303] provides that 'known trends or uncertainties' be disclosed in certain SEC filings . . . forward-looking information need not be disclosed." *In re VeriFone Sec. Litig.*, 11 F.3d 865, 870 (9th Cir. 1993); *see also Steckman*, 143 F.3d at 1297 ("The 'reasonably [likely]' language in [Item 303] helps distinguish statements of known facts relating to the future, which are mandatory, from forward-looking statements, which are not required."). Therefore, Plaintiff must show that Defendants failed to include in the Offering Documents information that was "*both* [1] presently known to management and [2] reasonably likely to have material effects on the registrant's financial condition or results of operation." *In re Restoration Robotics, Inc. Sec. Litig.*, 417 F. Supp. 3d 1242, 1262–63 (N.D. Cal. 2019) (quoting *Steckman v. Hart Brewing, Inc.*, 143 F.3d 1293, 1296 (9th Cir. 1998)) (internal quotation marks omitted) (emphasis in original).

        The Court finds that both of these requirements present factual issues more ripe for adjudication at the summary judgment stage. Whether the E.U. ban on lilial was, at the time of the IPO, reasonably likely to have material effects on Olaplex's financial condition or results of operation depends entirely on the precise state of the facts as they existed at the time of the IPO. The same is true for Olaplex's specific level of knowledge of those facts. Whether the lilial ban was in fact at the time of the IPO *reasonably likely* to materially affect Olaplex's financial condition, and whether Olaplex had *present knowledge* of those facts, can only be determined with a complete factual record.

_____    :_____

Initials of Preparer

                            PMC

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:22-cv-08395-SVW-SK | | Date | February 7, 2025 |
|---|---|---|---|---|
| Title | *Leslie Lilien v. Olaplex Holdings, Inc. et al* | | | |

At the pleading stage, Plaintiff has sufficiently alleged facts (*i.e.*, the lilial ban) that may have had a material effect on Olaplex's future financial condition, and that Olaplex was generally aware of the lilial issue prior to the IPO, and therefore plausibly could have disclosed it in the Offering Documents. *See, e.g.*, Compl. ¶ 140-146 (Olaplex director's discussion of Olaplex's response to the E.U. ban beginning in March 2021, prior to the IPO). Therefore, Item 303 may also serve as the basis for Plaintiff's Section 11 claim.

> c.    **Item 105**

Item 105 of Regulation S-K requires that the Offering Documents include "a discussion of the material factors that make an investment in the registrant or offering speculative or risky." 17 C.F.R. § 229.105(a). "To state a claim under Item 105, an issuer must know, at the time of the IPO, about an undisclosed risk factor that could seriously affect its present or future business." *Wandel v. Gao*, 590 F. Supp. 3d 630, 646 (S.D.N.Y. 2022). "[W]here a company's filings contain abundant and specific disclosures regarding the risks facing the company, as opposed to terse, generic statements, the investing public is on notice of these risks and cannot be heard to complain that the risks were masked as mere contingencies." *Sundaram v. Freshworks Inc.*, No. 22-CV-06750-CRB, 2023 WL 6390622, at *8 (N.D. Cal. Sept. 28, 2023) (quoting *Plevy v. Haggerty*, 38 F. Supp. 2d 816, 832 (C.D. Cal. 1998)). Additionally, "[t]o state a claim under Item 105 . . . Plaintiff[] must plausibly allege that [the Section 11 defendants] actually knew about, but did not disclose, the matter to investors." *Wandel v. Gao*, 590 F. Supp. 3d 630, 646 (S.D.N.Y. 2022); *see also Jaroslawicz v. M&T Bank Corp.*, 962 F.3d 701, 713 (3d Cir. 2020) ("[T]he text of Item 105 . . . naturally requires an allegation that a known risk factor existed at the time of the offering.").

"[C]ourts have held that a company's risk disclosures are misleading in violation of Item 105 where the 'risk factors' reported in the Registration had already materialized by the time of its IPO." *Felipe v. Playstudios Inc.*, No. 2:22-CV-01159-RFB-NJK, 2024 WL 1380802, at *13 (D. Nev. Mar. 31, 2024) (holding that the plaintiffs pled an Item 105 violation for risk factors that the "game may be delayed" where game developer faced "abnormally large number of bugs" and risks had "already come to fruition"); *see also Bos. Ret. Sys. v. Uber Techs., Inc.*, No. 19-CV-06361-RS, 2020 WL 4569846, at *7 (N.D. Cal.

:
_____    _____

Initials of Preparer

PMC

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:22-cv-08395-SVW-SK | | Date | February 7, 2025 |
|---|---|---|---|---|
| Title | *Leslie Lilien v. Olaplex Holdings, Inc. et al* | | | |

Aug. 7, 2020) (holding that the company's risk disclosures were misleading in violation of Item 105 where the plaintiff plausibly alleged that the risk disclosures "created an impression of a state of affairs that differed in a material way from the one that actually existed," as those many of those risks "had already come to fruition") (cleaned up)). Or, in other words, companies violate Item 105 where their state of affairs is "materially different than its Risk Disclosures led investors to believe." *United Ass'n Nat'l Pension Fund v. Carvana Co.*, No. CV-22-02126-PHX-MTL, 2024 WL 5153343, at *38.

Here, because the Offering Documents warned of the risk of new regulations affecting Olaplex products without disclosing the E.U. ban on lilial, "the 'risk factors' reported in the Registration had already materialized by the time of [Olaplex's] IPO." *See Felipe*, 2024 WL 1380802, at *13. Accordingly, Plaintiff has sufficiently alleged that the lilial issue was "materially different than its Risk Disclosures led investors to believe," and thus Plaintiff has also sufficiently alleged a violation of Item 105 at the pleading stage. *See United Ass'n Nat'l Pension Fund*, 2024 WL 5153343, at *38 (finding that the plaintiffs pled an Item 105 violation for risk factors that "violations of laws or regulations…could have material adverse effects" when car rental company already faced "widespread issues complying with title and registration requirements"). As previously discussed for Item 303, to the extent required at the pleading stage, Plaintiff has sufficiently alleged that Olaplex had knowledge of the lilial issue prior to the IPO. Therefore, Item 105 may also serve as the basis for Plaintiff's Section 11 claim.

In sum, for the foregoing reasons, Plaintiff has sufficiently stated a claim under Section 11. Plaintiff has sufficiently alleged that failure to disclose the EU ban in Olaplex's registration statements both rendered certain risk disclosures misleading and violated applicable regulations. The Court accordingly denies Defendants' motion to dismiss this claim with the caveat that Plaintiff cannot base her Section 11 claims on the categories of statements that Court held not to be misleading.

| | : |
|---|---|
| Initials of Preparer | |
| | PMC |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:22-cv-08395-SVW-SK | Date | February 7, 2025 |
|---|---|---|---|
| Title | *Leslie Lilien v. Olaplex Holdings, Inc. et al* | | |

### B.      Section 12(a)(2)

In addition to bringing claims under Section 11 of the Securities Act, Plaintiff also brings claims under Section 12(a)(2) ("Section 12" for short). Section 12 largely mimics Section 11, except that it regulates statements in a company's prospectus, rather than statements in a registration statement. Accordingly, the elements of a Section 12 claim largely track those of a Section 11 claim. Just as with Section 11, to state a claim under Section 12, Plaintiff must plead that the Prospectus either (1) contained an untrue statement of a material fact or (2) omitted to state a material fact necessary to make the statements therein not misleading. *Id.* § 77l(a)(2).[14] The one notable difference between the two sections is that omitting a material fact required to be stated therein from a registration statement violates Section 11, while a similar omission in a prospectus does not violate Section 12.

Relevantly, the Securities Act requires that a prospectus contain the same information as the registration statement. 15 U.S.C. §§ 77b(a)(10), 77e(b)(2), 77j. Accordingly, the same statements that the Court found to be misleading in Olaplex's Registration Statement (i.e., statements regarding of the risk of new regulations or the risk that Olapex products would be found unsafe) were also present in the Prospectus. Just as these statements were misleading in Olaplex's Registration Statement, they are likewise misleading in Olaplex's Prospectus. Plaintiff has thus sufficiently stated a claim under Section 12 of the Securities Act.

### C.      Section 15

Finally, Plaintiff brings claims against the Individual Defendants, Advent Fund Defendants, and

---

[14] *See also In re Morgan Stanley Info. Fund Sec. Litig.*, 592 F.3d at 360, 360 n.8 (2d Cir. 2010) (noting that "[c]ollectively, the language of sections 11 and 12(a)(2) creates three potential bases for liability based on registration statements and prospectuses filed with the SEC: (1) a misrepresentation; (2) an omission in contravention of an affirmative legal disclosure obligation; and (3) an omission of information that is necessary to prevent existing disclosures from being misleading," but that section 12(a)(2) lacks parallel language contemplating actions based on omissions of material fact *required to be stated*).

_____                    : _____
Initials of Preparer

PMC

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:22-cv-08395-SVW-SK | Date | February 7, 2025 |
|---|---|---|---|
| Title | *Leslie Lilien v. Olaplex Holdings, Inc. et al* | | |

Mousserena under Section 15 of the Securities Act. Section 15 imposes secondary liability on "every person who, by or through stock ownership, agency, or otherwise…controls any person liable under [Section 11] or [Section 12]." 15 U.S.C. § 77o. A viable Section 11 or 12 claim is a prerequisite for liability under Section 15. *Paracor Finance, Inc. v. General Elec. Capital Corp.,* 96 F.3d 1151, 1161 (9th Cir.1996) ("To establish 'controlling person' liability, the plaintiff must show that a primary violation was committed[.]")

As already articulated, Plaintiff has stated viable claims under Sections 11 and 12. Additionally, Plaintiff has adequately alleged that the Individual Defendants were control persons within the meaning of Section 15 by alleging that the Individual Defendants signed the Offering Documents. *Fed. Hous. Fin. Agency v. UBS Americas, Inc.,* 858 F. Supp. 2d 306, 333 (S.D.N.Y. 2012), *aff'd,* 712 F.3d 136 (2d Cir. 2013) ("[T]he act of signing a registration statement… is a manifestation of the signer's responsibility for the information contained in the document and, therefore, sufficient to establish control person status.") Moreover, the Individual Defendants' only argument against a finding of Section 15 liability is that Plaintiff has failed to state a claim for Section 11 or Section 12 liability. *See* ECF No. 130 at 22 ("Plaintiff has failed to state claims for primary violations of the Securities Act, which is fatal to the control person claims.") As thoroughly explained above, the Court has rejected that argument. Therefore, Plaintiff has sufficiently stated claims against the Individual Defendants under Section 15 of the Securities Act, to the same extent they have stated viable claims against the Individual Defendants under Sections 11 and 12. *See Panther Partners Inc. v. Jianpu Tech. Inc.,* 18 CIV. 9848 (PGG), 2020 WL 5757628, at *17 (S.D.N.Y. Sept. 27, 2020) (rejecting defendants' attempt to dismiss Section 15 claim for control person liability where the only grounds for dismissal was based on the purported failure of plaintiff's Section 11 and 12 claims).

However, the remaining Section 15 claims, brought against the Advent Fund Defendants and Mousserena, along with the Section 11 claims against the Underwriter Defendants and the Section 12 claims against the Advent Fund Defendants, Mousserena, and the Underwriter Defendants, were not timely brought and must be dismissed, as will be discussed next.

_____ : _____

Initials of Preparer

PMC

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:22-cv-08395-SVW-SK | Date | February 7, 2025 |
|---|---|---|---|
| Title | *Leslie Lilien v. Olaplex Holdings, Inc. et al* | | |

**D.      Application of the statute of limitations to the Underwriter Defendants, the Advent Fund Defendants, and Mousserena**

The Section 11 claims against the Underwriter Defendants, the Section 12 claims against the Advent Fund Defendants, Mousserena, and the Underwriter Defendants, and the Section 15 claims against the Advent Fund Defendants and Mousserena fail because they are time-barred. These defendants were added for the first time on April 28, 2023. ECF No. 129 at 3; ECF No. 134, Plaintiff's Opposition to Underwriters' Motion to Dismiss, at 6; ECF No. 136, Plaintiff's Opposition to Mousserena's Motion to Dismiss, at 8. The statute of limitations governing claims under §§ 11 or 12(a)(2)[15] runs for one year, commencing when "the plaintiff did discover or a reasonably diligent plaintiff would have discovered the facts constituting the violation—whichever comes first." *Merck & Co. v. Reynolds*, 559 U.S. 633, 653 (2010) (cleaned up); 15 U.S.C § 77m. In the statute of limitations context, a plaintiff has only "discovered" facts when they "can plead that fact with sufficient detail and particularity to survive a 12(b)(6) motion to dismiss." *York Cnty. on Behalf of Cnty. of York Ret. Fund v. HP, Inc.*, 65 F.4th 459, 465 (9th Cir. 2023). Thus, the relevant statute of limitations question is whether Plaintiff was able to plead the facts constituting the violation with sufficient detail and particularity before April 28, 2022.

Plaintiff's claims rest on Defendants' failure to disclose that the E.U. had banned lilial due to health risks and that Olaplex then reformulated a product that previously contained lilial. Compl. ¶ 162. These facts were known by March 2022, as alleged in detail in Plaintiff's complaint. In the days following the posting of the TikTok videos, "numerous news articles and social media posts continued to report on Olaplex's lilial issue." *Id.* ¶ 202. Plaintiff acknowledges that Olaplex's management publicly addressed the "lilial issue" at length on a March 8, 2022, earnings call. *Id.* ¶¶ 210–12. Plaintiff also points to multiple reports by securities analysts, both before and after the earnings call. *Id.* ¶¶ 208–09; 213–15. Plaintiff states that these reports indicated that securities analysts "were concerned by [the] lilial issue." *Id.* ¶ 208.

---

[15] Because Section 15 liability is premised on liability either under either Section 11 or 12, Section 15 claims are subject to the same limitations period. *See Wang v. Zymergen Inc.*, No. 21-CV-06028-PCP, 2024 WL 3811844 (N.D. Cal. Aug. 14, 2024) ("Because Section 15 controlling person liability is 'created under' Section 11 and exists 'to the same extent' as the underlying Section 11 liability, both Section 11 and Section 15 claims are subject to the same…limitations period.")

|  | : |
|---|---|
| Initials of Preparer | |
| | PMC |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:22-cv-08395-SVW-SK | Date | February 7, 2025 |
|---|---|---|---|
| Title | *Leslie Lilien v. Olaplex Holdings, Inc. et al* | | |

Plaintiff also alleges that Olaplex failed to disclose that its brand reputation and sales were at a significant risk of being harmed due to the lilial issue—particularly given Olaplex's heavy reliance on social media. *Id.* ¶¶ 162, 165. However, the omission of the supposed risk of harm arising from the lilial issue was discoverable in March 2022 as soon as Plaintiff "discovered" the lilial issue itself. It was obvious at that point that the lilial issue *could* harm the company's brand and sales, especially after it generated such poor publicity and because the Offering Documents warned of Olaplex's vulnerability to reputational harm through social media. *See id.* ¶ 173. Plaintiff also points out that the impact of the lilial news on the company's business was a significant issue to investors. *Id.* ¶ 208. For example, at the March 8, 2022, earnings call, an analyst from Goldman Sachs asked if the lilial news had negatively impacted sales. *Id.* ¶ 212. Plaintiff also describes several analysts who "specifically noted that the lilial issue's impact on Olaplex's brand reputation and sales was a 'key' area of concern for investors that they would continue to monitor." *Id.* ¶ 213. Further, some of the harm that Defendants allegedly failed to warn of had manifested by March 2022—as the stock price dropped significantly on March 3 and March 7 of 2022, following the negative publicity. *Id.* ¶ 207. Together, these events should have put Plaintiff on notice of the possibility that Olaplex's prior use of lilial could harm its reputation and sales.

The remaining omissions were also discoverable by March 2022. For example, Plaintiff alleges that Defendants failed to disclose that Olaplex continued to sell old stock of the No. 3 Hair Perfector even after the ban was announced (but before the ban went into effect). *Id.* ¶ 165. But this omission was discoverable by March 2022, when, as Plaintiff's Complaint states, Olaplex admitted that it sold old stock containing lilial until January 2022. *See id.* ¶ 139. Plaintiff also states that Olaplex misrepresented the "clean" nature of its products and its focus on excluding "harmful ingredients" because the No. 3 Hair Perfector had been formulated with lilial. *Id.* ¶¶ 186–187. Obviously, this omission was discoverable when Olaplex's use of lilial and the E.U. ban came into the spotlight in March 2022.

The only facts that Plaintiff argues did not become apparent until later in 2022 arise out of Olaplex's disclosure of "a significant sales slowdown due to the reputational fallout resulting from the lilial controversy" when, on May 11, 2022, Olaplex reported its financial results financial results for the fiscal quarter during which the lilial news emerged (Q1 of 2022, which ended on March 31, 2022, a month after the lilial news broke). Dkt. 134 at 6, 16-17. Plaintiff argues that at the earliest, she could have only

:  _____

_____
Initials of Preparer

PMC

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:22-cv-08395-SVW-SK | | Date | February 7, 2025 |
|---|---|---|---|---|
| Title | *Leslie Lilien v. Olaplex Holdings, Inc. et al* | | | |

adequately pleaded Securities Act claims once Olaplex sales growth started to slow down because it was only then that the materiality of the alleged misrepresentation became "publicly apparent." *Id.* at 6, 10–11. Plaintiff further argues that "because the market was reassured by Olaplex's accompanying 'reliable words of comfort' that downplayed the severity and impact of the lilial issue on Olaplex's sales, [the] public statements in March 2022 could not have provided sufficient information to investors to trigger the statute of limitations." *Id.* at 13. Plaintiff then argues that the stock price declines on March 3 and 7, 2022 paled in comparison to later stock price declines, showing that the impact of the lilial issue on sales was only revealed later. *Id.* at 14–15.

These arguments fail because they misunderstand materiality for the purposes of Section 11 and 12 claims. A statement "is material if there is a substantial likelihood that a reasonable investor would consider it important in making an investment decision." *S.E.C. v. TLC Invs. And Trade Co.*, 179 F. Supp. 2d 1149, 1153 (C.D. Cal. 2001) (citing *Basic, Inc. v. Levinson*, 485 U.S. 224, 231–232 (1988)). Thus, materiality is evaluated *at the time of the decision to invest. See id.* Here, Plaintiff adequately alleges, based on facts publicly known prior to April 28, 2022, that the omissions were material at the time of the IPO. Therefore, that materiality should have been apparent once Plaintiff discovered those facts in March 2022. Materiality is not evaluated through hindsight and does not require showing that the information eventually does matter, i.e., that the company's sales did in fact decline due to Olaplex's use of lilial and the E.U. ban. *See Knox v. Yingli Green Energy Holding Co. Ltd.*, 242 F. Supp. 3d 950, 965 (C.D. Cal. 2017) (noting that materiality "must be considered as of the time [of the] allegedly misleading statements") (citing *In re GlenFed, Inc. Sec. Litig.*, 42 F.3d 1541, 1548 (9th Cir. 1994)). Materiality requires showing that knowledge of Olaplex's use of lilial and the E.U. ban *would have mattered* to a reasonable investor deciding to invest in the IPO. In other words, it does not matter for the purposes of Plaintiff's claims that Olaplex's stock price or sales dropped after the lilial issue came to light; it only matters that the lilial issue would have mattered to an investor *at the time of the IPO* because of the *potential* effect on *future* stock price or sales. As she has alleged, Plaintiff knew in March 2022 that the Offering Documents did not disclose the lilial issue or the threat to sales that it posed and could have alleged at that time with sufficient detail and particularity that those omissions would have affected a reasonable investor's decision to invest in the IPO.

|  | : |
|---|---|
| Initials of Preparer | |
| | PMC |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:22-cv-08395-SVW-SK | Date | February 7, 2025 |
|---|---|---|---|
| Title | *Leslie Lilien v. Olaplex Holdings, Inc. et al* | | |

Because Plaintiff was aware of the material omissions in March 2022, her claims against the Advent Fund defendants, Mousserena, and the Underwriter Defendants, filed on April 28, 2023, are barred by the one-year statute of limitations. *See* 15 U.S.C § 77m.

**V.      Conclusion**

For the foregoing reasons, Defendants' motions to dismiss are GRANTED IN PART AND DENIED IN PART.

Defendants' motion to dismiss the Section 11 and 12 claims against Olaplex and the Individual Defendants is DENIED. Defendants' motion to dismiss the Section 15 claims against the Individual Defendants is also DENIED.

Defendants' motion to dismiss the Section 11 claims against the Underwriter Defendants is GRANTED. Defendants' motion to dismiss the Section 12 claims against Mousserena, the Advent Fund Defendants, and the Underwriter Defendants is GRANTED. Defendants' motion to dismiss the Section 15 claims against Mousserena and the Advent Fund Defendants is GRANTED.

The remaining defendants are ORDERED to file an answer within 21 days.

**IT IS SO ORDERED.**

_____ : _____

Initials of Preparer

PMC