UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

-oOo-

HONORABLE STEPHEN V. WILSON, UNITED STATES DISTRICT JUDGE


LESLIE LILIEN, individually and
on behalf of all others similarly
situated,

                        Plaintiff,

   v.                                No. 2:22-cv-08395-SVW-SK

OLAPLEX HOLDINGS, INC., et al.,

                        Defendants.


REPORTER'S TRANSCRIPT OF PROCEEDINGS

LOS ANGELES, CALIFORNIA

MARCH 31, 2025

_____


SUZANNE M. MCKENNON, CRR, RMR
UNITED STATES COURT REPORTER

UNITED STATES COURTHOUSE
350 W 1st STREET, ROOM 3411
LOS ANGELES, CALIFORNIA 90012
(213) 894-3913
suzanne@ears2hands.com

APPEARANCES:


On Behalf of the Lead Plaintiff Arkansas Teacher Retirement System:

    LISA MARIE STREJLAU, Attorney at Law
    LAUREN AMY ORMSBEE, Attorney at Law
       Labaton, Keller, Sucharow LLP
       140 Broadway
       New York, New York 10005


On Behalf of the Defendant:

    ANNE JOHNSON PALMER, Attorney at Law
       Ropes and Gray LLP
       Three Embarcadero Center
       San Francisco, California 94111

(Proceedings commenced on March 31, 2025, at 2:02 p.m.)

THE COURTROOM DEPUTY:  Calling Item 3, CV 22-8395-SVW, Leslie Lilien versus Olaplex Holdings, Incorporated, et al.

Counsel, please state your appearances.

MS. STREJLAU:  Good afternoon, Your Honor.  Lisa Strejlau from Labaton, Keller, Sucharow on behalf of lead plaintiff Arkansas Teachers Retirement System.

MS. ORMSBEE:  Good afternoon, Your Honor.  Lauren Ormsbee also from Labaton, Keller, Sucharow.

MS. JOHNSON PALMER:  And good afternoon, Your Honor.  Anne Johnson Palmer of Robson Gray on behalf of the defendants.

THE COURT:  The Court did issue an extensive order denying the Motion to Dismiss after the Supreme Court decided not to hear the case that I thought could be instructive in this case.  So we are in a litigation posture.

Given the Court's order, the issues seem rather narrow; correct?  I mean, they just seem to be whether or not Olaplex defrauded investors by not revealing the European Commission's findings regarding the one ingredient in the shampoo that could be toxic and the overall marketing of Olaplex as toxic-free shampoo, in the Court's view, at least made it a triable issue as to whether that would deceive a reasonable investor.

I mean, it does seem like the European Commission's findings are the findings regardless of whether they were

justified or not.  And whatever Olaplex communicated to the investing public seems to be clear.  What might not be fully developed is what, if anything, Olaplex internally reviewed regarding its revelations and whatever revelations it may have made to the public.

But what type of discovery do you have in mind in that regard, I ask the plaintiff?  Take the lectern, if you would.

MS. STREJLAU:  Good afternoon, Your Honor.

THE COURT:  Whose deposition do you intend to take?

MS. STREJLAU:  We intend to take -- there are 13 defendants in this action.  The defendant company Olaplex as well as the 12-member board.

THE COURT:  Well, I am not going to approach it that way if you're intending -- I mean, there is somebody -- oh, I see.  Not in terms of what the shareholders of the private company knew, is that what you're saying?

In other words, Olaplex was taken public by some investment fund, a private investment fund.  Are the 12 people in that fund, or are they in the Olaplex corporate structure?

MS. STREJLAU:  They are members the Olaplex corporate structure; however, members of the advent funds, who Your Honor are referring to, are also their -- are outside directors present on Olaplex's board that are also involved in the advent funds.

THE COURT:  I see.  So you intend to depose them

because you feel they may have some information about what discussions, if any, were had in relation to how they made their disclosure; correct?

MS. STREJLAU:  Correct, Your Honor.  And each of the board members to the extent that they signed the registration statement are responsible for the information contained therein.

THE COURT:  I know that.

MS. STREJLAU:  So their knowledge is relevant.

THE COURT:  I want the focus, at least primarily, to be on the fraud and whether -- you know, that is front and center.  The other pieces would only be sustainable if there were fraud.

And have you prepared a document request?

MS. STREJLAU:  We are in the process of preparing those and suspect to serve them the next week or so.

THE COURT:  Well, you ought to get started because this is not going to be a case where the trial date will be forever.

MS. STREJLAU:  Understood, Your Honor.

THE COURT:  It's now April, almost.  I'm going to set the trial for the middle of October.

THE COURTROOM DEPUTY:  Jury trial will be October 14th at 9:00 a.m.

Pretrial, Your Honor?

THE COURT:  Yes.  Two or three weeks before.

THE COURTROOM DEPUTY:  Pretrial conference will be September 29th at 3:00 p.m.

MS. ORMSBEE:  Your Honor?  Sorry, this is Lauren Ormsbee from Labaton, Keller, Sucharow.  I just wanted to note -- and I believe defendants might agree -- we did submit a proposed schedule in our case management conference.

THE COURT:  All right.

MS. ORMSBEE:  And in cases such as this, which are under the PLSRA and the securities laws, there are certain other briefing including the class certification briefing, plus the document --

THE COURT:  Are those mandatory?

MS. ORMSBEE:  They are in a class action, Your Honor.  The class must be certified before --

THE COURT:  Oh, I see.  So, I see.

MS. ORMSBEE:  And I believe --

THE COURT:  I see.

MS. ORMSBEE:  There would also be --

THE COURT:  Is this a case where it would be better to approach the case from -- were you intending to make any motions down the road, Ms. -- I forgot your name.  I'm sorry.

MS. JOHNSON PALMER:  Ms. Palmer, Counsel for Olaplex.  Yes, Your Honor, we do anticipate --

THE COURT:  What motion?  A summary judgment?

MS. JOHNSON PALMER:  Summary judgment, Your Honor.  I would say two things.  There are no allegations of fraud in this action.  This is under the 33 Act with respect to --

THE COURT:  Section 11.

MS. JOHNSON PALMER:  Section 11-1215.

THE COURT:  I know that.

MS. JOHNSON PALMER:  But there are still defenses that the defendants anticipate making, some of which are referenced in the Court's decision on the Motion to Dismiss. For example, a truth on the market defense with respect to whether Liliel and the band was known to the extent that there couldn't be some sort of misleading omission from the offering documents.

There is also --

THE COURT:  You don't have to go into much detail. You intend to make a summary judgment motion.

So wouldn't the case be better organized if we put our efforts towards the summary judgment first?  Because the summary judgment is the -- I mean, whether or not there was a Section 11 violation governs whether there is a class action. And why go through the class action procedures without at least knowing that the case can get over the summary judgment hurdle? I mean, is there anything about the security -- what is it called, S-1?

MS. STREJLAU:  The PLSRA?

THE COURT:  Yeah.  Is there anything in there which prevents the Court from doing that?  I wouldn't think so.

MS. ORMSBEE:  I am not sure there's anything that prevents it.  I know in some districts there are rules that there can't be dispositive motions before certification.  And I believe that applies in the Northern District of California.

THE COURT:  I don't think it applies here.

MS. JOHNSON PALMER:  Your Honor?  Excuse me, Counsel. The concern we would have from the defendant's perspective and the reason why these cases traditionally have the class certification motion and then motions for summary judgment is that the Court's ruling on the summary judgment motion is not binding or preclusive as to the class members unless there has been a decision on class certification.

THE COURT:  I see.  So you're saying -- I mean, that is correct.  So you're saying -- well, I mean, it wouldn't be binding if some class members opted out; right?

MS. JOHNSON PALMER:  Correct.

MS. ORMSBEE:  Right.  And there's --

THE COURT:  I mean, I don't know.  If one class member opts out, wouldn't that create a different environment?

MS. ORMSBEE:  Your Honor, once -- no one can opt out until there is a certified class.  So it's kind of an unknown whether that would change defendant's posture of the case and possible resolution of the case.

But we did time and try to time class certification while fact discovery is going on, so there's no waste of assets.  So while we are collecting documents and commencing depositions, we will also brief out the class certification motion, complete any discovery related to the lead plaintiffs or experts that may be -- expert reports filed in connection with class, while also completing fact discovery in preparation for dispositive motions.

THE COURT:  Well, why --

MS. ORMSBEE:  So we've tried to time it --

THE COURT:  So you're saying -- in my experience, if the case -- I'm just speaking pragmatically now.  If the case survives summary judgment, unless the defendant thinks that the Court was horribly wrong, that usually brings people to the bargaining table.

But how long would you take -- need to make a class certification motion?

MS. ORMSBEE:  Your Honor, the scheduling motion --

THE COURT:  However long?  Don't give me a song and dance.  How long?

MS. ORMSBEE:  We could make a class certification motion in the next 60 days.  We'd do it in 60 days.

THE COURT:  Make a motion in 60 days, and then we'll set a hearing.

How much time do you need to oppose, 15 days?  Ten, 15

days?

MS. JOHNSON PALMER:  Your Honor, we'd request 30 days, because typically these motions are accompanied by expert reports that require some digestion and also potentially discovery.  That was baked into the schedule.

THE COURT:  But how different -- in terms of commonality, would there be an argument here about typicality or commonality in the class certification realm?

MS. JOHNSON PALMER:  Potentially, Your Honor, obviously, we have not yet had the opportunity to fully take discovery of the named plaintiff and whether they're sort of already --

THE COURT:  You know something?  You're talking a lot, but talk real.  I mean, these are all people, according to the complaint, relied on these so-called omissions or misrepresentations.  So it sounds like, in a securities fraud case like this, unless there is something unexpected, there is commonality and typicality.  So then the issue is the class, the best way to deal with it if there is commonality and typicality, probably, in these cases.

So how is -- and on class certification, how is the Court's analysis going to be any different than it was on the Motion to Dismiss?  I mean, I gave -- I gave an extensive order on the Motion to Dismiss.  I analyzed all the arguments.  And on a motion for class certification, what are the magic words?

I mean, What does the Court have to find?

MS. ORMSBEE:  Your Honor, I would just preface it respectfully, plaintiffs do not believe there should be any barriers to class certification.

THE COURT:  I didn't ask you that.

MS. ORMSBEE:  It has to define commonality --

THE COURT:  Listen to what I say.  I asked you what are the magic words.  What are the words that the Court has to observe in terms of the burden the plaintiff has in class certification?

MS. ORMSBEE:  The Court has to find that the class has satisfied under the --

THE COURT:  The elements of 23?

MS. ORMSBEE:  23(a) and 23(b).

THE COURT:  By what degree?

MS. ORMSBEE:  That the plaintiff has sustained its burden.  I believe it's just by more than half that we've satisfied the commonality, adequacy, typicality.

THE COURT:  So you're saying is it more likely than not that the final certification will be approved?  What is the standard?

MS. ORMSBEE:  We have to make a prima facie showing that we can satisfy each of those elements.  And then defendants have a chance to rebut certain presumptions after the plaintiffs has submitted their evidence.

THE COURT:  But what is your ultimate burden?

MS. ORMSBEE:  Our ultimate burden is to present to the Court both factual --

THE COURT:  What is burden?  I mean, what does it say?  What are the words?

MS. ORMSBEE:  I believe it's just --

THE COURT:  Guys, look at the preliminary class certification.

Is Olaplex still in business?

MS. JOHNSON PALMER:  Yes, it is, Your Honor.

THE COURT:  And what were its sales last year?  Do you know approximately?

MS. JOHNSON PALMER:  I don't specifically.

THE COURT:  Do you know what the sales were?

MS. ORMSBEE:  I don't know what its sales were.

THE COURT:  Do you know -- is it traded?

MS. JOHNSON PALMER:  Yes.

THE COURT:  What exchange?

MS. JOHNSON PALMER:  The New York Stock Exchange.

THE COURT:  Well, there has to be some minimum financial requirement to trade on the New York Stock Exchange. So, I mean, class certification is only -- what I'm trying to do is not get at the outset into the question of all of these 12 directors and their liability.  To get as efficiently as possible to the heart of the case, and that is Olaplex, whether

Olaplex as an entity committed this violation.

And -- just one second.

(A discussion was held off the record.)

THE COURT: The wording is just the prima facie showing of class certification. And so, I mean, why wouldn't the Court's ruling essentially satisfy that? I mean, aside from the other -- I'm not trying to belittle these other factors, but everyone knows that, in a security class action, most of the class actions are certified, unless there's something different.

I mean, everyone, you know, presumably relied on the same information, and the information affected the marketplace, presumably.

And, I mean, I'll give you 21 days to oppose, and then we'll have a hearing.

What's your experience as plaintiff's lawyers in these cases? Have you done these cases before?

MS. ORMSBEE: Yes, Your Honor, many of them.

THE COURT: What firm are you with?

MS. ORMSBEE: I'm with Labaton, Keller, Sucharow.

THE COURT: Who?

MS. ORMSBEE: Labaton, Keller, Sucharow. It's a firm in New York, and we've done hundreds of securities class actions.

THE COURT: I see. Are you in that firm, too?

MS. STREJLAU:  I am, Your Honor.

THE COURT:  I see.  Okay.  And the --

MS. ORMSBEE:  Your Honor?  I'm sorry.

THE COURT:  who is the class representative?  It's just --

MS. ORMSBEE:  Arkansas Teachers Retirement System.

THE COURT:  Oh, I see.

MS. ORMSBEE:  Arkansas Teachers Retirement System, a pension fund in the State of Arkansas, an institutional investor.

THE COURT:  I see.  All right.

And the trial date is the trial date.  That's the trial date.

THE COURTROOM DEPUTY:  Your Honor, did you want the briefing schedule on the class cert motion?

THE COURT:  Yeah.  You can -- well, they're going to make their --

THE COURTROOM DEPUTY:  Sixty days to file?

THE COURT:  And file a brief at the same time.

MS. ORMSBEE:  Yes, we'll file a briefed motion.

THE COURT:  Yes.

MS. ORMSBEE:  And then we ask for a brief time to reply to the extent there are expert reports.

THE COURT:  I'll give you a week to reply, five days.

Okay.  Mr. Cruz will give you a written order with the

dates.  Thank you.

MS. ORMSBEE:  Thank you, Your Honor.

MS. STREJLAU:  Thank you, Your Honor.

MS. JOHNSON PALMER:  Thank you, Your Honor.

(Adjourned at 2:25 p.m.)

-oOo-

REPORTER'S CERTIFICATE

I certify that the foregoing is a correct transcript of proceedings in the above-entitled matter.

/s/ Suzanne M. McKennon, CSR, CRR, RMR
_____    Date:  05/20/2025
United States Court Reporter
9