**ROPES & GRAY LLP**
Anne Johnson Palmer (SBN 302235)
anne.johnsonpalmer@ropesgray.com
Three Embarcadero Center
San Francisco, California 94111-4006
Tel.: (415) 315-6300
Fax: (415) 315-6350

Peter Welsh (*pro hac vice*)
peter.welsh@ropesgray.com
Prudential Tower
800 Boylston Street
Boston, Massachusetts 02199-3600
Tel.: (617) 951-7000
Fax: (617) 951-7050

Brian Blais (*pro hac vice*)
Brian.Blais@ropesgray.com
Phillip G. Kraft (*pro hac vice*)
phillip.kraft@ropesgray.com
1211 Avenue of the Americas
New York, New York 10036-8704
Tel.: (212) 596-9000
Fax: (212) 596-9090

*Attorneys for Defendants*

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| LESLIE LILIEN, Individually and on Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br> v. <br><br> OLAPLEX HOLDINGS, INC., *et al.*, <br><br> Defendants. | Case No. 2:22-cv-08395-SVW-SK <br><br> **DEFENDANTS' OPPOSITION TO LEAD PLAINTIFF'S MOTION FOR CLASS CERTIFICATION** <br><br> Date: July 21, 2025 <br> Time: 1:30 p.m. <br> Courtroom: 10A <br> Judge: Hon. Stephen V. Wilson |

1

## **TABLE OF CONTENTS**

2    I.    PRELIMINARY STATEMENT ............................................................................. 1

3    II.   FACTUAL AND PROCEDURAL BACKGROUND ......................................... 3

4          A.    Olaplex Reformulates in Advance of its IPO to Comply with the
                 E.U. Lilial Ban ................................................................................... 3

5          B.    Olaplex's IPO ..................................................................................... 5

6          C.    Non-IPO Shares Commingled with IPO Shares on November 12,
                 2021 .................................................................................................... 6

7          D.    February 2022 Social Media Posts Distribute Information
                 Regarding the E.U. Lilial Ban and Olaplex Reformulation to
8                Investors and the Broader Market ...................................................... 6

9          E.    Procedural History .............................................................................. 7

10   III.  ARGUMENT ..................................................................................................... 8

11         A.    The Class Should Not Be Certified Because Individual Questions
                 Regarding Knowledge of the Alleged Misrepresentations
12               Predominate Over Questions Common to the Class ............................ 8

13               1.    Prior to the IPO, Information About the E.U. Lilial Ban and
                       Olaplex's Reformulation of the No. 3 Product Was Public,
14                     Necessitating Individualized Knowledge Inquiries ..................... 10

15               2.    Investors Had Knowledge of the E.U. Lilial Ban and
                       Olaplex's Reformulation Following February 2022 Tweets
16                     and the "Viral" TikTok Videos, Necessitating Additional
                       Individualized Knowledge Inquiries ........................................... 12

17         B.    If Certified, the Class Should Be Narrowed to Exclude Purchases
                 After November 12, 2021, When Non-IPO Shares
18               Indistinguishably Commingled with IPO Shares ................................. 15

19   IV.   CONCLUSION ................................................................................................. 19

20

21

22

23

24

25

26

27

28

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Amchem Prod., Inc. v. Windsor*,
    521 U.S. 591 (1997)..........................................................................................10

*Bos. Ret. Sys. v. Uber Techs., Inc.*,
    No. 19-cv-06361-RS, 2022 WL 2954937 (N.D. Cal. July 26, 2022) ...............13

*Brewster v. City of Los Angeles*,
    No. 14-cv-2257, 2023 WL 5505867 (C.D. Cal. 2023)......................................21

*Briseno v. ConAgra Foods, Inc.*,
    844 F.3d 1121 (9th Cir. 2017) ....................................................................10, 21

*Comcast Corp. v. Behrend*,
    569 U.S. 27 (2013)..............................................................................................9

*Cupat v. Palantir Techs., Inc.*,
    No. 22-cv-02384, 2025 WL 1141534 (D. Colo. Apr. 4, 2025).........................18

*Haliburton Co. v. Erica P. John Fund, Inc.*,
    573 U.S. 258 (2014)............................................................................................9

*Hanon v. Dataproducts Corp.*,
    976 F.2d 497 (9th Cir. 1992) ............................................................................20

*Hildes v. Arthur Andersen LLP*,
    734 F.3d 854 (9th Cir. 2013) ............................................................................16

*In re Honest Co. Sec. Litig.*,
    No. 2:21-cv-07405, 2023 WL 3190506 (C.D. Cal. May 1, 2023).............*passim*

*In re Kosmos Energy Ltd. Sec. Litig.*,
    299 F.R.D. 133 (N.D. Tex. 2014).............................................................*passim*

*In re Lehman Bros. Sec. & ERISA Litig.*,
    No. 09-MD-2017 (LAK), 2013 WL 440622 (S.D.N.Y. Jan. 23, 2013).............13

*In re Lendingclub Sec. Litig.*,
    282 F. Supp. 3d 1171 (N.D. Cal. 2017)..............................................20

*Loritz v. Exide Techs.*,
    No. 2:13-cv-02607, 2015 WL 6790247 (C.D. Cal. July 21, 2015)
    (Wilson, J.)................................................................................16

*In re Lyft Inc. Sec. Litig.*,
    No. 19-cv-02690-HSG, 2021 WL 3711470 (N.D. Cal. Aug. 20, 2021) ............13

*Pirani v. Slack Techs., Inc.*,
    127 F.4th 1183 (9th Cir. 2025) ..........................................2, 17, 18, 20

*In re Puda Coal Sec. Inc. Litig.*,
    No. 11-cv-2598 (KBF), 2013 WL 5493007 (S.D.N.Y. Oct. 1, 2013)...............18

*Slack Techs., LLC v. Pirani*,
    598 U.S. 759 (2023)........................................................2, 17

*In re Talis Biomedical Corp. Sec. Litig.*,
    No. 22-cv-00105-SI, 2024 WL 536303 (N.D. Cal. Feb. 9, 2024)...................21

*Vignola v. Fat Brands, Inc.*,
    No. 18-cv-7469, 2020 WL 1934976 (C.D. Cal. 2020)...............................*passim*

*Wal-Mart Stores, Inc. v. Dukes*,
    564 U.S. 338 (2011).........................................................1, 9

**Statutes and Rules**

15 U.S.C. § 77k(a) ...........................................................10, 11

15 U.S.C. § 77l (a)(2)........................................................10, 11

Fed. R. Civ. P. 23 ............................................................*passim*

Defendants Olaplex Holdings, Inc. ("Olaplex" or the "Company"), JuE Wong, Eric Tiziani, Tiffany Walden, Christine Dagousset, Tricia Glynn, Deirdre Findlay, Janet Gurwitch, Martha Morfitt, David Mussafer, Emily White, Michael White, and Paula Zusi (collectively, "Defendants") respectfully submit this Opposition to Lead Plaintiff Arkansas Teacher Retirement System's ("ATRS" or "Plaintiff") Motion for Class Certification (the "Motion" or "Mot.") (ECF No. 199). Defendants request that the Court decline to certify the proposed class or, at a minimum, limit the class to include only stockholders, other than Defendants or their affiliates, who purchased shares of Olaplex's common stock on or before November 12, 2021 that were traceable to the Registration Statement for the Company's initial public offering ("IPO"), of which the Prospectus was a part (each, as defined below).

## I.    PRELIMINARY STATEMENT

Plaintiff seeks to certify a class of "[a]ll persons and entities that purchased or otherwise acquired Olaplex's publicly traded common stock pursuant and/or traceable to the Offering Documents for Olaplex's IPO." Memorandum of Law in Support of Lead Plaintiff's Motion for Class Certification ("Pl.'s Memo") (ECF No. 199-1) at 1.[1] This open-ended class definition cannot withstand the "rigorous analysis" that the Court must undertake to determine whether a class action is appropriate under the Federal Rules. *See Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350-51 (2011).

Specifically, class certification is not appropriate because individualized questions about each putative class member's knowledge of publicly available information related to the alleged misrepresentations, both before and after Olaplex's September 29, 2021 IPO, will predominate over common questions. Critically, the information that Olaplex allegedly failed to disclose in its Registration Statement and Prospectus about the ban of a fragrance ingredient known as "lilial" in the European Union ("E.U.") and Olaplex's subsequent reformulation of its No. 3 Hair Perfector (the

---

[1] Unless otherwise specified herein, all emphasis is added, and all citations, internal quotation marks, and alterations have been omitted.

"No. 3 Product") to remove lilial ***was publicly available prior to the IPO***.  The E.U. ban of lilial was announced more than a year before Olaplex's IPO.  The ingredients of the No. 3 Product were publicly accessible, both on the physical bottle and on the Company's website, which confirmed the product reformulation to remove lilial in response to the then-upcoming E.U. ban.  Knowledge of these facts by any putative class member prior to their purchase of Olaplex shares would preclude recovery under both Sections 11 and 12.

***After the IPO, individualized issues of knowledge continue to predominate given the publicity surrounding the so-called "lilial issue" beginning in February 2022***.  On February 27, 2022, an influencer posted two videos on TikTok that—by Plaintiff's own admission—went "viral" and "ignited a furor" across social and traditional media.  Even prior to those videos, a customer had directed a tweet to Olaplex's official Twitter account asking whether Olaplex's products could not be purchased in the U.K. as of March 2022.  In response to those tweets and the TikTok videos, Olaplex issued statements explaining the E.U. lilial ban and the No. 3 Product's reformulation.  Class members who purchased shares with knowledge of this information are not entitled to recovery.  Critically, discovery has confirmed the obvious—some investors did indeed see these posts.  In short, individualized determinations of investor knowledge of these publicly accessible facts will predominate over common questions and preclude certification of Plaintiff's proposed class. *See Vignola v. Fat Brands, Inc.*, No. 18-cv-7469, 2020 WL 1934976, at *5 (C.D. Cal. 2020); *see also In re Kosmos Energy Ltd. Sec. Litig.*, 299 F.R.D. 133, 152-53 (N.D. Tex. 2014).

At the very least, any class must be narrowed to exclude shareholders who purchased stock after November 12, 2021, the date that discovery has shown as when non-IPO shares of Olaplex stock indistinguishably commingled with IPO shares at the Depository Trust Company ("DTC").  Under controlling Supreme Court and Ninth Circuit precedent, putative class members must prove that they purchased shares

traceable to the allegedly defective registration statement or prospectus. *Slack Techs., LLC v. Pirani*, 598 U.S. 759, 770 (2023), *rev'd and remanded to*, *Pirani v. Slack Techs., Inc.*, 127 F.4th 1183, 1191 (9th Cir. 2025). Once non-IPO shares commingle with IPO shares, however, class members who subsequently purchase stock cannot trace their shares to the IPO because IPO shares are indistinguishable from non-IPO shares. Here, the record shows that non-IPO Olaplex shares were deposited at DTC and commingled with IPO shares on November 12, 2021, just weeks after Olaplex's IPO. After that date, individual issues of traceability overwhelm common ones and necessitate that the class be narrowed to the period before non-IPO shares began trading.

The class certification stage is more than a mere formality, and this is precisely the case where, at a minimum, narrowing the class is appropriate. Defendants respectfully request that the Court deny Plaintiff's Motion and decline to certify (or, in the alternative, narrow) the class as described below.

## II.    FACTUAL AND PROCEDURAL BACKGROUND

### A.    Olaplex Reformulates in Advance of its IPO to Comply with the E.U. Lilial Ban

Olaplex is a prestige beauty company that offers science-backed solutions designed to improve hair health and sells numerous products, including Olaplex's No. 3 Product, specifically formulated to strengthen and repair damaged hair. Revised Consolidated Complaint (the "Complaint" or "Compl.") ECF No. 123 ¶ 83.

On May 10, 2019, the E.U.'s Scientific Committee on Consumer Safety ("SCCS") issued a report following an investigation it conducted into the safety of a chemical called butylphenyl methylpropional, commonly known as lilial. Compl. ¶¶ 122-24; *see* Ex. 6.[2] The SCCS Report concluded that lilial can be considered safe when used as a fragrance ingredient in cosmetic products "[o]n [an] individual product

---

[2] All references to Exhibits ("Ex.") are to the documents attached to the Declaration of Anne Johnson Palmer in support of Defendants' Opposition to Lead Plaintiff's Motion for Class Certification. Defendants have requested judicial notice of some of these Exhibits.

1  basis." Ex. 6 at 3, 53. However, based on the potential "aggregate exposure" from a
2  consumer's use of multiple products containing lilial, the SCCS could not conclude
3  that the use of lilial at higher concentrations was safe because of potential reproductive
4  toxicity from exposure to extremely high doses. *Id.* The SCCS Report was published
5  on May 10, 2019, filed in the public register in 2019, and readily accessible online. Ex.
6  6 at 1; *see also* Ex. 7. After the SCCS Report's publication, on May 19, 2020, the
7  European Commission reclassified lilial as a Category 1B reproductive toxicant. Ex.
8  8 ("May 2020 E.U. Regulation").[3] In August 2020, the E.U. published the May 2020
9  E.U. Regulation, which prohibited the use of lilial in consumer products as of March
10 1, 2022. Compl. ¶¶ 4-5; Ex. 8 at 5 ("[This Regulation] shall apply from 1 March
11 2022.").[4] Lilial was not and has still not been banned in the U.S. Compl. ¶¶ 5, 141.

12     Industry practitioners and public press commented on the then-upcoming E.U.
13 ban. For example, Obelis Group, a regulatory compliance consulting firm, published
14 an article in September 2020 that discussed the timeline for lilial's ban in the E.U. and
15 advised "cosmetic manufacturers to immediately start the process of replacing
16 fragrances with Lilial-free ones and to refrain from placing new products containing
17 Lilial on the [E.U.] market." Ex. 10. The Hong Kong Consumer Council issued a press
18 release in September 2021 in which it noted that lilial is "an established contact allergen
19 and classified by the [E.U.] as toxic for reproduction category 1B (substances presumed
20 to be toxic for human reproduction)." Ex. 11. Additionally, publicly available blog
21 posts discussed the E.U. ban shortly after the IPO. *See* Ex. 12; Ex. 13.

22     As of June 2021, Olaplex had already reformulated its No. 3 Product to remove
23 lilial. Compl. ¶¶ 201-02; *see* Ex. 19 (May 24, 2021 email providing the "current
24 ingredient list[] for No.3" that does not include lilial). The fact that the No. 3 Product
25 previously contained lilial and was later reformulated following the E.U. ban was

26 ─────────────
   [3] This regulation uses the term "2-(4-tert-Butylbenzyl)propionaldehyde," which is
27 another chemical term for butylphenyl methylpropional, lilial's chemical name.
   [4] The European Commission's regulation dated October 29, 2021, and published online
28 on November 3, 2021, also included lilial among the list of prohibited substances for
   use in cosmetic products. *See* Ex. 9 (October 2021 E.U. Regulation) at 2, Annex at 1.

apparent from the product ingredient lists on Olaplex's website, *see* Compl. ¶¶ 134-35, as well as the label on the physical bottles. *Compare* Ex. 18 at -3586 (label circulated October 1, 2020 listing butylphenyl methylpropional, lilial's chemical name, as an ingredient in the No. 3 Product) *with* Ex. 20 at -2225 (label circulated July 21, 2021 not listing lilial). Specifically, the No. 3 Product webpage removed lilial as a listed ingredient at some point between April 15 and June 28, 2021, months before the September 29, 2021 IPO. *See* Ex. 14 (listing butylphenyl methylpropional, lilial's chemical name, as an ingredient); Ex. 15 at 5 (not listing lilial as an ingredient); *see also* Compl. ¶¶ 134-35 (acknowledging that lilial was removed from the ingredient list on Olaplex's website "no later than August 13, 2021"); Ex. 19.[5]

**B.    Olaplex's IPO**

Olaplex conducted its IPO on and around September 29, 2021, with investors purchasing 84,755,000 shares (including 11,055,000 shares related to the full exercise by the underwriters of the IPO of their option to purchase additional shares) of Olaplex common stock at a price of $21 per share. Compl. ¶¶ 154-55; Ex. 4 at 16. The IPO was conducted pursuant to several documents filed by Defendants with the SEC and disseminated to the investing public, including: (i) an August 27, 2021 registration statement on Form S-1, which, following amendments, was declared effective by the SEC on September 29, 2021 (the "Registration Statement"); and (ii) a September 29, 2021 prospectus, which forms part of the Registration Statement, on Form 424(b)(4) (the "Prospectus," and, together with the Registration Statement, the "Offering Documents"). Compl. ¶¶ 154-55. In its IPO, Olaplex did not issue new shares of its stock. Rather, certain of its existing shareholders sold a minority equity stake to the public. *See* Ex. 4 at 1, 162. The remaining Olaplex shares issued prior to the IPO were subject to a "lock-up" period and would only become available for sale to the public 180 days after the IPO, on March 29, 2022. *See id.* at 57.

---

[5] Plaintiffs' own Complaint also acknowledges changes to "Olaplex's Safety Data Sheets published on its website" and claims that in June 2021, Olaplex removed lilial from the No. 3 ingredient list on the Safety Data Sheets. *See* Compl. ¶¶ 136-137.

### C.    Non-IPO Shares Commingled with IPO Shares on November 12, 2021

On November 11, 2021, as a result of an option exercise by two Olaplex grantees pursuant to the 2020 Omnibus Equity Incentive Plan (the "2020 Plan"), Olaplex authorized its transfer agent, American Stock Transfer & Trust Company, LLC ("AST"), to issue 188,375 shares of its common stock and deposit them at DTC via DTC's Deposit/Withdrawal At Custodian ("DWAC") system[6] for the benefit of Morgan Stanley.  *See* Ex. 5; Ex. 22; Ex. 21; Ex. 21 at -8368; Ex. 1 at ¶¶ 86-87.  On November 12, 2021, 188,375 newly-issued non-IPO shares were deposited at DTC where they were held in "fungible bulk" with the IPO shares.[7]  *See* Ex. 24 at -8253 & Ex. 25 (at -7902-06; Ex. 2 at ¶¶ 4-6.  None of the shares held at DTC bore the name of the individual holder of the stock but instead were deposited in the name of Cede & Co., DTC's nominee, thereby becoming indistinguishably commingled with shares of Olaplex's common stock issued pursuant to the IPO.  *See* Ex. 1 at ¶¶ 20, 93-96; Ex. 2 at ¶¶ 4-7.  A few months later, on March 29, 2022, the 180-day lock-up period on non-IPO shares issued prior to the IPO expired.  *See* Ex. 4 at 57.  Defendants' Expert Jack Wiener explains this background in more detail in his Report.  *See* Ex. 1.

### D.    February 2022 Social Media Posts Distribute Information Regarding the E.U. Lilial Ban and Olaplex Reformulation to Investors and the Broader Market

On February 24, 2022, a Twitter user tweeted at Olaplex and asked whether it was true that Olaplex could not be purchased in the U.K. as of March 1, 2022.  Ex. 16 (February 24, 2022 Tweets).  Olaplex replied "That is not true!"  *Id.*  The user followed up noting that her hairdresser "said she had a notification that two of the chemicals are banned in the [E.U./U.K.] so [is Olaplex] removing them?"  *Id.*  Olaplex responded: "As of June 2021, OLAPLEX no longer produces any product containing Lilial and as of January 2022 no distributors have purchased any product containing Lilial.  Please

---

[6] The DWAC system facilitates the electronic deposit or withdrawal of securities to and from the DTC.
[7] When securities are held in "fungible bulk," each customer of a DTC participant has a pro rata interest in DTC's entire inventory of that issue, but none of the securities are identifiable to or "owned" by any participant.  *See* Ex. 1 at ¶¶ 40-45.

1    see below for our updated safety sheets that include our ingredients for each product
2    [link]." *Id.*

3         A few days later, on February 27, 2022, a social media influencer posted two
4    videos on TikTok containing misinformation about Olaplex and lilial. *See* Compl. ¶
5    197. In the first video, the influencer expressed apparent dismay at her mistaken belief
6    that Olaplex products would be banned in the E.U. the following month with the
7    caption, "[w]hen you find out Olaplex is going to be banned in the [E.U.] + UK next
8    month." *Id.* ¶ 197. In the second video, the influencer stated, "there are reports that
9    Olaplex is being banned in the E.U. and the U.K., and that is because of this ingredient
10   [pointing to a google search of lilial], which has been linked to infertility." *Id.* ¶ 198.
11   The influencer further stated that some sources were reporting that Olaplex had already
12   reformulated and, if not, the Company was likely to reformulate before the ban came
13   into effect. *Id.*

14        On February 28, 2022, Olaplex posted a video on its social media accounts
15   addressing the TikTok videos and clarifying that Olaplex no longer used lilial in any
16   of its products. Compl. ¶ 201. In the video and the caption under it, Olaplex addressed
17   the E.U. lilial ban, noting that Olaplex had not sold products using lilial in the E.U. or
18   U.K. since January 2022, and explaining that Olaplex removed lilial from the No. 3
19   Product globally. *See* Ex. 17; Compl. ¶ 201. Throughout March 2022, the prior
20   inclusion of lilial in the No. 3 Product was covered in traditional news media, with
21   several articles that included responses from Olaplex. Compl. ¶ 199.

22   **E.    Procedural History**

23        On February 7, 2025, the Court issued its ruling on Defendants' Motion to
24   Dismiss the Plaintiff's Complaint. *See* ECF No. 171 ("MTD Order") at 11, 28.
25   Following the MTD Order, Plaintiff's only surviving claims are its Section 11 and
26   Section 12 claims against Olaplex and the Individual Defendants, and Section 15
27   claims against the Individual Defendants, relating to allegedly misleading disclosures
28   regarding: (1) the potential impact of laws and regulations on Olaplex's business; and

(2) the risks that Olaplex products may be found unsafe. *See id.*; *see also* Compl. ¶¶ 164, 166. On May 30, 2025, Plaintiff filed its Motion for Class Certification. *See* ECF No. 199.

## III.   ARGUMENT

Because a "class action is an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only . . . a party seeking to maintain a class action must affirmatively demonstrate his compliance with Rule 23." *Comcast Corp. v. Behrend*, 569 U.S. 27, 33 (2013). To certify a Rule 23(b)(3) class, which Plaintiff seeks to do here, Plaintiff must show that the proposed class meets the requirements of Rule 23(a): numerosity, commonality, typicality, and adequacy of representation; as well as the two requirements of 23(b)(3): predominance and superiority. *See* Fed. R. Civ. P. 23(a), (b)(3). If Plaintiff fails to satisfy any element of Rule 23, class certification must be denied. *Haliburton Co. v. Erica P. John Fund, Inc.*, 573 U.S. 258, 275 (2014).

Rule 23 does not establish a "mere pleading standard" and requires, where necessary, considering the merits of a plaintiff's claim—including, for example, whether a plaintiff or other class members had knowledge of the alleged misrepresentations or whether a plaintiff has shown that its or other class members' shares are traceable to the IPO—as those merits issues may be relevant to ascertaining whether the class should be certified. *See Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350-51 (2011) ("Frequently [the] rigorous analysis [for Rule 23] will entail some overlap with the merits of the plaintiff's underlying claim. That cannot be helped.").

Plaintiff's proposed class does not and cannot withstand the "rigorous analysis" the Court must conduct here.

### A.   The Class Should Not Be Certified Because Individual Questions Regarding Knowledge of the Alleged Misrepresentations Predominate Over Questions Common to the Class

Plaintiff has failed to meet the requirements of Rule 23(b)(3)—that common

questions "predominate over any questions affecting only individual members" and that the class action "is superior to other available methods for fairly and efficiently adjudicating the controversy"—because individual questions regarding investors' knowledge of the alleged misrepresentations will predominate over those common to the class, rendering the class action unmanageable. The predominance requirement "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 623 (1997). Rule 23(b)(3) "specifically mandates that courts consider the likely difficulties in managing a class action" when determining whether the superiority requirement is met. *Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121, 1127-28 (9th Cir. 2017).[8]

Under Sections 11 and 12(a)(2), any putative class members who had actual knowledge of the alleged misrepresentations at the time of their purchases lack standing and are not entitled to recovery. *See* 15 U.S.C. § 77k(a); 15 U.S.C. § 77l (a)(2); *In re Honest Co. Sec. Litig.*, 2:21-cv-07405, 2023 WL 3190506, at *4 (C.D. Cal. May 1, 2023). Where a plaintiff cannot provide a viable method to test knowledge on a class-wide basis, predominance is not satisfied. *Vignola v. Fat Brands,* No. 18-cv-7469, 2020 WL 1934976, at *5 (C.D. Cal. Mar. 13, 2020). While the knowledge of individual class members may not be a hurdle to certification where the allegedly omitted information concerns an issuer's internal, non-public information, putative class members' knowledge does present a barrier to certification where the allegedly omitted information was publicly accessible either prior to or during the class period. *Id.*; *In re Kosmos Energy Ltd. Sec. Litig.*, 299 F.R.D. 133, 152-53 (N.D. Tex. 2014).

Here, investors' actual knowledge is not a "secondary issue" that "cannot interfere with certification," as Plaintiff claims. Pl.'s Memo at 18. Given that the allegedly omitted information was in fact available to the public and widespread both

---

[8] Plaintiff references the Ninth Circuit's recognition of the "well-settled presumption that courts should not refuse to certify a class merely on the basis of manageability concerns." *See* Pl.'s Memo at 19-20; *see also Briseno*, 844 F.3d at 1128. But here, the class action will not "merely" be unmanageable. Plaintiff has not carried its burden to affirmatively demonstrate that common issues predominate over individualized ones.

before Olaplex's IPO and after the February 2022 Tweets, TikTok videos, and Olaplex's social media posts in response, individualized inquiries into each stockholder's knowledge at the time of their purchases will overwhelm questions common to the class and render the proposed class action unmanageable. As such, the Court should decline to certify the class.

### 1. Prior to the IPO, Information About the E.U. Lilial Ban and Olaplex's Reformulation of the No. 3 Product Was Public, Necessitating Individualized Knowledge Inquiries

All potential class members are subject to individualized inquiries regarding knowledge. Where information allegedly omitted from offering documents has been widely reported, a plaintiff cannot provide a viable method to test knowledge on a class-wide basis with common proof. *Vignola,* 2020 WL 1934976, at *5.[9] In *Vignola,* for example, the plaintiffs alleged that offering documents touting the company's management were misleading because they did not disclose that members of the management team had previously managed an entity at a time when two of its subsidiaries went bankrupt and the entity's stock was delisted. *Id.* at *2. This allegedly omitted information was reported in print and online media prior to the IPO by "sources with varying readership and reputation and containing varying information." *Id.* at *4. The court denied certification because the plaintiffs could not proffer a "viable method by which to test knowledge on a class-wide basis with common proof" and "[r]esolving liability . . . [would] require the resolution of investor-specific factual issues," creating difficulties with manageability. *Id.* at *5-6.

Here, like in *Vignola,* the allegedly omitted information was in the public record prior to Olaplex's IPO. Information regarding the E.U. lilial ban could be found in online sources which were available to shareholders and the broader market. For example, the SCCS Report itself was readily accessible online as of May 2019. *See*

---

[9] *Vignola* is a Section 12(a)(2) case, but its analysis also applies to Section 11 given that actual knowledge precludes claims under both sections. *See* 5 U.S.C. § 77k(a); 15 U.S.C. § 77l(a)(2). Further, as noted by this Court in its ruling on Defendants' Motions to Dismiss, "the elements of a Section 12 claim largely track those of a Section 11 claim." Dkt. No. 171 at 32.

Ex. 6 (SCCS Report); *see also* Ex. 7 (European Commission opinion on lilial reflecting May 10, 2019 publication).  In August 2020, the E.U. published its May 2020 E.U. Regulation, which provided that the use of lilial in consumer products would be banned entirely as of March 1, 2022.  Compl. ¶¶ 4-5; Ex. 8 .[10]  Industry practitioners like Obelis Group also commented on the forthcoming E.U. ban.  *See* Ex. 10.  The Hong Kong Consumer Council also issued a press release on September 15, 2021 noting that lilial is a contact allergen and presumed to be toxic for human reproduction as classified by the E.U.  *See* Ex. 11.  Additionally, publicly available blog posts discussed the E.U. ban in the months after the IPO.  *See* Ex. 12  & Ex. 13.

In addition, as Plaintiff itself alleges, the changing composition of the No. 3 Product's ingredients was also publicly available—including changes on the physical bottles' labels and on Olaplex's website—with publicly available materials making clear that lilial was removed from the No. 3 Product prior to the IPO.  Specifically, the No. 3 Product page on Olaplex's website removed lilial as a listed ingredient at some point between April 15 and June 28, 2021, months before the September 29, 2021 IPO.  Ex. 14;  Ex. 15  at 5; *see* Compl. ¶¶ 134-35; Ex. 19.  The physical bottle labels were also updated.  *Compare* Ex. 18  at -3586 (listing butylphenyl methylpropional, lilial's chemical name, as an ingredient in the No. 3 product) *with* Ex. 20  at -2225 (not listing lilial).

Plaintiff's reliance on *In re Lyft Inc. Sec. Litig.*, No. 19-cv-02690-HSG, 2021 WL 3711470 (N.D. Cal. Aug. 20, 2021) and *Bos. Ret. Sys. v. Uber Techs., Inc.*, No. 19-cv-06361-RS, 2022 WL 2954937 (N.D. Cal. July 26, 2022) is misplaced.[11]  In those cases, the information that was publicly available prior to the IPO was far more general vis-à-vis the relevant alleged misrepresentations and omissions compared to the

---

[10] The European Commission's regulation dated October 29, 2021, and published online on November 3, 2021, also included lilial among the list of prohibited substances for use in cosmetic products.  *See* Ex. 9 (October 2021 E.U. Regulation) at 2, Annex at 1.

[11] Plaintiff also cites *In re Lehman Bros. Sec. & ERISA Litig.*, No. 09-MD-2017 (LAK), 2013 WL 440622 (S.D.N.Y. Jan. 23, 2013), a nonbinding authority that conflicts with the ruling in *Vignola*, a more recent case in this district.

publicly available information here.   In *Lyft*, the alleged misrepresentations and omissions concerned "pervasive" sexual assault and "severe and pervasive" bike maintenance issues.   2021 WL 3711470, at *5-6.   But the evidence put forth by defendants only reflected a "general awareness" of these issues, and was not sufficient to make investors aware of "the alleged magnitude of the problem." *Id.* at 6.   Similarly, in *Uber*, while some plaintiffs had "awareness of [the] general issue[s]" related to the legality of Uber's business model, its passenger safety record, and its financial condition, the court found that they were not aware of the magnitude of the alleged problems. *Uber*, 2022 WL 2954937, at *1-3.   Here, unlike in *Lyft* and *Uber*, the information available to Olaplex investors prior to the IPO specifically and fully captured the very information that Plaintiff alleges was omitted in the Offering Documents, namely that the E.U. studied and banned lilial for potential safety concerns, Olaplex used lilial in the No. 3 Product, and Olaplex subsequently removed lilial from the No. 3 Product in anticipation of the ban.   Plaintiff has no plausible claim that the information available to Olaplex investors prior to the IPO was "general" in nature or failed to reveal the "magnitude" of a supposed issue, rendering its attempted reliance on *Lyft* and *Uber* inapposite.

Because investors had public access to the specific information that Plaintiff alleges the Defendants omitted from the Offering Documents, and because Plaintiff has not set forth a method to ascertain knowledge on a class-wide basis, Plaintiff "[has not provided sufficient evidence to carry their burden to affirmatively demonstrate that common issues predominate over individualized lack of knowledge issues." *See Vignola,* 2020 WL 1934976, at *5.   Given the need to resolve individualized questions about putative class members' knowledge of the allegedly omitted facts, a class action is not the superior method to resolve the present dispute. *See id.* at *6.   Plaintiff's motion for class certification should be denied in its entirety.

**2.    Investors Had Knowledge of the E.U. Lilial Ban and Olaplex's Reformulation Following February 2022 Tweets and the**

**"Viral" TikTok Videos, Necessitating Additional Individualized Knowledge Inquiries**

Individualized investor knowledge issues also arise with respect to the February 24, 2022 tweets, the February 27, 2022 TikTok videos, and Olaplex's February 28, 2022 social media post in response.  Investors who viewed this content prior to purchasing Olaplex common stock are not entitled to recovery, as they would have had knowledge of the alleged misrepresentations.  Like the information available prior to the IPO in *Vignola*, information bearing on the alleged misrepresentations that is publicly available *after* an IPO can prevent certification.  *Kosmos*, 299 F.R.D. at 152-53.  In *Kosmos*, the court held that the predominance requirement had not been met where information bearing on the alleged misrepresentations was made public after the IPO through company conference calls, press releases, and third-party publications.  *Id.* The court found that defendants met their burden to show "individual knowledge inquiries might be necessary" because "some investors within the putative class may or may not have been aware of this publicly available information based on their varying levels of due diligence . . . [and] sophistication." *Id.*

Here, the February 24, 2022 tweets, the February 27, 2022 TikTok videos, and Olaplex's February 28, 2022 social media post provided all of the allegedly omitted information to the public, on a widespread scale—as Plaintiff's own Complaint concedes with respect to the TikTok videos.  Compl. ¶¶ 197-99.  On February 24, 2022, a Twitter user asked Olaplex about an E.U./U.K. ban on chemicals in its products.  Ex. 16.  Olaplex's official Twitter account responded that day, clarifying that Olaplex no longer produced any products with lilial and that as of January 2022, no distributors had purchased any product containing lilial.  *Id.*  Olaplex also provided a link to safety sheets that listed the ingredients for each of Olaplex's product.  *Id.*  A few days later, the February 27, 2022 TikTok videos discussed the E.U. study and ban on lilial and the fact that the No. 3 Product specifically contained lilial.  Compl. ¶¶ 197-98.  On February 28, 2022, Olaplex posted a video on its Facebook account in response.  *Id.* ¶

201.  The video addressed the E.U. lilial ban, indicated again that Olaplex had not sold products using lilial in the E.U. or U.K. since January 2022, and explained that while the "phase out" of lilial was limited to the E.U. and the U.S. permits the use of lilial, out of an abundance of caution Olaplex had removed lilial from the No. 3 Product globally.  *Id.*; Ex. 17.  Plaintiff's own Complaint acknowledges the large audience that viewed the TikTok videos.  Compl. ¶¶ 197-98.

Unfortunately for Plaintiff, this is not merely a "potential affirmative defense[] that exist[s] only in theory." *See* Pl.'s Memo at 17-18.  Discovery has confirmed the obvious, that some investors approached Olaplex with questions about lilial as a result of these social media posts.  For example, on February 28, 2022, certain investors asked Olaplex about the E.U. lilial ban and "social media backlash surrounding this topic." *See* Ex. 23.  Notably, discovery has also revealed that Plaintiff's investment adviser T. Rowe Price had knowledge of the allegedly omitted facts in at least early March 2022 and in fact maintained its recommendation to purchase Olaplex stock.  *See* Ex. 27 (March 8, 2022 email to T. Rowe Price summarizing key takeaways from Olaplex conference call that included "In last 10 days, misinformation on OLAPLEX has surfaced re Lilial in our products."); Ex. 28 at -0015-16 (March 10, 2022 email from T. Rowe Price circulating analyst report on Olaplex that references "misinformation around a recently removed ingredient," noting that TikTok videos were "based on stale information that Olaplex products contain a fragrance called Lilial," and further noting that "OLPX had already started phasing out the chemical last summer").  Indeed, in its MTD Order, the Court found that the following facts were all readily discoverable by March 2022: the alleged omission of the E.U.'s ban of lilial, Olaplex's reformulation, the supposed risk of harm arising from the lilial issue, and the fact that Olaplex sold old stock containing lilial until January 2022.  *See* Dkt. No. 171 at 34-35.[12]

---

[12] Even though Plaintiff attempts to certify a class without any restrictions related to the timing of investor purchases, Plaintiff does not address reliance beyond the inaccurate oversimplification that "[n]o proof of . . . reliance . . . is required." *See* Pl.'s Memo at 2.  While Section 11 claims generally do not require proof of reliance, *Hildes v. Arthur Andersen LLP*, 734 F.3d 854, 859 (9th Cir. 2013), this is only true "for

Dividing the putative class into sub-classes based on the dates of their purchases is not a viable solution, as it would still necessitate individualized inquiries about knowledge that defeat the purpose of a class action. *See Kosmos*, 299 F.R.D. at 153 (holding that even if it divided the potential class into sub-classes, some of the thousands of members may or may not have been aware of the publicly-available information, creating additional layers of disparate knowledge that would still give rise to many individualized inquiries). Ultimately, given the abundance of information bearing on the alleged misrepresentations that was available to the public both before the IPO and after February 2022, individualized inquiries of each stockholder's knowledge at the time of their purchases will predominate over questions common to the class, precluding class certification. *See Vignola*, 2020 WL 1934976, at *5 (declining to certify Section 12(a)(2) class where knowledge could not be tested on a class-wide basis given alleged omissions were public prior to the IPO); *Kosmos*, 299 F.R.D. at 152-53 (declining certification of Section 11 class where various public disclosures after the IPO necessitated individual knowledge inquiries).

## B.    Any Class Should Be Narrowed to Exclude Purchases After November 12, 2021, When Non-IPO Shares Indistinguishably Commingled with IPO Shares

If, notwithstanding the individualized questions of putative class member knowledge, a class is nonetheless certified, that class should exclude stockholders who purchased Olaplex common stock after non-IPO shares were deposited at DTC and indistinguishably commingled with IPO shares because, after that date, it is not possible to trace any newly purchased shares back to the Registration Statement and

---

investors who have purchased a security within twelve months of the registration statement"—a requirement that Plaintiff ignores. *Loritz v. Exide Techs.*, No. 2:13-cv-02607, 2015 WL 6790247, at *8 n.6 (C.D. Cal. July 21, 2015) (Wilson, J.). Plaintiff fails to address reliance as it relates to purported class members who purchased their securities after approximately August 27, 2022, one year after the effective date of Olaplex's Registration Statement. Not only does Plaintiff fail to address this issue, it also cannot show that none of the members of the proposed class—which spans an undefined time period—will be required to present individualized proof of reliance given the publicly available information about the alleged misrepresentations here. *See Loritz*, 2015 WL 6790247, at *22 (denying class certification as to Section 11 claim).

Prospectus. To succeed on its Section 11 and Section 12(a)(2) claims, as recently confirmed by the Supreme Court and the Ninth Circuit, Plaintiff must "prove that [it] purchased shares traceable to the allegedly defective registration statement [or prospectus, respectively]." *Slack Techs., LLC v. Pirani*, 598 U.S. 759, 770 (2023), *rev'd and remanded to*, *Pirani v. Slack Techs., Inc.*, 127 F.4th 1183, 1191 (9th Cir. 2025). "As the Supreme Court has now made clear, traceability is an element of a Section 11 claim." *Pirani,* 127 F.4th at 1191. Importantly, the Ninth Circuit recently explicitly rejected the theory of "statistical tracing"—which securities plaintiffs previously invoked to establish traceability through statistical inference. *Id.* at 1190. As such, any purported class here must be limited to the period before non-IPO shares began to trade because, as of that date, IPO and non-IPO shares commingled and individual issues of traceability will predominate over class issues. *See Honest*, 2023 WL 3190506, at *5 (even prior to *Slack* and *Pirani*, limiting class to shares acquired prior to the commingling of IPO and non-IPO shares because "[w]ithout a properly cabined class definition, individual class members would be required to prove that they can trace their shares to the IPO," causing individualized assessments to overwhelm common ones); *see also Cupat v. Palantir Techs., Inc.*, No. 22-cv-02384, 2025 WL 1141534, at *17-18 (D. Colo. Apr. 4, 2025) (dismissing complaint for failure to adequately plead standing and noting that *Slack* holds Section 11 plaintiffs "to a strict tracing requirement").

As Defendants' expert Jack Wiener explains,[13] securities held by the investing public are generally deposited at DTC, a registered clearing agency and the nation's largest custodian and securities depository. Ex. 1 at ¶¶ 22, 31. An issuer's stock held by the DTC is registered in "street name," rather than the name of the beneficial owner, and the issuer's stock records list the name of DTC's nominee (Cede & Co.), not the actual investor, as the owner of the shares. Ex. 1 at ¶¶ 33-35. Importantly, the DTC holds deposited shares in "fungible, aggregate bulk," meaning beneficial owners do not

---

[13] Mr. Wiener worked at the DTC for nearly 17 years.

1   own specifically identifiable shares and instead own a pro rata interest in the aggregate

2   number of shares of a particular issuer held in the DTC's fungible bulk. Ex. 1 at ¶¶ 40-

3   47; *see* Ex. 2 (DTC Declaration) at ¶ 6. Courts have recognized DTC's process and

4   the difficulties in establishing traceability that result. *See, e.g.*, *Honest*, 2023 WL

5   3190506, at *3-4 (explaining DTC's process and noting that it "presents a significant

6   issue in this case because there are two distinct 'groups' of shares"); *In re Puda Coal*

7   *Sec. Inc. Litig.*, No. 11-cv-2598 (KBF), 2013 WL 5493007, at *8 (S.D.N.Y. Oct. 1,

8   2013) (holding that the "steps necessarily involving the DTC[] are fatal to

9   traceability").

10       Here, on November 11, 2021, as a result of an option exercise under the 2020

11   Plan and pursuant to Olaplex's Form S-8 Registration Statement, Olaplex authorized

12   AST as its transfer agent and registrar to issue 188,375 shares of its common stock and

13   to deposit them at DTC via DTC's DWAC system for the benefit of Morgan Stanley.

14   *See* Ex. 5; Ex. 22; Ex. 21 at -8366, -8368. On November 12, 2021, both AST and DTC

15   records reflect that 188,375 non-IPO shares were registered in the name of Cede & Co.

16   and added to DTC's fungible bulk, commingling with and becoming indistinguishable

17   from the IPO shares already held by DTC. Ex. 1 at ¶¶ 92-96, 99-100, 105; Ex. 2 at ¶¶

18   4-6; Ex. 24 at -8253; Ex. 25 at -7902-06.

19       After this point, as Defendants' expert explains, it becomes impossible for

20   investors who purchased shares of Olaplex stock to trace the shares acquired in the

21   public market to the Registration Statement. *See* Ex. 1 at ¶ 96 ("[A] commingled blend

22   of IPO Shares and Non-IPO Shares were registered to Cede & Co. and on deposit in

23   DTC's fungible bulk on November 12, 2021, making it impossible to trace shares of

24   Olaplex Stock held by DTC to the Registration Statement as of November 12, 2021.")

25   and ¶ 100 ("It is thus impossible to trace Olaplex Shares held by DTC to the

26   Registration Statement after November 12, 2021."); *see also Honest*, 2023 WL

27   3190506, at*3-4. Moreover, after November 12, 2021, additional non-IPO shares

28   similarly were issued as a result of option exercises and registered in the name of

1    DTC's Cede & Co. and added to DTC's fungible bulk.  Ex. 1 at ¶¶ 75, 98-99.  As of

2    April 8, 2022, a total of 85,558,557 Olaplex shares were held at DTC—compared to

3    the 84,755,000 held as of October 8, 2021.  *Id.* at ¶ 107.

4         Plaintiff seeks to certify a class of all stockholders who purchased Olaplex

5    common stock traceable to the IPO, without any temporal limitation as necessary here

6    to avoid individualized inquiries as to tracing.  Pl.'s Memo at 1.  "Without a properly

7    cabined class definition, individual class members would be required to prove that they

8    can trace their shares to the IPO." *Honest*, 2023 WL 3190506, at *5.  Given "the ability

9    to trace a stock to an IPO is a requirement to state a cognizable injury under Section

10   11," this cannot merely be accomplished during the claims process (as plaintiff's

11   counsel in *Honest* suggested).  *Id.*  Plaintiff's claims are not capable of class-wide

12   resolution because the individualized assessments regarding class members' injury

13   would overwhelm common ones.[14]  *See id.* (narrowing class to end on date on which

14   non-IPO shares became commingled with IPO shares pursuant to an early lock-up

15   release); *see also In re Lendingclub Sec. Litig.*, 282 F. Supp. 3d 1171, 1180, 1188 (N.D.

16   Cal. 2017) (amending the class definition to end on the last date that only IPO shares

17   were available for purchase and noting that, "[w]hile it is possible to trace later-

18   purchased stock to the IPO through individualized proof, the practical value of this

19   limitation is persuasive.").  Plaintiff also cannot benefit from "statistical tracing" given

20   the Ninth Circuit's unambiguous rejection of the theory in *Pirani*.  *See Pirani*, 127

21   F.4th at 1190 (noting that "the theory of statistical tracing is contrary to our precedent"

22   and aligning with "the Fifth Circuit, which has likewise rejected the concept of

23   'statistical tracing' in the context of a Section 11 claim.").  Given the unequivocal

24   _____

25   [14]  Moreover, if the class is not narrowed to November 12, 2021, Plaintiff—which
     purchased the vast majority of its shares after that date—will itself be forced to expend
26   time, effort, and resources putting forth specific, individualized evidence
     demonstrating that its purchases are traceable to the IPO, making Plaintiff's claims and
27   defenses atypical of the class and defeating Rule 23(a)(3).  *See Hanon v. Dataproducts
     Corp.*, 976 F.2d 497, 508 (9th Cir. 1992) (holding that class certification is
28   inappropriate where a putative class representative is subject to unique defenses which
     threaten to become the focus of the litigation).

traceability requirement confirmed by the Supreme Court and Ninth Circuit in *Slack* and *Pirani*, the proposed class must be narrowed to individuals and entities who purchased Olaplex common stock on or before November 12, 2021.[15]

In a likely attempt to head off Defendants' traceability arguments, Plaintiff claims in a footnote that "'ascertainability' will not be an issue in this case due to the ability to obtain discovery from Olaplex and Olaplex's transfer agent," and that the Ninth Circuit "has not adopted a threshold 'ascertainability' or 'administrative feasibility' test." Pl.'s Memo at 9 n.4.[16]  But Plaintiff ignores the inability to trace shares to the Registration Statement once non-IPO shares indistinguishably commingled with IPO shares on a class-wide basis and the individualized inquiries this would necessitate.  Moreover, the Ninth Circuit has stated that it will "address[] the types of alleged definitional deficiencies other courts have referred to as 'ascertainability' issues . . . through analysis of Rule 23's enumerated requirements," which Plaintiff has failed to meet here.  *See Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121, 1124 n.4 (9th Cir. 2017); *see also Brewster v. City of Los Angeles*, No. 14-cv-2257, 2023 WL 5505867, at *5 (C.D. Cal. 2023).

## IV.   CONCLUSION

For the foregoing reasons, the Court should deny class certification or, at a minimum, narrow the class period to purchases on or before November 12, 2021.

---

[15] At the very latest, the class period should be narrowed to March 29, 2022, the date that Olaplex's lock-up agreements expired.  *See In re Talis Biomedical Corp. Sec. Litig.*, No. 22-cv-00105-SI, 2024 WL 536303, at *8-9 (N.D. Cal. Feb. 9, 2024) (holding that class should end on expiration of the lock-up period).

[16] To the extent Plaintiff claims that its proposed class definition already expressly limits the class to those who "purchased or otherwise acquired Olaplex's publicly traded common stock pursuant and/or traceable to the Offering Documents for Olaplex's IPO," the Court should reject this academic argument as it did in *Honest*. *See Honest*, 2023 WL 3190506, at *4-5 (declining certification and imposing a "properly cabined class definition" that limited class to purchases prior to a certain date on traceability grounds, despite the plaintiff's argument that its proposed definition "already expressly limit[ed]" the class to those who can establish that their purchases were pursuant and/or traceable to the IPO).

1

Dated:  June 20, 2025

2

Anne Johnson Palmer
ROPES & GRAY LLP

3

By:  */s/ Anne Johnson Palmer*

4

Anne Johnson Palmer (CSB # 302235)

5

*anne.johnsonpalmer@ropesgray.com*
ROPES & GRAY LLP

6

Three Embarcadero Center

7

San Francisco, California 94111-4006
Tel.: (415) 315-6300

8

Fax: (415) 315-6350

9

Peter Welsh (*pro hac vice*)

10

*peter.welsh@ropesgray.com*

11

ROPES & GRAY LLP
Prudential Tower

12

800 Boylston Street

13

Boston, MA 02199-3600
Tel.: (617) 951-7000

14

Fax: (617) 951-7050

15

Brian R. Blais (pro hac vice)

16

Phillip G. Kraft (pro hac vice)

17

*brian.blais@ropesgray.com*
*phillip.kraft@ropesgray.com*

18

ROPES & GRAY LLP

19

1211 Avenue of the Americas
New York, NY 10036-8704

20

Tel.: (212) 596-9000

21

Fax: (212) 596-9090

22

*Attorneys for Defendants*

23

24

25

26

27

28

# CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for Defendants, certifies that this brief contains 7,000 words, which complies with the limit of Local Rule 11-6.1.

Dated:  June 20, 2025                    Anne Johnson Palmer
                                         ROPES & GRAY LLP


                                         By:  */s/ Anne Johnson Palmer*
                                         Anne Johnson Palmer (CSB # 302235)
                                         *anne.johnsonpalmer@ropesgray.com*
                                         ROPES & GRAY LLP
                                         Three Embarcadero Center
                                         San Francisco, California 94111-4006
                                         Tel.: (415) 315-6300
                                         Fax: (415) 315-6350

                                         Peter Welsh (*pro hac vice*)
                                         *peter.welsh@ropesgray.com*
                                         ROPES & GRAY LLP
                                         Prudential Tower
                                         800 Boylston Street
                                         Boston, MA 02199-3600
                                         Tel.: (617) 951-7000
                                         Fax: (617) 951-7050

                                         Brian R. Blais (pro hac vice)
                                         *brian.blais@ropesgray.com*
                                         Phillip G. Kraft (pro hac vice)
                                         *phillip.kraft@ropesgray.com*
                                         ROPES & GRAY LLP
                                         1211 Avenue of the Americas
                                         New York, NY 10036-8704
                                         Tel.: (212) 596-9000
                                         Fax: (212) 596-9090

                                         *Attorneys for Defendants*