**LABATON KELLER SUCHAROW LLP**
Lauren A. Ormsbee (*pro hac vice*)
Lisa M. Strejlau (*pro hac vice*)
Charles J. Stiene (*pro hac vice*)
140 Broadway
New York, New York 10005
Telephone: (212) 907-0700
Facsimile: (212) 818-0477
lormsbee@labaton.com
lstrejlau@labaton.com
cstiene@labaton.com

*Lead Counsel for Lead Plaintiff Arkansas Teacher Retirement System and the Proposed Class*

**GLANCY PRONGAY & MURRAY LLP**
Robert V. Prongay (SBN 270796)
Charles H. Linehan (SBN 307439)
1925 Century Park East, Suite 2100
Los Angeles, California 90067
Telephone: (310) 201-9150
Facsimile: (310) 432-1495
rprongay@glancylaw.com
clinehan@glancylaw.com

*Liaison Counsel for Lead Plaintiff and for the Proposed Class*

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

LESLIE LILIEN, Individually and on Behalf of All Others Similarly Situated,

   Plaintiff,

v.

OLAPLEX HOLDINGS, INC., et al.,

   Defendants.

Case No. 2:22-CV-08395-SVW-SK

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF LEAD PLAINTIFF'S MOTION FOR CLASS CERTIFICATION**

Date: July 21, 2025
Time: 1:30 p.m.
Courtroom: 10A
Judge: Hon. Stephen V. Wilson

# TABLE OF CONTENTS

I.    INTRODUCTION ............................................................................................ 1

II.    ARGUMENT ................................................................................................. 3

    A.    Defendants Agree That Nearly Every Rule 23 Element Is Satisfied ...... 3

    B.    Defendants' "Truth-on-the Market" Affirmative Defense Raises No Barrier to Certification ................................................................................. 3

        1.    Defendants Present No Evidence Demonstrating Any Investor Had Pre-IPO Actual Knowledge ................................... 4

        2.    Evidence Produced To Date Conclusively Defeats Defendants' Pre-IPO Actual Knowledge Affirmative Defense ... 8

            a.    ATRS Provided Sworn Testimony That It Lacked Actual Knowledge .............................................................. 8

            b.    T. Rowe Price, ATRS's Investment Manager And Olaplex's Single Largest Investor, Provided Sworn Testimony That It Lacked Actual Knowledge ................. 8

            c.    Internal Company Documents Reveal That Olaplex Took Steps To Mask Its Use, Reformulation, and Continued Sales Of Lilial-Tainted Products .................... 10

            d.    Accepting Defendants' Actual Knowledge Defense Would Impose Unprecedented And Unsupported Investigatory Obligations On Investors ........................... 10

        3.    Defendants' Argument That Investors' Actual Knowledge Of Certain Facts Following February 28, 2022 Fails And Poses No Barrier To Certification ......................................................... 11

            a.    Olaplex's Statements About The Safety of Olaplex's Lilial-Tainted Products Was Not Supported By Independent Scientific Data ............................................. 12

            b.    Olaplex Withheld Information Concerning the Lilial Scandal's Immediate And Lasting Impact On Sales ........ 13

    C.    Defendants' Tracing Arguments Fail And The Class Definition Should Not Exclude Post-November 12, 2021 Purchases .................... 14

        1.    All Relevant Registered Olaplex Shares Were Issued Pursuant To A Misleading Registration Statement And Tracing Is Assured ..................................................................... 15

        2.    If Required, Tracing Here Is A Straightforward Exercise That Does Not Require Individualized Inquiries After November 12, 2021 ............................................................................. 18

III.    CONCLUSION ............................................................................................ 21

REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF LEAD PLAINTIFF'S MOTION FOR CLASS CERTIFICATION
Case No. 2:22-CV-08395-SVW-SK

1

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*,
  568 U.S. 455 (2013)..................................................................................................19

*Bos. Ret. Sys. v. Uber Techs., Inc.*,
  2022 WL 2954937 (N.D. Cal. July 26, 2022) ...................................................7

*In re Countrywide Fin. Corp. Sec. Litig.*,
  588 F. Supp. 2d 1132 (C.D. Cal. 2008) ................................................................11

*Cupat v. Palantir Techs., Inc.*,
  2025 WL 1141534 (D. Colo. Apr. 4, 2025) ......................................................18

*In re Dynegy, Inc. Sec. Litig.*,
  226 F.R.D. 263, 283 (S.D. Tex. 2005) .................................................................12

*In re Eagle Comput. Sec. Litig.*,
  1986 WL 12574 (N.D. Cal. Mar. 31, 1986) .......................................................17

*Hildes v. Arthur Andersen LLP*,
  734 F.3d 854 (9th Cir. 2013) ....................................................................................3

*In re Honest Co. Sec. Litig.*,
  2023 WL 3190506 (C.D. Cal. May 1, 2023)......................................................18

*In re IndyMac Mortg.-Backed Sec. Litig.*,
  286 F.R.D. 226 (S.D.N.Y. 2012).............................................................................4

*In re Initial Pub. Offering Sec. Litig.*,
  227 F.R.D. 65 (S.D.N.Y. 2004) .............................................................................17

*Katz v. China Century Dragon Media, Inc.*,
  287 F.R.D. 575 (C.D. Cal. 2012).......................................................................5, 6

*Khoja v. Orexigen Therapeutics, Inc.*,
  899 F.3d 988 (9th Cir. 2018) ....................................................................................5

*In re Kosmos Energy Ltd. Sec. Litig.*,
  299 F.R.D. 133 (N.D. Tex. 2014) ...........................................................................7

REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF LEAD PLAINTIFF'S MOTION
FOR CLASS CERTIFICATION
Case No. 2:22-CV-08395-SVW-SK

2

*In re Lendingclub Sec. Litig.*,
    282 F. Supp. 3d 1171 (N.D. Cal. 2017) .................................................... 18

*Lilien v. Olaplex Holdings, Inc.*,
    765 F. Supp. 3d 993 (C.D. Cal. 2025) ................................................... 1, 3

*In re Lyft Inc. Sec. Litig.*,
    2021 WL 3711470 (N.D. Cal. Aug. 20, 2021) ................................. 4, 5, 6, 7

*N.J. Carpenters Health Fund v. Royal Bank of Scot. Grp., PLC*,
    2016 WL 7409840 (S.D.N.Y. Nov. 4, 2016) ............................................. 6

*Out of the Box Enters., LLC v. El Paseo Jewelry Exchange, Inc.*,
    2011 WL 13135642 (C.D. Cal. Dec. 14, 2011) ......................................... 9

*Pirani v. Slack Techs., Inc.*,
    127 F.4th 1183 (9th Cir. 2025) ......................................................... 17, 18

*In re Puda Coal Sec. Inc. Litig.*,
    2013 WL 5493007 (S.D.N.Y. Oct. 1, 2013) ............................................ 18

*Slack Techs., LLC v. Pirani*,
    598 U.S. 759 (2023) ........................................................................... 17

*In re Snap Inc. Sec. Litig.*,
    2018 WL 2972528 (C.D. Cal. June 7, 2018) ........................................... 11

*In re Snap Sec. Litig.*,
    334 F.R.D. 209 (C.D. Cal. 2019) ............................................... 2, 15, 16

*Sudunagunta v. NantKwest, Inc.*,
    2018 WL 3917865 (C.D. Cal. Aug. 13, 2018) .......................................... 4

*In re Talis Biomedical Corp. Sec. Litig.*,
    2024 WL 536303 (N.D. Cal. Feb. 9, 2024) ............................................. 18

*In re Thornburg Mortg., Inc. Sec. Litig.*,
    683 F. Supp. 2d 1236 (D.N.M. 2010) .................................................... 11

*True Health Chiropractic, Inc. v. McKesson Corp.*,
    896 F.3d 923 (9th Cir. 2018) ................................................................ 5

*United States. v. Banco Cafetero Panama*,
    797 F.2d 1154 (2d Cir. 1986) ........................................................ 20, 21

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

*Vignola v. Fat Brands, Inc.*,
    2020 WL 1934976 (C.D. Cal. Mar. 13, 2020) ........................................................... 6

REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF LEAD PLAINTIFF'S MOTION
FOR CLASS CERTIFICATION
Case No. 2:22-CV-08395-SVW-SK

4

Lead Plaintiff Arkansas Teacher Retirement System ("ATRS") respectfully submits this reply ("Reply") in support of its class certification motion (the "Motion") in response to Defendants' opposition to the Motion (the "Opposition" or "Opp.").[1]

## I.    INTRODUCTION

The Motion demonstrated that ATRS, Lead Counsel, and the proposed Class satisfy each element of Rule 23(a) (numerosity, commonality, typicality, and adequacy) and 23(b)(3) (predominance of common issues and superiority of the class action). Defendants do not challenge and therefore concede that each element of Rule 23(a) is satisfied, and further concede through their silence that common issues with respect to every primary element of ATRS's Securities Act claims (falsity, materiality, and damages) predominate. The Opposition focuses on two narrow questions: (1) will Defendants' truth-on-the-market/actual knowledge affirmative defense, for which they carry the burden of proof, present individualized questions of proof sufficient to defeat Rule 23(b)(3) predominance for the entire Class or for a subset of purchases following November 28, 2022?; and (2) should the Class definition be narrowed to exclude purchases of Olaplex common stock after November 12, 2021?

**The answer to each question is a resounding no.**

As to the first question, the Court warned Defendants just a few months ago that their truth on the market affirmative defense was "intensely fact-specific" and could not be resolved based merely on their claim that "the EU ban was common knowledge at the time of the [September 29, 2021] IPO" without submitting compelling evidence that the omitted information was "transmitted to the public with a degree of intensity and credibility sufficient to effectively counterbalance any misleading impression created by the [statement at issue]." *Lilien v. Olaplex Holdings, Inc.*, 765 F. Supp. 3d

---

[1] Defendants' exhibits submitted with the Opposition are referenced herein as "DX." Plaintiffs' exhibits submitted with the Motion, as well as those attached to the contemporaneously filed Declaration of Lauren A. Ormsbee, are referenced herein as "PX." Capitalized words have the meaning ascribed to them in the Motion.

993, 1010 (C.D. Cal. 2025).[2] In defiance of the Court's clear guidance, Defendants repackage their truth-on-the-market defense, based on similar public documents and arguments raised in their motion to dismiss, claiming that some unidentified "investors' actual knowledge" defeats Rule 23(b)(3) predominance. Opp. at 8-15. Defendants present no new "evidence," submitting only a handful of highly specialized European studies and blog posts that make no mention of Olaplex at all, and which Olaplex itself seems to have been unaware of prior to the IPO. *See* Section II.B.1. Even more disturbing is the fact that Defendants withheld from the Court clear and convincing testimonial and documentary evidence in this case that conclusively disproves their hypothetical theory that any investor, let alone a material number of investors knew, the "truth" pre-IPO (*see* Section II.B.2), or as of February 28, 2022 (*see* Section II.B.3), to raise individualized questions and defeat predominance.

As to the second question, Defendants contend that the Class should be narrowed because of the addition of a comparatively nominal number of registered Olaplex common stock six weeks post-IPO. Opp. at 15-19. Notably, these registered shares, roughly 0.2% of the shares issued in the IPO, were issued pursuant to options exercised through an incentive plan and contemporaneous registration statement discussed in the IPO documents, and which incorporated by reference the contents of the Registration Statement. This Court previously rejected a tracing defense based on these ***exact*** circumstances in *In re Snap Inc. Sec. Litig.*, 334 F.R.D. 209, 224 (C.D. Cal. 2019), as have at least two other courts. Defendants' case citations are inapposite and do not compel a different result. *See* Section II.C.1. In any event, should the Court entertain Defendants' hypothesis that tracing of shares to the IPO after November 12, 2021 is "impossible," ATRS rebuts that argument through the expert testimony of Columbia Law School professor Joshua Mitts, Ph.D., who responds to Defendants' expert and demonstrates how post-November 12, 2021 shares can be traced back to the IPO

---

[2] Unless otherwise noted, emphasis is added and internal citations and quotations marks are omitted throughout.

REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF LEAD PLAINTIFF'S MOTION FOR CLASS CERTIFICATION
Case No. 2:22-CV-08395-SVW-SK

2

issuance. *See* Section II.C.2 & Expert Reply Report of Professor Joshua Mitts, Ph.D (PX D) (the "Mitts Report").

The Motion should be granted in its entirety.

## II.    ARGUMENT

### A.    Defendants Agree That Nearly Every Rule 23 Element Is Satisfied

Defendants have not challenged the elements of numerosity, commonality, typicality, and adequacy, nor have they raised any question as to whether Plaintiff's damages methodology can be calculated on a classwide basis. Motion at 16-17; Coffman Rep. ¶¶14-23 (ECF No. 199-3). Defendants therefore concede that damages in this action are initially calculated pursuant to a statutory formula that is common to all Class members, and that to the extent Defendants later raise any negative causation affirmative defenses, they "bear[] a heavy burden." *Hildes v. Arthur Andersen LLP*, 734 F.3d 854, 860 (9th Cir. 2013). To be clear, Defendants have put forth no evidence to demonstrate the viability of such a defense, and as made clear through some of the evidence submitted by ATRS to rebut Defendants' "actual knowledge" arguments, any attempt to do so will be futile. *See infra* II.B.3.

### B.    Defendants' "Truth-on-the Market" Affirmative Defense Raises No Barrier to Certification

In search of an argument, Defendants repackage their previously rebuffed truth-on-the-market affirmative defense after unsuccessfully arguing at the motion to dismiss stage that "the lilial phaseout was public knowledge, that lilial's inclusion in the No. 3 Product was apparent from its label and the Company's website, and that the Company faced no backlash prior to the IPO." *See* ECF No. 138, at 3, n.3; *Olaplex*, 765 F. Supp. 3d at 1010 (rejecting this "intensely fact-specific" affirmative defense). Now, Defendants essentially repeat, without providing any meaningful new "evidence," the same argument that because "the allegedly omitted information was in fact available to the public and widespread both before Olaplex's IPO and after the February 2022 Tweets, TikTok videos, and Olaplex's social media posts in response, individualized

inquiries into each stockholder's knowledge at the time of their purchases will overwhelm questions common to the class and render the proposed class action unmanageable." Opp. at 9-10. Defendants may put a fresh coat on their same, old paint job, but this perseveration of their recycled truth-on-the-market affirmative defense should be once again rejected for not coming close to meeting their heavy burden of proof. Indeed, while Defendants do not provide any actual "evidence," Lead Plaintiff conclusively demonstrates herein, through sworn deposition testimony and internal Olaplex communications and documents, that **no** putative class member—including ATRS and T. Rowe Price, Olaplex's single largest institutional investor—knew about the E.U. ban on lilial and the material misrepresentations in the Offering Documents prior to the IPO, or the full truth of the concealed information as of February 28, 2022.[3]

### 1. Defendants Present No Evidence Demonstrating Any Investor Had Pre-IPO Actual Knowledge

Defendants misstate what they must prove to establish an actual knowledge defense at class certification, arguing that because some relevant information is findable somewhere in the public record, individualized issues predominate. Opp. at 10. To the contrary, proof of investors' actual knowledge of the truth at the time of acquisition is required. *Sudunagunta v. NantKwest, Inc.*, 2018 WL 3917865, at *6 (C.D. Cal. Aug. 13, 2018). ("[R]ecovery is available under Section 11 to any person acquiring such security (***unless it is proved that <u>at the time of such acquisition</u> he knew of such untruth or omission***).") (emphasis in original). Courts only consider

---

[3] Even if Defendants could present evidence that **some** putative class member knew **some** portion of the concealed information and that raised individual questions—and they have not—they would still have to prove that those questions about "differing levels of knowledge regarding the misleading nature of the statements or omissions" are "**sufficient to outweigh common issues**." *In re IndyMac Mortg.-Backed Sec. Litig.*, 286 F.R.D. 226, 238 & n.95 (S.D.N.Y. 2012) (quoting *Pub. Emps.' Ret. Sys. of Miss. v. Goldman Sachs Grp., Inc.*, 280 F.R.D. 130, 139 (S.D.N.Y. 2012)). At bottom, whether or not Plaintiffs "prevail[] on the merits, the answers to these questions are common to all class members," presenting no barrier to certification here. *In re Lyft Inc. Sec. Litig.*, 2021 WL 3711470, at *7 (N.D. Cal. Aug. 20, 2021).

whether affirmative defenses defeat predominance for defenses "actually advanced and for which [the defendant] has presented evidence," rather than those a defendant "might advance or for which it has presented no evidence." *True Health Chiropractic, Inc. v. McKesson Corp.*, 896 F.3d 923, 931-32 (9th Cir. 2018); *see also Katz v. China Century Dragon Media, Inc.*, 287 F.R.D. 575, 587 (C.D. Cal. 2012). And even where, ***unlike here***, defenses have been legitimately advanced, "courts should consider whether the supporting evidence may be sufficiently similar or overlapping to allow [plaintiff] to satisfy the predominance requirement of Rule 23(b)(3) with respect to those defenses. *Lyft*, 2021 WL 3711470, at *5.

Defendants' "evidence," besides citing to the E.U. ban and similar studies referenced in their motion to dismiss, consists of a handful of highly specialized, non-U.S. online sources that no IPO investor was likely to have seen. This includes copies of a webpage from Belgium-based Obelis Group, an E.U. regulatory compliance consultant, as well as commentary posted by the Hong Kong Consumer Council. *See* DX 10, 11.[4] Even more questionable is Defendants' submission of two European blog posts by a random Polish cosmetic "safety assessor" and a European "cosmetic regulatory services partner," commenting on the E.U. ban in the months ***after*** the IPO, which are arcane, not widely-distributed by any stretch of the imagination, and also completely irrelevant to any investor's pre-IPO knowledge. *See* DX 12-13.[5] Not only is it highly unlikely that any Olaplex investor saw this "evidence" pre-IPO, ***no one*** at Olaplex seems to have circulated or commented on this information as they do not appear in Defendants' own production of documents, which covers the pre-IPO time period. It is without question that if these documents were so "widespread," someone

---

[4] Defendants filed a request for judicial notice of these public documents (ECF No. 204). While ATRS does not object to their inclusion as part of the Court's analysis, the law is clear that the relief sought by Defendants can be granted only with respect to the existence of these documents and not for the truth of the matters asserted therein. *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1003 (9th Cir. 2018).

[5] *See* https://www.cosmeticscare.eu/en/about-me/; https://cosmeservice.com/.

REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF LEAD PLAINTIFF'S MOTION FOR CLASS CERTIFICATION
Case No. 2:22-CV-08395-SVW-SK

5

within Olaplex would have reviewed them and shared them pre-IPO, and the inference may be made that no such dissemination occurred by their absence in Olaplex's own documents.

In assessing investor knowledge as an affirmative defense, the question is whether Defendants can prove "particular members of the class had actual knowledge of the issues specific to the Offering Documents in this case." *N.J. Carpenters Health Fund v. Royal Bank of Scot. Grp., PLC*, 2016 WL 7409840, at *8 (S.D.N.Y. Nov. 4, 2016). Defendants must show "specific statements by certain class members demonstrating specific individual knowledge" of the alleged misstatements and omissions. *Id.* In other words, Defendants must prove, at a minimum, that Lead Plaintiff (or at least some specific other class members) knew that the E.U. prohibited the use of lilial in consumer products, knew the health and safety risks posed by lilial, ***and*** knew that Olaplex used lilial in any one of its eleven products, yet invested anyway. Here, as in *Royal Bank*, it is not enough for Defendants to "rely on news reports and other publicly available information, none of which suggests that any putative class member had unique knowledge as to the alleged misstatements in the Offering Documents." 2016 WL 7409840, at *8; *see also Lyft*, 2021 WL 3711470 at *6 (knowledge of general, public information related to allegations "does not show that all (or any) putative class members had knowledge of the alleged omissions concerning the magnitude of the … particular" issues); *Katz*, 287 F.R.D. at 587 (same).

Defendants' "evidence" does not come close to the publicly available information at issue in *Vignola v. Fat Brands, Inc.*, 2020 WL 1934976 (C.D. Cal. Mar. 13, 2020) (Opp. at 10). In *Vignola*, defendants presented evidence that the binary (yes/no) fact of bankruptcy filings (spanning over ***eight years***) and the company's delisting had been publicly reported in U.S.-disseminated media publications (*i.e.*, *Forbes,* the *Los Angeles Times*) before the IPO. *Id*. at *4. By contrast, here, Defendants cannot point to any document demonstrating that information regarding the E.U. ban and its implications for Olaplex was reported widely anywhere across the globe, let

REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF LEAD PLAINTIFF'S MOTION FOR CLASS CERTIFICATION
Case No. 2:22-CV-08395-SVW-SK

6

alone in the U.S., at any time before the IPO. Defendants' citation to *In re Kosmos Energy Ltd. Sec. Litig.*, 299 F.R.D. 133, 152-53 (N.D. Tex. 2014) is inapposite, where the Court accepted an actual knowledge defense supported by expert testimony because "Lead Plaintiff has presented *zero* evidence showing that class-wide issues predominate." *Id.* at 154. The opposite is true here; Defendants have presented zero evidence, while Lead Plaintiff has presented substantial evidence disproving this affirmative defense, at least at this stage of the litigation.

Defendants fail to distinguish *Boston Retirement System v. Uber Technologies, Inc.*, where the court rejected Defendants' actual knowledge argument even when presented with deposition testimony from the lead plaintiff's investment manager that some employees had "knowledge of pieces of information related to the alleged omissions." 2022 WL 2954937, at *3 (N.D. Cal. July 26, 2022); *see also Lyft*, 2021 WL 3711470, at *6 (rejecting actual knowledge argument despite declarations that reflected a "general awareness that Lyft was subject to some allegations of sexual assault, rather than any knowledge about the alleged magnitude of the problem").

The infirmities of Defendants' argument, sadly, do not even end there. In order to succeed, Defendants must demonstrate that Lead Plaintiff (or some other critical mass of investors) not only knew that the E.U. had banned lilial from all products sold in the E.U. because of the risks it posed to humans, including but not limited to reprotoxic health risks, but also that that fictitious IPO investor, completely on his own initiative, put on a Sherlock Holmes detective cap and made, prior to September 29, 2021, the following investigative leaps sufficient to actually know that:

(1)     Olaplex's top selling product (and as discovery has revealed, ███████ ) contained the banned lilial ingredient through some creative and well-timed visits to Olaplex's online list of ingredients and retail shelves (Opp. at 11; DX 14-15, 18-19);

(2)     despite the EU ban and health risks posed by lilial, this investor also knew that Olaplex had decided to sell off its inventory of lilial-tainted products at

REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF LEAD PLAINTIFF'S MOTION FOR CLASS CERTIFICATION
Case No. 2:22-CV-08395-SVW-SK

7

the time of the IPO and well into 2022 in the US, EU and globally; and, finally,

(3)    that Olaplex's prior and continued sale of lilial-tainted products at the time of the IPO and in the months thereafter posed a direct risk to the Company's reputation, sales, and future revenues.

No such investor exists, defeating Defendants' predominance challenge.

### 2.    Evidence Produced To Date Conclusively Defeats Defendants' Pre-IPO Actual Knowledge Affirmative Defense

Addressing Defendants' argument amounts to a colossal waste of ATRS's and this Court's resources. Indeed, Defendants' exact argument was rejected, just four months ago, and Defendants present no meaningful new evidence in support. To the contrary, Defendants have elicited evidence, through two depositions and the production of documents, that destroys their argument, yet they refused to address any of that evidence, fully known to Defendants, in their Opposition. Lead Plaintiff will address some of this evidence disproving the actual knowledge affirmative defense below.

#### a.    ATRS Provided Sworn Testimony That It Lacked Actual Knowledge

ATRS's Executive Director testified in his June 9, 2025 deposition that *no one at ATRS* was aware of the lilial ban or the fact that Olaplex had reformulated the No. 3 product at any point before shares of Olaplex were purchased on ATRS's behalf. PX E at 48:4-8. ATRS further testified that it had no knowledge to support that its investment managers were aware of the lilial ban before purchasing Olaplex shares on ATRS's behalf. *Id*. at 46:19-47:5.

#### b.    T. Rowe Price, ATRS's Investment Manager And Olaplex's Single Largest Investor, Provided Sworn Testimony That It Lacked Actual Knowledge

Defendants' opposition is similarly devoid of any mention of the June 17, 2025 testimony of T. Rowe Price—one of ATRS's investment managers who was also the

REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF LEAD PLAINTIFF'S MOTION
FOR CLASS CERTIFICATION
Case No. 2:22-CV-08395-SVW-SK

8

single largest non-insider institutional investor in Olaplex as of the quarter in which Olaplex's IPO occurred. PX F ███████████████████████████████ ██████████████████████. The T. Rowe Price analyst responsible for making investment recommendations on Olaplex's IPO and thereafter—who conducted significant research and participated in calls with Defendants Wong and Tiziani leading up to the IPO—testified that she *had no knowledge of the EU ban, of lilial, or Olaplex's use of lilial* at the time of the IPO or at anytime thereafter until the news started to become public. PX G at 43:6-12; 66:3-9. The analyst further testified that she did not know that Olaplex's No. 3 Hair Perfector contained lilial in its ingredient list at any time prior to the IPO (until the lilial controversy was first exposed), that there had been a scientific study that deemed lilial to be unsafe for use in products in the E.U., or that the lilial-tainted No. 3 product was still being sold at the time of the IPO. *Id.* at 102:10-103:13; 121:18-122:10. Notably, the analyst testified that in her pre-IPO one-on-one discussions with Defendants Wong and Tiziani, neither Defendant raised with her the fact that any of Olaplex's products contained lilial, that there was a ban of any Olaplex-used ingredients in the E.U. that would prevent Olaplex from continuing to sell its lilial-tainted products in the E.U., or that the Company had already reformulated (but continued to sell) certain products with lilial. *Id.*

This evidence is fatal to Defendants' actual knowledge argument, and their decision to repeat this argument and not provide the Court with this evidence violates their duty of candor.[6]

---

[6] Defendants' decision to withhold from the Court this direct evidence contradicting their affirmative defense—elicited by them in the eleven days prior to the Opposition's filing—should be admonished. *See Out of the Box Enters., LLC v. El Paseo Jewelry Exchange, Inc.*, 2011 WL 13135642 (C.D. Cal. Dec. 14, 2011) (finding sanctions appropriate where defendants made factual contentions contrary to the evidence and renewed, without basis, arguments following the court's "unambiguous rejection of these arguments" in a prior order denying defendants' motion to dismiss).

REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF LEAD PLAINTIFF'S MOTION FOR CLASS CERTIFICATION
Case No. 2:22-CV-08395-SVW-SK

9

c.   **Internal Company Documents Reveal That Olaplex Took
Steps To Mask Its Use, Reformulation, and Continued Sales
Of Lilial-Tainted Products**

Internal company documents further defeat Defendants' contention that
Olaplex's use of lilial, its reformulation of the No. 3 Hair Perfector (███████
███████), and the impact of the E.U.'s ban on lilial on the Company were known
before the IPO. Although the Company sought to hide the E.U. ban and subsequent
reformulation from investors through a █████████████ of lilial-tainted to lilial-free
products (PX H), ████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████ PX I. At the same time, ████████████
████████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████████
██████████████████████████████ PX J.

In addition to failing to tell investors that it had reformulated the No. 3 product,
Olaplex decided not to █████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████████
████████████ *See* PX K ████████████████████████████████████████
████████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████████
██████████████████ PX L.

d.   **Accepting Defendants' Actual Knowledge Defense Would
Impose Unprecedented And Unsupported Investigatory
Obligations On Investors**

To endorse Defendants' argument is to task a reasonable investor with the heavy
burden of undertaking an intensive investigation far outside the four corners of the
Registration Statement to determine whether Olaplex was misleading its investors. This

is wholly inconsistent with the law. *See, e.g., In re Countrywide Fin. Corp. Sec. Litig.*, 588 F. Supp. 2d 1132, 1160 (C.D. Cal. 2008) ("complexity" of public information precludes truth-on-the-market defense). This is particularly true where, as here, "the only pertinent representations are those made within the four corners of the issuers' offering documents or in documents expressly incorporated therein." *In re Thornburg Mortg., Inc. Sec. Litig.*, 683 F. Supp. 2d 1236, 1248 (D.N.M. 2010); *In re Snap Inc. Sec. Litig.*, 2018 WL 2972528, at *7 (C.D. Cal. June 7, 2018) (denying defense where "any credibility these rumors had could have been counteracted by the [] S–1, which unequivocally directed investors ***not*** to consider any information beyond the four corners of the S–1").

### 3. Defendants' Argument That Investors' Actual Knowledge Of Certain Facts Following February 28, 2022 Fails And Poses No Barrier To Certification

Defendants alternatively seek to shorten the Class definition to exclude purchases of Olaplex shares after February 28, 2022, following the initial "tweets", TikTok videos and a response posted by Olaplex on its social media account. Opp. at 12-15 (citing ¶¶197-99). Defendants argue, ***without evidence***, that those sources "provided all of the allegedly omitted information to the public, on a widespread scale" such that each Olaplex investor after February 28, 2022 was fully and completely informed as to the falsity of the IPO statements and omissions concerning "the E.U.'s ban of lilial, Olaplex's reformulation, the supposed risk of harm arising from the lilial issue, and the fact that Olaplex sold old stock containing lilial until January 2022." Opp. at 13-14. As the Complaint alleges, and evidence developed to date clearly shows, investors lacked such "actual knowledge" of the truth, largely because Olaplex embarked on a campaign to withhold key information from investors following February 28, 2022 to maintain investor confidence. That incomplete and at times, affirmatively misleading information, concerned ███████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF LEAD PLAINTIFF'S MOTION
FOR CLASS CERTIFICATION
Case No. 2:22-CV-08395-SVW-SK

11

1    ████████████████████████████████████████████████ This

2    evidence, some of which is highlighted below, defeats Defendants' argument because

3    no reasonable investor could have known the below facts as of February 28, 2022. *See*

4    *In re Dynegy, Inc. Sec. Litig.*, 226 F.R.D. 263, 283 (S.D. Tex. 2005) ("Defendants have

5    not cited and the court has not found any case that has relied on the negative causation

6    defense to limit a putative class at the class certification stage of litigation.").

7           a.    **Olaplex's Statements About The Safety of Olaplex's Lilial-Tainted Products Was Not Supported By Independent Scientific Data**

8

9

10          Beginning in March 2022, Olaplex scrambled internally to address the negative

11   backlash and do damage control. Defendant ████████████████████████

████████████████████████████████████████████████████

12   ████████████████████████████████████████████████████

13   ████████████████████████████████████████████ PX M. As

14   Olaplex attempted to overcome the negative backlash, the unavoidable harms posed by

     the lilial news stood as roadblocks. As part of their ████████████, Defendant

15   Wong made prepared remarks during Olapex's March 8, 2022 earnings call that

16   addressed Olaplex's use of lilial, stating, for example, that "***independent medical and***

17   ***chemist experts have confirmed*** that the very small amount of lilial, 0.0119%,

18   previously used by OLAPLEX in its rinse-off No. 3 Hair Perfector product, had no

19   impact on fertility and the reproductive system." ¶211. Evidence shows that ████

20   ████████████████████████████, and there was ████████████████

21   ████ For example, in a ████████████████████████████████████

22   ████████████████████████████████████████████████████████

23   ████████████████████████████████████████████████████████

24   ████████████████████████████████████████████████████████

25   ████████████████████████████████████████████████████████

26   ████████████████████████' PX N. Indeed, in a later email exchange, ████████

27   ████████████████████████████████████████████████████████

28   ████████████████████████████████████████████████████████



" PX O. In a later email exchange,

" Indeed, Olaplex's attempts to

" PX P.

" *Id.* at -54038.

Discovery is underway. At this stage, and based on this evidence, Defendants' claim that their information released to the public as of February 28, 2022 "provided all of the allegedly omitted information to the public . . . about the supposed risk of harm arising from the lilial issue" (Opp. at 13-14), when Defendants were continuing to                                                                              , lacks credibility, and certainly is insufficient to sustain their actual knowledge affirmative defense to certification at this stage.

### b. Olaplex Withheld Information Concerning the Lilial Scandal's Immediate And Lasting Impact On Sales

As alleged in the Complaint, Olaplex sales and revenue were directly, and immediately, impacted by the lilial controversy (¶¶16, 144-53), but the Company did not disclose that impact and those impacted sales numbers until later in 2022, in connection with the Company's second and third quarter earnings results. ¶¶230-35, 243-50. For example, Defendants immediately minimized the impact of the truth related to the lilial omissions in the Registration Statement, and as late as June 22, 2022, Defendant Wong continued this misinformation, stating to *Vogue* that "The impact [on

REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF LEAD PLAINTIFF'S MOTION FOR CLASS CERTIFICATION
Case No. 2:22-CV-08395-SVW-SK

13

sales] was very minimal, because of the mitigating factors that we implemented." *See, e.g.*¶¶ 212-17, 227.

Therefore, contrary to Defendants' assertion in the Opposition, the extent and materiality of the previous omissions concerning risks to the Company's business were not known to Olaplex investors as of February 28, 2022.  Moreover, ██████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

███████████████████████████████. *See, e.g.*, PX Q at -154887

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████ PX R ██████████████████████████████

████████████████████████████████████████████

██████████████ PX S ████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

██████████████████████.

These types of documents, which are a drop in the bucket, disprove, at least at this stage, Defendants' assertion that any investors' "actual knowledge" as of February 28, 2022 creates individualized issues defeating predominance.

### C.    Defendants' Tracing Arguments Fail And The Class Definition Should Not Exclude Post-November 12, 2021 Purchases

In addition to their repackaged and woefully deficient truth-on-the-market/actual knowledge arguments, Defendants next ask the Court to narrow the Class definition and "effectively inoculate [Olaplex] against . . . potential Section 11 liability it might face for misstatements or omissions in its registration statement" based on a tracing

argument that is as weak as the one this Court already rejected in *Snap*. *See Snap*, 334
F.R.D. at 224 (refusing to limit the Class definition because 100,000 registered shares
from an option exercise entered the open market days after the IPO registered 200
million shares).

Defendants' arguments fail for two independent reasons. ***First***, here, where the
registered shares that entered the market weeks following the IPO were specifically
discussed in the IPO Offering Documents and were contemporaneously registered
pursuant to a Form S-8 that incorporated by reference the IPO Offering Documents'
misleading misrepresentations and omissions, IPO tracing has not been severed and
classwide tracing is established. ***Second***, even if the Court accepts that Olaplex shares
purchased after November 12, 2021 must trace back directly to those shares issued on
the day of the IPO, Plaintiff has established that such tracing may be done on a
classwide basis without defeating predominance.

### 1. All Relevant Registered Olaplex Shares Were Issued Pursuant To A Misleading Registration Statement And Tracing Is Assured

The Olaplex IPO was conducted pursuant to (i) a registration statement on Form
S-1, which, following several amendments, was declared effective by the SEC on
September 29, 2021 (the "Registration Statement"), and (ii) an October 1, 2021
prospectus on Form 424(b)(4) (the "Prospectus"), "which is considered part of the
Registration Statement." *See* Wiener Rep., ¶2; *see also* ¶155; DX 3-4. 84,755,000
shares of Olaplex common stock began trading in the open market on September 29,
2021, and on October 4, 2021, Olaplex completed its IPO. Wiener Rep., ¶67.
Defendants specifically discussed in the Registration Statement, in a section titled
"Registration Statement on Form S-8," that Olaplex would file "as promptly as possible
after the completion of this offering" a "Form S-8 registration statement to register all
of the shares of common stock subject to outstanding stock options and the shares of
common stock subject to issuance under the 2020 Plan and the 2021 Plan [stock
incentive plans]." *See* DX 4 at 164. On October 4, 2021, the day the IPO closed, as

promised, Defendants filed a Form S-8 registration statement registering stock option shares that would later vest and, if exercised, would be registered and tradeable. *See* DX 5; Wiener Rep. ¶68. That Form S-8, issued by Olaplex and signed by all Individual Defendants plainly and simply "incorporated herein by reference" the entirety of the IPO Registration Statement and prospectus. *See* DX 5, Item 3. On November 12, 2021, six weeks post-IPO and one year before this Action was initiated, on November 12, 2021, DTC records show a direct deposit of 188,375 shares—a number equal to 0.2% of the 84.75 million shares issued in the IPO—into the account of Morgan Stanley Smith Barney. Mitts Rep., ¶65; DX 21-22 (reflecting that these shares were options exercised by two individuals in connection with the 2020 Plan).

Defendants ignore the incorporation by reference of the IPO Registration Statement in the Form S-8, but rather, cling to a hyper-technical claim that the Class of eligible purchasers must be narrowed once registered shares, rendered defective by the same misrepresentations, are available for sale. In so doing, Defendants treat the need to separate and trace each post-November 12, 2021 share as a *fait accompli*, while concealing that courts (including this Court), ***facing this exact circumstance***, have rejected the need to trace shares at all, at least prior to the expiration of a lock-up period (here, 180 days post-IPO, or March 29, 2022), when unregistered insider shares may have begun to enter the open market for registered shares.

Indeed, this ***same scenario*** was also present in *In re Snap Securities Litigation*, where this Court rejected defendants' attempted imposition of a post-IPO tracing requirement and refused to sever traceability where an investor was allowed to sell 100,000 non-IPO shares into the open market when those shares were registered through an S-8. *See* 334 F.R.D. 223-24; *see also* PX T at 20, n.21. This Court should once again reject this attempt to unjustly "inoculate" defendants from liability by narrowing the Class definition to only those who purchased Olaplex common stock prior to November 12, 2021.

REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF LEAD PLAINTIFF'S MOTION FOR CLASS CERTIFICATION
Case No. 2:22-CV-08395-SVW-SK

16

1    Other courts have come to the same conclusion without relying on any

2  alternative tracing methodology, and the Court should do the same here. In *In re IPO*,

3  the district court assessed whether classes of investors should be certified in six "test"

4  cases in a consolidated action challenging hundreds of IPOs. *See, e.g. In re Initial Pub.*

5  *Offering Sec. Litig.*, 227 F.R.D. 65, 71 (S.D.N.Y. 2004), *vacated and remanded sub*

6  *nom. In re Initial Pub. Offerings Sec. Litig.*, 471 F.3d 24 (2d Cir. 2006), *decision*

7  *clarified on denial of reh'g sub nom. In re Initial Pub. Offering Sec. Litig.*, 483 F.3d 70

8  (2d Cir. 2007) ("*In re IPO*"). Defendants in those six test cases challenged certification

9  on multiple grounds including tracing. *Id.* at 117-20. In two of the six test cases, the

10  court faced the exact scenario present here: defendants attempted to narrow the class

11  of purchases to a period shorter than the post-lock up period because "shares issued

12  pursuant to employees' exercise of stock options" that were registered in Forms S-8

13  that "explicitly incorporated the contents of the IPO prospectuses" entered the market

14  pre-lock up expiration. *Id.* at 119 & n. 406-08. Applying a good dose of logic and the

15  plain requirements of Section 11, the court rejected this argument, finding that a

16  plaintiff has satisfied the tracing requirement of Section 11 because the S-8's

17  incorporation of the S-1 ensured that "every such offering was defective." *Id.* at 119.

18  Similarly, *In re Eagle Computer Securities Litigation*, the court found that shares

19  issued pursuant to an IPO registration statement and a subsequent registration of shares

20  issued in connection with an incentive stock option plan that incorporated by reference

21  the IPO registration statement, mooted defendants' tracing defense because " all the

22  shares are Section 11 shares issued pursuant to a defective registration statement and

23  no tracing is required." 1986 WL 12574, at *9 (N.D. Cal. Mar. 31, 1986).

24    The cases cited by Defendants (Opp. at 15-19) can all be meaningfully

25  distinguished. The Supreme Court and Ninth Circuit's decisions in *Slack* address

26  tracing of *unregistered* securities issued in simultaneous IPO and direct listing

27  offerings without any statement fully incorporating the S-1 language for both

28  issuances. *See Slack Techs., LLC v. Pirani*, 598 U.S. 759, 764 (2023) ("*Slack I*"); *Pirani*

*v. Slack Techs., Inc.*, 127 F.4th 1183, 1187 (9th Cir. 2025) ("*Slack II*"). Moreover, while the Ninth Circuit expressed skepticism as to the viability of "statistical tracing" between registered and unregistered shares, the Ninth Circuit refused to fully address the argument because plaintiff initially alleged that tracing was "impossible" and therefore waived any arguments putting forth a tracing methodology. *Slack II*, 127 F.4th at 1189-90. Plaintiff made and makes no such concession here, as discussed below.

Defendants' few additional cases are also inapposite. *See In re Honest Co. Sec. Litig.*, 2023 WL 3190506, at *4-6 (C.D. Cal. May 1, 2023) (narrowing class definition to exclude purchases after expiration of the lockup of unregistered insider shares where plaintiff did not make any attempt to show how to trace shares after that date ); *Cupat v. Palantir Techs., Inc.*, 2025 WL 1141534, at *17-18 (D. Colo. Apr. 4, 2025) (finding, on a motion to dismiss without the benefit of discovery, that plaintiff did not sufficiently allege that his own purchases could be traced to a registration statement and therefore lacked standing to proceed); *In re Puda Coal Sec. Inc. Litig.*, 2013 WL 5493007, at *7 (S.D.N.Y. Oct. 1, 2013) (same). Other cases cited by Defendants lend some support. For example, the court in *In re Talis Biomedical Corp. Securities Litigation* conditionally narrowed the class definition but allowed plaintiff to move to expand the class after providing evidence of tracing from DTC and related records. 2024 WL 536303, at *9 (N.D. Cal. Feb. 9, 2024); *see also In re Lendingclub Sec. Litig.*, 282 F. Supp. 3d 1171, 1180 (N.D. Cal. 2017) (finding all shares purchased before the expiration of the 180-day lockup period were traceable to the IPO, and that the sale of those shares could be identified later by applying the last in, first out ("LIFO") methodology).

### 2. If Required, Tracing Here Is A Straightforward Exercise That Does Not Require Individualized Inquiries After November 12, 2021

As discussed above, the performance of any tracing analysis of purchases made on November 12, 2021 and thereafter, at least prior to the termination of the "lockup"

REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF LEAD PLAINTIFF'S MOTION FOR CLASS CERTIFICATION
Case No. 2:22-CV-08395-SVW-SK

18

period on March 29, 2022, is simply not required, rendering Defendants' argument, and the report of their expert Jack Wiener, irrelevant. If Defendants' argument is entertained by the Court, however, it should likewise be rejected. Despite Defendants' best attempts to argue that traceability is "impossible" (Opp. at 15-17), the Expert Reply Report of Professor Joshua Mitts, Ph.D ("Mitts Report," PX D) explains that: (i) the Expert Report of Jack R. Wiener ("Wiener Report," ECF No. 203-1) is unreliable; (ii) records produced in discovery make it possible to identify which members of the proposed class purchased IPO shares after November 12, 2021; and (iii) determining which members of the proposed class purchased IPO shares of Olaplex common stock after November 12, 2021 on a class-wide basis is a straightforward exercise.

For one, the Wiener Report is irrelevant at this stage of the litigation. Nothing in the Wiener Report even suggests that tracing requires individualized evidence of purchases by individual members of the Proposed Class. Rather, Mr. Wiener's entire theory—namely, that tracing for Section 11 purposes is "impossible" once post-IPO shares are registered to the DTC at a transfer agent—is a quintessential example of a Class-wide common question. If Mr. Wiener is correct (and he is not), then no purchaser of Olaplex shares on November 12, 2021 and thereafter would have standing. That "would end the case for one and for all" for these purchasers and "no claim would remain in which individual [] issues could potentially predominate." *Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 468 (2013). All the class-wide issues raised in the Wiener Report are "properly addressed at trial or in a ruling on a summary-judgment motion." *Id.* at 470.

Moreover, as the Mitts Report explains, the Wiener Report is premised on a fictitious figment of the imagination that IPO shares were somehow "blended" with post-IPO shares. Mitts Report at Section III. But "shares are held by individual DTC participants and the movement of these discrete, identifiable shares is tracked and maintained in detailed transaction-based records." Mitts Report at ¶27. The Wiener Report's "wine vat" analogy is colorful but inapposite. As Mr. Wiener ███████

█████████ in this action, PX U at 42:13-43:17; 61:21-62:23, █████████

█████, and it is well-settled law in this circuit that credits of cash deposits into bank accounts are "traceable proceeds" notwithstanding the fungibility of bank notes. *United States. v. Banco Cafetero Panama*, 797 F.2d 1154, 1158 (2d Cir. 1986). So also with securities deposited to DTC participant accounts.

Mr. Wiener also failed to request the relevant transactional data from the DTC, notwithstanding his apparent control over discovery requests. Mitts Report at ¶60.[7] This transactional data shows that it is logically impossible for certain DTC participants (and their customers) to have received Non-IPO Shares on certain dates prior to the lock-up expiration. For example, on November 15, 2021, after the lock-up had expired, the Mitts Report identifies at least two DTC custodians who could not have held post-IPO shares. Mitts Report at ¶¶69-74. And for nine trading days thereafter, DTC records indicate that PNC Bank, N.A. did not receive non-IPO shares from other market participants in purchases. *Id.*

Of particular importance for class certification, it is straightforward to trace transfers of non-IPO Shares to other DTC participant accounts on a Class-wide basis. Mitts Report at Sections IV, V. DTC records often indicate unambiguously that a given market participant holds IPO shares. But if it is necessary to employ a widely accepted accounting methodology like last in-first out (LIFO) or first in-first out (FIFO) to determine whether a given DTC participant (or their customers) received IPO Shares, that would not amount to "statistical tracing" or involve probabilistic reasoning. Mitts Report at Section IV.C. Just as LIFO and FIFO are widely applied to trace the flow of

---

[7] In addition to directing the scope of the limited documents requested from DTC to support his pre-determined conclusions, ████████████████████████ ███████████████ included in the Bria Declaration (DX 2). However, ████████████████████████████████████████████████████ ████████████████████████████████████████████████████ ████████████████████████████████████████████████████ ████████████████████████████████████ *see also* Mitts Report, ¶20 n.21.

REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF LEAD PLAINTIFF'S MOTION
FOR CLASS CERTIFICATION
Case No. 2:22-CV-08395-SVW-SK

20

assets through commingled accounts, *Banco Cafetero*, 797 F.2d at 1159, so these methods also yield a single conclusion regarding who owns each share at each point in time. To reject the application of accounting methods is to draw the absurd conclusion that it is impossible to identify a single purchaser of IPO Shares, notwithstanding that over 84 million shares were sold in the IPO.

This Court should reject Mr. Wiener's invitation to deny reality. To the extent that the Court requires a distinct tracing requirement for shares purchased after November 12, 2021, such an exercise can be accomplished using available documentation and without raising individualized issues defeating predominance.

## III.    CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court grant the Motion.

Dated: June 27, 2025

**LABATON KELLER SUCHAROW LLP**
By:   */s/ Lauren A. Ormsbee*
Lauren A. Ormsbee

Lauren A. Ormsbee (*pro hac vice*)
Lisa M. Strejlau (*pro hac vice*)
Charles J. Stiene (*pro hac vice*)
140 Broadway
New York, New York 10005
Telephone: (212) 907-0700
Facsimile: (212) 818-0477
lormsbee@labaton.com
lstrejlau@labaton.com
cstiene@labaton.com

*Lead Counsel for Lead Plaintiff*
*and for the Proposed Class*

GLANCY PRONGAY & MURRAY LLP
Robert V. Prongay (SBN 270796)
Charles H. Linehan (SBN 307439)
1925 Century Park East, Suite 2100
Los Angeles, California 90067
Telephone: (310) 201-9150
Facsimile: (310) 432-1495
rprongay@glancylaw.com
clinehan@glancylaw.com

REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF LEAD PLAINTIFF'S MOTION
FOR CLASS CERTIFICATION
Case No. 2:22-CV-08395-SVW-SK

21

1

2    *Liaison Counsel for Lead Plaintiff and for the Proposed Class*

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for Lead Plaintiff ATRS, certifies that this brief contains less than 7,000 words, which complies with the limit of Local Rule 11-6.1.

Dated: June 27, 2025

**LABATON KELLER SUCHAROW LLP**
By: _/s/ Lauren A. Ormsbee_
Lauren A. Ormsbee

Lauren A. Ormsbee (*pro hac vice*)
Lisa M. Strejlau (*pro hac vice*)
Charles J. Stiene (*pro hac vice*)
140 Broadway
New York, New York 10005
Telephone: (212) 907-0700
Facsimile: (212) 818-0477
lormsbee@labaton.com
lstrejlau@labaton.com
cstiene@labaton.com

*Lead Counsel for Lead Plaintiff*
*and for the Proposed Class*

GLANCY PRONGAY & MURRAY LLP
Robert V. Prongay (SBN 270796)
Charles H. Linehan (SBN 307439)
1925 Century Park East, Suite 2100
Los Angeles, California 90067
Telephone: (310) 201-9150
Facsimile: (310) 432-1495
rprongay@glancylaw.com
clinehan@glancylaw.com

*Liaison Counsel for Lead Plaintiff and for the*
*Proposed Class*

REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF LEAD PLAINTIFF'S MOTION FOR CLASS CERTIFICATION
Case No. 2:22-CV-08395-SVW-SK

23