# EXHIBIT T

**KESSLER TOPAZ**
**MELTZER & CHECK, LLP**
JENNIFER L. JOOST (Bar No. 296164)
jjoost@ktmc.com
STACEY M. KAPLAN (Bar No. 241989)
skaplan@ktmc.com
JENNY L. PAQUETTE (Bar No. 321561)
jpaquette@ktmc.com
NICOLE T. SCHWARTZBERG (Bar No. 326212)
nschwartzberg@ktmc.com
One Sansome Street, Suite 1850
San Francisco, CA 94104
Telephone: (415) 400-3000
Facsimile: (415) 400-3001

*Attorneys for Lead Plaintiffs Smilka*
*Melgoza, as trustee of the Smilka Melgoza*
*Trust U/A DTD 04/08/2014, Rediet Tilahun,*
*Tony Ray Nelson, Rickey E. Butler, and Alan*
*L. Dukes, additional named Plaintiffs*
*Donald R. Allen and Shawn B. Dandridge,*
*and Lead Counsel for the Putative Class*

[Additional counsel on signature page.]

# UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

## WESTERN DIVISION

| | |
|---|---|
| IN RE SNAP INC. SECURITIES LITIGATION<br><br>This Document Relates To: All Actions. | Case No. 2:17-cv-03679-SVW-AGR<br><br>**CLASS ACTION**<br><br>**REPLY IN FURTHER SUPPORT OF LEAD PLAINTIFFS' MOTION FOR CLASS CERTIFICATION**<br><br>Date:      August 5, 2019<br>Time:     1:30 p.m.<br>Courtroom:  10A, 10th Floor<br>Judge:     Hon. Stephen V. Wilson |

**REDACTED VERSION OF DOCUMENT**
**PROPOSED TO BE FILED UNDER SEAL**

# **TABLE OF CONTENTS**

**Page**

I.    INTRODUCTION .................................................................................................. 1

II.   ARGUMENT ........................................................................................................ 3

    A.   Defendants Concede that a Class Should Be Certified ................................. 3

    B.   Rule 23(a)(4) Is Satisfied: The Class Is Adequately Represented ................. 4

    C.   Rule 23(a)(3) Is Satisfied: Plaintiffs' Claims Are Typical ........................... 7

    D.   Plaintiffs' Exchange Act Claims Should Not Be Narrowed .......................... 9

    E.   Rule 23(b) Is Satisfied: Common Questions of Law and Fact Predominate Over Plaintiffs' Securities Act Claims ................................... 13

        1.   Plaintiffs' Section 11 Claims Are Timely ........................................ 13

        2.   Traceability Has No Bearing on Class Certification Where the Class Representatives Indisputably Have Statutory Standing ............ 17

        3.   Plaintiffs' Section 11 Damages Methodology Satisfies *Comcast* ...... 20

        4.   Plaintiffs Need Not Prove Loss Causation at Class Certification ...... 23

        5.   The Court Should Reject Defendants' Third Attempt to Relitigate "The Time Suit Was Brought" .......................................... 24

III.  CONCLUSION .................................................................................................. 25

REPLY IN FURTHER SUPPORT OF LEAD PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Affiliated Ute Citizens of Utah v. United States*,
  406 U.S. 128 (1972)................................................................................................. 3

*Am. Pipe & Const. Co. v. Utah*,
  414 U.S. 538 (1974).........................................................................................*passim*

*Amgen v. Conn. Ret. Plans & Trust Funds*,
  568 U.S. 455 (2013)................................................................................ 10, 13, 19

*Angley v. UTi Worldwide Inc.*,
  311 F. Supp. 3d 1117 (C.D. Cal. 2018) ...................................................... 22

*In re AOL Time Warner, Inc. Sec. & "ERISA" Litig.*,
  381 F. Supp. 2d 192 (S.D.N.Y. 2004) ........................................................ 25

*In re Apollo Grp., Inc. Sec. Litig.*,
  2010 WL 5927988 (9th Cir. 2010), *cert. denied*, 131 S. Ct. 1602 (2011) ................... 12

*Armendariz v. Santa Fe Cty. Bd. of Commissioners*,
  331 F. Supp. 3d 1245 (D.N.M. 2018) ......................................................... 16

*Baker v. Seaworld Entm't, Inc.*,
  2017 WL 5885542 (S.D. Cal. Nov. 29, 2017)......................................... 10, 23

*In re Barclays Bank PLC Sec. Litig.*,
  2016 WL 3235290 (S.D.N.Y. June 9, 2016) ............................................. 25

*Basic Inc. v. Levinson*,
  485 U.S. 224 (1988)........................................................................................3, 9

*Betances v. Fischer*,
  2019 WL 1213146 (S.D.N.Y. Feb. 21, 2019) ..................................... 15, 16

*Blackie v. Barrack*,
  524 F.2d 891 (9th Cir. 1975) ........................................................................ 24

*Blake v. JP Morgan Chase Bank NA*,
  2019 U.S. App. LEXIS 18370 (3d Cir. June 19, 2019)............................... 16

*In re Bridgepoint Educ., Inc. Sec. Litig.*,
  2015 WL 224631 (S.D. Cal. Jan. 15, 2015) ............................................. 10

*In re Cathode Ray Tube (CRT) Antitrust Litig.*,
  2013 WL 5429718 (N.D. Cal. June 20, 2013).......................................... 25

*In re Century Aluminum Co. Sec. Litig.*,
  729 F.3d 1104 (9th Cir. 2013) ............................................................... 17, 19

REPLY IN FURTHER SUPPORT OF LEAD PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

*China Agritech, Inc. v. Resh*,
    138 S. Ct. 1800 (2018) ....................................................................................*passim*

*City of Miami Gen. Emps.' and Sanitation Emps. Ret. Tr. v. RH, Inc.*,
    2018 WL 4931543 (N.D. Cal. Oct. 11, 2018) ............................................... 22

*Comcast Corp. v. Behrend*,
    569 U.S. 27 (2013) ..........................................................................................*passim*

*Conn. Ret. Plans & Trust Funds v. Amgen Inc.*,
    660 F.3d 1170 (9th Cir. 2011) ..............................................................2, 9, 10

*Crossen v. CV Therapeutics*,
    2005 WL 1910928 (N.D. Cal. Aug. 9, 2005) ............................................... 8

*In re Diamond Foods, Inc.*,
    295 F.R.D. 240 (N.D. Cal 2013) ..........................................................22, 24

*Eichenholtz v. Verifone Holdings, Inc.*,
    2008 WL 3925289 (N.D. Cal. Aug. 22, 2008) ........................................7, 8

*Erica P. John Fund, Inc. v. Halliburton Co.*,
    563 U.S. 804 (2011) ..........................................................................................3, 23

*In re Facebook Biometric Info. Privacy Litig.*,
    326 F.R.D. 535 (N.D. Cal. 2018) .................................................................. 6

*In re Facebook, Inc.*,
    312 F.R.D. 332 (S.D.N.Y. 2015) .................................................................. 20

*In re Fannie Mae Sec.*,
    247 F.R.D. 32 (D.D.C. 2008) ....................................................................... 10

*In re Flag Telecom Holdings, Ltd. Sec. Litig.*,
    574 F.3d 29 (2d Cir. 2009) ............................................................................. 8

*Freeland v. Iridium World Communs., Ltd.*,
    233 F.R.D. 40 (D.D.C. 2006) ....................................................................... 19

*Gaynor v. Miller*,
    2018 WL 3751606 (E.D. Tenn. Aug. 6, 2018) ....................................... 18, 20

*Gomez v. J. Jacobo Farm Labor Contractor, Inc.*,
    2018 WL 4027011 (E.D. Cal. Aug. 21, 2018) ........................................... 17

*Halliburton Co. v. Erica P. John Fund, Inc.*,
    573 U.S. 258 (2014) ..........................................................................................3, 9, 10

*Hanon v. Dataproducts Corp.*,
    976 F.2d 497 (9th Cir. 1992) ....................................................................... 12

*Hart v. BHH, LLC*,
    2018 WL 5729294 (S.D.N.Y. Nov. 2, 2018) ........................................... 14

REPLY IN FURTHER SUPPORT OF LEAD PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

*Hatamian v. Advanced Micro Devices, Inc.*,
2016 WL 1042502 (N.D. Cal. Mar. 16, 2016) ...................................................................24

*Hayes v. MagnaChip Semiconductor Corp.*,
2016 U.S. Dist. LEXIS 177787 (N.D. Cal. Dec. 22, 2016) .........................................10

*Hertzberg v. Dignity Partners, Inc.*,
191 F.3d 1076 (9th Cir. 1999) ...................................................................17

*In re HiEnergy Techs., Inc. Sec. Litig.*,
2006 WL 2780058 (C.D. Cal. Sept. 26, 2006) ...........................................4

*Hildes v. Arthur Andersen LLP*,
734 F.3d 854 (9th Cir. 2013) ...................................................................24

*Immigrant Assistance Project of L.A. Cty. Fed'n of Labor v. INS*,
306 F.3d 842 (9th Cir. 2002) .......................................................... 16, 17

*Johnson v. Hartford Cas. Ins. Co.*,
2017 WL 2224828 (N.D. Cal. May 22, 2017) .........................................6

*In re Juniper Networks Sec. Litig.*,
264 F.R.D. 584 (N.D. Cal. 2009) .............................................................8

*Krim v. pcOrder.com, Inc.*,
402 F.3d 489 (5th Cir. 2005) ...................................................................17

*In re LendingClub Sec. Litig.*,
282 F. Supp. 3d 1171 (N.D. Cal. 2017) ..................................................18

*Lewert v. Boiron, Inc.*,
2014 WL 12626335 (C.D. Cal. Nov. 5, 2014) ........................................4

*Loritz v. Exide Techs.*,
2015 WL 6790247 (C.D. Cal. July 21, 2015)........................... 4, 7, 9, 21

*Luna v. Marvell Tech. Grp., Ltd.*,
2017 WL 4865559 (N.D. Cal. Oct. 27, 2017) ..................................22, 23

*In re Montage Tech. Grp. Ltd. Sec. Litig.*,
2016 WL 1598666 (N.D. Cal. Apr. 21, 2016) ........................................23

*N.J. Carpenters Health Fund v. Royal Bank of Scotland Grp., PLC*,
2016 WL 7409840 (S.D.N.Y. Nov. 4, 2016)...........................................20

*In re Nature's Sunshine Product's Sec. Litig.*,
251 F.R.D. 656 (D. Utah 2008) ...............................................................11

*Painters & Allied Trades Dist. Council 82 Health Care Fund v. Forest Pharm., Inc.*,
915 F.3d 1 (1st Cir. 2019)........................................................................16

*In re Peregrine Sys., Inc. Sec. Litig.*,
2002 WL 32769239 (S.D. Cal. Oct. 11, 2002) .........................................6

REPLY IN FURTHER SUPPORT OF LEAD PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

*In re Petrobras Sec. Litig.*,
  862 F.3d 250 (2d Cir. 2017) .................................................................................17

*In re POM Wonderful LLC*,
  2014 WL 1225184 (C.D. Cal. Mar. 25, 2014)......................................................22

*Provenz v. Miller*,
  102 F.3d 1478 (9th Cir. 1996) ...............................................................................11

*In re Quarterdeck Office Sys. Sec. Litig.*,
  1993 U.S. Dist. LEXIS 19806 (C.D. Cal. Sep. 30, 1993) ...................................7, 17

*Ret. Fund v. J.P. Morgan Chase & Co.*,
  301 F.R.D. 116 (S.D.N.Y. 2014)...........................................................................21

*In re Schering-Plough Corp./ENHANCE Sec. Litig.*,
  2012 WL 4482032 (D.N.J. Sept. 25, 2012) ..........................................................19

*Schleicher v. Wendt*,
  618 F.3d 679 (7th Cir. 2010) ................................................................................. 8

*Schultz v. Midland Credit Mgmt., Inc.*,
  2019 WL 2083302 (D.N.J. May 13, 2019).................................................13, 15, 16

*In re Scotts EZ Seed Litig.*,
  304 F.R.D. 397 (S.D.N.Y. 2015) ...........................................................................25

*Sklar v. Amarin Corp. PLC*,
  2014 WL 3748248 (D.N.J. July 29, 2014) ............................................................ 8

*In re Snap Inc. Sec. Litig.*,
  2018 WL 2972528 (C.D. Cal. June 7, 2018)................................................ 10, 12, 25

*In re STEC Inc.*,
  2012 WL 6965372 (C.D. Cal. Mar. 7, 2012)................................................... 10, 11

*Sudunagunta v. NantKwest, Inc.*,
  2018 WL 3917865 (C.D. Cal. Aug. 13, 2018) .............................................*passim*

*In re SunEdison, Inc.*,
  329 F.R.D. 124 (S.D.N.Y. 2019) ...........................................................................11

*In re Terayon Communs. Sys., Inc. Sec. Litig.*,
  2004 U.S. Dist. LEXIS 3131 (N.D. Cal. Feb. 23, 2004) ...................................... 8

*Todd v. STAAR Surgical Co.*,
  2017 WL 821662 (C.D. Cal. Jan. 5, 2017) ......................................................21, 23

*In re Twitter Inc. Sec. Litig.*,
  326 F.R.D. 619 (N.D. Cal. 2018)...........................................................................23

*Walker v. Life Ins. Co. of Sw.*,
  2018 WL 3816716 (C.D. Cal. July 31, 2018).........................................................15

REPLY IN FURTHER SUPPORT OF LEAD PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

*Washtenaw Cty. Emples. Ret. Sys. v. Walgreen Co.*,
   2018 WL 1535156 (N.D. Ill. Mar. 29, 2018) .................................................................. 10

*Werdebaugh v. Blue Diamond Growers*,
   2014 WL 7148923 (N.D. Cal. Dec. 15, 2014)................................................................. 22

*Yi Xiang v. Inovalon Holdings, Inc.*,
   327 F.R.D. 510 (S.D.N.Y. 2018) ..................................................................................... 11

*In re Zynga, Inc. Sec. Litig.*,
   2013 WL 257161 (N.D. Cal. Jan. 23, 2013)...................................................................... 7

**Statutes**

15 U.S.C. § 77k(e) ...................................................................................................................... 20

**Other Authorities**

Rule 15(c) ...........................................................................................................................16, 25

Rule 23 .........................................................................................................................*passim*

Rule 23(a)......................................................................................................................................3

Rule 23(a)(3) ........................................................................................................................7, 15

Rule 23(a)(4) ........................................................................................................................4, 15

Rule 23(b)...................................................................................................................................13

Rule 23(b)(3) ........................................................................................................................3, 10

REPLY IN FURTHER SUPPORT OF LEAD PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

## TABLE OF ABBREVIATIONS

| ABBREVIATION | DEFINITION |
|---|---|
| ¶ __ | Citations to paragraphs in the Second Amended Complaint (ECF No. 272) |
| CAC | Consolidated Amended Class Action Complaint (ECF No. 67) |
| DAU | Daily Active Users |
| Defendants | Snap, Inc., Evan Spiegel, Robert Murphy, Andrew Vollero, and Imran Khan |
| Executive Defendants | Evan Spiegel, Robert Murphy, Andrew Vollero, and Imran Khan |
| IPO | Initial Public Offering |
| Kessler Topaz | Kessler Topaz Meltzer & Check, LLP |
| Lead Plaintiffs | Court-appointed Lead Plaintiffs Smilka Melgoza, as trustee of the Smilka Melgoza Trust U/A DTD 04/08/2014, Rediet Tilahun, Tony Ray Nelson, Rickey E. Butler, and Alan L. Dukes |
| Nirmul Decl. | Declaration of Sharan Nirmul in Support of Lead Plaintiffs' Motion for Class Certification |
| Nirmul Supp. Decl. | Supplemental Declaration of Sharan Nirmul in Further Support of Lead Plaintiffs' Motion for Class Certification |
| Nye Rpt. | Expert Report of Zachary Nye, Ph.D., dated June 6, 2019 (ECF No. 275-8) |
| Plaintiffs | Lead Plaintiffs and additional named Plaintiffs Donald R. Allen and Shawn B. Dandridge |
| Rosman & Germain | Rosman & German LLP |
| Rule | Federal Rule of Civil Procedure |
| S-1 | Snap's Registration Statement and Prospectus filed on Form S-1 with the SEC on February 2, 2017, together with its amendments filed with the SEC on February 9, 16, and 27, 2017, respectively, and its Prospectus filed on Form 424B4 with the SEC on March 3, 2017 |
| SAC | Second Amended Complaint (ECF No. 272) |
| SEC | U.S. Securities and Exchange Commission |

REPLY IN FURTHER SUPPORT OF LEAD PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

| ABBREVIATION | DEFINITION |
|---|---|
| Snap or Company | Snap Inc. |

Plaintiffs respectfully submit this Reply in further support of their Motion for Class Certification.[1]

## I.   INTRODUCTION

Defendants admit that all but one of the claims at issue in this litigation warrant class certification and mount only a superficial challenge under Rule 23 regarding the adequacy and typicality of the proposed Class representatives. They readily concede that the Class is sufficiently numerous, there are common questions of law and fact, common issues predominate over individualized questions for all but one of Plaintiffs' claims, and a class action is the superior vehicle to litigate the claims and defenses in this case. Class certification is warranted on this record alone.

Having no substantive challenge to certification, Defendants resort to a baseless attack on the adequacy and typicality of the proposed Class representatives stitched together from bits of out-of-context testimony that is plainly at odds with the record evidence. Even a cursory reading of Plaintiffs' deposition transcripts (attached in full as Exhibits G-M to the Nirmul Supp. Decl.) reveals they are eager and responsible fiduciaries who understand their obligations to the Class and the claims and defenses in this case. Nor are Plaintiffs' claims atypical: each relied on the integrity of Snap's public market price and was harmed by Defendants' fraud in the exact same way as all other Class members. Virtually every court to consider them, including this Court, has rejected adequacy and typicality challenges like those Defendants mount here. This case is no different.

Recognizing the frailty of this argument, Defendants next attempt to litigate a premature merits issues with respect to Plaintiffs' Exchange Act claims. Under longstanding Ninth Circuit and Supreme Court precedent, however, Defendants' truth-on-

---

[1]   Unless otherwise noted: (i) all capitalized terms shall have the same meaning as in Lead Plaintiffs' Memorandum of Points and Authorities in Support of Lead Plaintiffs' Motion for Class Certification (ECF No. 275-1); (ii) citations to "DB" are to Defendants' Memorandum of Points and Authorities in Opposition to Lead Plaintiffs' Motion for Class Certification (ECF No. 291-1); (iii) all emphasis is added; and (iv) all internal citations and quotations are omitted.

REPLY IN FURTHER SUPPORT OF LEAD PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

the-market defense must await another day. *Conn. Ret. Plans & Trust Funds v. Amgen Inc.*, 660 F.3d 1170, 1177 (9th Cir. 2011), *aff'd*, 568 U.S. 455 (2013).

Defendants' remaining arguments with respect to Plaintiffs' Section 11 claims are equally infirm. First, as this Court has already recognized, the Supreme Court's decision in *China Agritech, Inc. v. Resh*, 138 S. Ct. 1800 (2018) has no application to the facts of this case. Plaintiffs are simply pursuing existing claims in an ongoing class action prior to any decision on the merits. Under such circumstances, their claims are plainly tolled under *Am. Pipe & Const. Co. v. Utah*, 414 U.S. 538, 551 (1974) ("*American Pipe*") and its longstanding jurisprudence.

Second, "traceability" is relevant at class certification only to the extent it bears on the Class representatives' statutory standing. Here—even accepting Defendants' overly restrictive premise that the sale by an insider pursuant to a lockup waiver five days after Snap's IPO undermines traceability—six of seven Class representatives purchased before the lockup shares entered the market and thus indisputably have standing to pursue their Section 11 claims. There is no need to restrict Section 11 claims to those Class members who purchased Snap common stock prior to March 8, 2017. Courts—including a recent decision from this District with nearly identical facts, *Sudunagunta v. NantKwest, Inc.*, 2018 WL 3917865, at *7–9 (C.D. Cal. Aug. 13, 2018)—have concluded that traceability is a common merits issue that should not be resolved at the class certification stage.

Third, Plaintiffs' Section 11 damages methodology easily satisfies *Comcast Corp. v. Behrend*, 569 U.S. 27 (2013) and its Ninth Circuit progeny. Damages under Section 11 are subject to a statutory formula that applies equally to all members of the Class. Plaintiffs' expert, Dr. Zachary Nye, has come forth with an event study damages methodology to measure the "value" of Snap's common stock on a Class-wide basis. Event study methodologies like Dr. Nye's have been uniformly endorsed in securities class actions like this one. Indeed, Defendants are unable to point to a single post-*Comcast* securities case that denied class certification based on the event study methodology employed here. Notably, in fact, Snap *does not challenge* the very same

REPLY IN FURTHER SUPPORT OF LEAD PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

event study damages methodology for Plaintiffs' Section 10(b) claims.

Fourth, Defendants' argument that Dr. Nye's methodology is insufficient for failure to disaggregate "confounding factors" is a classic merits-based loss causation challenge. At class certification, however, such challenges are foreclosed by *Erica P. John Fund, Inc. v. Halliburton Co.*, 563 U.S. 804, 809-10 (2011) ("*Halliburton I*"), which held that plaintiffs "need not" prove loss causation at this stage.

Finally, Defendants' request that the Court revisit the issue of "the time suit was brought" for a third time is a red herring in the context of class certification. Regardless of the date that the Court (or the jury) ultimately determines is proper, Defendants do not (and cannot) dispute that if the time of suit is found relevant to the calculation of damages under Section 11, the statutory damages formula will apply equally to *all* members of the Class.

Simply put, Defendants have provided no basis to deny certification. Plaintiffs' motion should be granted.

## II.  ARGUMENT

### A.  Defendants Concede that a Class Should Be Certified

Defendants admit that Plaintiffs have satisfied the numerosity and commonality requirements of Rule 23(a). Defendants also readily concede that common issues predominate under Rule 23(b)(3) for *all of Plaintiffs' Exchange Act Claims and Plaintiffs' Control Person Claims*, and that a class action is superior to prosecuting thousands of individual actions. Finally, Defendants do not dispute that Plaintiffs and the Class are entitled to rely on two separate presumptions of reliance: (i) the fraud-on-the-market presumption of reliance established by the Supreme Court in *Basic Inc. v. Levinson*, 485 U.S. 224 (1988), and re-affirmed in *Halliburton Co. v. Erica P. John Fund, Inc.*, 573 U.S. 258 (2014) ("*Halliburton II*"); and (ii) the *Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128 (1972) presumption of reliance on material omissions.

With no real dispute as to whether a class should be certified, there are only three questions the Court must resolve: (i) whether Plaintiffs are adequate and typical class

REPLY IN FURTHER SUPPORT OF LEAD PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

representatives (they are); (ii) whether Plaintiffs' Exchange Act claims must be narrowed (they should not); and (iii) whether common issues predominate for purposes of Plaintiffs' Section 11 claims (they do).

**B.** **Rule 23(a)(4) Is Satisfied: The Class Is Adequately Represented**

Plaintiffs—who come from diverse demographic, cultural, and geographic backgrounds that reflect the nationwide Class they seek to represent—are undeniably adequate. Each purchased Snap common stock pursuant or traceable to the materially false and misleading S-1 Registration Statement ("IPO Registration Statement"). Less than six months later, they had lost more than 50% of the value of their investment in Snap's stock. They, like all other Class members, have a vested interest in recovering the money they lost as a result of Defendants' fraud. Indeed, Defendants tellingly point to no conflicts between Plaintiffs and other Class members that would render them inadequate. These facts alone establish their adequacy. *See, e.g.*, *In re HiEnergy Techs., Inc. Sec. Litig.*, 2006 WL 2780058, at *4 (C.D. Cal. Sept. 26, 2006) (class representatives adequate because their "interests are compatible with those of the entire Plaintiff Class, derive from the same legal theories, and [they] allege the same operative facts").

To be sure, each Plaintiff has likewise demonstrated at least his or her "general familiarity with the theory of the case, who is being sued, and their role as class representative." *Loritz v. Exide Techs.*, 2015 WL 6790247, at *7 (C.D. Cal. July 21, 2015) (Wilson, J.); *see also Lewert v. Boiron, Inc.*, 2014 WL 12626335, at *8 (C.D. Cal. Nov. 5, 2014) (Wilson, J.) (adequacy satisfied where plaintiff "demonstrated a familiarity with the issues of the case and a willingness to vigorously pursue relief by participating in the litigation process"). Plaintiffs easily meet this standard.

*First*, each Plaintiff testified to his or her understanding of their responsibilities as a class representative and fiduciary to the Class. *See, e.g.*, Dukes Tr. 34:6-16 █████████

██████████████████████████████████████████████████

██████████; Tilahun Tr. 158:21-159:7 ████████████████████

██████████████████████████████████████████████████

REPLY IN FURTHER SUPPORT OF LEAD PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

████████████████████████████████; Melgoza Tr. 193:5-11 ████████████

████████████████████████████████████████████████████████████████

████████████; Butler Tr. 211:22-25 █████████████████████████

███████████████████████████████████████████████; Nelson Tr. 21:1-12 ███████████

obligations ███████████████████████████████████████████████████

█████████████████████████; Allen Tr. 155:17-156:24; Dandridge Tr. 149:4-150:5.

*Second*, more than "general familiarity," each Plaintiff testified to his or her sophisticated understanding of the facts of the case, including: (i) the core allegations (*see, e.g.*, Melgoza Tr. 51:6-52:19; Tilahun Tr. 144:18-145:4; Dukes Tr. 266:10-19; Butler Tr. 54:16-55:9; Nelson Tr. 112:12-113:3; Allen Tr. 124:24-126:8; Dandridge Tr. 94:24-95:5); (ii) the identity and roles of the Defendants (*see, e.g.*, Melgoza Tr. 8:19-9:6; Tilahun Tr. 9:20-23; Dukes Tr. 9:10-11; Butler Tr. 25:25-26:5; Nelson Tr. 29:2-9; Allen Tr. 29:25-30:3; Dandridge Tr. 26:9-27:7); and (iii) the damages sought and how they were harmed (*see, e.g.*, Melgoza Tr. 224:8-225:18; Tilahun Tr. 220:15-221:2; Dukes Tr. 146:20-147:8; Butler Tr. 217:9-13; Nelson Tr. 181:2-6; Allen Tr. 146:5-7; Dandridge Tr. 129:22-130:4).

*Third*, Plaintiffs have been extensively involved in the litigation process by: (i) producing documents, reviewing and approving written discovery, and preparing and sitting for a deposition (*see, e.g.*, Melgoza Tr. 210:22-211:20; Tilahun Tr. 10:5-12:23; 37:1-45:2; Dukes Tr. 62:6-69:2; 224:3-9; Butler Tr. 11:6-13; Nelson Tr. 10:20-11:10; 34:14-35:6; Allen Tr. 13:9-14:18; 69:15-71:16; Dandridge Tr. 11:25-13:1; 32:8-35:17); (ii) continuously and regularly communicating with counsel, including at in-person meetings (*see, e.g.*, Melgoza Tr. 10:15-11:24; 211:13-19; Tilahun Tr. 161:3-24; Dukes Tr. 42:8-11; 83:5-84:9; Butler Tr. 232:13-20; Nelson Tr. 126:17-19; Allen Tr. 137:6-138:6; Dandridge Tr. 116:20-117:18); and (iii) reading and reviewing pleadings and the Court's opinions (*see, e.g.*, Melgoza Tr. 206:1-21; Tilahun Tr. 33:24-38:7; Dukes Tr. 161:2-174:1; Butler Tr. 238:10-239:2; Nelson Tr. 73:15-74:4; Allen Tr. 123:8-126:8; Dandridge Tr. 87:11-23). Finally, each Plaintiff testified he or she is willing and able to attend trial if called to testify. *See, e.g.*, Melgoza Tr. 211:13-20; Tilahun Tr. 219:9-220:5; Dukes Tr.

5      Case No. 2:17-cv-03679-SVW-AGR

REPLY IN FURTHER SUPPORT OF LEAD PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

314:9-315:3; Butler Tr. 216:11-217:8; Nelson Tr. 180:7-181:1; Allen Tr. 145:11-24; Dandridge Tr. 129:1-14.

Not surprisingly, Defendants do not challenge any of these facts. Instead, Defendants' sole criticism relates to Plaintiffs' purportedly excessive reliance on counsel, disingenuously suggesting that "Plaintiffs have abdicated leadership of the class to their counsel." DB 24. They are wrong. Each Plaintiff testified simply that they made decisions *in conjunction* with counsel (as one would expect). For instance, Mr. Tilahun succinctly stated:

█████████

█ Tilahun Tr. 163:11-18. Mr. Nelson echoed this sentiment, making clear: ████ it. Nelson Tr. 21:16-22; *see also* Melgoza Tr. 198:13-19; Dukes Tr. 233:2-9; Butler Tr. 224:18-225:4; Allen Tr. 169:13-19; Dandridge Tr. 153:2-154:23. Each Plaintiff similarly testified they have participated in numerous group calls with all Plaintiffs, and that they are perfectly capable of drawing upon their collective experience and intuition to continue prosecuting this action and resolve any disputes, should they arise. *See, e.g.*, Melgoza Tr. 195:2-9; 196:16-197:20; Tilahun Tr. 160:25-161-10; 163:24-164:17; Dukes Tr. 20:23-21:4; 235:4-236:15; Butler Tr. 162:3-9; 166:17-167:6; Nelson Tr. 121:17-19; 123:25-125:1). Notably, courts have recognized the "substantial benefits of joint decision-making[.]" *In re Peregrine Sys., Inc. Sec. Litig.*, 2002 WL 32769239, at *12 (S.D. Cal. Oct. 11, 2002).[2]

More to the point, far from being disqualifying, courts have consistently recognized that reliance on counsel is entirely proper because "clients necessarily look to counsel to understand the factual and legal intricacies" of class actions. *Johnson v. Hartford Cas. Ins. Co.*, 2017 WL 2224828, at *14 (N.D. Cal. May 22, 2017); *see also In re Facebook Biometric Info. Privacy Litig.*, 326 F.R.D. 535, 543 (N.D. Cal. 2018) ("Even if the named plaintiffs have relied heavily on the advice of attorneys and others, it is hardly a badge of

---

[2] Defendants' suggestion that Plaintiffs have "failed to monitor counsel's fees" is contradicted by their own testimony. *See, e.g.*, Melgoza Tr. 234:23-235:18; Tilahun Tr. 183:25-184:10; Dukes Tr. 250:3-8, 256:15-256:9-14; Butler Tr. 176:3-24.

inadequacy to seek help from those with relevant expertise[.]"); *Loritz*, 2015 WL 6790247, at *6 ("[a]ll that is necessary is a rudimentary understanding of the present action and . . . a demonstrated willingness to *assist counsel* in the prosecution of the litigation.") (ellipsis in original). Plaintiffs are adequate.[3]

### C.      Rule 23(a)(3) Is Satisfied: Plaintiffs' Claims Are Typical

Defendants claim to identify two "unique defenses" concerning certain Plaintiffs' "reliance on the integrity of the market" which they contend render Plaintiffs atypical. DB 22 (citing *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992)) (pre-PSLRA case in which proposed class representative who was a serial plaintiff with a prior relationship with class counsel was found to be atypical). Defendants' arguments are meritless. As this Court held in *Loritz*, "the defense of nonreliance is not itself a basis for denial of class certification." 2015 WL 6790247, at *5 (citing *Hanon*, 976 F.2d at 509).

*First*, Plaintiffs' trading patterns do not subject them to any viable defenses concerning their reliance, let alone "unique defenses." For example, Defendants mischaracterize Plaintiffs Tilahun, Dukes, and Melgoza as "day traders," despite their extensive testimony to the contrary. *See, e.g.*, Tilahun Tr. 118:20 ███████████ ██████; Melgoza Tr. 60:11-13 ████████████████████████ ███████████████████████████████████; Dukes Tr. 104:9-108:17 ████████████ ███████████████████████; *see also* Tilahun Tr. 73:21-74:1, 74:25-75:4, 117:23-24, 145:19-147:14; Dukes Tr. 146:20-147:8. Even if this was so, it would have no bearing on Plaintiffs' typicality. *See, e.g.*, *In re Zynga, Inc. Sec. Litig.*, 2013 WL 257161, at *2 (N.D. Cal. Jan. 23, 2013) ("[W]hether [plaintiff] is a day trader is inconsequential to his request to be appointed lead plaintiff.").[4] Defendants' argument that Mr. Dukes' *post-Class*

---

[3]      Defendants' lone authority to the contrary (nearly 30 years old), is an outlier for its egregious facts. *In re Quarterdeck Office Sys. Sec. Litig.*, 1993 U.S. Dist. LEXIS 19806, at *17-18 (C.D. Cal. Sep. 30, 1993) (named plaintiffs were "true 'stand-in' parties," as "[n]either seemed to even care").

[4]      Defendants' cases involved lead plaintiff movants with frequent in-and-out trades in a single day, and are clearly inapposite. *See, e.g.*, *Eichenholtz v. Verifone Holdings, Inc.*, 2008 WL 3925289, at *10 (N.D. Cal. Aug. 22, 2008) (movant "made over 5,000 trades in Verifone's shares during a nine-month period" and "made an average of nineteen trades a day . . ."). Defendants also fail to inform the Court that "the Northern District of

REPLY IN FURTHER SUPPORT OF LEAD PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

*Period* short sales render him atypical is equally spurious. All of Mr. Dukes' short sales occurred between March and May 2018, *after* Defendants' fraud was revealed and when Mr. Dukes ████████████████████████ Dukes Tr. 204:13-19. During the Class Period, Mr. Dukes' financial interests were at all times typical of other Class members' financial interests.[5]

Defendants next argue that Messrs. Butler and Dukes are atypical because they sold all of their Snap shares prior to the end of Class Period. DB 23. At the outset, Messrs. Dukes and Butler purchased their Snap shares when the share price was inflated by fraud and sold their shares after the fraud was partially revealed. There is no requirement that any Class member hold their shares over all corrective events to recover damages in this case and they are thus typical of other Class members.[6] Messrs. Dukes and Butler have been deposed, have produced documents, and Defendants have been unable to produce a shred of evidence that they are in any way differently situated than any other Class member. *See, e.g.*, *In re Juniper Networks Sec. Litig.*, 264 F.R.D. 584, 589-90 (N.D. Cal. 2009) ("All members of the putative class were allegedly injured by the same course of conduct, even if not to the same degree."). Moreover, Plaintiffs have proposed *five other* Class Representatives, each of whom retained Snap shares through the final corrective disclosure alleged in the SAC. *See* ECF Nos. 272-1–3. If anything, the combination of all of these Plaintiffs represents the full gamut of investors who were defrauded by Defendants.

---

California has retreated from the *Eichenholtz* decision[.]" *Sklar v. Amarin Corp. PLC*, 2014 WL 3748248, at *8 (D.N.J. July 29, 2014).

[5]    Defendants' sole authority is distinguishable because unlike Mr. Dukes, all of the Lead Plaintiffs' class-period purchases were made to cover short positions. *In re Terayon Communs. Sys., Inc. Sec. Litig.*, 2004 U.S. Dist. LEXIS 3131, at *24 (N.D. Cal. Feb. 23, 2004). In any event, "[s]hort sales do not in and of themselves render a lead plaintiff's claims atypical." *Crossen v. CV Therapeutics*, 2005 WL 1910928, at *5 (N.D. Cal. Aug. 9, 2005); *see also Schleicher v. Wendt*, 618 F.3d 679, 684 (7th Cir. 2010) (Easterbrook, C.J.) (short sellers equally rely on integrity of market price).

[6]    Defendants' cited cases are inapposite since they involved situations where the proposed class representatives' trading patterns defeated their individual claims and therefore rendered them atypical. *See, e.g.*, *In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 574 F.3d 29, 37-39 (2d Cir. 2009) (class representative sold out entire position before only corrective disclosure and therefore could not "conceivably" establish loss causation).

REPLY IN FURTHER SUPPORT OF LEAD PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

Case 2:17-cv-03679-SVW-AGR Document 304 Filed 07/26/19 Page 19 of 36 Page ID #:7836

*Second*, Defendants disregard Plaintiffs' fraud-on-the-market theory of reliance under the Exchange Act, and argue that certain Plaintiffs have failed to establish direct reliance on Defendants' misstatements. DB 23-24.[7] Critically, Defendants fail to cite any evidence that Plaintiffs did not rely on the integrity of the market price for Snap's common stock, which is all that is required to invoke the fraud-on-the-market presumption. *See Halliburton II*, 573 U.S. at 274 ("[T]o indirectly rely on a misstatement in the sense relevant for the *Basic* presumption, [an investor] need only trade stock based on the belief that the market price will incorporate public information within a reasonable period."); *Loritz*, 2015 WL 6790247, at *5 ("Defendants' [nonreliance] argument ignores the Supreme Court's recognition that 'it is hard to imagine that there ever is a buyer or seller who does not rely on market integrity.'") (quoting *Basic*, 485 U.S. at 246-47)). Here, "no Plaintiff testified that he or she did not rely on the integrity of the market for [Snap's] securities," and "evidence that Plaintiffs relied on their own interpretation of publicly available data . . . is insufficient to rebut the presumption of reliance." *Loritz*, 2015 WL 6790247, at *5.

### D. Plaintiffs' Exchange Act Claims Should Not Be Narrowed

Defendants concede that Plaintiffs' Exchange Act claims are suitable for Class treatment. Defendants argue only that the Class Period for those claims should end earlier because—according to their theory of the case—their disclosures in May 2017 fully revealed the relevant truth concealed by their misstatements. DB 18-22. Defendants are wrong on both the facts and the law.

As an initial matter, the Ninth Circuit rejected a nearly identical argument in *Amgen*, 660 F.3d at 1177. There, Amgen argued that earlier disclosures had "publicized the truth about the safety issues looming over Amgen's drugs"—"the so-called 'truth-on-the-market defense." *Id.* In rejecting Amgen's argument, the court explained:

> [T]he truth-on-the-market defense is a method of refuting an alleged misrepresentation's materiality [and] a plaintiff need not prove materiality at the class certification stage [because] materiality is a merits issue to be

---

[7] Notably, Defendants do not challenge the specific reliance of Melgoza. *Id.*

REPLY IN FURTHER SUPPORT OF LEAD PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

reached at trial or by summary judgment motion if the facts are uncontested. *Id.*[8] The Supreme Court affirmed, explaining that "proof" "that news of the truth had entered the market and dissipated the effects of prior misstatements" "is a matter for trial[.]" *Amgen*, 568 U.S. at 482 n.11.[9]

Courts thus routinely reject premature merits arguments—like here—that class periods must be abbreviated because the truth was earlier revealed. *See, e.g.*, *In re Bridgepoint Educ., Inc. Sec. Litig.*, 2015 WL 224631, at *7 (S.D. Cal. Jan. 15, 2015) (rejecting argument that class period should be shortened because "a truth-on-the-market defense" "is a method of refuting an alleged representation's *materiality*, and it is well established that a plaintiff need not prove materiality at the class certification stage . . .") (emphasis in original); *In re STEC Inc.*, 2012 WL 6965372, at *12 (C.D. Cal. Mar. 7, 2012) ("the Court cannot properly consider Defendants' truth-on-the-market defense at the class certification stage . . .").[10]

The sole exception to this bedrock principle arises when defendants unequivocally tell their investors not to rely on their previous statements. Only then do courts hold the chain of reasonable reliance has been broken as a matter of law. The majority of Defendants' authorities (DB 18-21) stand for this unremarkable proposition. *See Hayes v. MagnaChip Semiconductor Corp.*, 2016 U.S. Dist. LEXIS 177787, at *24-29 (N.D. Cal. Dec. 22, 2016) (investors could not rely on financial statements after defendants said they "should not be relied upon"); *In re Fannie Mae Sec.*, 247 F.R.D. 32, 39-40 (D.D.C. 2008)

---

[8] *See also In re Snap Inc. Sec. Litig.*, 2018 WL 2972528, at *7 (C.D. Cal. June 7, 2018) (Wilson, J.) ("A method of refuting an alleged misrepresentation's materiality, truth-on-the-market is an affirmative defense.") (quoting *Amgen*, 660 F.3d at 1177).

[9] *Halliburton II* did not disturb this holding. 573 U.S. at 282 ("materiality . . . should be left to the merits stage, because it does not bear on the predominance requirement of Rule 23(b)(3)").

[10] *Accord Baker v. Seaworld Entm't, Inc.*, 2017 WL 5885542, at *11 (S.D. Cal. Nov. 29, 2017) (rejecting "premature truth-on-the-market defense" at class certification); *Washtenaw Cty. Emples. Ret. Sys. v. Walgreen Co.*, 2018 WL 1535156, at *4 (N.D. Ill. Mar. 29, 2018) (The Supreme Court has "expressly recognized that a defendant's argument that the fraud-on-the-market presumption should not apply beyond a certain date because the truth was revealed to the market on that date is a question of the merits that could not be resolved at class certification.").

REPLY IN FURTHER SUPPORT OF LEAD PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

(same); *In re Nature's Sunshine Product's Sec. Litig.*, 251 F.R.D. 656, 666-67 (D. Utah 2008) ("it was unreasonable for an investor [] to rely on Nature's financial statements after [it] made clear that those statements should no longer be relied upon"). Here, by contrast, Defendants made no explicit disclosure that their misstatements "should not be relied upon." As a result, their argument fails as a matter of law.[11]

Even if their argument was legally cognizable, however, Defendants come nowhere close to establishing that the relevant truth was fully revealed on May 10, 2017. The crux of Plaintiffs' claims is that Snap misled the market ahead of its IPO by blaming its flattening growth on temporary, fixable problems like Android performance issues or historically lumpy growth when, in reality, Defendants knew that Snap's flattened growth was because Instagram had siphoned away Snap's users. As a result, investors were misled to believe that Snap's flattening growth would abate in the near-term, and priced Snap's stock accordingly. When Snap reported disappointing daily active user growth and poor advertising revenues on May 10, 2017, the relevant truth was partially revealed to the market. But the SAC alleges that it was not until August 10, 2017—when Snap reported its second straight quarter of disappointing growth and revenues—that the market fully understood that Instagram competition was a fundamental, long-term issue. In response, Snap's stock price fell by 14%. ¶ 279. Defendants make no attempt to explain why Snap's stock price declined on this news if, in fact, the truth had already been fully revealed to the market in May 2010. *See STEC*, 2012 WL 6965372, at *12 ("Defendants' [truth-on-the-market] argument is belied by the twenty-three percent decline in STEC's stock price after the [subsequent corrective] disclosure[.]"); *see also Provenz v. Miller*,

---

[11]    Defendants' other out-of-Circuit authorities fare no better. DB 19-20. In *Yi Xiang v. Inovalon Holdings, Inc.*, 327 F.R.D. 510, 521 (S.D.N.Y. 2018), the court rejected defendants' argument that the class period should end in May (when they claimed the truth was out), instead basing it on the final corrective disclosure in the complaint. In *In re SunEdison, Inc.*, 329 F.R.D. 124, 135-38 (S.D.N.Y. 2019), the court rejected defendants' argument that the Exchange Act class period should be shortened because if it "would require the Court to adjudicate questions of materiality, the adequacy of disclosure cannot be decided on a Rule 23 motion."

REPLY IN FURTHER SUPPORT OF LEAD PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

102 F.3d 1478, 1492 (9th Cir. 1996) ("[I]f the market has become aware of the allegedly concealed information, the facts allegedly omitted by the defendant would already be reflected in the stock's price[.]").

Moreover, Defendants entirely ignore Plaintiffs' allegations that they made additional misstatements on May 10 and 24, 2017—concerning Snap's purported avoidance of "growth hacking" techniques—that were designed to (falsely) reassure the market and maintain the inflation in Snap's stock. *See, e.g.*, ¶¶ 250-51. This Court previously credited Plaintiffs' allegations that the relevant truth concealed by these statements was not revealed until August 10, 2017, when "Spiegel subsequently admitted [that] Snap drove a portion of its DAU growth through such techniques, including the use of push notifications to get users to use the Snapchat application." *In re Snap*, 2018 WL 2972528, at *7. Defendants offer nothing to alter that conclusion.

Instead, Defendants point to Plaintiffs' arguments at the lead plaintiff stage, suggesting that they are somehow inconsistent with their positions here. DB 20. To the contrary, at all times, Plaintiffs made clear that the May 10, 2017 disclosure was "a *partial* corrective disclosure that *partially* revealed to the market that Snap's user growth was being adversely impacted by competition from Instagram Stories." ECF No. 247 at 16; *see also id.* at 18 ("*partial* corrective disclosure" on May 10). Moreover, Plaintiffs explained that "in an effort to soften the blow," Defendants made additional growth hacking misstatements in May 2017 that "maintained the price inflation in Snap's stock, which was ultimately corrected on August 11, 2017, when the truth about the full impact of Instagram Stories on Snap's user metrics was fully revealed to the market." *Id.* at 15-17.[12] In short, Defendants' premature "truth-on-the-market" arguments must await another

---

[12]    The Ninth Circuit has expressly held that the relevant truth may be revealed through a series of partial corrective disclosures. *See, e.g.*, *In re Apollo Grp., Inc. Sec. Litig.*, 2010 WL 5927988, at *1 (9th Cir. 2010), *cert. denied*, 131 S. Ct. 1602 (2011) (reversing grant of judgment as a matter of law because "[t]he jury could have reasonably found that the [analyst] reports following various newspaper articles were 'corrective disclosures' providing additional or more authoritative fraud-related information that deflated the stock price.") (citing *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1058 (9th Cir. 2008)) (later disclosure corrective when public initially "failed to appreciate [the] significance" of negative information); *Hanon*, 976 F.2d at 503 (what market understands depends on

REPLY IN FURTHER SUPPORT OF LEAD PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

day. *Amgen*, 568 U.S. at 481-82.

**E.      Rule 23(b) Is Satisfied: Common Questions of Law and Fact Predominate Over Plaintiffs' Securities Act Claims**

**1.      Plaintiffs' Section 11 Claims Are Timely**

It is well established that "the timely filing of a class action tolls the applicable statute of limitations *for all persons encompassed by the class complaint*." *China Agritech*, 138 S. Ct. at 1804. This rule stems from *American Pipe*, in which the Supreme Court held that "the commencement of the action" tolls the statute of limitations "as to *all those who might subsequently participate in the suit* as well as for the named plaintiffs." 414 U.S. at 551. A contrary rule, the Court explained, would "frustrate the principal function of a class suit" because it would encourage a "multiplicity" of protective suits to prevent the statute of limitations from running before judgment was reached in the class suit. *Id.* Under this clear precedent, Plaintiffs' claims were tolled by the filing of the CAC and are thus timely. *See, e.g.*, *Schultz v. Midland Credit Mgmt., Inc.*, 2019 WL 2083302, at *10 (D.N.J. May 13, 2019) (*American Pipe* tolling "allow[s] the addition or substitution of a named plaintiff in an *ongoing* putative class action following the expiration of the statute of limitations").

The Supreme Court's decision in *China Agritech* did nothing to alter this truism. In that case, the question presented was: "Upon denial of class certification, may a putative class member, *in lieu of promptly joining an existing suit* or promptly filing an individual action, commence a class action *anew* beyond the time allowed by the applicable statute of limitations?" *China Agritech*, 138 S. Ct. at 1804. There, the plaintiffs filed three "successive" class action lawsuits with "materially identical allegations." *Id.* In two such suits, class certification was denied with prejudice. *Id.* at 1805. Following the second denial of class certification, rather than joining an existing suit, a new group of plaintiffs represented by new counsel sought to file a third, brand new class action lawsuit, which was commenced a year and a half after the Exchange Act's limitations period had run. *Id.*

"intensity and credibility" of information).

REPLY IN FURTHER SUPPORT OF LEAD PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

The Court held that "*American Pipe* does not provide for the extension of the statute of limitations sought by [the new plaintiffs] for institution of an untimely third class suit." *Id.* at 1810. In reaching this conclusion, the Court emphasized the new plaintiffs' lack of diligence in bringing their claims, explaining that "*American Pipe* does not permit a plaintiff who waits out the statute of limitations to *piggyback* on an earlier, timely filed class action." *Id* at 1806. It further explained that "any additional class filings should be made early on, soon after the commencement of the first action seeking class certification." *Id.* Notably, the Court expressly recognized the distinction between filing a new action and altering an existing action, explaining that "as class discovery proceeds and weaknesses in the class theory or adequacy of representation come to light, *the lead complaint might be amended or a new plaintiff might intervene*." *Id.* at 1807 n.2.

*China Agritech*'s holding has no application to the facts of this case. Quite simply, there is no "piggyback" or "follow-on" suit in which Plaintiffs seek to "commence a class action anew." Rather, Plaintiffs are merely pursuing *identical* allegations in an *already pending* class action which asserts *indisputably timely* claims. Indeed, the parties have already stipulated that "the SAC adds *no new substantive allegations* relative to the FAC[.]" ECF No. 271.[13] That is, as expressly contemplated by the Supreme Court, Plaintiffs have "promptly join[ed] an existing suit."[14]

In fact, the Court has already determined *China Agritech* is inapposite. In connection with the most recent lead plaintiff motions, movant Gupta pressed a nearly identical argument to the one Defendants now advance, suggesting movants (including

---

[13]    As such, the parties further "agreed to forego a motion to dismiss the SAC," and that "Defendants' Answer to the [CAC] (ECF No. 102) shall be deemed to be their answer to the SAC." *Id.* The Court should thus reject Defendants' improper attempt to inject the issue into the Rule 23 analysis.

[14]    Moreover, unlike *China Agritech*, no substantive decision on class certification has been rendered. As the Court recognized in reopening the lead plaintiff process: "The Court need not address the issue of class certification until a new Lead Plaintiff is appointed." ECF No. 208 at 4. *See Hart v. BHH, LLC*, 2018 WL 5729294, at *2 (S.D.N.Y. Nov. 2, 2018) ("The linchpin of the *China Agritech* decision was that plaintiffs there brought the action <u>after</u> the denial of class certification in the prior action.") (emphasis in original).

REPLY IN FURTHER SUPPORT OF LEAD PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

Case 2:22-cv-08305-SVW-SK Document 210-18 Filed 06/27/25 Page 25 of 37 Page
ID #:4830
Case 2:17-cv-03679-SVW-AGR Document 304 Filed 07/26/19 Page 24 of 36 Page ID
#:7842

Plaintiffs) "who failed to file protective class actions are inadequate and atypical under Rules 23(a)(3) and 23(a)(4) because they will be unable to certify the Class." ECF No. 242 at 17. The Court rejected Gupta's bid to be lead plaintiff (ECF No. 262) and, at the March 4, 2019 hearing, explained: "That case [*China Agritech*] dealt with something that was *much different than what we're dealing with here*," and the "statute of limitation's argument that you raise *doesn't seem to me to have much bases*[.]" ECF No. 263 at 14.

Several post-*China Agritech* decisions confirm the Court's conclusion that *China Agritech* is inapposite where plaintiffs are simply seeking to join an existing action prior to a decision on the merits. For example, in *Walker v. Life Ins. Co. of Sw.*, Judge Selna declined to dismiss the plaintiffs' class claims as untimely after the Ninth Circuit reversed that court's prior dismissal of the same claims. 2018 WL 3816716, *4-5 (C.D. Cal. July 31, 2018). In so doing, Judge Selna explained that "[u]nlike the circumstances in both *American Pipe* and *China Agritech*, which followed denials of class certification, here the Court never determined whether the remaining claims could be asserted on a class-wide basis." *Id.* at *5. Under such circumstances, it was perfectly acceptable for plaintiffs to bring "revived claims in the same action in which they were originally brought." *Id.*; *accord Betances v. Fischer*, 2019 WL 1213146, at *8 (S.D.N.Y. Feb. 21, 2019) ("*China Agritech* did not involve and did not address application of *American Pipe* to a case like this one, where prior class actions had been filed but dismissed for reasons separate and apart from the propriety of class certification.").

Similarly, in *Schultz*, the court declined to strike as untimely identical class action allegations made by a new plaintiff in the same action. 2019 WL 2083302, at *8. There, like here, the issue presented was: "Does the *American Pipe* tolling doctrine, following the Supreme Court's recent precedent in *China Agritech*, permit a class member to *join* an ongoing, timely filed putative class action as a putative class representative following the expiration of the statute of limitations?" *Id.* at *9. In answering the question in the affirmative, the court reasoned that *China Agritech*'s application is limited to situations

REPLY IN FURTHER SUPPORT OF LEAD PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

where a "non-diligent [] 'would-be class representative [] *commences suit* after expiration of the limitation period'—not [where] a would-be class representative [] joins an ongoing action." *Id.* at *11 (emphasis in original). With respect to the latter situation, "the Supreme Court explained that its decision will encourage would-be class representatives to come forward in the original, timely filed action." *Id.* Finally, the court found that "application of *American Pipe* to Ms. Schutlz's claims does not offend the doctrine's 'economy of litigation' rationale," because "[c]ompeting class representatives' claims would be tolled only if they come forward as named plaintiffs in the original, timely filed class action, and not, under *China Agritech*, if they file their own successive actions." *Id.*

*Walker*, *Betances*, and *Shultz* thus teach that *American Pipe* tolling continues to apply in situations where (like here) the new plaintiffs assert identical allegations in an ongoing class action. *China Agritech* did nothing to alter this longstanding principle.[15]

Finally, even if Plaintiffs' claims were not tolled under *American Pipe*, at a minimum they relate back to the CAC under Rule 15(c). When an amendment proposes to add new plaintiffs, relation back is proper if: "1) the original complaint gave the defendant adequate notice of the claims of the newly proposed plaintiff; 2) the relation back does not unfairly prejudice the defendant; and 3) there is an identity of interests between the original and newly proposed plaintiff" (i.e., "[t]he circumstances giving rise to the claim remained the same [under the amended complaint] as under the original complaint"). *Immigrant Assistance Project of L.A. Cty. Fed'n of Labor v. INS*, 306 F.3d 842, 857-58 (9th Cir. 2002). Each factor is met here because, as Defendants have stipulated, the SAC

---

[15] In contrast, nearly all of Defendants' authorities (DB 9-11) are inapposite because in each case a decision on the merits had already been rendered. Selective quotations aside, that is true even in *Painters & Allied Trades Dist. Council 82 Health Care Fund v. Forest Pharm., Inc.*, 915 F.3d 1, 16 (1st Cir. 2019), which *affirms* the district court's denial of class certification. In *Blake v. JP Morgan Chase Bank NA*, 2019 U.S. App. LEXIS 18370, at *5-6 (3d Cir. June 19, 2019), unlike here, the plaintiffs sought to reassert claims that had previously been dismissed after new evidence came to light. And Defendants' citation to *Armendariz v. Santa Fe Cty. Bd. of Commissioners* is particularly curious as the defendants in that case were *estopped* from making a statute limitations argument where, not unlike here, "[t]he conduct of counsel for [] Defendants amounted to falsely representing or concealing their intent to pursue an affirmative statute of limitations defense upon Plaintiffs' dismissal of the state court case[.]" 331 F. Supp. 3d 1245, 1260 (D.N.M. 2018).

REPLY IN FURTHER SUPPORT OF LEAD PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

(and Plaintiffs) asserts identical allegations and claims as in the FAC. *See, e.g.*, *id.* at 858 (otherwise untimely claims of newly added class representatives relate back to original complaint when they are "similarly situated" to previous plaintiffs); *Gomez v. J. Jacobo Farm Labor Contractor, Inc.*, 2018 WL 4027011, at *3 (E.D. Cal. Aug. 21, 2018) (same).

### 2. Traceability Has No Bearing on Class Certification Where the Class Representatives Indisputably Have Statutory Standing

The so-called "traceability" (or statutory standing) requirement under Section 11 means that "the person must have purchased a security issued under that, rather than some other, registration statement." *Hertzberg v. Dignity Partners, Inc.*, 191 F.3d 1076, 1080 (9th Cir. 1999). "Plaintiffs need not have purchased shares in the offering made under the misleading registration statement; those who purchased shares in the aftermarket have standing to sue provided they can trace their shares back to the relevant offering." *In re Century Aluminum Co. Sec. Litig.*, 729 F.3d 1104, 1106 (9th Cir. 2013). "When all of a company's shares have been issued in a single offering under the same registration statement, this 'tracing' requirement generally poses no obstacle." *Id.*; *see also Hertzberg*, 191 F.3d at 1080 (same).[16]

At class certification, traceability bears only on whether or not the class representatives' claims are typical of the class' claims. Thus, courts have unsurprisingly declined to certify classes where the class representative lacks statutory standing. *See Quarterdeck*, 1993 WL 623310, at *3 (finding class representatives inadequate where they lacked statutory standing); *Krim v. pcOrder.com, Inc.*, 402 F.3d 489, 499 (5th Cir. 2005) (same).[17] In contrast, when there is no dispute that the class representatives have statutory standing, courts have properly declined to address the issue until the merits stage.

For example, in *NantKwest*—a case Defendants ignore for a second time—

---

[16] "The standard for *proving* this traceability requirement is the preponderance of the evidence standard." *NantKwest*, 2018 WL 3917865, at *4.

[17] *In re Petrobras Sec. Litig.*, 862 F.3d 250, 273-74 (2d Cir. 2017) is similarly misplaced, as that case addressed traceability in the context of whether or not the plaintiffs could show that their securities were purchased in "domestic transactions."

Judge Fitzgerald, addressing a nearly identical challenge, rejected the defendants' traceability argument and declined to impose a limit on the proposed class definition. 2018 WL 3917865, at \*9. There, much like here, the defendants pointed to 240,663 shares that entered the aftermarket during the lockup period following the company's IPO of 9.5 million shares. *Id.* at \*5. Judge Fitzgerald first concluded that the plaintiffs' claims were typical because they had shown "far more than a 'speculative basis' for statutory standing": each plaintiff had purchased at least some shares prior to the lockup shares entering the market, and "[o]ver 99.5% of the lock-up period trading volume related to IPO-registered shares rather than the Non-IPO Shares." *Id.* at \*5-6.[18] More to the point, the court explained: "regardless of whether the shares Lead Plaintiffs [] purchased were Non-IPO Shares or IPO shares, they were purchased in the IPO aftermarket, when only one Registration Statement had been issued," making the plaintiffs' claims "typical of the claims of absent class members." *Id.* at \*6. Based on the same reasoning, Judge Fitzgerald similarly declined to limit the class definition to investors who purchased before the lockup shares entered the market, explaining: "[t]he definition of the proposed class already addresses traceability. To the extent traceability poses a problem, as the Court indicated at the hearing, it is a common factual problem." *Id.* at \*9.[19]

The sound reasoning in *NantKwest* is consistent with decisions from numerous other courts. *See, e.g.*, *Gaynor v. Miller*, 2018 WL 3751606, at \*15 (E.D. Tenn. Aug. 6, 2018) (certifying class and explaining that "Defendants' concerns regarding aftermarket purchasers can be raised through additional dispositive motion practice, so that both

---

[18] The court in *In re LendingClub Sec. Litig.*, another case on which Defendants rely, reached a similar conclusion. 282 F. Supp. 3d 1171, 1180 (N.D. Cal. 2017) ("It is uncontested that WPERP purchased shares issued under the allegedly misleading registration statement before they were commingled with any other shares. Nobody argues otherwise and, therefore, probability does not enter into the analysis."). While it is true that the court in *LendingClub* also limited the class definition, that definition included the *entire* 180-day lockup period. *Id.* at 1188. Here, on the other hand, Defendants seek to cut off Section 11 claims just *six* days after the IPO.

[19] It is worth noting that counsel representing Defendants here also represented the defendants in *NantKwest*. Clearly disappointed with Judge Fitzgerald's decision, counsel for Defendants now seek a second bite at the traceability apple.

parties may develop the factual record"); *In re Schering-Plough Corp./ENHANCE Sec. Litig.*, 2012 WL 4482032, at \*11 (D.N.J. Sept. 25, 2012) (certifying class and declining to address issue of traceability); *Freeland v. Iridium World Communs., Ltd.*, 233 F.R.D. 40, 46 (D.D.C. 2006) (same).

Here, like in *NantKwest*, there is no dispute that six of seven Plaintiffs purchased Snap common stock immediately after the IPO: (i) Melgoza (March 2, 2017) (ECF No. 272-1 at 3); (ii) Nelson (March 2, 2017) (ECF No. 272-1 at 7); (iii) Allen (March 2, 2017) (ECF No. 272-2 at 14); (iv) Dukes (March 3, 2017) (ECF No. 272-1 at 11); (v) Butler (March 3, 2017) (ECF No. 272-1 at 9); (vi) Dandridge (March 3, 2017) (ECF No. 272-3 at 17). As such, each has statutory standing under Section 11 because they can trace their shares directly to the IPO. To be sure, each would have statutory standing even under Defendants' overly restrictive limitation on Section 11 claims (i.e., investors who purchased Snap common stock between March 2, 2017 and March 7, 2017). Traceability is thus irrelevant to the Court's Rule 23 analysis. *See Amgen*, 568 U.S. at 466 ("Merits questions may be considered to the extent—but only to the extent—that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied.").[20]

Still, even with respect to Class members who purchased Snap common stock on or after March 8, 2017, there can be little doubt that Defendants' traceability argument will fare no better at the merits stage under the preponderance of the evidence standard. As Defendants concede, 99.95% of the shares available during the Class Period—i.e., 199,900,000 of 200,000,000 shares—were issued pursuant to the Registration Statement. DB 13. Thus, there is "far more than a 'speculative basis' for statutory standing[.]" *NantKwest*, 2018 WL 3917865, at \*6. What's more, as a matter of policy alone, it would undermine the remedial purpose of the Securities Act and its goal of protecting investors if Defendants could simply evade Section 11 liability for every open-market purchaser by

---

[20]    In *Century Aluminum*, the Ninth Circuit also unambiguously recognized the propriety of waiting until the merits stage to address traceability where, like here, Plaintiffs have sought discovery regarding the circumstances of the early release of the lockup shares and the identity of the purchasers, which would "obviously eliminate any questions about the lineage of [Class members'] shares." 729 F.3d at 1106.

REPLY IN FURTHER SUPPORT OF LEAD PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

injecting an immaterial number of non-IPO shares into the market shortly after the IPO. Yet Snap's counsel has publicly advocated for this very tactic for the specific purpose of evading Section 11 liability. *See* Nirmul Supp. Decl., Ex. N.[21]

### 3. Plaintiffs' Section 11 Damages Methodology Satisfies *Comcast*

Citing *Comcast*, Defendants argue that individual questions predominate over questions common to the Class because Plaintiffs purportedly have "failed to identify any specific damages model" for their Section 11 claims. DB 14-15. Defendants' argument is particularly misguided in this case.

As an initial matter, damages in Section 11 cases are subject to a statutory formula. 15 U.S.C. § 77k(e); *see also* Nye Rpt. ¶ 60 (discussing Section 11's statutory damages formula). On that basis alone, courts across the country have found *Comcast* satisfied for Section 11 claims. *See, e.g.*, *Gaynor*, 2018 WL 3751606, at *18 ("Plaintiffs' reliance of the statutory formula provided in 15 U.S.C. § 77k(e) is sufficient" to satisfy *Comcast*); *N.J. Carpenters Health Fund v. Royal Bank of Scotland Grp., PLC*, 2016 WL 7409840, at *10 (S.D.N.Y. Nov. 4, 2016) ("numerous courts in this district have held that *Comcast* is simply inapposite in Section 11 actions, where damages reflect liability by statutory formula"); *In re Facebook, Inc.*, 312 F.R.D. 332, 350 (S.D.N.Y. 2015) ("*Comcast* does not bar certification here, where Section 11(e) of the Securities Act provides a statutory formula for damages").

Moreover, contrary to Defendants' argument, Plaintiffs' expert has come forth with a detailed Section 11 damages methodology that is entirely "in accordance with" Section 11's statutory formula. *See* Nye Rpt. ¶ 63. More specifically, Dr. Nye has opined that:

> [P]er-share damages under Section 11 . . . can be calculated on a Class-wide basis in the following manner:

---

[21] On a practical level, Defendants' traceability argument is entirely academic. The only shares that were not issued pursuant to the IPO (i.e., the 100,000 lockup shares) were issued pursuant to a March 7, 2017 Form S-8, which is signed by all of the Executive Defendants in this case, and expressly incorporates the same Registration Statement as the IPO. *See* Nirmul Supp. Decl., Ex. O; *NantKwest*, 2018 WL 3917865, at *6.

     i. For each share sold prior to the suit date, per-share damages are equal to the purchase price (not to exceed the $17 IPO price) minus the sale price.

     ii. For each share sold on or after the suit date, per-share damages are equal to the purchase price (not to exceed the $17 IPO price) minus the greater of the sale price or the value of Snap stock as of the suit date.

     iii. For retained (i.e., unsold) shares, per-share damages are equal to the purchase price (not to exceed the $17 IPO price) minus the greater of the stock price as of the judgment date or the value of Snap stock as of the suit date.

*Id.* Defendants' transparent attempt to bootstrap this case into the unique facts of *Loritz*, where this Court declined to certify a class because the plaintiffs failed to propose *any* method for calculating damages, should thus be rejected out of hand.[22]

Defendants' assertion that Dr. Nye fails to specify how he will calculate the "value" input in his damages methodology is similarly misplaced. DB 15. Dr. Nye first explains that "'value' refers to the value of Snap stock absent the price inflation caused by the alleged misrepresentations and/or omissions." Nye Rpt. ¶ 62. Dr. Nye then proceeds to articulate precisely how he will calculate the "price inflation" in Snap's common stock throughout the Class Period using the well-accepted event study methodology. *Id.* ("price inflation present in Snap stock during the Class Period may be measured on a Class-wide basis using a commonly applied event study of the change in the stock's price caused by the alleged corrective events"). Notably, this is the identical methodology that Dr. Nye utilizes for purposes of calculating damages under Section 10(b), which Defendants do not even bother challenging under *Comcast*. *See Todd v. STAAR Surgical Co.*, 2017 WL 821662, at *10 (C.D. Cal. Jan. 5, 2017) (absence of expert testimony to rebut plaintiffs' expert "weighs in favor of finding that Lead Plaintiff has met his evidentiary burden").[23]

---

[22] Defendants' only additional case that addresses securities claims is distinguishable for the same reason. *See Fort Worth Emps.' Ret. Fund v. J.P. Morgan Chase & Co.*, 301 F.R.D. 116, 141 (S.D.N.Y. 2014) (declining to certify damages class where the plaintiff put forth no methodology to calculate damages).

[23] *See also* Nye Rpt. ¶ 57 ("Price inflation may be measured on a Class-wide basis by analyzing the change in a security's price caused by a corrective disclosure and/or the

This very same event-study methodology has been uniformly endorsed in countless post-*Comcast* securities class certification decisions. Indeed, over five years after *Comcast* was decided, Defendants are unable to point to a *single* securities opinion where a class invoking the event study methodology was not ultimately certified.[24] Rather, courts have unanimously recognized that "[t]he event study method is an accepted method for the evaluation of [] damages to a class" that satisfies *Comcast*. *In re Diamond Foods, Inc.*, 295 F.R.D. 240, 251-52 (N.D. Cal 2013); *accord Angley v. UTi Worldwide Inc.*, 311 F. Supp. 3d 1117, 1129 (C.D. Cal. 2018) ("courts have recognized the event study/out of pocket method as proposed by [plaintiffs] is an accepted method for calculating damages in securities fraud class actions"); *Luna v. Marvell Tech. Grp., Ltd.*, 2017 WL 4865559, at *6 (N.D. Cal. Oct. 27, 2017) ("use of an event study to isolate damages stemming from a particular cause is . . . a feature of virtually every securities action, which must account for stock fluctuations unrelated to the particular theory of liability asserted in the case"); *City of Miami Gen. Emps.' and Sanitation Emps. Ret. Tr. v. RH, Inc.*, 2018 WL 4931543, at *3 (N.D. Cal. Oct. 11, 2018) ("Courts regularly reaffirm that the out-of-pocket, or event study, method matches plaintiffs' theory of liability under Section 10(b) of the Securities Exchange Act, making it the standard method for calculating damages in virtually every Section 10(b) class action.") (collecting cases).[25]

---

materialization of a concealed risk. The decline in a security's price in response to such events reflects the dissipation of price inflation created by earlier misrepresentations and/or omissions. An event study can be used to isolate Company-specific price movement caused by the revelation of true facts related to the alleged fraud from price movement caused by other factors.").

[24] Recognizing this, Defendants resort to facutally distinguishable consumer cases. *In re POM Wonderful LLC*, 2014 WL 1225184, at *5 (C.D. Cal. Mar. 25, 2014) (expert in false advertising case improperly "assumed, without any methodology at all to support the assumption, that not a single consumer would have chosen Pom juice over some agglomeration of orange, grapefruit, apple, and grape juice if not for Pom's allegedly deceptive advertising"); *Werdebaugh v. Blue Diamond Growers*, 2014 WL 7148923, at *10 (N.D. Cal. Dec. 15, 2014) (expert in in false advertising case "cannot isolate the harm (e.g., the price premium) attributable only to the labeling claims, rather than to the joint effect of both the labeling claims and the value of Blue Diamond's brand").

[25] Unlike *Comcast*, an antitrust case where defendants' misconduct caused four discrete types of impact, each of which caused different harm to 649 markets in differing degrees (and three of which had been rejected), here, there is a single theory of liability

REPLY IN FURTHER SUPPORT OF LEAD PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

Nor should Defendants' unsubstantiated grumblings that Dr. Nye's event study methodology is too "speculative" be afforded any weight. DB 15-16. Dr. Nye has already performed a comprehensive event study for Snap common stock that determined with over 95% confidence that new information disclosed by Snap, as opposed to market or industry factors, caused Snap's stock price declines on the five alleged corrective disclosure dates. *See* Nye Rpt. ¶¶ 48-53. Tellingly, Defendants have not mounted a single challenge to Dr. Nye's event study or its statistical results.

Dr. Nye's proffered Section 11 event study damages methodology is thus more than sufficient to satisfy *Comcast*. *See In re Montage Tech. Grp. Ltd. Sec. Litig.*, 2016 WL 1598666, at *13 (N.D. Cal. Apr. 21, 2016) (*Comcast* satisfied because "[plaintiffs' expert] conducted a price impact [event study] analysis[.]"); *STAAR*, 2017 WL 821662, at *8-9 (same); *Baker*, 2017 WL 5885542, at *13-14 (rejecting assertion that "Plaintiffs fail to proffer a class-wide method for computing damages" and offer only "a hypothetical damages model" where plaintiffs' expert offered an event study methodology).

### 4. Plaintiffs Need Not Prove Loss Causation at Class Certification

Defendants' assertion that Dr. Nye's Section 11 damages methodology is insufficient for failure to disaggregate "confounding factors" fares no better. DB 16. The Supreme Court has expressly foreclosed loss causation challenges at the class certification stage. *Halliburton I*, 563 U.S. at 807. Thus, post-*Comcast* securities opinions consistently reject these same types of merits-based arguments. *See, e.g.*, *Luna*, 2017 WL 4865559, at *6 ("Defendants' argument that Professor Feinstein has not shown how he will disaggregate price inflation attributable to confounding events is not, as defendants would have it, an attack on his damages model, but is rather an inquiry into loss causation. Loss causation, however, need not be analyzed at the class certification stage."); *Baker*, 2017

---

(misrepresentations and omissions related to Snap's user metrics) that caused one uniform injury (inflation) to one variable (Snap's stock price). 569 U.S. at 36-38. *See also In re Twitter Inc. Sec. Litig.*, 326 F.R.D. 619, 630 (N.D. Cal. 2018) (certifying Section 11 claims because "[i]n contrast [to *Comcast*], Plaintiffs' proposed damages model is based on only one theory of liability: that [the company's] alleged misrepresentations . . . 'artificially inflated prices, resulting in price declines when the true nature of those [facts] was revealed'") (quoting *Luna*, 2017 WL 4865559, at *6).

23          Case No. 2:17-cv-03679-SVW-AGR
REPLY IN FURTHER SUPPORT OF LEAD PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

WL 5885542, at *12 ("[I]nquiries into loss causation are properly addressed by a fact-finder on the merits; Plaintiffs need not show loss causation as a condition of class certification.") (alteration in original); *Hatamian v. Advanced Micro Devices, Inc.*, 2016 WL 1042502, at *9 (N.D. Cal. Mar. 16, 2016) (same); *Diamond Foods*, 295 F.R.D. at 251-52 (same). There is no reason to deviate here.[26]

### 5. The Court Should Reject Defendants' Third Attempt to Relitigate "The Time Suit Was Brought"

Citing to identical authority, Defendants have twice argued that the "time [this] suit was brought" is the date of the first-filed complaint (i.e., May 16, 2017). *See* ECF No. 73-1 at 25; ECF No. 94-1 at 8-10. And the Court has twice rejected Defendants' arguments, explaining that "Plaintiffs have adequately pled Section 11 damages under either interpretation of 'value' as used in Section 11(e)." ECF No. 108 at 3.

Defendants' recycled argument fares no better here, as it does not create any individualized issues in connection with the Rule 23 inquiry. The "time suit was brought" is merely an input in Dr. Nye's Section 11 damages methodology. Thus, regardless of which "time suit was brought" date the Court (or the jury) ultimately settles upon, that date will be input into Dr. Nye's damages methodology which, in turn, will be applied Class-wide to mechanically calculate damages for each Class member. *Blackie v. Barrack*, 524 F.2d 891, 905 (9th Cir. 1975) (in securities cases, "the process of computing individual damages will be virtually a mechanical task"); *see also* Nye Rpt. ¶ 61 ("With respect to 'the time such suit was brought,' as used in Section 11(e) above, it is my understanding that the Court or the ultimate trier of fact will ultimately determine the appropriate 'suit date' for purposes of calculating Section 11 damages" and "whichever

---

[26] Defendants' argument also confuses the relative burdens under Section 11 to account for confounding factors, as "[t]he *defendant* has the burden of proof on [loss causation], and bears a heavy burden." *Hildes v. Arthur Andersen LLP*, 734 F.3d 854, 860 (9th Cir. 2013) ("The affirmative defense of negative causation prevents recovery for losses that the *defendant* proves are not attributable to the alleged misrepresentation or omission in the registration statement."). This distinction is particularly relevant to Plaintiffs' price-based alternative theory of damages, which does not rely on an event study.

REPLY IN FURTHER SUPPORT OF LEAD PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

date is chosen by the trier of fact, it will be commonly applied in the calculation of per-share damages for all Class members with Section 11 claims.").[27]

Accordingly, Defendants' "time suit was brought" argument suffers from the same infirmity as their other "damages" arguments. They simply cannot explain how the arguments raised, even if credited, could splinter the Class in any way—let alone to such an extent that individual damage issues with respect to Section 11 claims could "predominate" and "overwhelm" the core common issues.

Given this, Defendants resort to arguing that "there is no way to calculate damages until the Court decides the date of the first-filed complaint." DB 17. But *Comcast* does not "articulate any requirement that a damage calculation be performed" for class treatment. *In re Cathode Ray Tube (CRT) Antitrust Litig.*, 2013 WL 5429718, at *22 (N.D. Cal. June 20, 2013); *see also In re Scotts EZ Seed Litig.*, 304 F.R.D. 397, 414 (S.D.N.Y. 2015) ("nothing in *Comcast* requires an expert to perform his [damages calculation] at the class certification stage"). Defendants' argument poses no barrier to class certification.

## III. CONCLUSION

For the reasons discussed above, and in Plaintiffs' Motion for Class Certification, the Court should certify the proposed Class, appoint Plaintiffs as Class Representatives, appoint Kessler Topaz as Class Counsel, and Rosman & Germain as Liaison Counsel.[28]

---

[27] In the MTD Order, the Court noted that "there are multiple Plaintiffs" who "have a valid claim under both theories—price-based and value-based—because they filed after the stock price dropped below the IPO price. This may pose a separate issue at class certification." *In re Snap*, 2018 WL 2972528, at *9 n.26. Respectfully, the date of suit is relevant only to which *defendants* Class members may pursue claims against. The claims of all Class members (i.e., Plaintiffs) will relate back under Rule 15(c) to whichever complaint is determined to be operative. *In re Barclays Bank PLC Sec. Litig.*, 2016 WL 3235290, at *6 (S.D.N.Y. June 9, 2016) (further explaining that "locking in the applicable damages at the filing of the first complaint promotes the statutory scheme by holding defendants liable for material misrepresentations regardless of post-filing changes in price"); *see also In re AOL Time Warner, Inc. Sec. & "ERISA" Litig.*, 381 F. Supp. 2d 192, 246 (S.D.N.Y. 2004) (using "the date the underwriter defendants were added to this lawsuit" to calculate Section 11 damages for such defendants).

[28] Upon grant of class certification, Lead Plaintiffs will promptly seek Court approval for class notice to ensure that the case remains on track for its February 11, 2020 trial.

Dated: July 26, 2019

Respectfully submitted,

**KESSLER TOPAZ
  MELTZER & CHECK, LLP**

*/s/ Sharan Nirmul*
SHARAN NIRMUL (*Pro Hac Vice*)
snirmul@ktmc.com
ETHAN J. BARLIEB (*Pro Hac Vice*)
ebarlieb@ktmc.com
NATHAN HASIUK (*Pro Hac Vice*)
nhasiuk@ktmc.com
JONATHAN F. NEUMANN (*Pro Hac Vice*)
jneumann@ktmc.com
SAMUEL C. FELDMAN (*Pro Hac Vice*)
sfeldman@ktmc.com
280 King of Prussia Road
Radnor, PA 19087
Telephone: (610) 667-7706
Facsimile: (267) 948-2512

- and -

JENNIFER L. JOOST (Bar No. 296164)
jjoost@ktmc.com
STACEY M. KAPLAN (Bar No. 241989)
skaplan@ktmc.com
JENNY L. PAQUETTE (Bar No. 321561)
jpaquette@ktmc.com
NICOLE T. SCHWARTZBERG (Bar No. 326212)
nschwartzberg@ktmc.com
One Sansome Street, Suite 1850
San Francisco, CA 94104
Telephone: (415) 400-3000
Facsimile: (415) 400-3001

*Attorneys for Lead Plaintiffs Smilka Melgoza, as trustee of the Smilka Melgoza Trust U/A DTD 04/08/2014, Rediet Tilahun, Tony Ray Nelson, Rickey E. Butler, and Alan L. Dukes, additional named Plaintiffs Donald R. Allen and Shawn B. Dandridge, and Lead Counsel for the Putative Class*

26                    Case No. 2:17-cv-03679-SVW-AGR
REPLY IN FURTHER SUPPORT OF LEAD PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

**WOLF, RIFKIN, SHAPIRO, SCHULMAN & RABKIN, LLP**
BRIAN SCHALL (Bar No. 155445)
bschall@wrslawyers.com
11400 West Olympic Blvd., Ninth Floor
Los Angeles, CA 90064
Telephone: (310) 478-4100
Facsimile: (310) 478-6363

*Additional Counsel for Lead Plaintiffs*

**ROSMAN & GERMAIN LLP**
DANIEL L. GERMAIN (Bar No. 143334)
Germain@lalawyer.com
16311 Ventura Boulevard, Suite 1200
Encino, CA 91436
Telephone: (818) 788 0877
Facsimile: (818) 788-0885

*Liaison Counsel for the Putative Class*

Case No. 2:17-cv-03679-SVW-AGR
REPLY IN FURTHER SUPPORT OF LEAD PLAINTIFFS' MOTION FOR CLASS CERTIFICATION