**GLANCY PRONGAY & MURRAY LLP**
ROBERT V. PRONGAY (SBN 270796)
rprongay@glancylaw.com
1925 Century Park East, Suite 2100
Los Angeles, CA 90067
Telephone: (310) 201-9150
Facsimile: (310) 432-1495

*Liaison Counsel for Lead Plaintiff*
*Arkansas Teacher Retirement*
*System and the Proposed Class*

**LABATON KELLER SUCHAROW LLP**
LAUREN A. ORMSBEE (*pro hac vice*)
lormsbee@labaton.com
140 Broadway
New York, NY 10005
Telephone: (212) 907-0700
Facsimile: (212) 818-0477

*Counsel for Lead Plaintiff*
*Arkansas Teacher Retirement System*
*and Lead Counsel for the Proposed Class*

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| LESLIE LILIEN, Individually and on Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br> v. <br><br> OLAPLEX HOLDINGS, INC., et al., <br><br> Defendants. | Case No. 2:22-cv-08395-SVW(SKx) <br><br> <u>CLASS ACTION</u> <br><br> **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF LEAD COUNSEL'S MOTION FOR AN AWARD OF ATTORNEYS' FEES AND EXPENSES** <br><br> Hearing Date: December 1, 2025 <br> Time: 1:30 p.m. <br> Courtroom: 10A <br> Judge: Hon. Stephen V. Wilson |

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES.................................................................................................ii

PRELIMINARY STATEMENT ........................................................................................1

ARGUMENT.....................................................................................................................3

I.    AN AWARD OF ATTORNEYS' FEES OF 25% OF THE COMMON FUND IS FAIR AND REASONABLE.....................................3

    A.    Plaintiffs' Counsel Are Entitled to an Award of Attorneys' Fees from the Common Fund..................................................3

    B.    A Reasonable Percentage of the Fund Recovered Is the Appropriate Method for Awarding Attorneys' Fees in Common Fund Cases ..........................................................4

    C.    The Requested Attorneys' Fees Would Be Reasonable ......................5

    D.    Analysis Under the *Vizcaino* Factors Justifies a Fee Award of 25% in this Case..........................................................7

        1.    The Result Achieved Supports the Fee Request ......................7

        2.    The Substantial Risks of Litigation Support the Fee Request .......................................................................10

        3.    The Skill Required and the Quality of Work Performed Support the Fee Request..........................................12

        4.    The Contingent Nature of the Fee and the Financial Burden Carried by Counsel Support the Fee Request.............13

        5.    Reaction of the Settlement Class to Date and the Approval of Lead Plaintiff Support the Fee Request..............15

    E.    A Lodestar Cross-check Confirms that the Requested Fee Would Be Reasonable..........................................................16

II.   PLAINTIFFS' COUNSEL'S EXPENSES ARE REASONABLE AND WERE NECESSARY TO ACHIEVE THE BENEFIT OBTAINED..........................................................................19

III.  LEAD PLAINTIFF'S REQUEST FOR REIMBURSEMENT PURSUANT TO 15 U.S.C § 77z-1(a)(4) ..........................................20

CONCLUSION.............................................................................21

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*In re Am. Apparel, Inc. S'hareholder Litig.*,
  2014 WL 10212865 (C.D. Cal. July 28, 2014) ...................................................12

*In re Amgen Inc. Sec. Litig.*,
  2016 WL 10571773 (C.D. Cal. Oct. 25, 2016) ...........................................16, 21

*Andrews v. Plains All Am, Pipeline L.P.*,
  2022 WL 4453864 (C.D. Cal. Sept. 20, 2022) .....................................................7

*Anixter v. Home-Stake Prod. Co.*,
  77 F.3d 1215 (10th Cir. 1996) ............................................................................14

*In re Apple Inc. Device Performance Litig.*,
  2023 WL 2090981 (N.D. Cal. Feb. 17, 2023) .......................................................5

*In re Apple Inc. Sec. Litig.*,
  2024 WL 4246282 (N.D. Cal. Sept. 18, 2024) ....................................................17

*Azar v. Blount Int'l, Inc.*,
  2019 WL 7372658 (D. Or. Dec. 31, 2019) ............................................................9

*In re BankAtlantic Bancorp, Inc.*,
  688 F.3d 713 (11th Cir. 2012) ............................................................................14

*Bateman Eichler, Hill Richards, Inc. v. Berner*,
  472 U.S. 299 (1985) .............................................................................................4

*In re Biolase, Inc. Sec. Litig.*,
  2015 WL 12720318 (C.D. Cal. Oct. 13, 2015) .....................................................9

*In re Bluetooth Headset Prods. Liab. Litig.*,
  654 F.3d 935 (9th Cir. 2011) ................................................................................5

*Boeing Co. v. Van Gemert*,
  444 U.S. 472 (1980) .............................................................................................3

*Brown v. China Integrated Energy Inc.*,
  2016 WL 11757878 (C.D. Cal. July 22, 2016) ...................................................12

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR AN AWARD OF ATTORNEYS' FEES AND EXPENSES
CASE NO. 2:22-CV-08395-SVW(SKx)

ii

*In re Extreme Networks, Inc. Sec. Litig.*,
    2019 WL 3290770 (N.D. Cal. July 22, 2019) ............................................... 16, 17

*Ferreira v. Funko, Inc.*,
    2022 WL 22877154 (C.D. Cal. Dec. 13. 2022) ...................................................20

*Glass v. UBS Fin. Servs. Inc.*,
    331 F. App'x. 452 (9th Cir. 2009).........................................................................4

*Hanlon v. Chrysler Corp.*,
    150 F. 3d 1011 (9th Cir. 1998)..........................................................................5, 7

*Harris v. Marhoefer*,
    24 F.3d 16 (9th Cir. 1994) ..............................................................................19, 20

*Hensley v. Eckerhart*,
    461 U.S. 424 (1983) ...........................................................................................7

*In re Heritage Bond Litig.*,
    2005 WL 1594389(C.D. Cal. June 10, 2005)........................................12, 13, 15

*In re Heritage Bond Litig.*,
    2005 WL 1594403 (C.D. Cal. June 10, 2005)...................................................6, 7

*Hicks v. Stanley*,
    2005 WL 2757792 (S.D.N.Y. Oct. 24, 2005) ...................................................21

*IBEW Local 697 Pension Fund v. Int'l Game Tech., Inc.*
    2012 WL 5199742 (D. Nev. Oct. 19, 2012).....................................................9, 10

*Jiangchen v. Rentech, Inc.*,
    2019 WL 5173771 (C.D. Cal. Oct. 10, 2019) ...................................................12

*In re Lucent Techs., Inc., Sec. Litig.*,
    327 F. Supp. 2d 426 (D.N.J. 2004)....................................................................16

*In re MacBook Keyboard Litig.*,
    2023 WL 3688452 (N.D. Cal. May 25, 2023) ....................................................6

*Marshall v. Northrop Gruman Corp.*,
    2020 WL 5668935 (C.D. Cal. Sept. 18, 2020)..................................................15

*Missouri v. Jenkins*,
    491 U.S. 274 (1989) ...........................................................................................17

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR AN AWARD OF
ATTORNEYS' FEES AND EXPENSES
CASE NO. 2:22-cv-08395-SVW(SKx)

iii

*Nguyen v. Radient Pharms. Corp.*,
  2014 WL 1802293 (C.D. Cal. May 6, 2014)....................................................4, 5

*In re Omnivision Techs., Inc.*,
  559 F. Supp. 2d 1036 (N.D. Cal. 2008) ...............................................7, 10, 13

*In re Online DVD-Rental Antitrust Litig.*,
  779 F.3d 934 (9th Cir. 2015)................................................................5, 6, 7

*In re Oracle Corp. Sec. Litig.*,
  No. C 01-00988 SI, 2009 WL 1709050 (N.D. Cal. June 19, 2009),
  *aff'd*, 627 F.3d 376 (9th Cir. 2010) .................................................................14

*In re Pac. Enters. Sec. Litig.*,
  47 F.3d 373 (9th Cir. 1995)...............................................................................10

*In re QuantumScape Sec. Class Action*,
  2025 WL 353556 (N.D. Cal. Jan. 22, 2025) .....................................................6

*Redwen v. Sino Clean Energy, Inc.*,
  2013 WL 12303367 (C.D. Cal. July 9, 2013) ..................................................10

*Robbins v. Koger Props., Inc.*,
  116 F.3d 1441 (11th Cir. 1997)........................................................................14

*Rutti v. Lojack Corp. Inc.*,
  2012 WL 3151077 (C.D. Cal. July 31, 2012) ..................................................17

*In re Silver Wheaton Corp. Sec. Litig.*,
  2020 WL 4581642 (C.D. Cal. Aug. 6, 2020) .....................................................6

*In re Snap Inc. Sec. Litig.*,
  2021 WL 12356004 (C.D. Cal. Mar. 9, 2021) ...................................................7

*In Re Snap Inc. Sec. Litig.*,
  2021 WL 667590 (C.D. Cal. Feb. 18, 2021)........................................2, 4, 6, 15

*In re Stable Rd. Acquisition Corp.*,
  2024 WL 3643393 (C.D. Cal. Apr. 23, 2024)..................................5, 6, 13, 17

*Tait v. BSH Home Appliances Corp.*,
  2015 WL 4537463 (C.D. Cal. July 27, 2015) .....................................................4

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR AN AWARD OF ATTORNEYS' FEES AND EXPENSES
CASE NO. 2:22-cv-08395-SVW(SKx)

iv

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
   551 U.S. 308 (2007) ..................................................................................4, 13, 14

*Vataj v. Johnson*,
   2021 WL 5161927 (N.D. Cal. Nov. 5, 2021)........................................................9

*Vincent v. Hughes Air W., Inc.*,
   557 F.2d 759 (9th Cir. 1977).................................................................................3

*Vincent v. Reser*,
   2013 WL 621865 (N.D. Cal. Feb. 19, 2013).....................................................3, 19

*Vizcaino v. Microsoft Corp.*,
   290 F.3d 1043 (9th Cir. 2002)......................................................................*passim*

*In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prods.*
   *Liab. Litig.*,
   2019 WL 2077847 (N.D. Cal. May 10, 2019) ......................................................6

*Wang v. Dada Nexus Ltd.*,
   2025 WL 1722997 (C.D. Cal. Mar. 14, 2025) ......................................................5

*In re Wash. Pub. Power Supply Sys. Sec. Litig. (WPPSS)*,
   19 F.3d 1291 (9th Cir. 1994), *aff'd in part*, *Class Plaintiffs v. Jaffe*
   *Schlesinger, P.A.*, 19 F.3d 1306 (9th Cir. 1994) .........................................3, 4, 7

*In re Xcel Energy, Inc. Sec., Derivative & "ERISA" Litig.*,
   364 F. Supp. 2d 980 (D. Minn. 2005) ................................................................15

**Docketed Cases**

*In re Alphabet Inc. Sec. Litig.*,
   No. 18-cv-06245, slip op. (N.D. Cal. Sept. 30, 2024)................................ 18, 19

*In re Hewlett-Packard Co. Sec. Litig.*,
   No. SACV 11-1404, slip op. (C.D. Cal. Sept. 15, 2014) ....................................6

*In re Intuitive Surgical Sec. Litig.*,
   Case No. 5:13-cv-01920, slip op. (N.D. Cal. Dec. 20, 2018) ..........................21

*In re Sandisk LLC Sec. Litig.*,
   No. 3:15-cv-01455-VC, slip op. (N.D. Cal. Oct. 23, 2019)..............................6

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR AN AWARD OF
ATTORNEYS' FEES AND EXPENSES
CASE NO. 2:22-CV-08395-SVW(SKx)

v

*In re Tezos Sec. Litig.*,
No. 17-cv-06779-RS, slip op. (N.D. Cal. Aug. 28, 2020) ............................... 6, 7

*In re Twitter Inc. Sec. Litig.*,
No. 4:16-cv-05314, ECF No. 661 (N.D. Cal. Oct. 13, 2022) ........................... 19

*In re Twitter Inc. Sec. Litig.*,
No. 4:16-cv-05314, ECF No. 670 (N.D. Cal. Oct. 13, 2022) ........................... 19

**Statutes**

15 U.S.C § 77k(e) ................................................................................................ 11

15 U.S.C. § 78u-4(a)(6) ......................................................................................... 5

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR AN AWARD OF ATTORNEYS' FEES AND EXPENSES
CASE NO. 2:22-CV-08395-SVW(SKX)

vi

Lead Counsel, Labaton Keller Sucharow LLP ("Lead Counsel" or "Labaton"), respectfully submits this memorandum of points and authorities in support of its application, on behalf of itself and Liaison Counsel Glancy Prongay & Murray LLP (together "Plaintiffs' Counsel"), for an Order, pursuant to Fed. R. Civ. P. 23(e) and 54(d): (i) awarding attorneys' fees of 25% of the Settlement Fund created through the settlement of this Action; (ii) approving payment of Plaintiffs' Counsel's Litigation Expenses in the amount of $771,674.27; and (iii) approving Lead Plaintiff's request for reimbursement related to its representation of the Settlement Class, pursuant to the Private Securities Litigation Reform Act of 1995, 15 U.S.C. § 77z-1(a)(4) ("PSLRA"), in amount of $10,006.63.[1]

## PRELIMINARY STATEMENT

As detailed in the Stipulation and Agreement of Settlement, the proposed Settlement, if approved by the Court, will resolve the Action in its entirety in exchange for a cash payment of $47,500,000. Lead Counsel and Lead Plaintiff believe the Settlement is a very favorable result and it provides substantial and certain compensation to Settlement Class Members while avoiding the significant risks and delay associated with pursuing the Action through class certification, summary judgment, trial and the inevitable appeals that would follow, including the risk that there might be no recovery at all.

In order to achieve this significant recovery, Lead Counsel vigorously litigated the claims in this securities class action for more than two and a half years on a fully contingent basis. In litigating the Action, Lead Counsel worked diligently on behalf of the class and expended extensive time and resources to ensure the best possible recovery for class members, all without any guarantee of a recovery and compensation. As detailed in the Declaration of Lauren A. Ormsbee, dated October

---

[1] The terms of the Settlement are set forth in the Stipulation and Agreement of Settlement ("Stipulation"), dated August 1, 2025. ECF No. 224-3. All capitalized terms used herein are defined in the Stipulation and have the same meanings as set forth therein.

27, 2025 ("Ormsbee Declaration" or "Ormsbee Decl."),[2] filed herewith, Lead Counsel engaged in a thorough pre-discovery investigation; prepared a detailed amended complaint based on that investigation; opposed four extensive motions to dismiss; argued against the motions to dismiss in two in-person oral arguments; briefed class certification and served two expert reports in connection with class certification; built the case through extensive fact discovery, which included the review of more than approximately 50,000 documents (412,000 pages) and taking or defending four depositions and preparing for 16 others; negotiated discovery disputes; and consulted with experts in the fields of negative causation, damages, tracing, reformulation, and corporate brand reputation and image. The Parties also exchanged extensive mediation briefing and participated in a formal mediation.

For these efforts, Plaintiffs' Counsel respectfully request an award of attorneys' fees of 25% of the Settlement Fund, which includes accrued interest; Litigation Expenses in the amount of $771,674.27, plus accrued interest; and reimbursement in the amount of $10,006.63 to Lead Plaintiff, pursuant to the PSLRA, for its efforts on behalf of the Settlement Class.

As discussed herein, as well as in the Ormsbee Declaration, Lead Counsel respectfully submits that the requested fee is fair and reasonable under the circumstances of this case given the excellent recovery obtained for the Settlement Class, the considerable litigation efforts undertaken by counsel, and the risks and challenges presented by the complex issues in this case. The request for attorneys' fees of 25% of the Settlement Fund is the benchmark in this Circuit (*see, e.g.*, *In Re Snap Inc. Sec. Litig.*, 2021 WL 667590, at *3 (C.D. Cal. Feb. 18, 2021) (J. Wilson)), and the reasonable lodestar "multiplier" of approximately 2.05 confirms that the fee

---

[2] The Ormsbee Declaration is an integral part of this motion and is incorporated herein by reference. For the sake of brevity, the Court is respectfully referred to it for, *inter alia*, a detailed description of the allegations and claims, the procedural history of the Action, the risks faced in pursuing the litigation, the efforts that led to a settlement, and a description of the services provided by Plaintiffs' Counsel. Citations to "¶" in this motion refer to paragraphs of the Ormsbee Declaration.

would be fair and is in line with the risks shouldered by counsel on behalf of the Settlement Class. Moreover, the requested fee and expenses have been approved by Lead Plaintiff Arkansas Teacher Retirement System ("ATRS" or "Lead Plaintiff"). *See* Ex. 1 at ¶¶6, 15.[3] Accordingly, it is respectfully submitted that the requested fees, Litigation Expenses, and PSLRA request should be awarded in full.

## ARGUMENT

## I.    AN AWARD OF ATTORNEYS' FEES OF 25% OF THE COMMON FUND IS FAIR AND REASONABLE

### A.    Plaintiffs' Counsel Are Entitled to an Award of Attorneys' Fees from the Common Fund

It is well settled that attorneys who represent a class and achieve a benefit for class members are entitled to a reasonable fee as compensation for their services. The Supreme Court has recognized that "a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole." *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980).[4] *See also Vincent v. Reser*, 2013 WL 621865, at *4 (N.D. Cal. Feb. 19, 2013) (quoting *Boeing*, 444 U.S. at 478). Indeed, the Ninth Circuit has expressly reasoned that "a private plaintiff, or his attorney, whose efforts create, discover, increase or preserve a fund to which others also have a claim is entitled to recover from the fund the costs of his litigation, including attorneys' fees." *Vincent v. Hughes Air W., Inc.*, 557 F.2d 759, 769 (9th Cir. 1977). The purpose of this rule, known as the "common fund doctrine," is to prevent unjust enrichment so that "those who benefit from the creation of the fund should share the wealth with the lawyers whose skill and effort helped create it." *In re Wash. Pub. Power Supply*

---

[3] All exhibits referenced herein are annexed to the Ormsbee Declaration. For clarity, citations to exhibits that themselves have attached exhibits, will be referenced as "Ex.\_\_-\_\_." The first numerical reference is to the designation of the entire exhibit to the Ormsbee Declaration, and the second alphabetical reference is to the exhibit designation within the exhibit itself.

[4] All internal quotations and citations are omitted unless otherwise noted.

*Sys. Sec. Litig. (WPPSS)*, 19 F.3d 1291, 1300 (9th Cir. 1994), *aff'd in part*, *Class Plaintiffs v. Jaffe Schlesinger, P.A.*, 19 F.3d 1306 (9th Cir. 1994).

The Supreme Court has also emphasized that private securities actions, like this Action, are "an essential supplement to criminal prosecutions and civil enforcement actions" brought by the U.S. Securities and Exchange Commission ("SEC"). *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 313 (2007); *accord Bateman Eichler, Hill Richards, Inc. v. Berner*, 472 U.S. 299, 310 (1985) (private securities actions provide "'a most effective weapon in the enforcement' of the securities laws and are 'a necessary supplement to [SEC] action'").

### B.     A Reasonable Percentage of the Fund Recovered Is the Appropriate Method for Awarding Attorneys' Fees in Common Fund Cases

Although courts within the Ninth Circuit have discretion to employ either the lodestar or percentage method of calculating fees, in *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047-48 (9th Cir. 2002), the Ninth Circuit has expressly approved the use of the percentage method in common fund cases. *See Glass v. UBS Fin. Servs. Inc.*, 331 F. App'x. 452, 456-57 (9th Cir. 2009) (affirming district court's use of percentage of recovery method to award fee). The percentage-of-recovery method for awarding attorneys' fees is preferable in cases with a common-fund recovery as it "align[s] the lawyers' interests with achieving the highest award for class members, and reducing the burden on the courts that a complex lodestar calculation requires." *Tait v. BSH Home Appliances Corp.*, 2015 WL 4537463, at *11 (C.D. Cal. July 27, 2015); *Nguyen v. Radient Pharms. Corp.*, 2014 WL 1802293, at *9 (C.D. Cal. May 6, 2014). *See also In Re Snap Inc. Sec. Litig.,* 2021 WL 667590, at *3 (C.D. Cal. Feb. 18, 2021) (J. Wilson) ("because this is a common fund settlement, a percentage of recovery method is appropriate").

Indeed, "the use of the percentage-of-the fund method in common fund cases is the prevailing practice in the Ninth Circuit for awarding attorneys' fees and

permits the Court to focus on showing that a fund conferring benefits on a class was created through the efforts of plaintiffs' counsel." *In re Apple Inc. Device Performance Litig.*, 2023 WL 2090981, at *12 (N.D. Cal. Feb. 17, 2023).

Further, the percentage of the fund method is appropriate in common fund cases where "the benefit to the class is easily quantified." *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 942 (9th Cir. 2011); *In re Stable Rd. Acquisition Corp.*, 2024 WL 3643393, at *11 (C.D. Cal. Apr. 23, 2024) ("where there is an easily quantifiable benefit to the class—such as a cash common fund—the percentage-of-the-fund approach is the prevailing method").

The use of the percentage-of-recovery method also comports with the language of the PSLRA, which states that "[t]otal attorneys' fees and expenses awarded by the court to counsel for the plaintiff class shall not exceed a reasonable percentage of the amount of any damages and prejudgment interest actually paid to the class." 15 U.S.C. § 78u-4(a)(6); *see Wang v. Dada Nexus Ltd.*, 2025 WL 1722997, at *10 (C.D. Cal. Mar. 14, 2025) (noting that "using the percentage method is proper in a securities fraud case"); *Nguyen,* 2014 WL 1802293, at *9 ("[T]he PSLRA has made percentage-of-recovery the standard for determining whether attorney's fees are reasonable.").

### C.   The Requested Attorneys' Fees Would Be Reasonable

"In applying the percentage of the fund method, the Ninth Circuit has established 25% as a 'benchmark' percentage, which may be adjusted depending on the circumstances of a case." *Vizcaino*, 290 F.3d at 1047); *see also Bluetooth*, 654 F.3d at 942 ("Courts typically calculate 25% of the fund as the 'benchmark' for a reasonable fee award, providing adequate explanation in the record of any 'special circumstances' justifying a departure"). *Hanlon v. Chrysler Corp.*, 150 F. 3d 1011, 1029 (9th Cir. 1998) ("This circuit has established 25% of the common fund as a benchmark for attorneys' fees."); *In re Online DVD-Rental Antitrust Litig.*, 779

F.3d 934, 949 (9th Cir. 2015) ("Under the percentage-of-recovery method, the attorneys' fees equal some percentage of the common settlement fund; in this circuit, the benchmark is 25%."); *In Re Snap Inc. Sec. Litig.,* 2021 WL 667590, at *3 ("The requested percentage is equal to the Ninth Circuit's well-established 'benchmark' for percentage fees in common fund cases."); *In re Stable Rd. Acquisition Corp.*, 2024 WL 3643393, at *12 ("The Ninth Circuit has established twenty-five percent as the 'benchmark' award that should be granted in common fund cases.").

Here, Lead Counsel requests the 25% benchmark as compensation. A review of fee awards in securities and other complex common fund cases within the Ninth Circuit shows that an award of 25% here would be very comparable to awards in similarly sized settlements. *See*, *e.g.*, *In re Silver Wheaton Corp. Sec. Litig.*, 2020 WL 4581642, at *4 (C.D. Cal. Aug. 6, 2020) (awarding 30% of $41.5 million settlement); *In re Hewlett-Packard Co. Sec. Litig.*, No. SACV 11-1404, slip op. at 2 (C.D. Cal. Sept. 15, 2014) (awarding 25% of $57 million settlement) (Ex. 6);[5] *In re Heritage Bond Litig.*, 2005 WL 1594403, at *19 (C.D. Cal. June 10, 2005) (awarding 33.33% of $27,783,000 settlement and noting "courts in this circuit, as well as other circuits have awarded attorneys' fees of 30% or more in complex class actions"); *In re QuantumScape Sec. Class Action*, 2025 WL 353556, at *5-6 (N.D. Cal. Jan. 22, 2025) (awarding 30% of $47.5 million settlement); *In re Sandisk LLC Sec. Litig.*, No. 3:15-cv-01455-VC, slip op. at 2 (N.D. Cal. Oct. 23, 2019) (Ex. 6) (awarding 25% of $50 million settlement); *In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prods. Liab. Litig.*, 2019 WL 2077847, at *4 (N.D. Cal. May 10, 2019) (awarding 25% of $48 million settlement); *In re MacBook Keyboard Litig.*, 2023 WL 3688452, at *13-14 (N.D. Cal. May 25, 2023) (awarding 30% of $50 million settlement); *In re Tezos Sec. Litig.*, No. 17-cv-06779-RS, slip op. at 2 (N.D.

[5] All unreported "slip" opinions are annexed as Exhibit 6 to the Ormsbee Declaration.

Cal. Aug. 28, 2020) (awarding 33 1/3% of $25 million settlement) (Ex. 6).[6]

As discussed below, Lead Counsel respectfully submits that the requested fee is warranted in this case, given the results achieved, the difficulty and complexity of the claims, the obstacles and challenges faced by Lead Counsel, and the extensive time and labor dedicated by counsel.

### D. Analysis Under the *Vizcaino* Factors Justifies a Fee Award of 25% in this Case

The guiding principle in the Ninth Circuit is that a fee award must be "reasonable under the circumstances." *WPPSS*, 19 F.3d at 1296; *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1047 (N.D. Cal. 2008). In assessing attorneys' fees under the percentage method, the Court can consider the following factors: (i) the results achieved; (ii) the risk of litigation; (iii) the skill required and quality of the work; (iv) awards made in similar cases; and (v) the contingent nature of the fee and financial burden carried by counsel. *See Vizcaino*, 290 F.3d at 1048-50; *see also In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 954-55 (9th Cir. 2015).

The Ninth Circuit has explained that these factors should not be used as a rigid checklist or weighed individually, but, rather, should be evaluated in light of the totality of the circumstances. *Hanlon,* 150 F.3d at 1029.

### 1. The Result Achieved Supports the Fee Request

Courts have consistently recognized that the result achieved is a key factor to be considered in making a fee award. *Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983) (noting "the most critical factor is the degree of success obtained"); *In re Heritage Bond Litig.*, 2005 WL 1594403, at *19 ("The result achieved is a significant factor to be considered in making a fee award."). Lead Counsel

---

[6] Awards of 25% or more have also been awarded in much larger class action settlements in courts throughout the Ninth Circuit. *See, e.g., In re Snap Inc. Sec. Litig.*, 2021 WL 12356004, at *1 (awarding 25% of $154.687,500 million settlement) (J. Wilson); *Andrews v. Plains All Am, Pipeline L.P.*, 2022 WL 4453864, at *4 (C.D. Cal. Sept. 20, 2022) (awarding 32% of $230 million settlement).

respectfully submits that the $47.5 million proposed Settlement is an excellent result for the Settlement Class, both quantitatively and when considering the risk of a lesser (or no) recovery if the case proceeded through summary judgment, trial, and appellate challenges.

Lead Plaintiff and Lead Counsel also believe the $47.5 million recovery is fair and reasonable when considering the median recovery in other securities class actions that settled in 2024, as well as those from 2015 to 2024, that, like this Action, alleged only Securities Act claims, which for all cases, of all sizes, was $10.3 million. *See* Laarni T. Bulan and Eric Tam, *Securities Class Action Settlements – 2024 Review and Analysis* (Cornerstone Research 2025), Ex. 2 at 8.

As discussed in the Ormsbee Declaration and the Memorandum of Points and Authorities in Support of Lead Plaintiff's Motion for Final Approval of Class Action Settlement and Plan of Allocation ("Settlement Memorandum"), Lead Counsel submits that the Settlement also returns a favorable percentage of the class's alleged damages. ¶¶9-10, 104-110.  According to analyses prepared by Lead Plaintiff's consulting damages expert, maximum statutory damages that could have been obtained at trial were approximately $753 million. ¶106. However, Defendants and their experts would have pursued several credible arguments that any recoverable damages should be much lower, ***if not zero***, because of negative causation (*i.e.*, the decline in stock price was caused by something other than the alleged misstatements or omissions). ¶¶107-109.

According to Lead Plaintiff's expert, likely recoverable damages based on only price declines allegedly related to the sustained risk factor statements could have totaled approximately $390 million, half of the statutory damages figure. ¶107. Additionally, Defendants would likely have put forward additional negative causation arguments with respect to these price declines. For example, Defendants would have likely argued that social media posts and press coverage about

Olaplex's use of the ingredient at issue, the ingredient's potential safety risks, the EU ban on the ingredient, and the ingredients in the No. 3 product had been fully disclosed on February 28, 2022 and March 1, 2022, such that losses after March 1, 2022 could not be proven. If successful, this argument could have reduced statutory damages to between approximately $41.5 million and $96 million, depending on the modeling assumptions used. ¶108. Thus, the Settlement recovers at least 6.3% of maximum statutory damages ($753 million), 12.2% of likely recoverable damages assuming Lead Plaintiff succeeded in retaining all alleged related stock price drops, and potentially 100% of damages under other scenarios. ¶¶10, 110; Settlement Memorandum at §I.D.1.

In the sphere of securities class actions, Lead Plaintiff and Lead Counsel believe this is an excellent outcome. According to Cornerstone Research, for Securities Act cases with total estimated damages of $150 million or more, the median percentage of recovery from 2015 to 2024 was 5.7% of total estimated damages, and the median percentage of recovery for all Securities Act cases from 2015 to 2024 was 7.9%. Ex. 2 at 9. Moreover, courts in this Circuit have approved settlements with comparable or lower percentage recoveries than obtained here. *See, e.g., Vataj v. Johnson*, 2021 WL 5161927, at *6 (N.D. Cal. Nov. 5, 2021) (approving settlement recovering "slightly more than 2% of [] estimated damages" and noting that it was "consistent with the 2-3% average recovery that the parties identified in other securities class action settlements"); *Azar v. Blount Int'l, Inc.*, 2019 WL 7372658, at *7 (D. Or. Dec. 31, 2019) (approving settlement recovering "4.63 to 7.65 percent of the Class's total damages as Plaintiffs estimated" ); *In re Biolase, Inc. Sec. Litig.*, 2015 WL 12720318, at *4 (C.D. Cal. Oct. 13, 2015) (finding settlement recovering 8% of estimated damages "equals or surpasses the recovery in many other securities class actions"); *IBEW Local 697 Pension Fund v. Int'l Game Tech., Inc.* 2012 WL 5199742, at *3 (D. Nev. Oct. 19, 2012) (approving

settlement representing "about 3.5% of the maximum damages that Plaintiffs believe[d] could be recovered").

In sum, Lead Counsel respectfully submits that the very favorable recovery here supports approval of the fee request.

### 2. The Substantial Risks of Litigation Support the Fee Request

The risk involved in litigation is also an important factor in determining a fair fee award. *Vizcaino*, 290 F.3d at 1048 (noting "[r]isk is a relevant circumstance" in awarding attorneys' fees); *In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 379, n.10 (9th Cir. 1995) (finding that attorneys' fees were justified "because of the complexity of the issues and the risks"); *see also In re Omnivision Techs. Inc.*, 559 F. Supp. 2d at 1047 (noting that the risk of litigation, including the ability to prove loss causation and the risk that Defendants prevail on damages, support the requested fee); *Redwen v. Sino Clean Energy, Inc.*, 2013 WL 12303367, at *6 (C.D. Cal. July 9, 2013) (noting that "Courts experienced with securities fraud litigation 'routinely recognize that securities class actions present hurdles to proving liability that are difficult for plaintiffs to clear'"").

As set forth in Section VI. of the Ormsbee Declaration, Lead Counsel confronted, and would continue to do so if the litigation had continued, a number of significant legal and factual challenges during the course of the litigation. Establishing the fundamental elements of materiality and falsity of the alleged misstatements in the Offering Documents was a major undertaking. For example, Defendants likely would have argued that the factual record refutes Lead Plaintiff's claims that Olaplex materially misled investors of the risks regarding the potential impact of the EU's ingredient ban or the future risk of Olaplex products being found unsafe. At the time of the IPO, Olaplex had already reformulated its No. 3 product to remove the ingredient in advance of and in compliance with the E.U.'s ban on March 1, 2022. Defendants would likely argue that the Company did not view the

reformulation to be a major change and did not expect the change to have a material adverse impact on Olaplex's performance, and the reformulation did not impact Olaplex sales or otherwise affect Olaplex's financial results prior to the IPO. Defendants would have continued to argue that the No. 3 product was not found to be unsafe in the years before the IPO, and that the facts adduced in evidence would corroborate Defendants' arguments undercutting falsity. ¶¶98-101.

Moreover, Defendants likely would have argued at summary judgment that relevant information about the EU's ban of the ingredient was in the public domain. In support of this "actual knowledge" affirmative defense, Defendants would argue that reasonable investors knew of the alleged truth at the time of their purchases and are therefore not entitled to recover under the Securities Act. Defendants would likely continue to argue that prior to Olaplex's IPO, information regarding the EU ban could be found in public regulatory filings, scientific studies, product labels, and online sources, all of which were available to shareholders and the broader market. Defendants would likely continue to argue that the ingredients in Olaplex's No. 3 hair care product were publicly available information. Olaplex's "actual knowledge" defense, if believed by the Court or a jury, could have ultimately resulted in no liability. ¶102.

As discussed above, a key challenge faced by Lead Counsel was the difficulty of overcoming Defendants' negative causation defenses, particularly the "disaggregation" of confounding or unrelated information from the alleged stock price declines. *See* 15 U.S.C § 77k(e). This defense is extremely complex and expert driven, weighing intricate factual and statistical elements. Lead Plaintiff and the class could have been left with ***no recoverable damages*** because of rulings and findings about causation issues, including after even a favorable jury verdict. ¶¶107-109.

There were also substantial risks that the Court or the jury might not agree

with Lead Plaintiff's evidence with respect to these expert-driven issues, resulting in no recovery for the Settlement Class and no attorneys' fees for counsel. *See Brown v. China Integrated Energy Inc.*, 2016 WL 11757878, at *11 (C.D. Cal. July 22, 2016) ("Plaintiffs acknowledge that much of their evidence would have been expert witness testimony that may not have been credited by the factfinder ... and they may have difficulty collecting any judgment they might obtain against Defendants" meaning "the high risks associated with this litigation weigh in favor of awarding Lead Counsel's requested fee.").

Lead Counsel worked diligently to achieve a significant result for the Settlement Class in the face of these very real risks. Under these circumstances, the requested fee is appropriate.

### 3. The Skill Required and the Quality of Work Performed Support the Fee Request

Courts have recognized that the "prosecution and management of a complex national class action requires unique legal skills and abilities." *In re Heritage Bond Litig.*, 2005 WL 1594389, at *12; *see also Vizcaino,* 290 F.3d at 1048. "This is particularly true in securities cases because the Private Securities Litigation Reform Act makes it much more difficult for securities plaintiffs to get past a motion to dismiss." *Jiangchen* v. *Rentech, Inc.*, 2019 WL 5173771, at *10 (C.D. Cal. Oct. 10, 2019) (quoting *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d at 1047); *see also In re Am. Apparel, Inc. S'hareholder Litig.,* 2014 WL 10212865, at *22 (C.D. Cal. July 28, 2014) (approving fee request and noting that the "difficulty of securities litigation generally [] required skilled counsel familiar with the relevant statutes and case law).

Lead Counsel—a firm that practices extensively in the highly challenging field of securities litigation and has skillfully litigated these types of cases in courts across the country through trial (*see* firm resume of Labaton Keller Sucharow LLP, Ex. 7-D) – engaged in a rigorous and concerted effort to obtain the maximum

recovery for the Settlement Class. This case required a wide ranging and deep investigation, a thorough understanding of complex factual and legal issues, fact and expert discovery, class certification efforts, and the skill to respond to the host of challenges that Defendants raised during the litigation. *See generally* Ormsbee Declaration. Counsel's efforts have resulted in a notable result for the Settlement Class, particularly in light of the risks of a decision on class certification, looming summary judgment motions and pre-trial challenges.

Accordingly, the quality of the legal services provided over the course of this case, together with Lead Counsel's substantial experience and commitment to the litigation, support the requested fee.

The quality of opposing counsel is also important in evaluating the quality of the work done by Plaintiffs' Counsel. *See, e.g.*, *In re Heritage Bond*, 2005 WL 1594389, at *12. Here, Lead Counsel was opposed by very skilled and highly respected lawyers, with a well-deserved reputation for vigorous advocacy in the defense of complex civil cases such as this.

### 4. The Contingent Nature of the Fee and the Financial Burden Carried by Counsel Support the Fee Request

It has long been recognized that attorneys are entitled to a larger fee when their compensation is contingent in nature. *See Vizcaino*, 290 F.3d at 1048-50; *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d at 1047 ("The importance of assuring adequate representation for plaintiffs who could not otherwise afford competent attorneys justifies providing those attorneys who do accept matters on a contingent-fee basis a larger fee than if they were billing by the hour or on a flat fee."); *see also In re Stable Rd. Acquisition Corp.*, 2024 WL 3643393, at *13 ("the fact that Lead Counsel took this case on a contingent basis supports the fee request").

The Supreme Court has also emphasized that private securities actions such as this "provide 'a most effective weapon in the enforcement' of the securities laws and are 'a necessary supplement to [SEC] action.'" *Tellabs, Inc. v. Makor Issues &*

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR AN AWARD OF ATTORNEYS' FEES AND EXPENSES
CASE NO. 2:22-CV-08395-SVW(SKX)

13

*Rights, Ltd.*, 551 U.S. 308, 318-19 (2007). Yet, vigorous private enforcement of the federal securities laws can only occur if private plaintiffs can obtain some semblance of parity in representation with that available to large corporate defendants. If this important public policy is to be carried out, courts should award fees that will adequately compensate private plaintiffs' counsel, taking into account the enormous risks undertaken with a clear view of the economics of a securities class action.

Indeed, there have been many class actions in which plaintiffs' counsel took on the risk of pursuing claims on a contingency basis, expended thousands of hours and dollars, yet received no remuneration whatsoever despite their diligence and expertise. For example, in *In re BankAtlantic Bancorp, Inc.*, tried by Labaton, a jury rendered a verdict in plaintiffs' favor on liability in 2010. However, in 2011, the district court granted defendants' motion for judgment as a matter of law and entered judgment in favor of defendants on all claims. *See* No. 07–61542–CIV, 2011 WL 1585605 (S.D. Fla. Apr. 25, 2011). In 2012, the Eleventh Circuit affirmed the district court's ruling, finding that there was insufficient evidence to support a finding of loss causation. *See In re BankAtlantic Bancorp, Inc.*, 688 F.3d 713 (11th Cir. 2012); *see also In re Oracle Corp. Sec. Litig.*, No. C 01-00988 SI, 2009 WL 1709050 (N.D. Cal. June 19, 2009), *aff'd*, 627 F.3d 376 (9th Cir. 2010) (granting summary judgment to defendants after eight years of litigation, and after plaintiff's counsel incurred over $6 million in expenses and worked over 100,000 hours, representing a lodestar of approximately $48 million).

Lead Counsel is aware of many other hard-fought lawsuits where excellent professional efforts by members of the plaintiff's bar produced no fee for counsel. *See, e.g.*, *Robbins v. Koger Props., Inc.*, 116 F.3d 1441 (11th Cir. 1997) (reversing $81 million jury verdict and dismissing case with prejudice); *Anixter v. Home-Stake Prod. Co.*, 77 F.3d 1215 (10th Cir. 1996) (overturning plaintiffs' verdict obtained

after two decades of litigation). As the court in *In re Xcel Energy, Inc. Sec., Derivative & "ERISA" Litig.,* 364 F. Supp. 2d 980 (D. Minn. 2005), recognized, "[p]recedent is replete with situations in which attorneys representing a class have devoted substantial resources in terms of time and advanced costs yet have lost the case despite their advocacy." *Id.* at 994.

Here, because Plaintiffs' Counsel's fee was entirely contingent, the only certainty was that there would be no fee without a successful result and that such result would only be realized after significant amounts of time, effort, and expense had been expended. Unlike counsel for defendants, who are paid and reimbursed for their expenses on a current basis, Plaintiffs' Counsel have received no compensation for their efforts during the course of the Action.

### 5. Reaction of the Settlement Class to Date and the Approval of Lead Plaintiff Support the Fee Request

Although not articulated specifically in *Vizcaino*, district courts in the Ninth Circuit also consider the reaction of the class when deciding whether to award the requested fee. *See In re Heritage Bond*, 2005 WL 1594389, at *15 ("The presence or absence of objections . . . is also a factor in determining the proper fee award."); *In Re Snap Inc. Sec. Litig.,* 2021 WL 667590, at *4 (finding the minimal reaction from the class supports an award of the requested fee); *Marshall v. Northrop Grumman Corp.,* 2020 WL 5668935, at *6 (C.D. Cal. Sept. 18, 2020) (considering response from the class, including that there were very few objections, as a factor weighing in favor of the requested fee).

Here, 18,978 Postcard Notices reporting the maximum amount of the Fee and Expense Application have been sent to potential Settlement Class Members and their brokers, banks, and other nominees. *See* Declaration of Eric Blow Regarding (A) Mailing of the Postcard Notice; (B) Publication of the Summary Notice; and (C) Report on Requests for Exclusion, dated October 27, 2025, Ex. 3 ("Mailing Decl.") at ¶15. The long-form Notice and Claim Form, along with the Stipulation

and other relevant documents, were made available on a website dedicated to the Settlement. *Id*. at ¶18. Additionally, the Court-approved Summary Notice was published in *The Wall Street Journal* and transmitted over the internet using *PR Newswire*. *Id*. at ¶¶16-17.

Although the November 10, 2025 objection deadline has not yet passed, to date no objections to the requested amount of attorneys' fees and expenses have been filed with the Court or received by Lead Counsel.[7]

In addition, Lead Plaintiff, which took an active role in the litigation and closely supervised the work of Lead Counsel, supports the approval of the requested fee based on the result obtained, the efforts of Lead Counsel, and the risks in the Action. *See* Ex. 1, White Decl. at ¶¶3-6. Lead Plaintiff's endorsement of the fee request further supports its approval. *See, e.g., In re Lucent Techs., Inc., Sec. Litig.*, 327 F. Supp. 2d 426, 442 (D.N.J. 2004) ("Significantly, the Lead Plaintiffs, both of whom are institutional investors with great financial stakes in the outcome of the litigation, have reviewed and approved Lead Counsel's fees and expenses request.").

### E.    A Lodestar Cross-check Confirms that the Requested Fee Would Be Reasonable

Although an analysis of counsel's lodestar is not required for an award of attorneys' fees in the Ninth Circuit, it is often considered in order to ensure that an awarded fee would be reasonable. *In re Amgen Inc. Sec. Litig.*, 2016 WL 10571773, at *9 (C.D. Cal. Oct. 25, 2016) ("Although an analysis of the lodestar is not required for an award of attorneys' fees in the Ninth Circuit, a cross-check of the fee request with a lodestar amount can demonstrate the fee request's reasonableness."); *In re Extreme Networks, Inc. Sec. Litig.*, 2019 WL 3290770, at *10 (N.D. Cal. July 22, 2019) (noting that "lodestar may provide a useful perspective on the reasonableness

---

[7] Lead Counsel will address any future objections in its reply papers, which will be filed with the Court on or before November 24, 2025.

of a given percentage award").

"A lodestar cross-check first computes the plaintiffs' attorneys' reasonable hourly rate for the litigation and multiplies that rate by the number of hours dedicated to the case." *In re Stable Rd. Acquisition Corp.*, 2024 WL 3643393, at *15. Plaintiffs' Counsel's lodestar derived by multiplying the hours worked on the litigation by each attorney and professional by their current hourly rates[8] is $5,786,259.50. *See* Declaration of Lauren A. Ormsbee on behalf of Labaton Keller Sucharow LLP, dated October 27, 2025, Ex. 7-A, and Declaration of Charles H. Linehan on behalf of Glancy Prongay & Murray LLP, dated October 22, 2025, Ex. 8-A. As detailed in the Ormsbee Declaration and in the accompanying fee declarations, more than 10,000 hours of attorney and professional time were expended for the benefit of the Settlement Class. *See* Ex. 9. Throughout the litigation, Lead Counsel implemented effective project management and sought to maintain an appropriate level of staffing on all tasks.

Plaintiffs' Counsel's rates here ranged from $875 to $1,375 per hour for partners, $750 to $975 per hour for of counsels, $350 to $700 for associates, $355 to $500 for staff attorneys, and $175 to $415 for paralegals. *See* Exs. 7-A, 8-A. Lead Counsel submits that these rates are reasonable. *See, e.g., In re Apple Inc. Sec. Litig.*, 2024 WL 4246282, at *5 fn.3 (N.D. Cal. Sept. 18, 2024) (finding the rates charged by counsel, including Labaton, "are reasonable and commensurate with those charged by attorneys with similar experience in the market"). They are also comparable to or less than those used by peer defense-side law firms litigating matters of similar magnitude and complexity. Sample defense firm rates in 2024, gathered by Labaton annually from bankruptcy court filings nationwide, often

---

[8] The Supreme Court and other courts have held that the use of current rates is proper since such rates compensate for inflation and the loss of use of funds. *See Missouri v. Jenkins*, 491 U.S. 274, 283-84 (1989); *Rutti v. Lojack Corp. Inc.*, 2012 WL 3151077, at *11 (C.D. Cal. July 31, 2012) ("it is well-established that counsel is entitled to current, not historic, hourly rates") (citing *Jenkins*, 491 U.S. at 284).

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR AN AWARD OF ATTORNEYS' FEES AND EXPENSES
CASE NO. 2:22-CV-08395-SVW(SKX)

17

exceeded these rates. ¶153; Ex. 10.

The substantial work of Plaintiffs' Counsel was necessary for the success of the litigation. As set forth in the Ormsbee Declaration, Lead Counsel: (i) conducted a rigorous investigation of the claims at issue, including consulting with experts and interviewing former employees of Olaplex; (ii) drafted a detailed amended complaint; (iii) opposed four extensive motions to dismiss including appearing for two in-person oral arguments; (iv) moved for class certification; (v) researched, drafted, propounded and responded to document requests and interrogatories; (vi) reviewed approximately 50,000 documents (approximately 412,000 pages); (vii) took or defended four depositions (including one of an Individual Defendant) and prepared for the imminent scheduled depositions of 16 individuals, including the remaining Individual Defendants; (viii) negotiated discovery disputes; (ix) consulted with experts in the fields of negative causation, damages, tracing, reformulation, and corporate brand reputation and image; and (x) exchanged extensive mediation briefing and participated in a mediation overseen by a highly respected mediator. *See generally* Ormsbee Decl. at §§III-V. The substantial time devoted to the Action reflects the dedicated effort needed to prosecute the claims and bring them to a favorable resolution.

Here, the requested fee of 25%, if awarded, would represent a reasonable "multiplier" of 2.05 of Plaintiffs' Counsel's total lodestar. Ex. 9. The Ninth Circuit has recognized that attorneys in common fund cases are frequently awarded an enhancement multiple of their lodestar, rewarding them "for taking the risk of nonpayment by paying them a premium over their normal hourly rates for winning contingency cases." *Vizcaino,* 290 F.3d at 1051. In *Vizcaino*, the Ninth Circuit affirmed a 3.65 multiplier, noting that a range of multiples from 1.0 to 4.0 are frequently awarded. *Id*.; *see also In re Alphabet Inc. Sec. Litig.,* No. 18-cv-06245, slip op. at 13 (N.D. Cal. Sept. 30, 2024) (approving fee in $350 million settlement

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR AN AWARD OF ATTORNEYS' FEES AND EXPENSES
CASE NO. 2:22-CV-08395-SVW(SKX)

18

representing 4.58 multiplier) (Ex. 6); *In re Twitter Inc. Sec. Litig.*, No. 4:16-cv-05314, ECF No. 661 at 2 (N.D. Cal. Oct. 13, 2022) and *Twitter*, ECF No. 670 (N.D. Cal. Nov. 21, 2022) (awarding fee in $809.5 million settlement representing a 4.14 multiplier) (Ex. 6).

Furthermore, additional work will be required of Lead Counsel on an ongoing basis, including: preparation for, and participation in, the final approval hearing; and supervising the claims administration process being conducted by the Claims Administrator. However, Lead Counsel will not seek payment for this additional work.

It is respectfully submitted that the lodestar cross-check here confirms that the requested fee would be reasonable.

## II.   PLAINTIFFS' COUNSEL'S EXPENSES ARE REASONABLE AND WERE NECESSARY TO ACHIEVE THE BENEFIT OBTAINED

Lead Counsel's application includes a request for payment of $771,674.27 in Litigation Expenses, which were reasonably incurred and necessary to prosecute the Action. These expenses are explained in Plaintiffs' Counsel's individual fee and expense declarations filed herewith. *See* Exs. 7-C, 8-C. This amount is below the $875,000 maximum that the notices informed potential Settlement Class Members counsel may apply for. To date, there have been no objections to this request.

"Attorneys who created[] a common fund are entitled to the reimbursement of expenses they advanced for the benefit of the class." *Vincent,* 2013 WL 621865, at *5. In assessing whether counsel's expenses are compensable in a common fund case, courts look at whether the particular costs are of the type typically charged by attorneys in the non-contingent marketplace. *Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994) ("Harris may recover as part of the award of attorney's fees those out-of-pocket expenses that 'would normally be charged to a fee paying client.'"). The amount of Litigation Expenses here is consistent with the stage of the litigation.

The largest component of the expenses relates to the retention of Lead Plaintiff's experts. These costs total $596,341.24 or approximately 77% of the Plaintiffs' Counsel's expenses. ¶160. As noted above, Lead Counsel retained experts to provide merits expert reports and opinion on issues related to the elements of the Lead Plaintiff's claims (damages, tracing, falsity, and materiality) and Defendants' purported defenses (negative causation and falsity). These experts were essential to the prosecution of the Action. *Id*.

The costs of electronic discovery totaled $34,717.46 or approximately 4.5% of total expenses. Lead Counsel retained third-party vendors to host Lead Plaintiff's production, Defendants' productions, and third-party productions in their sophisticated electronic database and litigation support platforms. ¶161.

Lead Counsel also incurred $42,345.00 in connection with the extensive mediation efforts of the Mediator, David M. Murphy, Esq. ¶163.

The other expenses for which Lead Counsel seeks payment are the types of expenses that are necessarily incurred in complex commercial litigation. *See* Exs. 7-C, 8-C.  It is respectfully submitted that Plaintiffs' Counsel's expenses were reasonable and necessary to the litigation of the Action and should be approved.

### III.    LEAD PLAINTIFF'S REQUEST FOR REIMBURSEMENT PURSUANT TO 15 U.S.C § 77Z-1(A)(4)

The PSLRA, 15 U.S.C. § 77z-1(a)(4), permits an "award of reasonable costs and expenses (including lost wages) directly relating to the representation of the class to any representative party serving on behalf of a class." Here, Lead Plaintiff is seeking $10,006.63 related to the 95 hours it dedicated to the Action. *See* Ex. 1 at ¶¶7-14. "Courts have the discretion under the PSLRA to grant payments to class representatives." *Ferreira v. Funko, Inc.*, 2022 WL 22877154, at *12 (C.D. Cal. Dec. 13. 2022) (citing *In re Heritage Bond Litig.*, 2005 WL 1594389, at *4).

As explained in its declaration, Lead Plaintiff was in regular contact with counsel, reviewed pleadings, motions, and other material documents, and consulted

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR AN AWARD OF ATTORNEYS' FEES AND EXPENSES
CASE NO. 2:22-cv-08395-SVW(SKx)

20

with counsel during the course of the lengthy mediation process and approved of the Settlement. Lead Plaintiff worked with Lead Counsel to gather documents and information responsive to Defendants' document requests and interrogatories, sat for a deposition, and attended the in-person mediation in June 2025. Lead Plaintiff's efforts required it to devote time and resources to this Action that would otherwise have been devoted to its regular professional endeavors. Ex. 1 at ¶¶4, 8-14.

Many cases have approved reasonable payments to compensate representatives for the time, effort, and expenses they devoted on behalf of a class. *See, e.g., In re Amgen Inc. Sec. Litig.*, 2016 WL 10571773, at *10 (reasoning that "courts have awarded reasonable payments to compensate class representatives for the time, effort, and expenses devoted to litigating on behalf of the class" and awarding the State of Connecticut $30,983.99); *In re Intuitive Surgical Sec. Litig.*, Case No. 5:13-cv-01920, slip op. at 4 (N.D. Cal. Dec. 20, 2018) (Ex. 6) (awarding $49,754.18 and $9,100.00 to class representatives).

As explained in one decision, courts "award such costs and expenses to both reimburse named plaintiffs for expenses incurred through their involvement with the action and lost wages, as well as provide an incentive for such plaintiffs to remain involved in the litigation and incur such expenses in the first place." *Hicks v. Stanley*, 2005 WL 2757792, at *10 (S.D.N.Y. Oct. 24, 2005).

Lead Counsel respectfully submits that the amount sought here is reasonable based on Lead Plaintiff's active involvement in the Action.

## CONCLUSION

For all the foregoing reasons, Lead Counsel respectfully requests that the Court award: (i) attorneys' fees of 25% of the Settlement Fund; (ii) Litigation Expenses of $771,674.27, plus accrued interest; and (iii) $10,006.63 to Lead Plaintiff pursuant to the PSLRA. A proposed order is being submitted herewith.

Memorandum of Points and Authorities in Support of Motion for an Award of Attorneys' Fees and Expenses
Case No. 2:22-cv-08395-SVW(SKx)

21

Dated: October 27, 2025

**LABATON KELLER SUCHAROW LLP**

By: ____/s/ *Lauren A. Ormsbee*____
Lauren A. Ormsbee (*pro hac vice*)
Lisa Strejlau (*pro hac vice*)
Charles Stiene (*pro hac vice*)
140 Broadway
New York, NY 10005
Telephone: (212) 907-0700
lormsbee@labaton.com
lstrejlau@labaton.com
cstiene@labaton.com

*Attorneys for Lead Plaintiff Arkansas Teacher Retirement System and the Proposed Settlement Class*

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR AN AWARD OF ATTORNEYS' FEES AND EXPENSES
CASE NO. 2:22-CV-08395-SVW(SKX)

22

## CERTIFICATE OF WORD COUNT COMPLIANCE

I, Court-appointed Lead Counsel, hereby certify that this memorandum of law contains 6,945 words, which complies with the 7,000 word limit of L.R. 11-6.1.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on October 27, 2025

/s/ *Lauren A. Ormsbee*
Lauren A. Ormsbee

CERTIFICATE OF WORD COUNT COMPLIANCE
CASE NO. 2:22-CV-08395-SVW(SKX)

# CERTIFICATE OF SERVICE

I hereby certify that on October 27, 2025, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the e-mail addresses denoted on the attached Electronic Mail Notice List served via ECF on all registered participants only.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on October 27, 2025

/s/ *Lauren A. Ormsbee*
Lauren A. Ormsbee

CERTIFICATE OF SERVICE
CASE NO. 2:22-CV-08395-SVW(SKX)

**Mailing Information for *Leslie Lilien v. Olaplex Holdings, Inc. et al.*,**

Case 2:22-CV-08395-SVW(SKX)

Electronic Mail Notice List:

The following are those who are currently on the list to receive e-mail notices for this case.

Eric J. Belfi - ebelfi@labaton.com

Brian R. Blais - Brian.blais@ropesgray.com

John L. Brennan - jbrennan@willkie.com

James C. Dugan - jdugan@willkie.com

Kathryn C. Garrett - kgarrett@willkie.com

Matthew M. Gurvitz - mgurvitz@willkie.com

Adam M. Harris - adam.harris@davidllc.com

Danielle Izzo - dizzo@labaton.com

Philip G. Kraft - phillip.kraft@ropesgray.com

Charles Henry Linehan - clinehan@glancylaw.com

Francis P. McConville - fmcconville@labaton.com

Lauren Amy Ormsbee - lormsbee@labaton.com

Jennifer Pafiti - jpafiti@pomlaw.com

Anne Johnson Palmer- anne.johnsonpalmer@ropesgray.com

Kevin M Papay - kevin.papay@morganlewis.com

Robert Vincent Prongay - rprongay@glancylaw.com

John Warren Rissier - warren.rissier@morganlewis.com

Charlene Sachi Shimada - charlene.shimada@morganlewis.com

Charles J. Stiene - cstiene@labaton.com

Naomi Rose Strauss - nstrauss@willkie.com

Lisa Marie Strejlau - lstrejlau@labaton.com

Irina Vasilchenko - ivasilchenko@labaton.com

Carol C. Villegas - cvillegas@labaton.com

Nicole M. Zeiss – nzeiss@labaton.com

Peter L. Welsh - peter.welsh@ropesgray.com

Daniel A. Yanofsky - daniel.yanofsky@ropesgray.com

MAILING LIST
CASE NO. 2:22-CV-08395-SVW(SKX)