# Exhibit 3

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| LESLIE LILIEN, Individually and on Behalf of All Others Similarly Situated, | Case No. 2:22-cv-08395-SVW(SK) |
| Plaintiff, | |
| v. | |
| OLAPLEX HOLDINGS, INC., et al., | |
| Defendants. | |

**DECLARATION OF ERIC BLOW REGARDING (A) MAILING OF THE POSTCARD NOTICE; (B) PUBLICATION OF THE SUMMARY NOTICE; AND (C) REPORT ON REQUESTS FOR EXCLUSION**

I, Eric Blow, hereby declare and state as follows:

1. I am a Project Manager employed by Epiq Class Action & Claims Solutions, Inc. ("Epiq"). The statements of fact in this declaration are based on my personal knowledge and information provided to me by my colleagues in the ordinary course of business and, if called on to do so, I could and would testify competently thereto.

2. Epiq was retained by Lead Counsel to be the Claims Administrator pursuant to the Court's Order Granting Plaintiff's Motion for Preliminary Approval of Class Action Settlement (the "Preliminary Approval Order"). dated August 11, 2025, and in accordance with the Stipulation and Agreement of Settlement, dated August 1, 2025 (the "Stipulation").[1]  I submit this Declaration in order to advise the

---

[1] All capitalized terms not otherwise defined in this document shall have the same meanings given to them in the Stipulation.

Parties and the Court regarding the implementation of the Court-approved notice program, in accordance with the Preliminary Approval Order and the Stipulation.

3.    Epiq was established in 1968 as a client services and data processing company.  Epiq has routinely developed and executed notice programs and claim administrations in a wide variety of collective action contexts, including securities, consumer, antitrust, products liability, labor and employment,  mass tort, Securities and Exchange Commission enforcement actions, Federal Trade Commission disgorgement actions, insurance disputes, bankruptcies, among many others.  Epiq has administered more than 4,500 settlements, including some of the largest and most complex cases ever settled.  Epiq's class action case administration services include administering notice requirements, designing direct-mail notices, implementing notice fulfillment services, coordinating with the United States Postal Service ("USPS"), developing and maintaining notice websites and dedicated telephone numbers with recorded information and/or live operators, processing exclusion requests, objections, claim forms and correspondence, maintaining class member databases, adjudicating claims, managing settlement funds, and calculating claim payments and distributions.  Epiq has handled hundreds of millions of notices, disseminated hundreds of millions of emails, handled millions of phone calls, processed tens of millions of claims, and distributed hundreds of billions in payments.

## OVERVIEW OF ENGAGEMENT

4.    Pursuant to the Stipulation and Preliminary Approval Order, Epiq was retained to provide, and has provided, the following services for the benefit of Settlement Class Members:

- Mailing Postcard Notices to Settlement Class Members, and long form Notices and Claim Forms upon request;

DECLARATION OF ERIC BLOW REGARDING (A) MAILING OF THE POSTCARD NOTICE; (B) PUBLICATION OF THE SUMMARY NOTICE; AND (C) REPORT ON REQUESTS FOR EXCLUSION – CASE NO. 2:22-CV-08395-SVW(SK)

2

- Publishing the Summary Notice of the Settlement in *The Wall Street Journal and using PR Newswire*;

- Establishing and maintaining the official Settlement Website containing information about the Olaplex Securities Settlement;

- Establishing and maintaining the official toll-free number that Settlement Class Members may use for additional information about the Settlement and to reach Epiq;

- Reviewing and processing Requests for Exclusion from the Settlement Class; and

- Receiving and processing Claim Forms.

## DATA TRANSFER

5.     On August 18, 2025, Lead Counsel provided Epiq with electronic files from Ropes & Gray LLP and Olaplex's transfer agent containing potential Settlement Class Member mailing records.  The files contained 27 names, addresses, and other relevant data for potential Settlement Class Members.

6.     Epiq loaded the information provided by Lead Counsel into a database created for the purpose of administering of the proposed Settlement.  Epiq assigned unique identifiers to all the records it received in order to maintain the ability to track them throughout the Settlement administration process.  Epiq combined the data and reviewed the data for duplicates to confirm the 27 Settlement Class Member records (the "Class List").

## DISSEMINATION OF THE POSTCARD NOTICE BY MAIL

7.     Pursuant to paragraph 12 of the Preliminary Approval Order, Epiq was responsible for sending the Postcard Notice to all potential Settlement Class Members.  Attached hereto as **Exhibit A** is the Postcard Notice that Epiq disseminated by mail.

8.      Prior to mailing the Postcard Notice to the Class List, all mailing addresses were checked against the National Change of Address ("NCOA") database maintained by the USPS.[2]  In addition, the addresses were processed via the Coding Accuracy Support System ("CASS") to ensure the quality of the zip code, and verified through Delivery Point Validation ("DPV") to verify the accuracy of the addresses.

9.      Prior to commencing any mailings for this matter, Epiq established a dedicated post office box to mail notice from and for the receipt of documents related to the Settlement by mail.  Epiq will continue to maintain the P.O. Box throughout the administration process.

10.      On August 25, 2025, Epiq mailed 27 Postcard Notices to potential Settlement Class Members on the Class List.

11.      As in most class actions of this nature, the large majority of potential Settlement Class Members are "beneficial" purchasers whose securities are held "in street name"-i.e., the securities were purchased by brokerage firms, banks, institutions and other third-party nominees in the name of the nominee, of behalf of the beneficial purchasers.  Epiq maintains and updates a proprietary list of the largest and most common banks, brokers, and other nominees. At the time of the mailing, the broker list contained 896 mailing records.

12.      On August 25, 2025, Epiq caused Postcard Notices to be mailed to the 896 names and addresses in its internal broker list, together with an instruction letter.

13.      Nominees who purchased or otherwise acquired Olaplex publicly traded common stock from September 29, 2021 through November 12, 2021, for the beneficial interest of a person or organization other than themselves were instructed

---

[2] The NCOA database contains records of all permanent change of address submissions received by the USPS for the last four years.  The USPS makes this data available to mailing firms and lists submitted to it are automatically updated with any reported move based on a comparison with the person's name and last known address.

to either (i) provide Epiq with the names and addresses of such beneficial owners no later than ten (10) calendar days of receipt of the Postcard Notice or Notice, or (ii) request within ten (10) calendar days of the Postcard Notice or Notice, additional copies of the Postcard Notice from the Claims Administrator, and send a copy of the Postcard Notice to such beneficial owners, no later than ten (10) calendar days after receipt of the copies.

14.    Through October 27, 2025, Epiq has mailed an additional 3,725 Postcard Notices to potential members of the Settlement Class whose names and addresses were provided to Epiq and has mailed another 14,330 Postcard Notices to nominees who requested Postcard Notices to forward to their customers.  Each of the requests was responded to in a timely manner, and Epiq will continue to timely respond to any additional requests received.

15.    As of October 27, 2025, an aggregate of 18,978 Postcard Notices have been disseminated to potential Settlement Class Members and their nominees by first-class mail.  The return address on the Postcard Notice is the post office box maintained by Epiq.  As of October 27, 2025, 76 Postcard Notices have been returned by the USPS with forwarding information and promptly re-mailed to the forwarding address.

## PUBLICATION NOTICE

16.    Pursuant to paragraph 17 of the Preliminary Approval Order, Epiq facilitated the publishing of the Summary Notice, which appeared once in the weekday edition of *The Wall Street Journal* on September 4, 2025.  Proof of the publication is attached hereto as **Exhibit B**.

17.    Pursuant to paragraph 17 of the Preliminary Approval Order, on September 4, 2025, Epiq distributed the Summary Notice to *PR Newswire*.  A copy of the Summary Notice that was distributed by *PR Newswire* is also included in **Exhibit B**.

## SETTLEMENT WEBSITE

18.     Pursuant to paragraph 15 of the Preliminary Approval Order, on August 25, 2025, Epiq launched a website, www.olaplexsecuritiessettlement.com, that potential Settlement Class Members can visit to obtain additional information about the proposed Settlement, as well as important documents, including the long form Notice, Claim Form, Stipulation, Preliminary Approval Order, and any other relevant information that the parties agree to provide or that the Court may require ("Settlement Website").  The Settlement Website contains a summary of options available to Settlement Class Members and deadlines to act.  Settlement Class Members are also able to submit Claims via the website, or download a paper Claim Form, which they can then submit by mail.

19.     As of October 27, 2025, the Settlement Website has been visited by 4,737 unique visitors and 11,061 website pages have been viewed.  Epiq has maintained and will continue to maintain and update the Settlement Website throughout the administration.

## TOLL-FREE INFORMATION LINE

20.     Epiq established and is maintaining a toll-free interactive Voice Response Unit ("VRU"), 1-877-879-0943, to provide information and accommodate inquiries from Settlement Class Members.  The toll-free number was included in all notices and the automated telephone system is available 24 hours per day, 7 days per week.  Callers hear an introductory message and then are provided with scripted information about the matter in the form of recorded answers to frequently asked questions.  Callers also have the option of requesting the long-form Notice and Claim Form (collectively, the "Claim Package"), by mail.  Callers can leave a voicemail for a call center representative to call them back, or speak to a live operator during normal business hours.  A copy of the Claim Package is attached here as **Exhibit C**.

21.     As of October 27, 2025, the toll-free number has received 29 calls representing 104 total minutes, and call center representatives have handled 11

DECLARATION OF ERIC BLOW REGARDING (A) MAILING OF THE POSTCARD NOTICE; (B) PUBLICATION OF THE SUMMARY NOTICE; AND (C) REPORT ON REQUESTS FOR EXCLUSION – CASE NO. 2:22-CV-08395-SVW(SK)

6

inbound calls. Epiq has and will continue to maintain and update the VRU throughout the administration process.

## REQUESTS FOR EXCLUSION

22. Pursuant to paragraph 21 of the Preliminary Approval Order, Settlement Class Members who wish to be excluded from the Settlement Class are required to mail a written Request for Exclusion to Epiq so that it is received on or before November 10, 2025. As of October 27, 2025, Epiq is not aware of, nor has Epiq received, any written exclusion requests.

## OBJECTIONS RECIEVED

23. Pursuant to paragraph 23 of the Preliminary Approval Order, Settlement Class Members who wish to object to the Settlement are required to submit written objections to the Clerk of the Court and counsel for the Defendants and Lead Plaintiff, such that they were received on or before the objection deadline of November 10, 2025. As of October 27, 2025, Epiq is not aware of, nor has Epiq received, any mis-directed written objections to the Settlement.

I declare under penalty of perjury under the laws of the United States and the Commonwealth of Kentucky that the foregoing is true and correct, and that this declaration was executed on October 27, 2025, in Louisville, Kentucky.

Eric Blow
Project Manager
Epiq Class Action & Claims Solutions, Inc.

# *EXHIBIT A*

*Olaplex Securities Settlement*
c/o Epiq Systems, Inc.
P.O. Box 2167
Portland, OR 97208-2167

***COURT-ORDERED LEGAL NOTICE***

*Lilien v. Olaplex Holdings, Inc., et al.*,
No. 22-CV-08395-SVW (C.D. Cal.)

**Your legal rights may be affected by this securities class action settlement. You may be eligible for a cash payment. Please read this postcard carefully.**

**This postcard only provides limited information. For more details, please visit www.OlaplexSecuritiesSettlement.com or call 1-877-879-0943.**



---

### *PLEASE VISIT WWW.OLAPLEXSECURITIESSETTLEMENT.COM FOR MORE INFORMATION*

The Parties in the class action *Lilien v. Olaplex Holdings, Inc.,* No. 22-CV-08395-SVW (C.D. Cal.), have reached a proposed settlement of the claims against Defendants. If approved, the Settlement will resolve a lawsuit in which Lead Plaintiff alleged violations of Sections 11, 12(a)(2), and 15 of the Securities Act of 1933. Defendants deny any liability or wrongdoing. You received this postcard because you, or an investment account for which you serve as a custodian, may be a member of the Settlement Class: **all persons and entities that purchased or otherwise acquired the publicly traded common stock of Olaplex Holdings, Inc. ("Olaplex") on or before November 12, 2021, pursuant and/or traceable to the Offering Documents for Olaplex's initial public offering, and who were allegedly damaged thereby.**

Pursuant to the Settlement, the Parties have agreed to settle the matter for $47,500,000. This amount, plus accrued interest, after deduction of Court-awarded attorneys' fees and expenses, Notice and Administration Expenses, and Taxes ("Net Settlement Fund"), will be allocated among Settlement Class Members who submit timely and valid claims, in exchange for the settlement of the Action and the release of all claims asserted in the Action and related claims. **For additional information regarding the Settlement and procedures, please review the long-form Notice at www.OlaplexSecuritiesSettlement.com.** Your *pro rata* share will depend on the number of valid claims submitted, and when you purchased and sold your shares. If all class members submit claims, the estimated average recovery will be approximately $0.60 per allegedly damaged share before deduction of Court-approved fees and expenses and approximately $0.44 per share after. Your share will be determined by the plan of allocation in the Notice, or such other plan that may be approved by the Court.

**To qualify for payment, you must submit a timely and valid Claim Form. Receipt of this postcard does not mean you are eligible.** The Claim Form can be found at **www.OlaplexSecuritiesSettlement.com** or you can request that one be mailed to you. You can also submit a claim via the website. **Claim Forms must be postmarked, if mailed to: *Olaplex Securities Settlement*, c/o Epiq Systems, Inc., P.O. Box 2167, Portland, OR 97208-2167, or submitted online by November 24, 2025. If you do not want to be legally bound by any releases, judgments or orders in the Action, you must exclude yourself from the Settlement Class by November 10, 2025**. If you exclude yourself, you may be able to pursue the claims being settled on your own, but you cannot get money from the Settlement. **If you want to object to any aspect of the Settlement, you must file and serve an objection by November 10, 2025**. The Notice provides instructions on how to submit a Claim Form, exclude yourself, or object, and you must comply with all of the instructions in the Notice.

The Court will hold a hearing on **December 1, 2025 at 1:30 p.m.**, to consider whether to approve the Settlement and a request by Plaintiffs' Counsel for up to 25% of the Settlement Fund in attorneys' fees, plus Litigation Expenses of no more than $875,000. You may attend the hearing and ask to speak, but do not have to. **For more information, call 1-877-879-0943, email info@OlaplexSecuritiesSettlement.com, or visit the website.**

AL6922 v.04

# *EXHIBIT B*

# CONFIRMATION OF PUBLICATION

**IN THE MATTER OF:** *Olaplex Securities Settlement*

I, Kathleen Komraus, hereby certify that

(a) I am the Media & Design Manager at Epiq Class Action & Claims Solutions, a noticing administrator, and;

(b) The Notice of which the annexed is a copy was published/released in the following publication on the following date:

*9.4.2025 – Wall Street Journal*
*9.4.2025 – PR Newswire*

**X** *Kathleen Komraus*
_____
**(Signature)**

Media & Design Manager
_____
**(Title)**

**B6** | Thursday, September 4, 2025

THE WALL STREET JOURNAL.

## BUSINESS & FINANCE



MGM Resorts in June settled a lawsuit for $45 million.

BRIDGET BENNETT/REUTERS

# Personal-Injury Lawyers Add Data-Breach Suits to Docket

Cyberattack surge has some litigators vying for victims seeking big payouts

BY ANGUS LOTEN

A growing number of personal-injury lawyers are adding data-breach lawsuits to caseloads, alongside traffic accidents, medical malpractice and dog bites.

The upswing is being fueled by a surge in cyberattacks, as hackers become more sophisticated at breaking into business systems with an ever-increasing cache of customer data.

Driven by the rise of AI-powered phishing attacks, U.S. companies reported over 1,700 data breaches in the first half of 2025, compared with a full-year total of 3,155 breaches reported in 2024, according to the Identity Theft Resource Center.

This year, companies have issued more than 165 million individual victim notifications, the nonprofit research firm said.

The deluge has personal-injury law firms chasing plaintiffs within hours of a company's data-breach notification, taking to Facebook, TikTok and other social-media platforms, lawyers and cybersecurity experts said.

To get ahead of the pack, many new data-breach lawyers are equipped with online cyberattack alerts, customizable ad templates and ready-made legal paperwork, they said.

"Lawyers are an opportunistic bunch," Thomas Loeser, a partner at Cotchett, Pitre & McCarthy, said about the rush to file lawsuits after companies issue a data-breach notification. "We have seen a tremendous increase in firms that take on data-breach cases," he said, citing firms that file six to seven cases a week.

Last year, U.S. lawyers filed 1,488 class-action lawsuits related to data breaches, up from 1,320 in 2023 and just 604 in 2022, according to law firm Duane Morris.

Car accidents and medical malpractice remain the two biggest moneymakers for the more than 50,000 personal injury law firms across the U.S., according to research firm IBISWorld.

But data breaches are one of the fastest-growing areas of class action litigation, said James Turgal, vice president of global cyber advisory, risk and board relations at Optiv, a cyber advisory firm.

Lawyers are tallying big wins.

AT&T in June reached a $177 million preliminary settlement with customers caught up in a pair of data breaches disclosed last year. The telecom giant faced a flood of personal and class-action suits after notifying customers about the attacks, including a breach that enabled hackers to download call and text-message information from nearly all of its 90 million wireless subscribers. The court's final approval is expected in December.

Other recent class-action data-breach lawsuits include MGM Resorts, which in June settled for $45 million, and Neiman Marcus, which in May settled for $3.5 million.

Early settlements can help companies avoid costly, drawn-out legal battles that can leave lasting reputational damage.

But they can also drain cyber insurance funds meant to shore up a company's data safeguards, said Megan Silverman, vice president of cyber solutions at Integreon, a firm that provides legal, business and creative services to global companies.

"Instead of investing those dollars in stronger data protections, much of the money is now flowing to plaintiffs' attorneys and their clients," Silverman said.

Companies operating with "truly egregious practices"—like not having multifactor authentication or relying on shared standardized passwords—are fair game for plaintiffs, Silverman said. But companies that follow accepted cybersecurity practices and still get breached shouldn't be facing lawsuits, she said.

"Anyone can be breached if the threat actors try hard and long enough," she said.

Craig Hoffman, partner and co-leader of Baker & Hostetler's Digital Risk Advisory and Cybersecurity team, said over the past few years the likelihood of a company getting hit with at least one class-action lawsuit after disclosing a security incident has jumped.

In the past five years, he said, Baker & Hostetler has led clients through roughly 1,250 data breaches every year, resulting in about 500 situations that require notification per local, federal or industry regulations.

Last year, more than 50 notices sparked lawsuits, compared with just 20 in 2020, Hoffman said.

"If you go back five to 10 years, you would normally only expect a lawsuit if you were notifying hundreds of thousands or millions of people," Hoffman said.

Today, data-breach lawsuits can involve 1,000 or fewer individuals, he said.

The sheer number of law firms vying for a piece of a data-breach case can bog down the legal process.

"It's such a crowded space now," said Amina Thomas, partner on the class-action team at CohenMalad, an Indiana-based law firm that has handled data-breach suits for nearly a decade.

More than a half-dozen attorneys with their own plaintiffs can battle to lead the same case, adding weeks and even months to proceedings.

In cases involving large companies or widespread leaks, multiple law firms often file their own unique lawsuits and compete with each other to lead a case, Cotchett, Pitre & McCarthy's Loeser said.

"It does make it harder," he said.

Loeser, a former federal cyber prosecutor, is one of 10 lawyers appointed to the leadership of the AT&T lawsuit.

It used to be that taking on a data-breach case was risky and expensive, he said: "There are now firms that have a volume practice."

*Angus Loten writes about cybersecurity for WSJ Pro.*

## 1,700
Data breaches reported by U.S. companies in the first half of 2025

---

**ADVERTISEMENT**

## The Marketplace
To advertise: 800-366-3975 or WSJ.com/classifieds

---

### CLASS ACTION

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

LESLIE LILIEN, Individually and on Behalf of All Others Similarly Situated, Plaintiff,

v.

OLAPLEX HOLDINGS, INC., et al., Defendants.

No. 2:22-cv-08395-SVW(SKx)
CLASS ACTION

**SUMMARY NOTICE OF PENDENCY AND PROPOSED SETTLEMENT OF CLASS ACTION AND MOTION FOR ATTORNEYS' FEES AND EXPENSES**

**TO: all persons and entities that purchased or otherwise acquired the publicly traded common stock of Olaplex Holdings, Inc. ("Olaplex" or the "Company") on or before November 12, 2021, pursuant and/or traceable to the Offering Documents for Olaplex's initial public offering ("IPO"), and who were allegedly damaged thereby (the "Settlement Class").**

YOU ARE HEREBY NOTIFIED, pursuant to Rule 23 of the Federal Rules of Civil Procedure and an Order of the United States District Court for the Central District of California, that Court-appointed Lead Plaintiff, on behalf of itself and all members of the proposed Settlement Class, and Olaplex and JuE Wong, Eric Tiziani, Tiffany Walden, Christine Dagousset, Tricia Glynn, Deirdre Findlay, Janet Gurwitch, Martha Morfitt, David Mussafer, Emily White, Michael White, and Paula Zusi (the "Individual Defendants," together with Olaplex, the "Defendants"), have reached a proposed settlement of the above-captioned class action (the "Action") in the amount of $47,500,000 (the "Settlement"). Defendants deny any liability or wrongdoing.

A hearing will be held before the Honorable Stephen V. Wilson, either in person or remotely in the Court's discretion, on December 1, 2025 at 1:30 p.m. (PT) at the United States District Court, Central District of California, First Street Courthouse, 350 W. 1st Street, Courtroom 10A, 10th Floor, Los Angeles, California 90012 (the "Settlement Hearing") to determine whether the Court should: (i) approve the proposed Settlement as fair, reasonable, and adequate; (ii) dismiss the Action with prejudice as provided in the Stipulation and Agreement of Settlement, dated August 1, 2025; (iii) for purposes of the Settlement only, finally certify the Settlement Class, finally certify Lead Plaintiff as Class Representative for the Settlement Class, and finally appoint the law firm of Labaton Keller Sucharow LLP as Class Counsel and Glancy Prongay & Murray LLP as Liaison Counsel for the Settlement Class; (iv) approve the proposed Plan of Allocation for distribution of the proceeds of the Settlement (the "Net Settlement Fund") to Settlement Class Members; and (v) approve Lead Counsel's Fee and Expense Application. The Court may change the date of the Settlement Hearing, or hold it remotely, without providing another notice. You do NOT need to attend the Settlement Hearing in order to receive a distribution from the Net Settlement Fund.

IF YOU ARE A MEMBER OF THE SETTLEMENT CLASS, YOUR RIGHTS WILL BE AFFECTED BY THE PROPOSED SETTLEMENT AND YOU MAY BE ENTITLED TO A MONETARY PAYMENT. If you have not yet received a Postcard Notice, you may obtain copies of the Postcard Notice, long-form Notice, and Claim Form by visiting the website, www.OlaplexSecuritiesSettlement.com, or by contacting the Claims Administrator at:

*Olaplex Securities Settlement*
c/o Epiq Systems, Inc.
P.O. Box 2167
Portland, OR 97208-2167
1-877-879-0943
www.OlaplexSecuritiesSettlement.com
info@OlaplexSecuritiesSettlement.com

Inquiries, other than requests for copies of notices or about the status of a claim, may also be made to Lead Counsel:

LABATON KELLER SUCHAROW LLP
Lauren A. Ormsbee, Esq.
140 Broadway
New York, NY 10005
www.labaton.com
settlementquestions@labaton.com
1-888-219-6877

If you are a Settlement Class Member, to be eligible to share in the distribution of the Net Settlement Fund, you must submit a Claim Form postmarked or submitted online *no later than November 24, 2025*. If you are a Settlement Class Member and do not timely submit a valid Claim Form, you will not be eligible to share in the distribution of the Net Settlement Fund, but you will nevertheless be bound by all judgments or orders entered by the Court relating to the Settlement, whether favorable or unfavorable.

If you are a Settlement Class Member and wish to exclude yourself from the Settlement Class, you must submit a written request for exclusion in accordance with the instructions set forth in the Notice available on the settlement website, and such request must be received *no later than November 10, 2025*. If you properly exclude yourself from the Settlement Class, you will not be bound by any judgments or orders entered by the Court relating to the Settlement, whether favorable or unfavorable, and you will not be eligible to share in the distribution of the Net Settlement Fund.

Any objections to the proposed Settlement, Lead Counsel's Fee and Expense Application, and/or the proposed Plan of Allocation must be filed with the Court, either by mail or in person, and be mailed to counsel for the Parties in accordance with the instructions in the Notice available on the website, such that they are received no later than *November 10, 2025*.

**PLEASE DO NOT CONTACT THE COURT, DEFENDANTS, OR DEFENDANTS' COUNSEL REGARDING THIS NOTICE**

DATED: September 4, 2025       BY ORDER OF THE COURT
                              UNITED STATES DISTRICT COURT
                              CENTRAL DISTRICT OF CALIFORNIA

---

### NOTICE OF SALE

**NOTICE OF PUBLIC SALE OF COLLATERAL**

NOTICE IS HEREBY GIVEN that, pursuant to (a) Section 9-610 of the Uniform Commercial Code ("UCC") as in effect in the State of New York and (b) the Pledge and Security Agreement, dated as of July 23, 2021 (as amended, restated, or otherwise modified, the "Security Agreement") made by ALEXANDER PARK MEZZ LLC, a Delaware limited liability company ("Debtor") to KORE FUND LTD., a Cayman Islands exempted company (as successor-in-interest to NATIXIS REAL ESTATE CAPITAL LLC, a Delaware limited liability company, and together with its successors and assigns, "Secured Party"), the Secured Party will offer for sale at public sale (the "Auction") all right, title, and interest of the Debtor in and to the following collateral (the "Subject Collateral"): (i) one hundred percent (100%) of the membership interests in ALEXANDAR PARK PORTFOLIO LLC, a Delaware limited liability company, and (ii) all proceeds (as defined in the UCC) of the foregoing. The Subject Collateral is security for the Debtor's obligations under the Mezzanine Loan Agreement, dated as of July 23, 2021 (as amended, supplemented or otherwise modified, the "Loan Agreement"), among Debtor and the Secured Party.

TERMS AND CONDITIONS OF THE AUCTION: The Subject Collateral is being sold as described above on an "AS IS, WHERE IS, WITH ALL FAULTS" basis pursuant to the following terms and conditions. **1.** Parties interested in bidding at the Auction may, subject to executing confidentiality agreements and meeting the bidder qualifications set forth in the bidding procedures (the "Bidding Procedures"), which can be obtained by contacting Northgate Real Estate Group as provided below, obtain additional information concerning the Subject Collateral by contacting Northgate Real Estate Group. The Bidding Procedures provide additional information about the bidding process, including bidder qualifications, Auction participation and determination of the winning bid. **2.** The Auction will be held on October 17, 2025, at 1:00 p.m. EDT in-person at the offices of Northgate Real Estate Group, 1663 Broadway, 46th Floor, New York, New York 10019 and virtually through videoconference via a link to be provided. **3.** The Subject Collateral will be sold on an "AS-IS, WHERE IS, WITH ALL FAULTS" basis, without recourse, and without any express or implied representations or warranties whatsoever including, without limitation, as to the condition of title, value, or quality of the Subject Collateral, or without regard to assets, liabilities, financial condition, or earnings of Debtor or any of their affiliates. WITHOUT LIMITING THE GENERALITY OF THE FOREGOING, ALL WARRANTIES, WHETHER OF MERCHANTABILITY, FITNESS FOR A PARTICULAR PURPOSE, OR OTHERWISE, ARE EXPRESSLY DISCLAIMED. The sale of the Subject Collateral is specifically subject to all taxes, liens (other than those of the Secured Party), claims, assessments, liabilities and encumbrances, if any, that may exist against the Subject Collateral under the UCC or other applicable law. The Secured Party makes no representations or warranties and provides no assurances as to any Subject Collateral. Prospective bidders should perform their own diligence as to the Subject Collateral. **4.** The Secured Party reserves the right to determine which bidders qualify for participation in the Auction, reject any bid or all bids at the Auction, to announce such other terms at the Auction as may be commercially reasonable in the Secured Party's discretion or to accept non-conforming bids. Further, the Secured Party reserves the right to cancel, postpone, or adjourn the Auction by announcement made at the Auction, either before or after the commencement of bidding, without written notice or further publication. The Secured Party reserves the right to credit bid any portion of its secured indebtedness then outstanding under the Loan Agreement at the Auction. The Secured Party reserves the right to implement such other terms or conditions at the Auction or regarding the Auction procedures as the Secured Party, in its sole discretion, determines to be commercially reasonable under the circumstances.

All inquiries concerning this Notice of Public Sale and the terms and conditions of the sale (including requirements to be a "qualified bidder") should be made to: Greg Corbin, greg@northgateeq.com, 212-369-1800. Any person making any inquiry or request must: (i) disclose the person or entity on whose behalf such information is being sought, (ii) execute the confidentiality agreement, which will be provided upon request, and (iii) maintain the confidentiality of the information provided in accordance with the confidentiality agreement.

---

### COMMERCIAL REAL ESTATE

**NOTICE OF PUBLIC DISPOSITION OF COLLATERAL**

On October 17, 2025, at 10:30 a.m. prevailing Eastern time (the "Sale Date"), AN Emerson Mezz Lender, LLC, a Delaware limited liability company ("Secured Party"), as successor-in-interest to Natixis, New York Branch ("Original Secured Party"), shall appear at the offices of King & Spalding LLP, legal counsel to Secured Party, at 1290 Avenue of the Americas, New York, New York 10104, and virtually via Microsoft Teams, and shall then and there offer for sale at a public auction (the "Sale"), pursuant to the Uniform Commercial Code (as enacted in the State of New York), the personal property of BUDA MEZZ LLC, a Delaware limited liability company ("Debtor"), on account of unpaid indebtedness owed by Debtor to Secured Party. The property offered for sale (collectively, the "Collateral") shall consist of any and all right, title and interest of Debtor in, to, or under that certain property identified in (a) Uniform Commercial Code Financing Statement, Filing No. 2022 2910191, that was filed by Original Secured Party against Debtor with the Delaware Department of State on April 6, 2022, and (b) Uniform Commercial Code Financing Statement Amendment, Filing No. 2025 5545741, that was filed by Secured Party against Debtor with the Delaware Department of State on July 30, 2025, with respect to certain personal property of Debtor (including, without limitation, (a) Debtor's one hundred percent (100%) limited liability company interest in Buda Acquisition LLC, a Delaware limited liability company ("Owner"), together with the certificate evidencing the same, and all rights of Debtor to receive the profits and the losses of and receive distributions from Owner, all rights of Debtor to receive distributions of Owner's assets, and all of Debtor's economic rights, voting rights, consent rights, management rights, control rights, rights to status as a member, rights to inspect the books and records of Owner and rights to receive information under the organizational documents of Owner, and all other rights of Debtor with respect to Owner and under the organizational documents of Owner (collectively, the "Pledged Interests"); (b) all ownership interests, membership interests, limited liability company interests, shares, securities, moneys, instruments or property representing a dividend, a distribution or return of capital upon or in respect of the Pledged Interests, or otherwise received in exchange therefor, and any warrants, rights or options issued to the holders of, or otherwise in respect of, the Pledged Interests; (c) all rights, privileges, authority and power of Debtor arising from Debtor's interest in Owner or which Debtor otherwise has or may have with respect to Owner, and all rights, privileges, authority and power of Debtor to receive moneys or distributions with respect to the Pledged Interests due and to become due under or pursuant to the organizational documents of Owner, (d) all rights of Debtor to receive proceeds of any insurance, indemnity, warranty or guaranty with respect to the Pledged Interests, (iii) all claims of Debtor for damages arising out of or for breach of or default under an organizational document of Owner, (iv) any right of Debtor to perform under the organizational documents of Owner and to compel performance and otherwise exercise all rights and remedies under the organizational documents of Owner, (v) all rights to vote and give approvals, consents, decisions and directions and to exercise any other similar right as a member of Owner and (vi) in or in respect of the Pledged Interests and/or the business or affairs of Owner and/or to otherwise participate in the operation and management of Owner, including to act as manager of Owner, and all rights of Debtor under or in respect of the limited liability company agreement of Owner and any other agreement relating to Debtor's ownership of equity in Owner, (vi) all rights of Debtor to receive the profits and the losses of and receive distributions from the Owner, (vii) all rights of Debtor to receive distributions of Owner's assets, and (viii) all of Debtor's economic rights, voting rights, consent rights, management rights, control rights, rights to status as a member, rights to inspect the books and records of Owner and rights to receive information under the organizational documents of Owner or otherwise arising from Debtor's interest in Owner; (d) all reserves, escrows and deposit accounts maintained by Debtor with respect to the Collateral, including, without limitation, all accounts established or maintained pursuant to the Loan Agreement or any other Loan Document, together with all deposits or wire transfers made to such accounts, and all cash, checks, drafts, certificates, securities, investment property, financial assets, instruments and other property held therein from time to time, and all proceeds, products, distributions, dividends and/or substitutions thereon and thereof; (e) all "documents", "accounts", "chattel paper," "general intangibles", "instruments," "securities," "financial assets" and "investment property" (in each case as defined in the Uniform Commercial Code) constituting the Collateral described in the foregoing clauses (a) through (d); and (f) all proceeds of and to any of the property of Debtor described in clauses (a) through (e) above, which shall include, without limitation, all dividends, cash proceeds, accounts, and/or other income from the Collateral, collections thereon or distributions with respect thereto and, to the extent related to any property described in said clauses or such proceeds, all books, correspondence, credit files, records, invoices and other papers.) Owner is the owner of the real property and improvements located at and known by the street address of 950 FM2001, Buda, Texas.

On the Sale Date, the Collateral will be offered for sale, as one unit, on an "AS IS, WHERE IS" basis, and sold to the highest bidder at the conclusion of the Sale, as determined by Secured Party in its reasonable discretion. In its sole and absolute discretion, Secured Party reserves its rights, on or prior to the Sale Date, to withdraw any or all of the Collateral from the Sale for any reason whatsoever, to modify, waive or amend any terms or conditions of the Sale, to reject any or all bids, to continue the Sale to such time and place as Secured Party may deem fit, to offer the Collateral for sale in multiple lots or to cancel or postpone the Sale without notice. Secured Party also reserves its right to credit bid at the Sale. Further information regarding the Sale, obtaining virtual credentials for the Sale, the Collateral, and the requirements to be considered as a "Qualified Transferee" may be obtained by contacting (i) Matthew D. Mannion at Mannion Auctions, LLC, 299 Broadway, Suite 1601, New York, New York 10007, Email: mdmannion@jpandr.com; and (ii) Brock Cannon at Newmark, 125 Park Avenue, New York, New York 10017, Email: brock.cannon@nmrk.com.

---

**UCC PUBLIC SALE NOTICE**

PLEASE TAKE NOTICE THAT Northgate Real Estate Group ("NREG") on behalf of 460 WEST 20 LENDERS LLC, a New York limited liability company ("Secured Party") will offer for sale at public auction 100% of the limited liability company interests (the "Interests") held by GMTFH, LLC, a Delaware limited liability company ("Pledgor") in 10TH AVENUE ASSOCIATES, LLC, a New York limited liability company (the "Pledged Entity"), as set forth in that certain Pledge and Security Agreement made as of July 31, 2024 ( the "Pledge Agreement"), together with certain rights and property representing, relating to, or arising from the Interests (collectively, the "Collateral").

Based upon information provided by Pledgor, it is the understanding of Secured Party (but without any recourse to, or representation or warranty of any kind by, Secured Party as to accuracy or completeness) that (i) the Interests constitute the principal asset of Pledgor, (ii) Pledged Entity owns the building located at 460 West 20th Street, New York, New York (the "Property"), (iii) the Property is subject to a ground lease, and (iv) Borrower is debtor under a mortgage loan in the original principal amount of $4,500,000.00 (the "Loan"), which Loan is in default.

The Sale will take place on October 24, 2025 at 10:00 a.m. Eastern Time by Matthew D. Mannion, Licensed Auctioneer, and/or William Mannion, Licensed Auctioneer, of Mannion Auctions, LLC in compliance with New York Uniform Commercial Code Section 9-610. The sale will be conducted in person on the courthouse steps of the New York County Supreme Court, 60 Centre Street, New York, New York 10007 and virtually via online video conference. The URL address and password for the "Datasite" referred to below will be provided to all registered participants.

The Collateral will be sold (the "Sale") as a single unit and is offered AS IS, WHERE IS, WITH ALL FAULTS. Secured Party makes no guarantee, representation or warranty, express or implied, as to any matter pertaining to the Collateral, and the sale of the Collateral will be made without recourse to, and without representation or warranty by, Secured Party. The Collateral includes unregistered securities under the Securities Act of 1933, as amended (the "Securities Act"), and Secured Party reserves the right to restrict participation in the Sale to prospective bidders that represent that the Collateral will not be sold, assigned, pledged, disposed of, hypothecated or otherwise transferred without the prior registration in accordance with the Securities Act and the securities laws of all other applicable jurisdictions, unless an exemption from such registration is available.

PLEASE TAKE NOTICE that there are specific requirements for any potential bidder in connection with obtaining information, bidding on the Collateral and purchasing the Collateral (collectively, the "Requirements"), including without limitation complying with the Pledged Entity's governing documents and the documents governing the Loan and other qualifications and requirements (including but not limited to the Terms of Sale relating to the sale of the Collateral (the "Terms of Sale").

An online datasite for the Sale (the "Datasite") is available and will include certain relevant information that Secured Party possesses concerning the Borrower, Pledgor, the Property and the Loan (collectively, the "Disclosed Materials") as well as the Requirements and the Terms of Sale. Access to such information will be conditioned upon execution of a confidentiality agreement which can be found on the Datasite or provided by NREG. To participate in the auction, prospective bidders must confirm their ability to satisfy the Requirements in the manner described in the Terms of Sale, and following such confirmation, such qualified participants will be provided a URL and password enabling access to the video conference for the Sale. No information provided, whether in the Datasite or otherwise, shall constitute a representation or warranty of any kind with respect to such information, the Collateral or the Sale. Participants are encouraged to review all Disclosed Materials and perform such due diligence as they deem necessary in advance of the Sale.

Secured Party reserves the right to credit bid, set a minimum reserve price, reject all bids and terminate or adjourn the sale to another time, without further notice.  All bids (other than credit bids of Secured Party) must be for cash with no financing conditions and the successful bidder must deliver immediately available good funds (1) for the Required Deposit (as defined in the Terms of Sale) on the date of the Sale, and (2) for the balance of the purchase price for the Collateral on the closing date prescribed by the Terms of Sale. The winning bidder must pay all transfer taxes, stamp duties and similar taxes incurred in connection with the purchase and sale of the Collateral (regardless of whether customarily paid by a seller or otherwise).

Any interested bidder must contact Greg Corbin at (212) 369-1800 or greg@northgateeq.com no less than 9:00 A.M. (New York time) on October 17, 2025, in order to receive instructions on how to register as a Qualified Bidder and how to place the Required Deposit.

---

### COMMERCIAL REAL ESTATE

**Missouri – Gratz Real Estate Auction**
SEPT 16, 2025 1PM
Commercial Building Auction! Prime Location, High-Value Opportunity.
2023 & 2003 ST MARYS BLVD,
JEFFERSON CITY, MO.
"America's Most Beautiful Small Town!
**Absolute Auction – No Reserve – Will Sell**
Contact Bill or Logan Gratz at
573-635-4168 · www.callgratz.com

### THE WALL STREET JOURNAL.
### SHOWROOM
(800) 366-3975
sales.showroom@wsj.com
For more information visit:
wsj.com/classifieds

© 2025 Dow Jones & Company, Inc.
All Rights Reserved.



### THE WALL STREET JOURNAL.
### THE MARKETPLACE
ADVERTISE TODAY
**(800) 366-3975**
For more information visit:
wsj.com/classifieds

© 2025 Dow Jones & Company, Inc.
All Rights Reserved.

---

**Listen to a Podcast:**
**MAHA at the Breakfast Table**



RICHARD B. LEVINE/ZUMA PRESS



Scan this code to listen to a podcast on cereal giant Kellogg's journey from American icon to the target of attack under the Trump administration's 'Make America Healthy Again' agenda.

# Labaton Keller Sucharow LLP Announces Proposed Settlement Involving Purchasers of Olaplex Holdings, Inc. Common Stock

NEWS PROVIDED BY
**Labaton Keller Sucharow LLP** ➞
Sep 04, 2025, 08:00 ET

LOS ANGELES, Sept. 4, 2025 /PRNewswire/ --

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| LESLIE LILIEN, Individually and on Behalf of All Others Similarly Situated<br><br><br>Plaintiff,<br><br>v.<br><br>OLAPLEX HOLDINGS, INC., et al.,<br><br>Defendants. | No. 2:22-cv-08395-SVW(SKx)<br><br><br><br>CLASS ACTION |

**SUMMARY NOTICE OF PENDENCY AND PROPOSED SETTLEMENT OF CLASS**

**ACTION AND MOTION FOR ATTORNEYS' FEES AND EXPENSES**

**To: all persons and entities that purchased or otherwise acquired the publicly traded common stock of Olaplex Holdings, Inc. ("Olaplex" or the "Company") on or before November 12, 2021, pursuant and/or traceable to the Offering Documents for Olaplex's initial public offering ("IPO"), and who were allegedly damaged thereby (the "Settlement Class").**

YOU ARE HEREBY NOTIFIED, pursuant to Rule 23 of the Federal Rules of Civil Procedure and an Order of the United States District Court for the Central District of California, that Court-appointed Lead Plaintiff, on behalf of itself and all members of the proposed Settlement Class, and Olaplex and JuE Wong, Eric Tiziani, Tiffany Walden, Christine Dagousset, Tricia Glynn, Deirdre Findlay, Janet Gurwitch, Martha Morfitt, David Mussafer, Emily White, Michael White, and Paula Zusi (the "Individual Defendants," together with Olaplex, the "Defendants"), have reached a proposed settlement of the above-captioned class action (the "Action") in the amount of $47,500,000 (the "Settlement"). Defendants deny any liability or wrongdoing.

A hearing will be held before the Honorable Stephen V. Wilson, either in person or remotely in the Court's discretion, on December 1, 2025 at 1:30 p.m. (PT) at the United States District Court, Central District of California, First Street Courthouse, 350 W. 1st Street, Courtroom 10A, 10th Floor, Los Angeles, California 90012 (the "Settlement Hearing") to determine whether the Court should: (i) approve the proposed Settlement as fair, reasonable, and adequate; (ii) dismiss the Action with prejudice as provided in the Stipulation and Agreement of Settlement, dated August 1, 2025; (iii) for purposes of the Settlement only, finally certify the Settlement Class, finally certify Lead Plaintiff as Class Representative for the Settlement Class, and finally appoint the law firm of Labaton Keller Sucharow LLP as Class Counsel and Glancy Prongay & Murray LLP as Liaison Counsel for the Settlement Class; (iv) approve the proposed Plan of Allocation for distribution of the proceeds of the Settlement (the "Net Settlement Fund") to Settlement Class Members; and (v) approve Lead Counsel's Fee and Expense Application. The Court may change the date of the Settlement Hearing, or hold it remotely, without providing another notice. You do NOT need to attend the Settlement Hearing in order to receive a distribution from the Net Settlement Fund.

IF YOU ARE A MEMBER OF THE SETTLEMENT CLASS, YOUR RIGHTS WILL BE AFFECTED BY THE PROPOSED SETTLEMENT AND YOU MAY BE ENTITLED TO A MONETARY PAYMENT. If you have not yet received a Postcard Notice, you may obtain copies of the Postcard Notice, long-form Notice, and Claim Form by visiting the website, **www.OlaplexSecuritiesSettlement.com**, or by contacting the Claims Administrator at:

*Olaplex Securities Settlement*

c/o Epiq Systems, Inc.

P.O. Box 2167

Portland, OR 97208-2167

1-877-879-0943

**www.OlaplexSecuritiesSettlement.com**

**info@OlaplexSecuritiesSettlement.com**

Inquiries, other than requests for copies of notices or about the status of a claim, may also be made to Lead Counsel:

LABATON KELLER SUCHAROW LLP

Lauren A. Ormsbee, Esq.

140 Broadway

New York, NY 10005

**www.labaton.com**

**settlementquestions@labaton.com**

1-888-219-6877

If you are a Settlement Class Member, to be eligible to share in the distribution of the Net Settlement Fund, you must submit a Claim Form postmarked or submitted online *no later than November 24, 2025*. If you are a Settlement Class Member and do not timely submit a valid Claim Form, you will not be eligible to share in the distribution of the Net Settlement Fund, but you will nevertheless be bound by all judgments or orders entered by the Court relating to the Settlement, whether favorable or unfavorable.

If you are a Settlement Class Member and wish to exclude yourself from the Settlement Class, you must submit a written request for exclusion in accordance with the instructions set forth in the Notice available on the settlement website, and such request must be received *no later than November 10, 2025*. If you properly exclude yourself from the Settlement Class, you will not be bound by any judgments or orders entered by the Court relating to the Settlement, whether favorable or unfavorable, and you will not be eligible to share in the distribution of the Net Settlement Fund.

Any objections to the proposed Settlement, Lead Counsel's Fee and Expense Application, and/or the proposed Plan of Allocation must be filed with the Court, either by mail or in person, and be mailed to counsel for the Parties in accordance with the instructions in the Notice available on the website, such that they are received **no later than November 10, 2025**.

**PLEASE DO NOT CONTACT THE COURT, DEFENDANTS, OR**

**DEFENDANTS' COUNSEL REGARDING THIS NOTICE**

DATED: September 4, 2025

BY ORDER OF THE COURT

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

URL: **www.OlaplexSecuritiesSettlement.com**

SOURCE Labaton Keller Sucharow LLP

# *EXHIBIT C*

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| LESLIE LILIEN, Individually and on Behalf of All Others Similarly Situated, <br><br>     Plaintiff, <br><br>     v. <br><br> OLAPLEX HOLDINGS, INC., et al., <br><br>     Defendants. | Case No. 2:22-cv-08395-SVW(SKx) <br><br> <u>CLASS ACTION</u> |

**NOTICE OF PENDENCY OF CLASS ACTION, PROPOSED SETTLEMENT,**
**<u>AND MOTION FOR ATTORNEYS' FEES AND EXPENSES</u>**

**If you purchased or otherwise acquired the publicly traded common stock of Olaplex Holdings, Inc. ("Olaplex" or the "Company") on or before November 12, 2021, pursuant and/or traceable to the Offering Documents for Olaplex's initial public offering ("IPO"), and were allegedly damaged thereby, you may be entitled to a payment from a class action settlement.**

*A Federal Court authorized this Notice. This is <u>not</u> a solicitation from a lawyer.*

- This Notice describes important rights you may have and what steps you must take if you wish to participate in the Settlement of this securities class action, wish to object, or wish to be excluded from the Settlement Class.[1]

- If approved by the Court, the proposed Settlement will create a $47,500,000 fund, plus earned interest, for the benefit of eligible Settlement Class Members after the deduction of Court-approved attorneys' fees, expenses, and Taxes. This is an average recovery of approximately $0.60 per allegedly damaged share before deductions for awarded attorneys' fees and Litigation Expenses, and approximately $0.44 per allegedly damaged share after deductions for awarded attorneys' fees and Litigation Expenses.

- The Settlement resolves claims by Court-appointed Lead Plaintiff Arkansas Teacher Retirement System ("Lead Plaintiff") that have been asserted on behalf of the Settlement Class (defined below) against Olaplex and JuE Wong, Eric Tiziani, Tiffany Walden, Christine Dagousset, Tricia Glynn, Deirdre Findlay, Janet Gurwitch, Martha Morfitt, David Mussafer, Emily White, Michael White, and Paula Zusi (the "Individual Defendants," together with Olaplex, the "Defendants"), and the Underwriters (defined below) of Olaplex's IPO and Selling Stockholders (defined below). The Settlement avoids the costs and risks of continuing the litigation; pays money to eligible investors; and releases the Released Defendant Parties (defined below) from liability. As described further below, Defendants deny all allegations of wrongdoing or liability.

**If you are a Settlement Class Member, the Settlement will affect your legal rights whether you act or do not act. Please read this Notice carefully.**

| YOUR LEGAL RIGHTS AND OPTIONS IN THIS SETTLEMENT | |
|---|---|
| **SUBMIT A CLAIM FORM BY NOVEMBER 24, 2025** | The <u>only</u> way to get a payment. *See* Question 8 for details. |
| **EXCLUDE YOURSELF FROM THE SETTLEMENT CLASS BY NOVEMBER 10, 2025** | Get no payment. This is the only option that, assuming your claim is timely brought, might allow you to ever bring or be part of any other action against Defendants and/or the other Released Defendant Parties concerning the Released Plaintiffs' Claims. *See* Question 10 for details. |
| **OBJECT BY NOVEMBER 10, 2025** | Write to the Court about why you do not like the Settlement, the Plan of Allocation for distributing the proceeds of the Settlement, and/or Lead Counsel's Fee and Expense Application. If you object, you will still be in the Settlement Class. *See* Question 14 for details. |

---

[1] The terms of the Settlement are in the Stipulation and Agreement of Settlement, dated August 1, 2025 (the "Stipulation"), which can be viewed at www.OlaplexSecuritiesSettlement.com. All capitalized terms not defined in this Notice have the same meanings as defined in the Stipulation.

AL7022 v.04

| PARTICIPATE IN A HEARING ON DECEMBER 1, 2025 AND FILE A NOTICE OF INTENTION TO APPEAR BY NOVEMBER 10, 2025 | Ask to speak in Court at the Settlement Hearing about the fairness of the Settlement and other requested relief. *See* Questions 16 and 18 for details. |
|---|---|
| DO NOTHING | Get no payment. Give up all legal rights relating to the claims at issue. Still be bound by the terms of the Settlement. |

- These rights and options—**and the deadlines to exercise them**—are explained below.

- The Court in charge of this case still has to decide whether to approve the proposed Settlement. Payments will be made to all eligible Settlement Class Members who timely submit valid Claim Forms, if the Court approves the Settlement and after any appeals are resolved.

## WHAT THIS NOTICE CONTAINS

PSLRA SUMMARY OF THE NOTICE..................................................................................................3

WHY DID I GET THE POSTCARD NOTICE? ...............................................................................4

HOW DO I KNOW IF I AM PART OF THE SETTLEMENT CLASS?.........................................4

ARE THERE EXCEPTIONS TO BEING INCLUDED?..................................................................4

WHY IS THIS A CLASS ACTION?.................................................................................................5

WHAT IS THIS CASE ABOUT AND WHAT HAS HAPPENED SO FAR?................................5

WHAT ARE THE REASONS FOR THE SETTLEMENT? ............................................................7

WHAT DOES THE SETTLEMENT PROVIDE? ............................................................................7

HOW CAN I RECEIVE A PAYMENT?...........................................................................................7

WHAT AM I GIVING UP TO RECEIVE A PAYMENT AND BY STAYING IN THE  SETTLEMENT CLASS?.................8

HOW DO I EXCLUDE MYSELF FROM THE SETTLEMENT CLASS? .....................................9

IF I DO NOT EXCLUDE MYSELF, CAN I SUE DEFENDANTS AND THE OTHER RELEASED DEFENDANT PARTIES FOR THE SAME REASONS LATER? .......................... 10

DO I HAVE A LAWYER IN THIS CASE? .................................................................................. 10

HOW WILL THE LAWYERS BE PAID? .................................................................................... 10

HOW DO I TELL THE COURT THAT I DO NOT LIKE SOMETHING ABOUT THE  PROPOSED SETTLEMENT?..... 10

WHAT IS THE DIFFERENCE BETWEEN OBJECTING AND SEEKING EXCLUSION?........................................... 11

WHEN AND WHERE WILL THE COURT DECIDE WHETHER TO APPROVE THE SETTLEMENT?....................... 11

DO I HAVE TO COME TO THE SETTLEMENT HEARING?................................................... 11

MAY I SPEAK AT THE SETTLEMENT HEARING?................................................................. 12

WHAT HAPPENS IF I DO NOTHING AT ALL?....................................................................... 12

ARE THERE MORE DETAILS ABOUT THE SETTLEMENT?................................................ 12

HOW WILL MY CLAIM BE CALCULATED? ........................................................................... 12

SPECIAL NOTICE TO SECURITIES BROKERS AND NOMINEES...................................... 15

**PSLRA SUMMARY OF THE NOTICE**

**Statement of the Settlement Class's Recovery**

1. Lead Plaintiff has entered into the proposed Settlement with Defendants which, if approved by the Court, will resolve the Action in its entirety. Subject to Court approval, Lead Plaintiff, on behalf of the Settlement Class, has agreed to settle the Action in exchange for a payment of $47,500,000 in cash (the "Settlement Amount"), which will be deposited into an interest-bearing Escrow Account (the "Settlement Fund"). Based on Lead Plaintiff's consulting damages expert's estimate of the number of shares of Olaplex publicly traded common stock eligible to participate in the Settlement, and assuming that all investors eligible to participate in the Settlement do so, it is estimated that the average recovery, before deduction of any Court-approved fees and expenses, such as attorneys' fees, Litigation Expenses, Taxes, and Notice and Administration Expenses, would be approximately $0.60 per allegedly damaged share. If the Court approves Lead Counsel's Fee and Expense Application (discussed below), the average recovery would be approximately $0.44 per allegedly damaged share. **These average recovery amounts are only estimates and Settlement Class Members may recover more or less than these estimates.** A Settlement Class Member's actual recovery will depend on, for example: (i) the number and value of claims submitted; (ii) the amount of the Net Settlement Fund; (iii) when and how many shares of Olaplex publicly traded common stock the Settlement Class Member purchased; and (iv) whether and when the Settlement Class Member sold Olaplex publicly traded common stock. *See* the Plan of Allocation beginning on page 12 for information about the calculation of your Recognized Claim.

**Statement of Potential Outcome of Case if the Action Continued to Be Litigated**

2. The Parties disagree about both liability and damages and do not agree about the amount of damages that would be recoverable if Lead Plaintiff were to prevail on each claim. The issues on which the Parties disagree include, for example: (i) whether the Offering Documents contained untrue statements of material fact or omitted material facts required to be stated in the documents or necessary to make the statements in the documents not misleading; (ii) whether certain Defendants conducted a reasonable investigation in connection with the IPO and had reasonable grounds for believing that the Offering Documents were truthful and complete; (iii) whether Settlement Class Members suffered any damages; and (iv) the extent to which factors unrelated to the alleged misstatements such as general market, economic and industry conditions, influenced the trading prices of Olaplex common stock at various times.

3. Defendants have denied and continue to deny any and all allegations of wrongdoing or fault asserted in the Action, deny that they have committed any act or omission giving rise to any liability or violation of law, and deny that Lead Plaintiff and the Settlement Class have suffered any loss attributable to Defendants' actions or omissions.

**Statement of Attorneys' Fees and Expenses Sought**

4. Lead Counsel, on behalf of Plaintiffs' Counsel,[2] will apply to the Court for attorneys' fees from the Settlement Fund in an amount not to exceed 25% of the Settlement Fund, which includes any accrued interest, or $11,875,000, plus accrued interest. Lead Counsel will also apply for payment of Litigation Expenses incurred in prosecuting the Action in an amount not to exceed $875,000, plus accrued interest, which may include an application pursuant to the Private Securities Litigation Reform Act of 1995 ("PSLRA") for the reasonable costs and expenses (including lost wages) of Lead Plaintiff directly related to its representation of the Settlement Class (which will not exceed $20,000). If the Court approves Lead Counsel's Fee and Expense Application in full, assuming a 25% fee is requested and maximum expenses of $875,000 are sought, the average amount of fees and expenses is estimated to be approximately $0.16 per allegedly damaged share of Olaplex publicly traded common stock. A copy of the Fee and Expense Application will be posted on www.OlaplexSecuritiesSettlement.com after it has been filed with the Court.

**Reasons for the Settlement**

5. For Lead Plaintiff, the principal reason for the Settlement is the guaranteed cash benefit to the Settlement Class. This benefit must be compared to, among other factors, the uncertainty of being able to prove the allegations in the Complaint and certify a litigation class; the difficulties and delays inherent in completing discovery and litigation like this; the risk that the Court may grant some or all of the anticipated summary judgment motions to be filed by Defendants; the uncertainty of a greater recovery after a trial and appeals; and the difficulties and risks in enforcing a judgment against Defendants after trial.

_____
[2] "Plaintiffs' Counsel" are Labaton Keller Sucharow LLP "Labaton" and Glancy Prongay & Murray LLP.

3

AL7024 v.04

6. For Defendants, who deny all allegations of wrongdoing or liability whatsoever and deny that Settlement Class Members were damaged, the principal reasons for entering into the Settlement are to end the burden, expense, uncertainty, and risk of further litigation.

**Identification of Representatives**

7. Lead Plaintiff and the Settlement Class are represented by Lead Counsel, Lauren A. Ormsbee, Labaton Keller Sucharow LLP, 140 Broadway, New York, NY 10005, (888) 219-6877, www.labaton.com, settlementquestions@labaton.com.

8. Further information regarding this Action, the Settlement, and this Notice may be obtained by contacting the Claims Administrator: *Olaplex Securities Settlement*, c/o Epiq Systems, Inc., P.O. Box 2167, Portland, OR 97208-2167, 1-877-879-0943, www.OlaplexSecuritiesSettlement.com.

**Please Do Not Call the Court with Questions About the Settlement.**

# BASIC INFORMATION

## 1.    Why did I get the Postcard Notice?

9. You may have received a Postcard Notice about the proposed Settlement. This long-form Notice provides additional information about the Settlement and related procedures. The Court authorized that the Postcard Notice be sent to you because you or someone in your family may have purchased or otherwise acquired Olaplex publicly traded common stock pursuant or traceable to Olaplex's IPO. **Receipt of the Postcard Notice does not mean that you are a Member of the Settlement Class or that you will be entitled to receive a payment. The Parties to the Action do not have access to your individual investment information. If you wish to be eligible for a payment, you are required to submit the Claim Form that is available at www.OlaplexSecuritiesSettlement.com.** *See* Question 8 below.

10. The Court directed that the Postcard Notice be sent to Settlement Class Members because they have a right to know about the proposed Settlement of this class action lawsuit, and about all of their options, before the Court decides whether to approve the Settlement.

11. The Court in charge of the Action is the United States District Court for the Central District of California, and the case is known as *Lilien v. Olaplex Holdings, Inc.*, No. 22-CV-08395-SVW (C.D. Cal.). The Action is assigned to the Honorable Stephen V. Wilson, United States District Judge.

## 2.    How do I know if I am part of the Settlement Class?

12. The Court directed that everyone who fits the following description is a Settlement Class Member and subject to the Settlement, unless they are an excluded person (*see* Question 3 below) or take steps to exclude themselves from the Settlement Class (*see* Question 10 below):

> **All persons and entities that purchased or otherwise acquired Olaplex publicly traded common stock on or before November 12, 2021, pursuant and/or traceable to the Offering Documents for Olaplex's IPO, and who were allegedly damaged thereby.**

13. If one of your mutual funds purchased Olaplex publicly traded common stock during the relevant time period, that does not make you a Settlement Class Member, although your mutual fund may be. You are a Settlement Class Member only if you individually purchased Olaplex publicly traded common stock on or before November 12, 2021. Check your investment records or contact your broker to see if you have any eligible purchases or acquisitions. **The Parties to the Action do not independently have access to your trading information.**

## 3.    Are there exceptions to being included?

14. Yes. There are some individuals and entities who are excluded from the Settlement Class by definition. Excluded from the Settlement Class are: (i) Defendants and the Individual Defendants' Immediate Family Members; (ii) the officers, directors, and subsidiaries of Olaplex, at all relevant times; (iii) Olaplex's affiliates and employee retirement and/or benefit plan(s) and their participants and/or beneficiaries to the extent they

purchased or acquired Olaplex's common stock pursuant or traceable to the Offering Documents through any such plan(s); (iv) any person and entity that had or has a controlling interest in Olaplex, at all relevant times; (v) the underwriters of Olaplex's IPO, provided, however, that any "Investment Vehicle"[3] shall not be excluded from the Settlement Class; (vi) any entity in which any of the Defendants have or had a controlling or beneficial interest; and (vii) the legal representatives, heirs, successors, or assigns of any such excluded person or entity, in their capacity as such. Also excluded from the Settlement Class is anyone who timely and validly seeks exclusion from the Settlement Class in accordance with the procedures described in Question 10 below.

## 4.    Why is this a class action?

15.  In a class action, one or more persons or entities (in this case, Lead Plaintiff) sue on behalf of people and entities who have similar claims. Together, these people and entities are a "class," and each is a "class member." A class action allows one court to resolve, in a single case, many similar claims that, if brought separately by individual people, might be too small economically to litigate. One court resolves the issues for all class members at the same time, except for those who exclude themselves, or "opt-out," from the class. In this Action, the Court has appointed Arkansas Teacher Retirement System to serve as Lead Plaintiff and Labaton Sucharow LLP (n/k/a Labaton Keller Sucharow LLP) to serve as Lead Counsel.

## 5.    What is this case about and what has happened so far?

16.  Olaplex is a hair care brand founded in 2014. On or about September 29, 2021, Olaplex commenced its initial public offering by offering and selling over 84 million shares of common stock to the public at $21.00 per share.

17.  On November 17, 2022, a class action complaint (*Leslie Lilien v. Olaplex Holdings, Inc. et al*, 2:22-CV-08395-SVW-SK) was filed against Defendants in the United States District Court for the Central District of California alleging violations of the federal securities laws related to the Company's IPO.

18.  By an Order dated February 27, 2023, the Court: (i) appointed Arkansas Teacher Retirement System as Lead Plaintiff; and (ii) approved Labaton as Lead Counsel and Glancy Prongay & Murray LLP as Liaison Counsel.

19.  On April 28, 2023, Lead Plaintiff filed a Consolidated Class Action Complaint for Violations of the Securities Laws asserting claims for violations of Sections 11, 12(a)(2), and 15 of the Securities Act of 1933 (the "Securities Act") against Olaplex and the Individual Defendants, and added claims against the Underwriters of the IPO,[4] and the Selling Stockholders.[5] Among other things, the April 28, 2023 complaint alleged that the Offering Documents filed in connection with Olaplex's IPO contained certain materially false and misleading statements or omissions related to the impact of laws and regulations on Olaplex's business as well as product safety-related risks. On June 22, 2023, Lead Plaintiff filed a Revised Consolidated Class Action Complaint for Violations of the Federal Securities Laws (the "Complaint"), which is the operative complaint in the Action.

20.  On July 19, 2023, Olaplex, the Individual Defendants, the Underwriters and the Selling Stockholders filed their motions to dismiss the Complaint. On August 14, 2023, Lead Plaintiff filed its opposition to the motions to dismiss. On August 28, 2023, Olaplex, the Individual Defendants, the Underwriters and the Selling Stockholders filed their replies in support of the motions to dismiss.

---

[3] "Investment Vehicle" means any investment company or pooled investment fund, including but not limited to, mutual fund families, exchange traded funds, fund of funds and hedge funds, in which the Underwriters of the IPO, or any of them, have, has or may have a direct or indirect interest, or as to which their respective affiliates may act as an investment advisor, but in which any such underwriter alone or together with its, his or her respective affiliates is not a majority owner or does not hold a majority beneficial interest.

[4] The term "Underwriters" means Goldman Sachs & Co. LLC ("Goldman Sachs"), J.P. Morgan Securities LLC ("J.P. Morgan"), Morgan Stanley & Co. LLC ("Morgan Stanley"), Barclays Capital Inc. ("Barclays"), BofA Securities, Inc. ("BofA"), Evercore Group L.L.C. ("Evercore"), Jefferies LLC ("Jefferies"), Raymond James & Associates, Inc. ("Raymond James"), Cowen and Company, LLC ("Cowen"), Piper Sandler & Co. ("Piper Sandler"), Truist Securities, Inc. ("Truist"), Telsey Advisory Group LLC ("Telsey"), Drexel Hamilton, LLC ("Drexel Hamilton"), and Loop Capital Markets LLC ("Loop").

[5] The term "Selling Stockholders" means the Advent Funds (defined below) and Mousserena, L.P. ("Mousse Partners"). The term "Advent Funds" includes Advent International GPE IX Limited Partnership, Advent International GPE IX-B Limited Partnership, Advent International GPE IX-C Limited Partnership, Advent International GPE IX-F Limited Partnership, Advent International GPE IX-G Limited Partnership, Advent International GPE IX-H Limited Partnership, Advent International GPE IX-I Limited Partnership, Advent International GPE IX-A SCSp, Advent International GPE IX-D SCSp, Advent International GPE IX-E SCSp, Advent International GPE IX Strategic Investors SCSp, Advent Partners GPE IX Limited Partnership, Advent Partners GPE IX-A Limited Partnership, Advent Partners GPE IX Cayman Limited Partnership, Advent Partners GPE IX-A Cayman Limited Partnership, and Advent Partners GPE IX-B Cayman Limited Partnership.

21. After two hearings, on February 7, 2025, the Court issued an order granting in part, and denying in part, defendants' motions to dismiss (the "MTD Order"). The MTD Order granted the Underwriters' motion to dismiss and the Selling Stockholders' motions to dismiss, finding that the claims against those entities were time-barred under the applicable statute of limitations. With respect to the Olaplex and Individual Defendants' motion to dismiss, the MTD Order granted their motion with respect to certain misstatements alleged in the Complaint, and denied the motion with respect to two separate allegedly false and misleading risk factor statements concerning the potential impact of laws and regulations on Olaplex's business and risks related to product safety, as well as to omissions of material information allegedly required to be disclosed concerning risks to Olaplex. The MTD Order also sustained claims brought under Sections 12(a)(2) and 15 of the Securities Act.

22. On February 28, 2025, Defendants filed their Answer to the Complaint and discovery commenced.

23. Prior to the start of formal discovery in the Action, Lead Plaintiff, through Lead Counsel, conducted a thorough investigation relating to the claims, defenses, and underlying events and transactions that are the subject of the Action. This process included reviewing and analyzing: (i) regulatory filings made by Olaplex with the U.S. Securities and Exchange Commission (the "SEC"); (ii) Company press releases, transcripts of earnings calls, and other public statements issued and disseminated by the Company; (iii) Company website and marketing materials; (iv) price and volume data for Olaplex common stock; (v) research reports from securities and financial analysts; (vi) news and media reports concerning the Company and other facts related to this Action; (vii) interviews with former Olaplex employees; (viii) consultation with digital marketing, cosmetics industry, and other experts; (ix) other publicly available material and data; and (x) the applicable law governing the claims and potential defenses.

24. Lead Plaintiff also submitted requests to the U.S. Food and Drug Administration ("FDA") and the Federal Trade Commission ("FTC"), among others, pursuant to the Freedom of Information Act, 5 U.S.C. § 552 ("FOIA"). In response, Lead Plaintiff received approximately 357 pages of records from the FDA and approximately 22 pages of records from the FTC.

25. In connection with formal discovery, Defendants produced approximately 50,000 documents (approximately 408,000 pages) to Lead Plaintiff, and Lead Plaintiff produced approximately 400 documents (approximately 40,000 pages) to Defendants. Additionally, third parties produced approximately 400 documents (approximately 4,600 pages). In total, approximately 51,000 documents (approximately 452,000 pages) were produced by the Parties and third parties in formal discovery.

26. On May 30, 2025, Lead Plaintiff filed its motion for class certification and appointment of class representative and class counsel (the "Class Certification Motion"). In support of the Class Certification Motion, Lead Plaintiff submitted an expert report testifying to the method by which Lead Plaintiff could demonstrate that damages could be calculated on a class-wide basis. On June 20, 2025, Defendants opposed the Class Certification Motion. Among other things, Defendants argued that any class, if certified, should be narrowed to exclude purchases after November 12, 2021, because after that date, Lead Plaintiff would be unable to demonstrate the ability of putative class members to trace their shares to the Registration Statement and Prospectus, and therefore individualized issues with regard to tracing predominated over common issues. Defendants submitted an expert report in support of their position indicating that the proposed class definition should be narrowed to only those who purchased publicly traded Olaplex common stock on or before November 12, 2021, because on November 12, 2021, non-IPO shares were deposited at Depository Trust Company ("DTC"), commingling with and, as opined by Defendants' expert, becoming indistinguishable from IPO shares already held at DTC. On June 27, 2025, Lead Plaintiff filed its reply in further support of its Class Certification Motion, attaching an expert report opposing and responding to Defendants' expert testimony. A hearing on the Class Certification Motion was scheduled for July 21, 2025.

27. The Parties began exploring the possibility of a negotiated resolution in April 2025. Specifically, the Parties agreed to participate in a mediation by July 11, 2025, and subsequently retained David Murphy of Phillips ADR Services to act as the mediator in the case (the "Mediator"). On June 19, 2025, Lead Counsel and Defendants' Counsel, among others, participated in a full-day, in-person mediation session before the Mediator. In advance of that session, the Parties submitted detailed mediation statements to the Mediator, together with numerous supporting exhibits. The Parties weighed the risks and benefits of settlement, including Defendants' opposition to Lead Plaintiff's Motion for Class Certification.

28. The June 19, 2025 mediation session ended without any agreement being reached. The Parties continued discussions with the Mediator following the mediation to further explore the possibility of a settlement. On June 28, 2025, the Mediator issued a mediator's recommendation to the Parties, which was accepted on July 1, 2025, subject to the execution of a formal settlement agreement.

29. On July 3, 2025, the Court scheduled a Status Conference for July 7, 2025 to discuss the proposed Settlement. At the Status Conference, the Court provided guidance concerning the scope of the class the Court would be prepared to certify as part of the Settlement. Specifically, the Court informed the Parties that it was strongly inclined to only certify a settlement class that was limited to investors that purchased or otherwise acquired Olaplex's common stock pursuant and/or traceable to the Offering Documents through November 12, 2021, due to concerns regarding traceability after this date. (Tr. of Status Conference 6:3-7 ("And then November was when the shares that were initially offered began to sell on the market. And for a number of reasons, from that point forward, the Court would find that at least at this point that there is no predominance for all the class members thereafter.")).

30. The Parties' settlement in principle was subsequently memorialized in a confidential term sheet executed and finalized on July 26, 2025 (the "Term Sheet"), and the Stipulation was executed on August 1, 2025.

| 6. | What are the reasons for the Settlement? |
|---|---|

31. The Court did not finally decide in favor of Lead Plaintiff or Defendants. Instead, both sides agreed to a settlement. Lead Plaintiff and Lead Counsel believe that the claims asserted in the Action have merit. They recognize, however, the expense and length of continued proceedings needed to pursue the claims through trial and appeals, as well as the difficulties in establishing liability and damages. Assuming the claims proceeded to trial, the Parties would present factual and expert testimony on each of the disputed issues, and there is risk that the Court or jury would resolve these issues unfavorably against Lead Plaintiff and the class. In light of the Settlement and the guaranteed cash recovery to the Settlement Class, Lead Plaintiff and Lead Counsel believe that the proposed Settlement is fair, reasonable, and adequate, and in the best interests of the Settlement Class.

32. Defendants have denied and continue to deny each and every one of the claims alleged by Lead Plaintiff in the Action, including all claims in the Complaint, and specifically deny that they have committed any act or omission giving rise to any liability or violation of law. Defendants have asserted and continue to assert that their disclosures were accurate and complete and expressly deny and continue to deny any and all allegations of wrongdoing, including, without limitation, any liability arising out of any of the conduct, statements, acts, or omissions alleged, or that could have been alleged, in the Action; that any alleged misstatements or omissions were made; that any Member of the Settlement Class has suffered damages; that Members of the Settlement Class were harmed by the conduct alleged; or that the Action may properly proceed as a class action. Nonetheless, Defendants have concluded that continuation of the Action would be protracted and expensive, and have taken into account the uncertainty and risks inherent in any litigation, especially a complex case like this Action.

## THE SETTLEMENT BENEFITS

| 7. | What does the Settlement provide? |
|---|---|

33. In exchange for the Settlement and the release of the Released Plaintiffs' Claims against the Released Defendant Parties (*see* Question 9 below), Defendants have agreed to cause a $47,500,000 payment to be made, which, along with any interest earned, will be distributed, after deduction of Court-awarded attorneys' fees and Litigation Expenses, Notice and Administration Expenses, Taxes, and any other fees or expenses approved by the Court (the "Net Settlement Fund"), to Settlement Class Members who submit valid and timely Claim Forms and are found to be eligible to receive a distribution from the Net Settlement Fund.

| 8. | How can I receive a payment? |
|---|---|

34. To qualify for a payment from the Net Settlement Fund, you must submit a timely and valid Claim Form. A Claim Form may be obtained from the websites www.OlaplexSecuritiesSettlement.com and www.labaton.com or you can submit a claim online at www.OlaplexSecuritiesSettlement.com. You can also request that a Claim Form be mailed to you by calling the Claims Administrator toll-free at 1-877-879-0943.

35. Please read the instructions contained in the Claim Form carefully, fill out the form, include all the documents the form requests, sign it, and mail or submit it online to the Claims Administrator so that it is **postmarked or received no later than November 24, 2025**.

AL7028 v.04

| 9. | What am I giving up to receive a payment and by staying in the Settlement Class? |
|---|---|

36.  If you are a Settlement Class Member and do not timely and validly exclude yourself from the Settlement Class, you will remain in the Settlement Class and that means that, upon the Effective Date of the Settlement, you will release all Released Plaintiffs' Claims against the Released Defendant Parties. All of the Court's orders about the Settlement, whether favorable or unfavorable, will apply to you and legally bind you.

(a)  **"Released Plaintiffs' Claims"** means any and all claims and causes of action of every nature and description, whether known or Unknown Claims (as defined herein), contingent or absolute, mature or not mature, liquidated or unliquidated, accrued or not accrued, concealed or hidden, choate or inchoate, perfected or unperfected, regardless of legal or equitable theory and whether arising under federal, state, common, or foreign law or statutory, common, or administrative law, or any other law, rule, or regulation, that Lead Plaintiff or any other member of the Settlement Class: (a) asserted in the Action or (b) could have asserted in the Action, or in any forum (including, without limitation, any federal or state court, or in any other court, arbitration proceeding, administrative agency, or other forum, in the United States or elsewhere), that arise out of or are based upon both: (i) the allegations, transactions, facts, matters or occurrences, representations or omissions involved, set forth, or referred to in the complaints filed in the Action, and (ii) the purchase, acquisition, disposition, holding, or sale of Olaplex publicly traded common stock pursuant and/or traceable to the Offering Documents for Olaplex's IPO. For the avoidance of doubt, Released Plaintiffs' Claims shall not include: (i) claims to enforce the Settlement; (ii) claims in any shareholder derivative action, including *Carla Ciuffo v. Christine Dagousset et al.*, Master File No. 2:23-cv-09712-SVW-SK (C.D. Cal.), and any actions consolidated therewith; and (iii) claims arising from any regulatory or governmental investigation or proceeding.

(b)  **"Released Defendant Parties"** means Defendants, the Underwriters, and Selling Stockholders and each of their respective former, present or future parents, subsidiaries, divisions, controlling persons, associates, related entities, and affiliates and each and all of their respective present and former employees, members, partners, principals, officers, directors, controlling shareholders, agents, attorneys, advisors (including financial or investment advisors), accountants, auditors, consultants, underwriters, investment bankers, commercial bankers, general or limited partners or partnerships, limited liability companies, members, joint ventures, insurers and reinsurers, predecessors, successors, estates, Immediate Family Members, heirs, executors, trustees, administrators, legal representatives, and assigns, in their capacities as such; and the predecessors, successors, estates, Immediate Family Members, heirs, executors, trustees, administrators, agents, legal representatives, and assigns of each of them, in their capacities as such, as well as any trust of which any Released Defendant Party is the settlor or which is for the benefit of any of their Immediate Family Members. For the avoidance of doubt, the Released Defendant Parties include Goldman Sachs & Co. LLC, J.P. Morgan Securities LLC, Morgan Stanley & Co. LLC, Barclays Capital Inc., BofA Securities, Inc., Evercore Group L.L.C., Jefferies LLC, Raymond James & Associates, Inc., Cowen and Company, LLC, Piper Sandler & Co., Truist Securities, Inc., Telsey Advisory Group LLC, Drexel Hamilton, LLC, Loop Capital Markets LLC, Mousserena, L.P., and Advent International GPE IX Limited Partnership, Advent International GPE IX-B Limited Partnership, Advent International GPE IX-C Limited Partnership, Advent International GPE IX-F Limited Partnership, Advent International GPE IX-G Limited Partnership, Advent International GPE IX-H Limited Partnership, Advent International GPE IX-I Limited Partnership, Advent International GPE IX-A SCSp, Advent International GPE IX-D SCSp, Advent International GPE IX-E SCSp, Advent International GPE IX Strategic Investors SCSp, Advent Partners GPE IX Limited Partnership, Advent Partners GPE IX-A Limited Partnership, Advent Partners GPE IX Cayman Limited Partnership, Advent Partners GPE IX-A Cayman Limited Partnership, and Advent Partners GPE IX-B Cayman Limited Partnership.

(c)  **"Unknown Claims"** means any and all Released Plaintiffs' Claims that Lead Plaintiff, or any other Settlement Class Member, does not know or suspect to exist in his, her, or its favor at the time of the release of the Released Defendant Parties, and any and all Released Defendants' Claims that any Defendant does not know or suspect to exist in his, her, or its favor at the time of the release of the Released Plaintiff Parties, which if known by him, her, or it might have affected his, her, or its decision(s) with respect to the Settlement, including the decision to object to the terms of the Settlement or to exclude himself, herself, or itself from the Settlement Class. With respect to any and all Released Plaintiffs' Claims and Released Defendants' Claims, the Parties stipulate and agree that, upon the Effective Date, Lead Plaintiff and Defendants shall expressly, and each other Settlement Class Member shall be deemed to have, and by operation of the Judgment or Alternative Judgment shall have, to the fullest extent permitted by law, expressly waived and relinquished any and all provisions, rights, and benefits conferred by any law of any state or territory of the United States or foreign law, or principle of common law, which is similar, comparable, or equivalent to Cal. Civ. Code § 1542, which provides:

AL7029 v.04

**A general release does not extend to claims that the creditor or releasing party does not know or suspect to exist in his or her favor at the time of executing the release and that, if known by him or her, would have materially affected his or her settlement with the debtor or released party.**

Lead Plaintiff, other Settlement Class Members, or Defendants may hereafter discover facts, legal theories, or authorities in addition to or different from those which any of them now knows or believes to be true with respect to the Action, the Released Plaintiffs' Claims or the Released Defendants' Claims, but Lead Plaintiff and Defendants shall expressly, fully, finally, and forever settle and release, and each Settlement Class Member shall be deemed to have fully, finally, and forever settled and released, and upon the Effective Date and by operation of the Judgment or Alternative Judgment shall have settled and released, fully, finally, and forever, any and all Released Plaintiffs' Claims and Released Defendants' Claims as applicable, without regard to the subsequent discovery or existence of such different or additional facts, legal theories, or authorities. Lead Plaintiff and Defendants acknowledge, and other Settlement Class Members by operation of law shall be deemed to have acknowledged, that the inclusion of "Unknown Claims" in the definition of Released Plaintiffs' Claims and Released Defendants' Claims was separately bargained for and was a material element of the Settlement.

37. The **"Effective Date"** will occur when an Order entered by the Court approving the Settlement becomes Final and is not subject to appeal.

38. Upon the Effective Date, Defendants will also provide a release of any claims against Lead Plaintiff, the Settlement Class, and Plaintiffs' Counsel arising out of or related to the institution, prosecution, or settlement of the claims in the Action, except for claims relating to the enforcement of the Settlement or any claims against any person who submits a request for exclusion that is accepted by the Court.

# EXCLUDING YOURSELF FROM THE SETTLEMENT CLASS

39. If you want to keep any right you may have to sue or continue to sue Defendants and the other Released Defendant Parties on your own concerning the Released Plaintiffs' Claims, then you must take steps to remove yourself from the Settlement Class. This is called excluding yourself or "opting out." **Please note: If you decide to exclude yourself from the Settlement Class, there is a risk that any lawsuit you may file to pursue claims alleged in the Action may be dismissed, including because the suit is not filed within the applicable time periods required for filing suit.** Defendants have the option to terminate the Settlement if a certain amount of Settlement Class Members request exclusion.

| 10. | How do I exclude myself from the Settlement Class? |
|---|---|

40. To exclude yourself from the Settlement Class, you must mail a signed letter stating that you request to be "excluded from the Settlement Class in *Lilien v. Olaplex Holdings, Inc.*, No. 22-CV-08395-SVW (C.D. Cal.)." You cannot exclude yourself by telephone or email. Each request for exclusion must also: (i) state the name, address, telephone number, and email address (if any) of the Person seeking exclusion; (ii) the date(s), price(s), and number(s) of shares for each purchase/acquisition and sale (if any) of Olaplex publicly traded common stock on or before November 12, 2021, by the Person seeking exclusion; and (iii) be signed by the Person requesting exclusion. Requests must be submitted with documentary proof of purchases on or before November 12, 2021 that demonstrates the requester's status as a beneficial owner of the shares. A request for exclusion must be mailed so that it is **received no later than November 10, 2025** at:

*Olaplex Securities Settlement*
c/o Epiq Systems, Inc.
P.O. Box 2167
Portland, OR 97208-2167

41. This information is needed to determine whether you are a member of the Settlement Class. Your exclusion request must comply with these requirements in order to be valid.

42. If you ask to be excluded, do not submit a Claim Form because you cannot receive any payment from the Net Settlement Fund. Also, you cannot object to the Settlement because you will not be a Settlement Class Member and the Settlement will not affect you. If you submit a timely and valid exclusion request, you will not be legally bound by anything that happens in the Action, and you may be able to sue (or continue to sue) Defendants and the other Released Defendant Parties in the future.

| 11. | If I do not exclude myself, can I sue Defendants and the other Released Defendant Parties for the same reasons later? |
|---|---|

43. No. Unless you properly exclude yourself, you will give up any rights to sue Defendants and the other Released Defendant Parties for any and all Released Plaintiffs' Claims. If you have a pending lawsuit against any of the Released Defendant Parties, **speak to your lawyer in that case immediately**. You must exclude yourself from this Settlement Class to continue your own lawsuit. Remember, the exclusion deadline is **November 10, 2025**.

# THE LAWYERS REPRESENTING YOU

| 12. | Do I have a lawyer in this case? |
|---|---|

44. Labaton Keller Sucharow LLP is Lead Counsel in the Action and represents all Settlement Class Members. You will not be separately charged for these lawyers. The Court will determine the amount of attorneys' fees and Litigation Expenses, which will be paid from the Settlement Fund. If you want to be represented by your own lawyer, you may hire one at your own expense.

| 13. | How will the lawyers be paid? |
|---|---|

45. Lead Counsel, together with the other Plaintiffs' Counsel, has been prosecuting the Action on a contingent basis and has not been paid for any of their work. Lead Counsel, on behalf of itself and the other Plaintiffs' Counsel, will seek an attorneys' fee award of no more than 25% of the Settlement Fund, which will include accrued interest. Lead Counsel has agreed to share the awarded attorneys' fees with other Plaintiffs' Counsel. Lead Counsel will also seek payment of Litigation Expenses incurred by Plaintiffs' Counsel in the prosecution of the Action of no more than $875,000, plus accrued interest, which may include an application in accordance with the PSLRA for the reasonable costs and expenses (including lost wages) of Lead Plaintiff directly related to its representation of the Settlement Class (of no more than $20,000). As explained above, any attorneys' fees and expenses awarded by the Court will be paid from the Settlement Fund.

# OBJECTING TO THE SETTLEMENT, THE PLAN OF ALLOCATION, OR THE FEE AND EXPENSE APPLICATION

| 14. | How do I tell the Court that I do not like something about the proposed Settlement? |
|---|---|

46. If you are a Settlement Class Member, you can object to the Settlement or any of its terms, the proposed Plan of Allocation of the Net Settlement Fund, and/or Lead Counsel's Fee and Expense Application. You may write to the Court about why you think the Court should not approve any or all of the Settlement terms or related relief. If you would like the Court to consider your views, you must file a proper objection within the deadline, and according to the following procedures.

47. To object, you must send a signed letter stating that you object to the proposed Settlement, the Plan of Allocation, and/or the Fee and Expense Application in "*Lilien v. Olaplex Holdings, Inc.*, No. 22-CV-08395-SVW (C.D. Cal.)." The objection must also: (i) state the name, address, telephone number, and email address (if any) of the objector and must be signed by the objector; (ii) state the objection(s) and the specific reasons for each objection, including whether it applies only to the objector, to a specific subset of the Settlement Class, or to the entire Settlement Class, and any legal and evidentiary support, and witnesses, the Settlement Class Member wishes to bring to the Court's attention; and (iii) include documents sufficient to show the objector's membership in the Settlement Class, such as the date(s), price(s), and number(s) of shares of Olaplex publicly traded common stock purchased and sold (if any). Objectors who are represented by counsel must also provide the name, address, and telephone number of all counsel, if any, who represent them; the number of times the objector and their counsel have filed an objection to a class action settlement in the last five years; the nature of each such objection in each such case; and the name and docket number of each such case. Unless otherwise ordered by the Court, any Settlement Class Member who does not object in the manner described in this Notice will be deemed to have waived any objection and will be unable to make any objection to the proposed Settlement, the Plan of Allocation, and/or Lead Counsel's Fee and Expense Application.

AL70211 v.04

48. Your objection must be filed with the Court **no later than November 10, 2025 and** be mailed or delivered to the following counsel so that it is **received no later than November 10, 2025:**

| Court | Lead Counsel | Defendants' Counsel |
|---|---|---|
| **Clerk of the Court** | **Labaton Keller Sucharow LLP** | **Ropes & Gray LLP** |
| U.S. District Court | Lauren A. Ormsbee, Esq. | Anne Johnson Palmer, Esq. |
| Central District of California | 140 Broadway | Three Embarcadero Center |
| 255 East Temple Street | New York, NY 10005 | San Francisco, CA 94111 |
| Suite 180 | | |
| Los Angeles, CA 90012 | | |

49. You do not need to attend the Settlement Hearing to have your written objection considered by the Court. However, any Settlement Class Member who has complied with the procedures described in this Question and below in Question 18 may appear at the Settlement Hearing and be heard, to the extent allowed by the Court. An objector may appear in person or arrange, at his, her, or its own expense, for a lawyer to represent him, her, or it at the Settlement Hearing.

## 15.  What is the difference between objecting and seeking exclusion?

50. Objecting is telling the Court that you do not like something about the proposed Settlement, Plan of Allocation, or Lead Counsel's Fee and Expense Application. You can still recover money from the Settlement. You can object *only* if you stay in the Settlement Class. Excluding yourself is telling the Court that you do not want to be part of the Settlement Class. If you exclude yourself from the Settlement Class, you have no basis to object because the Settlement and the Action no longer affect you.

# THE SETTLEMENT HEARING

## 16.  When and where will the Court decide whether to approve the Settlement?

51. The Court will hold the Settlement Hearing on **December 1, 2025 at 1:30 p.m. (PT)**, either remotely or in person, at the U.S. District Court, Central District of California, First Street Courthouse, 350 W. 1st Street, Courtroom 10A, 10th Floor, Los Angeles, CA 90012.

52. At this hearing, the Honorable Stephen V. Wilson will consider whether: (i) the Settlement is fair, reasonable, adequate, and should be approved; (ii) the Court should dismiss the Action with prejudice as provided in the Stipulation and Agreement of Settlement, dated August 1, 2025; (iii) for purposes of the Settlement only, whether the Settlement Class should be finally certified, whether Lead Plaintiff should be finally certified as Class Representative for the Settlement Class, and whether the law firm of Labaton Keller Sucharow LLP should be finally appointed as Class Counsel and Glancy Prongay & Murray LLP as Liaison Counsel for the Settlement Class; (iv) the Plan of Allocation is fair and reasonable, and should be approved; and (v) the application of Lead Counsel for an award of attorneys' fees and payment of Litigation Expenses is reasonable and should be approved. The Court will take into consideration any written objections filed in accordance with the instructions in Question 14 above. We do not know how long it will take the Court to make these decisions.

53. The Court may change the date and time of the Settlement Hearing, or hold the hearing remotely, without another individual notice being sent to Settlement Class Members. If you want to attend the hearing, you should check with Lead Counsel beforehand to be sure that the date and/or time has not changed, or periodically check the Settlement website at www.OlaplexSecuritiesSettlement.com to see if the Settlement Hearing has stayed as scheduled or has changed.

## 17.  Do I have to come to the Settlement Hearing?

54. No. Lead Counsel will answer any questions the Court may have. But, you are welcome to attend at your own expense. If you submit a valid and timely objection, the Court will consider it and you do not have to come to Court to discuss it. You may have your own lawyer attend (at your own expense), but it is not required. If you do hire your own lawyer, he or she must file and serve a Notice of Appearance in the manner described in the answer to Question 18 below **no later than November 10, 2025**.

AL70212 v.04

| 18. | May I speak at the Settlement Hearing? |

55. You may ask the Court for permission to speak at the Settlement Hearing. To do so, you must, **no later than November 10, 2025**, submit a statement that you, or your attorney, intend to appear in "*Lilien v. Olaplex Holdings, Inc.*, No. 22-CV-08395-SVW (C.D. Cal.)." If you intend to present evidence at the Settlement Hearing, you must also include in your objections (prepared and submitted according to the answer to Question 14 above) the identities of any witnesses you may wish to call to testify and any exhibits you intend to introduce into evidence at the Settlement Hearing. You may not speak at the Settlement Hearing if you exclude yourself from the Settlement Class or if you have not provided written notice of your intention to speak at the Settlement Hearing in accordance with the procedures described in this Question and in Question 14 above.

# IF YOU DO NOTHING

| 19. | What happens if I do nothing at all? |

56. If you do nothing and you are a member of the Settlement Class, you will receive no money from this Settlement and you will be precluded from starting a lawsuit, continuing with a lawsuit, or being part of any other lawsuit against Defendants and the other Released Defendant Parties concerning the Released Plaintiffs' Claims. To share in the Net Settlement Fund, you must submit a Claim Form (*see* Question 8 above). To start, continue, or be a part of any other lawsuit against Defendants and the other Released Defendant Parties concerning the Released Plaintiffs' Claims, you must exclude yourself from the Settlement Class (*see* Question 10 above).

# GETTING MORE INFORMATION

| 20. | Are there more details about the Settlement? |

57. This Notice summarizes the proposed Settlement. More details are in the Stipulation. You can get a copy of the Stipulation, and other documents related to the Settlement, as well as additional information about the Settlement, by visiting the website www.OlaplexSecuritiesSettlement.com. You may also call the Claims Administrator toll free at 1-877-879-0943 or write to the Claims Administrator at *Olaplex Securities Settlement*, c/o Epiq Systems, Inc., P.O. Box 2167, Portland, OR 97208-2167.

58. You may also review the Stipulation filed with the Court, or other documents in the case, during business hours at the Office of the Clerk of the United States District Court, Central District of California, 255 East Temple Street, Suite 180, Los Angeles, CA 90012, between 9:00 a.m. and 4:00 p.m. on Monday through Friday, excluding Court holidays. (Please check the Court's website, www.cacd.uscourts.gov, for information about Court closures before visiting.) Subscribers to PACER, a fee-based service, can also view the papers filed publicly in the Action through the Court's on-line Case Management/Electronic Case Files System at https://www.pacer.gov.

**Please do not call the Court with questions about the Settlement.**

# PLAN OF ALLOCATION OF THE NET SETTLEMENT FUND

| 21. | How will my claim be calculated? |

59. As discussed above, the Settlement Amount and any interest it earns constitute the Settlement Fund. The Settlement Fund, after the deduction of Court-approved attorneys' fees and Litigation Expenses, Notice and Administration Expenses, Taxes, and any other fees or expenses approved by the Court, is the Net Settlement Fund. If the Settlement is approved by the Court, the Net Settlement Fund will be distributed to Authorized Claimants – *i.e.*, members of the Settlement Class who timely submit valid Claim Forms that are accepted for payment – in accordance with the following proposed Plan of Allocation, or such other plan of allocation as the Court may approve. Settlement Class Members who do not timely submit valid Claim Forms will not share in the Net Settlement Fund but will otherwise be bound by the Settlement. The Court may approve this proposed Plan of Allocation, or modify it, without additional individual notice to the Settlement Class. Any order modifying the Plan of Allocation will be posted on www.OlaplexSecuritiesSettlement.com and www.labaton.com.

60. The objective of this Plan of Allocation is to distribute the Net Settlement Fund equitably among those Settlement Class Members who suffered economic losses as a result of the alleged violations of the federal securities law with respect to shares of Olaplex's publicly traded common stock purchased or otherwise acquired pursuant and/or traceable to the Offering Documents for Olaplex's IPO on or before November 12, 2021. The Plan of Allocation measures the amount of loss that a Settlement Class Member can claim for purposes of making proportional *pro rata* allocations of the Net Settlement Fund to Authorized Claimants. The Claims Administrator will calculate claimants' claims and shall determine each Authorized Claimant's *pro rata* share of the Net Settlement Fund based upon each Authorized Claimant's "Recognized Claim," defined below.

61. To design the Plan of Allocation, Lead Counsel conferred with Lead Plaintiff's consulting damages expert. The Plan of Allocation, however, is not a formal damages analysis. The calculations made pursuant to the Plan of Allocation are not intended to estimate, or be indicative of, the amounts that Settlement Class Members might have been able to recover as damages after a trial. Nor are the calculations, including the Recognized Loss formulas, intended to estimate the amounts that will be paid to Authorized Claimants. The computations under the Plan of Allocation are only a method to weigh the claims of Authorized Claimants against one another for the purposes of making *pro rata* allocations of the Net Settlement Fund and the Recognized Claim amounts are the basis upon which the Net Settlement Fund will be proportionately allocated to Authorized Claimants.

62. The claims asserted in the Action under Section 11 of the Securities Act serve as the basis for the calculation of the Recognized Loss Amounts under the Plan of Allocation. Section 11 of the Securities Act provides a statutory formula for the calculation of damages. The formulas stated below, which were developed by Lead Plaintiff's consulting damages expert, generally track the statutory formula.

63. Defendants, their respective counsel, and all other Released Defendant Parties shall have no responsibility or liability for the investment of the Settlement Fund, the distribution of the Net Settlement Fund, the Plan of Allocation or the payment of any claim. Lead Plaintiff, Plaintiffs' Counsel, the Claims Administrator, and anyone acting on their behalf, likewise, will have no liability for their reasonable efforts to execute, administer, and distribute the Settlement.

# CALCULATION OF RECOGNIZED LOSS AMOUNTS

64. For purposes of determining whether a claimant has a Recognized Claim, purchases, acquisitions, and sales of Olaplex publicly traded common stock will first be matched on a First In/First Out ("FIFO") basis. If a Settlement Class Member has more than one purchase/acquisition or sale of Olaplex common stock, sales will be matched against purchases/acquisitions in chronological order, beginning with the earliest purchase/acquisition made during the period from September 29, 2021 through November 12, 2021.

65. A "Recognized Loss Amount" will be calculated as set forth below for each share of Olaplex's publicly traded common stock purchased or acquired during the period from September 29, 2021 through November 12, 2021, both dates inclusive, that is listed in the Claim Form and for which adequate documentation is provided. To the extent that the calculation of a claimant's Recognized Loss Amount results in a negative number (a gain), that number shall be set to zero.

66. The sum of a claimant's Recognized Loss Amounts will be the claimant's Recognized Claim.

67. **For each share of Olaplex's publicly traded common stock purchased or otherwise acquired pursuant or traceable to the Offering Documents for Olaplex's IPO from September 29, 2021 through, and including, November 12, 2021 and:**

   A. Sold before the opening of trading on November 17, 2022,[6] the Recognized Loss Amount for each such share shall be the purchase price (not to exceed $21.00, the IPO price) *__minus__* the sale price.

   B. Sold after the opening of trading on November 17, 2022, through the close of trading on July 31, 2025, the Recognized Loss Amount for each such share shall be the purchase price (not to exceed $21.00, the IPO price) *__minus__* the sale price (not to be less than $5.75, the closing share price on November 17, 2022).

   C. Retained after the close of trading on July 31, 2025, the Recognized Loss Amount for each such share shall be the purchase price (not to exceed $21.00, the IPO price) *__minus__* $5.75, the closing share price on November 17, 2022.

---

[6] For purposes of the statutory calculations, November 17, 2022 is the date of suit.

## ADDITIONAL PROVISIONS

68. Purchases, acquisitions, and sales of Olaplex's publicly traded common stock shall be deemed to have occurred on the "contract" or "trade" date, as opposed to the "settlement" or "payment" or "sale" date. The receipt or grant by gift, inheritance, or operation of law of Olaplex's publicly traded common stock outside of the IPO shall not be deemed a purchase, acquisition, or sale for the calculation of a claimant's Recognized Claim, nor shall the receipt or grant be deemed an assignment of any claim relating to the purchase or acquisition of such shares of Olaplex's publicly traded common stock, unless: (i) the donor or decedent purchased or otherwise acquired such shares of Olaplex's publicly traded common stock on or before November 12, 2021; (ii) no Claim Form was submitted by or on behalf of the donor, on behalf of the decedent, or by anyone else with respect to such shares of Olaplex's publicly traded common stock; and (iii) it is specifically so provided in the instrument of gift or assignment.

69. In accordance with the Plan of Allocation, the Recognized Loss Amount on any portion of a purchase or acquisition that matches against (or "covers") a "short sale" is zero. The Recognized Loss Amount on a "short sale" that is not covered by a purchase or acquisition is also zero.

70. Olaplex publicly traded common stock purchased or otherwise acquired pursuant or traceable to the Offering Documents for Olaplex's IPO from September 29, 2021 through November 12, 2021, both dates inclusive, is the only security eligible for a recovery under the Plan of Allocation. With respect to Olaplex publicly traded common stock purchased or sold through the exercise of an option, the purchase/sale date of the Olaplex common stock is the exercise date of the option, and the purchase/sale price is the exercise price of the option.

71. An Authorized Claimant's Recognized Claim shall be the amount used to calculate the Authorized Claimant's *pro rata* share of the Net Settlement Fund. If the sum total of Recognized Claims of all Authorized Claimants who are entitled to receive payment out of the Net Settlement Fund is greater than the Net Settlement Fund, each Authorized Claimant shall receive his, her, or its *pro rata* share of the Net Settlement Fund. The *pro rata* share shall be the Authorized Claimant's Recognized Claim divided by the total of Recognized Claims of all Authorized Claimants, multiplied by the total amount in the Net Settlement Fund.

72. If the Net Settlement Fund exceeds the sum total amount of the Recognized Claims of all Authorized Claimants entitled to receive payment out of the Net Settlement Fund, the excess amount in the Net Settlement Fund shall be distributed *pro rata* to all Authorized Claimants entitled to receive payment.

73. The Net Settlement Fund will be allocated among all Authorized Claimants whose prorated payment is $10.00 or greater. If the prorated payment to any Authorized Claimant calculates to less than $10.00, it will not be included in the calculation and no distribution will be made to that Authorized Claimant.

74. Settlement Class Members who do not submit acceptable Claim Forms will not share in the distribution of the Net Settlement Fund, however they will nevertheless be bound by the Settlement and the final Judgment of the Court dismissing this Action and related claims unless they request exclusion from the Settlement Class.

75. Distributions will be made to Authorized Claimants after all claims have been processed and after the Court has finally approved the Settlement and the Settlement has reached its Effective Date. If there is any balance remaining in the Net Settlement Fund (whether by reason of tax refunds, uncashed checks or otherwise) after at least six (6) months from the date of initial distribution of the Net Settlement Fund, Lead Counsel shall, if feasible and economical, redistribute such balance among Authorized Claimants who have cashed their checks in an equitable and economic fashion. These redistributions shall be repeated until the balance in the Net Settlement Fund is no longer feasible or economical to distribute. Any balance that still remains in the Net Settlement Fund after such re-distribution(s), which is not feasible or economical to reallocate, after payment of Notice and Administration Expenses, Taxes, and any unpaid attorneys' fees and expenses, shall be contributed to the Consumer Federation of America, a non-profit, non-sectarian organization, or such other organization approved by the Court.

76. Payment pursuant to the Plan of Allocation, or such other plan as may be approved by the Court, shall be conclusive against all claimants. No person shall have any claim against Lead Plaintiff, Plaintiffs' Counsel, their damages expert, the Claims Administrator, or other agent designated by Plaintiffs' Counsel, arising from determinations or distributions to claimants made substantially in accordance with the Stipulation, the Plan of Allocation approved by the Court, or further orders of the Court. Lead Plaintiff, Defendants, Defendants' Counsel, and all other Released Defendant Parties shall have no responsibility for or liability whatsoever for the investment or distribution of the Settlement Fund, the Net Settlement Fund, the Plan of Allocation or the

14

AL70215 v.04

determination, administration, calculation, or payment of any Claim Form or non-performance of the Claims Administrator, the payment or withholding of Taxes owed by the Settlement Fund or any losses incurred in connection therewith.

## SPECIAL NOTICE TO SECURITIES BROKERS AND NOMINEES

77. If you purchased or otherwise acquired Olaplex publicly traded common stock from September 29, 2021 through November 12, 2021, inclusive, for the beneficial interest of a person or entity other than yourself, the Court has directed that **WITHIN TEN (10) CALENDAR DAYS OF YOUR RECEIPT OF THE POSTCARD NOTICE, YOU MUST EITHER**: (a) provide a list of the names and addresses of all such beneficial owners to the Claims Administrator and the Claims Administrator is ordered to send the Postcard Notice promptly to such identified beneficial owners; or (b) **WITHIN TEN (10) CALENDAR DAYS** of receipt of the Postcard Notice or Notice, request from the Claims Administrator sufficient copies of the Postcard Notice to forward to all such beneficial owners and **WITHIN TEN (10) CALENDAR DAYS** of receipt of those Postcard Notices from the Claims Administrator, forward them to all such beneficial owners. Nominees shall also provide email addresses for all such beneficial owners to the Claims Administrator, to the extent they are available. Nominees who elect to send the Postcard Notice to their beneficial owners SHALL ALSO send a statement to the Claims Administrator confirming that the mailing was made and shall retain their mailing records for use in connection with any further notices that may be provided in the Action.

78. Upon FULL AND TIMELY compliance with these directions, such nominees may seek reimbursement of their reasonable expenses incurred in providing notice to beneficial owners of up to: $0.05 per Postcard Notice, plus postage at the current pre-sort rate used by the Claims Administrator, for notices mailed by nominees; or $0.05 per mailing record provided to the Claims Administrator, by providing the Claims Administrator with proper documentation supporting the expenses for which reimbursement is sought. Such properly documented expenses incurred by nominees in compliance with the above shall be paid from the Settlement Fund, and any unresolved disputes regarding reimbursement of such expenses shall be subject to review by the Court. All communications concerning the foregoing should be addressed to the Claims Administrator:

*Olaplex Securities Settlement*
c/o Epiq Systems, Inc.
P.O. Box 2167
Portland, OR 97208-2167
1-877-879-0943
www.OlaplexSecuritiesSettlement.com
info@OlaplexSecuritiesSettlement.com

Dated: August 25, 2025

BY ORDER OF THE U.S. DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA

15

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| LESLIE LILIEN, Individually and on Behalf of All Others Similarly Situated,<br><br>    Plaintiff,<br><br>    v.<br><br>OLAPLEX HOLDINGS, INC., et al.,<br><br>    Defendants. | Case No. 2:22-cv-08395-SVW(SKx)<br><br>CLASS ACTION<br><br>**PROOF OF CLAIM AND RELEASE FORM** |

## I.  GENERAL INSTRUCTIONS

1.  To recover as a member of the Settlement Class based on your claims in the class action entitled *Lilien v. Olaplex Holdings, Inc.*, No. 22-CV-08395-SVW (C.D. Cal.) (the "Action"), you must complete and, on page 5 below, sign this Proof of Claim and Release form ("Claim Form"). If you fail to submit a timely and properly addressed (as explained in paragraph 2 below) Claim Form, your claim may be rejected and you may not receive any recovery from the Net Settlement Fund created in connection with the proposed Settlement of the Action. Submission of this Claim Form, however, does not ensure that you will share in the proceeds of the Settlement.[1]

2.  **THIS CLAIM FORM MUST BE SUBMITTED ONLINE NO LATER THAN NOVEMBER 24, 2025 AT WWW.OLAPLEXSECURITIESSETTLEMENT.COM OR, IF MAILED, BE POSTMARKED NO LATER THAN NOVEMBER 24, 2025, ADDRESSED AS FOLLOWS:**

*Olaplex Securities Settlement*
c/o Epiq Systems, Inc.
P.O. Box 2167
Portland, OR 97208-2167
1-877-879-0943
www.OlaplexSecuritiesSettlement.com
info@OlaplexSecuritiesSettlement.com

3.  If you are a member of the Settlement Class and you have not requested exclusion from the Settlement Class, you will be bound by and subject to the terms of all judgments and orders entered in the Action, including the releases provided therein, WHETHER OR NOT YOU SUBMIT A CLAIM FORM OR RECEIVE A PAYMENT.

## II.  CLAIMANT IDENTIFICATION

4.  If you purchased or otherwise acquired Olaplex Holdings, Inc. ("Olaplex") publicly traded common stock on or before November 12, 2021 pursuant and/or traceable to the Registration Statement or Prospectus (together, the "Offering Documents") for Olaplex's initial public offering ("IPO") (*i.e.*, the shares were purchased or acquired during the period from September 29, 2021 through November 12, 2021), and held the stock in your name, you are the beneficial and record owner of the shares. If, however, the Olaplex shares were purchased or otherwise acquired through a third party, such as a brokerage firm, you are the beneficial owner and the third party is the record owner.

5.  Use **Part I** of this form entitled "Claimant Identification" to identify each beneficial owner of Olaplex publicly traded common stock that forms the basis of this claim, as well as the owner of record if different. THIS CLAIM MUST BE FILED BY THE ACTUAL BENEFICIAL OWNERS OR THE LEGAL REPRESENTATIVE OF SUCH OWNERS.

---

[1] All capitalized terms not defined in this Claim Form have the meanings given in the Stipulation and Agreement of Settlement, dated August 1, 2025 (the "Stipulation"), available at www.OlaplexSecuritiesSettlement.com.

ML7032 v.04

6. All joint owners must sign this claim. Executors, administrators, guardians, conservators, legal representatives, and trustees filing this claim must complete and sign this claim on behalf of persons represented by them and their authority must accompany this claim and their titles or capacities must be stated. The Social Security (or taxpayer identification) number and telephone number of the beneficial owner may be used in verifying the claim. Failure to provide the foregoing information could delay verification of your claim or result in rejection of the claim.

## III.    IDENTIFICATION OF TRANSACTIONS

7. Use **Part II** of this form entitled "Schedule of Transactions in Olaplex Publicly Traded Common Stock" to supply all required details of the transaction(s). If you need more space or additional schedules, attach separate sheets giving all of the required information in substantially the same form. Sign and print or type your name on each additional sheet.

8. On the schedules, provide all of the requested information with respect to the purchases or acquisitions of Olaplex publicly traded common stock pursuant and traceable to the Offering Documents for Olaplex's IPO during the period from September 29, 2021 through November 12, 2021, whether the transactions resulted in a profit or a loss. You must also provide all of the requested information with respect to all sales of Olaplex publicly traded common stock during the requested time period and shares held after the close of trading on **July 31, 2025**. Failure to report all such transactions may result in the rejection of your claim.

9. The date of covering a "short sale" is deemed to be the date of purchase or acquisition of Olaplex common stock. The date of a "short sale" is deemed to be the date of sale. Any transactions in Olaplex common stock executed outside of regular trading hours for the U.S. financial markets shall be deemed to have occurred during the next regular trading session.

10. Copies of broker trade confirmations or other documentation of the transactions must be attached to your claim. Failure to provide this documentation could delay verification of your claim or result in rejection of your claim. **THE PARTIES DO NOT HAVE INFORMATION ABOUT YOUR TRANSACTIONS IN OLAPLEX PUBLICLY TRADED COMMON STOCK.**

11. NOTICE REGARDING ELECTRONIC FILES: Certain claimants with large numbers of transactions may request, or may be asked, to submit information regarding their transactions in electronic files. (This is different than the online claim portal on the Settlement website.) All such claimants MUST submit a manually signed paper Claim Form whether or not they also submit electronic copies. If you wish to submit your claim electronically, you must contact the Claims Administrator at 1-877-879-0943 to obtain the required file layout or visit www.OlaplexSecuritiesSettlement.com. No electronic files will be considered to have been properly submitted unless the Claims Administrator issues to the claimant a written acknowledgment of receipt and acceptance of electronically submitted data.

02-CA40087430

ML7033 v.04

## PART I – CLAIMANT IDENTIFICATION

The Claims Administrator will use this information for all communications regarding this Claim Form. If this information changes, you MUST notify the Claims Administrator in writing at the address above. Complete names of all persons and entities must be provided.

Beneficial Owner's First Name          MI          Beneficial Owner's Last Name

Co-Beneficial Owner's First Name          MI          Co-Beneficial Owner's Last Name

Entity Name (if Beneficial Owner is not an individual)

Representative or Custodian Name (if different from Beneficial Owner[s] listed above)

Address 1 (street name and number)

Address 2 (apartment, unit or box number)

City          State          ZIP Code

Country

Last four digits of Social Security Number or Taxpayer Identification Number

Telephone Number (Day)          Telephone Number (Evening)

Email address (email address is not required, but if you provide it you authorize the Claims Administrator to use it in providing you with information relevant to this claim)

Account Number (if filing for multiple accounts, file a separate Claim Form for each account)

Claimant Account Type (check appropriate box)

☐ Individual          ☐ IRA/401K          ☐ Estate

☐ Joint          ☐ Pension Plan          ☐ Trust

☐ Corporation          ☐ Other _____ (please specify)

ML7034 v.04

**PART II:  SCHEDULE OF TRANSACTIONS IN OLAPLEX PUBLICLY TRADED COMMON STOCK**

**1. PURCHASES/ACQUISITIONS FROM SEPTEMBER 29, 2021 THROUGH NOVEMBER 12, 2021**– Separately list each and every purchase and acquisition of Olaplex publicly traded common stock during the period from September 29, 2021 through, and including, November 12, 2021. (Must submit documentation.)

| Date of Purchase/ Acquisition (List Chronologically) MM/DD/YY | Number of Shares | Price Per Share | Total Purchase/Acquisition Price (excluding taxes, commissions, and fees) |
|---|---|---|---|
| | | $ . | $ . |
| | | $ . | $ . |
| | | $ . | $ . |
| | | $ . | $ . |

**2. NUMBER OF SHARES PURCHASED/ACQUIRED FROM NOVEMBER 13, 2021 THROUGH JULY 31, 2025**– State the total number of shares of Olaplex publicly traded common stock purchased/acquired from November 13, 2021 through, and including, July 31, 2025.[2]  (Must submit documentation.)

**3. SALES FROM SEPTEMBER 29, 2021 THROUGH JULY 31, 2025**– Separately list each and every sale of Olaplex publicly traded common stock from September 29, 2021 through, and including, the close of trading on July 31, 2025. (Must submit documentation.)

| Date of Sale (List Chronologically) (MM/DD/YY) | Number of Shares Sold | Sale Price Per Share | Total Sale Price (excluding taxes, commissions and fees) |
|---|---|---|---|
| | | $ . | $ . |
| | | $ . | $ . |
| | | $ . | $ . |
| | | $ . | $ . |

**4. HOLDINGS AS OF CLOSE OF TRADING ON JULY 31, 2025** – State the total number of shares of Olaplex publicly traded common stock held as of the close of trading on July 31, 2025. If none, write "0" or "Zero." (Must submit documentation.)

**IF YOU NEED ADDITIONAL SPACE TO LIST YOUR TRANSACTIONS YOU MUST PHOTOCOPY THIS PAGE AND CHECK THIS BOX** ☐

---

[2] Information requested in this Claim Form with respect to your purchases/acquisitions from November 13, 2021 through July 31, 2025 is needed only in order for the Claims Administrator to confirm that you have reported all relevant transactions. Purchases/acquisitions during this period are not eligible for a recovery.

04-CA40087430

ML7035 v.04

**IV.     SUBMISSION TO JURISDICTION OF THE COURT AND ACKNOWLEDGMENTS**

12.  By signing and submitting this Claim Form, the claimant(s) or the person(s) acting on behalf of the claimant(s) certify(ies) that: I (We) submit this Claim Form under the terms of the Plan of Allocation described in the Notice. I (We) also submit to the jurisdiction of the United States District Court for the Central District of California with respect to my (our) claim as a Settlement Class Member(s) and for purposes of enforcing the releases set forth herein. I (We) further acknowledge that, once the Settlement reaches its Effective Date, I (we) will be bound by and subject to the terms of all judgments and orders entered in the Action, including the releases set forth therein. I (We) agree to furnish additional information to the Claims Administrator to support this claim, such as additional documentation for transactions in Olaplex publicly traded common stock and other Olaplex securities, if required to do so. I (We) have not submitted any other claim covering the same transactions in Olaplex publicly traded common stock during the time periods herein and know of no other person having done so on my (our) behalf.

**V.     RELEASES, WARRANTIES, AND CERTIFICATION**

13.  I (We) hereby warrant and represent that I am (we are) a Settlement Class Member as defined in the notices, and that I am (we are) not excluded from the Settlement Class.

14.  I (We) hereby acknowledge full and complete satisfaction of, and do hereby fully, finally, and forever compromise, settle, release, resolve, relinquish, waive, and discharge with prejudice the Released Plaintiffs' Claims as to each and all of the Released Defendant Parties (as these terms are defined in the Notice). This release shall be of no force or effect unless and until the Court approves the Settlement and it becomes effective on the Effective Date.

15.  I (We) hereby warrant and represent that I (we) have not assigned or transferred or purported to assign or transfer, voluntarily or involuntarily, any matter released pursuant to this release or any other part or portion thereof.

16.  I (We) hereby warrant and represent that I (we) have included information about all purchases, acquisitions, and sales of Olaplex publicly traded common stock that occurred during the relevant time periods and the number of shares held by me (us), to the extent requested.

17.  I (We) certify that I am (we are) NOT subject to backup tax withholding. (If you have been notified by the Internal Revenue Service that you are subject to backup withholding, please strike out the prior sentence.)

I (We) declare under penalty of perjury under the laws of the United States of America that all of the foregoing information supplied by the undersigned is true and correct.

Executed this _____ day of _____, 2025

|  |  |
|---|---|
| Signature of Claimant | Type or print name of Claimant |
| Signature of Joint Claimant, if any | Type or print name of Joint Claimant |
| Signature of person signing on behalf of Claimant(s) | Type or print name of person signing on behalf of Claimant(s) |

Capacity of person signing on behalf of Claimant/Joint Claimant, if other than an individual (*e.g.*, Administrator, Executor, Trustee, President, Custodian, Power of Attorney, etc.)

05-CA40087430                                                    5

ML7036 v.04

**REMINDER CHECKLIST:**

1. Sign this Claim Form.
2. DO NOT HIGHLIGHT THE CLAIM FORM OR YOUR SUPPORTING DOCUMENTATION.
3. Attach only copies of supporting documentation as these documents will not be returned to you.
4. Keep a copy of your Claim Form for your records.
5. The Claims Administrator will acknowledge receipt of your Claim Form by mail, within 60 days. **Your claim is not deemed submitted until you receive an acknowledgment postcard.** If you do not receive an acknowledgment postcard within 60 days, please call the Claims Administrator toll free at 1-877-879-0943 or email at info@OlaplexSecuritiesSettlement.com.
6. If you move after submitting this Claim Form, please notify the Claims Administrator of the change in your address, otherwise you may not receive additional notices or payment.

06-CA40087430