# Exhibit 6

# Compendium of Unreported Cases

*In re Alphabet Inc. Sec. Litig.*,
   Case No. 18-cv-06245, slip op. (N.D. Cal. Sept. 30, 2024) ................................. 1

*In re Hewlett-Packard Co. Sec. Litig.*,
   Case No. SACV 11-1404, slip op. (C.D. Cal. Sept. 15, 2014).......................... 2

*Homyk v. Chemocentryx, Inc.*
   Case No. 21-cv-03343, slip op. (N.D. Cal. Aug. 15, 2025) ................................. 3

*In re Intuitive Surgical Sec. Litig.*,
   Case No. 5:13-cv-01920, slip op. (N.D. Cal. Dec. 20, 2018)............................. 4

*In re Sandisk LLC Sec. Litig.*,
   Case No. 3:15-cv-01455-VC, slip op. (N.D. Cal. Oct. 23, 2019) ...................... 5

*In re Tezos Sec. Litig.*,
   Case No. 17-cv-06779-RS, slip op. (N.D. Cal. Aug. 28, 2020) .......................... 6

*In re Twitter Inc. Sec. Litig.*,
   Case No. 4:16-cv-05314, ECF No. 661 (N.D. Cal. Oct. 13, 2022).................... 7

*In re Twitter Inc. Sec. Litig.*,
   Case No. 4:16-cv-05314, ECF No. 670 (N.D. Cal. Nov. 21, 2022)  ................. 8

*Yan Wang v. Dada Nexus Ltd. et al.*,
   Case No. 2:24-cv-00239-SVW-BFM, slip op. (C.D. Cal. Mar. 14,
   2025) ................................................................................................................ 9

# TAB 1

United States District Court
Northern District of California

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re ALPHABET, INC. SECURITIES LITIGATION. | Case No. 18-cv-06245-TLT<br><br>**ORDER GRANTING MOTION FOR FINAL APPROVAL OF SETTLEMENT; GRANTING MOTION FOR ATTORNEY FEES, COSTS, REALLOCATION OF REMAINDER AND DE MINIMUS DONATION**<br><br>Re: Dkt. Nos. 233, 234 |

The Court previously granted a motion for preliminary approval of a Class Action Settlement between Lead Plaintiff State of Rhode Island, Office of the Rhode Island Treasurer, on behalf of the Employees' Retirement System of Rhode Island, individually and on behalf of all others similarly situated, and Defendants Alphabet, Inc. et. al., on April 2, 2024 and April 9, 2024. ECF 228; ECF 232. As directed by the Court's preliminary approval orders, Plaintiffs filed their motion for attorneys' fees and costs. ECF 234.

In their Final Settlement, Plaintiffs submitted a declaration indicating that there were 58 timely opt out members and two untimely opt out members. ECF 238, Declaration of Ross D. Murray ¶ 6. There were no objectors to the final settlement, but three objectors to the attorneys' fee award. Id. ¶ 7. The Court held a hearing and took arguments from the parties on September 24, 2024. ECF 241.

Having considered the motion briefing, the terms of the Settlement Agreement, the objections and response thereto, the arguments of counsel, and the other matters on file in this action, the Court **GRANTS** the motion for final approval.

The Court finds the settlement fair, adequate, and reasonable. The provisional

appointments of the class representative and class counsel are confirmed.

The Motion for Attorney Fees and Expenses is **GRANTED**. The Court **ORDERS** that class counsel shall be paid $66,500,000 (19% of the Settlement Amount) in attorneys' fees; and $1,540,059.57 in litigation costs.

## I. BACKGROUND

### A. Procedural History

Plaintiff Adam Wicks initiated this securities class action and filed a complaint against defendants Alphabet, Lawrence E. Page, Sundar Pichai, and Ruth Porat on October 11, 2018 ("Wicks Action"). Compl., ECF 1. On October 12, 2018, the case was assigned to Judge Jeffrey S. White. ECF 3. On November 19, 2018, *El Mawardy v. Alphabet, Inc., et al.*, No. 18-cv-5704, ("El Mawardy Action") was transferred to this Court from the U.S. District Court for the Eastern District of New York. ECF 15, at 2 n.1.

On December 10, 2018, Plaintiffs the Retirement System, Adam Wick, Theodoros Vaskopulos, Richard R. Costa UDT ("Costa"), and Ironworkers Locals 40,361 & 417 Union Security Funds (the "Ironworkers") each separately moved for consolidation of the actions, appointment as lead plaintiff, and approval of lead Counsel. ECFs. 15, 18, 25, 42. Plaintiff Vaskopulos withdrew his motion on December 14, 2018. ECF 33. On December 18, 2018, Plaintiff Wicks filed a joint administrative motion for consideration of whether the El Mawardy Action was related to the Wicks Action. ECF 34. The motion was granted on December 20, 2018. ECF 36. On December 24, 2018, Plaintiff the Retirement System filed an opposition to the motions for consolidation of related actions, appointment as Lead Plaintiff, and approval as Lead Counsel against Plaintiffs Ironworkers and Costa. ECF 39. On December 31, 2018, Plaintiff the Retirement System filed a notice of unopposed motion. ECF 40.

On January 7, 2019, Judge White granted Plaintiff the Retirement System's motion for consolidation of related actions and captioned the action "In re ALPHABET, INC. SECURITIES LITIGATION."[1] ECF 44. The Court also appointed the Retirement system as Lead Plaintiff and

---

[1] Judge White consolidated *Wicks v. Alphabet, Inc.*, No. 18-cv-06245 (filed Oct. 11, 2018); and *El Mawardy v. Alphabet, Inc.*, No. 18-cv-07018 (transferred to this District on Nov. 1, 2018).

United States District Court
Northern District of California

United States District Court
Northern District of California

appointed Robbins Geller Rudman & Dowd LLP as Lead Counsel. *Id.* at 2 (first citing 15 U.S.C. § 78u4(a)(3)(B); and then citing 15 U.S.C. §78u-4(a)(3)(B)(v)). On January 25, 2019, Plaintiff Bao filed an administrative motion to consider whether cases should be related. ECF 45. The motion was granted, and the cases were related on February 6, 2019.[2] ECF 46.

On April 26, 2019, Plaintiffs filed their consolidated amended class action complaint against defendants Alphabet, Page, Pichai, Google, Enright, and Walker. ECF 62. On April 30, 2019, plaintiffs Ian Green, Leo Shumacher, Steve Stims and Joseph Lipovich, and Scott Galbiati filed a motion for administrative relief to consider whether their cases were related or for consideration of a sua sponte judicial referral for purpose of determining relationship. ECF 65; Civ. L.R. 3-12. On May 13, 2019, the cases were related to the Wicks Action. ECF 66. On June 21, 2022, Plaintiffs moved to certify class, appoint a class representative, and appoint class counsel. ECF 102. On September 8, 2022, Plaintiffs filed a motion for leave to file a supplement to their consolidated amended complaint. ECF 136. The motion for leave was granted and the motion to certify the class was stricken. ECF 153. Plaintiffs filed a supplement to their consolidated amended complaint on February 28, 2023. ECF 154. Plaintiffs refiled their motion to certify class on May 2, 2023. ECF 165. Defendants filed an opposition to the motion on June 30, 2023. ECF 181.

On July 24, 2023, Judge White recused himself from this matter. ECF 188. The case was reassigned to the Court on July 25, 2023. ECF 189. The Court ordered Lead Plaintiff to re-notice the motion to certify the class on July 31, 2023. ECF 192. Lead Plaintiff filed a notice of conditional withdrawal of the motion for class certification without prejudice on July 31, 2023. ECF 193. On the same day, Defendants responded with a request to finish briefing the class certification motion. ECF 194. The Court held a case management conference and published a case management scheduling order on August 1, 2023. ECF 196. The Court set the hearing on the motion to certify class for October 24, 2023. *Id*. Lead Plaintiff filed a reply for the motion to

ECF 44. The Wicks Action serves as the master filed for every action in the consolidated action. *Id.* at 1.

[2]The Court related, *Bao v. Page*, No. 19-cv-00314, and *Cordeiro v. Page*, No. 19-cv-00447 to the instant case. ECF 46.

3

certify class on August 14, 2023. ECF 198.[3]

On October 20, 2023, the Class Certification hearing set for October 24, 2023, was vacated at the request of counsel and reset for March 5, 2024. ECF 218.

On February 4, 2024, the parties reached a settlement prior to class certification with the assistance of an experienced mediator at arm's-length under the supervision of the Hon. Layn R. Phillips (Ret.) of Phillips ADR ("Judge Phillips").

On April 2, 2024, the Court granted preliminary approval of the class action settlement, but requested additional information, including information on objections, exclusions, deadlines for notice, and questions for the final hearing. ECF 228. On April 9, 2024, the Court again granted the preliminarily approval of the class action settlement and provided for notice. ECF 232.

On July 19, 2024, Lead Plaintiff filed this settlement for final approval and approval of plan of allocation. ECF 233. It also filed a motion for attorney fees and expenses. ECF 234. Defendants filed a response and reply. ECF 237; 239. Lead Plaintiff filed its reply. ECF 238.

The Settlement Class is described as follows: "all Persons that purchased or otherwise acquired Alphabet Class A and/or Class C stock during the period from April 23, 2018, through April 30, 2019, inclusive. Excluded from the Settlement Class are Defendants and their families, the officers, directors, and affiliated of Defendants, at all relevant times, members of their immediate families and their legal representatives, heirs, successors, or assigns, and any entity in which Defendants have or had a controlling interest. Also excluded from the Settlement Class is any Person who timely and validly sought exclusion from the Settlement Class." ECF 239.

### B.  Terms of the Settlement Agreement

Under the terms of the Settlement Agreement, defendant will pay $350,000,000.00 into a common settlement fund, without admitting liability. This amount includes attorneys' fees and costs and the cost of class notice and settlement administration.

### i.  Attorneys' Fees and Costs

___

[3]On October 4, 2023, the Court granted a motion for leave for Joseph A. Grundfest to file a brief as amicus curae. ECF 216. However, the Court rescinded the order on October 5, 2023, as the filing was untimely and did not comply with Civil Local Rule 7-3(d). *Id.* The Court did not consider the supplemental brief in consideration of the instant motion.

United States District Court
Northern District of California

Under the Settlement Agreement, Plaintiff's counsel, Robbins Geller Rudman & Dowd LLP, agreed to seek an award of attorneys' fees not to exceed 19% of the Settlement Amount, $66,500,000.00, and no more than $1,540,059.57,[4] in litigation costs. ECF 234, at 3.

### ii.     Class Relief

After deductions from the common fund for fees and costs, approximately $289,300,000 will remain to be distributed among the participating class members. Class members will be paid according to the calculations described in ECF 222 under Calculation of Recognized Loss Amounts. ECF 222, Ex. A-1.

### iii.    Remainder

The Settlement Agreement provides that "[i]f there is any balance remaining in the Net Settlement Fund after a reasonable amount of time following the date of the initial distribution of the Net Settlement Fund, Lead Counsel shall, if feasible, reallocate such balance among Authorized Claimants who negotiated the checks sent to them in the initial distribution and who would receive at least $10.00 in an equitable and economical fashion." ECF 222, Ex. 1, at 21. "These reallocations shall be repeated until the balance remaining in the Net Settlement Fund is *de minimis* and such remaining balance shall then be donated to the Investor Protection Trust." *Id.*

### C.     Class Notice and Claims Administration

The Settlement Agreement is being administered by Gilardi & Co. LLC ("Gilardi"). Following the Court's preliminary approval and conditional certification of the settlement, Gilardi, the Class Administrator, mailed or emailed more than 1.2 million copies of the Summary Notice to potential Settlement Class Members and nominees. ECF 236, Murray Decl. ¶ 11. The Summary Notice was also published in *The Wall Street Journal* and transmitted over *Business Wire*, and the website created for the Settlement (www.AlphabetSecuritiesSettlement.com) contains the Stipulation, Notice, Proof of Claim, and Preliminary Approval Order. *Id.* ¶ 12; ECF 233, at 7-8. If mail was returned as undeliverable for which new addresses were identified, they were re-mailed to those new addresses. ECF 236, Murray Decl. ¶ 4.

---

[4]This amount is lower than the $1,750,000 provided in the Notice. ECF 234, at 16.

United States District Court
Northern District of California

Class members were given until August 23, 2024 to object or exclude themselves from the Settlement Agreement. ECF 236, Murray Decl. ¶ 2. Since the Initial Mailing Declaration, 58 persons filed timely requests to opt out of the Settlement Class. *Id.* ¶ 6. Two persons filed late requests. *Id.* The 58 opt-out members represent a total of 5,983 shares while the two untimely opt-out members represent a total of 37 shares out of an estimated 113,850,000 damaged shares. ECF 238-1, at 2. The opt-out members' shares represent 0.005% of the total shares. *Id.*

## II. FINAL APPROVAL OF SETTLEMENT

### A. Legal Standard

A court may approve a proposed class action settlement of a certified class only "after a hearing and on finding that it is fair, reasonable, and adequate," and that it meets the requirements for class certification. Fed. R. Civ. P. 23(e)(2). In reviewing the proposed settlement, a court need not address whether the settlement is ideal or the best outcome, but only whether the settlement is fair, free of collusion, and consistent with plaintiff's fiduciary obligations to the class. *Hanlon v. Chrysler Corp.*, 150 F.3d at 1027. The *Hanlon* court identified the following factors relevant to assessing a settlement proposal: (1) the strength of the plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceeding; (6) the experience and views of counsel; (7) the presence of a government participant; and (8) the reaction of class members to the proposed settlement. *Id.* at 1026 (citation omitted); *Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004).

Settlements that occur before formal class certification also "require a higher standard of fairness." *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 458 (9th Cir. 2000). In reviewing such settlements, in addition to considering the above factors, a court also must ensure that "the settlement is not the product of collusion among the negotiating parties." *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 946-47 (9th Cir. 2011).

### B. Analysis

#### i. The Settlement Class Meets the Prerequisites for Certification

As the Court found in its order granting preliminary approval and conditional certification

6

of the settlement class herein, the prerequisites of Rule 23 have been satisfied purposes of certification of the Settlement Class.  ECF 228.

### ii.    Adequacy of Notice

A court must "direct notice [of a proposed class settlement] in a reasonable manner to all class members who would be bound by the proposal."  Fed. R. Civ. P. 23(e)(1). "The class must be notified of a proposed settlement in a manner that does not systematically leave any group without notice." *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 624 (9th Cir. 1982). Adequate notice requires: (i) the best notice practicable; (ii) reasonably calculated, under the circumstances, to apprise the Class members of the proposed settlement and of their right to object or to exclude themselves as provided in the settlement agreement; (iii) reasonable and constitute due, adequate, and sufficient notice to all persons entitled to receive notice; and (iv) meet all applicable requirements of due process and any other applicable requirements under federal law. *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 812 (1985). Due process requires "notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950).

The Court found the parties' proposed notice procedures provided the best notice practicable and reasonably calculated to apprise Class Members of the settlement and their rights to object or exclude themselves.  Pursuant to those procedures, more than 1.2 million copies of the Summary Notice were mailed or emailed to potential Settlement Class Members and nominees; the Summary Notice was also published in *The Wall Street Journal* and transmitted over *Business Wire*; and the website created for the Settlement (www.AlphabetSecuritiesSettlement.com) contains the Stipulation, Notice, Proof of Claim, and Preliminary Approval Order.  ECF 233, at 7-8.  The Claims Administrator also mailed or emailed 254 Claim Packages to potential Settlement Class Members and nominees, resulting in 948,245 asserted claims.  ECF 238, at 1.

Based upon the foregoing, the Court finds that the Settlement Class has been provided adequate notice.

### iii.    The Settlement is Fair and Reasonable

As the Court previously found in its order granting preliminary approval, the *Hanlon* factors indicate the settlement here is fair and reasonable and treats class members equitably relative to one another. *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998); ECF 232.

The reaction of the class was mostly positive. The Court received 3 objections, 58 timely exclusions, and two untimely exclusions as of the August 23, 2024 deadline. The objections and exclusions constitute 0.005% of the total damaged shares. ECF 238-1, at 2. "[T]he absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement action are favorable to the class members." *In re Omnivision Techs., Inc.*, 559 F.Supp.2d 1036, 1043 (N.D. Cal. 2008) (citation omitted); *see also Churchill Vill.*, 361 F.3d at 577 (holding that approval of a settlement that received 45 objections (0.05%) and 500 opt-outs (0.56%) out of 90,000 class members was proper).

In its preliminary approval order, the Court approved the proposed plan of allocation. ECF 232. That plan is: Class members are bound by the determinations and judgments in this Action unless they timely request to be excluded or "opt out" from the Settlement Class no later than August 23, 2024. *Id.* ¶ 19. The Court should find the plan of allocation to be fair and reasonable and that it treats class members equitably and it should approve that plan of allocation. *Id.*

### iv. Objections

Three individuals submitted objections: Faris Sabri Azzouni; Richard A. Hauser; Larry D. Killion. ECF 238, Ex. A. The Court has considered all objections and overrules them for the reasons stated on the record at oral argument, and as further explained below. The Court addresses each objector's arguments in turn.

Objector Azzouni filed an objection indicating that Class C shareholder pay would drop from $2.85 per share to $0.56 if the Court were to grant the request attorneys' fee award. ECF 238, Ex. A. Plaintiff responds that these numbers are incorrect because $0.56 represents the estimated cost per share, not the price per share. Accordingly, because Azzouni's understanding of the numbers is incorrect, the Court overrules this objection.

Objector Hauser submitted a boilerplate objection stating that the fee is disproportionate to the work necessary to this settlement. ECF 238, Ex. A. Hauser, however, does not suggest what

8

would be an "appropriate amount" of fees. *Id.* The Court therefore overrules this objection as well.

Finally, objector Killion objected to the Plaintiffs' attorneys use of a contingency fee and argued that counsel should "base their fee on defendable court approved reasonable time and hourly rates actually spent on the case." ECF 238, Ex. A. Because the Court can determine that the attorney fee award is fair, reasonable, and based on both the percentage-of-recovery method and the lodestar method, as analyzed below, the Court overrules this last objection. *See* Section III.

### v. Certification is Granted and Settlement is Approved

After reviewing all the required factors, the Court finds the Settlement Agreement to be fair, reasonable, and adequate, and certification of the Settlement Class as defined therein to be proper. The remainder recipient, Investor Protection Trust, is **APPROVED**.

## III. MOTION FOR ATTORNEYS' FEES, COSTS, AND EXPENSES

### A. Attorneys' Fee Award

Attorneys' fees and costs may be awarded in a certified class action under Federal Rule of Civil Procedure 23(h). Such fees must be found "fair, reasonable, and adequate" to be approved. Fed. R. Civ. P. 23(e); *Staton v. Boeing Co.*, 327 F.3d 938, 963 (9th Cir. 2003). To "avoid abdicating its responsibility to review the agreement for the protection of the class, a district court must carefully assess the reasonableness of a fee amount spelled out in a class action settlement agreement." *Id.* at 963. "[T]he members of the class retain an interest in assuring that the fees to be paid class counsel are not unreasonably high," since unreasonably high fees are a likely indicator that the class has obtained less monetary or injunctive relief than they might otherwise. *Id.* at 964.

The Court analyzes an attorneys' fee request based on either a percentage of the total settlement fund made available to the class, including costs, fees, and injunctive relief, or the "lodestar" method. *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002). The Ninth Circuit encourages courts to use another method as a cross-check to avoid a "mechanical or formulaic approach that results in an unreasonable reward." *In re Bluetooth*, 654 F.3d at 944–45

*United States District Court
Northern District of California*

(citing *Vizcaino,* 290 F.3d at 1050–51).

### i. Percentage-of-Recovery Method

When using the percentage-of-recovery method, courts consider a number of factors, including whether class counsel " 'achieved exceptional results for the class,' whether the case was risky for class counsel, whether counsel's performance 'generated benefits beyond the cash settlement fund,' the market rate for the particular field of law (in some circumstances), the burdens class counsel experienced while litigating the case (e.g., cost, duration, foregoing other work), and whether the case was handled on a contingency basis." *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 954-55 (9th Cir. 2015) (quoting *Vizcaino*, 290 F.3d at 1047-50. "[T]he most critical factor [in determining appropriate attorney's fee awards] is the degree of success obtained." *Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983).

Under the percentage-of-the-fund method, courts in the Ninth Circuit "typically calculate 25% of the fund as the 'benchmark' for a reasonable fee award, providing adequate explanation in the record of any 'special circumstances' justifying a departure." *In re Bluetooth*, 654 F.3d at 942 (citing *Six (6) Mexican Workers v. Ariz. Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir. 1990)). The benchmark should be adjusted when the percentage recovery would be "either too small or too large in light of the hours devoted to the case or other relevant factors." *Six (6) Mexican Workers*, 904 F.2d at 1311.

Class counsel here requests an attorneys' fee award of $66,500,000. Applying the percentage of recovery method, the parties determined the total settlement value to be $350,000,000. The attorneys' fees requested would come to 19% of this total. This amount is below the 25% benchmark. Given the size of this settlement, and that it occurred before class certification, the Court must give additional scrutiny to the attorneys' fee request. First, the Court looks at the results achieved. Plaintiffs' counsel achieved a settlement of 25% of the stretch damages, significantly higher than the median securities class action recovery of damages. *See* LAARNI T. BULAN & LAURA E. SIMMONS, SECURITIES CLASS ACTION SETTLEMENTS: 2023 REVIEW AND ANALYSIS 7 (Cornerstone Research 2024) (providing research on median settlements as a percentage of damages and finding that the median recovery is at most around 8%); *Hefler v.*

United States District Court
Northern District of California

*Wells Fargo & Co.*, N0. 16-cv-05479-JST, 2018 WL 6619983, at *8 (N.D. Cal. Dec. 18, 2018) (finding the median recoveries in securities fraud class actions was 2.5 percent between 2008 and 2016 and 3 percent in 2017); ECF 234, at 7. Lead Counsel alleges that Plaintiffs' counsel achieved an outstanding result for the Settlement Class. *Id.* at 8. Indeed, Plaintiffs achieved the largest privacy and cybersecurity-related securities class action lawsuit settlement in this district.[5]

Next, this case was risky because it contained a complex issue that resulted in six years of litigation. *See In re Facebook, Inc., IPO Sec. & Derivative Litig.*, 343 F. Supp. 3d 394, 416 (S.D.N.Y. 2018) (finding that "securities actions are highly complex" and that "securities class litigation is notably difficult and notoriously uncertain"). Plaintiffs' counsel put in over 20,000 hours into the settlement, which involved an appeal before the Ninth Circuit. Furthermore, Plaintiffs' counsel handled the case on a contingency fee basis and has received no compensation thus far, which weighs in favor of granting higher attorney fees. *See Vizcaino*, 290 F.3d at 1050 (holding that representing class counsel on a contingency fee basis required counsel to forgo other work and resulted in a decline of the firm's annual income).

Additionally, an award of 19% is below the typical 25% benchmark in the Northern District of California. *In re Wells Fargo & Co. Shareholder Derivative Litigation*, 445 F. Supp. 3d 508, 525 (N.D. Cal. 2020). It is also lower than the traditional mean and median fee awards in this district. *Rodman v. Safeway Inc.*, No. 11-cv-03003-JST, 2018 WL 4030558, at * (N.D. Cal. Aug. 23, 2018) (providing a chart graphing attorneys' fees from 2009 to 2013 that begins at 22% and ends at 32%, and then providing that between 2006 and 2007 the mean attorney fee award for a high recovery settlement was 18.4% and the median was 19%). In one outlier case, a court in this district awarded class counsel a 13.5% attorneys' fee, but this award was at the counsel's request due to low recovery in the action. *In re LDK Solar Securities Litigation*, No. C 07-5182-WHA, 2010 WL 3001384, at *4 (N.D. Cal. July 29, 2010).

Although Lead Counsel in the present case requests $66,500,000, this request is similar to

[5]*Google Parent Alphabet Agrees to Pay Shareholders $350 Million Over Data Leak*, ISS INSIGHTS (March 12, 2024), https://insights.issgovernance.com/posts/google-parent-alphabet-agrees-to-pay-shareholders-350-million-over-data-leak/.

United States District Court
Northern District of California

the $52,800,000 attorneys' fee award in *Wells Fargo*, which came to 22% of the total settlement. *In re Wells Fargo*, 445 F. Supp. 3d at 526.  Accordingly, after careful analysis of attorney fee trends and similar cases, the Court finds that a fee award of 19% is fair, reasonable, and adequate.

### ii.    Lodestar Cross-Check

Under the lodestar approach, a court multiplies the number of hours reasonably expended by the reasonable hourly rate.  *Kelly v. Wengler*, 822 F.3d 1085, 1099 (9th Cir. 2016) ("[A] court calculates the lodestar figure by multiplying the number of hours reasonably expended on a case by a reasonable hourly rate.  A reasonable hourly rate is ordinarily the 'prevailing market rate [] in the relevant community.'").

The Court has considered a cross-check using the lodestar method.  Here, the lodestar multiplier is approximately 4.58, which the Court finds reasonable.  *See In re Facebook Biometric Info. Priv. Litig.*, 522 F. Supp. 3d 617, 633 (N.D. Cal. 2021) (approving a fee award with a lodestar multiplier of 4.71); ECF 234, at 14.  Plaintiffs' attorneys worked 23,026.30 hours at rates ranging from $110 per hour to $1400 per hour for a total of $14,514,240.00.  ECF 234, Ex. A. The Court finds that the hours claimed were reasonably incurred and that the rates charged are reasonable and commensurate with those charged by attorneys with similar experience in the market.  *See Fleming v. Impax Lab'ys Inc.*, 2022 WL 2789496, at *9 (N.D. Cal. July 15, 2022) (approving hourly rates between $760 and $1,325 for partners and $175 and $520 for associates). The Court also finds that Class Counsel represented their clients with skill and diligence and obtained an excellent result for the class, taking into account the possible outcomes and risks of proceeding trial.

### iii.    Objections

Defendants do not oppose the fee request, although three individual objectors do.  These objectors challenge the fee amount because they argue not much will be left to shareholders.  For instance, the first objector believes that the Lead Counsel is concerned that Class C shareholder pay will drop from $2.85 per share to $0.56.  ECF 238, Ex. A, at 1.  This objector, however, confused these number: $2.85 per share is the estimated recovery number while $0.56 is the cost of expenses that will be subtracted from the $2.85.  The total estimated cost per Class C share

12

remains $0.56. The second objector submitted a boilerplate objection arguing that a fee of 19% is excessive. *Id.* at 27. The third objector objects to contingency payment structures, arguing that counsel should base their fees on their time and hourly rates rather than the contingency fee agreement. *Id.* at 30. The Court takes these objectors' concerns into consideration, but determines that the attorneys' fee award is fair, reasonable, and adequate based on the foregoing.

Accordingly, the Court finds an award of attorneys' fees in the amount of $66,500,000 to be fair, reasonable, and adequate.

### B. Costs Award

Class counsel is entitled to reimbursement of reasonable out-of-pocket expenses. Fed. R. Civ. P. 23(h); *see Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994) (holding that attorneys may recover reasonable expenses that would typically be billed to paying clients in non-contingency matters). Costs compensable under Rule 23(h) include "nontaxable costs that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h). Here, class counsel seeks reimbursement for litigation expenses, and provides records documenting those expenses, in the amount of $1,540,059.57. The Court finds this cost amount reasonable, fair, and adequate.

### IV. CONCLUSION

Based upon the foregoing, the motion for final approval of class settlement is **GRANTED**. The motion for attorneys' fees and costs is **GRANTED** as follows: Class Counsel is awarded $66,500,000 in attorneys' fees and $1,540,059.57 in litigation costs.

After deductions from the common fund for fees and costs, approximately $289,300,000 shall remain to be distributed among the participating class members. Class members shall be paid according to the calculations described in ECF 222 under Calculation of Recognized Loss Amounts.

With respect to residuals, the Net Settlement Fund and Lead Counsel shall reallocate such balance among Authorized Claimants who negotiated the checks sent to them in the initial distribution and who would receive at least $10.00 in an equitable and economical fashion.

These reallocations shall be repeated until the balance remaining in the Net Settlement Fund is *de minimis* and such remaining balance shall then be donated to the Investor Protection

Trust.

Without affecting the finality of this order in any way, the Court retains jurisdiction of all matters relating to the interpretation, administration, implementation, effectuation and enforcement of this order and the Settlement.

**IT IS HEREBY ORDERED, ADJUDGED AND DECREED** that final judgment is **ENTERED** in accordance with the terms of the Settlement, the Order Granting Preliminary Approval of Class Action Settlement filed on February 5, 2024 (ECF 222), and this order.

This document will constitute a final judgment (and a separate document constituting the judgment) for purposes of Rule 58, Federal Rules of Civil Procedure.

The parties shall file a post-distribution accounting in accordance with this District's Procedural Guidance for Class Action Settlements no later than April 10, 2025. The Court **SETS** a compliance deadline on May 6, 2025, on the Court's 2:00 pm. calendar, to verify timely filing of the post-distribution accounting.

This order terminates Docket Nos. 233 and 234.

**IT IS SO ORDERED.**

Dated: September 30, 2024

_____
TRINA L. THOMPSON
United States District Judge

United States District Court
Northern District of California

14

# TAB 2

Case 2:22-cv-08395-SVW-SK Document 235-6 Filed 10/27/25 Page 19 of 103 #Page
ID #:5822
Case 8:11-cv-01404-AG-RNB Document 167 Filed 09/15/14 Page 1 of 9 Page ID #:4386

ISAACS FRIEDBERG & LABATON LLP
Mark Labaton (Bar No. 159555)
mlabaton@iflcounsel.com
555 South Flower Street, Suite 4250
Los Angeles, California  90071
Telephone: (213) 929-5550
Facsimile: (213) 955-5794

MOTLEY RICE LLC                         LABATON SUCHAROW LLP
Gregg S. Levin (*pro hac vice*)         Jonathan Gardner (*pro hac vice*)
glevin@motleyrice.com                   jgardner@labaton.com
28 Bridgeside Boulevard                 140 Broadway
Mt. Pleasant, South Carolina  29464     New York, New York  10005
Telephone: (843) 216-9000               Telephone: (212) 907-0700
Facsimile: (843) 216-9450               Facsimile: (212) 818-0477

*Attorneys for Lead Plaintiff Institutional Investor Group*
*and Co-Lead Counsel for the Settlement Class*

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

| | |
|---|---|
| IN RE HEWLETT-PACKARD COMPANY SECURITIES LITIGATION | ) Case No. SACV 11-1404-AG (RNBx)<br>)<br>) **ORDER AWARDING**<br>) **ATTORNEYS' FEES, PAYMENT**<br>) **OF LITIGATION EXPENSES,**<br>) **AND REIMBURSEMENT OF**<br>) **LEAD PLAINTIFFS' EXPENSES**<br>) **INCLUDING LOST WAGES**<br>)<br>)<br>) Judge:  Hon. Andrew J. Guilford<br>) Dept.:  Courtroom 10D<br>) Hearing Date:  September 15, 2014<br>) Hearing Time:  10:00 a.m.<br>) |

[PROPOSED REVISED] ORDER AWARDING ATTYS'
FEES, LITIG. EXPENSES & LEAD PLS.' EXPENSES
CASE NO. SACV 11-1404 AG (RNBx)

Case 2:22-cv-08395-SVW-SK    Document 235-6    Filed 10/27/25    Page 20 of 103  #: Page
ID #:5823
Case 8:11-cv-01404-AG-RNB    Document 1675    Filed 09/15/14    Page 2 of 6    Page ID #:4387

THIS MATTER having come before the Court on September 15, 2014 for a hearing to determine, among other things, whether and in what amount to award: (1) Plaintiffs' Counsel's fees and litigation expenses relating to their representation of the Settlement Class in the above-captioned securities class action (the "Action"); and (2) Lead Plaintiffs' costs and expenses (including lost wages). The Court having considered all matters submitted to it at the hearing and otherwise; and it appearing that a notice of the hearing, substantially in the form approved by the Court (the "Notice"), was mailed to all reasonably identified Persons who purchased the publicly traded common stock of Hewlett-Packard Company in the open market during the period from November 22, 2010 to August 18, 2011, inclusive; and that a summary notice of the hearing (the "Summary Notice"), substantially in the form approved by the Court, was published in *The Wall Street Journal* and transmitted over *PR Newswire*; and the Court having considered and determined the fairness and reasonableness of: (1) the award of attorneys' fees and litigation expenses requested; and (2) the costs and expenses (including lost wages) requested by Lead Plaintiffs;

NOW, THEREFORE, IT IS ORDERED, ADJUDGED, AND DECREED that:

1. The Court has jurisdiction over the subject matter of this Action and over all parties to the Action, including all Settlement Class Members and the Claims Administrator.

2. All capitalized terms used in this order have the meanings as set forth and defined in the Stipulation and Agreement of Settlement (the "Stipulation"), dated as of March 31, 2014.

3. Settlement Class Members were notified that Plaintiffs' Counsel would be applying for an award of attorneys' fees and litigation expenses and, further, that such application also might include a request for an award to Lead

Case 2:22-cv-08395-SVW-SK Document 235-6 Filed 10/27/25 Page 21 of 103 #Page
Case 8:11-cv-01404-AG-RNB Document 167-5 Filed 09/15/14 Page 3 of 6 Page ID #:4388
ID #:5824

Plaintiffs for reimbursement of their reasonable costs and expenses, including lost wages, in an amount not to exceed $75,000. The form and method of notifying the Settlement Class of the application for attorneys' fees and expenses met the requirements of Rules 23 and 54 of the Federal Rules of Civil Procedure, Section 21(D)(a)(7) of the Securities Act of 1934, 15 U.S.C. §78u-4(a)(7), as amended by the Private Securities Litigation Reform Act of 1995 (the "PSLRA"), due process, and any other applicable law, constituted the best notice practicable under the circumstances, and constituted due and sufficient notice to all persons and entities entitled to it.

4. Plaintiffs' Counsel are awarded attorneys' fees in the amount of $14,250,000, plus interest at the same rate earned by the Settlement Fund (i.e., 25% of the Settlement Fund, which includes interest earned thereon), and payment of litigation expenses in the amount of $333,443.39, plus interest at the same rate earned by the Settlement Fund, which sums the Court finds to be fair and reasonable.

5. The award of attorneys' fees and litigation expenses shall be paid to Co-Lead Counsel from the Settlement Fund immediately upon entry of this Order, subject to the terms, conditions, and obligations of the Stipulation, which terms, conditions, and obligations are incorporated into this order.

6. Lead Plaintiffs are awarded costs and expenses (which includes lost wages) in the following amounts, which sums the Court finds to be fair and reasonable:

| LEAD PLAINTIFF | AMOUNT AWARDED |
| --- | --- |
| Arkansas Teacher Retirement System | $5,654.61 |
| Union Asset Management Holding AG | $4,970.00 |
| Labourers' Pension Fund of Central and Eastern Canada | $2,922.24 |

[PROPOSED REVISED] ORDER AWARDING ATTYS'
FEES, LITIG. EXPENSES & LEAD PLS.' EXPENSES
CASE NO. SACV 11-1404 AG (RNBx)

2

Case 8:11-cv-01404-AG-RNB   Document 167-5   Filed 09/15/14   Page 4 of 6   Page ID #:4389

LIUNA National (Industrial) Pension Fund and

LIUNA Staff & Affiliates Pension Fund          $6,570.00

The foregoing sums shall be paid to the Lead Plaintiffs from the Settlement Fund immediately upon entry of this Order, subject to the terms, conditions, and obligations of the Stipulation, which terms, conditions, and obligations are incorporated into this order.

7.     In making this award of attorneys' fees and litigation expenses and reimbursement of Lead Plaintiffs' costs and expenses (including lost wages) to be paid from the Settlement Fund, the Court has considered and found that:

(a)     The Settlement has created a fund of $57 million in cash and that numerous Settlement Class Members who submit acceptable Proofs of Claim will benefit from the Settlement created by the efforts of Plaintiffs' Counsel;

(b)     The requested attorneys' fees and payment of litigation expenses have been reviewed and approved as fair and reasonable by Lead Plaintiffs, sophisticated institutional investors that were directly involved in the prosecution and resolution of the Action and who have a substantial interest in ensuring that any fees paid to Plaintiffs' Counsel are duly earned and not excessive;

(c)     Notice was disseminated to putative Settlement Class Members stating that Plaintiffs' Counsel would be submitting an application for attorneys' fees in an amount not to exceed 25% of the Settlement Fund, plus interest, and payment of litigation expenses incurred in connection with the prosecution of this Action in an amount not to exceed $525,000, plus interest, and that such application also might include a request that Lead Plaintiffs be reimbursed their reasonable costs and expenses (including lost wages) directly related to their representation of the Settlement Class in an amount not to exceed

$75,000.  No Settlement Class Members have filed an objection to the application for fees and expenses submitted by Plaintiffs' Counsel;

(d)     Plaintiffs' Counsel conducted the Action and achieved the Settlement with skillful and diligent advocacy;

(e)     The Action involves complex factual and legal issues and, in the absence of settlement, would involve lengthy proceedings whose resolution would be uncertain;

(f)     Plaintiffs' Counsel undertook the Action on a contingent basis and have devoted more than 13,000 hours, with a lodestar value of $7,525,051.75 to achieve the Settlement; and

(g)     The amount of attorneys' fees, litigation expenses, and reimbursement of Lead Plaintiffs' costs and expenses (including lost wages) paid from the Settlement Fund is fair and reasonable and consistent with awards in similar cases.

8.     Any appeal or challenge affecting this Court's approval of any attorneys' fee, expense application, or award of costs and expenses (including lost wages) to Lead Plaintiffs in the Action shall in no way disturb or affect the finality of the Judgment entered with respect to the Settlement.

9.     Exclusive jurisdiction is retained over the subject matter of this Action and over all parties to the Action, including the administration and distribution of the Net Settlement Fund to Settlement Class Members.

10.     In the event that the Settlement is terminated or does not become Final or the Effective Date does not occur in accordance with the terms of the Stipulation, this order shall be rendered null and void to the extent provided by the Stipulation and shall be vacated in accordance with the Stipulation.

[PROPOSED REVISED] ORDER AWARDING ATTYS'
FEES, LITIG. EXPENSES & LEAD PLS.' EXPENSES
CASE NO. SACV 11-1404 AG (RNBx)

4

Case 2:22-cv-08395-SVW-SK   Document 235-6   Filed 10/27/25   Page 24 of 103 #:Page
Case 8:11-cv-01404-AG-RNB   Document 167   Filed 09/15/14   Page 6 of 6   Page ID #:4591
ID #:5827

SO ORDERED this 15th day of September, 2014

_____
ANDREW J. GUILFORD
UNITED STATES DISTRICT JUDGE

[PROPOSED REVISED] ORDER AWARDING ATTYS'
FEES, LITIG. EXPENSES & LEAD PLS.' EXPENSES
CASE NO. SACV 11-1404 AG (RNBx)

5

# TAB 3

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

JONNIE HOMYK, et al.,

          Plaintiffs,

    v.

CHEMOCENTRYX, INC., et al.,

          Defendants.

Case No. 21-cv-03343-JST

**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

Re: ECF Nos. 267, 279

Before the Court are Lead Plaintiff Indiana Public Retirement System's motion for partial summary judgment and Defendants ChemoCentryx Inc. ("ChemoCentryx) and Dr. Thomas J. Schall's (together, "Defendants") cross motion for summary judgment. ECF Nos. 267, 279. The Court will grant Defendants' motion and deny Lead Plaintiff's motion as moot.

**I.  BACKGROUND**

Because the facts are well-known to the parties and the Court has summarized the background of this action in detail in its prior orders, ECF Nos. 61, 131, 275, the Court will not repeat them in full here. In sum, Lead Plaintiff Indiana Public Retirement System brings this action individually and on behalf of all persons who purchased or otherwise acquired ChemoCentryx common stock between November 26, 2019, and May 6, 2021, inclusive ("Class Period"). Plaintiff alleges that ChemoCentryx and Dr. Thomas Schall, its President and Chief Executive Officer, violated Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 by making false and misleading statements and omissions about the safety, efficacy, and application for Food and Drug Administration ("FDA") approval of a proprietary vasculitis drug called avacopan, thereby artificially inflating the price of ChemoCentryx stock during the Class Period.

United States District Court
Northern District of California

ChemoCentryx developed and marketed avacopan as a breakthrough therapy for the treatment of ANCA-associated vasculitis ("AAV"), a rare autoimmune disease, that could potentially replace the existing standard of care involving steroids and immunosuppressants. ECF. No. 47 ¶¶ 1, 5, 48. At the start of the Class Period, Defendants announced the results of a study called ADVOCATE, the Phase III trial of avacopan for the treatment of AAV. *Id.* ¶ 10. In that announcement and throughout the Class Period, Defendants stated that trial safety results showed that avacopan was safer than standard-of-care steroid therapy; that, in the trial, avacopan had demonstrated non-inferiority versus prednisone with respect to the primary endpoint of Birmingham Vasculitis Activity Score ("BVAS") remission at week 26 and superiority at week 52; that the study demonstrated that chronic steroids were not needed to achieve remission; and that communications with the FDA regarding the avacopan New Drug Application ("NDA") had been straightforward. *Id.*

However, Plaintiff alleges that Defendants knowingly withheld adverse facts from investors during the Class Period that undermined their public statements. For example, in private communications with Defendants in 2016 and 2020, the FDA had expressed concerns about the reliability of the trial's design and results. Specifically, the FDA told Defendants that statistical non-inferiority would be inadequate to demonstrate that avacopan could replace the steroid-based standard of care, casting doubt on the sufficiency of ADVOCATE's key week 26 results. *Id.* ¶¶ 96–100. Plaintiff also alleges that Defendants knew that steroid use was significant and widespread among avacopan patients enrolled in the trial, which undermined Defendants' claims about avacopan's efficacy as a "monotherapy." *See id.* ¶¶ 138–46. Plaintiff alleges that Defendants knew of and failed to disclose serious adverse liver events, including an event meeting Hy's Law criteria[1] and one occurring after rechallenge, that occurred during the trial. *Id.* ¶ 128. Further, Plaintiff alleges that ChemoCentryx did not disclose its failure to follow trial protocol in

---

[1] "A Hy's Law case involves significant elevations in both a patient's serum levels of aminotransferase (enzyme leaked by injured cells) and increases in bilirubin, indicating the liver injury is significant enough to impair liver function. . . . [T]he occurrence of even one case meeting Hy's Law criteria in a clinical trial is enough to raise red flags, as these cases often predict severe post[-]marketing liver toxicity." ECF No. 202-29 at 22-23 (footnote omitted).

calculating remission results. When these results were later calculated in accordance with trial protocol, avacopan failed to achieve superiority to standard-of-care steroid therapy at week 52 by a statistically significant margin. *Id.* ¶¶ 130–37.

On February 18, 2021, ChemoCentryx published the ADVOCATE results in a *New England Journal of Medicine* ("*NEJM*") article. *Id.* ¶ 144. The peer-reviewed article included a table that detailed the "other than protocol-specified" glucocorticoid use by patients in both the avacopan and prednisone treatment arms in ADVOCATE. *Id.* However, the *NEJM* article did not explicitly disclose that 64% of avacopan patients were prescribed steroids for the specific purpose of helping control their AAV. *Id.*

On May 4, 2021, the FDA published the Briefing Book and other materials (together, "Advisory Committee Materials") in advance of its Advisory Committee meeting. The concerns reflected in these documents mirrored many of the concerns the FDA had privately expressed to ChemoCentryx in 2016 and 2020. *Id.* ¶ 17. These materials further revealed, among other things, the extent of steroid use among avacopan patients in the trial. *Id.* In response to the release of the Advisory Committee Materials, ChemoCentryx's common stock dropped more than 45% in a single day. *Id.* ¶ 18.

On May 6, 2021, the Advisory Committee held a public meeting to discuss avacopan. This meeting, Plaintiff alleges, allowed investors to appreciate the significance of the previously concealed facts discussed in the FDA Briefing Book, including the clinical import of the ADVOCATE results. *Id.* Advisory Committee members were evenly split on the question of whether the drug should be approved, and those who voted in favor of approval argued its label should be limited—that is, that it should only be approved for use by a limited set of patients. The next day, ChemoCentryx common stock fell by approximately 62%. *Id.*

On October 8, 2021, however, approximately five months after the end of the Class Period, the FDA approved avacopan for the market under the trade name of TAVNEOS. *Id.* ¶ 191. Plaintiff alleges that the FDA ultimately approved avacopan for use only in conjunction with steroids and only by adult patients with severe active AAV. *Id.* ¶¶ 21–23. The FDA also required ChemoCentryx to include warnings for liver toxicity on the avacopan label and ordered

3

ChemoCentryx to conduct three post-marketing studies to evaluate liver toxicity. *Id.*

## II. JURISDICTION

The Court has jurisdiction under 28 U.S.C. § 1331.

## III. LEGAL STANDARD

Summary judgment is proper where the pleadings, discovery and affidavits show that there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *See* Fed. R. Civ. P. 56(a). Material facts are those that may affect the outcome of the case. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute as to a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *See id.*

A court shall grant summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial [,] . . . since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). The moving party bears the initial burden of identifying those portions of the record that demonstrate the absence of a genuine issue of material fact. *Id.* at 323. The burden then shifts to the nonmoving party to "go beyond the pleadings and by [his] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *See id.* at 324 (citing Fed. R. Civ. P. 56(e)).

For purposes of summary judgment, the court must view the evidence in the light most favorable to the non-moving party, drawing all justifiable inferences in that party's favor. *AXIS Reinsurance Co. v. Northrop Grumman Corp.*, 975 F.3d 840, 844 (9th Cir. 2020). If, as to any given material fact, evidence produced by the moving party conflicts with evidence produced by the nonmoving party, the Court must assume the truth of the evidence set forth by the nonmoving party with respect to that material fact. *Furnace v. Sullivan*, 705 F.3d 1021, 1026 (9th Cir. 2013). However, facts must be viewed in the light most favorable to the nonmoving party only if there is a "genuine" dispute as to those facts. *Scott v. Harris*, 550 U.S. 372, 380 (2007). The court's

United States District Court
Northern District of California

4

function on a summary judgment motion is not to make credibility determinations or weigh conflicting evidence. *Manley v. Rowley*, 847 F.3d 705, 711 (9th Cir. 2017).

The court is not required "to scour the record in search of a genuine issue of triable fact," *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996) (citations omitted), and it may limit its review to the documents submitted for purposes of summary judgment and those parts of the record specifically referenced therein. *Carmen v. San Francisco Unified Sch. Dist.*, 237 F.3d 1026, 1030 (9th Cir. 2001). "A mere scintilla of evidence will not be sufficient to defeat a properly supported motion for summary judgment; rather, the non-moving party must introduce some significant probative evidence tending to support the complaint." *Summers v. Teichert & Son, Inc.*, 127 F.3d 1150, 1152 (9th Cir. 1997) (citation and internal quotation marks omitted).

## IV.     REQUEST FOR JUDICIAL NOTICE

"Judicial notice under Rule 201 permits a court to notice an adjudicative fact if it is 'not subject to reasonable dispute,'" i.e., the fact "is 'generally known,' or 'can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned.'" *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 999 (9th Cir. 2018) (quoting Fed. R. Evid. 201(b)).

Defendants request that the Court take judicial notice of twelve documents. ECF No. 283. The documents can be categorized into (1) ChemoCentryx's SEC filings (Exhibits 28, 38, 59, and 86); and (2) FDA documents (Exhibits 8, 20, 21, 43, 53, 57, 58, and 76). *See generally id.* Plaintiff opposes the request for judicial notice of Exhibits 8, 57, 58, 59, and 76. ECF No. 302. Plaintiff opposes judicial notice because it argues that Defendants improperly seek judicial notice of "disputed facts" and the challenged documents are not relevant. *See id.* at 4–11.

The Court first addresses whether these types of documents are generally subject to judicial notice and then respond to Plaintiff's arguments. Beginning with ChemoCentryx's SEC filings, courts regularly take judicial notice of these kinds of "publicly available financial documents." *See Metzler Inv. GMBH v. Corinthian Colleges, Inc.*, 540 F.3d 1049, 1064 n.7 (9th Cir. 2008); *see also Dreiling v. Am. Exp. Co.*, 458 F.3d 942, 946 n. 2 (9th Cir. 2006); *Strezsak v. Ardelyx Inc.*, 2024 WL 1160900, at *4 (N.D. Cal. Mar. 18, 2024) (taking judicial notice of SEC filings "for the purpose of considering what was disclosed to the market" and not for "the truth of

any of the facts asserted").  Similarly, courts also routinely take judicial notice of FDA documents like those at issue here.  *See, e.g.*, *Sneed v. Procter & Gamble Co.*, No. 23-CV-05443-JST, 2025 WL 1017933, at *3 (N.D. Cal. Apr. 4, 2025) (taking judicial notice of FDA approval letters); *Kettner v. Cadista Holdings, Inc.*, No. 2:19-CV-02123-TLP-CGC, 2019 WL 11583314, at *2 (W.D. Tenn. Aug. 12, 2019) (taking judicial notice of FDA documents approving an abbreviated new drug application); *Gustavson v. Wrigley Sales Co.*, 961 F. Supp. 2d 1100, 1126, n.1 (N.D. Cal. 2013) (taking judicial notice of an FDA guidance document); *Wilson v. Frito-Lay N. Am., Inc.*, 260 F. Supp. 3d 1202, 1207 (N.D. Cal. 2017) (taking judicial notice of FDA labeling guidance).

Next, the Court agrees with Plaintiff that the Court cannot take judicial notice of disputed facts stated in public records.  *See Insight Psychology & Addiction, Inc. v. City of Costa Mesa*, 724 F. Supp. 3d 1067, 1080 (C.D. Cal. 2024) (citing *Lee v. City of Los Angeles*, 250 F.3d 668, 689 (9th Cir. 2001)).  However, the Court finds that it can take judicial notice of the existence of these documents without accepting the truth of any disputed content.  More specifically, the Court can take judicial notice of undisputed facts such as when avacopan was approved, what was being approved, and what the label for avacopan stated.  *See Wilson v. Amneal Pharms., L.L.C.*, No. 1:13-CV-00333-CWD, 2013 WL 6909930, at *7 (D. Idaho Dec. 31, 2013) (taking judicial notice of "when certain approvals occurred, and what was being approved——whether it was the transfer of the ANDA for Generic Bactrim, or the labels for Brand Name Bactrim and what those labels stated"—and not "the entirety of the [approval] letters' contents").  Similarly, the Court may take judicial notice of the RITUXAN ("RTX") labels for what those labels said on certain dates, without accepting any disputed facts about what the general standard of care relating to RTX was.  And the Court may take judicial notice of the SEC filings for the fact "that the market was aware of the information contained in" those filings without accepting that that underlying information was actually true.  *Heliotrope Gen. Inc. v. Ford Motor Co.,* 189 F.3d 971, 981 n. 118 (9th Cir.1999); *see also Von Saher v. Norton Simon Museum of Art at Pasadena*, 592 F.3d 954, 960 (9th Cir. 2010).  As to relevance, Plaintiff repeats legal arguments about why FDA approval is not significant or was not based on sufficient data that it made in its opposition to Defendants' motion

6

for summary judgment, and these arguments do not affect the *fact* of approval on a certain date noticeable from the FDA documents.

Accordingly, the Court grants Defendants' request for judicial notice of the twelve documents.

## V.    DEFENDANTS' CROSS MOTION

### A.    Section 10(b) and Rule 10-b5 Claim

Section 10(b) of the Securities Exchange Act of 1934 declares it unlawful to "use or employ, in connection with the purchase or sale of any security . . . , any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the [SEC] may prescribe as necessary."  15 U.S.C. § 78j(b).  There is an "implied [ ] private cause of action" in Section 10(b).  *Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S. 27, 37 (2011).

"SEC Rule 10b-5 implements [Section 10(b)] by making it unlawful to . . . 'make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made . . . not misleading.'"  *Id.* (quoting 17 C.F.R. § 240.10b–5).

"Thus, to prevail on a claim for violations of either Section 10(b) or Rule 10b-5, a plaintiff must prove six elements: '(1) a material misrepresentation or omission by the defendant; (2) scienter; (3) a connection between the misrepresentation or omission and the purchase or sale of a security; (4) reliance upon the misrepresentation or omission; (5) economic loss; and (6) loss causation.'"  *In re NVIDIA Corp. Sec. Litig.*, 768 F.3d 1046, 1051–52 (9th Cir. 2014) (quoting *Matrixx Initiatives*, 563 U.S. at 37-38).

Defendants move for summary judgment, arguing that there is no triable issue of fact as to whether Plaintiff can establish the first two elements.  After carefully reviewing the evidence cited by the parties, the Court concludes that Plaintiff cannot establish a material misrepresentation or omission and that summary judgment must be entered in Defendants' favor on that basis.[2]

#### 1.    Statements of Opinion

Defendants move for summary judgment on the basis that their challenged statements are

---

[2] Because the Court grants Defendants' motion for summary judgment on this basis, it does not reach Defendants' remaining arguments or Plaintiff's motion for partial summary judgment.

7

inactionable opinions. As a preliminary matter, the Court must determine whether the statements at issue in this case are facts or opinions. "In the context of the securities laws, '[a] fact is a thing done or existing or an actual happening,'" while "'[a]n opinion is a belief, a view, or a sentiment which the mind forms of persons or things.'" *In re QuantumScape Sec. Class Action Litig.*, 580 F. Supp. 3d at 738 (N.D. Cal. 2022) (quoting *Omnicare, Inc. v. Laborers Dist. Council Const. Indus. Pension Fund*, 575 U.S. 175, 183 (2015)). "A statement of fact ('the coffee is hot') expresses certainty about a thing, whereas a statement of opinion ('I think the coffee is hot') does not." *Id.* (quoting *Omnicare*, 575 U.S. at 183).

The parties have grouped the challenged statements in this case into five general categories: (1) statements about ADVOCATE's safety results; (2) statements about ADVOCATE's secondary endpoints; (3) statements about ADVOCATE's primary endpoints; (4) statements about avacopan's ability to replace steroid therapy; and (5) statements about the NDA and ChemoCentryx's interactions with the FDA.

The Court finds that all of the challenged statements are opinions largely dealing with Defendants' interpretations of trial data or scientific methodology—some of which contain embedded facts, and all of which are subject to the standard established in *Omnicare* for proving falsity. In cases alleging that a drug manufacturer has misled investors in its presentation of clinical trial data, courts consistently find that those statements are opinions because "there is no single 'correct' way to interpret data [, and] qualified data scientists often and reasonably 'disagree over how to analyze data and interpret results.'" *Thant v. Rain Oncology Inc.*, No. 5:23-CV-03518-EJD, 2025 WL 588994, at *4 (N.D. Cal. Feb. 24, 2025) (quoting *In re Sanofi Sec. Litig.*, 87 F. Supp. 3d 510, 543 (S.D.N.Y. 2015), *aff'd sub nom. Tongue v. Sanofi*, 816 F.3d 199 (2d Cir. 2016); *see also, e.g., Alger Dynamic Opportunities Fund v. Acadia Pharms. Inc.*, 756 F. Supp. 3d 852, 872 (S.D. Cal. 2024) ("Defendants' interpretation of the data and results of the studies were plainly expressions of opinion."); *Pardi v. Tricida, Inc.*, No. 21-cv-00076, 2024 WL 1056013, at *7 (N.D. Cal. Mar. 11, 2024) (representations that a clinical trial met its primary and second endpoints, that the defendant was optimistic about its NDA approval, and that its clinical trial data would provide sufficient evidence of safety and efficacy for FDA approval were all opinions); *In*

8

*re Rigel Pharms., Inc. Sec. Litig.*, 697 F.3d 869, 879 (9th Cir. 2012) (challenges to statements concerning statistical results of a clinical trial represent differences of opinion when the criticisms relate to the reliability of the underlying methodology); *City of Edinburgh Council v. Pfizer, Inc.*, 754 F.3d 159, 170 (3d Cir. 2014) ("Interpretations of clinical trial data are considered opinions."); *In Re Philip Morris Int'l Inc. Sec. Litig.*, 89 F.4th 408, 422 (2d Cir. 2023) (statements about the proper interpretation of data are opinions); *Tongue v. Sanofi*, 816 F.3d 199, 214 (2d Cir. 2016) (statements summarizing the efficacy results from a clinical trial are opinions reflecting the speaker's interpretation of data).

Here, Defendants' statements about the acceptability of avacopan's safety profile reflect their own assessment of the drug's safety based on trial data, and those statements sometimes contain the embedded fact that avacopan "had fewer adverse events and fewer serious adverse events." *See, e.g.*, ECF No. 47 ¶ 268; ECF No. 268-26 at 5. Their statements about ADVOCATE meeting its primary and secondary endpoints and that avacopan operated as a "monotherapy" that could replace steroids in the trial similarly embody Defendants' interpretation of ADVOCATE trial data. *See, e.g.*, ECF No. 47 ¶ 317; ECF No. 268-23 at 5 ("[A]vacopan was *essentially* a monotherapy since the standard concomitant background therapies such as cyclophosphamide or rituximab have ceased. *The data suggests* that avacopan alone may suffice in controlling ANCA vasculitis over time . . . ." (emphasis added)). And Defendants' statements about their interactions with the FDA express their own perspective and judgment on prior FDA communications. *See, e.g.*, ECF No. 47 ¶ 425; ECF No. 268-31 at 8 ("FDA has not highlighted any particular issues that would have to be discussed at AdCom.").

### 2. Falsity[3]

Under *Omnicare*, a plaintiff can plead falsity for opinion statements in three ways: "First,

---

[3] The Court notes that there is some overlap in its current discussion and its prior order resolving Defendants' motion to dismiss. *See generally* ECF No. 61. To the extent the Court previously found that Plaintiff had adequately pleaded falsity as to these categories of statements, the Court notes that Defendants had made only a limited challenge to a small subset of the statements as inactionable opinions in its motion to dismiss. *See id.* Moreover, the undisputed evidence now available in the record as well as the new legal authority cited by Defendants inform the Court's current analysis.

when a plaintiff relies on a theory of material misrepresentation, the plaintiff must allege both that 'the speaker did not hold the belief she professed' and that the belief is objectively untrue." *City of Dearborn Heights Act 345 Police & Fire Ret. Sys. v. Align Tech., Inc*., 856 F.3d 605, 615–16 (9th Cir. 2017) (quoting *Omnicare*, 575 U.S. at 186). "Second, when a plaintiff relies on a theory that a statement of fact contained within an opinion statement is materially misleading, the plaintiff must allege that 'the supporting fact [the speaker] supplied [is] untrue.'" *Id.* at 616 (quoting *Omnicare*, 575 U.S. at 186). "Third, when a plaintiff relies on a theory of omission, the plaintiff must allege 'facts going to the basis for the issuer's opinion . . . whose omission makes the opinion statement at issue misleading to a reasonable person reading the statement fairly and in context.'" *Id.* (quoting *Omnicare*, 575 U.S. at 194).

When examining a theory of omission, "the court must ask whether the alleged omission rendered [the] opinions misleading . . . because the excluded fact shows that [the speaker] lacked the basis for making those statements that a reasonable investor would expect." *Omnicare*, 575 U.S. at 196. "A statement of opinion is not misleading just because external facts show the opinion to be incorrect" or the "issuer knows, but fails to disclose, some fact cutting the other way." *Id.* at 188–89. However, a reasonable investor expects that the issuer's opinion "fairly aligns with the information in the issuer's possession at the time." *Id.* at 189.

Because "whether an omission makes an expression of opinion misleading always depends on context," the "court must take account of whatever facts [the defendant] *did* provide about [the subject of its opinion], as well as any other hedges, disclaimers, or qualifications it included," and consider an investor who "takes into account the customs and practices of the relevant industry." *Id.* at 190, 196 (emphasis in original). Therefore, "an omission that renders misleading a statement of opinion when viewed in a vacuum may not do so once that statement is considered, as appropriate, in a broader frame." *Id.* at 190.

At the outset, the Court notes the heightened standard that courts have applied post-*Omnicare* to determine when a defendant's failure to disclose FDA feedback or other scientific criticism—even when repeating serious concerns—constitutes a material omission rendering an opinion misleading and actionable. Another court in this district has recently summarized the

10

approach taken by other courts of appeal and adopted their logic as follows:

> For example, in *Tongue v. Sanofi*, the plaintiffs "[were] sophisticated investors, no doubt aware that projections provided by issuers are synthesized from a wide variety of information, and that some underlying facts may be in tension with the ultimate projection set forth by the issuer." 816 F.3d 199, 211 (2d Cir. 2016). The Second Circuit explained that these investors, "well accustomed to the 'customs and practices of the relevant industry,'" would fully expect that the defendants and the FDA were engaged in a continuous dialogue "about the sufficiency of various aspects of the clinical trials and that inherent in the nature of [such] a dialogue are differing views." *Id.* Thus, the Second Circuit concluded the defendants' statements about the effectiveness of their drug "[could not] be misleading merely because the FDA disagreed with the conclusion— so long as Defendants conducted a 'meaningful' inquiry and in fact held that view, the statements did not mislead in a manner that [was] actionable." *Id.* at 214.

> Similarly, in *In re Amarin Corp. PLC Sec. Litig.*, the Third Circuit concluded that the plaintiffs failed to plead falsity because the company's announcement of the topline results of its Phase 3 trial "did not lack a reasonable basis." No. 21-2071, 2022 WL 2128560, at *3 (3d Cir. June 14, 2022). The court also found the plaintiffs' theory of omission liability unpersuasive given that the company's contemporaneous disclosures warned of the exact risk that the plaintiffs argued was improperly omitted. *Id.* And the court rejected the theory that the company had a duty to disclose additional information when announcing its topline results because the company had put information about the trial's placebo arm "in play." *Id.* The court recognized that "[t]here is no affirmative duty to disclose all material information, but such a duty may arise when a company chooses 'to speak about a material subject to investors.'" *Id.* (citations omitted). The Third Circuit explained, however, that while the disclosures at issue described the trial results with reference to the placebo group, "they did not make any affirmative characterizations regarding the effectiveness" of the placebo. *Id.* (citation omitted). Accordingly, "[the company's] disclosure of the topline results did not put into play either the full trial data or additional information" regarding the placebo. *Id.*

*Pardi v. Tricida, Inc.*, No. 21-CV-00076-HSG, 2024 WL 1056013, at *8 (N.D. Cal. Mar. 11, 2024), *opinion clarified*, No. 21-CV-00076-HSG, 2024 WL 3262615 (N.D. Cal. July 1, 2024); *see also In re Sanofi Sec. Litig.*, 87 F. Supp. 3d at 541–42 ("Furthermore, in a series of cases, courts have rejected claims of material omissions where pharmaceutical companies did not reveal procedural or methodological commentary, or other interim status reports, received from the FDA as to drugs under review.") (collecting cases); *Strezsak v. Ardelyx Inc.*, No. 21-CV-05868-HSG, 2024 WL 1160900, at *6 (N.D. Cal. Mar. 18, 2024) ("Defendants had 'no legal obligation to loop

11

the public into each detail of every communication with the FDA.'" (quoting *In re Dynavax Sec. Litig.*, 2018 WL 2554472, at *7 (N.D. Cal. June 4, 2018)).

The cases cited by Plaintiff do not hold otherwise. In *Schueneman v. Arena Pharmaceuticals, Inc.*, the defendant stated that "'all the animal studies that [had] been completed' supported [defendant's] case for approval," even though it was aware of a study in which rats receiving its drug were getting cancer and knew that this study was "*the* sticking point with the FDA," such that the FDA had made "highly unusual" and "out-of-process" bi-monthly demands for information regarding the study. 840 F.3d 698, 700, 707, 708 (9th Cir. 2016).[4] Rather than dealing with the falsity of an opinion statement—and nowhere addressing *Omnicare*— *Schueneman* thus involved a direct contradiction between the defendant's representation of the information in claimed to have in its possession and the information it actually had.

Similarly, in *Khoja v. Orexigen Therapeutics, Inc.*, the defendant purposefully leaked the positive interim results it received from a study overseen by an Executive Steering Committee ("ESC") despite the FDA requiring those results to remain confidential. 899 F.3d 988, 994 (9th Cir. 2018). The FDA then reprimanded the defendant and forbade it from disclosing the interim results again, reiterating that the interim results had "a high degree of uncertainty and were likely to change with the accumulation of additional data." *Id.* at 995. Despite the FDA's instructions, however, the defendant included the interim results in its provisional patent application one month later, requested that its application be published, and then included the results in its Form 8-K with the Securities and Exchange Commission—thereby boosting its stock prices. *Id.* The Ninth Circuit in *Khoja* found that the defendant's failure to disclose that the interim results were likely unreliable could constitute a material omission. *Id.* at 1009–10. Critically, the Ninth Circuit did not apply *Omnicare*, as the ESC's results did not represent the defendant's own interpretations, but rather the confidential and tentative interpretations of the ESC.[5]

_____

[4] The Court also notes that *Schueneman* formally addressed scienter rather than falsity. *Id.* at 707.
[5] For similar reasons, Plaintiff's remaining citations fare no better, as they were decided prior to *Omnicare* and also did not address whether the defendant had a reasonable basis for their opinions in the face of omitted scientific criticism. *See Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S. 27 (2011); *Zak v. Chelsea Therapeutics Int'l, Ltd.*, 780 F.3d 597 (4th Cir. 2015).

### a. ADVOCATE's Safety Results

Plaintiff argues that Defendants misrepresented ADVOCATE's safety results, primarily focusing on the following statement made by Defendants: "We had fewer adverse events and fewer serious adverse events, a very acceptable safety profile to go forward we believe and apply for approval in this indication." ECF No. 47 ¶ 268; *see also id.* ¶¶ 10, 70, 207.

The challenged statements contain the embedded fact that patients in the avacopan treatment arm of ADVOCATE "had fewer adverse events and fewer serious adverse events" than patients in the prednisone arm. Plaintiff does not argue that this fact is literally false.[6] Instead, Plaintiff argues that Defendants' safety statements were misleading because they knowingly omitted information from ADVOCATE showing that avacopan caused higher incidents of drug-induced liver injury, including cases meeting the standard for Hy's Law. More specifically, Plaintiff argues that Defendants were well aware of concerns relating to avacopan's hepatotoxicity risk because they were repeatedly raised by the ADVOCATE Data Monitoring Committee ("DMC") and purportedly shared by one of ChemoCentryx's senior medical executives.

Defendants argue that the safety statements at issue are non-actionable opinions whose bases are supported by ultimate FDA approval and disclosure of the underlying safety statistics during the Class Period. The Court agrees with Defendants.

First, there is no genuine dispute that the FDA approved avacopan (under the name TAVNEOS) for use in the United States based on a review of the ADVOCATE data in October 2021.[7] *See* ECF No. 282-59 at 4; ECF No. 282-57. The FDA thus found that ADVOCATE's results provided clinically meaningful evidence that avacopan had an acceptable safety profile—even despite the serious liver safety risks that the FDA itself had flagged in its Briefing Book. *See*

---

[6] Indeed, the FDA reported in its Briefing Book the following comparisons of adverse events ("AEs") between the avacopan and prednisone treatment groups respectively: "severe AEs (23.5% vs. 25.0%), AEs leading to discontinuation of study medication (16.3% vs. 17.1%) and [serious] AEs (42.2% vs. 45.1%)." ECF No. 282-2 at 13.

[7] The Court notes that Plaintiff now argues that the FDA would not have approved avacopan at all if ChemoCentryx had not "manipulated" the trial data in its unblinding and readjudication process. ECF No. 303-3 at 12–13, 19. As Plaintiff has contended only that Defendants "manipulated" the ADVOCATE data regarding efficacy (whether avacopan was superior to the standard of care), Plaintiff's "data manipulation" allegations do not affect the significance of the FDA's approval as to *safety* based on ADVOCATE's data.

13

21 U.S.C. § 355(d) (providing that the Secretary of the FDA shall refuse to approve the new drug application for any drug where the Secretary finds that "the results of such tests show that such drug is unsafe for use under such conditions or do not show that such drug is safe for use under such conditions"); 21 C.F.R. § 314.105(a) ("FDA will approve an NDA and send the applicant an approval letter if none of the reasons in § 314.125 for refusing to approve the NDA applies," which includes when the results of the tests show that the drug is unsafe for use.). Defendants' statement that they "believe[d]" that avacopan had "a very acceptable safety profile to go forward" based on there being "fewer adverse events and fewer serious adverse events" in the avacopan group over the prednisone group was thus per se reasonable. *See Philip Morris*, 89 F.4th at 422. In other words, Plaintiff cannot show that Defendants "lacked the basis for making" the statements regarding their interpretation of avacopan's safety profile "that a reasonable investor would expect," when the FDA ultimately agreed that avacopan had an acceptable safety profile. *Omnicare*, 575 U.S. at 196. And while Plaintiff claims that *Philip Morris* is distinguishable because the FDA approved avacopan for use only with warnings of "serious cases of hepatic injury," ECF No. 303-3 at 28 (quoting ECF No. 303-39 at 10), there is no "serious conflict" between the label's warning about certain risks and Defendants' statements—adopted by the FDA—that avacopan had an overall "acceptable safety profile." *See Tongue*, 816 F.3d at 212.

Moreover, it is undisputed that Defendants published the ADVOCATE safety statistics on which they based their safety statements. In both the October 2019 that Defendants published in the Journal of Medical Internet Research ("JMIR Article") and the February 2021 *NEJM* article, Defendants publicly disclosed statistics indicating that there were more adverse events, serious adverse events, and deaths in the control group than the avacopan group, but also that there were more serious adverse events related to liver safety in the avacopan group compared to the control group. ECF No. 282-31 at 13; ECF No. 282-17 at 9–10. While Defendants did not disclose these statistics in exactly the form that the DMC or Plaintiff believe they should have—highlighting the cases that met Hy's Law or avacopan's specific hepatotoxicity risks—there is no obligation under federal securities law for Defendants "to disclose alternative methods of interpreting the data" from their clinical trial. *In re Rigel Pharms., Inc. Sec. Litig.*, 697 F.3d at 879. Where Defendants'

14

own interpretation of data is itself reasonable, Defendants are not required to disclose the DMC's "contrary views" to their interpretation of the ADVOCATE trial data even if that feedback "cast[s] doubt on the trial data." *See Strezsak*, 2024 WL 1160900, at *6; *Philip Morris*, 89 F.4th at 420. For similar reasons, that one of ChemoCentryx's senior medical executives advised Schall to publicly discuss cases of liver injury does not compel a different result. *See Omnicare*, 575 U.S. at 190 ("A reasonable investor does not expect that *every* fact known to an issuer supports its opinion statement."). "At bottom, Plaintiff['s] allegations regarding Defendants' stated opinion about the [ADVOCATE safety] results are little more than a dispute about the proper interpretation of data," and "Defendants' statements were not misleading simply because the FDA [or the DMC] disagreed with Defendants' interpretation of the data; an issuer is not liable merely because it 'knows, but fails to disclose, some fact cutting the other way.'" *Tongue*, 816 F.3d at 214 (quoting *Omnicare*, 575 U.S. at 188–89).

### b. ADVOCATE's "Validated" Secondary Endpoints

Plaintiff contends that Defendants touted the results from the ADVOCATE trial's "validated" secondary endpoints—primarily the use of the glucocorticoid toxicity index ("GTI")—as "definitive evidence statistically that [avacopan was] superior in reducing glucocorticoid-related toxicities." ECF No. 303-3 at 18 (quoting ECF No. 47 ¶¶ 218–90). Plaintiff argues that these statements were misleading because the FDA had consistently told Defendants that it would not accept results from the GTI for regulatory purposes and individuals at ChemoCentryx had expressed internally that the GTI may not be considered "validated."

Reading the challenged statements in the context of the "hedges, disclaimers, [and] qualifications [Defendants] included" about their usage of the GTI, however, the Court finds that Plaintiff has not demonstrated that there was any omission that rendered Defendants' opinion statements about their secondary endpoints misleading. *Omnicare*, 575 U.S. at 196. For example, during Defendants' November 25, 2019 Investor Call, Schall described the novel use of GTI as what "we believe now [is], at least, [a] semi-validated instrument." ECF No. 282-26 at 8. Indeed, on that same call, an actual investor demonstrated their understanding about the "novel" nature of GTI—inquiring "how familiar are physicians and payers to this metric . . . [a]nd how easily is this

15

going to be receptive amongst the community there?" *Id.* at 17. To this, Schall acknowledged that "GTI, as good as it is, is brand new," and that there would need to be much "education to be done on GTI" but that he believed "that people are going to understand its power." *Id.* at 18. And even the example statement cited by Plaintiff expresses that the GTI was "newly-validated"—not that it was validated by the FDA or other regulatory authorities. ECF No. 268-10 at 3. A reasonable investor would thus not have been misled by the statement as to GTI's validity because the context of Defendants' disclosures revealed the extent to which Defendants were expressing their own opinion on the novel application of GTI. *See Omnicare, Inc.*, 575 U.S. at 190 ("A reasonable investor does not expect that *every* fact known to an issuer supports its opinion statement.").

Moreover, Defendants' statements about GTI being "validated" "cannot be misleading merely because the FDA disagreed with the conclusion—so long as Defendants conducted a 'meaningful' inquiry and in fact held that view, the statements did not mislead in a manner that is actionable." *Tongue*, 816 F.3d at 214. Here, Defendants conducted a "meaningful" inquiry, as Defendants cited multiple academic papers supporting Schall's view that GTI was "newly-validated" or "at least, semi-validated." *See* ECF No. 282-17 at 12 nn. 24, 25 (*NEJM* article citing a 2017 paper and 2020 paper establishing the use of GTI to measure glucocorticoid-associated morbidity); ECF No. 282-4 at 21 n.34 (JMIR Article citing the same 2017 paper). And while Plaintiff cites internal communications where an individual at ChemoCentryx indicated concern about the validity of GTI, none of these documents—to the extent they were not already reflected in Defendants' public qualifications about GTI—directly conflicts with Schall's opinions or suggests that *Schall* did not in fact believe his opinions. *See Tongue*, 816 F.3d at 203, 213–214 (finding no conflict between the defendants' statements that "the [trial] data are nothing short of stunning," and the FDA's repeated communications that the trial design was "unlikely to provide substantial support for" approval). Any conflict is particularly minimized by the fact that most of the cited internal communications were from February 2019—prior to Defendants' publication of the above articles citing new academic support for GTI. *See* ECF No. 303-68 at 2 (email from February 19, 2019); ECF No. 303-69 at 2 (email from February 24, 2019); ECF No. 303-70 (email

16

and presentation from February 28, 2019).

Accordingly, Defendants are entitled to summary judgment on this category of misrepresentations because the omitted facts do not show that Defendants "lacked the basis for making those statements that a reasonable investor would expect." *Omnicare*, 575 U.S. at 196; *see also Pardi*, 2024 WL 1056013, at \*7 (rejecting the suggestion that a "company's failure to disclose the FDA's positions in real time establishes falsity," even when the "FDA had repeatedly indicated its disagreement that [a designated] endpoint was substantial enough to demonstrate the trial's clinical effectiveness").

### c. ADVOCATE's Primary Endpoints

Plaintiff argues that Defendants "misled investors by touting ADVOCATE's 'efficacy' results, claiming avacopan satisfied both primary endpoints: 'non-inferiority' at week-26 and 'superiority' at week-52, as compared to 'standard of care.'" ECF No. 303-3 at 16 (citing ECF No. 47 ¶¶ 291–35 and Exhibits 1–37).

Plaintiff does not meaningfully argue that Defendants did not actually meet the two pre-specified primary endpoints of ADVOCATE—non-inferiority at week 26 and superiority at week 52.[8] Nor could it. The FDA in the Briefing Book explicitly agreed with Defendants that ADVOCATE "met its primary endpoints by demonstrating non-inferiority of avacopan to prednisone in disease remission at Week 26 . . . and sustained remission at Week 52 . . . based on the Applicant's specified margin." ECF No. 282-3 at 77.

Instead, Plaintiff argues that Defendants misled investors by making these statements without disclosing that: (1) the FDA disagreed with ADVOCATE's design regarding the primary endpoints and indicated that the non-inferiority endpoint by itself would not be sufficient to prove a successful study; (2) the FDA had reiterated that Defendants' relapse analysis was "problematic from a statistical point of view;" (3) ADVOCATE did not demonstrate avacopan's superiority over standard of care because the standard of care administered by ChemoCentryx did not include "maintenance therapy;" and (4) Defendants violated ADVOCATE's protocol by using a modified

---

[8] The Court addresses Plaintiff's argument that Defendants did not actually use the pre-specified BVAS scoring below.

17

version of "BVAS version 3." ECF No. 303-3 at 16–17.

Plaintiff's first three arguments boil down to contending that Defendants "should have used different [] methodologies, not that Defendants misrepresented the results they obtained from the methodologies they employed." *In re Rigel Pharms., Inc. Sec. Litig.*, 697 F.3d at 878. But "merely alleging that defendants should have used different statistical methodology in their drug trials is not sufficient to allege falsity." *Id.* And it "'is not the Court's job' to determine whether the flaws Plaintiff alleges with the [use of non-inferiority as a primary endpoint were] 'so anomalous' that stating the topline results of their trial was 'fraudulent if [criticisms of those methodologies were] not disclosed.'" *Bazzelle v. Novocure Ltd.*, No. 1:23-CV-5146-GHW, 2025 WL 843668, at *12 (S.D.N.Y. Mar. 18, 2025) (quoting *In re Neurotrope, Inc. Sec. Litig.*, 315 F. Supp. 3d 721, 731 (S.D.N.Y. 2018)).

Furthermore, "fatal to Plaintiff['s] case is the absence of any serious conflict between the FDA's interim, albeit repeated, concerns about" non-inferiority as a primary endpoint and Defendants' statements that ADVOCATE had in fact achieved its pre-specified endpoints as described—including both non-inferiority at week 26 and superiority at week 52. *Tongue*, 816 F.3d at 212; *see also id.* at 203, 213–214 (finding no conflict between the defendants' statements that a drug demonstrated a "strong and robust treatment effect," and that "the data are nothing short of stunning," and the FDA's repeated communications that the trial design was "unlikely to provide substantial support for" approval). That is particularly true when FDA's criticisms related to the use of non-inferiority as a primary endpoint *alone* and agreed with Defendants' revised approach to add a superiority analysis at week 52. *See* ECF No. 303-34 at 7.

Defendants also provided the basis for their topline results—explaining that "[r]emission was defined as a BVAS score of zero and being off glucocorticoid treatment for ANCA vasculitis for at least the preceding four weeks" and that the "pre-specified primary endpoints were remission of acute vasculitis activity at week 26 and sustained remission at week 52, where avacopan therapy was at least statistically non-inferior to the currently used glucocorticoid-containing standard of care (glucocorticoid SOC)." ECF No. 282-1 at 2. Defendants thus accurately described how ADVOCATE achieved its primary endpoints, and Plaintiff's (or even

United States District Court
Northern District of California

18

United States District Court
Northern District of California

the FDA's) disagreement with the legitimacy of one of those endpoints does not by itself create an actionable omission. *See Kleinman v. Elan Corp., plc*, 706 F.3d 145, 154–55 (2d Cir. 2013) (finding no misleading omission where the plaintiff argued that the defendants "were able to tout positive results only because they deviated from the established protocol . . . and changed the metrics by which data was analyzed," since the defendants had accurately disclosed their method of analysis); *Bazzelle*, 2025 WL 843668, at *12 (no securities-fraud claim where the defendants "accurately disclosed [trial] topline results" and instead criticize defendants for describing the results "in positive terms . . . based on a trial whose design and methodology [the plaintiff] disputes").

The same is true for Plaintiff's argument that Defendants did not show superiority because they failed to provide maintenance therapy as part of their standard of care—Defendants' trial design does not become a basis for a securities fraud claim just because Plaintiff disagrees with it.[9] *See In re Amarin Corp. PLC Sec. Litig.*, 2022 WL 2128560, at *3 (finding that "different interpretations" as to how to interpret whether the defendant's chosen methodology "affected the trial's results" are "not sufficient to establish that the defendants' interpretations of the data in the topline results lacked a reasonable basis") (internal quotation omitted). And the same problems plague Plaintiff's final argument that Defendants misrepresented the achievement of ADVOCATE's primary endpoints by using a modified version of "BVAS version 3" to evaluate results rather than the official BVAS version 3 used by FDA adjudicators. Contrary to Plaintiff's allegations, the record does not show any genuine dispute that, as recognized by the FDA, Defendants explicitly specified that ADVOCATE would employ a modified version of BVAS 3 that would capture only "active" AAV and not "persistent" AAV. *See* ECF No. 282-18 at 99 (ADVOCATE trial protocol establishing that the BVAS scoring would only record "the presence

___

[9] The Court also notes that Plaintiff primarily relies on the FDA's feedback that "treatment comparison in the complementary rituximab induction subgroup may not be considered meaningful because these patients did not receive maintenance therapy," but that in that same document, the FDA added the caveat that "at the time the study was designed, repeat dosing with rituximab was not established as maintenance therapy." ECF No. 282-2 at 9–10. The shifting scientific views around the standard of care here illustrate why securities law is generally not the appropriate forum to litigate disagreements over proper trial design and methodologies.

of active AAV"); *see also* ECF No. 282-ECF No. 282-2 at 10 (FDA Briefing Book recognizing that the "pre-specified analysis" in ADVOCATE was a "modified BVAS" that did not capture "persistent vasculitis"). Defendants thus did not misrepresent their trial results, even if Plaintiff contends that the unmodified BVAS 3 scoring would have been more reliable.

Accordingly, the Court finds that there is no triable issue of fact as to whether Plaintiff can demonstrate falsity for the statements relating to ADVOCATE's achievement of its primary endpoints. *See In re Rigel Pharms., Inc. Sec. Litig.*, 697 F.3d at 879 ("Because Plaintiff does not allege that Defendants misrepresented their own statistical methodology, analysis, and conclusions, but instead criticizes only the statistical methodology employed by Defendants, Plaintiff did not adequately plead falsity with respect to statistic results.").

### d. Steroid Statements

Plaintiff challenges the "steroid statements" in which it alleges that Defendants represented that ADVOCATE eliminated steroid usage as a variable and showed that avacopan could replace steroids. *See* ECF No. 303-3 at 17–18 (pointing to statements where Schall explained that ChemoCentryx "simply took the steroids out of the mix" and that ADVOCATE "resoundingly" showed "that steroids need not be used when avacopan is available") (quoting ECF No. 47 ¶¶ 351–404 and Exhibits 1–37). Plaintiff argues that the "steroid statements" were misleading because Defendants omitted the fact that 64% of avacopan patients in ADVOCATE used steroids to treat their AAV and that steroid usage for the purpose of treating AAV was no different between the avacopan and "standard of care" arms of the trial. *Id.* And Plaintiff contends that Defendants were aware of this issue because the DMC and FDA had both expressed that the avacopan patients' receipt of steroid treatment would confound comparisons between the treatment arms and undermine any efficacy results.

The Court finds that the full context of Defendants' various "steroid statements" demonstrates that a reasonable investor would have understood Defendants' "steroid statements" as far more limited opinion statements than as depicted by Plaintiff. For example, Defendants consistently framed the goal of avacopan as eliminating the need for "chronic" or "daily" steroid usage—rather than any steroid usage at all—in the existing standard of care. *See, e.g.*, ECF No.

47 ¶¶ 275, 284 ("And by eliminating the need for daily prednisone, we reduce in a statistically significant way the steroid related toxicities . . . ."); *id.* ¶ 378 ("Second, eliminating the need for chronic steroid therapy and the many illnesses associated with that current chronic steroid containing standard of care."); *id.* ¶¶ 319, 381 ("[T]he chronic high-dose steroids which are quite toxic, is really something everyone would love to get rid of.  So, what we did is, we took a two-arm study and we said, let's do avacopan instead of the glucocorticoids.  Certainly, let's try to eliminate the need for daily steroids in this trial.").  And on the November 25, 2019 investor call, where Schall made one of the challenged steroid statements, Schall responded to investors that he "[did not] know" but that "what we showed is that you do not need the chronic steroid regimen."  ECF No. 282-26 at 19–20.  Similarly, where Plaintiff quotes Schall as saying that the ADVOCATE trial "resoundingly" provided evidence that avacopan could replace steroids, Schall also explained that he thought "that *this may be the beginning* given the breadth of these results across all of these spectrum of total burden of disease."  *See* ECF No. 47 ¶ 355.

Moreover, there is no genuine dispute that Defendants had disclosed prior to the beginning of the Class Period that the ADVOCATE trial design permitted steroid usage in the avacopan treatment group as it was needed to treat worsening disease.  *See* ECF No. 282-4 at 13 ("[T]he protocol allows for the use of low-dose glucocorticoids (up to 10 mg/day prednisone or equivalent) to treat adrenal insufficiency, and/or to treat worsening or relapsing disease."); *id.* at 18 ("The use, if warranted, in both treatment groups, of a limited amount of non-protocol specified glucocorticoids is allowed at baseline, as is the use of "rescue" glucocorticoids during the study.  However, the protocol specifies the indication, dose, duration and tapering schedule for nonprotocol supplied glucocorticoids to limit the impact of their use on the study results.").  And Defendants had specifically defined patients as being in "remission" if they did not use steroids *in the four weeks prior to the primary endpoint assessments* at Week 26 and Week 52.  *See* ECF No. 282-4 at 8.

Nor is there any genuine dispute that Defendants published the data showing the actual rates of steroid usage in the ADVOCATE treatment arms and reflecting that steroid usage was comparable in the two treatment arms.  In the *NEJM article*, Defendants published several tables

21

of data indicating that 87.3% of patients in the avacopan treatment arm received steroids in the ADVOCATE trial and providing the week-by-week steroid usage of patients across the two treatment arms. ECF No. 282-19, Tables S5 and S6; *see also* ECF No. 282-17 at 11 (citing the fact that "[g]lucocorticoids were used by patients in the avacopan group" as one of ADVOCATE's "limitations"). And in other presentations, Defendants similarly published charts containing the actual week-by-week steroid usage by patients in the two treatment groups. *See* ECF No. 282-30 at 11–12; ECF No. 282-31 at 11. A reasonable investor would thus have known that in making the challenged "steroid statements," Defendants were counting patients in the avacopan group as responding to avacopan even if many of them were taking steroids as needed.

Plaintiff responds to Defendants' disclosure arguments by citing the Court's prior class certification order, in which the Court rejected Defendants' contention that the JIMR article disclosed that after being tapered off steroids at the beginning of the trial, patients in the ADVOCATE trial were permitted to receive non-study supplied steroids for reasons such as adrenal insufficiency or worsening of the disease. ECF No. 303-3 at 37–38 (citing ECF No. 131 at 10). The Court previously found that the JMIR article failed to disclose that steroid use "was similar between the prednisone and avacopan group" or that 64% of avacopan patients were prescribed prednisone to treat their AAV. ECF No. 131 at 10.

But the Court's analysis is now informed by a fuller summary-judgment record and different legal and factual arguments. First, the Court conducted its prior analysis to resolve whether Defendants' disclosures demonstrated a lack of price impact from the alleged misrepresentations—not whether a reasonable investor would have been misled by the "steroid statements" given the context of the above disclosures. Second, the Court looked only at the JMIR article, which—unlike the NEJM article and the other presentations cited above—did not publish the data reflecting actual steroid usage across the two treatment arms and indicating that 87.3% of patients in the avacopan group received steroids. So "even if Defendants had a duty to disclose the FDA's statements, Defendants specifically disclosed the thrust of the concerns Plaintiff asks the Court to infer from the FDA statements at issue." *Strezsak*, 2024 WL 1160900, at *6. Plaintiff in its opposition does not respond to this 87.3% disclosure and does not explain

22

why Defendants were obligated specifically to express that 64% of patients in the avacopan group received steroids to treat AAV—which is merely a more granular presentation of the 87.3% figure. And Defendants are not required to disclose the most negative framing of their trial data as a matter of securities law. *See Philip Morris*, 89 F.4th at 420 (reiterating the "fundamental principle that the securities laws do not 'require[]' the '[p]eople in charge of an enterprise . . . to take a gloomy, fearful[,] or defeatist view" of the enterprise's standing (quoting *Rombach v. Chang*, 355 F.3d 164, 174 (2d Cir. 2004))).

Plaintiff has not otherwise explained why Defendants' interpretation of the trial data—that ADVOCATE demonstrated that avacopan could begin to replace chronic steroid usage—is "irrational or unreasonable" such that their opinions are actionable. *See Tongue*, 816 F.3d at 214. Indeed, the record contains evidence supporting Defendants' basis for their statements. *See, e.g.*, ECF No. 282-17 at 11 (NEJM article summarizing that although patients in the avacopan group also used glucocorticoids, "the mean daily glucocorticoid dose in the avacopan group was one third of that in the prednisone group"); ECF No. 303-62 at 5 ("There was a similar number of patients in each treatment group who used glucocorticoids for persistent vasculitis, worsening of vasculitis, and maintenance of remission. However, more than twice as many patients in the prednisone grom compared to the avacopan group had glucocorticoid use for relapses (38 vs. 17)."). Accordingly, because Plaintiff's challenge to the "steroid statements" "are little more than a dispute about the proper interpretation [or presentation] of data," the Court grants Defendants' motion for summary judgment as to this category of misrepresentations. *Tongue*, 816 F.3d at 214.

### e. Interactions with FDA

Lastly, Plaintiff argues that Defendants' optimistic statements about the regulatory path with the FDA being clear and the FDA not having highlighted any particular issues that would have to be discussed at AdCom were misleading because Defendants failed to disclose the FDA's communications of concerns discussed above.

To begin, the fact that the FDA *did* ultimately approve avacopan for use in the U.S. market may by itself be enough to demonstrate that Defendants had a reasonable basis for interpreting the regulatory path to be clear. *See Philip Morris*, 89 F.4th at 420–21 (holding that where "the FDA

United States District Court
Northern District of California

eventually accepts a defendant's interpretation of the data, that interpretation is per se reasonable as a matter of law" (quoting *Tongue*, 816 F.3d at 214) (internal quotation marks and modifications omitted)).

Furthermore, courts have repeatedly held that statements of optimism regarding the FDA regulatory process or even likelihood of approval are not misleading merely because a defendant has not publicly disclosed FDA feedback or criticism communicated to the defendant. Indeed, defendants have "no legal obligation to loop the public into each detail of every communication with the FDA." *In re Dynavax Sec. Litig.*, 2018 WL 2554472, at *7 (N.D. Cal. June 4, 2018) (quoting *Corban v. Sarepta Therapeutics, Inc.*, 868 F.3d 31, 40 (1st Cir. 2017)); *see also Tongue*, 816 F.3d at 214 ("[N]o sophisticated investor familiar with standard FDA practice would expect that every view of the data taken by Defendants was shared by the FDA.").

For example, in *Tongue*, the plaintiffs alleged defendants to have presented misleadingly optimistic projections regarding the timing of FDA approval by failing to disclose the fact that the FDA had communicated repeated concerns about the trial methodology, including that the study design issued would mean that the clinical trial was "unlikely to provide substantial support for" approval. *Tongue*, 816 F.3d at 203–04, 211. There, the Second Circuit rejected plaintiffs' theory because there was no "serious conflict between the "FDA's interim, albeit repeated, concerns about methodology and Defendants' optimism about FDA approval." *Id.* at 212. The Second Circuit added that the "Defendants need not have disclosed the FDA feedback merely because it tended to cut against their projections . . . . Certainly, Plaintiffs would have been interested in knowing about the FDA feedback, and perhaps would have acted otherwise had the feedback been disclosed, but *Omnicare* does not impose liability merely because an issuer failed to disclose information that ran counter to an opinion expressed in the registration statement." *Id.*

And in *Strezsak v. Ardelyx Inc.*, the plaintiffs challenged the defendants' descriptions of their interactions with the FDA as having "gone exceedingly well" and that there was "nothing [untoward] [or] anything that causes us concern" because the FDA had "indicated that Defendants would need to demonstrate clinical relevance and provide a justification for approval given that [the new drug at issue] showed a smaller effect size than seen in already approved agents." 2024

24

WL 1160900, at *5. Applying *Omnicare*, the court found that defendants' opinions were not actionable because the FDA's statement did not support the inference that approval for defendants' drug was in jeopardy or that its review process was "not actually proceeding in an ordinary manner." *Id.* It further explained that in the context of a "years-long iterative dialogue with the FDA, . . . Defendants were free to express optimism in their application and the prospects for approval, and the feedback from the FDA did not render those expressions of optimism false. To the extent that feedback presented views contrary to those expressions of optimism, Defendants had no obligation to share every opinion raised by the FDA absent more compelling circumstances" not present in the record. *Id.* at *7; *see also Pardi*, 2024 WL 1056013, at *7 ("FDA's expression of its view that the results likely would not be applicable to the U.S. population does not show that [defendant's] confidence in the likelihood of approval was necessarily objectively false or not honestly held.").

Moreover, Defendants here actually *did* caution investors that FDA approval was not guaranteed—warning that "[e]ven if we believe the preclinical or clinical data for our drug candidates are promising, such data may not be sufficient to support approval by the FDA," that development may be delayed by "the need to conduct additional trials," that the FDA may "limit the approved indications for use of the product, [or] require that contraindications, warnings or precautions be included in the product labeling," and even that the "FDA may ultimately decide" not to approve avacopan at all. *See* ECF No. 282-28 at 26, 29, 37, 57.

In sum, there is no triable issue of fact as to falsity because there is an absence of "any serious conflict between the FDA's interim, albeit repeated, concerns about methodology and Defendants' optimism about FDA approval," especially as the FDA ultimately approved avacopan based on the ADVOCATE trial. *Tongue*, 816 F.3d at 212. Accordingly, the Court grants Defendants' motion for summary judgment as to this category of statements.

### B. 20(a) and 20A Claims Against Schall

Plaintiff has alleged two derivative claims against Schall: a Section 20A claim for insider trading and a Section 20(a) control person claim. "Claims under Section 20A are derivative and therefore require an independent violation of the Exchange Act." *Johnson v. Aljian,* 490 F.3d 778,

United States District Court
Northern District of California

781 (9th Cir. 2007); *see also* 15 U.S.C. § 78t-1(a). Similarly, a Section 20(a) claim requires that "a plaintiff must first prove a primary violation of underlying federal securities laws, such as Section 10(b) or Rule 10b–5." *In re NVIDIA Corp. Sec. Litig.*, 768 F.3d 1046, 1052 (9th Cir. 2014); *see also* 15 U.S.C. §78t(a).

Because the Court grants summary judgment in favor of Defendants on the Section 10(b) claims as described above, the Court thus also grants summary judgment in favor of Schall as to the Section 20A insider trading and Section 20(a) control person claims. *See In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 394 (9th Cir. 2010); *Nguyen v. Endologix, Inc.*, 962 F.3d 405, 419 (9th Cir. 2020).

**CONCLUSION**

For the foregoing reasons, the Court grants summary judgment in favor of Defendants. Lead Plaintiff's motion for partial summary judgment is denied as moot. All pending deadlines and hearings in this action are vacated. Judgment is entered in favor of Defendants and against Plaintiffs.

**IT IS SO ORDERED.**

Dated: August 15, 2025



JON S. TIGAR
United States District Judge

United States District Court
Northern District of California

26

# TAB 4

**KERR & WAGSTAFFE LLP**
JAMES M. WAGSTAFFE (#95535)
IVO LABAR (#203492)
101 Mission Street, 18th Floor
San Francisco, CA 94105–1727
Telephone: (415) 371-8500
Fax: (415) 371-0500
wagstaffe@kerrwagstaffe.com
labar@kerrwagstaffe.com

*Local Counsel for Plaintiffs and the Class*

**LABATON SUCHAROW LLP**
JONATHAN GARDNER (*pro hac vice*)
SERENA P. HALLOWELL (*pro hac vice*)
MICHAEL P. CANTY (*pro hac vice*)
CHRISTINE M. FOX (*pro hac vice*)
THEODORE J. HAWKINS (*pro hac vice*)
ALEC T. COQUIN (*pro hac vice*)
140 Broadway
New York, NY 10005
Telephone: 212/907-0700
212/818-0477 (fax)
jgardner@labaton.com
shallowell@labaton.com
mcanty@labaton.com
cfox@labaton.com
thawkins@labaton.com
acoquin@labaton.com

*Lead Counsel for Plaintiffs and the Class*

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

# SAN JOSE DIVISION

| | |
|---|---|
| IN RE INTUITIVE SURGICAL SECURITIES LITIGATION | Case No. 5:13-cv-01920 EJD (HRL)<br><br>CLASS ACTION<br><br>**[PROPOSED] ORDER AWARDING ATTORNEYS' FEES, PAYMENT OF EXPENSES, AND PAYMENT OF CLASS REPRESENTATIVES' EXPENSES** |

On December 20, 2018, a hearing having been held before this Court to determine, among other things, whether and in what amount to award (1) Class Counsel in the above-captioned consolidated securities class action (the "Action") fees and litigation expenses directly

relating to their representation of the Class; and (2) Class Representatives their costs and expenses (including lost wages), pursuant to the Private Securities Litigation Reform Act of 1995 (the "PSLRA"). The Court having considered all matters submitted to it at the hearing and otherwise; and it appearing that a notice of the hearing substantially in the form approved by the Court (the "Settlement Notice") was mailed to all reasonably identified Class Members; and that a summary notice of the hearing (the "Summary Notice"), substantially in the form approved by the Court, was published in *Investor's Business Daily* and transmitted over *PR Newswire*; and the Court having considered and determined the fairness and reasonableness of the award of attorneys' fees and expenses requested;

NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that:

1.     The Court has jurisdiction over the subject matter of this Action and over all parties to the Action, including all Class Members who have not timely and validly requested exclusion, Plaintiffs' counsel, and the Claims Administrator.

2.     All capitalized terms used herein have the meanings set forth and defined in the Stipulation and Agreement of Settlement, dated as of September 11, 2018 (the "Stipulation").

3.     Notice of Class Counsel's application for attorneys' fees and payment of litigation expenses was given to all Class Members who could be identified with reasonable effort. The form and method of notifying the Class of the application for attorneys' fees and expenses met the requirements of Rules 23 and 54 of the Federal Rules of Civil Procedure, Section 21D(a)(7) of the Securities Exchange Act of 1934, 15 U.S.C. § 78u-4(a)(7), as amended by the PSLRA, due process, and other applicable law, constituted the best notice practicable under the circumstances, and constituted due and sufficient notice to all persons and entities entitled thereto.

4.     Class Counsel are hereby awarded, on behalf of all Plaintiffs' counsel, attorneys' fees in the amount of $8,075,000 plus interest at the same rate earned by the Settlement Fund (which is 19% of the Settlement Fund), and payment of litigation expenses in the amount of $1,988,789.66, which sums the Court finds to be fair and reasonable.

2

5. The award of attorneys' fees and litigation expenses may be paid to Class Counsel from the Settlement Fund immediately upon entry of this Order, subject to the terms, conditions, and obligations of the Stipulation, which terms, conditions, and obligations are incorporated herein.

6. In making this award of attorneys' fees and payment of litigation expenses to be paid from the Settlement Fund, the Court has analyzed the factors considered within the Ninth Circuit and found that:

(a) The Settlement has created a common fund of $42.5 million in cash and that numerous Class Members who submit acceptable Claim Forms will benefit from the Settlement created by the efforts of counsel;

(b) The requested attorneys' fees and payment of litigation expenses have been reviewed and approved as fair and reasonable by Class Representatives, sophisticated institutional investors that were directly involved in the prosecution and resolution of the Action and who have a substantial interest in ensuring that any fees paid to counsel are duly earned and not excessive;

(c) Class Counsel undertook the Action on a contingent basis, and have received no compensation during the Action, and any fee and expense award has been contingent on the result achieved;

(d) The Action involves complex factual and legal issues and, in the absence of settlement, would involve lengthy proceedings whose resolution would be uncertain;

(e) Class Counsel conducted the Action and achieved the Settlement with skillful and diligent advocacy;

(f) Plaintiffs' counsel have devoted approximately 41,813.90 hours, with a lodestar value of $21,548,609.00 to achieve the Settlement;

(g) The amount of attorneys' fees awarded are fair and reasonable and are less than fee awards approved in cases within the Ninth Circuit with similar recoveries;

3

[PROPOSED] ORDER AWARDING ATTORNEYS' FEES AND EXPENSES
CASE NO. 5:13-CV-01920 EJD (HRL)

(h)     Notice was disseminated to putative Class Members stating that Class Counsel would be submitting an application for attorneys' fees in an amount not to exceed 19% of the Settlement Fund, which includes interest, and payment of litigation expenses incurred in connection with the prosecution of this Action up to $2,500,000 plus interest, and that such application also might include a request that Class Representatives be reimbursed their reasonable costs and expenses (including lost wages) directly related to their representation of the Class; and

(i)     There were no objections to the application for attorneys' fees or expenses.

7.     In accordance with the PSLRA, the Court hereby awards Class Representative Employees' Retirement System of the State of Hawaii $49,754.18 for its costs and expenses directly related to its representation of the Class, and Class Representative Greater Pennsylvania Carpenters' Pension Fund $9,100.00 for its costs and expenses directly related to its representation of the Class.

8.     Any appeal or challenge affecting this Court's approval of any attorneys' fee, expense application, or award of costs and expenses to Class Representatives in the Action, shall in no way disturb or affect the finality of the Judgment entered with respect to the Settlement.

9.     Exclusive jurisdiction is retained over the subject matter of this Action and over all parties to the Action, including the administration of the Settlement.

10.     In the event that the Settlement is terminated or does not become Final or the Effective Date does not occur in accordance with the terms of the Stipulation, this order shall be rendered null and void to the extent provided by the Stipulation and shall be vacated in accordance with the Stipulation.

Dated: _____December 20_____, 2018          _____

HONORABLE EDWARD J. DAVILA
UNITED STATES DISTRICT JUDGE

4

[PROPOSED] ORDER AWARDING ATTORNEYS' FEES AND EXPENSES
CASE NO. 5:13-CV-01920 EJD (HRL)

# TAB 5

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | |
|---|---|
| IN RE: SANDISK LLC SECURITIES LITIGATION | Case No. 3:15-cv-01455-VC<br>Hon. Vince Chhabria<br><br>**REVISED [PROPOSED] ORDER AWARDING ATTORNEYS' FEES, PAYMENT OF LITIGATION EXPENSES, AND REIMBURSEMENT OF CLASS REPRESENTATIVES' COSTS AND EXPENSES** |

THIS MATTER having come before the Court for hearing on September 26, 2019 (the "Settlement Hearing") to determine, among other things, whether and in what amount to award (i) Plaintiffs' Counsel in the above-captioned consolidated securities class action (the "Action") attorneys' fees and litigation expenses in connection with their representation of the Class; and (ii) Class Representatives their costs and expenses pursuant to the Private Securities Litigation Reform Act of 1995 (the "PSLRA"); the Court, having considered all papers filed and proceedings had herein and otherwise being fully informed;

IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that:

1.      This Order operates by reference to the definitions in the Revised Stipulation and Agreement of Settlement filed on May 20, 2019 (ECF No. 274-1) (the "Stipulation"), and all capitalized terms used, but not defined, herein shall have the same meanings as those set forth in the Stipulation.

2.      Pursuant to and in compliance with Rule 23 of the Federal Rules of Civil Procedure, this Court hereby finds and concludes that due and adequate notice was directed to Persons who are Class Members who could be identified with reasonable effort, advising them of Class Counsel's motion for an award of attorneys' fees, payment of litigation expenses and reimbursement of Class Representatives' costs and expenses and their right to object thereto, and

REVISED [PROPOSED] ORDER AWARDING ATTORNEYS' FEES, PAYMENT OF LITIGATION EXPENSES, AND REIMBURSEMENT OF CLASS REPRESENTATIVES' COSTS AND EXPENSES
CASE NO. 3:15-CV-01455-VC

a full and fair opportunity was accorded to Persons who are Class Members to be heard. There were no objections to Class Counsel's motion.

3. Class Counsel are hereby awarded, on behalf of all Plaintiffs' Counsel, attorneys' fees in the amount of 25% of the Settlement Fund, plus accrued interest, and $885,149.36, plus accrued interest, in payment of Plaintiffs' Counsel's litigation expenses, which sums the Court finds to be fair and reasonable. Consistent with this Court's established practice, 10% of the total amount of attorneys' fees awarded is the percentage, proposed by Class Counsel given their demonstrated commitment to the Class and hereby deemed an appropriate amount, that shall be withheld until after a distribution of the Net Settlement Fund to Authorized Claimants has been made. Otherwise, the attorneys' fees and expenses awarded shall be paid from the Settlement Fund immediately upon entry of this Order, subject to the terms, conditions, and obligations of the Stipulation, which terms, conditions, and obligations are incorporated herein by reference.

4. Class Counsel shall allocate the attorneys' fees awarded amongst Plaintiffs' Counsel in a manner in which they, in good faith, believe reflects the contributions of such counsel to the institution, prosecution, and settlement of the Action.

5. In making this award of attorneys' fees and expenses to be paid from the Settlement Fund, the Court has considered and found that:

(a) the Settlement has created a fund of $50,000,000 in cash, and Class Members who submit acceptable Claim Forms will benefit from the Settlement that has been achieved as a result of the efforts of Plaintiffs' Counsel;

(b) the attorneys' fees sought by Class Counsel have been reviewed and approved as reasonable by Class Representatives, who are institutional investors that oversaw the prosecution and resolution of the Action;

(c) copies of the revised Settlement Notice (ECF No. 274-3) were mailed to over 203,000 potential Class Members and nominees, stating that Class Counsel would apply for attorneys' fees in an amount not to exceed 28% of the Settlement Fund and litigation expenses in an amount not to exceed $1,000,000, and there were no objections

REVISED [PROPOSED] ORDER AWARDING ATTORNEYS' FEES, PAYMENT OF LITIGATION EXPENSES, AND REIMBURSEMENT OF CLASS REPRESENTATIVES' COSTS AND EXPENSES
CASE NO. 3:15-CV-01455-VC

2

to the requested attorneys' fees and expenses, which are less than the amounts stated in the revised Settlement Notice;

(d)    the Action raised a number of complex issues;

(e)    had Plaintiffs' Counsel not achieved the Settlement, there was a significant risk that Class Representatives and the other members of the Class may have recovered less or nothing at all from Defendants;

(f)    Plaintiffs' Counsel have devoted nearly 30,000 hours with a lodestar value of $15,950,994.50 to this Action and have advanced $885,149.36 in litigation expenses to achieve the Settlement; and

(g)    the amount of attorneys' fees and litigation expenses to be paid from the Settlement Fund are fair and reasonable and consistent with awards in similar cases.

6.    In accordance with the PSLRA, Class Representative City of Bristol Pension Fund is hereby awarded $7,300 from the Settlement Fund as reimbursement for its reasonable costs and expenses directly related to its representation of the Class.

7.    In accordance with the PSLRA, Class Representative Pavers and Road Builders Pension, Annuity and Welfare Funds is hereby awarded $7,717.50 from the Settlement Fund as reimbursement for its reasonable costs and expenses directly related to its representation of the Class.

8.    In accordance with the PSLRA, Class Representative the City of Newport News Employees' Retirement Fund is hereby awarded $7,474.44 from the Settlement Fund as reimbursement for its reasonable costs and expenses directly related to its representation of the Class.

9.    In accordance with the PSLRA, Class Representative Massachusetts Laborers' Pension Fund is hereby awarded $8,557.50 from the Settlement Fund as reimbursement for its reasonable costs and expenses directly related to its representation of the Class.

10.    Any appeal of or challenge to this Court's award of attorneys' fees, payment of litigation expenses, and reimbursement of Class Representatives' costs and expenses in

REVISED [PROPOSED] ORDER AWARDING ATTORNEYS' FEES, PAYMENT OF LITIGATION EXPENSES, AND REIMBURSEMENT OF CLASS REPRESENTATIVES' COSTS AND EXPENSES
CASE NO. 3:15-CV-01455-VC

3

connection with their representation of the Class shall in no way disturb or affect the finality of the Judgment.

11. Exclusive jurisdiction is hereby retained over the Parties and Class Members for all matters relating to this Action, including administration, interpretation, effectuation, or enforcement of the Stipulation and this Order.

12. In the event that the Settlement is terminated or the Effective Date of the Settlement fails to occur, this Order shall be rendered null and void to the extent provided by the Stipulation.

Dated: October 23, 2019

_____

HONORABLE VINCE CHHABRIA
UNITED STATES DISTRICT JUDGE

REVISED [PROPOSED] ORDER AWARDING ATTORNEYS' FEES, PAYMENT OF LITIGATION EXPENSES, AND REIMBURSEMENT OF CLASS REPRESENTATIVES' COSTS AND EXPENSES
CASE NO. 3:15-CV-01455-VC

4

# TAB 6

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE TEZOS SECURITIES LITIGATION<br><br>This document relates to:<br><br>ALL ACTIONS | No. 3:17-cv-06779-RS<br>(Consolidated)<br><br>**CLASS ACTION**<br><br>**ORDER AWARDING ATTORNEYS'<br>FEES, LITIGATION EXPENSES,<br>AND AWARDS FOR PLAINTIFFS** |

WHEREAS, a Consolidated Complaint for Violations of the Federal Securities Laws is pending in this Court entitled *In re Tezos Securities Litigation*, No. 3:17-cv-06779-RS.

WHEREAS, by Order dated May 1, 2020 (the "Preliminary Approval Order"), this Court (a) preliminarily approved the Settlement and the proposed forms and methods of providing Notice to the Settlement Class; (b) provided Settlement Class Members with the opportunity to object to the proposed Settlement and Plaintiffs' Lead Counsel's application for an award of attorneys' fees and litigation expenses; and (c) scheduled a hearing regarding final approval of the Settlement;

WHEREAS, the Court conducted a hearing on August 27, 2020 (the "Settlement Fairness Hearing") to consider, among other things, (a) whether Lead Plaintiff and Plaintiffs' Lead Counsel have adequately represented the interests of the Settlement Class; (b) whether the proposed Settlement on the terms and conditions provided for in the Stipulation is fair, reasonable, and adequate to the Settlement Class, and should be approved by the Court; and (c) whether the application by Plaintiffs' Counsel for an award of attorneys' fees and litigation expenses should be approved; and

WHEREAS, it appearing that due notice of the terms of the Settlement and Releases and the Settlement Fairness Hearing has been given in accordance with the Preliminary Approval Order; the Parties having appeared by their respective attorneys of record; the Court having heard and considered evidence in support of Plaintiffs' Counsel's request for an award of attorneys' fees and litigation expenses; the attorneys for the respective Parties having been heard; an opportunity to be heard having been given to all other persons or entities requesting to be heard in accordance with the Preliminary Approval Order; the Court having determined that notice to the Settlement Class was adequate and sufficient; the Court having found that Plaintiffs' Lead Counsel's request for an award of attorneys' fees and litigation expenses is fair, reasonable and adequate and otherwise being fully informed in the premises and good cause appearing therefore:

ORDER AWARDING LEAD COUNSEL'S ATTORNEYS' FEES,
REIMBURSEMENT OF LITIG. EXPENSES, AND SERVICE AWARDS FOR PLAINTIFFS        - 1
CASE NO. 3:17-CV-06779-RS

NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND DECREED this 28th day of August, 2020, as follows:

1.  Unless otherwise defined in this Order, the capitalized terms used herein shall have the same meanings as set forth in the Stipulation of Settlement dated March 16, 2020 (ECF No. 246-1) ("Settlement Agreement" or "Stipulation"), and filed with the Court.

2.  The Court has jurisdiction over the subject matter of this application and all matters relating thereto, including all members of the Class who have not timely and validly requested exclusion.

3.  The Court hereby awards Plaintiffs' Counsel[1] attorneys' fees of one-third of the Settlement Fund or $8,333,333.33, plus litigation expenses in the amount of $203,017.93, together with the interest earned thereon for the same time period and at the same rate as that earned on the Settlement Fund until paid. The Court finds that the amount of fees awarded is fair and reasonable under the "percentage-of-recovery" method given the substantial risks of non-recovery, the time and effort involved, and the result obtained for the Class.  The Court additionally finds that the costs and expenses were reasonably incurred in the ordinary course of prosecuting this case and were necessary given its complex nature and broad scope.

4.  Finally, the Court approves the following Plaintiff awards: Lead Plaintiff Trigon Trading Pty. Ltd. ($7,500), and additional Federal Plaintiffs Pumaro LLC ($7,500), Artiom Frunze ($7,500), Hayden Hsiung ($5,000), and Gijs Matser ($5,000), and to State Litigation Plaintiff Andrew Baker ($5,000). The Court further approves reimbursement in the amount of $475 to Trigon Trading Pty. Ltd. for costs and expenses directly related to their representation of the Settlement Class.  These

---

[1] Plaintiffs' Counsel are Block & Leviton LLP; Hung G. Ta, Esq. PLLC; Hagens Berman Sobol Shapiro LLP; LTL Attorneys LLP; the Restis Law Firm, P.C.; Lite DePalma Greenberg, LLC; and State Lead Counsel Taylor-Copeland Law, and Robbins Geller Rudman & Dowd LLP.

ORDER AWARDING LEAD COUNSEL'S ATTORNEYS' FEES,
REIMBURSEMENT OF LITIG. EXPENSES, AND SERVICE AWARDS FOR PLAINTIFFS          - 2
CASE NO. 3:17-CV-06779-RS

awards are reasonable and justified given the time and effort expended and the work performed and the active participation in the litigation and settlement processes by the class representatives on behalf of the members of the settlement class; the time the class representatives spent away from family, friends, relationships, and work and other responsibilities while working on this matter on behalf of the Settlement Class; the benefit to Settlement Class Members of Plaintiffs' actions on their behalf; and the length of this case.

5.     The awarded attorneys' fees and expenses and interest earned thereon shall immediately be paid to Plaintiffs' Counsel subject to the terms, conditions and obligations of the Stipulation, and in particular ¶ 7 thereof, which terms, conditions and obligations are incorporated.

**IT IS SO ORDERED.**

DATED: August 28, 2020

_____

THE HONORABLE RICHARD SEEBORG
UNITED STATES DISTRICT JUDGE

# TAB 7

ROBBINS GELLER RUDMAN & DOWD LLP
DANIEL S. DROSMAN (200643)
TOR GRONBORG (179109)
ELLEN GUSIKOFF STEWART (144892)
LUCAS F. OLTS (234843)
J. MARCO JANOSKI GRAY (306547)
CHRISTOPHER R. KINNON (316850)
HEATHER G. GEIGER (322937)
655 West Broadway, Suite 1900
San Diego, CA  92101-8498
Telephone:  619/231-1058
619/231-7423 (fax)

MOTLEY RICE LLC
GREGG S. LEVIN (admitted *pro hac vice*)
LANCE V. OLIVER (admitted *pro hac vice*)
MEGHAN S.B. OLIVER (admitted *pro hac vice*)
MAX N. GRUETZMACHER (admitted *pro hac vice*)
CHRISTOPHER F. MORIARTY (admitted *pro hac vice*)
MEREDITH B. WEATHERBY (admitted *pro hac vice*)
28 Bridgeside Blvd.
Mt. Pleasant, SC  29464
Telephone:  843/216-9000
843/216-9450 (fax)

*Co-Class Counsel for the Class*

[Additional counsel appear on signature page.]

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| In re TWITTER INC. SECURITIES LITIGATION | ) ) ) ) |
| This Document Relates To: | ) ) |
| ALL ACTIONS. | ) ) ) ) |

Case No. 4:16-cv-05314-JST (SK)

CLASS ACTION

CLASS COUNSEL'S NOTICE OF MOTION AND MOTION FOR AN AWARD OF ATTORNEYS' FEES, EXPENSES, AND AWARDS TO CLASS REPRESENTATIVES PURSUANT TO 15 U.S.C. §78u-4(a)(4) AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

JUDGE:    Hon. Jon S. Tigar
DATE:     November 17, 2022
TIME:     2:00 p.m. (via videoconference)

4856-0560-4661.v1

**TABLE OF CONTENTS**

**Page**

NOTICE OF MOTION AND MOTION ................................................................................1

STATEMENT OF ISSUES TO BE DECIDED ....................................................................2

MEMORANDUM OF POINTS AND AUTHORITIES .......................................................1

I.     INTRODUCTION ....................................................................................................1

II.    HISTORY OF THE LITIGATION ..........................................................................3

III.   THE REQUESTED FEE IS FAIR AND REASONABLE.......................................4

    A.     The Court Should Award Attorneys' Fees Using the Percentage-of-the-Fund Method .....................................................................4

    B.     A Fee of 22.5% of the Settlement Fund Is Reasonable Under Either the Percentage or Lodestar Method .........................................................6

        1.     The Requested Attorneys' Fees Are Reasonable Under the Percentage Method....................................................................6

        2.     The Requested Attorneys' Fees Are Reasonable Under the Lodestar Method .................................................................8

    C.     The Factors Considered by Courts in the Ninth Circuit Support the Requested Fee .......................................................................................11

        1.     Class Counsel Achieved an Excellent Result for the Class .......................11

        2.     The Litigation Was Uncertain and Highly Complex ................................12

        3.     The Skill Required and Quality of Work...................................................15

        4.     The Contingent Nature of the Fee and the Financial Burden Carried by Class Counsel.........................................................................15

        5.     Awards Made in Similar Cases Support the Fee Request..........................17

        6.     The Class's Reaction to Date Supports the Fee Request ...........................18

IV.    COUNSEL'S EXPENSES ARE REASONABLE AND SHOULD BE APPROVED ...........................................................................................................19

V.     COUNSEL'S AWARDED FEES AND EXPENSES SHOULD BE PAID UPON THE COURT'S ORDER GRANTING THE AWARD ...................................20

VI.    CLASS REPRESENTATIVES' REQUEST FOR AWARDS PURSUANT TO 15 U.S.C. §78u-4(a)(4) IS REASONABLE .........................................................22

VII.   CONCLUSION.......................................................................................................24

MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES ISO AN AWARD OF ATTORNEYS' FEES, EXPENSES, AND AWARDS TO CLASS REPRESENTATIVES - 4:16-cv-05314-JST (SK)

4856-0560-4661.v1

- i -

**2.** **The Requested Attorneys' Fees Are Reasonable Under the Lodestar Method**

To assess the reasonableness of a fee awarded under the percentage-of-the-fund method, courts may (but are not obligated to) cross-check the proposed award against counsel's lodestar. *Farrell v. Bank of Am. Corp., N.A.*, 827 F. App'x 628, 630 (9th Cir. 2020) (refusing to mandate "a [cross-check] requirement"); *Plains All Am.*, 2022 WL 4453864, at *2 (finding a cross-check unnecessary given the circumstances); *In re Amgen Inc. Sec. Litig.*, 2016 WL 10571773, at *9 (C.D. Cal. Oct. 25, 2016) (noting that "analysis of the lodestar is not required for an award of attorneys' fees in the Ninth Circuit"). A lodestar cross check is "neither mathematical precision nor bean counting." *Bellinghausen v. Tractor Supply Co.*, 306 F.R.D. 245, 264 (N.D. Cal. 2015); *accord Hefler*, 2018 WL 6619983, at *14 (Tigar, J.) (confirming that "'trial courts need not, and indeed should not, become green-eyeshade accountants'" in context of lodestar crosscheck, and noting that "the Court seeks to 'do rough justice, not to achieve auditing perfection'").

"Courts 'calculate[] the fee award by multiplying the number of hours reasonably spent by a reasonable hourly rate and then enhancing that figure, if necessary, to account for the risks associated with the representation.'" *Cheng Jiangchen v. Rentech, Inc.*, 2019 WL 5173771, at *10 (C.D. Cal. Oct. 10, 2019) (alteration in original) (quoting *Paul, Johnson, Alston & Hunt v. Graulty*, 886 F.2d 268, 272 (9th Cir. 1989)). Moreover, it is appropriate to use counsel's current hourly rates, rather than historical ones, which compensates for the delay in payment and the loss of interest on the funds. *See Mo. v. Jenkins by Agyei*, 491 U.S. 274, 284 (1989); *Fischel v. Equitable Life Assurance Soc'y of U.S.*, 307 F.3d 997, 1010 (9th Cir. 2002).[5] This Court has previously applied current rates when evaluating lodestars. *See Hefler*, 2018 WL 6619983, at *14 n.17.

As detailed here and in the accompanying declarations of Plaintiffs' Counsel, 73,445.11 hours of attorney and para-professional time were expended prosecuting the Litigation for the benefit of the Class for over five years, through January 7, 2022. Plaintiffs' Counsel's lodestar, derived by multiplying the hours spent on the Litigation by each attorney and litigation professional by their

[5] In any event, the differences here between the lodestars under current or historical rates is minimal, and under either approach the resulting multiplier is within the range of court-approved multipliers.

current hourly rates, is $43,931,080.75. At historical rates, Plaintiffs' Counsel's lodestar is $42,057,929.75. Accordingly, the requested fee of 22.5% represents a multiplier of 4.14 Plaintiffs' Counsel's lodestar at current rates and 4.33 at historical rates. Here, the hours spent to obtain the results are more than reasonable. Class Counsel obtained a landmark settlement by pushing the case to the brink of trial. As detailed in the Joint Declaration and in Plaintiffs' Counsel's Declarations, there is no question that the hours expended were necessary. *See also* Rubenstein Decl., ¶¶46-48.[6]

Class Counsel's hourly rates, too, are reasonable. Rubenstein Decl., ¶¶17-38. For attorneys with 16 years of experience or less, Plaintiffs' Counsel's average rate is lower than the average approved in settlements in this District. *Id.*, ¶24, Ex. D. For the senior attorneys with supervisory roles, the rate is slightly higher than average. *Id.* That is unsurprising, considering that Class Counsel have been recognized as among the top in their profession. *Id.* Further, Class Counsel's rates have recent judicial approval by other members of this Court. *See Fleming v. Impax Labs. Inc.*, 2022 WL 2789496, at *9 (N.D. Cal. July 15, 2022) (approving hourly rates of $760 to $1,325 for partners, $895 to $1,150 for counsel, and $175 to $520 for associates, and finding Robbins Geller's "billing rates in line with prevailing rates in this district for personnel of comparable experience, skill, and reputation"); *see also In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prods. Liab. Litig.*, 2017 WL 1047834, at *5 (N.D. Cal. Mar. 17, 2017) (approving "blended average hourly billing rate" of $529 per hour "for all work performed and projected" and "billing rates ranging from $275 to $1,600 for partners, $150 to $790 for associates, and $80 to $490 for paralegals" for Motley Rice and other plaintiffs' firms); *State of Wash. v. McKesson Drug Corp. et al.*, No. 19-2-06975-9, Findings of Fact and Conclusions of Law and Order Awarding Plaintiffs' Attorney Fees And Costs Associated with State's Fee Petition, at 5 (King Cnty. Super. Ct. Sept. 1, 2021) (noting "Motley Rice sets its hourly rates for attorneys practicing in complex civil litigation consistent with the rates charged nationally for similar services by lawyers of reasonably comparable skill, experience, and reputation").

---

[6] The actual realized multiplier has already, and will continue to decline over time as Class Counsel devote additional attorney time to preparing final approval materials as well as overseeing processing of claims by the Claims Administrator and the distribution of the Settlement funds to Class Members with valid claims. No additional counsel fees will be sought for such work.

The last piece of the cross-check analysis is the risk multiplier. "Courts regularly award lodestar multipliers of up to eight times the lodestar, and in some cases, even higher multipliers." *Beckman v. KeyBank, N.A.*, 293 F.R.D. 467, 481 (S.D.N.Y. 2013) (citing *Vizcaino*, 290 F.3d at 1052-54); *Craft v. Cnty. of San Bernardino*, 624 F. Supp. 2d 1113, 1125 (C.D. Cal. 2008) (noting "ample authority" for multiplier of 5.2 and collecting cases with substantially higher multipliers); *see also In re Facebook Biometric Info. Priv. Litig.*, 522 F. Supp. 3d 617, 633 (N.D. Cal. 2021) (awarding fee in $650 million common fund settlement representing 4.71 multiplier, finding that "the results obtained and the risks at trial warrant a higher-end multiplier"), *aff'd*, 2022 WL 822923 (9th Cir. Mar. 17, 2022); *McKnight v. Uber Techs., Inc.*, 2021 WL 4205055, at *7 (N.D. Cal. Sept. 2, 2021) (Tigar, J.) (noting that a "fee award [that] results in a multiplier of 4.14" is not "remarkable" when "the settlement represented an 'excellent result' for the class"); *Kang v. Wells Fargo Bank, N.A.*, 2021 WL 5826230, at *18 (N.D. Cal. Aug. 12, 2021) (awarding class counsel 22% of the Settlement Fund with a resulting multiplier of 5.2); *Perez v. Rash Curtis & Assocs.*, 2021 WL 4503314, at *5 (N.D. Cal. Oct. 1, 2021) (approving a multiplier of 4.8); *Thompson. v. Transamerica Life Ins. Co.*, 2020 WL 6145104, at *4 (C.D. Cal. Sept. 16, 2020) ("The Court's lodestar cross-check analysis of the fee award yields a current multiplier of 4.2, which is within the range of appropriate multipliers recognized by this Court and by other courts within the Ninth Circuit."); *Gutierrez v. Wells Fargo Bank, N.A.*, 2015 WL 2438274, at *7 (N.D. Cal. May 21, 2015) (approving a 5.5 multiplier in a $203 million settlement); *In re Verifone Holdings, Inc. Sec. Litig.*, 2014 WL 12646027, at *2 (N.D. Cal. Feb. 18, 2014) ("[A]lthough the lodestar cross-check reveals a high multiplier – 4.3 . . . the Court finds that the multiplier here is acceptable in light of the very substantial risks involved."). Moreover, Ninth Circuit has determined in the context of a cross-check that a multiplier of 6.85 was "well within the range of multipliers that courts have allowed." *Steiner v. Am. Broad. Co., Inc.*, 248 F. Appx 780, 783 (9th Cir. 2007).

As more fully explained in the Joint Declaration, this is not a typical case in terms of either the risk undertaken by Class Counsel or the results achieved for the Class. Accordingly, if the lodestar cross-check returns a multiplier above the average – but well within the range deemed permissible by the Ninth Circuit – it would serve to confirm the appropriateness of the instant fee

request.  Here, the cross-check calculation, without accounting for the substantial amount of work that remains to be done to complete this Settlement, results in a risk multiplier of 4.14, which is reasonable under the circumstances.

### C. The Factors Considered by Courts in the Ninth Circuit Support the Requested Fee

Application of the factors that courts in this Circuit consider when determining whether a fee is fair also strongly support the reasonableness of the requested 22.5% fee.  These include: (1) the results achieved; (2) the risks of litigation; (3) the skill required and quality of work; (4) the contingent nature of the fee and financial burden carried by the plaintiffs; (5) awards made in similar cases; (6) the reaction of the class; and (7) a lodestar cross-check. *Vizcaino*, 290 F.3d at 1048-50.

### 1. Class Counsel Achieved an Excellent Result for the Class

Courts have consistently recognized that the result achieved is "the most critical factor" to consider in making a fee award. *Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983); *Hefler*, 2018 WL 6619983, at *13.  Here, against substantial risks, Class Counsel obtained an excellent recovery for the Class, both in terms of overall amount ($809,500,000.00) and as a percentage of the estimated recoverable damages (24%-30%). *See, e.g.*, *In re Charles Schwab Corp. Sec. Litig.*, 2011 WL 1481424, at *4 (N.D. Cal. Apr. 19, 2011) (Alsup, J.) (observing that $200 million settlement represented 35.9% of the estimated damages and remarking that when "a substantial percentage of [the class's] requested damages" was obtained, "this is a good settlement for the class"); *Peace Officers' Annuity & Benefit Fund of Ga. v. Davita Inc.*, 2021 U.S. Dist. LEXIS 131699, at *7 (D. Colo. July 15, 2021) (underscoring that settlement which recovered "between 31% and 43% of the Class's damages – eight to eleven times greater than the median 3.9% recovery in similar actions," was "a significant achievement which, in the Court's view, further supports granting the fee request").  Indeed, this recovery is more than 7.5 times the median percentage recovery for cases settled with estimated damages of $1 billion or more in 2021, and at least 18 times the median ratio of settlements-to-investor losses in 2021.[7]  The $809,500,000.00 recovery places the Settlement in

_____

[7]     *See* Laarni T. Bulan & Laura E. Simmons, *Securities Class Action Settlements – 2021 Review and Analysis* at 6, 14 (Cornerstone Research 2022) (finding median settlements as a percentage of estimated damages was 4.2% in 2021 for Rule 10b-5 cases involving over $1 billion in damages and

# TAB 8

ROBBINS GELLER RUDMAN & DOWD LLP
DANIEL S. DROSMAN (200643)
TOR GRONBORG (179109)
ELLEN GUSIKOFF STEWART (144892)
LUCAS F. OLTS (234843)
J. MARCO JANOSKI GRAY (306547)
CHRISTOPHER R. KINNON (316850)
HEATHER G. SCHLESIER (322937)
655 West Broadway, Suite 1900
San Diego, CA 92101-8498
Telephone: 619/231-1058
619/231-7423 (fax)

MOTLEY RICE LLC
GREGG S. LEVIN (admitted *pro hac vice*)
LANCE V. OLIVER (admitted *pro hac vice*)
MEGHAN S.B. OLIVER (admitted *pro hac vice*)
MAX N. GRUETZMACHER (admitted *pro hac vice*)
CHRISTOPHER F. MORIARTY (admitted *pro hac vice*)
MEREDITH B. WEATHERBY (admitted *pro hac vice*)
28 Bridgeside Blvd.
Mt. Pleasant, SC 29464
Telephone: 843/216-9000
843/216-9450 (fax)

*Co-Class Counsel for the Class*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| In re TWITTER INC. SECURITIES LITIGATION | ) Case No. 4:16-cv-05314-JST (SK) |
| | ) |
| | ) <u>CLASS ACTION</u> |
| | ) |
| This Document Relates To: | ) ORDER AWARDING ATTORNEYS' FEES |
| | ) AND EXPENSES *AS MODIFIED* |
| ALL ACTIONS. | ) |
| | ) |

THIS MATTER having come before the Court on November 17, 2022, on Class Counsel's motion for an award of attorneys' fees, expenses, and awards to Class Representatives pursuant to 15 U.S.C. §78u-4(a)(4) (ECF 661) in the above-captioned action. The Court here addresses Class Counsel's requests for fees and expenses, and issues a separate order concerning awards to the Class Representatives pursuant to 15 U.S.C. §78u-4(a)(4). The Court having considered all papers filed and proceedings conducted herein and otherwise being fully informed of the matters hereto and good cause appearing therefore;

IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that:

1. For purposes of this Order, the terms used herein shall have the same meanings as set forth in the Stipulation of Settlement dated January 5, 2022 (the "Stipulation"). ECF 653-4.

2. This Court has jurisdiction over the subject matter of this Litigation and all matters relating hereto, including all members of the Class who have not timely and validly requested exclusion.

3. Notice of Class Counsel's motion for attorneys' fees and payment of expenses was given to all Class Members who could be identified with reasonable effort. The form and method of notifying the Class of the motion for attorneys' fees and expenses met the requirements of Rules 23 and 54 of the Federal Rules of Civil Procedure, Section 21D(a)(7) of the Securities Exchange Act of 1934, 15 U.S.C. §78u-4(a)(7), as amended by the Private Securities Litigation Reform Act of 1995, due process, and any other applicable law, constituted the best notice practicable under the circumstances, and constituted due and sufficient notice to all persons and entities entitled thereto.

4. The Court hereby awards Class Counsel attorneys' fees of 22.5% of the Settlement Amount, plus expenses in the amount of $3,570,056.21, together with the interest earned thereon for the same time period and at the same rate as that earned on the Settlement Fund until paid. The Court finds that the amount of fees awarded is appropriate, fair, and reasonable under the "percentage-of-recovery" method given the substantial risks of non-recovery, the contingent nature of the representation, awards in similar cases, the time and effort

ORDER AWARDING ATTORNEYS' FEES AND EXPENSES - 4:16-cv-05314-JST (SK)                - 1 -

involved, and the result obtained for the Class. *See Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1049-50 (9th Cir. 2002).

5. Ninety percent of the awarded attorneys' fees and expenses and interest earned thereon shall be paid to Class Counsel from the Settlement Fund immediately upon entry of the Judgment and this Order, subject to the terms, conditions, and obligations of the Stipulation, the terms, conditions, and obligations of which are incorporated herein. The remaining 10% of the awarded attorneys' fees and expenses and interest earned thereon will be withheld until a post-distribution accounting has been filed. A post-distribution accounting must be filed within 21 days after the distribution of settlement funds.

6. In making this award of fees and expenses to Class Counsel, the Court has considered and found that:

(a) the Settlement has created a fund of $809,500,000 in cash that is already on deposit, and numerous Class Members who submit, or have submitted, valid Proof of Claim forms will benefit from the Settlement created by Class Counsel;

(b) over 464,450 copies of the Notice were disseminated to potential Class Members indicating that Class Counsel would move for attorneys' fees not to exceed 22.5% of the Settlement Amount and for expenses in an amount not to exceed $4,000,000, plus interest thereon, and no objections to the fees or expenses were filed by Class Members;

(c) Class Counsel have pursued the Litigation and achieved the Settlement with skill, perseverance, and diligent advocacy;

(d) Class Counsel have expended substantial time and effort pursuing the Litigation on behalf of the Class;

(e) Class Counsel pursued the Litigation on a contingent basis, having received no compensation during the Litigation, and any fee amount has been contingent on the result achieved;

(f) the Litigation involves complex factual and legal issues and, in the absence of settlement, would involve lengthy proceedings whose resolution would be uncertain;

ORDER AWARDING ATTORNEYS' FEES AND EXPENSES - 4:16-cv-05314-JST (SK) - 2 -

(g)    had Class Counsel not achieved the Settlement, there would remain a significant risk that the Class may have recovered less or nothing from Defendants;

(h)    Plaintiffs' Counsel have devoted over 73,400 hours, with a lodestar value of $43,931,080.75 to achieve the Settlement;

(i)    Class Representatives approved the amount of attorneys' fees awarded as fair and reasonable; and

(j)    the attorneys' fees and expenses awarded are fair and reasonable and consistent with awards in similar cases within the Ninth Circuit.

IT IS SO ORDERED.

DATED:  November 21, 2022

_____
THE HONORABLE JON S. TIGAR
UNITED STATES DISTRICT JUDGE

# TAB 9

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:24-cv-00239-SVW-BFM | Date | March 14, 2025 |
|----------|------------------------|------|----------------|
| Title | *Yan Wang v. Dada Nexus Limited et al.* | | |

Present: The Honorable    STEPHEN V. WILSON, U.S. DISTRICT JUDGE

| Paul M. Cruz | N/A |
|--------------|-----|
| Deputy Clerk | Court Reporter / Recorder |

Attorneys Present for Plaintiff:          Attorneys Present for Defendants:

N/A                                              N/A

**Proceedings:**   ORDER GRANTING PLAINTIFFS' MOTION FOR FINAL APPROVAL OF SETTLEMENT, PLAN OF ALLOCATION, AND FINAL CERTIFICATION OF SETTLEMENT CLASS [69]; AND GRANTING IN PART AND DENYING IN PART PLAINTIFFS' MOTION FOR AWARD OF ATTORNEYS' FEES, EXPENSES, AND AWARD TO PLAINTIFFS [71]

## I.    Introduction

Before the Court is lead Plaintiff Senthil Subramanian and named Plaintiff Yan Wang's, individually and on behalf of the proposed settlement class (collectively, "Plaintiffs"), motion for final approval of settlement, plan of allocation, and final certification of settlement class. ECF No. 69. Also before the Court is Plaintiffs' motion for award of attorneys' fees, expenses, and award to Plaintiffs. ECF No. 71. For the following reasons, the motion for final approval of settlement, plan of allocation, and final certification is GRANTED, and the motion for award of attorneys' fees, expenses, and award to Plaintiffs is GRANTED IN PART and DENIED IN PART.

|  |  : |
|--|----|
| Initials of Preparer | PMC |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | 2:24-cv-00239-SVW-BFM | Date | March 14, 2025 |
|---|---|---|---|
| Title | *Yan Wang v. Dada Nexus Limited et al.* | | |

## II.     Background

### A.  Factual and Procedural Background

Defendant Dada Nexus Limited ("Dada") is an online platform for local on-demand retail and delivery in China that has been publicly traded on NASDAQ since June 2020. Plaintiffs are a class of persons or entities who purchased Dada's American Depository Shares ("ADS" or "Shares") between March 9, 2023 and April 22, 2024.

On January 10, 2024, Plaintiffs brought securities claims against Defendants Dada Nexus Limited, Jeff Huijian He, Beck Zhaoming Chen, Laura Marie Butler, Baohong Sun, Jian Han, and JD.com, Inc. (collectively, "Defendants"). At a general level, Plaintiffs alleged that Defendants artificially inflated revenues to meet their revenue forecasts. ECF No. 45, Corrected Amended Class Action Complaint. They further alleged that Defendant executives had reason to know that the revenues were inflated and failed to investigate. *Id.* Finally, Plaintiffs alleged that because of these allegedly fraudulent activities, Dada's share price fell materially. Altogether, Plaintiffs alleged that Defendants' activities constituted violations of Sections 10(b) and 20(a) of the Securities Exchange Act of 1934. *Id.*

On April 5, 2024, the Court appointed Senthil Subramanian as Lead Plaintiff and The Rosen Law Firm, P.A. as Lead Counsel. ECF No. 36. In August of 2024, the parties participated in a mediation with the Honorable S. James Otero (ret.) of JAMS. While the mediation did not result in settlement, the parties continued to discuss settlement under Judge Otero's guidance after the unsuccessful mediation. Eventually, the parties accepted Judge Otero's proposal to settle the case for $4.8 million.

On October 14, 2024, Plaintiffs moved for preliminary approval of the class action settlement (the "Settlement"). ECF No. 57. The Court granted preliminary approval on November 27, 2024. ECF No. 68. Now before the Court is Plaintiffs' motion for final approval of the Settlement.

|  | : |
|---|---|
| Initials of Preparer | PMC |

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:24-cv-00239-SVW-BFM | Date | March 14, 2025 |
|---|---|---|---|
| Title | *Yan Wang v. Dada Nexus Limited et al.* | | |

### B. The Settlement Agreement

The key terms of the Settlement are as follows:

#### 1. Class Definition

The Settlement Class is defined as "all Persons and entities who purchased publicly traded Dada American Depositary Shares ("ADS") between March 9, 2023 and April 22, 2024, both dates inclusive, and who were damaged thereby." Stipulation of Settlement ("Stipulation") ¶ 1.36, ECF No. 59.

#### 2. Settlement Benefits

Defendant will pay $4,800,000 (the "Settlement Amount") to a Settlement Fund. *Id.* ¶¶ 1.35, 2.1. After deduction of all taxes, administrative costs, litigation expenses, and attorneys' fees, the Net Settlement Fund will be distributed to the Class Members under the Plan of Allocation. Administration and distribution of the Settlement Amount is to be handled by a claims administrator, which in this case is Strategic Claims Services ("SCS" or "the Claims Administrator").

To allocate the Settlement Amount, the Claims Administrator will determine, for each Settlement Class Member who executes a valid claim form (hereinafter, "Claimants"), the *pro rata* share of the Settlement Amount minus applicable taxes and fees (the "Net Settlement Fund") based on each Claimant's "Recognized Loss." Exhibit A-1 to Stipulation of Settlement at 7, ECF No. 59-2. Each Claimant's "Recognized Loss" is calculated based on the number of shares purchased by the Claimant, the amount the share price was inflated, and the difference between the share purchase and sale price. *Id.* at 9.

#### 3. Release

As part of the proposed settlement, the Settlement Class Members ("the Releasing Parties") agree to release Defendants from "any and all Claims" (both known and unknown) that "have been or could have been asserted by or on behalf of" the Settlement Class Members which "arise out of, are based upon,

| | : |
|---|---|
| Initials of Preparer | PMC |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:24-cv-00239-SVW-BFM | | Date | March 14, 2025 |
|---|---|---|---|---|
| Title | *Yan Wang v. Dada Nexus Limited et al.* | | | |

or relate in any way to the allegations, acts, transactions, facts, events, matters, occurrences, representations or omissions involved, set forth, alleged or referred to, in this Action, or which could have been alleged in this Action." Stipulation ¶¶ 1.31-33, 6.1-6.3.

### 4.  Notice and Opt-Out

Plaintiffs selected Strategic Claims Services ("SCS") as the Claims Administrator for the settlement. Declaration of Jing Chen ("Chen Decl.") ¶ 17. SCS published notice of settlement electronically on *GlobeNewswire* and in print in *Investor's Business Daily* on December 30, 2024. *Id.* ¶ 18. Notice was also posted on SCS's settlement-specific website on December 9, 2024. *Id.* Individually, 16,129 notices were either mailed or emailed to potential settlement class members. *Id.* ¶ 18.

To participate in the recovery of the Settlement Amount, each Settlement Class Member must properly complete and execute a claim form to the Claims Administrator by February 15, 2025. Order Granting Plaintiffs' Motion for Preliminary Approval of Class Action Settlement at 8, ECF No. 68. All Class Members are bound by the terms of the Settlement Agreement unless they request exclusion from the Settlement by February 24, 2025. *Id.* at 10.

### 5.  Objections

Objections to the proposed settlement were due by February 24, 2025. *Id.* In total, there was only one objection to the proposed Settlement, made by Kong Quingxun, who is a potential class member. *See* ECF No. 74. Mr. Quingxun took issue with the amount of the settlement and argued that Defendant should pay a larger settlement sum. *See id.*

### III.  Discussion

### A.  Final Settlement Approval

In a class action, final settlement approval before the class certification stage is a two-step process: first, the Court must evaluate whether the Settlement Class satisfies the federal requirements for class

|  | : |
|---|---|
| Initials of Preparer | PMC |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:24-cv-00239-SVW-BFM | Date | March 14, 2025 |
|---|---|---|---|
| Title | *Yan Wang v. Dada Nexus Limited et al.* | | |

certification; and second, the Court must evaluate the Settlement itself.

### 1. Class Certification

To give final approval of the Settlement, the Court must find that the Settlement Class (which is, in short, all purchasers of Dada stock between March 2023 and April 2024) satisfies the federal requirements for class certification—in this case, Federal Rules of Civil Procedure 23(a) and 23(b)(3). The Court will analyze each rule below.

### a. Rule 23(a)

"Rule 23(a) ensures that the named plaintiffs are appropriate representatives of the class whose claims they wish to litigate." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 349 (2011). Rule 23(a) provides that the Court can certify a proposed class only if: "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." In short, Plaintiffs' proposed class must satisfy the traditional requirements of numerosity, commonality, typicality, and adequacy.

The Court finds that Plaintiffs' proposed class satisfies the requirements of Rule 23(a). **First**, there is numerosity. The class is made up of purchasers of Dada stock. At the start of the Class Period, there were over a billion ordinary shares of Dada outstanding. Given that "classes of forty or more are considered sufficiently numerous," the number of purchasers of Dada stock easily satisfies this requirement. *See In re China Med. Corp. Sec. Litig.*, 2013 WL 12126754, at \*2 (C.D. Cal. May 16, 2013). Indeed where "the exact size of the proposed class is unknown, but general knowledge and common sense indicate it is large, the numerosity requirement is satisfied." *Vinh Nguyen v. Radient Pharms. Corp.*, 287 F.R.D. 563, 569 (C.D. Cal. 2012).

**Second**, the Court finds commonality. This case presents the following common questions of law

| | : |
|---|---|
| Initials of Preparer | PMC |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:24-cv-00239-SVW-BFM | Date | March 14, 2025 |
|---|---|---|---|
| Title | *Yan Wang v. Dada Nexus Limited et al.* | | |

and fact: whether (1) Defendants made false or misleading public statements or omissions during the Class Period; (2) Defendants acted with scienter; (3) Defendants' misrepresentations artificially inflated the market price of Dada ADS during the Settlement Class Period; and (4) Settlement Class Members were damaged by Defendants' statements and omissions.

**Third**, there is typicality. Plaintiffs' claims are typical of those of the Settlement Class—both Plaintiffs' and the Settlement Class's claims arise from the purchase of Dada's securities and both groups suffered damages as a result of the same misstatements and omissions by Defendants.

**Fourth**, Plaintiffs' proposed class satisfies the adequacy requirement. There is no conflict of interest between Plaintiffs and the Settlement Class. Moreover, Lead Counsel has been involved in this case since its inception. Lead Counsel also has extensive experience with securities class actions.

In sum, Plaintiffs' proposed class satisfies the numerosity, commonality, typicality, and adequacy requirements of Rule 23(a).

### b. Rule 23(b)(3)

Not only must the proposed class satisfy Rule 23(a), but it must also satisfy Rule 23(b)(3). Rule 23(b)(3) requires (1) that "questions of law or fact common to class members predominate over any questions affecting only individual members" (i.e., "predominance"); and (2) that "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy" ("superiority"). Fed. R. Civ. P. 23(b)(3).

Here, there is both predominance and superiority. First, there is predominance because the case turns on "critical questions of what Defendants said, what they knew, what they withheld, and with what intent they acted,"—i.e., common questions to all class members. *See In re Cooper Companies Inc. Sec. Litig.*, 254 F.R.D. 628, 640 (C.D. Cal. 2009). As is typical of securities class actions, these common questions will predominate over any individual questions.

|  | : |
|---|---|
| Initials of Preparer | PMC |

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | 2:24-cv-00239-SVW-BFM | Date | March 14, 2025 |
|---|---|---|---|
| Title | *Yan Wang v. Dada Nexus Limited et al.* | | |

Second, there is superiority. Courts routinely find superiority when confronted with request for settlement-only class certification, as in such cases "a district court need not inquire whether the case, if tried, would present intractable management problems." *Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 623 (1997). The traditional superiority factors also support certification, as class certification in this case will avoid the duplication of efforts among class members and will also avoid the risk of inconsistent rulings.

Because Plaintiffs' proposed class satisfies the requirements of Rules 23(a) and 23(b)(3), the Court will certify Plaintiffs' proposed class for the purposes of approving settlement.

### 2. Settlement Approval

"The claims, issues, or defenses of a certified class . . . may be settled . . . only with the court's approval." Fed. R. Civ. P. 23(e). The point of this rule, outlined in Federal Rule of Civil Procedure 23(e), is to protect unnamed class members from "unjust or unfair settlements affecting their rights." *In re Syncor ERISA Litig.*, 516 F.3d 1095, 1100 (9th Cir. 2008) (citations omitted). Put simply, before giving final approval of a class action settlement, courts must conclude that the settlement is "fundamentally fair, adequate and reasonable." *In re Heritage Bond Litig.*, 546 F.3d 667, 674-75 (9th Cir. 2008) (citations omitted). In making this conclusion, "district courts are required to give 'substantive consideration' to the terms of a proposed settlement, [but] they are not bound by any 'duty to maximize the settlement fund for class members.'" *In re California Pizza Kitchen Data Breach Litig.*, No. 23-55288, 2024 WL 583419, at *4 (9th Cir. Feb. 24, 2025).

This assessment is especially stringent where, as is the case here, the parties reach a class action settlement prior to class certification. In those cases, district courts apply "a higher standard of fairness and a more probing inquiry than may normally be required under Rule 23(e)." *Dennis Kellogg Co.*, 697 F.3d 858, 864 (9th Cir. 2012) (quotations omitted). A more "exacting review is warranted to ensure that class representatives and their counsel do not secure a disproportionate benefit at the expense of the unnamed plaintiffs who class counsel had a duty to represent." *Roes, 1-2 v. SFBSC Mgmt., LLC*, 944 F.3d 1035, 1048-49 (9th Cir. 2019) (quotations omitted).

|  |  | : |  |
|---|---|---|---|
|  | Initials of Preparer | | PMC |

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | 2:24-cv-00239-SVW-BFM | Date | March 14, 2025 |
|---|---|---|---|
| Title | *Yan Wang v. Dada Nexus Limited et al.* | | |

Under Rule 23(e), when deciding whether to approve a class action settlement, courts consider whether:

(A) the class representatives and class counsel have adequately represented the class;
(B) the proposal was negotiated at arm's length;
(C) the relief provided for the class is adequate, taking into account:
    (i) the costs, risks, and delay of trial and appeal;
    (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
    (iii) the terms of any proposed award of attorney's fees, including timing of payment; and
    (iv) any agreement required to be identified under Rule 23(e)(3);
(D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2).

In addition to the factors outlined by Rule 23(e), the Ninth Circuit also outlines additional factors that courts should consider when deciding whether to approve a class settlement. Many of these factors overlap with Rule 23(e), but some are novel. Namely, in addition to the 23(e) factors, the Ninth Circuit asks courts to consider: "the amount offered in settlement; the extent of discovery completed and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998).

The Court will address each of the pertinent factors listed above in turn.

### a. Adequate Representation

The first 23(e)(2) factor for settlement approval is the adequacy in which class representatives and

| | : |
|---|---|
| Initials of Preparer | PMC |

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | 2:24-cv-00239-SVW-BFM | | Date | March 14, 2025 |
|---|---|---|---|---|
| Title | *Yan Wang v. Dada Nexus Limited et al.* | | | |

counsel have represented the class. Fed. R. Civ. P. 23(e)(2)(i). This factor favors approving the settlement, as Lead Plaintiff and Counsel adequately represented the Settlement Class. To start, Lead Plaintiff has no conflicts of interest with other settlement class members. His claims also arise from the same alleged conduct as the Settlement Class: the purchase of Defendants' stock at inflated prices. *See In re Polaroid ERISA Litig.*, 240 F.R.D. 65, 77 (S.D.N.Y. 2006) ("Where plaintiffs and class members share the common goal of maximizing recovery, there is no conflict of interest between the class representatives and other class members.").

Further, Lead Counsel is highly experienced in securities class actions and appears to have represented the Settlement Class effectively. Lead Counsel reviewed the pertinent SEC filings, press releases, conference calls, and other public statements during the Settlement Class Period; retained investigators in China to investigate Defendants; drafted the initial complaint and the Amended Complaint; and finally negotiated the Settlement and moved for preliminary approval. These activities, combined with the lack of conflicts of interests, are sufficient to establish adequate representation.

### b. Arm's Length Negotiation

The second 23(e)(2) factor is whether the settlement was negotiated at arm's length. Here, the Settlement was a product of a mediation between the parties—who were adequately represented by experienced counsel—and Judge Otero, whose experience adjudicating and mediating complex litigation speaks for itself.[1] This factor thus favors settlement approval. *See Roberti v. OSI Sys, Inc.*, 2015 WL 8329916, at *3 (C.D. Cal. Dec. 8, 2015) ("[A]ssistance of an experienced mediator in the settlement process confirms that the settlement is non-collusive.").

### c. The Strength of Plaintiffs' Case and Risk of Continuing Litigation

Courts next evaluate the adequacy of the relief provided for the class by taking into account four factors, the first of which is "the costs, risks, and delay of trial and appeal[.]" Fed. R. Civ. P. 23(e)(2)(C)(i).

---

[1] While the parties technically settled after their mediation with Judge Otero, this is a distinction without a difference, as the parties ultimately accepted the settlement proposed by Judge Otero during the mediation.

|  |  | : |  |
|---|---|---|---|
|  | Initials of Preparer | PMC |  |

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:24-cv-00239-SVW-BFM | Date | March 14, 2025 |
|---|---|---|---|
| Title | *Yan Wang v. Dada Nexus Limited et al.* | | |

In making this assessment, courts in the Ninth Circuit evaluate "the strength of the plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; [and] the risk of maintaining class action status through the trial." *Wong v. Arlo Techs., Inc.*, No. 5:19-cv-00372-BLF, 2021 WL 1531171, at *8 (N.D. Cal. Apr. 19, 2021).

Applying those considerations to this case, the relief provided to the Class appears adequate given the strength of Plaintiffs' case and the risk, expense, complexity, and likely duration of continued litigation. Indeed, Plaintiffs' case is only at the pleading stage, meaning there are several hurdles between Plaintiffs and successful recovery at trial. Moreover, Plaintiffs' cause of action is a securities action, and such actions are generally "highly complex," "notably difficult," and "notoriously uncertain." *Hefler v. Wells Fargo & Co.*, 2018 WL 6619983, at *13 (N.D. Cal. Dec. 18, 2018). Further complicating Plaintiffs' case is that litigation would involve seeking discovery from parties and witnesses located in China. This carries unique difficulties, as according to Chinese law, productions outside of China must first be reviewed and approved by the necessary Chinese government officials. This will necessarily slow down and make more expensive Plaintiffs' case. This unique difficulty, combined with the difficulties of enforcing any potential judgment against parties based in China, make the $4.8 million Settlement sufficiently reasonable.

### d. The Proposed Method for Distributing Relief

The next consideration for evaluating the adequacy of the Settlement is the "effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims." Fed. R. Civ. P. 23(e)(2)(C)(ii). The Court approved of Plaintiffs' proposed method for distributing relief when it granted preliminary approval of the settlement, and its conclusion in this regard does not change. Plaintiffs' proposed method for distributing relief is standard in security class actions: notice is distributed electronically and by print to potential class members; class members who wish to recover from the Settlement submit claim forms containing information necessary to calculate their recovery; the Claims Administrator gives class members an opportunity to cure any deficiencies in their claims; and finally, the Administrator sends claimants their *pro rata* share of the Net Settlement Fund. This method of distribution is "straightforward and effective." *See Oh v. Hanmi Fin. Corp.*, No. 2:20-cv-

|  |  | : |
|---|---|---|
|  | Initials of Preparer | PMC |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:24-cv-00239-SVW-BFM | Date | March 14, 2025 |
|---|---|---|---|
| Title | *Yan Wang v. Dada Nexus Limited et al.* | | |

02844-FLA, 2024 WL 3435259, at *5 (C.D. Cal. Mar. 19, 2024) (approving a settlement where, as is the case here, "Class Members that do not opt out timely will receive a pro rata share of the net settlement amount relative to their losses").

**e. The Proposed Award of Attorney Fees**

The Court will address Plaintiffs' proposed award of attorney fees separately from its analysis of the Rule 23(e) factors. As a preview, the Court disagrees with Plaintiffs' proposed fees. But that disagreement is not so large as to completely undermine final approval of the Settlement.

**f. Other Agreements**

Lastly, when considering the adequacy of the proposed relief, Rule 23(e)(2)(C)(iv) requires disclosure and consideration of any agreement made in connection with the Settlement. Only one such agreement exists in this case: a supplemental agreement that provides Defendants the right to terminate the Settlement if Settlement Class Members holding more than a certain number of shares opt-out. "This type of agreement is common in securities fraud actions and does not weigh against" approval of the settlement. *Cheng Jiangchen v. Rentech, Inc.*, No. 17-cv-1490-GW, 2019 WL 5173771, at *7 (C.D. Cal. Oct. 10, 2019).

**g. Equitable Treatment of Class Members**

The final 23(e) factor is whether "the proposal treats class members equitably relative to each other." Fed. R. Civ. P. 23(e)(2)(D). "Consistent with this instruction, the Court considers whether the proposal 'improperly grant[s] preferential treatment to class representative or segments of the class.'" *Wong*, 2021 WL 1531171, at *9 (quotations omitted). Here, the Settlement offers no preferential treatment to any Settlement Class Member. The Settlement Fund is distributed *pro rata* to authorized claimants based on their Recognized Loss, which is calculated based on when each investor purchased, acquired, and/or sold Dada shares, which is standard procedure in these cases. *See Vinh Nguyen v. Radient Pharms. Corp.*, 2014 WL 1802293, at *5 (C.D. Cal. May 6, 2014) ("A settlement in a securities class action case

| | : |
|---|---|
| Initials of Preparer | PMC |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:24-cv-00239-SVW-BFM | | Date | March 14, 2025 |
|---|---|---|---|---|
| Title | *Yan Wang v. Dada Nexus Limited et al.* | | | |

can be reasonable if it fairly treats class members by awarding a pro rata share to every Authorized Claimant, but also sensibly makes interclass distinctions based upon, *inter alia*, the relative strengths and weaknesses of class members' individual claims and the timing of the purchases of the securities at issue.").

### h.  Settlement Amount

While not enumerated in Rule 23(e), "[t]he relief that the settlement is expected to provide to class members is a central concern" when approving a class settlement. *Wong*, 2021 WL 1531171, at *9 (quoting 2018 R23 Advisory Notes). The Settlement amount is not "to be judged against a hypothetical or speculative measure of what might have been achieved by the negotiators." *Officers for Just. v. Civ. Serv. Comm'n of City & Cnty. of San Francisco*, 688 F.2d 615, 625 (9th Cir. 1982). Accordingly, because "[s]ettlement is the offspring of compromise[,]" "the question we address is not whether the final product could be prettier, smarter or snazzier, but whether it is fair, adequate and free from collusion." *Hanlon*, 150 F.3d at 1027.

The primary relief in this case is the settlement amount: $4.8 million that is to be distributed (after the deduction of fees and taxes) to class members that submitted valid claims. The Court finds that this $4.8 million settlement amount is reasonable, as it represents 13.7% of the maximum estimated damages of $34.9 million under Plaintiffs' best-case scenario. This is well within the range of standard settlements in securities class actions. *See, e.g.*, *In re Snap Sec. Litig.*, 2021 WL 667590, at *1 (C.D. Cal. Feb. 18, 2021) (approving a settlement that was "approximately 7.8% of the class's maximum potential aggregate damages, which [was] similar to the percent recovered in other court-approved securities settlements"); *see also* Cornerstone Report Excerpts, ECF No. 73-6 (analyzing the size of recoveries in Rule 10b-5 claims with maximum estimated damages between $25 and $74 million and finding that the median recovery was ~8% of the estimated damages).

### i.   The Extent of Discovery and the Stage of Proceedings

In addition to the 23(e)(2) factors, courts in the Ninth Circuit consider "the extent of discovery

| | : |
|---|---|
| Initials of Preparer | PMC |

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | 2:24-cv-00239-SVW-BFM | Date | March 14, 2025 |
|---|---|---|---|
| Title | *Yan Wang v. Dada Nexus Limited et al.* | | |

completed and the stage of the proceedings" when deciding whether to approve a class action settlement. *Hanlon*, 150 F.3d at 1026. Importantly, "in the context of class action settlements, formal discovery is not a necessary ticket to the bargaining table where the parties have sufficient information to make an informed decision about settlement." *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000). Instead, "courts look for indications that the parties carefully investigated the claims before reaching a resolution." *In re: Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prod. Liab. Litig.*, 2016 WL 6248426, at *13 (N.D. Cal. Oct. 25, 2016).

In this case, while the parties did not proceed to discovery, Lead Counsel nonetheless conducted an extensive investigation of the claims asserted in this Action, including: (i) reviewing Dada's SEC filings, press releases, conference calls, and other public statements during the Class Period, (ii) reviewing public documents, reports, announcements, and news articles concerning Dada; (iii) interviewing former Dada employees and other knowledgeable third parties; and (iv) consulting a damages expert and an accounting expert. These efforts allowed Lead Counsel to make an informed assessment of the strengths and weaknesses of the case, which further gives the Court confidence that the Settlement is reasonable even at this early stage of litigation. *See e.g.*, *Mego*, 213 F.3d at 459 (approving settlement even though "extensive formal discovery had not been completed" because "Class Counsel conducted significant investigation, discovery and research"); *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1239 (9th Cir. 1998) (approving class settlement after the filing of a motion to dismiss but prior to significant discovery and reasoning that "formal discovery is not a necessary ticket to the bargaining table where the parties have sufficient information to make an informed decision about settlement") (quotations omitted).

#### j. The Experience and Views of Counsel

When evaluating whether to approve a class action settlement, courts give weight to the experience of counsel, as "[p]arties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in litigation." *In re Pac. Enterprises Sec. Litig.*, 47 F.3d 373, 378 (9th Cir. 1995). Indeed, "great weight is accorded to the recommendation of counsel, who are most closely acquainted with the facts of the underlying litigation." *Nat'l Rural Telecommunications Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 528 (C.D. Cal. 2004) (quotations omitted).

| | : |
|---|---|
| Initials of Preparer | PMC |

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | 2:24-cv-00239-SVW-BFM | | Date | March 14, 2025 |
|---|---|---|---|---|
| Title | *Yan Wang v. Dada Nexus Limited et al.* | | | |

In this case, Lead Counsel and Defendants' counsel both have extensive experience with securities class actions. In fact, a court in this district has remarked that Lead Counsel (the Rosen Law Firm) "has the necessary skill and knowledge to effectively prosecute" securities class actions. *Pace v. Quintanilla*, 2014 WL 4180766, at *3 (C.D. Cal. Aug. 19, 2014). Defendants' Counsel—Skadden, Arps, Meagher & Flom LLP—similarly carries extensive experience in this area of litigation. Given this valuable experience on both sides of the litigation, that both sets of counsel recommend the Settlement provides the Court with good reason to find that it is reasonable for all parties involved.

### k. Objections to the Settlement

After Plaintiffs sent notice to potential class members of the proposed settlement, they also provided said members with the opportunity to object to the settlement's terms. The quantity of objections, and their content, "is a proper consideration for the trial court" when considering whether to approve a class action settlement. *DIRECTTV*, 221 F.R.D. at 528 (quoting 5 *Moore's Federal Practice*, § 23.85(2)(D) (Matthew Bender 3d ed.)). That said, not all class members' views are given equal weight. The views of class representatives "may be entitled to special weight because [the Lead Plaintiff] may have a better understanding of the case than most members of the class." *Id.* (quoting Manual for Complex Litigation (Third) § 30.44 (1995)).

Plaintiffs sent 16,129 notices of settlement and only received one objection from potential class member Kong Quingxun. *See* ECF No. 74. Mr. Quingxun took issue with the amount of the Settlement and argued that Defendant should pay a larger settlement sum. *See id.*

While relevant to the Court's analysis, this single objection is insufficient to warrant denial of the Settlement. First, while Mr. Quingxun did object, his objection stands alone. This significantly decreases the weight of his objection, as "[i]t is established that the absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of the proposed class settlement action are favorable to the class members." *DIRECTTV*, 221 F.R.D. at 529; *see also Wong*, 2021 WL 1531171, at *9 (approving class settlement despite a single objection from one class member).

| | : |
|---|---|
| Initials of Preparer | PMC |

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:24-cv-00239-SVW-BFM | | Date | March 14, 2025 |
|---|---|---|---|---|
| Title | *Yan Wang v. Dada Nexus Limited et al.* | | | |

Second, while the Court appreciates Mr. Quingxun's participation in the settlement process, the Court does not find his objection a valid reason to deny the Settlement. Mr. Quingxun essentially wants the settlement to be a larger proportion, if not 100%, of the ~35 million maximum recovery in this case. But this desire stands in conflict with the statistically likely outcome of cases such as Plaintiffs'. The Settlement is 13.7% of the maximum estimated damages, which is close to double the median recovery of securities claims of the same nature and size as Plaintiffs' claim. *See* Cornerstone Report Excerpts, ECF No. 73-6 (analyzing the size of recoveries in Rule 10b-5 claims with maximum estimated damages between $25 and $74 million and finding that the median recovery was ~8% of the estimated damages). There is reason to doubt that Plaintiffs' claim would significantly outperform the median securities claim of this size, as Plaintiffs have not even survived the motion to dismiss stage, let alone class certification, summary judgment, and trial. Quite the contrary, there are specific circumstances in this case that make a median recovery *less* likely. Defendants are based in China, which puts doubts on whether Plaintiffs would be able to recover a judgment even if they did prevail at trial.

Third, standing in contrast to the lone objection to the Settlement is the approval of the Lead Plaintiff, Plaintiffs' counsel, and Defendants' counsel. All three of these parties are more involved with the case, and its merits, than Mr. Quingxun, and thus the Court will afford more weight to their opinion as to the reasonableness of the Settlement.

### 1.  Weighing the factors

Balancing the 23(e)(2) factors and the other factors for class settlement approval outlined by the Ninth Circuit, the Court finds, for the foregoing reasons, that the Settlement is fair and reasonable.[2]

### B. Plan of Allocation

"Approval of a plan of allocation of settlement proceeds in a class action . . . is governed by the

---

[2] While the Court approves of the Settlement, it does not fully approve of the proposed attorney fees. The Court's stance on this issue is outlined later in this Order.

|  | : |
|---|---|
| Initials of Preparer | PMC |

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | 2:24-cv-00239-SVW-BFM | Date | March 14, 2025 |
|---|---|---|---|
| Title | *Yan Wang v. Dada Nexus Limited et al.* | | |

same standards of review applicable to approval of the settlement as a whole: the plan must be fair, reasonable and adequate." *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1045 (N.D. Cal. 2008). For example, "[i]t is reasonable to allocate the settlement funds to class members based on the extent of their injuries[.]" *Id.*

That is exactly the plan of allocation here. Plaintiffs' Plan of Allocation distributes settlement proceeds on a *pro rata* basis, calculating a claimant's relative loss proximately caused by the Defendants' alleged misrepresentations and omissions based on factors such as when and at what prices the claimant purchased and sold the shares at issue. Such allocation plans that "allocate money depending on the timing of purchases and sales of the securities at issue are common." *In re Datatec Sys., Inc. Sec. Litig.*, 2007 WL 4225828, at *5 (D.N.J. Nov. 28, 2007) (approving a plan of allocation that "provides different payments to different class members, according to when their [] stock was purchased and sold"); *see also In re Gen. Instrument Sec. Litig.*, 209 F. Supp. 2d 423, 431 (E.D. Pa. 2001) (holding that a plan of allocation is "even handed" because "claimants are to be reimbursed on a *pro rata* basis for their recognized losses based largely on when they bought and sold their shares."). The Court therefore approves of Plaintiffs' Plan of Allocation.

### C. Notice

Under Rule 23(e), in the case of settlement in a class action, the "court must direct notice in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1)(B). "Notice is satisfactory if it generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and come forward and be heard." *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 962 (9th Cir. 2009).

Here, Plaintiff, through the Claims Administrator: (1) emailed links to the Long Notice and Claim form to persons whose email addresses were obtained; and if email addresses could not be reasonably obtained, mailed postcard notice to all those who could be identified with reasonable effort; and (2) published notice of settlement electronically via *GlobeNewsire* and in print via *Investor's Business Daily*. Together, these methods led Plaintiffs to mail/email 16,129 notices.

|  | : |
|---|---|
| Initials of Preparer | PMC |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:24-cv-00239-SVW-BFM | Date | March 14, 2025 |
|----------|----------------------|------|----------------|
| Title | *Yan Wang v. Dada Nexus Limited et al.* | | |

The Long Notice provided, in plain wording: (a) the rights of Settlement Class Members, including the manner in which they may lodge objections or request exclusion and instructions on how to complete and submit a Claim Form to the Claims Administrator; (b) the nature, history, progress, and status of the litigation; (c) the proposed Settlement; (d) the process for filing a Claim Form; (e) a description of the proposed Plan; (f) the maximum attorneys' fees and expenses and award to Plaintiffs to be sought by Lead Counsel; (g) the definition of the Settlement Class; (h) the reasons the Parties have proposed the Settlement; (i) the estimated distribution per damaged ADS; (j) the Settlement Class's claims and issues; (k) the parties' disagreement over damages and liability; (l) contact information for all counsel and the Court; and (m) the time, date, and location of the Settlement Hearing. The notice also informed class members that they could object to the Settlement or exclude themselves from the Settlement Class, and the consequences thereof.

The Court finds that the above Notice Plan is sufficient, as it "generally describe[d] the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard." *Rodriguez*, 563 F.3d at 962. Indeed, similar notice programs are routinely approved by the courts. *See, e.g.*, *Oh v. Hamni Fin. Corp.*, No. 2:20-cv-02844-FLA, 2024 WL 3435259, at *6 (C.D. Cal. Mar. 19, 2024) (approving a nearly identical notice plan).

## D. Attorneys' Fees and Expenses

When approving class action settlements, "Courts may only award 'reasonable' attorneys' fees." *In re California Pizza Kitchen Data Breach Litigation* ("*California Pizza Kitchen*"), 2025 WL 583419 (9th Cir. Feb. 24, 2025) (citing Fed. R. Civ. P. 23(h)). "The 'touchstone' for that analysis is 'the benefit to the class'—class counsel can only reap rewards if they have delivered results for class members." *Id.* (quotations omitted).

"This circuit has signed off on two methods for determining reasonable attorneys' fees in class actions: the 'lodestar' method and the 'percentage-of-recovery' method." *Id.* "Under the lodestar method, the court multiplies the number of hours reasonably spent on the case by a reasonable hourly rate." *Id.*

| | : |
|---|---|
| Initials of Preparer | PMC |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:24-cv-00239-SVW-BFM | Date | March 14, 2025 |
|---|---|---|---|
| Title | *Yan Wang v. Dada Nexus Limited et al.* | | |

"Under the percentage-of-recovery method, the court simply awards counsel with a percentage of the recovery claimed by the class—the typical benchmark is 25%." *Id.* "Under both methods, certain factors, like 'the quality of representation, the benefit obtained for the class, the complexity and novelty of the issues presented, and the risk of nonpayment,' may favor upward or downward adjustment." *Id.* (quoting *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 942 (9th Cir. 2011)).

### 1. The Court will apply the "percentage-of-recovery" method.

Plaintiffs seek an award of 25% of the Settlement under the "percentage-of-recovery" method. As a threshold matter, it is appropriate in this case to apply the "percentage-of-recovery" method instead the lodestar method. "[U]sing the percentage method is proper in a securities fraud case," as the [Private Securities Litigation Reform Act ("PSLRA")] states that '[t]otal attorneys' fees and expenses awarded by the court to counsel for plaintiff class shall not exceed a reasonable percentage of the amount of any damages and prejudgment interest actually paid to the class.'" *In re Am. Apparel, Inc. S'holder Litig.*, 2014 WL 10212865, at *20 (C.D. Cal. July 28, 2014) (quoting 15 U.S.C. § 78-u—4(a)(6)). "By using this language, 'Congress plainly contemplated that percentage-of-recovery would be the primary measure of attorneys' fees awards in federal securities class actions.'" *Id.* (quotations omitted).

### 2. Reasonableness of Attorney Fees

Next, the Court must evaluate whether Plaintiffs' requested percentage—25% of the Settlement—is fair and reasonable. To make this evaluation, courts consider the following factors: "(1) the results achieved; (2) the risk of litigation; (3) the skill required and the quality of work; (4) the contingent nature of the fee and the financial burden carried by the plaintiffs; (5) the reaction of the Settlement Class; and (6) awards made in similar cases." *In re Stable Rd. Acquisition Corp.*, No. 2:21-cv-5744-JFW, 2024 WL 3643393, at *12 (C.D. Cal. Apr. 23, 2024) (citing *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1050 (9th Cir. 2002) (analyzing the factors listed in *Stable Rd.*)).

The Court starts with the Ninth Circuit's 25% benchmark. While application of this "benchmark" is widespread, "[c]ourts cannot rationally apply any percentage, [including the 25% benchmark], in the

| | : |
|---|---|
| Initials of Preparer | PMC |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:24-cv-00239-SVW-BFM | | Date | March 14, 2025 |
|---|---|---|---|---|
| Title | *Yan Wang v. Dada Nexus Limited et al.* | | | |

abstract, without reference to all the circumstances of the case before it." *In re Brooktree Sec. Litig.*, 915 F. Supp. 193, 197 (S.D. Cal. 1996). Ultimately, even when applying the Ninth Circuit's 25% benchmark, courts must find that the fee award is "reasonable under the circumstances." *In re Washington Pub. Power Supply Sys. Litig.*, 19 F.3d 1291, 1295 (9th Cir. 1994).

Application of the 25% benchmark is typically reasonable because, by awarding more than a court would typically under a lodestar calculation,[3] courts recognize that "an attorney should be compensated both for services rendered and for the risk of loss or nonpayment assumed by accepting and prosecuting the case." *In re Quantum Health Res., Inc.*, 962 F. Supp. 1254, 1257-58 (C.D. Cal. 1997). Indeed, by setting a benchmark at 25%, the Ninth Circuit "assumes a genuine degree of risk" on the part of the plaintiffs' attorneys. *Id.*

But in securities class actions such as these, that assumption loses applicability, as "experience is showing there is no inherent risk in the large majority of securities class action suits." *Id.* (collecting studies that "produce[] empirical evidence showing there is little risk in [securities] cases"); *see also Goldberger v. Integrated Res., Inc.*, 209 F.3d 43, 52 (2d Cir. 2000) (noting that "[a]t least one empirical study has concluded that 'there appears to be *no appreciable risk* of non-recovery' in securities class actions, because 'virtually all cases settled'" and further noting that "[a]necdotal evidence tends to confirm this conclusion") (emphasis in original).

"Lacking the underlying premise that these [securities] cases are inherently risky, it is appropriate for a court to depart significantly from the 25% benchmark created by the Ninth Circuit for attorneys' fees in common fund cases unless genuine risk exists in a particular securities class action case." *Quantum Health Res.*, 962 F. Supp. at 1258-59. In other words, courts "will not simply rubber stamp fee award requests substantially in excess of the value of services allegedly performed without a showing of the circumstance traditionally held to justify that excess—a genuine risk of nonrecovery." *Id.* at 1259 (citing *Blum v. Stenson*, 465 U.S. 886, 901 (1984) (holding that an upward adjustment of attorneys' fees for the

---

[3] *See Vicaino*, 290 F.3d at 1051 n.6 (analyzing class action settlements involving common funds and finding that a strong majority (92%) awarded "percentage-of-recovery" attorney fee awards larger than the lodestar calculation).

| | | : |
|---|---|---|
| | Initials of Preparer | PMC |

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | 2:24-cv-00239-SVW-BFM | Date | March 14, 2025 |
|---|---|---|---|
| Title | *Yan Wang v. Dada Nexus Limited et al.* | | |

contingent nature of civil rights litigation was not justified without identification of the risks associated with the litigation). For example, in *Quantum Health Res.*, the court reduced the plaintiffs' attorneys' fees from 25% of the common fund to 10% because the case "was a relatively simple case in which the securities law violations were apparent." 962 F. Supp. at 1259.

This case presents the same circumstances as *Quantum Health Res.*, and the Court will deviate from the Ninth Circuit's 25% benchmark for the same reasons. First, like *Quantum Health Res.*, this is a securities case that statistically bears "no inherent risk of attorneys fee non-recovery." *See id.* at 1258. Plaintiffs identify no circumstances specific to this case that render their chances of successful settlement lower than the typical securities plaintiff. Nor does Plaintiffs' complaint provide any reason to deem this securities class action unique. Plaintiffs allege that Defendants purposefully inflated their revenue numbers to artificially meet their revenue projections. *See* First Amended Complaint ¶¶ 2-4, ECF No. 45. These allegations, if true, constitute boilerplate securities fraud. Accordingly, like *Quantum Health Res.*, this is "a relatively simple case in which securities law violations were apparent." *See* 962 F. Supp. at 1259. Given the simplicity of this case, the risk of non-recovery is simply too low to justify a blanket award of 25% of the common fund. *See id.*

The low risk of non-recovery is not the only reason to depart from the 25% benchmark. Also relevant is that the case settled at the pleading stage before Defendants even filed a motion to dismiss. The "skill required and quality of work" to bring a case to this stage of litigation is no more than the skill required to file a complaint. That Plaintiffs' counsel did not actual spend very much time, money, or intellectual effort litigating this case is further reason to depart from the 25% benchmark. *See In re Brooktree Sec. Litig.*, 915 F. Supp. 193, 197 (S.D. Cal. 1996) (decreasing a fee award from the 25% benchmark in part because the "case required class counsel neither to engage in numerous motions nor commit an extensive staff to the case for a period of many years").

For the same reasons, that only 10 months separate Plaintiffs' filing of the complaint and Defendants' motion for preliminary approval of settlement further justifies departure from the benchmark. *See id.* (deviating downward from the 25% benchmark in part because "a relatively short period of ten months elapsed from the time of filing of the complaints in this case to settlement"); *see also Hardy v.*

| | : |
|---|---|
| Initials of Preparer | PMC |

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES – GENERAL

| Case No. | 2:24-cv-00239-SVW-BFM | Date | March 14, 2025 |
|---|---|---|---|
| Title | *Yan Wang v. Dada Nexus Limited et al.* | | |

*Embark Tech., Inc.*, No. 3:22-cv-02090-JSC, 2024 WL 1354416, at \*8 (N.D. Cal. Mar. 29, 2024) (reducing the plaintiffs' requested attorneys' fees in part because the "case settled very early which the Court must take into account when considering both the level of risk and the burdens on Class Counsel").

And while it is true that no class members objected to the proposed attorney fees,[4] "[f]ailure of class members to object to the proposed fee award . . . is not dispositive." *Brooktree*, 915 F. Supp. at 197. Indeed, in cases, such as here, where "the court has no information about the sophistication of the class nor its members' awareness of issues concerning attorneys' fees," the Court cannot justify an award of the benchmark 25% simply because the class members—every day nonlawyers—did not object to the proposed attorney fees. *See id.* (deviating downward from the 25% benchmark despite the fact that class members did not object to the proposed attorney fee award).

The Court is similarly unmoved by the district court cases cited by Plaintiffs that award the Ninth Circuit's 25% benchmark. *See, e.g., In re Am. Apparel, Inc. S'holder Litig.*, No. 10-cv-06352-MMM, 2014 WL 10212865, at \*23 (C.D. Cal. July 28, 2014). To start, most of these cases made it past the motion to dismiss stage, if not farther. So the skill and quality of lawyering in these cases is necessarily higher, as are the burdens on class counsel, which warrants a higher award of fees.

To the extent that these cases considered securities cases that similarly settled before the motion to dismiss stage, the Court is not persuaded that these courts adequately considered the minimal risk of nonrecovery in modern securities actions. Ultimately, regardless of other district court decisions, the directive from the Ninth Circuit is to award attorney fees that are "reasonable under the circumstances." *See In re Washington Pub. Power Supply Sys. Litig.*, 19 F.3d at 1295. And for the reasons already stated, it is reasonable under this case's circumstances to deviate downward from the Ninth Circuit's benchmark.

To be sure, the Court acknowledges that Plaintiffs' counsel achieved better than average results in this case. They settled for 13.7% of the maximum estimated damages, which is larger than the median settlement in securities claims of similar sizes. But even if better than average, $4,800,000 still pales in

---

[4] While one class member did object to the Settlement overall, he did not take issue with the amount of attorney fees.

|  | : |
|---|---|
| Initials of Preparer | PMC |

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:24-cv-00239-SVW-BFM | Date | March 14, 2025 |
|---|---|---|---|
| Title | *Yan Wang v. Dada Nexus Limited et al.* | | |

comparison to the estimated maximum recovery available in this case of $35,000,000, and thus the size of Plaintiffs' settlement is by no means sufficient to justify awarding Plaintiffs' the benchmark percentage. Nonetheless, in recognition of Plaintiffs' better than average settlement, the Court will award Plaintiffs' more than simply their lodestar amount.

Accordingly, in light of the minimal risk of nonrecovery in securities actions such as this one, the short duration of the case, and that the case settled before the motion to dismiss stage, the Court will deviate downward from the Ninth Circuit's benchmark. But, in recognition of the positive settlement results achieved by Plaintiffs, the Court will award more than the lodestar amount, which Plaintiffs estimated at $672,385.50. Together, these competing forces lead the Court to award 20% of the $4,800,000 common fund, which comes to $960,000.

### 3. Expenses

"[A]n attorney who has created a common fund for the benefit of the class is entitled to reimbursement of reasonable litigation expenses from that fund." *In re Heritage Bond Litig.*, 2005 WL 1594403, at *23 (C.D. Cal. June 10, 2005). Here, Plaintiffs seek $57,904.03 in litigation expenses. These fees constitute: (1) fees for a financial expert; (2) fees for an accounting expert; (3) mediator fees; (4) investigator fees; (5) fees related to providing notice of settlement to class members; (6) court filing fees; (7) *pro hac vice* fees; (8) online legal research fees; (9) travel expenses; and (10) other miscellaneous expenses. Declaration of Jing Chen ("Chen Decl.") ¶¶46, 49, ECF No. 73.

The Court finds that these expenses are reasonable. First, these are the types of expenses that courts typically find reasonable. *See, e.g.*, *In re LJ Int'l, Inc. Sec. Litig.*, No. 07-cv-06076-GAF, 2009 WL 10669955, at *5 (C.D. Cal. Oct. 19, 2009) (awarding expenses for "research, travel, photocopying, and experts" and noting that those expenses "appear reasonable, and are of the type normally charged to typical clients"); *Luna v. Marvell Tech. Grp.*, 2018 WL 1900150, at *4 (N.D. Cal. Apr. 20, 2018) (granting reimbursement for experts, investigators, travel, filing costs, photocopies, and online legal and factual research and holding that those expenses "were a reasonable and necessary part of the litigation, and are of a type customarily billed to a fee-paying client"). Second, after analyzing Plaintiffs' expenses, the Court

| | : |
|---|---|
| Initials of Preparer | PMC |

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:24-cv-00239-SVW-BFM | | Date | March 14, 2025 |
|---|---|---|---|---|
| Title | *Yan Wang v. Dada Nexus Limited et al.* | | | |

finds that in addition to these categories of expenses being reasonable, that the size of the expenses is reasonable as well. The Court will therefore award Plaintiffs $57,907.03 to reimburse them for their litigation expenses.

### 4. Reimbursement for Lead Plaintiffs

Plaintiffs request that the court award Plaintiffs Subramanian and Wang $15,000 ($10,000 for Subramanian and $5,000 for Wang) as compensation for the time they spent representing the Settlement Class. Such fees are often referred to as "Incentive Awards."

Typically, when an individual joins his claims with a class, they "disclaim any right to a preferred position in the settlement [of those claims]." *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 632 (9th Cir. 1982). That said, "[s]ome courts have recognized that class representatives are entitled to some compensation for the risk and inconvenience incurred on behalf of the class." *In re Heritage Bond Litig.*, No. 02-ML-1475, 2005 WL 1594403, at *14 (C.D. Cal. June 10, 2005). Ultimately, [t]he court has discretion to decide whether enhancements fees should be awarded to class representatives and the appropriate amount of these fees." *Id.* In exercising that discretion, courts consider: "(1) the risk to the class representative in commencing suit, both financial and otherwise; (2) the notoriety and personal difficulties encountered by the class representative; (3) the amount of time and effort spent by the class representative; (4) the duration of the litigation; and (5) the personal benefit (or lack thereof) enjoyed by the class representative as a result of litigation." *Van Vranken v. Atl. Richfield Co.*, 901 F. Supp. 294, 299 (N.D. Cal. 1995).

To justify an incentive award in this case, Plaintiffs explain that they filed the initial complaint, reviewed complaints and other pleadings, regularly communicated with counsel, gathered and produced information to Lead Counsel concerning their investments, and made themselves available to testify at deposition or trial. *See* Mot. for Award of Attorneys' Fees at 18, ECF No. 72. Breaking these exploits down to brass tax, however, Plaintiffs essentially supplied Lead Counsel with information regarding their investments, communicated with their lawyers, and reviewed a couple of complaints. Given that the litigation only lasted 10 months, this is insufficient activity to justify the incentive awards requested by

| | | : | |
|---|---|---|---|
| | Initials of Preparer | | PMC |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:24-cv-00239-SVW-BFM | Date | March 14, 2025 |
|---|---|---|---|
| Title | *Yan Wang v. Dada Nexus Limited et al.* | | |

Plaintiffs. *Cf. Brown v. China Integrated Energy Inc.*, No. 11-cv-02559-BRO, 2016 WL 11757878, at *14 (C.D. Cal. July 22, 2016) (awarding incentive awards because the plaintiffs had been "actively involved in the litigation" for "five years"). The Court will instead award Plaintiffs an incentive award of $5,000, to be split equally by Plaintiffs Subramanian and Wang.

## IV.    Conclusion

For the foregoing reasons, Plaintiffs' motion for final approval of settlement, plan of allocation, and final certification of settlement class is GRANTED.

Plaintiffs' motion for attorneys' fees, expenses, and award to Plaintiffs is GRANTED IN PART and DENIED IN PART. The Court will award Plaintiffs' attorneys' fees in the amount of 20% of the common fund, or $960,000. The Court will also award Plaintiffs' $57,907.03 in expenses. The Court will award Plaintiffs Subramanian and Wang $5,000 in total, to be split evenly between them.

**IT IS SO ORDERED.**

|  | : |
|---|---|
| Initials of Preparer | PMC |